**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | CRIMINAL NO. A-10-CR-297 LY |
| | § | |
| **DAVID ANDREW DIEHL,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Sentencing Memorandum for consideration by the Court in determining the Defendant's sentence in this case.

I.      **PRESENTENCE INVESTIGATION REPORT**

The United States has no objection to the guidelines calculation set forth in the PSR, which were properly calculated under the 2000 version of the Guidelines.

II.     **GUIDELINES CALCULATION UNDER CURRENT (2010) GUIDELINES**

Since 2000, Congress and the Sentencing Commission have determined that offenses involving the production, distribution, and possession of child pornography merit increased sentences and have amended the applicable statutory penalties and Sentencing Guidelines

*Government's Sentencing Memorandum*                                                                 **Page 1**

accordingly.  While some federal judges have been critical of increases to the Guidelines for offenses involving possession of child pornography, there has not been a similar hue and cry regarding the Guidelines for *production* of child pornography.  Accordingly, the United States believes that the Court, in exercising its sentencing discretion under 18 U.S.C. § 3553(a), should consider the contemporary sentencing scheme for production of child pornography, as reflected in the Sentencing Guidelines under the current (2010) version of the Guidelines.

Under current law, which has been amended since the Defendant committed his crimes in or about 2000, a violation of 18 U.S.C. § 2251(a) now carries a maximum punishment of 30 years imprisonment, with a 15-year mandatory minimum term of imprisonment.  In 2000, the same offense carried a maximum of 20 years, with a 10-year mandatory minimum, to which the Defendant is subject.  In addition, U.S.S.G. § 2G2.1, the applicable guideline for violations of § 2251(a), has been amended since 2000 to include additional specific offense characteristics that were not part of the 2000 Guidelines Manual.

The following sets forth the United States' calculation of the applicable guidelines under the current (2010) Sentencing Guidelines Manual:

**Count One**:    Sexual Exploitation of a Child/Production of Child Pornography

1.    **Base Offense Level:**  The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                          <u>32</u>

2.    **Specific Offense Characteristics:**  The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.          <u>+4</u>

3.    **Specific Offense Characteristics:**  The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                        <u>+2</u>

4.    **Specific Offense Characteristics:**   The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.          <u>+2</u>

5.    **Adjustments for Role in the Offense:**  None.                              <u>0</u>

6.    **Adjustment for Obstruction of Justice:**  None                            <u>0</u>

7.    **Adjusted Offense Level (Subtotal):**                                      <u>**40**</u>

**Count Two**:   Sexual Exploitation of a Child/Production of Child Pornography

8.      **Base Offense Level:** The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                                                          <u>32</u>

9.      **Specific Offense Characteristics:** The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                         <u>+4</u>

10.     **Specific Offense Characteristics:** The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                                         <u>+2</u>

11.     **Specific Offense Characteristics:**   The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.                <u>+2</u>

12.     **Specific Offense Characteristics:** The Defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Defendant. Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.            <u>+2</u>

13.     **Adjustments for Role in the Offense:**  None.                                          <u>0</u>

14.     **Adjustment for Obstruction of Justice:**  None                                       <u>0</u>

15.     **Adjusted Offense Level (Subtotal):**                                              <u>**42**</u>

**Count Three**: Sexual Exploitation of a Child/Production of Child Pornography

16.    **Base Offense Level:**  The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                                      <u>32</u>

17.    **Specific Offense Characteristics:**  The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                   <u>+4</u>

18.    **Specific Offense Characteristics:**  The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                      <u>+2</u>

19.    **Specific Offense Characteristics:**   The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.       <u>+2</u>

20.    **Specific Offense Characteristics:**   The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Pursuant to U.S.S.G. § 2G2.1(b)(4), a four level increase is warranted.  *See* <u>United States v. Diaz</u>, 368 F.3d 991, 992 (8th Cir. 2004) (holding that images depicting the sexual penetration of a minor girl by an adult male with his penis, a young boy performing fellatio on an adult male, an adult male performing anal sex on a minor girl, prepubescent girls performing fellatio on an adult male, a group of adolescent boys ejaculating on a grimacing prepubescent boy, and an adolescent male performing anal sex on a young boy are sadistic or depictions of violence within the meaning of U.S.S.G. § 2G2.2(b)(3) (now § 2G2.2(b)(4)); and <u>United States v. Belflower</u>, 390 F.3d 560, 561-62 (8th Cir. 2004) (holding that images depicting the attempted sexual penetration of a minor girl by an adult male, images of an adult male attempting to perform anal sex on a minor girl or boy are per se sadistic or violent within the meaning of U.S.S.G. § 2G2.2(b)(3) (now § 2G2.2(b)(4)).       <u>+4</u>

21.    **Specific Offense Characteristics:**  The Defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Defendant. Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.       <u>+2</u>

22.    **Adjustments for Role in the Offense:**  None.                              <u>0</u>

23.    **Adjustment for Obstruction of Justice:**  None                            <u>0</u>

24.    **Adjusted Offense Level (Subtotal):**                                   <u>**46**</u>

**Count Four**:   Sexual Exploitation of a Child/Production of Child Pornography

25.  **Base Offense Level:** The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                                        <u>32</u>

26.  **Specific Offense Characteristics:** The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                  <u>+4</u>

27.  **Specific Offense Characteristics:** The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                          <u>+2</u>

28.  **Specific Offense Characteristics:**  The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.     <u>+2</u>

29.  **Specific Offense Characteristics:**  The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Pursuant to U.S.S.G. § 2G2.1(b)(4), a four level increase is warranted.  *See* <u>United States v. Diaz</u>, 368 F.3d 991, 992 (8th Cir. 2004) and <u>United States v. Belflower</u>, 390 F.3d 560, 561-62 (8th Cir. 2004), *supra*.                     <u>+4</u>

30.  **Specific Offense Characteristics:** The Defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Defendant. Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.       <u>+2</u>

31.  **Adjustments for Role in the Offense:**  None.                            <u>0</u>

32.  **Adjustment for Obstruction of Justice:**  None                          <u>0</u>

33.  **Adjusted Offense Level (Subtotal):**                                     <u>**46**</u>

**Count Five**:    Sexual Exploitation of a Child/Production of Child Pornography

34.  **Base Offense Level:**  The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                                32

35.  **Specific Offense Characteristics:**  The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                        +4

36.  **Specific Offense Characteristics:**  The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                          +2

37.  **Specific Offense Characteristics:**   The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.        +2

38.  **Specific Offense Characteristics:**   The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Pursuant to U.S.S.G. § 2G2.1(b)(4), a four level increase is warranted.  *See* United States v. Diaz, 368 F.3d 991, 992 (8th Cir. 2004) and United States v. Belflower, 390 F.3d 560, 561-62 (8th Cir. 2004), *supra.*                            +4

39.  **Specific Offense Characteristics:**  The Defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Defendant. Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.            +2

40.  **Adjustments for Role in the Offense:**  None.                              0

41.  **Adjustment for Obstruction of Justice:**  None                            0

42.  **Adjusted Offense Level (Subtotal):**                                      **46**

**Count Six**:      Sexual Exploitation of a Child/Production of Child Pornography

43.   **Base Offense Level:** The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                                                              <u>32</u>

44.   **Specific Offense Characteristics:** The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                              <u>+4</u>

45.   **Specific Offense Characteristics:** The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                                  <u>+2</u>

46.   **Specific Offense Characteristics:**   The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.                              <u>+2</u>

47.   **Specific Offense Characteristics:**   The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Pursuant to U.S.S.G. § 2G2.1(b)(4), a four level increase is warranted.  *See* <u>United States v. Diaz</u>, 368 F.3d 991, 992 (8th Cir. 2004) and <u>United States v. Belflower</u>, 390 F.3d 560, 561-62 (8th Cir. 2004), *supra*.                              <u>+4</u>

48.   **Specific Offense Characteristics:** The Defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Defendant. Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.                              <u>+2</u>

49.   **Victim-Related Adjustments:** The offense involved a young child, who the Defendant knew was unusually vulnerable.   Pursuant to U.S.S.G. § 3A1.1(b)(1), a two level increase is warranted.                              <u>+2</u>

50.   **Victim-Related Adjustments:**   The victim involved was physically restrained in the course of the offense.  Pursuant to U.S.S.G. § 3A1.3, a two level increase is warranted.                              <u>+2</u>

51.   **Adjustments for Role in the Offense:** None.                              <u>0</u>

52.   **Adjustment for Obstruction of Justice:** None                              <u>0</u>

53.   **Adjusted Offense Level (Subtotal):**                              <u>**50**</u>

**Count Seven**: Sexual Exploitation of a Child/Production of Child Pornography

54.   **Base Offense Level:** The United States Sentencing Commission Guideline
      for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and
      calls for a base offense level of 32.                                          <u>32</u>

55.   **Specific Offense Characteristics:** The offense material involved multiple
      prepubescent minors who had not attained the age of twelve years. Pursuant
      to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                 <u>+4</u>

56.   **Specific Offense Characteristics:** The offense involved the commission of
      a sexual act or sexual contact. Pursuant to U.S.S.G. § 2G2.1(b)(2), a two
      level increase is warranted.                                                   <u>+2</u>

57.   **Specific Offense Characteristics:** The offense involved distribution.
      Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.         <u>+2</u>

58.   **Specific Offense Characteristics:** The offense involved material that
      portrays sadistic or masochistic conduct or other depictions of violence.
      Pursuant to U.S.S.G. § 2G2.1(b)(4), a four level increase is warranted. *See*
      <u>United States v. Diaz</u>, 368 F.3d 991, 992 (8th Cir. 2004) and <u>United States v.
      Belflower</u>, 390 F.3d 560, 561-62 (8th Cir. 2004), *supra*.                   <u>+4</u>

59.   **Specific Offense Characteristics:** The Defendant was a parent, relative, or
      legal guardian of the minor involved in the offense, or the minor was
      otherwise in the custody, care, or supervisory control of the Defendant.
      Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.         <u>+2</u>

60.   **Victim-Related Adjustments:** The offense involved a young child, who the
      Defendant knew was unusually vulnerable. Pursuant to U.S.S.G. §
      3A1.1(b)(1), a two level increase is warranted.                                <u>+2</u>

61.   **Victim-Related Adjustments:** The victim involved was physically
      restrained in the course of the offense. Pursuant to U.S.S.G. § 3A1.3, a two
      level increase is warranted.                                                   <u>+2</u>

62.   **Adjustments for Role in the Offense:** None.                                 <u>0</u>

63.   **Adjustment for Obstruction of Justice:** None                                <u>0</u>

64.   **Adjusted Offense Level (Subtotal):**                                         <u>**50**</u>

<u>**Count Eight**</u>:  Sexual Exploitation of a Child/Production of Child Pornography

65.  **Base Offense Level:**  The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                                <u>32</u>

66.  **Specific Offense Characteristics:**  The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                        <u>+4</u>

67.  **Specific Offense Characteristics:**  The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                      <u>+2</u>

68.  **Specific Offense Characteristics:**  The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.        <u>+2</u>

69.  **Specific Offense Characteristics:**  The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Pursuant to U.S.S.G. § 2G2.1(b)(4), a four level increase is warranted. *See* <u>United States v. Diaz</u>, 368 F.3d 991, 992 (8th Cir. 2004) and <u>United States v. Belflower</u>, 390 F.3d 560, 561-62 (8th Cir. 2004), *supra.*                        <u>+4</u>

70.  **Specific Offense Characteristics:**  The Defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Defendant. Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.          <u>+2</u>

71.  **Victim-Related Adjustments:** The offense involved a young child, who the Defendant knew was unusually vulnerable.  Pursuant to U.S.S.G. § 3A1.1(b)(1), a two level increase is warranted.                                        <u>+2</u>

72.  **Adjustments for Role in the Offense:**  None.                              <u>0</u>

73.  **Adjustment for Obstruction of Justice:**  None                            <u>0</u>

74.  **Adjusted Offense Level (Subtotal):**                                      <u>**48**</u>

**Count Nine**:   Sexual Exploitation of a Child/Production of Child Pornography

75.    **Base Offense Level:**  The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                                          32

76.    **Specific Offense Characteristics:**  The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                    +4

77.    **Specific Offense Characteristics:**  The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                           +2

78.    **Specific Offense Characteristics:**   The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.            +2

79.    **Specific Offense Characteristics:**   The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Pursuant to U.S.S.G. § 2G2.1(b)(4), a four level increase is warranted.  *See* United States v. Diaz, 368 F.3d 991, 992 (8th Cir. 2004) and United States v. Belflower, 390 F.3d 560, 561-62 (8th Cir. 2004), *supra*.                        +4

80.    **Specific Offense Characteristics:**  The Defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Defendant. Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.        +2

81.    **Victim-Related Adjustments:**  The offense involved a young child, who the Defendant knew was unusually vulnerable.   Pursuant to U.S.S.G. § 3A1.1(b)(1), a two level increase is warranted.                                             +2

82.    **Victim-Related Adjustments:**   The victim involved was physically restrained in the course of the offense.  Pursuant to U.S.S.G. § 3A1.3, a two level increase is warranted.                                                                 +2

83.    **Adjustments for Role in the Offense:**  None.                                  0

84.    **Adjustment for Obstruction of Justice:**  None                              0

85.    **Adjusted Offense Level (Subtotal):**                                       **50**

**Count Ten**:     Sexual Exploitation of a Child/Production of Child Pornography

86.    **Base Offense Level:**  The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 2251(a) is found in U.S.S.G. § 2G2.1(a)(1) and calls for a base offense level of 32.                                                                                <u>32</u>

87.    **Specific Offense Characteristics:**  The offense material involved multiple prepubescent minors who had not attained the age of twelve years. Pursuant to U.S.S.G. § 2G2.1(b)(1), a four level increase is warranted.                                    <u>+4</u>

88.    **Specific Offense Characteristics:**  The offense involved the commission of a sexual act or sexual contact.  Pursuant to U.S.S.G. § 2G2.1(b)(2), a two level increase is warranted.                                                                                        <u>+2</u>

89.    **Specific Offense Characteristics:**   The offense involved distribution. Pursuant to U.S.S.G. § 2G2.1(b)(3), a two level increase is warranted.        <u>+2</u>

90.    **Specific Offense Characteristics:**   The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Pursuant to U.S.S.G. § 2G2.1(b)(4), a four level increase is warranted.  *See* <u>United States v. Diaz</u>, 368 F.3d 991, 992 (8th Cir. 2004) and <u>United States v. Belflower</u>, 390 F.3d 560, 561-62 (8th Cir. 2004), *supra.*                   <u>+4</u>

91.    **Specific Offense Characteristics:**  The Defendant was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, or supervisory control of the Defendant. Pursuant to U.S.S.G. § 2G2.1(b)(5), a two level increase is warranted.        <u>+2</u>

92.    **Victim-Related Adjustments:** The offense involved a young child, who the Defendant knew was unusually vulnerable.   Pursuant to U.S.S.G. § 3A1.1(b)(1), a two level increase is warranted.                                                    <u>+2</u>

93.    **Adjustments for Role in the Offense:**  None.                                    <u>0</u>

94.    **Adjustment for Obstruction of Justice:**  None                                <u>0</u>

95.    **Adjusted Offense Level (Subtotal):**                                            <u>**48**</u>

Multiple Count Adjustment

|      |                                          |     | Units |     |
|------|------------------------------------------|-----|-------|-----|
| 96.  | Adjusted Offense Level for Count One      | 40  | 0     |     |
| 97.  | Adjusted Offense Level for Count Two      | 42  | ½     |     |
| 98.  | Adjusted Offense Level for Count Three    | 46  | 1     |     |
| 99.  | Adjusted Offense Level for Count Four     | 46  | 1     |     |
| 100. | Adjusted Offense Level for Count Five     | 46  | 1     |     |
| 101. | Adjusted Offense Level for Count Six      | 50  | 1     |     |
| 102. | Adjusted Offense Level for Count Seven    | 50  | 1     |     |
| 103. | Adjusted Offense Level for Count Eight    | 48  | 1     |     |
| 104. | Adjusted Offense Level for Count Nine     | 50  | 1     |     |
| 105. | Adjusted Offense Level for Count Ten      | 48  | 1     |     |
| 106. | Total Number of Units                     |     | 8½    |     |
| 107. | Greater Adjusted Offense Level            | 50  |       |     |
| 108. | Increase in Offense Level                 | 5   |       |     |

| 109. | **Combined Adjusted Offense Level:** | | | 55 |
|------|--------------------------------------|--|--|----|
| 110. | **Adjustment for Acceptance of Responsibility:** | | | -3 |
| 111. | **Chapter 4 Enhancements:** None. | | | 0 |
| 112. | **Total Offense Level:** | | | 52 |

Based on a total offense level of 52 and a criminal history category of II, the guideline range for imprisonment is LIFE, U.S.S.G. Chapter 5, Part A, since an offense level of more than 43 is to be treated as an offense level of 43. U.S.S.G. Chapter 5, Part A, comment. (n. 2). Because no count of conviction carries a maximum penalty of Life imprisonment, pursuant to § 5G1.2(d), the guideline range is 2,400 months (240-month maximum for each of 10 counts).

### III.   SAMPLING OF SENTENCES IN SIMILAR CASES

1.   *United States v. KENNETH JOHN FREEMAN*
   *Eastern District of Washington / Cause No. 2:08-cr-06087-LRS*
   *Eastern District of Washington / Cause No. 2:07-cr-06008-LRS*
   *March 2009*
   *[Producer of the "Vicky" child pornography series]*

In March 2009, Kenneth John Freeman was sentenced to 50 years' imprisonment following his pleas of guilty to two counts of production of child pornography and one count of interstate transportation of a minor for the purpose of engaging in unlawful sexual activity. Freeman sexually abused his ten-year-old daughter repeatedly over the course of approximately one year. He photographed and video recorded much of the abuse, and later disseminated those images via the Internet. They have since become known as the "Vicky" child pornography series, one of the most prolifically traded series of child pornography. Images from the "Vicky" series have surfaced throughout the United States, in Canada, and throughout Europe. Charged in Washington state court with rape of a child in the first degree, and in federal court in the Eastern District of Washington and the District of Oregon with child pornography and interstate transportation offenses, Freeman fled to mainland China to avoid prosecution. He was arrested in May 2007 when he traveled from China to Hong Kong, and was extradited back to the United States. Following his federal sentencing hearing, Freeman was sentenced to three concurrent 20-year terms of imprisonment in Washington state court.

2.  **United States v. JAMES BARTHOLOMEW HUSKEY**
    **Northern District of Georgia / Cause No. 4:08-cr-00033-RLV-WEJ**
    **March 2009**
    **[Producer of the "Tara" child pornography series]**

James Bartholomew Huskey was sentenced on charges of producing, distributing, and receiving child pornography. Huskey was sentenced to 840 months (70 years) in prison to be followed by supervised release for life, and ordered to pay restitution of $12,026.  In June 2006, Australian authorities informed the FBI's Innocent Images Unit about an international investigation into the activities of a group of child pornography traders.  Agents with the FBI began investigating this group, and recovered particularly graphic and disturbing photos and vdeos of a man engaged in sexual activity with a young girl that were being traded among the group.  Over the last two years, the images of this child being violently sexually assaulted grew gradually worse.  Using items shown in the background of some of the photos and videos, like bedding, a painting, and two car interiors, law enforcement was able to identify Huskey as the perpetrator of "Tara's" abuse.  After Huskey's arrest in June 2008, he admitted he had abused "Tara" and had sent the images of the abuse out over the Internet.

3.  **United States v. WILLIAM OEHNE**
    **District of Connecticut / Cause No. 3:10-cr-00063-JCH**
    **May 2011**

William Oehne was sentenced to 540 months (45 years) of imprisonment, followed by a life term of supervised release, for producing and distributing child pornography.  In October 2010, Oehne pleaded guilty to one count of producing child pornography and one count of distributing child pornography.  Oehne was sentenced to 360 months of imprisonment for producing child pornography, and a consecutive sentence of 180 months of imprisonment for distributing child

pornography, for a total effective sentence of 45 years.

According to court documents and statements made in court, from 2004 to 2006, when he was a resident of Fairfield County, Connecticut, Oehne photographed himself engaging in sexually explicit conduct with a girl who was approximately 8 years old when the abuse began.  Oehne engaged the victim in a lengthy grooming process involving trickery and threats, and he enticed her to engage in sex acts by promising her gifts of clothes and electronics.  Oehne then distributed the sexually explicit photographs over the Internet.  To date, the victim's images have been identified in more than 3300 child pornography criminal investigations.

The investigation of this matter began in January 2006, when an FBI agent forwarded to the National Center for Missing and Exploited Children ("NCMEC") child pornographic images that the agent had located while in an undercover capacity on the Internet.  Also in January 2006, additional images of the same victim were forwarded to NCMEC by an INTERPOL child exploitation working group in Lyon, France.  INTERPOL was able to find identifying information after magnifying the photographs.  In one image, the minor victim was standing in front of a decorative plate with the victim's first name and birth date.  A separate image of the victim also contained a "Mickey Mouse" hat with the victim's first name stenciled on the back.  Utilizing the information received from various law enforcement officials, the FBI identified individuals in the United States who matched the first name and date of birth identified on the plate.  On March 30, 2009, during an interview with an FBI child/adolescent forensic interviewer, the minor victim identified Oehne as her abuser.  FBI agents also were also able to corroborate that many of the images were taken in the victim's bedroom.

During the sentencing hearing, the court found that Oehne also engaged in the sexual abuse

of other minor girls while he resided in Virginia.

## IV.   AGGRAVATING FACTORS

1.   The Defendant Sexually Abused At Least Three Minor Victims.

The child pornography videos produced by the Defendant show him actively sexually abusing and molesting minor girls.  The unspeakable acts the Defendant compelled the child victims to engage in included oral sex, attempted or actual vaginal sex or anal sex, masturbation, and lascivious exhibition of the child victims' genitals.  In one or more videos, the Defendant depicts himself ejaculating on one or more of the child victims.

2.   The Defendant Uploaded His Child Pornography Videos to the Internet

There can be no doubt that the Defendant uploaded, or caused to be uploaded, his child pornography videos to the Internet.  Not only did he record his sexual molestation of at least three minor victims, he compounded the crime by actively disseminating the videos to others around the world via the Internet.  The Defendant's videos became two "popular" (within child pornography circles) series of child pornography that have been found in numerous other criminal investigations throughout the United States and the world over the past several years.  By uploading his vile child pornography to the Internet, the Defendant has essentially ensured that the depictions of his sexual abuse of the child victims will be available essentially forever.  They effectively can never be fully deleted or removed from circulation.  With each download, viewing, modification, and exchange of these videos, the child victims depicted in them will be revictimized.

3.       The Defendant Has Minimized and Misrepresented His Criminal Conduct to Others
         Subsequent to His Trial and Conviction.

Subsequent to his trial and conviction, the Defendant engaged in numerous telephone conversations from jail with family members and friends in which he minimized and misrepresented the nature and extent of his criminal conduct.  It is believed this was done to garner statements of support for the Defendant, as well as to convince others to handle personal matters on the Defendant's behalf.  He has characterized his predicament as being the fault of his ex-wife and law enforcement, not of his own doing.  He is unapologetic, remorseless, and unwilling accept blame for his sexually abusive criminal conduct.

## V.       ADDITIONAL RELEVANT CONDUCT – OTHER SEXUAL ABUSE VICTIMS

The Defendant has left a trail of other child sexual abuse victims in his wake over the years.

In the early 1990s, when he was approximately 29 years old, the Defendant dated and had an intimate sexual relationship with a girl under the age of 17 in Ohio.  A general description of this relationship was included in the Government's 404(b) Notice filed early in this case.  In the course of that relationship, among other things, it has been alleged that the Defendant was emotionally and physically abusive toward the victim; the Defendant told the victim that he had videotaped the two of them having sex; the Defendant threatened to kill the victim and her family; and the Defendant went to the victim's home with a firearm on one or more occasions.  When the victim sought to end the relationship, the Defendant threatened to send a video or videos depicting their sexual activities to her parents that the Defendant apparently had surreptitiously recorded.  Though the Defendant never followed through on his threat, this episode demonstrates his longstanding interest in sexually abusing underage girls, and his longstanding penchant for using hidden cameras to capture his sexual

activities with minors.

The Defendant's ex-wife, Kerry Jenkins, is also properly viewed as a victim of the Defendant's history of child sexual molestation. When they met and initiated a sexual relationship, Ms. Jenkins was under the age of 18, while the Defendant was then approximately 34 years of age. When they married, Ms. Jenkins was still under the age of 18.

In or about 2008, a female minor, S. B., came forward to Williamson County, Texas, law enforcement authorities to report that the Defendant had sexually molested her during the time period between 1999 and 2001, when she would have been approximately 7-9 years old. This is the same time period during which the Defendant made and produced his child pornography videos. A general description of this incident was included in the Government's 404(b) Notice filed in this case.

The FBI has also located a video recorded in the bathroom of the Defendant's former Austin residence depicting a friend of Jane Doe #2 undressing, to include being completely nude. The video was clearly made using a hidden camera and without the victim's knowledge or consent.

## VI.    LIKELIHOOD OF RECIDIVISM AND DANGER TO SOCIETY

1.    The evidence in this case shows that the Defendant has a long-term pattern of engaging in illicit sexual activity with minor females, going back at least to the early 1990s. He has shown no indication or desire to stop engaging in such conduct.

2.    The Defendant has a history of sexually abusing young girls who have been entrusted to his care, custody, and control, even for very brief periods of time. Any child who finds herself alone with the Defendant for even the briefest time, especially in the Defendant's residence, is

vulnerable to being sexually abused and assaulted by the Defendant.  For example, Jane Doe #3 was left in the Defendant's care for, at most, a couple of hours at a time; yet, it provided sufficient time and opportunity for the Defendant to sexually molest her and record the sexual abuse on video.

3.     The Defendant has used, and discussed using, hidden cameras since at least the early 1990s in private places such as bedrooms and bathrooms where he knew children would likely be nude or in a state of undress.

4.     The Defendant has recently made comments in telephone calls that demonstrate extreme hostility toward the undersigned AUSA and the FBI.  While perhaps not amounting to actionable threats, the Defendant's menacing behavior is clearly toeing the line.  Moreover, the Defendant is making these statements with full knowledge that his jail phone calls are being monitored and/or recorded.  Not only do these statements reveal the Defendant's dangerousness, they further reinforce the Defendant's complete lack of remorse and failure to take full responsibility for the criminal conduct that he chose to commit.

## VII.   EVIDENCE OF OTHER SEX CRIMES

There is reason to believe that the Defendant has engaged in international sex tourism by seeking, and having possibly engaged in, sexual relations with children in other countries.

In April 2010, the Defendant's sister, Amy L., was interviewed by FBI agents at a state correctional institution, where she was then being incarcerated subsequent to a criminal conviction. Amy L. stated the Defendant was "attracted to younger girls" and would not be surprised if the Defendant was involved in child pornography.  Amy L. stated the Defendant "is a pedophile." Amy L. stated that the Defendant lived in Brazil (but did not state exactly when) and traveled abroad

frequently.  According to Amy L., the Defendant traveled overseas for the purposes of meeting with young girls.  Sao Paulo, Brazil, is one city Amy L. recalled the Defendant visiting.  The Defendant at one time stated to Amy L., "You can buy a couple girls for the price of a pair of gym shoes." According to Amy L., the Defendant recently canceled a trip to Columbia but Amy L. did not know the reason why the Defendant canceled the trip.  Amy L. said she was not surprised to learn the Defendant was arrested for the production of child pornography.

When the Defendant was arrested on or about April 6, 2010, the Defendant was scheduled to depart from Miami, Florida, to Managua, Nicaragua, on April 8, 2010.  A search of the Defendant's iPhone subsequent to his arrest revealed that the Defendant had conducted a Google search for "Nicaragua, sex, and tourism."

## VIII.   ANALYSIS OF 18 U.S.C. § 3553(a) FACTORS

    1.     <u>Nature and Circumstances of the Offenses</u>.

The Supreme Court has consistently recognized that the protection of children is a paramount governmental and societal interest and the permanent record of abuse created by child pornography creates a pervasive harm that revictimizes a child. *See New York v. Ferber*, 458 U.S. 747, 757 (1982) ( "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). Indeed, well before the widespread circulation and increase of child pornography as a result of the Internet, the Supreme Court recognized:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child

pornography.

Id. at 759-60, n.10 (citing Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981)).  Since those words were written, the "mass distribution system" has evolved from celluloid film to digital media and the Internet.

Once an image is placed on the Internet, it can never be removed and becomes a permanent record of the abuse inflicted upon that child.  Each and every time such an image is viewed, traded, printed, or downloaded, the child in that image is re-victimized.  Moreover, the images continue to circulate as the child becomes an adult and hopefully begins a path towards recovery from the crimes inflicted upon them.  The physical and psychological harm to children depicted in these images is incalculable, and the continual circulation of images harms children in a manner comparable to the actual production of the images.  This harm is compounded and continued when child pornography images are recirculated for the personal viewing pleasure of additional offenders.

The victims in this case are left with the haunting knowledge that their images will be continuously and uncontrollably disseminated, which will only further exacerbate the insidious psychological harm caused by the initial act of abuse.

     2.    History and Characteristics of The Defendant.

As previously described, the Defendant has demonstrated a strong sexual interest in minor females for a long time and has acted on that with numerous victims.  Based on his long-term molestation of underage girls, he is a dangerous predator who will continue to victimize young children.

3.      <u>The Sentence Must Reflect the Seriousness of the Offenses, Promote Respect for the Law, and Provide Just Punishment; Afford Adequate Deterrence; and Protect the Public from Further Crimes of the Defendant.</u>

There are few crimes more serious than the offenses of which the Defendant has been convicted.  Not only did the Defendant produce child pornography, he did so by sexually assaulting children himself.  By engaging in such atrocious crimes against the innocent and vulnerable young children, he has demonstrated a profound disrespect for legal, moral, and societal boundaries.  To protect the public from the Defendant, and to deter others who may engage in the same criminal conduct, a lengthy sentence is in order.

A fourth purpose, relating to providing the Defendant with needed educational or vocational training, medical care, or other correctional treatment, is inapplicable to the Defendant.  The Defendant is a well-educated computer and software professional.  He will also likely resist accepting moral responsibility for his crimes, which would likely make any "other correctional treatment" ineffective.

4.      <u>The Defendant Deserves a Sentence Comparable to Defendants Who Have Similar Records and Have Been Convicted of Similar Criminal Conduct.</u>

Part III of this Sentencing Memorandum sets forth recent sentences in cases similar to the Defendant's.  The Defendant merits a sentence comparable to the sentences imposed on those offenders.  The Guideline range in this case would result in a far too lenient sentence for the Defendant's criminal conduct.

IX.   **CONCLUSION**

Although a life sentence *per se* is not authorized by law, the Defendant's crimes cry out for a sentence that effectively incapacitates him for the remainder of his natural life.  This defendant is clearly a dangerous child predator who has engaged in the sexual molestation of minors for at least the past 20 years, and will continue to do so if given the opportunity.  While one can only hope that all of the Defendant's victims are now known, it is likely there are more victims who have yet to be – and may never be – identified.  Notably, as part of this criminal investigation, agents seized an encrypted hard drive belonging to the Defendant, but have yet to successfully unencrypt it despite diligent efforts.  Given the Defendant's background as a computer and software consultant, and the ability of a computer hard drive to store innumerable digital images and videos of child pornography, one can only imagine what evidence may be found on the hard drive.

The heinousness of Defendant's crimes are compounded by his uploading the videos and images of his sexual molestation of these victims to the Internet, where they will exist and be available – and will revictimize the victims – indefinitely.

The Guidelines in this case call for a sentencing range of 324-405 months.  A sentence within this guideline range will not result in a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  Accordingly, based on the evidence before the Court, a sentence outside and above the guideline range is warranted to reflect the seriousness of the offenses, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the Defendant, and to avoid unwarranted sentence disparities between the Defendant and other similarly situated defendants.

Respectfully submitted,

JOHN E. MURPHY
United States Attorney

By:      **/s/ Matthew Devlin**
                  _____

MATTHEW B. DEVLIN
Assistant United States Attorney
816 Congress Avenue, Suite 1000
Austin, Texas  78701
(512) 916-5858
Fax  (512) 916-5854
State Bar No. 00795012

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2011, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following:

Stephen M. Orr, Esq.
804 Rio Grande Street
Austin, Texas  78701
(512) 472-8392
Fax (512) 473-8417
State Bar No. 15317000
*Attorney for Defendant*

**/s/ Matthew Devlin**
_____

MATTHEW B. DEVLIN
Assistant United States Attorney