UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. A-10-CR-297 LY |
| | § | |
| DAVID ANDREW DIEHL | § | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant David Diehl submits the following Sentencing Memorandum for the court's consideration in determining his sentence in this case.

### Introduction

Defendant was convicted after a bench trial on ten counts of violations of Sexual Exploitation of a Child/Production of Child Pornography, 18 U.S.C. § 2251(a).   Under the version of the statute in effect at the time of the commission of these offenses, the punishment range was at least 10 years but no more than 20 years imprisonment; $250,000 fine; five years supervised release and a $100 special assessment.

### The Trial Court's Sentencing Discretion and the Methodology For Determining the Appropriate Sentence

In determining the sentence to impose in a particular case the trial court is guided by 18 U.S.C. § 3553(a).  The overriding mandate of that statute is that the court shall impose a sentence sufficient, *but not greater than necessary* to comply with the purposes set forth in its text.  The purposes and other factors listed in § 3553 to be considered will be discussed in detail below.

Since the United States Sentencing Guidelines were rendered advisory rather than mandatory by the Supreme Court's holding in *United States v. Booker,* 125 S.Ct. 738 (2005), that court has taken further action to restore to the trial court its historical discretion in determining

U.S.A. v. Diehl – Sentencing Memorandum, Page 1

the sentence of an individual convicted of federal crimes.  In its decision in *Gall v. United States,* 128 S.Ct. 586 (2007) the court expanded the trial court's discretion to sentence outside the range dictated by the Sentencing Guidelines by holding that an appellate court reviews a guideline or non guideline standard under the same standard, abuse of discretion.

In reviewing the sentencing decision of the trial court, the appellate court must first determine if the court has committed any significant procedural error.  *Gall*, 128 S. Ct. at 597. The District Court commits a procedural error if: it miscalculates or fails to calculate the proper Guidelines range; it treats the Guidelines as mandatory; it imposes a sentence based on clearly erroneous facts; it fails to consider the factors set forth in 18 U.S.C. § 3553(a); or it fails adequately to explain its chosen sentence or any deviation from the Guidelines range. *See Gall*, 128 S. Ct. at 597.

If the appellate court finds no significant procedural error, it then reviews the sentence for substantive reasonableness.  In this determination the appellate court may apply a presumption that a sentence within the applicable guideline range is reasonable.  *See Gall,* 128 S. Ct. at 596, citing *Rita v. United States,* 127 S. Ct. 2456, 2462 (2007).  However, the appellate court may not presume a sentence outside the guideline range to be unreasonable.  *See Gall,* 128 S. Ct. at 597. Nor may the appellate court require extraordinary circumstances to justify a sentence outside the guidelines.  *See Gall,* 128 S. Ct. at 595.  The appellate court can consider as a factor the deviation from the guideline range but must give due deference to the trial court's sentencing decision.  Id.

Consistent with this approach by the appellate court, the trial court should begin the sentencing proceeding by properly calculating the guideline range.  The Sentencing Guidelines should serve as the starting point.  The trial court should then consider the arguments of both

**U.S.A. v. Diehl – Sentencing Memorandum, Page 2**

parties concerning the sentence each urges is appropriate.  Lastly, the court should consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by a party.  *See Rita,* 127 S. Ct. at 2465-69.  If the court sentences outside the guideline range, it should take care to explain its decision and discuss how the circumstances of the case applied to the factors listed in § 3553(a) justify the sentence.  *Rita,* 127 S. Ct. at 2468.

**Guideline Level Computation**

All of the scoring objections relate to the videos portraying Jane Doe #3 who was either three or four years of age at the time the videos were made.  The counts of conviction relating to those videos are Counts Six, Seven, Eight, Nine and Ten.

**A Two Level Increase is not Appropriate Under U.S.S.G. § 3A1.1 Because the Victim's Vulnerability was Due to Age, A Factor Incorporated in the Offense Guideline.**

In all Counts involving Jane Doe #3, the Presentence Report applies a two level increase under U.S.S.G. § 3A1.1 (2000), Vulnerable Victim.  (Paragraphs 82, 90, 98, 105 and 113).  Defendant objected to these increases.  (Scoring Objection Number I).  The Application Notes for § 3A1.1 provide guidance for its application.  In relevant part Application Note 2, § 3A1.1 states:

> "Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline.  For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age."

The offense guideline incorporates age as a specific offense characteristic.  Under U.S.S.G. § 2G2.1 (b)(1), a four level increase has been applied to all counts of conviction in this case because the victims were under twelve years old.

The Probation Department offers in support of the adjustment that "Because of Jane Doe #2 and Jane Doe #3's small physiques, it is reasonable to believe they suffered more physical

pain and were less likely to resist Diehl, more so than an older victim of sexual abuse." The writer goes on to say that Defendant is an anatomically mature male weight "who logically is stronger than compared to an eight or three year old female." (Addendum, Presentence Report, page 2A) It should be noted that this enhancement isn't applied to any count involving Jane Doe #2, so the reference to her is in error. The factors cited by the Probation Department are entirely a function of Jane Doe #3 age rather than "reasons unrelated to age."

In support if its position the Probation Department cites *United States v. Holt*, 510 F.3d 1007 (9th Cir. 2007). The court there held that the Vulnerable Victim enhancement could be applied where a child is so young and small that he or she is less able to resist than other children and will experience greater pain from sexual penetration. *Id.* at 1011. There was no penetration of the sexual organ of Jane Doe #3 in the videos. There is nothing to indicate that she was any more vulnerable than the other children involved for factors other than those related to her age.

This enhancement has been upheld in sexual offenses involving children where the factors that made the victim vulnerable were clearly unrelated to age. See, *United States v. Kapordelis*, 569 F.3d 1291, 1315-16 (11th Cir. 2009) (Victim was sleeping); *United States v. Newsom*, 402 F.3d 780, 784 (7th Cir. 2005) (Victim was sleeping when defendant videoed her); *United States v. Gawthrop*, 310 F.3d 405 (6th Cir. 2002) (Perpetrator was victim's grandfather and had a particularly close relationship.); *United States v. Bentley*, 492 F.Supp.2d 1050, 1058 (N.D. Iowa 2007) (The victim had been diagnosed with ADHD and ODD, had mood swings and heard non-existent voices, attempted suicide, bit her wrists, pulled her hair out, suffered Spina Bifida, and other serious problems.) In the instant case no factor unrelated to age made Jane Doe #3 vulnerable.

### A Two Level Increase is not Appropriate Because the Evidence Does Not Support a Finding that Defendant Restrained Jane Doe #3

**U.S.A. v. Diehl – Sentencing Memorandum, Page 4**

For each Counts Six. Seven and Nine involving Jane Doe #3, a two level increase is applied for Restraint of Victim pursuant to U.S.S.G. § 3A1.3.   (Paragraphs 83, 91 and 106). Defendant objected to the increase.   (Defendant's Scoring Objection II).   The Probation Department bases the increases on the following descriptions of the videos forming the basis of that count:

### Count Six

"The video depicts Diehl restraining Jane Doe #3 by holding her down, pinning her between himself and a bed.  Jane Doe #3 attempts to get up but Diehl pushes her back down."

### Count Seven

"Diehl then grabs Jane Doe #3 from behind, holding her in place, while he rubs his erect penis between Jane Doe #3's buttocks."

### Count Nine

"The first video ... depicts Diehl grabbing Jane Doe #3 by the back of the head..."  Diehl then grabs Jane Doe #3 and moves her closer ..."  Diehl grabs Jane Doe #3's hands..."

The application Notes accompanying U.S.S.G. § 3A1.3 (2000) cross reference the Commentary to 1B1.1 for the definition of "physically restrained."   The Application Notes provide

> "'Physically restrained" means the *forcible* restraint of the victim such as being tied, bound, or locked up." [emphasis added].

U.S.S.G. 1B1.1 (2000) n. 1(i).

The courts have held that the methods of restraint listed in the commentary are by way of illustration and not limitation.  *United States v. Stokley,* 881 F.2d 114, 116 (4th Cir. 1989).  But the use of the "forcible" and the types of restraint used as examples in the commentary do mean

**U.S.A. v. Diehl – Sentencing Memorandum, Page 5**

something.  The drafters of the Guideline used illustrations to show that what was intended was that there be some significant restraint through the use of force.  Not every manner and means of restraint should support the adjustment.  In this case Defendant uses his hand to position Jane Doe #3's head and body during the acts.  However, there is no evidence that he restrained her from leaving the room or forced her into the room.  His action simply briefly put her body in a certain position.

In contrast, cases where the 3A1.3 increase has been held to have been properly applied all involve much more significant force and restraint.  See, *United States v. Aguilar,* 512 F.3d 485, 488 (8th Cir. 2008) (Victim told he could not leave a trailer and was held down and forcibly tattooed);  *United States v. Angeles-Mendoza,* 407 F.3d 747, 752 (5th Cir. 2005) (Smuggled aliens kept in building with door locked and windows boarded and a guard patrolling the premises);  *United States v. Checora,* 175 F.3d 782, 789 (10th Cir. 1999) (Victim tackled by defendants and dragged to a location where his throat was cut.)  *United States v. Clayton,* 172 F.3d 347, 353 (5th Cir. 1999) (Victim was handcuffed when kicked by the defendant);  *Arcoren v. United States,* 929 F.2d 1235, 1247 (8th Cir. 1991) (Defendant grabbed two victims of sexual assault repeatedly and prevented them from leaving the room);  *United States v. Kime,* 99 F.3d 870, 886 (8th Cir. 1996) (Victim held down while defendant attempted to cut off his finger with wire cutters);  *United States v. Roberts,* 898 F.2d 1465, 1469 (10th Cir. 1990) (Robbery victim was held around the neck at knifepoint)

Counsel has not been able to find a case where the increase under § 3A1.3 has been applied for the type of conduct at issue in this case.  There was no force of the degree contemplated by the guidelines as illustrated by the examples set forth in the Commentary to §

**U.S.A. v. Diehl – Sentencing Memorandum, Page 6**

1B1.1.  The "restraint" amounted to holding the child still or positioning her body in the way he wanted her to pose.

The Probation Office, in support of its position, cites *United States v. Long Turkey,* 342 F.3d 856 (8th Cir. 2003).  In that case the defendant held the victim down on the bed by her arms and hair pinning her beneath him during a particularly violent sexual assault.  He pulled her hair forcefully enough that her scalp was bruised.  *Long Turkey* demonstrates the degree of restraint and force that should be present before the adjustment is applied.  It involved conduct much more force and restriction of movement than the instant case.  If they drafters of the Guidelines had intended that every case involving any degree of restraint qualify for the adjustment under § 3A1.3 they could have made that clear in the Commentary of 1B1.1.  Instead they used as illustration types of restraint clearly more severe in nature than involved in Defendant's case.

### A Two Level Increase is not Appropriate Because the Evidence Does Not Support a Finding that Jane Doe #3 Was in the Custody or Care, or Supervisory Control of the Defendant

For each count of conviction involving Jane Doe #3, a two level increase was made to the Offense Level calculation under the Special Offense Characteristic set forth in U.S.S.G. § 2G2.1 (b)(2).  (Paragraphs 81, 89, 97, 104 112)  That subsection provides for the increase where the victim was in the custody or care, or supervisory control of the defendant at the time of the offense.  Defendant objected to the inclusion of the two level increases for each count. (Defendant's Scoring Objection III)  The basis of the objection is that the evidence is insufficient to support a finding that Jane Doe #3 was in his custody or care, or supervisory control at the time of any of the offenses of conviction.

Where a party has objected to the findings in the Presentence Report, the party seeking an adjustment, in this case the Government, must establish the factual predicate justify the

adjustment by a preponderance of relevant and sufficiently reliable evidence. *United States v. Elwood,* 999 F.2d 814, 817 (5th Cir. 1993). A conclusionary statement in the PSR will not, in and of itself support an adjustment. *Supra,* at 817-18.

The two level enhancements are based entirely on the factual allegations set forth in paragraphs 20 and 21 of the Presentence Report.[1] Those paragraphs relate that Defendant's former wife and Jane Doe #3's mother remember *one* incident where Defendant agreed to babysit Jane Doe #3 while the two women went shopping. There is no allegation in the Presentence Report that support the conclusion that any video involving Jane Doe #3 was made on that occasion.

To support the adjustment the Probation Officer argues "...[I]t is less likely Diehl would set up a video camera and sexually abuse Jane Doe #3 in his bedroom as well as a separate bedroom, all while others were in the home providing care for Jane Doe #3." However, there were five videos involving Jane Doe #3. If one was indeed made while Defendant's wife and the girl's mother were out shopping that would mean that four were made while Jane Doe #3 was not alone with her. There is no evidence from any source to suggest that Defendant was left alone with Jane Doe #3 on more than one occasion, and since, four videos were obviously made when he was not babysitting her, there is no reason to assume that the fifth was made on the occasion when he was.

**Defendant Should Receive a Third Level Reduction for Acceptance of Responsibility**

The Presentence Report applies a two level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 (2000). Defendant objected that the PSR does not apply an additional one level decrease under § 3E1.1 (b) (2). Under the 2000 version of the Guidelines, a motion from the Government is not required before the court can apply an additional one point

---

[1] See Addendum to the Presentence Report, Response to Defendant's Objection III, page 2A

**U.S.A. v. Diehl – Sentencing Memorandum, Page 8**

decrease for acceptance of responsibility.  § 3E1.1 (b) (2) indicates that the additional one point reduction may be given where the defendant has timely notified the authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.  While in this case Defendant did not plead guilty, he stipulated to the bulk of the evidence in the case.  His stipulation prevented any of the child victims from having to testify.  There was a bench trial on a narrow issue which took much less time and resources than a jury trial would have.  Defendant urges that the court apply the additional one level decrease under § 3E1.1 (b) (2).

### The Counts of Conviction Should Constitute Three Groups Rather Than Ten

The Presentence Report treats each Count of conviction as a separate group under U.S.S.G. § 3D1.2(d).  As Defendant argues in his Scoring Objection V, the counts of conviction involve three victims.  Count 1 involves Jane Doe #1; Counts 2,3,4 and 5 involve Jane Doe #2; and Counts 6, 7, 8, 9 and 10 involve Jane Doe #3.  Defendant urges that all counts involving a single victim should be grouped together resulting in a total of three groups.

Application Note 4, § 3D1.2 states that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together.  Offenses involving physical harm to a victim are not grouped if the harm occurs on different days.

There is no evidence that Defendant committed the differed offenses involving the same victim on the same day.  All of the offenses involving Jane Doe #2 and Jane Doe #3 occur in Defendant's home.  The stipulations entered into by Defendant and the Government do not establish that the offenses involving the same victim were committed on different days.

**U.S.A. v. Diehl – Sentencing Memorandum, Page 9**

With respect to Jane Doe #3, the Probation Department assesses a two point increase in all counts involving that victim on the basis that Defendant was babysitting her at the time of the offense.  There is only evidence that Defendant babysat her once.  Yet the Presentence Report does not group the counts involving Jane Doe #3 because the offenses allegedly occurred on more than one occasion.  Either the counts should be grouped or the  two point increase deleted.

### Defendant's Proposed Guidelines Calculation

After taking into account the objections made by Defendant to the guidelines calculation contained in the Presentence Report, the following is the resulting calculation.

### Adjusted Offense Levels

The adjusted offense levels would be change by the deletion of upward adjustments for Vulnerable Victim, Victim Restraint and Care Custody and Supervisory Control of the Victim by Defendant.

**Count One:**   Adjusted Offense Level remains the same:                          31

**Counts Two – Five:**  Adjusted Offense Level remains the same:               33

**Counts Six, Seven and Nine:**  Adjusted Offense Level decreases by six levels:   31

**Counts Eight and Ten:**        Adjusted Offense Level decreases by four levels:   31

### Grouping

Sustaining Defendant's objection relating to the Multiple Count Adjustment and grouping the counts into three groups would result in the following:

**Group One:**  Count One                    Group Offense Level          31

**Group Two:**  Counts Two – Five          Group Offense Level          33

**Group Three** Counts Six – Ten           Group Offense Level          31

**Total Number of Units**                                    3

**U.S.A. v. Diehl – Sentencing Memorandum, Page 10**

| | |
|---|---|
| **Greater Adjusted Offense Level** | 33 |
| **Increase in Offense Level** | 3 |
| **Combined Adjusted Offense Level** | **36** |

### Reduction for Acceptance of Responsibility

If the court sustains Defendant's objection and applies an additional one point reduction for acceptance of responsibility the following will be the result:

| | |
|---|---|
| **Total Offense Level** | **33** |

### Criminal History Category

Defendant has lodged an objection to the conclusion in the Presentence Report that the appropriate criminal history category is II.  (Defendant's Scoring Objection VII)  Defendant's specific objection is that the offense of Menacing reported in Paragraph 136 should not receive a criminal history point because that offense is substantially the same as Disorderly Conduct. Under U.S.S.G. § 4A1.2 (2000), offenses similar to disorderly conduct do not score unless the defendant received a jail term of at least 30 days or a term of probation of at least a year. Defendant's jail term was suspended and there is no record that he received a probated term of at least a year.

The offense of Menacing as it existed at the relevant time was defined by Ohio Rev. Code § 2903.22 as follows:

> (A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of such other person or member of his immediate family.

The offense does not involve actual physical harm or any specific means of threatening.  The conduct that the statute criminalizes includes any type of behavior that might cause an apprehension of damage to property or harm to a person.

**U.S.A. v. Diehl – Sentencing Memorandum, Page 11**

By comparison, the Texas offense of Disorderly Conduct, Tex Penal Code § 42.01(a) includes the following means of committing the offense:

A person commits an offense if he intentionally or knowingly

1) uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace;

********

(2) makes an offensive gesture or display in a public place, and the gesture or display tends to incite an immediate breach of the peace;

********

(4) abuses or threatens a person in a public place in an obviously offensive manner;

********

(6) fights with another in a public place;

********

(8) displays a firearm or other deadly weapon in a public place in a manner calculated to alarm;

The type of conduct criminalized as Disorderly Conduct closely resembles that criminalized by the Ohio Menacing law. Threatening a person in a public place or fighting with another in a public place obviously involves creating an apprehension of harm as does Menacing. Disorderly conduct involving display of a firearm goes even farther than Menacing. Use of a firearm creates an apprehension of a greater degree of harm. The only distinction is that Disorderly Conduct regulates conduct in a public place. Accordingly, Menacing should not yield a criminal history point.

### Resulting Guideline Range

If the court sustains Defendant's objections, the following guideline range will be the result:

Offense Level 33, Criminal History Category I – Guideline Range  **135-168 months**

<u>**There is no Reason for an Upward Departure/Variance**</u>
<u>**From the Guideline Range**</u>

The Presentence Report states two possible factors that my warrant an upward departure. The first is that Defendant's criminal history may be underrepresented by the criminal history category. The second is that the offenses were unusually heinous, cruel, brutal or degrading to the victim.

*Defendant's Criminal History is Adequately Represented*

The Presentence Report states, in  Paragraph 190, that, "Prior to and during the commencement of the offense, the defendant was charged and convicted of crimes which did not receive criminal history points to include criminal trespass." For the same reasons that the listed offenses didn't score as criminal history points, they should not be considered for an upward departure or variance.  It is impossible to determine the circumstances or the cases or to verify their dispositions.

*The Offenses were not Unusually, Cruel, Brutal or Degrading*

Certainly production of child pornography involves acts that are unconscionable. However, the Sentencing Guidelines take into account the reprehensible nature of the act in the offense guideline.  Pursuant to U.S.S.G. § 5K2.8, if the defendant's conduct is *unusually* heinous, cruel, brutal or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. There is no commentary to this section but the language of the guideline is illustrative of what is meant by "unusually heinous."    The

**U.S.A. v. Diehl – Sentencing Memorandum, Page 13**

guideline states: "Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation."

The Presentence Report puts forth as a possible justification for the upward departure under § 5K2.8 that the offense involving Jane Doe #2 and Jane Doe #3 included anal-genital penetration and it is therefore likely that they suffered physical pain.  A review of the videos shows that the two victims, if penetrated at all, were not penetrated to the extent that they experienced pain.  There was contact between Defendant's genitals and the genitals and anus of the two victims with possible slight penetration.  Neither victim was heard to acknowledge any pain.

As further basis for possible upward departure or variance under § 5K2.8 the Presentence Report cites that the materials were exploited on the Internet making it likely that the females will continue to suffer from psychological trauma and humiliation for the rest of their lives.  It would be the rare case where child pornography was produced that didn't find its way to the Internet.  This, unfortunately, makes the case ordinary rather than unusual.

### Consideration of Additional Factors Set Forth in 18 U.S.C. § 3553

In addition to a properly calculated guideline range, 18 U.S.C. § 3553(a) enumerates additional factors for the court to consider in arriving at a sentence sufficient, but not greater than necessary to comply with the purposes set forth in  § 3553(a)(2).  Listed first among those actors is the nature and circumstances of the offense and the history and characteristics of the defendant.

*The Nature and Circumstances of the Offense and the History and*
*Characteristics of the Defendant Support a Sentence Below the Guideline Range*

**U.S.A. v. Diehl – Sentencing Memorandum, Page 14**

There are several factors unique to Defendant's case that makes it sufficiently dissimilar to others involving the same statutory violations to warrant a sentence below the Sentencing Guideline Range.

1.     The behavior that constituted the offenses of conviction all occurred more than ten years ago.  Since that time Mr. Diehl has not engaged in the behavior again.  Additionally, he has not collected, traded or possessed child pornography.  Mr. Diehl disputes the testimony of Kenneth Courtney, an individual currently serving a Florida sentence for possession of child pornography.  Defendant did not have a collection of child pornography when her knew Mr. Courtney and did not show him child pornography.  In fact, there was an incident where Mr. Courtney was hosting an account on his server for Defendant and Defendant discovered that the server contained images of child pornography.   Defendant discontinued his use of Mr. Courtney's server and strongly rebuked him for have the images.

Mr. Courtney's testimony trial revealed that he had questionable recollection of the child pornography that he had allegedly seen at Defendant's home.  In his FBI interview that he had downloaded the "tent series" video on his own.  At trial he said that he had seen it at Defendant's home.  He was unable to identify the girl in the video or identify Defendant's voice.

According to information received through discovery and his cross examination testimony at trial, Mr. Courtney's attorney was contacted by a state prosecutor who had been contacted by the FBI.  With Mr. Courtney's permission his attorney contacted the FBI to inquire if providing information or testimony concerning Mr. Diehl could result in his sentence being reduced.  When interviewed by the FBI at his place of incarceration, he first refused to talk to the agents unless he had an agreement in place that would allow him to get credit for his assistance.  Although the United States agreed only to make the extent of his cooperation known to the

**U.S.A. v. Diehl – Sentencing Memorandum, Page 15**

Florida authorities, Mr. Courtney obviously had and expectation that his testimony would benefit him.  He admitted as much in his cross examination.  After Defendant's trial, he applied to the Florida court for resentencing.  On July 12, 2011, his sentence was reduced from 15 years to 10 years.

2.      Another factor to consider is that the conduct involved in the videos did not involve intercourse.  If there was any penetration is was slight.  There is no evidence that the girls involved experienced pain during the offenses.

3.      A third consideration relates to the circumstances of the offense involving Jane Doe #1.  The offense occurred at a nudist camp.  Defendant in no way maintains that his conduct was proper but it did occur in a context where the female victim was in a very permissive environment.

4.      A fourth consideration is that with respect to Jane Doe #2 and Jane Doe #3 Defendant realized that his conduct was wrong and made the decision to cease making the videos long before there was any apprehension that he would be caught by law enforcement.

5.      An additional consideration is that Defendant repaired his relationship with Jane Doe #2, his niece, and had a normal relationship with her for years.

6.      Another consideration is that Defendant, through his previous Defense Counsel, communicated his wiliness to assist law enforcement in the investigation of other individuals. The Government declined to enter into an agreement with Mr. Diehl for his cooperation.

7.      Mr. Diehl has led a productive professional life as a software engineer.  The Presentence Report details some of his employment history.   A recent resume is included herewith as an attachment showing his impressive work history.

**U.S.A. v. Diehl – Sentencing Memorandum, Page 16**

8.     Defendant has been a devoted father to his son, Archie.   Under his care Archie has excelled in sports and academics.  Defendant has sole custody of his son from late 2001 to the time of his arrest.  He developed a very close relationship with his son.

9.     Of significant importance is Mr. Diehl's own history of sexual abuse.  He was sexually abused at age 13 by a counselor to whom he had been referred by a court.  The counselor took Defendant to his home where he drugged him.  Defendant awakened to find that the counselor was sodomizing him.  At the same age he was also sexually assaulted by another man.

10.   Also of significance is that at the time of the criminal conduct, Defendant had recently sustained painful injuries in a motorcycle accident.  His accident on June 13, 2000 resulted in a broken rib and other painful injuries.  An injury to his hand is visible in some of the videos.   Defendant was prescribed a powerful painkiller and was under the influence of the painkiller during some of the offense conduct.

*A Sentence Below the Guideline Range is Sufficient, but not greater than Necessary to Comply with the Purposes Set Forth in 18 U.S.C. § 3553(a)(2)*

Defendant calculates the guideline range at 151 – 188 months.  Defendant urges the court to consider a sentence at the statutory minimum of **ten years** in light of the nature and circumstances of the offense and the history and characteristics of the defendant discussed above.

A ten year sentence reflects the seriousness of the offense.  There is, of course, no parole possible from a federal sentence.  A ten year sentence is a significant time of incarceration, especially for a person nearing his 50th birthday on January 25, 2012.  Mr. Diehl would have just enough productive live left to have a chance to secure some savings for retirement and keep himself from having to rely on the government for support.

**U.S.A. v. Diehl – Sentencing Memorandum, Page 17**

A ten year sentence is long enough to provide adequate deterrence to criminal conduct. A sentence of that length will be sufficient to deter other potential perpetrators.

A ten year sentence with protect the public from further crimes of the defendant. Mr. Diehl ceased his criminal behavior long before he was arrested. A ten year sentence will mean that he will be almost 60 when released. A term of supervised release of 5 years can be imposed with conditions monitoring his behavior and requiring counseling.

While in prison and on supervised release Defendant can undergo sex offender counseling. Ten years is a sufficient length of time for the counseling.

### Response to the Government's Sentencing Memorandum

### The 2010 Guidelines Should not Be Considered

The Government urges that, in exercising its sentencing discretion under 18 U.S.C. § 3553(a), it consider the "contemporary sentencing scheme for production of child pornography as reflected in the 2010 version of the Sentencing Guidelines. The Presentence Report uses the 2000 version of the Sentencing Guidelines and the Government does not object to the utilization of that version. The Government cites no authority for the court considering inapplicable, more severe guidelines. It states only that the United States believes the court should do so. Nor does it suggest under which of the factors listed in 18 U.S.C. § 3553 (a) consideration of future inapplicable guideline versions would be appropriate.

The Ex Post Facto Clause of the Fifth Amendment will be implicated if the court considers the 2010 Guidelines as it is urged to do by the Government, and Defendant objects to any consideration of the 2010 Guidelines in its determination of the sentence. Even though the Sentencing Guidelines are no longer mandatory, application of a version of the Guidelines that had not yet gone into effect at the time of the commission of the offense violates the Ex Post

**U.S.A. v. Diehl – Sentencing Memorandum, Page 18**

Facto Clause if there is a substantial risk of a harsher punishment.  *United States v. Wetherald,* 636 F.3d 1315, 1321 (11th Cir. 2011).  Given the Government's calculated Guideline range of 2,400 months as opposed to the range stated in the Presentence Report of 324 to 405 months, the application of the 2010 Guidelines would obviously result in "a substantial risk of a harsher punishment."

Additionally, the Government's statement in its Sentencing Memo that, "Since 2000, Congress and the Sentencing Commission have determined that offenses involving the production, distribution, and possession of child pornography merit increased sentences and have amended the applicable statutory penalties and Sentencing Guidelines accordingly" is inaccurate. Congress increased the penalties for possession and distribution of child pornography.  In the case of possession of child pornography, Congress directly mandated that the Sentencing Commission make changes to the Sentencing Guidelines increasing the resulting punishments for that offense.  The changes to the guideline applicable to child pornography cases, U.S.S.G. §2G2.2, were not based on study, empirical research or data, but rather were made only because of the urging of Congress.

The Supreme Court has recognized the important role the Sentencing Commission plays in refining the Sentencing Guidelines.  "Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States,* 552 U.S. 85 108-09 (2007).  The *Kimbrough* decision went on to point out that the guideline applicable to crack cocaine had been established by the Sentencing Commission in response to a congressional directive rather than taking into account empirical data and national experience.  The court went on to say that given this, it would not be

**U.S.A. v. Diehl – Sentencing Memorandum, Page 19**

an abuse of discretion for a trial court to conclude in an individual case that the guidelines applicable to crack cocaine would yield a sentence greater than necessary to achieve the purposes set out in 18 U.S.C. § 3553(a).  *Id,* at 110.

Following the rationale of *Kimbrough,* several courts have noted that the guideline applicable to possession of child pornography was not based on empirical data and national experience, and consequently provide little guidance as to the appropriate sentence to conform with the objectives of § 3553(a).  These courts have found that § 2G2.2 provides for sentences more severe than necessary to achieve § 3553(a)'s purposes.  See *United States v. Grober,* 624 F.3d 592 (3rd Cir. 2011); *United States v. Dorvee,* 616 F.3d 174 (2nd Cir. 2010); *United States v. Diaz,* 720 F.Supp.2d 1039, (E.D.Wis.2010) (collecting cases); *United States v. Riley,* 655 F.Supp.2d 1298 (S.D.Fla.2009); *United States v. McElheney,* 630 F.Supp.2d 886 (E.D.Tenn.2009); *United States v. Beiermann,* 599 F.Supp.2d 1087 (N.D.Iowa 2009); *United States v. Phinney,* 599 F.Supp.2d 1037 (E.D.Wis.2009).

There have been no cases reviewing the history of U.S.S.G. § 2G2.1, the guideline applicable in this case, and determining its relevance to the purposes stated in § 3553(a).  However, the Sentencing Commission did not perform its traditional role in revising this guideline.  Prior to the 2004 version of the Sentencing Guidelines, and in the 2000 version applicable to this case, the Base Offense Level for the offense for which Defendant was convicted was 27.  Effective in November of 2004, the Base Offense Level was increased to 32 and additional Special Offense Characteristics were added resulting in much higher sentences.  These changes to the § 2G2.1 were not based on empirical study and national experience but were in response to Congress' raising the mandatory minimum sentence from 10 to 15 years and to maintain the proper proportionality with the guideline applicable to possession of child

**U.S.A. v. Diehl – Sentencing Memorandum, Page 20**

pornography.  68 FR 60153-60176.  Hence, the current version of § 2G2.1 is of questionable benefit in determining the appropriate sentence even in a case where it is applicable.

In summary, the appropriate guideline in this case is U.S.S.G. § 2G2.1 (2000).  The current version of that guideline is not appropriate for consideration in reaching an appropriate sentence in accordance with 18 U.S.C. § 3553(a) because its use would violate the *Ex Post Facto* clause and the guideline itself was the result of a departure from the Sentencing Commission's important institutional role.

### The Other Cases Cited by the Government as being "Similar to Defendant's Case Are Substantially Dissimilar

The Government sets forth limited facts about three production of pornography cases and the resulting sentences as urges that the court should be guided by the sentences in these cases to comply with the directive in 18 U.S.C. § 3553(a)(6) to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  It is impossible to determine from the Government's limited rendition of the facts of the case the complete extent to which they are dissimilar to Defendant's case, but several important distinctions are apparent from even the limited facts provided.

KENNETH JOHN FREEMAN

Mr. Freeman abused his own 10 year old daughter repeatedly over the course of one year. Defendant's activities were more limited in duration.  Mr. Freeman fled to China to avoid prosecution.  Defendant did not flee prosecution.  Mr. Freeman was also charged with interstate transportation of a minor for the purpose of engaging in Unlawful sexual activity.  Defendant did not engage in conduct of that sort and was not charged with offenses other than production of child pornography.

**U.S.A. v. Diehl – Sentencing Memorandum, Page 21**

News reports about Mr. Freeman's case indicate that he agreed to the 50 year sentence prompted in part by his desire that his daughter not testify at trial.  Reports also indicate that during his arrest, he tried to escape injuring four officers.  He was a former deputy sheriff and a body builder.  Again according to news reports, the videos he made of his sexual assaults of his daughter were uploaded to the Internet and became one of the most widely distributed child pornography videos in history.

JAMES BARTHOLOMEW HUSKEY

Mr. Huskey was involved in the production of child pornography involving violent sexual abuse of a child over several years.  The 11th Circuit opinion concerning the case revealed that he first began abusing the victim, his daughter, when she was six and the violent sexual and physical abuse continued until she was nine.  The following excerpt from the Presentence Report in Mr. Huskey's case, set out in the 11th Circuits opinion clearly shows that Mr Husky and Defendant did not engage in similar conduct:

> The report stated that Huskey had sexually abused his daughter between the ages of six and nine by subjecting her to anal and oral sodomy and vaginal sex. Photographs and videotapes established that, over time, Huskey's abuse became more violent and that he had pressed a knife to his daughter's face, neck, and genitals, and she had appeared "distressed" in the encounters. Huskey admitted to federal agents that he had penetrated his daughter with objects to condition her for vaginal sex and that the molestation had become more violent over time. Huskey also admitted that he had photographed and videotaped the abuse to trade for other child pornography.

*United States v. Huskey,* 349 Fed.Appx. 495 (11th Cir. 2009),

WILLIAM OEHNE

Mr. Oehne sexually abused a young girl repeatedly over a four year period.  The investigation revealed that he had also abused several other girls.  There is no evidence that Defendant engaged in the activity of production of child pornography or abused young girls other than for a brief period of time when he lived in the Austin area.

**U.S.A. v. Diehl – Sentencing Memorandum, Page 22**

From the dates of the criminal conduct leading to the convictions of the three individuals it appears that the version of the Sentencing Guidelines used to calculate their Total Offense Levels would have been included the higher Base Offense Levels and additional Specific Offense Characteristics added in the 2004 version.  There is no way to determine what their criminal history scores were or to assess what other aggravating factors may have been present.  Because these sentences are based on guideline computations that are inapplicable to Defendant's case, the differences in the conduct and the lack of important additional information to about conduct and criminal history, considering these cases in arriving at Defendant's sentence would likely result in a more disparate sentence as compared to other similarly situated defendants.

The proper comparison would be to defendant's who engaged in similar conduct and with similar criminal histories and were sentenced under the same version of the Sentencing Guidelines.  A review of the data available from the U. S. Sentencing Commission's *Sourcebook of Federal Sentencing Statistics, Table 28*  reflects that for calendar years 2000, 2001, 2002, 2003 and 2004, defendant's sentenced under § 2G2.1 in the great majority of cases received guideline sentences.  The data shows the following:

| Year | Total | Within Range | §5k1.1 or Govt. Initiated Downward Departure | Downward Departure for other Reasons | Upward Departure |
|---|---|---|---|---|---|
| 2000 | 51 | 34 | 3 | 6 | 8 |
| 2001 | 50 | 37 | 5 | 5 | 3 |
| 2002 | 69 | 51 | 3 | 7 | 8 |
| 2003 | 88 | 68 | 5 | 4 | 11 |
| 2004    (Pre-Blakely) | 77 | 66 | 7 | 0 | 4 |

**U.S.A. v. Diehl – Sentencing Memorandum, Page 23**

| 2004 (Post Blakely) | 17 | 13 | 3 | 0 | 1 |
|---|---|---|---|---|---|

These years are important because they most likely involve sentence utilizing the Guidelines Manuals reflecting roughly the same version of the applicable guideline as is applicable in this case. The data reveals that a sentence departing upward from the guidelines would be out of the ordinary. In order to avoid sentencing disparity, the court should consider the applicable guideline and vary upward or downward in cases clearly out of the heartland.

### The Aggravating Factors Listed by the Government are Either Taken into Account by or Contradicted by the Guidelines Calculation

The Government's Sentencing Memo lists three "aggravating factors" that it contends should result in a higher sentence for Defendant. For various reasons each of the factors doesn't aggravate this particular case.

#### "THE DEFENDANT SEXUALLY ABUSED AT LEAST THREE MINOR VICTIMS"

Defendant was convicted of ten counts of production of child pornography. Those counts of conviction are scored and a multiple count adjustment made in accordance with U.S.S.G. § 3D1.4. Regardless of whether the court sustains Defendant's objection and groups the counts into three groups, Defendant's Total Offense Level will be increased because his offense conduct involved three victims. Accordingly, his sentence will likely be increased because of the multiple victims. This factor has already been accounted for by the guidelines calculation.

#### "THE DEFENDANT UPLOADED HIS CHILD PORNOGRAPHY VIDEOS TO THE INTERNET"

The evidence in this case has not established who uploaded the videos to the Internet or whether Defendant was directly responsible for their uploading. In any event, a review of appellate cases involving production of child pornography convictions reveals that the vast

**U.S.A. v. Diehl – Sentencing Memorandum, Page 24**

majority if not all of the cases involve the videos or images appearing on the Internet.  That factor alone does not make this case more aggravated than any other production of child pornography case that has been prosecuted in recent times.

### "THE DEFENDANT HAS MINIMIZED AND MISREPRESENTED HIS CRIMINAL CONDUCT TO OTHERS SUBSEQUENT TO HIS TRIAL AND CONVICTION"

David Diehl has accepted responsibility for his actions to the extent that he received a two level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  The Government has not objected to this downward adjustment.

### The "Additional Acts Alleged by the Government are not Relevant Conduct

At the outset it should be pointed out that, even if true, none of the allegations of additional wrongdoing offered by the Government as additional relevant conduct are relevant conduct as defined by U.S.S.G. § 1B1.3(1).  None of the conduct is alleged to have occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for the offense.

#### *Amy S. Was Not a Victim of Child Sexual Abuse*

Amy S. met Defendant when she was 15.  According to her statement to the FBI, she and Defendant did not engage in sexual relations until she was 16.  The age of consent in Ohio, the state where she and Defendant lived was and is 16.  See. Ohio Rev. Code § 2907.04.

The incident with Amy S. family referred to by the Government resulted in the conviction for Menacing cited in Paragraph 136 of the Presentence Report.  The resulting conviction was for a fourth degree misdemeanor with carries a maximum punishment of 30 days in jail.

#### *Defendant's Ex Wife Was Not a Victim of Child Sexual Abuse*

**U.S.A. v. Diehl – Sentencing Memorandum, Page 25**

Defendant's ex wife is not "also properly viewed as a victim of the Defendant's history of child sexual molestation' as the Government claims.  Ms. Jenkins was of legal age when she and Defendant developed a relationship.  Their relationship had the blessing of her family and resulted in marriage.  The marriage produced a son.

*Defendant Denies that he Sexually Abused S. B.*

As Defendant has stated in other filings in this case, he adamantly denies that he sexually abused S. B. and has requested additional discovery to help refute this allegation.  This matter was presented to a Williamson County, Texas grand jury and a no bill was returned.

**Defendant's Likelihood of Recidivism is Low**

The Government maintains that Defendant's likelihood of recidivism is high because of "the evidence shows that Defendant has a long-term patter of engaging in illicit sexual activity with minor females going back at least to the early 1990's."  The evidence presented to the court in this case shows that David Diehl engaged in the production of child pornography during a relatively brief period in  2000 while living in the Austin area.  There is an allegation by a former girlfriend that Defendant told her that he had made a tape of their sexual activity.  No tape has been discovered and the allegations haven't been substantiated.

The FBI and other law enforcement agencies have conducted an extensive investigation of Defendant.  The investigation has involved analysis of Defendant's bank records, computers, Internet service provider records, emails, interviews with various people who have know Defendant over the years and even involved a canvassing of the neighborhood where Defendant lived in the Austin area to try and uncover additional leads or information about additional victims.  There is no evidence to indicate that David Diehl engaged in any illegal conduct

involving minors other that the evidence already made know to the court.  Defendant has spent a great deal of his time raising his son and has been gainfully employed.

Recidivism rates relate to the incidence of reoffending once a person has been convicted. The public perception that sex offenders have a high recidivism rate is simply not borne out by empirical research.  Scientifically conducted studies place the rate at around 12 to 14%.  See, Hanson, R.K. and Bussiere M.T., *Predicting Relapse: A meta-Analysis of Sexual Offender Recidivism Studies,* J Consult Clin Psychol 1998 Apr, 66(2) 348-62.

### There is no Credible Evidence of Other Sex Crimes

The Government cites as its evidence that Defendant has engaged in other sex crimes information obtained in an interview with Defendant's sister.  It should be noted that Defendant's has a long criminal history involving dishonesty and, as the Government points out, was incarcerated at the time of the interview pursuant to a criminal conviction.  Defendant's sister is also the mother of Jane Doe #2 which would explain her opinion that Defendant is a pedophile and attracted to young girls.

The Government quotes Defendant's sister as reporting that Defendant lived in Brazil and traveled abroad frequently.  According to her, the Defendant traveled overseas for the purposes of meeting with young girls.  This is not true.  Defendant travel to Brazil for work purposes and lived there for a time while working for a Brazilian Technology company.  He had a girlfriend in Brazil that he continued to correspond with frequently when he was back in the United States. Counsel has reviewed email conversations between Defendant and his girlfriend. Paula M.  It is obvious from the information she provides about her employments and other aspects of her live that she is and was at the time of the beginning of the relationship with Defendant, an adult. Further, Counsel has interviewed an acquaintance of Defendant, Kent Bratton, who reported that

**U.S.A. v. Diehl – Sentencing Memorandum, Page 27**

he had visited Defendant during the time he lived and worked in Brazil.  He met Paula M. in Brazil and observed her to be an adult.

Also, there is no evidence that indicates that Defendant engaged in illegal sexual activity when he traveled to Costa Rico or that he planned to travel to Nicaragua for illegal activity.  The web site referenced in the Presentence Report gvnet.com/childprostitution/Nicaragua.htm was a site decrying the problem with chlld prostitution in that country and had nothing to do with procuring child prostitutes.

WHEREFORE, Defendant prays that the court sustain his objections to the guideline calculations and find the appropriate guideline level to be 33.  Defendant further prays that the court find the appropriate criminal history category to be I making the appropriate guideline range 135-168 months.  Defendant further prays that the court sentence him to a sentence of 120 months.

RESPECTFULLY SUBMITTED

/s/ E.G. Morris_____
E.G. Gerry Morris
Attorney for Defendant
SBN: 14477700
608 W. 12th Street, Suite "B"
Austin, Texas 78701
Phone: 512-478-0758
Fax: 512-478-0784

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of October, 2011, I electronically filed the Defendant's Sentencing Memorandum using the CM/ECF system which will send notification of such filing to the following:

Matthew Devlin
Assistant United State Attorney
816 Congress, suite 1000
Austin TX 78701

**U.S.A. v. Diehl – Sentencing Memorandum, Page 28**

(512) 916-5858
Fax (512) 916-5854
Attorney for the Government


/s/ E.G. Morris_____
E. G. Morris