```
 1               IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
 2                         AUSTIN DIVISION

 3  UNITED STATES OF AMERICA,     )  AU:10-CR-00297(1)-LY
                                  )
 4     Plaintiff,                 )
                                  )
 5  VS.                           )  AUSTIN, TEXAS
                                  )
 6  DAVID ANDREW DIEHL,           )
                                  )
 7     Defendant.                 )  JUNE 15, 2011

 8         ***************************************************
              TRANSCRIPT OF SENTENCING HEARING (RESET)
 9
                BEFORE THE HONORABLE LEE YEAKEL
10         ***************************************************

11  APPEARANCES:

12  FOR THE PLAINTIFF:        MATTHEW B. DEVLIN
                              ASSISTANT UNITED STATES ATTORNEY
13                            816 CONGRESS AVENUE, SUITE 1000
                              AUSTIN, TEXAS 78701
14
    FOR THE DEFENDANT:        STEPHEN M. ORR
15                            ORR & OLAVSON
                              804 RIO GRANDE
16                            AUSTIN, TEXAS 78701

17  COURT REPORTER:           ARLINDA RODRIGUEZ, CSR
                              200 WEST 8TH STREET
18                            AUSTIN, TEXAS 78701
                              (512) 916-5143
19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

```
09:28:52   1         (Open Court)
09:28:52   2              THE CLERK:  The Court calls the following case for
09:28:55   3   sentencing:  A:10-CR-297(1), United States of America v.
09:29:00   4   David Andrew Diehl.
09:29:01   5              MR. DEVLIN:  Matthew Devlin for the United States.
09:29:04   6   Good morning, Your Honor.
09:29:05   7              MR. ORR:  Steve Orr for Mr. Diehl, Your Honor.
09:29:07   8              THE COURT:  All right.  Very good.
09:29:08   9              First thing that the Court wants to take up,
09:29:16  10   Mr. Diehl, I received on Friday a letter from you indicating,
09:29:23  11   among other things, that you had fired your attorney.  I have
09:29:30  12   reviewed that letter, and I have this morning provided copies
09:29:34  13   of it to both Mr. Orr and Mr. Devlin.  And at this time, I'm
09:29:43  14   passing the original to Ms. Jones to file in the documents in
09:29:46  15   this case.
09:29:46  16              I will hear from you, Mr. Diehl, or from you,
09:29:52  17   Mr. Orr, or both of you initially with regard to that and what
09:30:02  18   the relationship between the two of you is at this point.  And
09:30:12  19   when I say I will hear from you, that does not mean in any way
09:30:14  20   that you should construe anything I say as asking either one of
09:30:19  21   you to get into the things that would breach the
09:30:22  22   attorney-client privilege in this case.  But I am concerned,
09:30:25  23   since we're here for sentencing in this case, that I have this
09:30:30  24   statement that Mr. Diehl may or may not be represented at this
09:30:36  25   time.  Mr. Orr, do you want to commence?
```

```
09:30:40   1              MR. ORR:  Yes, Your Honor.  I certainly echo
09:30:43   2   Your Honor's concerns with any violation between
09:30:47   3   attorney-client privilege.  Mr. Diehl has expressed to me that
09:30:51   4   he no longer wants me to be his lawyer.  And I agree that that
09:30:55   5   would be -- certainly be all right with me, and I think it
09:30:59   6   would be in Mr. Diehl's best interest.
09:31:02   7              I've always told people that if they're not happy
09:31:05   8   with their lawyer, they should get another lawyer.  Mr. Diehl
09:31:08   9   is involved in a serious case here, and I think he ought to
09:31:12  10   have a lawyer with whom he is happy.
09:31:14  11              The second part of all this is the government just --
09:31:16  12   I think I got it two days ago, their sentencing memorandum, and
09:31:20  13   I haven't had a chance to go over that with Mr. Diehl.  I've
09:31:24  14   been preparing for the sentencing and didn't really have time
09:31:27  15   to go out to Bastrop and take it to him.  I didn't get it in
09:31:31  16   time to mail it.  I was out there last week talking to him
09:31:34  17   about the case.
09:31:35  18              But I think that -- I think I could say this:  The
09:31:40  19   relationship between Mr. Diehl and myself I think is no longer
09:31:45  20   viable, and I think that he should be allowed to get another
09:31:50  21   attorney.  And I'm urging, Your Honor, that if nothing else,
09:31:54  22   you grant us a continuance so that Mr. Diehl can have an
09:31:58  23   opportunity to seek another lawyer.  And if he does not finally
09:32:02  24   get another lawyer, at least I can try to achieve some level of
09:32:11  25   rapport with Mr. Diehl that would allow me to continue, if he
```

09:32:15  1  can't get another lawyer, and have time to go over the
09:32:18  2  government's sentencing memorandum with him, the victim impact
09:32:22  3  statement that we received, I don't know, yesterday, was it or
09:32:26  4  day before?  I'm not sure when.
09:32:28  5           PROBATION OFFICER:  That's correct.
09:32:29  6           MR. ORR:  It was yesterday?
09:32:30  7           PROBATION OFFICER:  Day before yesterday.
09:32:32  8           MR. ORR:  Day before.  And I think that the victim
09:32:35  9  impact statement is fairly serious.  There's some -- I need to
09:32:39 10  be prepared on that.  I can't get prepared from Monday to today
09:32:42 11  on something like that.  So I'm urging that, if nothing else,
09:32:46 12  you give us a continuance of 30 days so that we can try to work
09:32:50 13  this out.
09:32:53 14           THE COURT:  Mr. Diehl, come forward, and you can pull
09:32:57 15  that microphone down so you can speak into it.  You know the
09:33:06 16  letter to which we have been referring, the one you recently
09:33:09 17  sent to me that I received on Friday; is that correct?
09:33:12 18           THE DEFENDANT:  Yes, Your Honor.
09:33:13 19           THE COURT:  I'm not instructing you, as I said
09:33:15 20  earlier, to breach the attorney-client privilege in any way or
09:33:20 21  tell me anything you may have -- any discussions you may have
09:33:23 22  had with your lawyer.  Within that you indicate you have fired
09:33:29 23  your attorney, Mr. Orr; is that correct?
09:33:31 24           THE DEFENDANT:  Yes, sir.
09:33:32 25           THE COURT:  Now, what steps have you taken to find a

```
09:33:37   1  new attorney?
09:33:38   2              THE DEFENDANT:  Mr. Orr and I discussed replacing him
09:33:42   3  with his partner, Mr. Olavson.  And I thought we had that
09:33:48   4  done.  That way it would not disrupt this hearing.  Mr. Orr
09:33:53   5  sent me a letter saying that that was going to be okay, that
09:33:56   6  there was going to be some financial differences which I was
09:34:00   7  willing to pay.  And then last week I was informed that he
09:34:03   8  would not take this case for personal reasons; and, therefore,
09:34:08   9  I was put into this position of not having anybody.
09:34:15  10              THE COURT:  All right.  What steps, if I were to
09:34:20  11  grant you some time, would you take to try to attempt to find
09:34:26  12  an attorney?  Are you aware of other attorneys -- other
09:34:29  13  criminal attorneys?  Do you have anyone in mind in the way of a
09:34:33  14  criminal attorney?  And you don't have to give me names.  I am
09:34:36  15  just -- I'm curious generically as to what you have done or
09:34:42  16  will do in the future if I were to grant, at a minimum, the
09:34:46  17  additional time Mr. Orr has requested.
09:34:48  18              THE DEFENDANT:  There are financial limitations I'm
09:34:51  19  up against, so that's a big factor.  I don't know whether me
09:34:54  20  and Mr. Orr can work something out in terms of getting refunds
09:34:58  21  to help finance the new attorney.  Otherwise, I might be in a
09:35:02  22  position of having to get a court-appointed one.  I don't know
09:35:07  23  how much it would cost for somebody just to pick up
09:35:09  24  sentencing.  I wouldn't assume it's that much, but I did talk
09:35:12  25  to one person.  He's not in the state.  He quoted in the
```

```
09:35:15   1  neighborhood of $20,000.
09:35:21   2              THE COURT:  All right.  You may be seated.  Do you
09:35:24   3  have anything else you'd like to add before I let you sit down.
09:35:28   4              THE DEFENDANT:  Yeah.  I was sentenced just briefly
09:35:32   5  in February.  And I --
09:35:33   6              THE COURT:  You weren't sentenced.
09:35:35   7              THE DEFENDANT:  I'm sorry.  My trial was -- I was
09:35:40   8  found guilty in February.  And since then I've been very, very
09:35:43   9  dogged about getting the sentence memorandum and the PSI
09:35:47  10  objections completed and to give -- sign off on those two
09:35:51  11  documents.  And there's a lot of cases that I went to the law
09:35:57  12  library and studied that I think are highly relevant to our
09:36:00  13  case, and, you know, they never got in to the PSI objections.
09:36:04  14  And I think the Court needs, you know, the time before the
09:36:07  15  sentencing to review those and to -- you know, it's way in our
09:36:12  16  favor to have that in addition to the sentencing memorandum.
09:36:16  17              And I did some research and talked over with some of
09:36:18  18  the lawyers and came up with a pretty specific defense in terms
09:36:22  19  of a variance.  And, you know, that didn't get in there either,
09:36:25  20  and it's been all this time.  You know, I kept thinking it
09:36:28  21  would, I kept thinking it would, and it just hadn't.  And here
09:36:31  22  we are.
09:36:32  23              THE COURT:  All right.  Thank you.  You may be
09:36:35  24  seated.  Mr. Devlin, does the government have anything the
09:36:38  25  government would like to say at this juncture about what we're
```

```
09:36:41   1  talking about, the letter and relationship between Mr. Orr and
09:36:44   2  Mr. Diehl?
09:36:45   3              MR. DEVLIN:  Well, Judge, I certainly have no inside
09:36:47   4  information, obviously, but I can tell you from my experience
09:36:50   5  with Mr. Diehl, which has been more extensive than my
09:36:54   6  experience with any other defendants, is that he's a
09:36:56   7  manipulative, narcissistic, defiant, hostile individual.  And I
09:37:02   8  don't know if any attorney is going to satisfy Mr. Diehl.
09:37:05   9              Along the way I know that he has been -- he thinks he
09:37:09  10  knows more than his lawyer.  I sat through a two-hour video
09:37:13  11  review with Mr. Diehl and Mr. Orr.  And, you know, despite
09:37:19  12  Mr. Orr's extensive experience, his longtime involvement as a
09:37:24  13  criminal defense attorney, Mr. Diehl constantly came across as
09:37:28  14  being smarter -- being the smartest person in the room,
09:37:31  15  certainly smarter than Mr. Orr.
09:37:33  16              I have a feeling he's never listened to Mr. Orr, that
09:37:36  17  he feels that he's -- he needs to be walking out of this
09:37:42  18  courtroom today with no jail time.  And short of that, it
09:37:45  19  doesn't matter who is going to be appointed to him.  We're
09:37:48  20  going to come up against this again and again and again,
09:37:51  21  whether he hires a lawyer or whether he gets one appointed to
09:37:54  22  him.
09:37:54  23              I've known Mr. Orr for 15 years.  I knew him when I
09:37:58  24  was over in the DA's office.  I've known him here the whole
09:38:02  25  time.  He's one of the best criminal defense lawyers out
```

09:38:05  1  there.  I know the Court has known him even longer than that,
09:38:08  2  and I don't see how Mr. Diehl is going to hire himself a better
09:38:11  3  lawyer than Mr. Orr.  I've seen Mr. Orr's work product in terms
09:38:16  4  of his objections, in terms of his motions at trial, in terms
09:38:20  5  of plea discussions, everything else, and there's not an
09:38:25  6  attorney out there who could have done a better job under the
09:38:28  7  circumstances than Mr. Orr.
09:38:29  8             This case is extraordinarily strong.  Mr. Diehl --
09:38:32  9  from the letter that you handed me, Judge, today that Mr. Diehl
09:38:36  10 sent, he's obviously having a lot of regrets that he didn't
09:38:40  11 jump at the chance that he was offered a long time ago in the
09:38:43  12 case to take a plea deal.  Now he's regretting that, and he's
09:38:46  13 turning around, as he's been doing with these offenses, and
09:38:49  14 he's blaming everybody but himself.
09:38:53  15            So I think this is just a delaying tactic.  If you
09:38:56  16 give him 30 days to hire another lawyer, we're going to be
09:39:00  17 hearing the same thing again when we come back for a sentencing
09:39:02  18 hearing.  He's not going to be happy with whoever that is.
09:39:05  19 He's not going to be satisfied that that attorney is doing
09:39:08  20 whatever it is that Mr. Diehl wants him to do to resolve or to
09:39:12  21 help him resolve this case.  And, again, I just don't see
09:39:16  22 anyone better than Mr. Orr staying on this case.  I'm sorry to
09:39:20  23 say that, because I'm sure Mr. Orr has had a very difficult
09:39:24  24 time with this defendant.  But any lawyer would.
09:39:26  25            So with that and with the superficial observations

```
09:39:30   1   I've been able to make of their attorney-client relationship
09:39:34   2   and knowing what I know about Mr. Diehl, I just think we're
09:39:38   3   just putting off the inevitable here.  I don't think he has any
09:39:42   4   claim whatsoever to ineffective assistance.  Whatever
09:39:46   5   difficulties he's having with Mr. Orr are going to be the same
09:39:47   6   ones he's going to have with anybody else.  So I'd ask the
09:39:50   7   Court to consider all of that.
09:39:52   8              THE COURT:  Mr. Orr?
09:39:52   9              MR. ORR:  Well, what Mr. Devlin says is speculation.
09:39:57  10   He doesn't know that Mr. Diehl won't find a lawyer that he
09:40:00  11   loves and trusts and believes will do him a good job.  And
09:40:03  12   sometimes the second lawyer would achieve some level of trust
09:40:07  13   with the client that the first lawyer can't.  I've taken over
09:40:10  14   lot of cases from other lawyers and done -- made the clients
09:40:14  15   happy.
09:40:15  16              Again, Mr. Diehl is charged with some very serious
09:40:21  17   stuff here.  He's potentially going to get --
09:40:25  18              THE COURT:  Actually, he's been convicted.
09:40:27  19              MR. ORR:  Convicted.  Excuse me.  Well, I ...
09:40:29  20              THE COURT:  We're beyond the charge.
09:40:31  21              MR. ORR:  I try to -- well, I guess one of the jobs
09:40:33  22   of a defense lawyer sometimes is to just ignore reality.
09:40:37  23              So he's been convicted.  He's now looking at being
09:40:41  24   sentenced and perhaps receiving large amounts of time.  Even if
09:40:47  25   Your Honor is not inclined to let me withdraw, we should get
```

```
09:40:50   1  more time to prepare just because we got the sentencing memo
09:40:54   2  and the victim impact statement at a bare minimum due process.
09:40:58   3  And effective assistance of counsel with Mr. Diehl, he needs
09:41:00   4  more time to consult with whoever his lawyer may be.
09:41:03   5          I would appreciate you allowing me to withdraw.  You
09:41:06   6  know, I've tried cases in this Court -- in the courtroom since
09:41:10   7  the early '70s, Your Honor.  I very, very rarely have ever
09:41:16   8  asked to withdraw in a case.  I did a jury trial in here one
09:41:19   9  time representing a lawyer who wrote me a hot check for the fee
09:41:22  10  and was still compelled to try the case and I did it.
09:41:26  11          I just think that Mr. Diehl, he needs -- he needs
09:41:30  12  another lawyer.  I think it's gone to the point where my
09:41:33  13  personal opinion and my representation to the Court is that he
09:41:37  14  ought to get another lawyer.  It may be that Mr. Olavson could
09:41:41  15  come in.  I don't think so.  I think he just -- he couldn't do
09:41:45  16  it.  Just didn't want to do it.  There was some discussion
09:41:47  17  about all of that.
09:41:49  18          But I think that just fundamental fairness and right
09:41:52  19  to effective assistance of counsel would -- I think would --
09:41:56  20  should allow Mr. Diehl to have the opportunity to get another
09:41:58  21  lawyer and I think I ought to be allowed to withdraw today,
09:42:02  22  frankly.  And I would assist any new counsel.  I would spend
09:42:08  23  whatever amount of time I need to bring them up to the speed
09:42:12  24  and get this case over with.
09:42:14  25          We've done an immense amount of research, and I just
```

```
09:42:20   1  think that the case could use a little more time to be prepared
09:42:24   2  for sentencing for various reasons outside the control of
09:42:28   3  Mr. Diehl or myself.
09:42:30   4          THE COURT:  Thank you.
09:42:45   5          Well, I'll make a couple of observations.  One with
09:42:49   6  regard to the time factor, the government's sentencing
09:42:53   7  memorandum was filed June the 13th, which was Monday.  And you
09:42:58   8  have indicated you need -- or some lawyer would need additional
09:43:02   9  time to respond to that sentencing memorandum.
09:43:05  10          And I will note in that sentencing memorandum the
09:43:08  11  government urges the Court to go above the projected guideline
09:43:15  12  range of 405 months.  So I do think it would be -- it would be
09:43:21  13  of use and benefit to the Court to have a response to that.
09:43:26  14  Further, I think the indication was that on -- what's today?
09:43:33  15  Wednesday? -- Monday you received the victim's impact letter
09:43:35  16  also; is that correct?
09:43:36  17          MR. ORR:  I thought it was maybe yesterday.
09:43:38  18          PROBATION OFFICER:  Your Honor, I received in my
09:43:40  19  office on Monday and made it available to Mr. Orr that day.
09:43:44  20  But I think you had a courier pick it up Tuesday morning.
09:43:47  21          MR. ORR:  Yeah.  I may not have.  Well --
09:43:49  22          THE COURT:  It doesn't matter whether it was Monday
09:43:51  23  or Tuesday.  It was this week, and we're here on Wednesday.
09:43:54  24          MR. ORR:  Right.
09:43:54  25          THE COURT:  And you have indicated that you need time
```

09:43:57  1  to respond to that.  I note from my review of all of the
09:44:02  2  information that I have previously received with regard to this
09:44:07  3  sentencing:  That on February the 8th we conducted a bench
09:44:19  4  trial in this case, and I believe it was on the 9th that I
09:44:23  5  found this defendant guilty of ten counts as charged.  And I
09:44:29  6  believe it was the second superseding indictment.  Under the
09:44:33  7  statute under which this defendant has been convicted, he
09:44:38  8  potentially faces 20 years confinement per count, or a
09:44:44  9  potential total of 200 years confinement.
09:44:49 10           The Probation Department, as you are aware from their
09:44:56 11  presentence investigation report applying the 2000 guidelines,
09:45:00 12  has indicated the correct guideline provision, if this Court
09:45:05 13  were to consider a guideline sentence, was 324 to 405 months.
09:45:11 14           Looking at the substantial potential penalties
09:45:17 15  against Mr. Diehl, because the statute also has a mandatory
09:45:25 16  ten-year minimum in it, I want to make sure that all issues and
09:45:33 17  aspects of this case, both from the prosecution's point of view
09:45:38 18  and the defendant's point of view, that could in any way impact
09:45:43 19  on my decision as to the appropriate sentence in this case be
09:45:49 20  presented to me.
09:45:53 21           That being said, that information can be presented to
09:45:58 22  me either by existing counsel or by new counsel.  Mr. Diehl has
09:46:06 23  indicated that he would like new counsel.  Mr. Orr has
09:46:09 24  indicated that he believes that would be a good idea due to
09:46:13 25  their relationship.

```
09:46:17   1              Mr. Diehl, I want to tell you that your
09:46:21   2   constitutional guaranty is to effective assistance of counsel,
09:46:26   3   not necessarily counsel of your choice.  I do pay careful
09:46:30   4   attention to what has been expressed by the government, that
09:46:34   5   the government has a concern that if I grant additional time or
09:46:39   6   I allow you to get another attorney, that there will never be
09:46:43   7   an attorney that is satisfactory to you and we will start down
09:46:46   8   a path of continuing delays.
09:46:49   9              I can assure that will not happen.  We're not going
09:46:52  10   to go through attorney after attorney after attorney.  I will
09:46:57  11   state that I believe that you have been extremely
09:47:00  12   well-represented in this case to date.  I have read everything
09:47:05  13   I have been provided on your behalf to date, and I have heard
09:47:09  14   Mr. Orr indicate that he would provide other materials if given
09:47:13  15   additional time to respond.
09:47:16  16              Mr. Orr, I'm not inclined to let you withdraw as
09:47:20  17   counsel today.  One, I do not want there to be a question about
09:47:29  18   a gap in representation of Mr. Diehl.  And, secondly, I want
09:47:34  19   this case to continue forward with the -- whatever responses
09:47:42  20   you feel are appropriate to protect Mr. Diehl.
09:47:47  21              What I will do is reset this sentencing hearing I
09:47:53  22   will continue it based on the letter I received from Mr. Diehl
09:47:57  23   for a reasonable period of time.  During that period of time,
09:48:02  24   Mr. Orr, you know, I want to see responses as you have
09:48:08  25   indicated you will file either by you or someone else.  And
```

```
09:48:12   1  Mr. Diehl, you are to continue to attempt to find counsel.
09:48:17   2           If you cannot do so, then I'm going to have to take
09:48:26   3  up the question with regard, then, to whether the Court should
09:48:32   4  appoint counsel for you.  And that will be dependent upon
09:48:36   5  another hearing that most likely will be conducted in the
09:48:39   6  presence of a magistrate as to whether or not you qualify for
09:48:44   7  court-appointed counsel.  It's not an immediate step if you
09:48:48   8  can't get a new counsel of your choosing to whether you qualify
09:48:51   9  for court-appointed counsel.  I want you to understand that.
09:48:58  10  And Mr. Orr, that could lead to the fact that you stay in the
09:49:02  11  case.
09:49:05  12           So what I'm going to do is reset this case for
09:49:16  13  approximately 30 days -- reset this sentencing.  And you,
09:49:27  14  Mr. Diehl, are to work diligently to obtain new counsel and you
09:49:32  15  are to make Mr. Orr aware of what you are doing, because if you
09:49:38  16  have obtained new counsel, then I will address that in the
09:49:45  17  context of the motion to withdraw and substitute counsel by
09:49:50  18  Mr. Orr.  So I don't want you to correspond directly with the
09:49:54  19  Court.  I want you to go through your existing lawyer so he
09:49:58  20  knows what is going on.  And I am going to reset this case for
09:50:08  21  sentencing on July the 20th at 2 p.m. in the afternoon.
09:50:19  22           Now, I would expect to hear something from the
09:50:26  23  defense within about two weeks.
09:50:30  24           MR. ORR:  Yes, sir.
09:50:32  25           THE COURT:  And, Mr. Orr, since I am not allowing you
```

09:50:36  1  to withdraw at this point, you need to be aware of, as I said,
09:50:41  2  the materials that you need to respond to.
09:50:43  3           MR. ORR:  Yes, sir.
09:50:44  4           THE COURT:  Mr. Devlin?
09:50:45  5           MR. DEVLIN:  Judge, may I speak for just a moment?
09:50:47  6           THE COURT:  You may.
09:50:47  7           MR. DEVLIN:  I did not address the continuance here
09:50:49  8  because I thought we were dealing with representation.  But I
09:50:52  9  wanted to note to the Court that we have a number of folks who
09:50:55 10  are here today who went out of their way to be here for this
09:50:59 11  hearing.  And I would respectfully ask the Court, if I might
09:51:04 12  have an opportunity in the next day or two, to find out if
09:51:08 13  they're going to be able to make it back for that sentencing
09:51:11 14  hearing.  Because I know at least right now, one of my agents
09:51:14 15  who I anticipated to present some information is apparently not
09:51:17 16  going to be available on that date.  And I hope the Court would
09:51:19 17  be receptive to reset that, if necessary.
09:51:21 18           THE COURT:  No.  I will very much so be receptive to
09:51:23 19  that, because I want this -- this is an important matter.  It's
09:51:27 20  not only important to the defendant.  It's important to the
09:51:29 21  people who are involved in this case.  I recognize that.
09:51:36 22           MR. DEVLIN:  Thank you, Your Honor.
09:51:37 23           THE COURT:  Well, I will tell you this at this
09:51:39 24  point:  I am more than willing to hold that date at this time
09:51:46 25  and just grant a continuance and have you speak with your

```
09:51:49   1   agents and the other people to find a time when everyone can be
09:51:55   2   here.  And then talk to Mr. Orr about that.  And if you want to
09:51:59   3   get back with me, you ought to be able to do that here this
09:52:03   4   morning.
09:52:03   5              MR. DEVLIN:  Yes, sir.
09:52:03   6              THE COURT:  Get back with me today on what a date
09:52:09   7   was.  I will withhold the order resetting it until I know a
09:52:12   8   date when everybody can be present.
09:52:15   9              MR. DEVLIN:  Thank you, Your Honor.
09:52:16  10              THE COURT:  Now, I will tell you you need to give me
09:52:18  11   a range on that, because this is not my only case, although
09:52:26  12   this is an important case.  And I would suggest to you -- I
09:52:30  13   picked the week of -- I picked the day of the 20th just because
09:52:35  14   there's a convenient gap in my schedule which was about 30 days
09:52:38  15   away.
09:52:39  16              I will tell you, if it suits everybody's schedule,
09:52:45  17   the 9th and 10th of August are not bad days to do this.  I have
09:52:51  18   criminal trials set the week August the 1st, which is a
09:52:56  19   problem.  I have a civil case that will be tried the week of
09:53:01  20   August the 15th.  Other potential days could fall within the
09:53:08  21   week of August the 22nd.  So discuss those days, because it is
09:53:15  22   not as simple as coming up with one day because of the rest of
09:53:20  23   the Court's docket.  Although, you know, cases sometimes settle
09:53:27  24   on the civil side and sometimes they don't go to trial on the
09:53:31  25   criminal side, but we can't rely on that.  And I would not want
```

```
09:53:35   1  to set -- reset this at a time when I know I have another case
09:53:39   2  set and then just have to push it down the line again.
09:53:43   3              MR. DEVLIN:  Yes, sir.  We appreciate your
09:53:44   4  considering that.  Thank you.
09:53:46   5              THE COURT:  Try to find a range within that period of
09:53:48   6  time.  And I will withhold an order at this point, but I would
09:53:53   7  like to hear back sometime today on what that scheduling is.
09:53:58   8              MR. DEVLIN:  Should we communicate with Ms. Jones
09:54:00   9  about that, Judge, or submit something formal?
09:54:02  10              THE COURT:  You can let Ms. Jones know, and she will
09:54:05  11  get with me.  It doesn't have to be formal.  My decision is to
09:54:09  12  continue the sentencing for two reasons:  Number one, if
09:54:13  13  Mr. Orr remains in the case, he has requested additional time
09:54:16  14  to respond to what came in this week.  And I presume, and I
09:54:20  15  want everybody to know, I'm not trying to bar anybody from
09:54:23  16  submitting materials they want to.  But every time things come
09:54:27  17  in from whatever side close in time to a sentencing, I'm going
09:54:31  18  to allow the other side an opportunity to respond to that.  If
09:54:34  19  Mr. Orr had filed things and Mr. Diehl had filed things this
09:54:38  20  week that you felt like you needed to respond to, I would grant
09:54:41  21  you the same thing I've granted him.
09:54:44  22              So the one reason I have granted the continuance is
09:54:47  23  to allow a fully developed record for purposes of the
09:54:50  24  sentencing hearing.  And the other reason is to see if
09:54:53  25  Mr. Diehl can work out his attorney problems.  So it wasn't on
```

```
09:54:58   1  any one basis that I postponed the case.
09:55:02   2              If you need -- if the two of you -- Mr. Devlin, after
09:55:05   3  you have found out from everyone what their availability is, if
09:55:12   4  we need to get us together by conference telephone call or in
09:55:16   5  my chambers today and just look at calendars and see what can
09:55:19   6  be worked out, I'll be more than happy to see y'all today.  I
09:55:23   7  do want to render an order today on this and get this
09:55:27   8  rescheduled.  So Mr. Devlin, anything further?
09:55:30   9              MR. DEVLIN:  No, Your Honor.
09:55:32  10              THE COURT:  Mr. Orr, anything further?
09:55:34  11              MR. ORR:  No, Your Honor.
09:55:34  12              THE COURT:  Mr. Diehl, anything further?
09:55:37  13              THE DEFENDANT:  No, sir.  No, Your Honor.
09:55:39  14              THE COURT:  All right.  Then at this time, the Court
09:55:42  15  is in recess.
09:55:44  16         (End of transcript)
          17
          18
          19
          20
          21
          22
          23
          24
          25
```

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

```
 1  UNITED STATES DISTRICT COURT      )

 2  WESTERN DISTRICT OF TEXAS         )

 3       I, Arlinda Rodriguez, Official Court Reporter, United

 4  States District Court, Western District of Texas, do certify

 5  that the foregoing is a correct transcript from the record of

 6  proceedings in the above-entitled matter.

 7       I certify that the transcript fees and format comply with

 8  those prescribed by the Court and Judicial Conference of the

 9  United States

10       WITNESS MY OFFICIAL HAND this the 28th day of

11  February 2012.

12

13                                  /S/ Arlinda Rodriguez
                                    Arlinda Rodriguez, Texas CSR 7753
14                                  Expiration Date:  12/31/2012
                                    Official Court Reporter
15                                  United States District Court
                                    Austin Division
16                                  200 West 8th Street, 2nd Floor
                                    Austin, Texas 78701
17                                  (512) 916-5143

18

19

20

21

22

23

24

25
```