1    **IN THE UNITED STATES DISTRICT COURT**
     **FOR THE WESTERN DISTRICT OF TEXAS**
2                **AUSTIN DIVISION**

3    UNITED STATES OF AMERICA,    )  AU:10-CR-00297(1)-LY
                                  )
4       Plaintiff,                )
                                  )
5    VS.                          )  AUSTIN, TEXAS
                                  )
6    DAVID ANDREW DIEHL,          )
                                  )
7       Defendant.                )  OCTOBER 17, 2011

8        **************************************************
                  TRANSCRIPT OF STATUS CONFERENCE
9
                  BEFORE THE HONORABLE LEE YEAKEL
10       **************************************************

11   APPEARANCES:

12   FOR THE PLAINTIFF:          MATTHEW B. DEVLIN
                                 ASSISTANT UNITED STATES ATTORNEY
13                               816 CONGRESS AVENUE, SUITE 1000
                                 AUSTIN, TEXAS 78701
14
     FOR THE DEFENDANT:          E.G. MORRIS
15                               LAW OFFICE OF E.G. MORRIS
                                 608 WEST 12TH STREET, SUITE B
16                               AUSTIN, TEXAS 78701

17   COURT REPORTER:             ARLINDA RODRIGUEZ, CSR
                                 200 WEST 8TH STREET
18                               AUSTIN, TEXAS 78701
                                 (512) 916-5143
19

20

21

22

23

24   Proceedings recorded by computerized stenography, transcript

25   produce by computer.

| | | |
|---|---|---|
| 13:29:56 | 1 | (In Chambers) |
| 13:29:56 | 2 | THE COURT: We're here this afternoon in chambers on |
| 13:30:01 | 3 | *United States v. Diehl*, Number 10-CR-297-LY. Mr. Matt Devlin |
| 13:30:09 | 4 | is here for the government. Defendant's counsel is also here, |
| 13:30:16 | 5 | as is the probation officer. Mr. Morris for the defendant. |
| 13:30:23 | 6 | What I wanted to talk about today is we're set a week |
| 13:30:28 | 7 | from today for the sentencing in Mr. Diehl's case. I have over |
| 13:30:33 | 8 | the past couple of weeks -- I guess now almost a month -- |
| 13:30:36 | 9 | received three different motions from the defense, one of which |
| 13:30:40 | 10 | is a Motion For Leave to File Additional Objections to the |
| 13:30:43 | 11 | Presentence Investigation Report, another one which is a Motion |
| 13:30:49 | 12 | to Exclude Impact Statement and Testimony, and the third one is |
| 13:30:52 | 13 | Motion to Disclose Potential Mitigating Evidence. |
| 13:30:55 | 14 | Based on my initial review, and I will say that I |
| 13:31:00 | 15 | have not looked at these in huge detail, this all seems to |
| 13:31:05 | 16 | revolve around testimony that the defense believes that the |
| 13:31:12 | 17 | government is going to put in evidence at the sentencing |
| 13:31:15 | 18 | hearing, which is currently set for October the 24th, 2011, of |
| 13:31:22 | 19 | a person who was not depicted in the evidence that was produced |
| 13:31:29 | 20 | at the trial of this cause, a person referred to as "S.B." |
| 13:31:37 | 21 | So what I wanted to get together and talk about is |
| 13:31:43 | 22 | what is the government's position on the motions? Does the |
| 13:31:48 | 23 | government intend to present evidence about this person? And |
| 13:31:56 | 24 | if so, what the government has that has not been previously |
| 13:32:07 | 25 | provided to the defendant, because clearly I think if the |

| | | |
|---|---|---|
| 13:32:10 | 1 | government is going to offer evidence in this regard, the |
| 13:32:14 | 2 | defense gets an opportunity to attempt to rebut it. |
| 13:32:18 | 3 | So, Mr. Devlin, I'll start with you.  Then I'll hear |
| 13:32:20 | 4 | from Mr. Morris.  And if Probation wants to chime in, you're |
| 13:32:28 | 5 | more than welcome.  So, Mr. Devlin, where are we here, and what |
| 13:32:34 | 6 | is the easiest way to satisfy the government's needs, the |
| 13:32:39 | 7 | defense's needs, and the Constitution of the United States? |
| 13:32:44 | 8 | MR. DEVLIN:  Okay. |
| 13:32:44 | 9 | THE COURT:  That shouldn't be very hard for you. |
| 13:32:46 | 10 | MR. DEVLIN:  Not at all, Judge.  Hopefully I can do |
| 13:32:47 | 11 | it in three sentences or fewer. |
| 13:32:49 | 12 | I'm going to respectfully disagree with your summary |
| 13:32:52 | 13 | of what I see is going on, and I'll tell you why. |
| 13:32:55 | 14 | THE COURT:  All right. |
| 13:32:56 | 15 | MR. DEVLIN:  We do not intend to present testimony of |
| 13:32:59 | 16 | S.B.  We never did intend to present her testimony, except at |
| 13:33:03 | 17 | trial.  And I did notify the defense through a 404(b) notice |
| 13:33:06 | 18 | that there was an allegation made by S.B. regarding an incident |
| 13:33:13 | 19 | in Williamson County in 2000 -- excuse me -- back in the time |
| 13:33:17 | 20 | frame we're talking about, about 2000, 1999, that wasn't |
| 13:33:20 | 21 | reported until 2008.  Beyond that, since we had the bench |
| 13:33:24 | 22 | trial, I had no intent whatsoever to call S.B. as a witness at |
| 13:33:28 | 23 | all. |
| 13:33:29 | 24 | Mr. Morris's concern -- and I'll let him obviously |
| 13:33:32 | 25 | correct this -- S.B. was at sentencing on -- back in June. |

| | | |
|---|---|---|
| 13:33:37 | 1 | THE COURT:  No.  Wait a minute -- |
| 13:33:39 | 2 | MR. DEVLIN:  At the sentencing hearing -- |
| 13:33:40 | 3 | THE COURT:  At the hearing, yes. |
| 13:33:41 | 4 | MR. DEVLIN:  Excuse me. |
| 13:33:41 | 5 | -- that was later continued.  She was there, to my |
| 13:33:44 | 6 | understanding, with the intent to come up and speak when the |
| 13:33:47 | 7 | Court opened the floor up for anybody to speak at sentencing. |
| 13:33:51 | 8 | In addition to that, her father was at the bench |
| 13:33:53 | 9 | trial that we had back in February.  And as a result of that, |
| 13:33:58 | 10 | he submitted to you what has been entitled a Victim Impact |
| 13:34:02 | 11 | Statement.  I don't know if that's really an accurate legal |
| 13:34:05 | 12 | description of what that should be.  I'd probably call it more |
| 13:34:08 | 13 | of a "citizen's statement," if you will, to describe to you |
| 13:34:11 | 14 | information that he wanted you to have for sentencing.  Okay. |
| 13:34:13 | 15 | S.B. is not a crime victim, as defined by federal |
| 13:34:19 | 16 | law, because she was not -- we did not charge Mr. Diehl with |
| 13:34:22 | 17 | having produced any child pornography in which she was a |
| 13:34:27 | 18 | victim.  And I think Mr. Morris was mistaken for some time in |
| 13:34:32 | 19 | believing that this other victim who was identified in the |
| 13:34:37 | 20 | presentence report was S.B., when, in fact, it was another |
| 13:34:39 | 21 | female whose last name escapes me.  Her first name, though, |
| 13:34:44 | 22 | begins with the letter "C" and I'll just refer to her as |
| 13:34:48 | 23 | "Victim C." |
| 13:34:48 | 24 | Victim C is the victim who was referenced in |
| 13:34:52 | 25 | paragraph 37 of the presentence report.  Victim C, to my |

13:34:56   1   knowledge, was not at sentencing.  S.B. is not a victim of this

13:35:00   2   case.  We believe frankly that she is a victim, but not of the

13:35:05   3   federal charges.  And so S.B. was simply there to speak to the

13:35:11   4   Court upon the open invitation at the appropriate time to say

13:35:17   5   whatever it was she was going to say.  I don't even know if she

13:35:20   6   would have spoken to the Court.  I know that she was prepared

13:35:23   7   to, but I don't know if she would have.

13:35:24   8          But that's what that statement was that you had

13:35:26   9   received on S.B.'s behalf that including the photographs and I

13:35:30   10  guess a description of the impact on that family.  So I wanted

13:35:33   11  to clarify that we do not intend to call her.

13:35:36   12         THE COURT:  That's not that much different than what

13:35:38   13  I said.

13:35:39   14         MR. DEVLIN:  Well, I just want to make sure.  You

13:35:40   15  were saying that we were going to put testimony on.

13:35:42   16         THE COURT:  No, I didn't.  I said I don't know if you

13:35:44   17  intend to.  I said Mr. Morris perceived, as I read the

13:35:49   18  motions --

13:35:49   19         MR. DEVLIN:  Okay.

13:35:50   20         THE COURT:  -- that you were intending to offer that.

13:35:51   21         MR. DEVLIN:  I think that -- I wanted you -- you came

13:35:53   22  up with an impression.  I wanted to make sure the impression

13:35:56   23  was ...

13:35:56   24         THE COURT:  No.  Far be it for me to ever try to

13:35:59   25  anticipate what either the government or the defense is going

13:36:00  1  to do at a sentencing hearing.

13:36:02  2        MR. DEVLIN:  And no offense intended.  I just wanted

13:36:04  3  to make sure that you were clear on the fact that we were not

13:36:07  4  intending to present her testimony, except that it was going to

13:36:10  5  possibly come up at trial.  But since we're now past trial and

13:36:14  6  we did not call her at trial, I have no intent -- and I've even

13:36:17  7  expressed to Mr. Morris -- I have no intent to call her as a

13:36:21  8  witness.  But that doesn't mean she won't speak at sentencing

13:36:24  9  when invited by the Court to do so.  So that's -- hopefully

13:36:27  10  that clarifies things.

13:36:28  11        So I do -- I do oppose this motion to the extent that

13:36:33  12  he wants any additional information.  I did disclose as part of

13:36:36  13  the 404(b) notice filing way back when to Steve Orr when he was

13:36:42  14  on the case, there was a Williamson County Police report that

13:36:45  15  described the statement that was made by S.B., the allegations

13:36:49  16  and what have you.  And that has be disclosed to the defense.

13:36:52  17  That's all the information that I have.  That's all the

13:36:55  18  information I would intend to disclose.

13:36:57  19        I did probably -- I think he mentions -- Mr. Morris

13:37:01  20  mentions that I may have blacked out the name of the facility.

13:37:04  21  And I did that frankly for privacy reasons.  I don't think it

13:37:08  22  needed to be looked into any further.  Obviously, if it became

13:37:11  23  relevant at trial and the Court ordered me to do that, we would

13:37:16  24  comply.  But I wanted -- I'm assuming that Mr. Diehl is getting

13:37:20  25  this information, which is fine.  But I don't want him to know

| | | |
|---|---|---|
| 13:37:22 | 1 | where she was or have him pry into her life either.  And that's |
| 13:37:26 | 2 | why I blacked that out. |
| 13:37:28 | 3 | But beyond that, I don't have any records, I have |
| 13:37:30 | 4 | nothing, and I don't feel I need to disclose anything since |
| 13:37:32 | 5 | she is not going to be a government witness. |
| 13:37:35 | 6 | THE COURT:  Mr. Morris? |
| 13:37:35 | 7 | MR. MORRIS:  I agree basically with the facts as |
| 13:37:37 | 8 | Mr. Devlin stated.  Mr. Devlin and I did talk about this |
| 13:37:41 | 9 | sometime before I filed this motion.  He told me that he did |
| 13:37:44 | 10 | not plan on calling her as a witness but couldn't assure me |
| 13:37:48 | 11 | that he wouldn't, depending on circumstances of -- |
| 13:37:50 | 12 | THE COURT:  I think he's just assured you he's not |
| 13:37:53 | 13 | going to call her as a witness. |
| 13:37:55 | 14 | MR. MORRIS:  The reason that I thought that she was |
| 13:37:57 | 15 | the person named in paragraph 37 of the PSR, Victim 4, I think |
| 13:38:03 | 16 | as we are calling, it is the addendum and the original PSI |
| 13:38:08 | 17 | reference that there was an attempt being made to get victim |
| 13:38:12 | 18 | impact statements from this unknown victim.  The addendum was |
| 13:38:16 | 19 | issued on I belive the 11th of June.  Then on the 13th of June, |
| 13:38:18 | 20 | previous counsel received from the probation officer letters |
| 13:38:21 | 21 | that were in the nature of victim impact statements.  So I |
| 13:38:25 | 22 | assumed that had to do with paragraph 37.  And I understand now |
| 13:38:29 | 23 | it didn't, so that changes the posture of things somewhat. |
| 13:38:33 | 24 | My concern is that, you know, having reviewed the |
| 13:38:40 | 25 | discovery that Mr. Devlin provided me with, S.B. would |

13:38:43   1   potentially say some very damaging things concerning

13:38:50   2   allegations against Mr. Diehl.

13:38:52   3        THE COURT:  Well, that may be true, but I think

13:38:58   4   people get an opportunity from the public to speak at

13:39:02   5   sentencings.  Go ahead.

13:39:06   6        MR. MORRIS:  The reason I'm concerned about her

13:39:08   7   speaking and the reason that I and my client didn't want to sit

13:39:13   8   still for it is because this case was no billed in Williamson

13:39:17   9   County.  It was presented to a grand jury there, and they

13:39:20  10   declined to indict.  It's not in the nature of Williamson

13:39:24  11   County to overlook serious allegations like this for whatever

13:39:29  12   reason.

13:39:31  13        As far as whether she -- a member of the public can

13:39:37  14   speak or not, she has a right to speak if she's a victim under

13:39:41  15   the Victim Rights Act.  I can't remember the acronym right now

13:39:48  16   that I cited argument cases in my motion.  Her ability to speak

13:39:51  17   otherwise is discretionary with the Court.  The Court can, as

13:39:55  18   the Court knows, consider anything that has sufficient indicia

13:39:59  19   of reliability, et cetera.

13:40:00  20        What I am suggesting to the Court is that, because

13:40:06  21   this is potentially very damaging information and is

13:40:10  22   potentially very much contested and is clearly not coming from

13:40:15  23   someone who's a victim as the law defines that of this offense,

13:40:19  24   that that -- that statement be excluded or that she be allowed

13:40:22  25   to speak after sentencing is pronounced, which by the way is

13:40:27  1  the procedure in state court to prevent -- to give people who

13:40:31  2  are grieved by an individual the right to publicly air their

13:40:38  3  feelings but at a time when it can't influence what the Court

13:40:41  4  does.

13:40:42  5          THE COURT:  Mr. Devlin, what's your reaction?

13:40:45  6          MR. DEVLIN:  I agree that she's not a crime victim,

13:40:49  7  but -- and I agree that, really, the only folks who have a

13:40:52  8  right to speak at sentencing are the defendant, his attorney,

13:40:55  9  the government, and then a crime victim.  I am personally not

13:40:59  10  clear on the basis for allowing anybody else to speak at

13:41:02  11  sentencing other than the discretion of the Court.

13:41:04  12          But it seems to me that if the Court is going to

13:41:06  13  exercise his discretion and allow anybody to come to speak to

13:41:10  14  sentencing, this is certainly selective in not letting her

13:41:14  15  speak.  But it's okay if, you know, 50 defense witnesses come

13:41:16  16  in or 50 defense-oriented folks come in and speak at

13:41:20  17  sentencing.  I mean, why isn't their statement excluded as

13:41:24  18  well?

13:41:24  19          Her statement is going to be unsworn, as all of these

13:41:27  20  statements are, not subject to cross-examination.  Certainly

13:41:30  21  the Court can -- is going to be well aware of that.  That's

13:41:35  22  certainly something that Mr. Morris can argue.  The fact that

13:41:37  23  it was no billed doesn't mean that it didn't happen.  It just

13:41:40  24  means Williamson County didn't pursue it to the extent that

13:41:44  25  they probably should have back in 2008.  But, nevertheless,

13:41:47  1  just because it's damaging to the defendant is not the basis

13:41:51  2  for excluding it if the Court is going to allow people to come

13:41:54  3  in and speak at sentencing.

13:41:56  4        It's a little bit of a twist, because 99 percent of

13:42:01  5  the time that process is looked upon as being very favorable to

13:42:05  6  defendants because mothers and grandmothers and friends come in

13:42:08  7  and say nice things about the defendant.  But suddenly when

13:42:11  8  it's turned the other way and someone wants to say something

13:42:15  9  that's not very nice, we're now wanting to subject it to

13:42:18  10  exclusion.  And I don't think that's an appropriate basis to do

13:42:21  11  that.

13:42:21  12        So, again, she will come in -- I don't know if she

13:42:24  13  will be there or not.  But assuming she is and assuming she

13:42:27  14  comes in to speak and assuming she comes in to speak

13:42:30  15  consistently with the statement that's been provided to you, I

13:42:32  16  think that is -- she has an equal right with anybody else who

13:42:36  17  wants to come in to be able to do that if you're going to open

13:42:39  18  up the floor for folks to be able to do that.

13:42:42  19        MR. MORRIS:  May I respond?

13:42:43  20        THE COURT:  You may.

13:42:43  21        MR. MORRIS:  I don't think this is quite the ordinary

13:42:45  22  case where several people come in and say good things about the

13:42:50  23  defendant or several people come in and speak about, for

13:42:52  24  instance, the impact of losing money in a fraud case or

13:42:55  25  something like that.  What S.B. is going to do is introduce

| | | |
|---|---|---|
| 13:43:00 | 1 | evidence of a completely separate offense, which is not part of |
| 13:43:05 | 2 | what Mr. Diehl was indicted for.  And, again, there's some |
| 13:43:12 | 3 | evidence at least that those claims are questionable, given the |
| 13:43:18 | 4 | actions of Williamson County. |
| 13:43:20 | 5 | What I'd ask for is the Court's discretion of not |
| 13:43:23 | 6 | considering this at sentencing.  If you are going to consider |
| 13:43:26 | 7 | it, then there's maybe a wealth of information as to -- that |
| 13:43:31 | 8 | would shed light on why it was no billed in her psychological |
| 13:43:35 | 9 | records that would be coming from this facility in San Diego. |
| 13:43:38 | 10 | And that would be what I would want to look at -- what |
| 13:43:41 | 11 | statements did she make, what were -- what were her diagnoses, |
| 13:43:44 | 12 | were there other instances of where she was untruthful about |
| 13:43:47 | 13 | something or fantasized about something.  I hate to speculate |
| 13:43:52 | 14 | as to what it would be, but certainly that's the first place |
| 13:43:55 | 15 | anybody would look. |
| 13:43:56 | 16 | MR. DEVLIN:  Judge, may I just briefly respond? |
| 13:43:59 | 17 | THE COURT:  Yeah. |
| 13:43:59 | 18 | MR. DEVLIN:  Again, that's the nature of these |
| 13:44:01 | 19 | unsworn statements.  I would love to be able to get up there |
| 13:44:04 | 20 | and question, say, the criminal history of some of the folks |
| 13:44:06 | 21 | who are coming in to say some good things about defendants.  We |
| 13:44:10 | 22 | don't do that.  We're not allowed to do that because, again, |
| 13:44:12 | 23 | it's the nature of the proceeding.  These are unsworn |
| 13:44:15 | 24 | statements.  And the Court is entitled to give them whatever |
| 13:44:18 | 25 | weight that the Court feels is appropriate for those |

13:44:20 1  statements.

13:44:21 2          Even with parents and brothers and sisters, a lot of

13:44:24 3  the folks coming in, frankly, in other cases have been looked

13:44:27 4  at under an investigation and not indicted for one reason or

13:44:32 5  another.  And, yet, we have not been able to present that to

13:44:35 6  the Court through cross-examination.  So, again, it's just kind

13:44:38 7  of what's good for the goose is good for the gander here.  It

13:44:41 8  just seems just as simply somebody who is coming in to say some

13:44:45 9  very unfavorable things about the defendant.  At least that's

13:44:49 10 what we anticipate.  It happens to be about a crime as opposed

13:44:53 11 to simply what their opinion is of the defendant.  That

13:44:56 12 shouldn't make a difference, and the Court is well equipped to

13:44:58 13 be able to put that in the proper perspective.

13:45:01 14         THE COURT:  Mr. Morris, anything further?

13:45:03 15         MR. MORRIS:  I think the issues are joined.

13:45:05 16         THE COURT:  All right.  Is the Motion For Leave to

13:45:08 17 File Additional Objections to the Presentence Investigation

13:45:09 18 Report moot, or is that still alive?  I don't really see that

13:45:17 19 what we're talking about here today constitutes an objection to

13:45:20 20 the presentence investigation report since you resolved the

13:45:25 21 question of who was involved in paragraph 37.

13:45:29 22         MR. MORRIS:  That's correct.  The only hesitation I

13:45:31 23 have was still objecting to the victim impact statements.  But

13:45:34 24 I guess those weren't submitted pursuant or ancillary to

13:45:39 25 paragraph 37.

| | | |
|---|---|---|
| 13:45:40 | 1 | THE COURT:  Yeah. |
| 13:45:41 | 2 | MR. MORRIS:  So you're correct. |
| 13:45:42 | 3 | THE COURT:  All right.  Then -- then to try to clean |
| 13:45:44 | 4 | this up, I'm going to deny the Motion For Leave to File |
| 13:45:47 | 5 | Additional Objections to the Presentence Investigation Report. |
| 13:45:50 | 6 | Now, the problem with the rest of it is this is not |
| 13:46:01 | 7 | Mr. Devlin's witness.  If I allowed this statement, she would |
| 13:46:12 | 8 | be -- S.B. would be a member of the public.  There is nothing |
| 13:46:18 | 9 | for Mr. Devlin to disclose about her because I presume you |
| 13:46:23 | 10 | don't have it in your file. |
| 13:46:25 | 11 | MR. DEVLIN:  I've disclosed what I do have regarding |
| 13:46:27 | 12 | her based on our prior 404(b) notice, but I don't have any of |
| 13:46:32 | 13 | this information beyond what has been supplied to the Court |
| 13:46:34 | 14 | through S.B.'s father. |
| 13:46:37 | 15 | THE COURT:  Well, I think Mr. Morris has everything |
| 13:46:40 | 16 | that has been supplied to me, don't you? |
| 13:46:42 | 17 | MR. MORRIS:  The only thing that I don't have that I |
| 13:46:45 | 18 | think Mr. Devlin has is the name of the facility where she was |
| 13:46:48 | 19 | treated. |
| 13:46:49 | 20 | THE COURT:  Well, and he's stated why he hadn't |
| 13:46:51 | 21 | provided that.  This will not be taken as testimony.  There |
| 13:47:04 | 22 | will not be any questions or cross-examination.  So if you had |
| 13:47:09 | 23 | this information, I don't know what you would do with it, |
| 13:47:13 | 24 | Mr. Morris.  And I don't know how I really order it for |
| 13:47:18 | 25 | somebody that is not a witness or party and is just going to |

13:47:23  1  show up from the public.

13:47:26  2          MR. MORRIS:  Frankly, what I would do with it if I

13:47:28  3  had it, Your Honor, would be object to not being able to use

13:47:32  4  it.

13:47:33  5          THE COURT:  That's probably right.  Well, I find that

13:47:38  6  because the government has provided all of what it has to the

13:47:45  7  defense regarding S.B. with the exception of the treatment

13:47:49  8  facility near San Diego, California -- and that was excluded

13:47:53  9  for privacy reasons, which I think is appropriate -- I'm going

13:47:58  10  to deny the Motion to Disclose Potential Mitigating Evidence.

13:48:04  11          Now, that leaves what we're going to do next Monday

13:48:08  12  if S.B. is here and desires to speak; and candidly, I want to

13:48:29  13  look at this a little more carefully.  We walk a fine line

13:48:34  14  here.  I understand what the government says about what applies

13:48:42  15  in one case ought to apply in the other, but that's not always

13:48:47  16  the face of the case here.  We have an individual, Mr. Diehl,

13:48:52  17  who is charged and has been convicted of an extremely serious

13:48:58  18  crime after a bench trial.

13:49:03  19          Both the guidelines and the statute render a

13:49:07  20  relatively long sentence.  Whether I were to impose a guideline

13:49:14  21  sentence or whether I were to go above or below the guidelines,

13:49:20  22  there is still an exceptional range of punishment that is

13:49:24  23  available here.  So I don't think it is as simple as that.

13:49:36  24          There's much more danger with a statement that may or

13:49:48  25  may not involve another crime in a case such as this than there

13:49:55  1  are with people who might say and will say good things about

13:50:05  2  the defendant.  But I do not know if it is your intention,

13:50:13  3  Mr. Morris, to present a parade of witnesses to talk about what

13:50:21  4  a useful citizen Mr. Diehl is or can be, because it seems to me

13:50:30  5  then the government is allowed or would be allowed to in some

13:50:36  6  way to try to contest that.

13:50:42  7          Mr. Devlin says no.  He is happy to proceed with what

13:50:47  8  he's got.  But then S.B. comes up on her own, perhaps.  So I

13:50:53  9  think that's a -- I don't find that an easy matter.  So what

13:51:04  10  I'm going to do is to withhold ruling on your Motion to Exclude

13:51:09  11  Victim Impact Statement and Testimony briefly -- because I want

13:51:14  12  both of you to know what you're going to be in a position to

13:51:18  13  have to deal with on Monday -- while I do a little additional

13:51:22  14  work on it and will notify you accordingly as quickly as we

13:51:27  15  can, hopefully by no later than Wednesday, so you know where

13:51:34  16  you are on this and what's likely to appear.

13:51:39  17          My belief is, due to the fact that the father was

13:51:44  18  here during the trial and I believe he's the statement that

13:51:48  19  made -- the person that made a comment at one point when

13:51:50  20  Mr. Diehl was being led from the courtroom.  I was told there

13:51:54  21  was a statement made.  I didn't hear it.  And the fact that

13:51:58  22  S.B. was here once and the fact that as we granted additional

13:52:04  23  time, Mr. Morris, for you to come up to speed, we allocated

13:52:08  24  enough time to fit into the schedules of the people from the

13:52:11  25  public who might have wanted to appear here, I think for

| | | |
|---|---|---|
| 13:52:15 | 1 | purposes of determining what we're going to do, we might as |
| 13:52:18 | 2 | well just presume S.B. is going to be here.  And so I'm |
| 13:52:21 | 3 | confronted with the question of what to do about it, and I want |
| 13:52:25 | 4 | to look at that a little more closely. |
| 13:52:28 | 5 | So we remain set for Monday.  It is my intention to |
| 13:52:32 | 6 | get the sentencing done on Monday, and I will get something to |
| 13:52:41 | 7 | you as quickly as possible on this last remaining item. |
| 13:52:46 | 8 | Does anybody, including Ms. Shifflett with Probation, |
| 13:52:49 | 9 | have anything else they want to raise or say anything about |
| 13:52:52 | 10 | while I've got you all together about anything that's going to |
| 13:52:56 | 11 | occur on Monday? |
| 13:52:58 | 12 | MR. MORRIS:  I don't know if this will make any |
| 13:53:01 | 13 | difference or not.  I do not intend to present any live |
| 13:53:05 | 14 | statements or testimony on Mr. Diehl's behalf.  I do intend to |
| 13:53:09 | 15 | submit a letter from his father and perhaps one more individual |
| 13:53:15 | 16 | that knows him. |
| 13:53:16 | 17 | THE COURT:  Letters or live testimony? |
| 13:53:19 | 18 | MR. MORRIS:  Letters. |
| 13:53:20 | 19 | THE COURT:  Okay. |
| 13:53:23 | 20 | MR. MORRIS:  And if this really hinges on whether I |
| 13:53:28 | 21 | submit those letters or not, I would consult with my client |
| 13:53:33 | 22 | about submitting those -- the wisdom of submitting those. |
| 13:53:36 | 23 | MR. DEVLIN:  Again, I guess -- well, it shouldn't, |
| 13:53:38 | 24 | again, if the Court's going to open up the floor.  My question, |
| 13:53:42 | 25 | Judge, to you in light of your comments is, if S.B. walks up to |

13:53:47  1  the podium after you've open the floor up to folks, what is

13:53:51  2  going to be the procedure?

13:53:57  3          THE COURT:  Well, if I open the floor up to other

13:53:59  4  folks, it has generally been my procedure to just allow people

13:54:04  5  to make their statements.  We -- I don't think I've had a

13:54:09  6  situation where I've had questions from either defense or

13:54:15  7  government or anybody even requesting to question people.  They

13:54:21  8  go up, they make stair statements, and they return to the

13:54:24  9  audience.

13:54:25 10          MR. DEVLIN:  Right.

13:54:25 11          THE COURT:  The only time that there's been

13:54:27 12  questioning is if it's a government witness that the government

13:54:30 13  feels that the government needs to put on.  And in the past,

13:54:36 14  that's generally been to substantiate the calculations in the

13:54:41 15  presentence investigation report, and it usually involves

13:54:46 16  relevant conduct.  And then, of course, in that case where a

13:54:49 17  witness is called, they are put on the stand and sworn, and the

13:54:52 18  government does what the government will do with the witness

13:54:55 19  and the defense gets a chance to cross-examine.

13:54:58 20          But my feeling on this would be that it's like what I

13:55:05 21  generally open up in the audience and people can come forward

13:55:08 22  and have their say and there won't be questioning involved.

13:55:11 23          MR. DEVLIN:  I guess my question was really in the

13:55:13 24  context of your holding decision on this motion in abeyance I

13:55:19 25  guess pending whatever develops on Monday.

| | | |
|---|---|---|
| 13:55:22 | 1 | THE COURT:  No.  I hope to rule on this Wednesday. |
| 13:55:24 | 2 | MR. DEVLIN:  Oh, before that.  Okay. |
| 13:55:25 | 3 | THE COURT:  Yeah.  I just want to look at it a little |
| 13:55:27 | 4 | bit and determine what I want to do.  This is different than |
| 13:55:30 | 5 | the normal case I get for a lot of reasons, not the least of |
| 13:55:34 | 6 | which I generally don't have bench trials in criminal cases. |
| 13:55:38 | 7 | This was a bench trial, so I've already seen the evidence.  I |
| 13:55:41 | 8 | know what the -- the evidence of the crime is.  I would have |
| 13:55:44 | 9 | seen that had it been a jury case also. |
| 13:55:48 | 10 | But we have had this set a couple of times.  I have |
| 13:55:53 | 11 | been through the presentence investigation report pretty |
| 13:55:57 | 12 | thoroughly.  I have been through everything that I have |
| 13:56:02 | 13 | received pretty thoroughly.  Just because somebody makes a |
| 13:56:07 | 14 | statement doesn't mean that I necessarily consider that.  I |
| 13:56:12 | 15 | don't always consider everything that's said in the courtroom |
| 13:56:16 | 16 | in determining what I think the appropriate sentence under |
| 13:56:20 | 17 | Title 18, Section 3553 is to be.  But that's what I want to |
| 13:56:29 | 18 | think through before I determine what I'm going to do here. |
| 13:56:33 | 19 | But I'm not going to carry it until I see what goes |
| 13:56:37 | 20 | on at the sentencing hearing.  I'm going to make a decision as |
| 13:56:40 | 21 | to what I am going to do with regard to S.B. at a time |
| 13:56:46 | 22 | hopefully very quickly, when you both will know what it is, and |
| 13:56:50 | 23 | so everyone will know what I'm going to be considering.  And |
| 13:56:56 | 24 | that will be based on a ruling with regard to Mr. Morris's |
| 13:57:05 | 25 | motion where I say I'm going to consider it or I'm not going to |

13:57:10   1   consider it.

13:57:13   2          And I don't know what effect that will have on her

13:57:17   3   and her father if I were to rule that I'm not going to consider

13:57:20   4   it.  But I'm going to make that ruling ahead of time, so

13:57:26   5   everyone will know.  It is possible one of the options is to

13:57:33   6   allow her to speak but let it be known at the beginning that

13:57:37   7   I'm not going to consider it for purposes of the sentence that

13:57:40   8   I'm going to impose at the close of the evidence.  There's

13:57:46   9   options available out there, and that's want I want to think

13:57:50   10  through.

13:57:50   11         MR. DEVLIN:  Okay.  So I just want to make clear,

13:57:52   12  too, we're not -- I'm basically going to concede that her

13:57:56   13  statement to you in writing that's already been submitted is

13:58:00   14  not an victim impact statement since she's not a crime victim.

13:58:03   15  So I hope that your decision will not hinge on the

13:58:05   16  characterization of that statement.  If we could change that to

13:58:08   17  a citizen statement or something else, I'm not going to urge it

13:58:12   18  on the Court as a victim impact statement.  But it will be just

13:58:16   19  a statement just like the statement from his dad -- from

13:58:20   20  Mr. Diehl's dad.  It's just a statement submitted to you for

13:58:23   21  your consideration regardless of what the title is on it.  I

13:58:26   22  don't have it in front of me.  I haven't looked at it lately.

13:58:30   23  It may not say "Victim Impact Statement."  And if it doesn't,

13:58:34   24  then that's fine.

13:58:35   25         THE COURT:  Well, why don't we take a look at it.

| | | |
|---|---|---|
| 13:58:37 | 1 | MR. MORRIS:  I think the fax from Probation says |
| 13:58:43 | 2 | something about "Impact Victim Statement."  I think that's |
| 13:58:46 | 3 | where I got that language. |
| 13:58:48 | 4 | PROBATION OFFICER:  To be honest, Judge, I wasn't |
| 13:58:50 | 5 | sure how I addressed it in the addendum.  The reason I included |
| 13:58:54 | 6 | it is my understanding with Williamson County when I spoke with |
| 13:58:58 | 7 | the prosecutor there or the investigator is that they were -- |
| 13:59:03 | 8 | their intent was at the time when I wrote the report was they |
| 13:59:06 | 9 | were going to present again to the grand jury.  Obviously, they |
| 13:59:13 | 10 | have not done that.  But that was the information I had at the |
| 13:59:16 | 11 | time. |
| 13:59:25 | 12 | THE COURT:  Did you attach it? |
| 13:59:27 | 13 | MR. DEVLIN:  I've seen it. |
| 13:59:28 | 14 | PROBATION OFFICER:  Yes, sir.  It was attached to the |
| 13:59:30 | 15 | addendum. |
| 13:59:31 | 16 | MR. MORRIS:  I believe it was a separate fax, I think |
| 13:59:35 | 17 | two days later. |
| 13:59:38 | 18 | MR. DEVLIN:  I think it was separate as well because |
| 13:59:38 | 19 | it's not part of my addendum. |
| 13:59:38 | 20 | MR. MORRIS:  Yeah.  I put in my motion that the |
| 13:59:40 | 21 | addendum came on the 10th and the letter came on the 13th.  I |
| 13:59:44 | 22 | didn't bring the -- bring the letters. |
| 13:59:47 | 23 | THE COURT:  Here it is.  No. |
| 13:59:54 | 24 | PROBATION OFFICER:  That's the father.  Right.  And |
| 14:00:02 | 25 | it was a letter. |

14:00:03  1            MR. DEVLIN:  One of them is entitled Victim --

14:00:07  2  Victim's -- Victim, with an apostrophe "S," impact statement

14:00:10  3  from S.B.'s father.

14:00:12  4            THE COURT:  I have two letters, one as which is as

14:00:14  5  described by Mr. Devlin.  And it's got the typed names at the

14:00:18  6  bottom of Janet and Jim Brigham.

14:00:21  7            PROBATION OFFICER:  Correct.

14:00:22  8            THE COURT:  And a second one which appears to be a

14:00:24  9  letter addressed to prisoner David Diehl.

14:00:27  10           PROBATION OFFICER:  Correct.

14:00:28  11           THE COURT:  So that's what we're talking about in the

14:00:30  12  way of statements.

14:00:31  13           MR. DEVLIN:  And there were photographs, I thought.

14:00:32  14           PROBATION OFFICER:  Yes.  there were photographs

14:00:33  15  attached to it as well.

14:00:35  16           MR. DEVLIN:  Yes.  There it is.

14:00:37  17           THE COURT:  Yeah.  And the photograph of her in the

14:00:39  18  hospital bed -- several photographs of her in the hospital bed.

14:00:47  19           All right.  Okay.  I'll get something.

14:00:53  20           PROBATION OFFICER:  Judge, can I just clarify one

14:00:55  21  little thing?

14:00:56  22           THE COURT:  You may.

14:00:57  23           PROBATION OFFICER:  I note in Mr. Morris's motion as

14:01:00  24  well there were objections to some language.  In the personal

14:01:03  25  history section, I just wanted to make sure that we're not

| | | |
|---|---|---|
| 14:01:07 | 1 | addressing those. |
| 14:01:08 | 2 | MR. MORRIS:  There was one other objection that I |
| 14:01:11 | 3 | requested leave to file -- Mr. Diehl asked me to file that had |
| 14:01:15 | 4 | to do with the characterization of -- in the PSI that he began |
| 14:01:20 | 5 | watching child pornography at a certain time.  His -- he thinks |
| 14:01:26 | 6 | that the language is important.  What he in fact said was that |
| 14:01:29 | 7 | he first saw child pornography at the particular time.  "Began |
| 14:01:34 | 8 | watching" in his mind indicates that there was an ongoing |
| 14:01:38 | 9 | frequent course of action. |
| 14:01:39 | 10 | THE COURT:  Why don't you just change that.  Is that |
| 14:01:42 | 11 | a problem? |
| 14:01:44 | 12 | PROBATION OFFICER:  Well, I'm not -- I wasn't sure. |
| 14:01:46 | 13 | THE COURT:  I don't know what the difference is. |
| 14:01:48 | 14 | PROBATION OFFICER:  Right. |
| 14:01:49 | 15 | THE COURT:  But, again, to try to avoid things we |
| 14:01:53 | 16 | don't need to have, what difference does it make to the |
| 14:01:58 | 17 | government or to probation if it says that he first viewed as |
| 14:02:02 | 18 | opposed to began watching.  I think that's the difference. |
| 14:02:08 | 19 | PROBATION OFFICER:  Again, I don't have a problem |
| 14:02:12 | 20 | but, you know, I know when we interviewed -- when I interviewed |
| 14:02:16 | 21 | him, certain languages -- but to me, it's semantics. |
| 14:02:21 | 22 | THE COURT:  Well, it is a direct quote or is it |
| 14:02:24 | 23 | semantics?  If it's a direct quote, it's one thing.  If it's |
| 14:02:28 | 24 | interpretation, it's another thing. |
| 14:02:30 | 25 | PROBATION OFFICER:  When I questioned him, I |

14:02:31  1  specifically asked when did he begin viewing, is the word I

14:02:34  2  used -- viewing child pornography.

14:02:36  3          THE COURT:  So what specifically was his answer?  Did

14:02:38  4  he just give you a date or did he say, "I first observed ..."

14:02:42  5          PROBATION OFFICER:  He told me he began viewing child

14:02:46  6  pornography in a certain year.  And I don't have my --

14:02:49  7  obviously, I don't have my notes in front of me.

14:02:51  8          THE COURT:  I don't think it's going to make any

14:02:53  9  difference to the Bureau of Prisons.

14:02:54  10          MR. MORRIS:  It makes no difference to anyone but

14:02:57  11  Mr. Diehl, and that's why he's instructed me to file -- file

14:03:02  12  the objection.  I think that he believes that what he intended

14:03:08  13  to import and what he thinks he said was, I first saw child

14:03:12  14  pornography at a particular time and didn't intend to connote

14:03:15  15  that it was -- that he began a practice at that point of

14:03:18  16  viewing child pornography.

14:03:20  17          PROBATION OFFICER:  And I think there's also

14:03:22  18  reference to the fact that he indicated to me that his

14:03:24  19  preference was young girls between the ages of this age and

14:03:30  20  this age was also called into question.  And so I just -- I was

14:03:34  21  just trying to clarify as far as the objections.  Again,

14:03:39  22  it's --

14:03:39  23          THE COURT:  Well, how much time do y'all anticipate

14:03:49  24  we would spend on this?  It just seems to me that if it's

14:03:54  25  something as minor as some wording, it wouldn't be a problem

| | | |
|---|---|---|
| 14:04:00 | 1 | for you to add another addendum and we get this behind us. |
| 14:04:04 | 2 | I will tell you from my point of view in determining |
| 14:04:06 | 3 | what I'm going to take into account in assessing a sentence, it |
| 14:04:10 | 4 | makes no difference to me whether it says I began watching or I |
| 14:04:15 | 5 | first saw, watched, or observed.  That is not where -- you |
| 14:04:23 | 6 | know, what I'm looking at in order to determine what I think |
| 14:04:26 | 7 | is -- is an appropriate sentence in this case. |
| 14:04:31 | 8 | PROBATION OFFICER:  Yeah.  I'd be glad to address it |
| 14:04:36 | 9 | in a second addendum based upon, you know, it's basically |
| 14:04:40 | 10 | the -- my questioning and this is how he responded, because I'm |
| 14:04:44 | 11 | not going to be here Monday.  And so I just wanted to make sure |
| 14:04:47 | 12 | that everything is addressed. |
| 14:04:48 | 13 | THE COURT:  Why don't you get us an addendum that |
| 14:04:51 | 14 | states whatever you want to state in the addendum. |
| 14:04:56 | 15 | PROBATION OFFICER:  Yes, sir. |
| 14:04:57 | 16 | THE COURT:  And you can show at the appropriate time |
| 14:05:00 | 17 | to Mr. Diehl the addendum and say that you brought it up and |
| 14:05:05 | 18 | that I've instructed the probation office to do an addendum on |
| 14:05:09 | 19 | this.  Does that work for you, Mr. Devlin? |
| 14:05:11 | 20 | MR. DEVLIN:  Whatever the Court wants.  Mr. Diehl -- |
| 14:05:16 | 21 | you know, this is he said what he said to the probation |
| 14:05:20 | 22 | officer. |
| 14:05:20 | 23 | THE COURT:  I know. |
| 14:05:21 | 24 | MR. DEVLIN:  He said what he said to his attorney. |
| 14:05:23 | 25 | THE COURT:  And you can put it in the addendum that |

| | | |
|---|---|---|
| 14:05:28 | 1 | you understood his statement to be ... |
| 14:05:30 | 2 | PROBATION OFFICER:  Yes, sir. |
| 14:05:30 | 3 | THE COURT:  And that the attorney has said, and |
| 14:05:32 | 4 | you're aware of that, that what he meant to convey was such and |
| 14:05:37 | 5 | such. |
| 14:05:38 | 6 | PROBATION OFFICER:  Yes, sir.  I will do that.  I |
| 14:05:39 | 7 | just wanted to -- |
| 14:05:40 | 8 | THE COURT:  And that way it's an addendum to the PSI, |
| 14:05:43 | 9 | so for whatever purpose the Bureau of Prisons might use it or |
| 14:05:46 | 10 | anybody that has the PSI.  And you may tell Mr. Diehl that, |
| 14:05:51 | 11 | candidly, when I read the report, I read through that |
| 14:05:54 | 12 | language.  That is not one of the areas that I'm looking at in |
| 14:05:57 | 13 | determining what kind of sentence to impose in this case. |
| 14:06:01 | 14 | So trying to make sure everybody is okay here.  We |
| 14:06:06 | 15 | have enough huge issues in this case on sentencing and a big |
| 14:06:12 | 16 | enough sentencing range to where I've got my work cut out for |
| 14:06:17 | 17 | me anyway.  And this is not something that I'm going to dwell |
| 14:06:20 | 18 | on. |
| 14:06:20 | 19 | PROBATION OFFICER:  Yes, sir. |
| 14:06:21 | 20 | THE COURT:  So let's do that. |
| 14:06:22 | 21 | All right.  So other than the motion to exclude, I |
| 14:06:26 | 22 | think we've done everything else; is that correct? |
| 14:06:29 | 23 | MR. DEVLIN:  Yes, sir. |
| 14:06:29 | 24 | THE COURT:  Anything else, Mr. Devlin? |
| 14:06:31 | 25 | MR. DEVLIN:  No, sir. |

| 14:06:31 | 1 | THE COURT:  Anything else, Mr. Morris? |
| 14:06:33 | 2 | MR. MORRIS:  No, Your Honor. |
| 14:06:34 | 3 | THE COURT:  Anything else, Ms. Shifflett? |
| 14:06:35 | 4 | PROBATION OFFICER:  No, sir. |
| 14:06:36 | 5 | THE COURT:  All right.  See you all Monday, and we |
| 14:06:38 | 6 | will do what we can.  Thanks for being available. |
| 0:0:0 | 7 | (End of transcript) |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1  **UNITED STATES DISTRICT COURT    )**

2  **WESTERN DISTRICT OF TEXAS        )**

3      I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7      I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States

10     WITNESS MY OFFICIAL HAND this the 1st day of March 2012.

11

12                          /S/ Arlinda Rodriguez
                            Arlinda Rodriguez, Texas CSR 7753
13                          Expiration Date:  12/31/2012
                            Official Court Reporter
14                          United States District Court
                            Austin Division
15                          200 West 8th Street, 2nd Floor
                            Austin, Texas 78701
16                          (512) 916-5143

17

18

19

20

21

22

23

24

25