# EXHIBIT B-1

1        **IN THE UNITED STATES DISTRICT COURT**
         **FOR THE WESTERN DISTRICT OF TEXAS**
2                    **AUSTIN DIVISION**

3  UNITED STATES OF AMERICA,     )  AU:10-CR-00297(1)-LY
                                  )
4     Plaintiff,                  )
                                  )
5  VS.                            )  AUSTIN, TEXAS
                                  )
6  DAVID ANDREW DIEHL,            )
                                  )
7     Defendant.                  )  FEBRUARY 7, 2011

8           ***********************************************
                    TRANSCRIPT OF BENCH TRIAL
9
              BEFORE THE HONORABLE LEE YEAKEL
10
                    VOLUME 1 OF 2
11          ***********************************************

12  APPEARANCES:

13  FOR THE PLAINTIFF:        MATTHEW B. DEVLIN
                              ASSISTANT UNITED STATES ATTORNEY
14                            816 CONGRESS AVENUE, SUITE 1000
                              AUSTIN, TEXAS 78701
15
    FOR THE DEFENDANT:        STEPHEN M. ORR
16                            ORR & OLAVSON
                              804 RIO GRANDE
17                            AUSTIN, TEXAS 78701

18  COURT REPORTER:           ARLINDA RODRIGUEZ, CSR
                              200 WEST 8TH STREET
19                            AUSTIN, TEXAS 78701
                              (512) 916-5143
20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.

Case 1:10-cr-00297-LY Document 218-1 Filed 12/05/16 Page 3 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 2 of 132

2

1                         **EXAMINATION INDEX**

2

3   SEAN MULLEN
         DIRECT BY MR. DEVLIN                    12
         CROSS BY MR. ORR                        43
4        REDIRECT BY MR. DEVLIN                  48
         RECROSS BY MR. ORR                      49
5
    KERRY JENKINS
6        DIRECT BY MR. DEVLIN                    58
         CROSS BY MR. ORR                        72
7
    KENNETH COURTNEY
8        DIRECT BY MR. DEVLIN                    87
         CROSS BY MR. ORR                       115
9        REDIRECT BY MR. DEVLIN                 145

10  N.A.D.
         DIRECT BY MR. ORR                      158

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:19-cr-00297-LY Document 219-1 Filed 12/05/16 Page 4 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 3 of 192

3

| | **EXHIBIT INDEX** | | |
|---|---|---|---|
| 1 | | | |
| 2 | | OFFD / | ADM |
| | Government | | |
| 3 | 1        Agreed Stipulation | 20 | 79 |
| 4 | 1-1      Video 3:49 | 20 | 22 |
| 5 | 1-1B     Still image | 22 | 22 |
| 6 | 1-1C     Still image | 22 | 22 |
| 7 | 1-1D     Still image | 22 | 22 |
| 8 | 1-1E     Still image | 22 | 22 |
| 9 | 1-1F     Still image | 22 | 22 |
| 10 | 1-1G     Still image | 22 | 22 |
| 11 | 1-1H     Still image | 22 | 24 |
| 12 | 1-1I     $1 million novelty bill | 24 | 20 |
| 13 | 1-2      Video 3:08 | 20 | 23 |
| 14 | 1-2B     Still image | 23 | 23 |
| 15 | 1-2C     Still image | 23 | 23 |
| 16 | 1-2D     Still image | 23 | 23 |
| 17 | 1-2E     Still image | 23 | 23 |
| 18 | 1-2F     Still image | 23 | 20 |
| 19 | 2        Video 1:20 | 20 | 25 |
| 20 | 2A       Still image | 25 | 20 |
| 21 | 3        Video 3:04 | 20 | 20 |
| 22 | 4-1      Video clip 3:44 (1:54) | 20 | 20 |
| 23 | 5-1      Video segment 6:20 | 20 | 20 |
| 24 | 5-2      Video segment 9:38 | 20 | 20 |
| 25 | 6        Video 0:34 | 20 | 20 |

Case 1:10-cr-00297-LY Document 218-1 Filed 12/05/16 Page 5 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 4 of 192

4

```
 1                    EXHIBIT INDEX (CONTINUED)

 2                                                     OFFD / ADM
      Government
 3    7         Video 5:02                               20     27

 4    7A        Still image                              27     27

 5    7B        Still image                              27     27

 6    7C        Still image                              27     27

 7    7E        Still image                              27     27

 8    7G        Still image                              27     20

 9    8         Video 4:21                               20     20

10    9-1       Video 0:26                               20     28

11    9-1A      Still image                              28     28

12    9-1B      Still image                              28     20

13    9-2       Video 0:16                               20     20

14    10        Video 0:41                               20     30

15    11        Video 40:30                              30     33

16    12A       Deed records Feb 1999 purchase           33     34

17    12B       Deed records Nov 2000 sale               34     35

18    12C       Star Ranch records                       35     35

19    12C-1     Star Ranch record                        35     36

20    12D       Seton medical records - June 2000        36     37

21    12E       TCSO accident report                     37     26

22    12F       Sealed document (protected victims)      26     20

23    13        Compilation of all videos under seal     20      7

24    Defendant
      1         E-mail from David Andrew Diehl          140    140
25
```

Case 1:10-cr-00297-LY Document 218-1 Filed 12/05/16 Page 6 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 6 of 132

5

| | | |
|---|---|---|
| 09:03:03 | 1 | (Open Court, Defendant present) |
| 09:03:03 | 2 | THE COURT:  Case calls for trial *United States v.* |
| 09:03:07 | 3 | *David Andrew Diehl*, Number A-10-CR-297-LY.  I'll hear |
| 09:03:15 | 4 | announcements first from the Government. |
| 09:03:16 | 5 | MR. DEVLIN:  Matthew Devlin for the United States, |
| 09:03:19 | 6 | Your Honor. |
| 09:03:19 | 7 | THE COURT:  Is the Government ready? |
| 09:03:20 | 8 | MR. DEVLIN:  Government is ready to proceed. |
| 09:03:22 | 9 | THE COURT:  And then for the defense? |
| 09:03:23 | 10 | MR. ORR:  Steve Orr for Mr. Diehl, Your Honor.  We're |
| 09:03:25 | 11 | ready. |
| 09:03:26 | 12 | THE COURT:  All right.  Is the defense ready. |
| 09:03:28 | 13 | MR. ORR:  Yes, sir. |
| 09:03:28 | 14 | THE COURT:  All right.  The defendant has been |
| 09:03:30 | 15 | charged in a second superseding indictment returned October the |
| 09:03:34 | 16 | 19th, 2010 by a grand jury impaneled in the Austin Division in |
| 09:03:39 | 17 | the Western District of Texas with ten counts of sexual |
| 09:03:45 | 18 | exploitation of a child and production of child pornography. |
| 09:03:53 | 19 | Does the defendant waive the reading of the |
| 09:03:55 | 20 | indictment, or does the defendant wish the indictment read? |
| 09:04:00 | 21 | THE DEFENDANT:  Waive reading of the indictment, |
| 09:04:00 | 22 | yes.  Yes, sir. |
| 09:04:01 | 23 | THE COURT:  Mr. Diehl, you're familiar with the |
| 09:04:03 | 24 | charges in the indictment? |
| 09:04:04 | 25 | THE DEFENDANT:  Yes, sir. |

Case 1:10-cr-00297-LY Document 218-1 Filed 10/05/16 Page 7 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/16 Page 6 of 192

6

| | | |
|---|---|---|
| 09:04:05 | 1 | THE COURT: And to such charges, how do you plead? |
| 09:04:08 | 2 | THE DEFENDANT: Not guilty. |
| 09:04:09 | 3 | THE COURT: All right. Very good. |
| 09:04:10 | 4 | Now, Mr. Orr, you may be seated or you may remain |
| 09:04:14 | 5 | standing. Mr. Diehl, I have got a couple of questions I want |
| 09:04:17 | 6 | to ask you. This case by agreement of the parties, by you and |
| 09:04:22 | 7 | the Government, is scheduled to be a bench trial which means |
| 09:04:26 | 8 | it's a trial to the Court, to me, and I will take up all |
| 09:04:32 | 9 | matters, both legal and factual, in this case and determine the |
| 09:04:36 | 10 | disputed facts in this case and apply the law to them. |
| 09:04:41 | 11 | You have previously signed a waiver of a jury trial. |
| 09:04:44 | 12 | Do you remember doing that? |
| 09:04:46 | 13 | THE DEFENDANT: Yes, sir. |
| 09:04:46 | 14 | THE COURT: And I previously accepted that waiver |
| 09:04:51 | 15 | after my review of it. But at this time I want to ask you: |
| 09:04:54 | 16 | You voluntarily signed that waiver of jury trial? |
| 09:04:57 | 17 | THE DEFENDANT: Yes, sir. |
| 09:04:58 | 18 | THE COURT: And you do understand that you have a |
| 09:05:00 | 19 | right to have a jury hear the charges against you and |
| 09:05:03 | 20 | deliberate and determine your guilt or innocence; is that |
| 09:05:08 | 21 | correct? |
| 09:05:08 | 22 | THE DEFENDANT: Yes, sir. |
| 09:05:09 | 23 | THE COURT: And your lawyer has explained that to |
| 09:05:10 | 24 | you? |
| 09:05:11 | 25 | THE DEFENDANT: Yes, sir. |

Case 1:10-cr-00297-LY Document 218-1 Filed 12/05/16 Page 8 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 7 of 132

7

| 09:05:11 | 1 | THE COURT: Do you continue to desire to waive your |
| 09:05:13 | 2 | right to trial by jury? |
| 09:05:15 | 3 | THE DEFENDANT: Yes, sir. |
| 09:05:15 | 4 | THE COURT: And you do that freely and voluntarily? |
| 09:05:18 | 5 | THE DEFENDANT: Yes, sir. |
| 09:05:18 | 6 | THE COURT: And nobody has promised you anything or |
| 09:05:20 | 7 | promised you what the outcome of this case may be if you try |
| 09:05:26 | 8 | the case to the Bench instead of to the jury; is that correct? |
| 09:05:29 | 9 | THE DEFENDANT: That's correct. |
| 09:05:30 | 10 | THE COURT: And you do understand, then, by waiving a |
| 09:05:32 | 11 | jury, that I will make all of the decisions in this case; is |
| 09:05:36 | 12 | that correct? |
| 09:05:36 | 13 | THE DEFENDANT: Yes, sir. |
| 09:05:37 | 14 | THE COURT: All right. Then the Court reaffirms the |
| 09:05:40 | 15 | acceptance of your waiver of trial by jury. |
| 09:05:43 | 16 | There further has been an agreed stipulation of facts |
| 09:05:48 | 17 | and evidence filed in this case which is signed by the attorney |
| 09:05:54 | 18 | for the Government, Mr. Devlin, and by your attorney, Mr. Orr, |
| 09:06:00 | 19 | and by you. Are you familiar with that stipulation of facts |
| 09:06:03 | 20 | and evidence? |
| 09:06:04 | 21 | THE DEFENDANT: Yes, sir. |
| 09:06:04 | 22 | MR. DEVLIN: And, Judge, if I may, may I go ahead at |
| 09:06:08 | 23 | this time move to admit Government Exhibit 1, which is the |
| 09:06:10 | 24 | agreed stipulation of facts of evidence and have you cover what |
| 09:06:13 | 25 | you need to about that? |

Case 1:10-cr-00297-LY Document 218-1 Filed 12/05/16 Page 9 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 9 of 132

8

| 09:06:14 | 1 | THE COURT: Mr. Orr, any objection to Government's |
| 09:06:15 | 2 | Exhibit Number 1. |
| 09:06:17 | 3 | MR. ORR: No, Your Honor. But I think we need to |
| 09:06:19 | 4 | make it clear on the record that that exhibit applies only for |
| 09:06:23 | 5 | this proceeding today; that we have specifically not agreed |
| 09:06:28 | 6 | that it may be used in any other proceeding in state or federal |
| 09:06:33 | 7 | court. |
| 09:06:33 | 8 | THE COURT: The Court admits Government Exhibit |
| 09:06:35 | 9 | Number 1, which is the Agreed Stipulation of Facts and |
| 09:06:39 | 10 | Evidence, which was signed by the Government and by the |
| 09:06:44 | 11 | defendant and by the attorney for the defendant on January |
| 09:06:49 | 12 | 27th, 2011 and filed January 31st, 2011. |
| 09:06:53 | 13 | The Court has previously reviewed that agreed |
| 09:06:58 | 14 | stipulation when it was filed, and I'm familiar with the |
| 09:07:01 | 15 | statements made in there. And I do note that the parties agree |
| 09:07:05 | 16 | and stipulate that the stipulation and the facts contained in |
| 09:07:10 | 17 | the stipulation are to be used solely for purposes of this |
| 09:07:14 | 18 | trial that we have commenced this morning and for no other |
| 09:07:18 | 19 | purpose. And the Court accepts it in that vein. |
| 09:07:22 | 20 | However, Mr. Diehl, I wish to advise you that |
| 09:07:27 | 21 | although I accept it and confirm and affirm that that is my |
| 09:07:31 | 22 | understanding of the stipulation, there is always a possibility |
| 09:07:37 | 23 | that some other judge, if there are any other cases that are |
| 09:07:42 | 24 | brought, might look at that. And at that point, you and your |
| 09:07:48 | 25 | attorney may need to argue as to what you stipulated to. |

Case 1:10-cr-00297-LY  Document 181  Filed 12/05/16  Page 10 of 193
Case 1:10-cr-00297-LY  Document 181  Filed 08/09/11  Page 9 of 192

9

| | | |
|---|---|---|
| 09:07:54 | 1 | So although I accept this stipulation solely for the |
| 09:07:58 | 2 | purposes of this trial today, it is not a guarantee that it |
| 09:08:05 | 3 | could not be used somewhere else.  It would just be against my |
| 09:08:09 | 4 | wishes.  Do you understand that? |
| 09:08:10 | 5 | THE DEFENDANT:  Yes. |
| 09:08:11 | 6 | THE COURT:  And you would have an opportunity to |
| 09:08:14 | 7 | object to it in any later trial or any later proceeding.  Do |
| 09:08:19 | 8 | you understand that? |
| 09:08:19 | 9 | THE DEFENDANT:  Yes, sir. |
| 09:08:20 | 10 | THE COURT:  All right.  You have read the agreed |
| 09:08:22 | 11 | stipulation that you signed; is that correct? |
| 09:08:26 | 12 | THE DEFENDANT:  I'm hoping it's the latest version |
| 09:08:28 | 13 | that I read. |
| 09:08:29 | 14 | THE COURT:  Well, let's be certain.  Mr. Orr, would |
| 09:08:31 | 15 | you please take the original that I just admitted into |
| 09:08:35 | 16 | evidence, and we'll take a couple of minutes and you can read |
| 09:08:41 | 17 | it. |
| 09:08:41 | 18 | MR. ORR:  I'm pretty sure it hasn't been altered |
| 09:08:45 | 19 | anywhere in the process, but I don't suppose it hurts for him |
| 09:08:47 | 20 | to take a look at it. |
| 09:08:51 | 21 | And while he's doing that, Your Honor, we do invoke |
| 09:08:53 | 22 | the Rule. |
| 09:08:54 | 23 | THE COURT:  All right.  The Rule has been invoked. |
| 09:08:57 | 24 | Mr. Devlin, is there any -- and Mr. Orr, is there anyone |
| 09:09:01 | 25 | present here in the courtroom that you intend to use as a |

Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 1 of 193
Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 11 of 193

10

| | | |
|---|---|---|
| 09:09:04 | 1 | witness in this case? |
| 09:09:10 | 2 | MR. DEVLIN:  I do have two -- two individuals, two |
| 09:09:13 | 3 | FBI Special Agents, Sean -- I mean, excuse me -- Jake Baillie |
| 09:09:17 | 4 | and Scott Jensen, who are here and I would ask that they be |
| 09:09:20 | 5 | excused from the Rule. |
| 09:09:22 | 6 | MR. ORR:  We have no problem with that, Your Honor. |
| 09:09:24 | 7 | They're case agents. |
| 09:09:25 | 8 | THE COURT:  All right.  Then I excuse the case agent |
| 09:09:28 | 9 | from the Rule.  Is there anyone else, Mr. Devlin or Mr. Orr, |
| 09:09:31 | 10 | present in the courtroom that is not a case agent or, in your |
| 09:09:34 | 11 | case, a party who might be called upon to testify in this case? |
| 09:09:40 | 12 | MR. DEVLIN:  No, Your Honor. |
| 09:09:40 | 13 | THE COURT:  All right.  Then I instruct both of you |
| 09:09:43 | 14 | to tell anyone that you may call as a witness who is not |
| 09:09:46 | 15 | present in the courtroom at this time that the Rule has been |
| 09:09:49 | 16 | invoked; that no witnesses are to talk about this case among |
| 09:09:53 | 17 | themselves or with any other person except when they're on the |
| 09:09:57 | 18 | witness stand and testifying in this courtroom; except the |
| 09:10:00 | 19 | witnesses may discuss the case with the lawyers for either |
| 09:10:04 | 20 | side.  So do you both understand that?  Mr. Devlin? |
| 09:10:06 | 21 | MR. DEVLIN:  Yes, Your Honor. |
| 09:10:09 | 22 | THE COURT:  Mr. Orr? |
| 09:10:10 | 23 | MR. ORR:  Yes, Your Honor. |
| 09:10:10 | 24 | THE COURT:  All right. |
| 09:10:43 | 25 | MR. ORR:  Your Honor, Mr. Diehl agrees that it's the |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 12 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 12 of 12

11

| | | |
|---|---|---|
| 09:10:45 | 1 | same. |
| 09:10:45 | 2 | THE COURT:  All right.  Mr. Diehl, that is the agreed |
| 09:10:47 | 3 | stip -- Government's Exhibit Number 1 is in fact the Agreed |
| 09:10:51 | 4 | Stipulation of Facts and Evidence which you signed; is that |
| 09:10:53 | 5 | correct? |
| 09:10:53 | 6 | THE DEFENDANT:  Yes, sir. |
| 09:10:54 | 7 | THE COURT:  And you're familiar with that? |
| 09:10:55 | 8 | THE DEFENDANT:  Yes, sir. |
| 09:10:56 | 9 | THE COURT:  And you reaffirm that the statements made |
| 09:11:00 | 10 | and the Agreed Stipulation of Facts and Evidence is true, and |
| 09:11:03 | 11 | the Court may proceed on the basis of the evidence that is |
| 09:11:06 | 12 | contained in that stipulation; is that correct? |
| 09:11:08 | 13 | THE DEFENDANT:  Yes, sir. |
| 09:11:10 | 14 | THE COURT:  And with regard to any witnesses who are |
| 09:11:12 | 15 | mentioned in that stipulation who might be called, you agree to |
| 09:11:17 | 16 | waive your right to confront and cross-examine those witnesses |
| 09:11:22 | 17 | and you understand what that means; is that correct? |
| 09:11:25 | 18 | MR. ORR:  Yes, Your Honor. |
| 09:11:26 | 19 | THE COURT:  All right.  Is there anything else the |
| 09:11:28 | 20 | Court -- I mean, either side desires me to go over or to do |
| 09:11:34 | 21 | before we proceed with the evidence in this case? |
| 09:11:36 | 22 | MR. DEVLIN:  No, Your Honor. |
| 09:11:37 | 23 | THE COURT:  Mr. Orr? |
| 09:11:38 | 24 | MR. ORR:  No, Your Honor. |
| 09:11:39 | 25 | THE COURT:  All right.  Government's Exhibit |

09:11:40  1  Number 1, having been accepted into evidence, the Court has

09:11:45  2  that exhibit before it as evidence.  Mr. Devlin, if you have

09:11:50  3  additional witnesses to call, you may call your first witness

09:11:53  4  at this time.

09:11:53  5          MR. DEVLIN:  Thank you, Your Honor.  And just for

09:11:56  6  formality's sake, we do waive an opening statement.

09:11:58  7          MR. ORR:  Yes, Your Honor.

09:11:59  8          MR. DEVLIN:  And we're ready to proceed.

09:12:01  9          THE COURT:  All right.  Both sides waive opening

09:12:03  10  statements.

09:12:03  11          MR. ORR:  Yes, Your Honor.

09:12:04  12          MR. DEVLIN:  Your Honor, the first witness we call is

09:12:06  13  Special Agent Sean Mullen.

09:12:36  14                          **SEAN MULLEN,**

09:12:36  15  having been first duly sworn, testified as follows:

09:12:36  16                      **DIRECT EXAMINATION**

09:12:36  17  **BY MR. DEVLIN:**

09:12:36  18  Q.   Agent Mullen, would you please state your name and spell

09:12:39  19  your last name for the record, please?

09:12:41  20  A.   Sean Mullen, M-u-l-l-e-n.

09:12:43  21  Q.   A how are you employed?

09:12:44  22  A.   Special agent of the FBI.

09:12:46  23  Q.   And how long have you been an FBI agent?

09:12:49  24  A.   Since November of 2003.

09:12:51  25  Q.   And what areas are you assigned to investigate currently?

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 14 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 14 of 192
MULLEN - DIRECT                                                    13

09:12:54  1    A.    Cyber crimes, which involved high-tech crimes, including

09:12:58  2    computer intrusion, intellectual property rights, and sexual

09:13:02  3    exploitation of children, to include child pornography.

09:13:04  4    Q.    All right.  Are you the case agent in this investigation?

09:13:07  5    A.    Yes, I am.

09:13:08  6    Q.    Okay.  Can you describe for the Court briefly how this

09:13:14  7    investigation began and how it went in the direction that it

09:13:18  8    did.

09:13:18  9    A.    Sure.  We received -- the FBI received some information

09:13:21  10   from the Maine State Police in August of 2009.  They had been

09:13:25  11   looking into the video series known as the "tent series," which

09:13:29  12   is a child pornography series.

09:13:30  13   Q.    And that's tent, t-e-n-t?

09:13:31  14   A.    T-e-n-t, tent, yes.  At the time they were able to narrow

09:13:36  15   the location where they believed that the videos had been shot

09:13:39  16   and contacted the location, which is the Star Ranch in McDade,

09:13:43  17   Texas in Bastrop County.  At that point they provided

09:13:49  18   information to us, and the agents interviewed folks out at

09:13:52  19   Star Ranch.

09:13:54  20         The victim was identified.  At that point she was

09:13:56  21   interviewed, and she identified the defendant and other

09:14:03  22   witnesses for us to interview.

09:14:04  23   Q.    And that was the victim who has been identified in the

09:14:06  24   stipulation and indictment as Jane Doe Number 1?

09:14:09  25   A.    That is correct.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 15 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 14 of 92
MULLEN - DIRECT                                                    14

| | | |
|---|---|---|
| 09:14:11 | 1 | MR. DEVLIN: All right. Your Honor, may I –– I'm |
| 09:14:16 | 2 | sorry. |
| 09:14:16 | 3 | Q. (BY MR. DEVLIN) And then from there additional videos were |
| 09:14:18 | 4 | discovered as well? |
| 09:14:19 | 5 | A. Correct. During the case of –– during ongoing unrelated |
| 09:14:23 | 6 | investigations, we identified other videos that we believe were |
| 09:14:27 | 7 | produced and made by the defendant. At that point we were able |
| 09:14:33 | 8 | to identify the victims there –– the second victim, Jane Doe |
| 09:14:36 | 9 | Number 2. And from there interviewed her, and she confirmed it |
| 09:14:40 | 10 | was her in the videos and that it was the defendant. |
| 09:14:42 | 11 | And then after that we found subsequent videos |
| 09:14:46 | 12 | working with the National Center of Missing & Exploited |
| 09:14:49 | 13 | Children that they believed also were involved in the series |
| 09:14:51 | 14 | known as c-baby which would include Jane Doe Number 2 and Jane |
| 09:14:54 | 15 | Doe Number 3. |
| 09:14:56 | 16 | Q. And c-baby is spelled c-b-a-b-y? |
| 09:14:59 | 17 | A. That is correct. |
| 09:15:00 | 18 | Q. Okay. The –– can you describe for the Court briefly what |
| 09:15:04 | 19 | a series is in terms of child pornography? |
| 09:15:09 | 20 | A. Sure. One or more visual depictions of child pornography |
| 09:15:13 | 21 | that contain one or more victims that either have not been |
| 09:15:17 | 22 | identified or have been identified. And in law enforcement and |
| 09:15:21 | 23 | within conjunction with the National Center for Missing & |
| 09:15:23 | 24 | Exploited Children collectively put all those videos and images |
| 09:15:29 | 25 | together in order to help identify the location, the victim, |

Case 1:10-cr-00297-LY   Document 219-1   Filed 03/05/16   Page 16 of 193
Case 1:10-cr-00297-LY   Document 91-1   Filed 03/09/11   Page 16 of 193
MULLEN - DIRECT                                            15

| 09:15:31 | 1 | and/or the offender. |
| 09:15:33 | 2 | Q.   Okay.  And they're often commonly name as a result of |
| 09:15:36 | 3 | maybe a common object in the picture or maybe a common name |
| 09:15:39 | 4 | that's being used.  There's just some commonality to the series |
| 09:15:43 | 5 | that gives it its name? |
| 09:15:45 | 6 | A.   That is correct. |
| 09:15:46 | 7 |      MR. DEVLIN:  Okay.  May I approach the witness, |
| 09:15:50 | 8 | Your Honor? |
| 09:15:50 | 9 |      THE COURT:  You may.  And I'll let you both know you |
| 09:15:52 | 10 | don't need to ask to approach the witness.  If you have |
| 09:15:54 | 11 | business with the witness, just approach the witness.  And when |
| 09:15:57 | 12 | you complete your business, return to the podium. |
| 09:16:00 | 13 |      MR. DEVLIN:  Thank you, Your Honor. |
| 09:16:50 | 14 | Q.   (BY MR. DEVLIN) Agent Mullen, I'm going to show you a |
| 09:16:53 | 15 | number of DVDs, the Digital Versatile Discs that have been |
| 09:16:59 | 16 | marked as follows:  Government Exhibit 1-1, do you recognize |
| 09:17:03 | 17 | that disc? |
| 09:17:03 | 18 | A.   Yes, I do. |
| 09:17:04 | 19 | Q.   Is that the same -- is there a video contained on that |
| 09:17:08 | 20 | disc that conforms to the video cited as Government Exhibit 1-1 |
| 09:17:15 | 21 | in the stipulation? |
| 09:17:16 | 22 | A.   Yes. |
| 09:17:17 | 23 | Q.   And you have viewed this? |
| 09:17:18 | 24 | A.   Yes, I have. |
| 09:17:19 | 25 | Q.   And you viewed this exact one? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 17 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 16 of 192
MULLEN - DIRECT                                                    16

| | | |
|---|---|---|
| 09:17:20 | 1 | A.   Yes, I have. |
| 09:17:21 | 2 | Q.   And it does contain the video that is described in the |
| 09:17:24 | 3 | stipulation under Government Exhibit 1-1? |
| 09:17:25 | 4 | A.   Yes, it does. |
| 09:17:26 | 5 | Q.   Okay.  Government Exhibit 1-2 is also a DVD with a video |
| 09:17:30 | 6 | on it that conforms to the video described under Government |
| 09:17:33 | 7 | Exhibit 1-2 in the stipulation? |
| 09:17:35 | 8 | A.   Yes, it does. |
| 09:17:36 | 9 | Q.   Okay.  And Government Exhibit 2 conforms to the video |
| 09:17:42 | 10 | described as Government Exhibit 2 in the stipulation? |
| 09:17:45 | 11 | A.   Yes, it does. |
| 09:17:53 | 12 | Q.   Government Exhibit 3, that also contains a video that |
| 09:17:56 | 13 | conforms to the video described as Government Exhibit 3 in the |
| 09:17:59 | 14 | stipulation? |
| 09:17:59 | 15 | A.   Yes, it does. |
| 09:18:00 | 16 | Q.   Okay.  Government Exhibit 4-1, does that conform -- does |
| 09:18:06 | 17 | that contain a video that conforms to the video described as |
| 09:18:10 | 18 | Government Exhibit 4-1 in the stipulation? |
| 09:18:14 | 19 | A.   Yes, it does. |
| 09:18:15 | 20 | Q.   And Government Exhibit 5-1 does that conform to the video |
| 09:18:18 | 21 | described as Government Exhibit 5-1? |
| 09:18:21 | 22 | A.   Yes. |
| 09:18:21 | 23 | Q.   Okay.  Let me just go back to 4-1 for a moment.  There |
| 09:18:52 | 24 | is -- when you were reviewing 4-1, it's stated that that was -- |
| 09:18:55 | 25 | in the stipulation that was approximately 3 minutes and 44 |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 18 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 18 of 192
MULLEN - DIRECT                                                    17

09:18:58  1  seconds.  And it turned out when it was converted to DVD that

09:19:02  2  it was about 1 minute and 54 seconds; is that correct?

09:19:06  3  A.    That is correct.

09:19:06  4  Q.    Okay.  It is still the same video that is described there;

09:19:10  5  is that right?

09:19:11  6  A.    Yes, it is.

09:19:11  7  Q.    Was there some sort of I guess problem with the video

09:19:14  8  formatting on that particular one that made it shorter than it

09:19:17  9  was originally described?

09:19:19  10  A.    Yes.  The original player showed it as being 3 minutes --

09:19:24  11  approximately 3 minutes and 44 seconds in length.  And when

09:19:27  12  converted, it shrunk it down to actual video time of a minute

09:19:31  13  and 54 seconds.

09:19:32  14  Q.    Okay.  This was a video that you'd obtained from

09:19:35  15  elsewhere.  It was just simply in kind of a -- I guess a

09:19:39  16  problematic format, if you will.  It would skip occasionally

09:19:42  17  and what have you; is that right?

09:19:43  18  A.    That's correct.

09:19:44  19  Q.    So it would show one time on Windows Media Player.  And

09:19:48  20  then when converted to DVD, it showed another time; is that

09:19:50  21  correct?

09:19:50  22  A.    That's correct.

09:19:50  23  Q.    But you have watched it in full, and it is the same video

09:19:52  24  described as Government's Exhibit 4-1 in the stipulation?

09:19:55  25  A.    Yes, it is.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 19 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 19 of 193
MULLEN - DIRECT                                                      18

| | | |
|---|---|---|
| 09:19:56 | 1 | Q. Okay. I think we've gone over Government Exhibit 5-1. |
| 09:20:04 | 2 | That's the same one as described as Government Exhibit 5-1 in |
| 09:20:05 | 3 | the stipulation? |
| 09:20:05 | 4 | A. Yes. |
| 09:20:06 | 5 | Q. Government Exhibit 5-2, is that a video that conforms to |
| 09:20:12 | 6 | the description as Government Exhibit 5-2 in the stipulation? |
| 09:20:17 | 7 | A. Yes. |
| 09:20:17 | 8 | Q. Government Exhibit 6, is that a video that conforms -- |
| 09:20:24 | 9 | THE COURT: Just a minute, Mr. Devlin. I'm looking |
| 09:20:27 | 10 | at -- never mind. I've got it now. |
| 09:20:29 | 11 | MR. DEVLIN: Okay. |
| 09:20:29 | 12 | Q. (BY MR. DEVLIN) Government Exhibit 6, does that contain a |
| 09:20:33 | 13 | video that conforms to the description under Government -- |
| 09:20:36 | 14 | Government Exhibit 6 in the stipulation? |
| 09:20:39 | 15 | A. Yes. |
| 09:20:39 | 16 | Q. Government Exhibit 7, is that a -- does that contain a |
| 09:20:46 | 17 | video that conforms to the description under Government |
| 09:20:48 | 18 | Exhibit 7 in the stipulation? |
| 09:20:50 | 19 | A. Yes. |
| 09:20:50 | 20 | Q. Government Exhibit 8, is that a DVD containing a video |
| 09:20:57 | 21 | that conforms to the description under Government Exhibit 8 in |
| 09:21:00 | 22 | the stipulation? |
| 09:21:01 | 23 | A. Yes. |
| 09:21:01 | 24 | Q. Government Exhibit 9-1 and 9-2, I'll give you those |
| 09:21:08 | 25 | together. Do those contain videos that conform to the |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/09/16 Page 20 of 193
Case 1:10-cr-00297-LY Document 91 Filed 12/05/11 Page 13 of 132
MULLEN - DIRECT                                                    19

09:21:11  1  descriptions of Government's Exhibits 9-1 and 9-2 respectively

09:21:16  2  in the stipulation?

09:21:17  3  A.   Yes, they do.

09:21:18  4  Q.   And Government Exhibit 10, does that contain a video that

09:21:23  5  conforms to the video described under Government Exhibit 10 in

09:21:26  6  the stipulation?

09:21:27  7  A.   Yes, it does.

09:21:28  8  Q.   Okay.  And these are all the same videos that are charged

09:21:34  9  under the respective counts:  Counts 1, 2, 3 through 10 in the

09:21:39  10  indictment; is that correct?

09:21:40  11  A.   That's correct.

09:21:41  12  Q.   There's one -- Count 4 of the indictment contains a

09:21:44  13  description of two videos.  Only one of those videos are

09:21:48  14  contained here; is that correct?

09:21:49  15  A.   That is correct.

09:21:50  16  Q.   All right.  And, finally, I'm going to show you Government

09:21:59  17  Exhibit 13.  Is this a compilation basically for the Court's

09:22:03  18  convenience of all the videos, with the exception of Government

09:22:06  19  Exhibit 7?

09:22:07  20  A.   Yes, it is.

09:22:08  21  Q.   Okay.  And Government Exhibit 7 just simply would not copy

09:22:11  22  onto this disc and needs to be viewed separately; is that

09:22:14  23  correct?

09:22:14  24  A.   That is correct.

09:22:16  25            MR. DEVLIN:  Okay.  Your Honor, at this time I would

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 21 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 20 of 192
MULLEN - DIRECT
20

| | | |
|---|---|---|
| 09:22:17 | 1 | move admit Government's Exhibits 1-1, 1-2, 2, 3, 4-1, 5-1, 5-2, |
| 09:22:35 | 2 | 6, 7, 8, 9-1, 9-2, and 10.  And, as well, Government Exhibit |
| 09:22:45 | 3 | 13, which is just simply a compilation copy for the Court's |
| 09:22:50 | 4 | viewing convenience of the aforementioned exhibits, minus |
| 09:22:55 | 5 | Government Exhibit 7. |
| 09:22:56 | 6 | THE COURT:  Mr. Orr? |
| 09:22:57 | 7 | MR. ORR:  Your Honor, as long as the compilation is |
| 09:22:59 | 8 | nothing other than just an identical reproduction and |
| 09:23:05 | 9 | Mr. Devlin informed that it is of the other exhibits, we have |
| 09:23:09 | 10 | no objection. |
| 09:23:09 | 11 | THE COURT:  All right.  Government's Exhibits, 1-1, |
| 09:23:14 | 12 | 1-2, 2, 3, 4-1, 5-1, 5-2, 6, 7, 8, 9-1, 9-2, 10, and 13 are |
| 09:23:28 | 13 | admitted. |
| 09:23:38 | 14 | MR. DEVLIN:  And, judge, as I mentioned, 13 contains |
| 09:23:41 | 15 | everything but Government's Exhibit 7.  Government's Exhibit 7 |
| 09:23:44 | 16 | will have to be viewed separately, but it is not very long. |
| 09:23:47 | 17 | And if we may, Judge, I know you wanted to view the exhibits. |
| 09:23:50 | 18 | I do have some more questions for Agent Mullen.  Would you like |
| 09:23:53 | 19 | to reserve that to the end of his testimony or do you want to |
| 09:23:55 | 20 | view them now? |
| 09:23:56 | 21 | THE COURT:  Well, go ahead and ask your questions |
| 09:23:58 | 22 | now.  And if it becomes necessary during the course of your |
| 09:24:01 | 23 | questions for me to view the exhibits before you finish |
| 09:24:05 | 24 | questioning, I'll interrupt.  Otherwise, I'll hear the |
| 09:24:08 | 25 | questions and then view the exhibits. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/09/16 Page 22 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 12/05/16 Page 22 of 192
MULLEN - DIRECT                                                    21

| | | |
|---|---|---|
| 09:24:09 | 1 | MR. DEVLIN:  Very well.  Judge, while Mr. Orr is |
| 09:24:46 | 2 | looking at some other exhibits I'd given him, I would also ask |
| 09:24:49 | 3 | that the exhibits that you just admitted -- and I'll name them |
| 09:24:53 | 4 | again -- 1-1, 1-2, 2, 3, 4-1, 5-1, 5-2, 6, 7, 8, 9-1, 9-2, 10, |
| 09:25:04 | 5 | and 13 all be admitted under seal because they all contain |
| 09:25:08 | 6 | child pornography. |
| 09:25:09 | 7 | THE COURT:  Mr. Orr? |
| 09:25:10 | 8 | MR. ORR:  We don't object admitting them under seal. |
| 09:25:13 | 9 | We don't agree that they necessarily contain child |
| 09:25:17 | 10 | pornography.  But it's fine. |
| 09:25:18 | 11 | THE COURT:  All right.  The Court rules that |
| 09:25:20 | 12 | Government's Exhibits 1-1, 1-2, 2, 3, 4-1, 5-1, 5-2, 6, 7, 8, |
| 09:25:28 | 13 | 9-1, 9-2, 10, and 13 are admitted under seal and not to be |
| 09:25:36 | 14 | viewed by anyone without order of this Court. |
| 09:25:39 | 15 | After the Court reviews the exhibits and reaches its |
| 09:25:45 | 16 | decision in this case, if the Court finds that the exhibits do |
| 09:25:49 | 17 | not in fact contain child pornography, the Court will |
| 09:25:53 | 18 | reconsider its previous order. |
| 09:25:55 | 19 | MR. DEVLIN:  Thank you, Your Honor. |
| 09:26:28 | 20 | (Soto voce discussion between Counsel) |
| 09:26:31 | 21 | Q.  (BY MR. DEVLIN) Agent Mullen, I'm going to show you a |
| 09:26:36 | 22 | series of photographs marked Government's Exhibits 1-1B, 1-1C, |
| 09:26:47 | 23 | 1-1D, 1-1E, 1-1F, 1-1G and 1-1H.  I want you to tell me if -- |
| 09:26:58 | 24 | take a look at those and tell me if you recognize those? |
| 09:27:18 | 25 | A.   Yes.  I recognize all of them. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 23 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 23 of 192

MULLEN - DIRECT                                                22

| | | |
|---|---|---|
| 09:27:20 | 1 | Q.   And do they depict -- do they depict the victim known as |
| 09:27:25 | 2 | Jane Doe Number 1, which is seen in Government Exhibit 1-1 and |
| 09:27:29 | 3 | 1-2? |
| 09:27:30 | 4 | A.   Yes, they do. |
| 09:27:31 | 5 | Q.   And those are true and accurate still images taken from |
| 09:27:34 | 6 | those videos? |
| 09:27:35 | 7 | A.   Yes, they are. |
| 09:27:36 | 8 | Q.   Now, some of them have been redacted; is that correct, so |
| 09:27:39 | 9 | that they are not pornographic? |
| 09:27:41 | 10 | A.   That is correct. |
| 09:27:42 | 11 | Q.   Nevertheless, they do show Jane Doe Number 1 as she |
| 09:27:46 | 12 | appeared in those videos at that time; is that correct? |
| 09:27:49 | 13 | A.   That is correct. |
| 09:27:50 | 14 |      MR. DEVLIN:  Your Honor, I would move admit |
| 09:27:52 | 15 | Government's Exhibits 1-B, 1-C, 1-D, 1-E, 1-F, 1-G, and 1-H. |
| 09:28:02 | 16 | And I would further move to admit them under seal because they |
| 09:28:07 | 17 | depict a protected victim in this case. |
| 09:28:10 | 18 |      MR. ORR:  We have no objection, Your Honor. |
| 09:28:12 | 19 |      THE COURT:  All right, Government's Exhibit 1-1B, |
| 09:28:16 | 20 | 1-1C, 1-1D, 1-1E, 1-1F, 1-1G, 1-1H are admitted, and those |
| 09:28:25 | 21 | exhibits are admitted under seal on the basis that they depict |
| 09:28:30 | 22 | images of a protected victim. |
| 09:28:34 | 23 | Q.   (BY MR. DEVLIN) I'm going to go ahead and show you what's |
| 09:28:37 | 24 | been marked as Government Exhibits 1-2B, 1-2C, 1-2D, 1-2E, and |
| 09:28:46 | 25 | 1-2F, and tell me if you recognize those? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 24 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 23 of 192
MULLEN - DIRECT                                                    23

| | | |
|---|---|---|
| 09:28:57 | 1 | THE COURT: It was 1-2B through what? |
| 09:28:59 | 2 | MR. DEVLIN: 1-2B through F. |
| 09:29:07 | 3 | A. Yes. I do recognize those. |
| 09:29:09 | 4 | Q. And those -- are those still images depicting the victim |
| 09:29:13 | 5 | known as Jane Doe Number 1? |
| 09:29:14 | 6 | A. Yes, they do. |
| 09:29:15 | 7 | Q. And these are still images taken from -- the video |
| 09:29:18 | 8 | Government Exhibit 1-2; is that correct? |
| 09:29:19 | 9 | A. That is correct. |
| 09:29:20 | 10 | Q. And do these accurately portray her as she appeared in |
| 09:29:23 | 11 | that video? |
| 09:29:24 | 12 | A. Yes, they do. |
| 09:29:25 | 13 | MR. DEVLIN: Okay. Your Honor, I'd move to admit |
| 09:29:26 | 14 | Government's Exhibits 1-2B through F into evidence and would |
| 09:29:29 | 15 | further move to admit them under seal because they depict a |
| 09:29:32 | 16 | protected victim in this case. |
| 09:29:34 | 17 | MR. ORR: We have no objection to the admission or to |
| 09:29:36 | 18 | their being sealed, Your Honor. |
| 09:29:37 | 19 | THE COURT: Government's Exhibit 1-2B, 1-2C, 1-2D, |
| 09:29:44 | 20 | 1-2E, and 1-2F are admitted, and they are admitted under seal |
| 09:29:50 | 21 | because they contain images of a protected victim. |
| 09:29:55 | 22 | Q. (BY MR. DEVLIN) And I'm going to show you what's been |
| 09:29:56 | 23 | marked as 1-1I. Can you -- can you identify that for us. |
| 09:30:01 | 24 | A. Yes. It is a -- it looks to be a copy of a bill that is |
| 09:30:06 | 25 | seen in one of the videos in count 1 of the indictment. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 25 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 25 of 193
MULLEN - DIRECT                                          24

| | | |
|---|---|---|
| 09:30:09 | 1 | Q.   And this is basically a $1 million novelty bill that is |
| 09:30:13 | 2 | seen in Government Exhibit 1-1; is that correct? |
| 09:30:15 | 3 | A.   That is correct. |
| 09:30:16 | 4 | Q.   And this is a much clearer and larger version of that |
| 09:30:20 | 5 | $1 million bill; is that correct? |
| 09:30:21 | 6 | A.   Yes, it is. |
| 09:30:23 | 7 |        MR. DEVLIN:  All right.  I'll go ahead and move to |
| 09:30:24 | 8 | admit Government Exhibit 1-1I, Your Honor. |
| 09:30:28 | 9 |        MR. ORR:  No objection to admission or to sealing, |
| 09:30:30 | 10 | Your Honor. |
| 09:30:31 | 11 |        MR. DEVLIN:  It doesn't need to be sealed, |
| 09:30:33 | 12 | Your Honor. |
| 09:30:33 | 13 |        THE COURT:  Mr. Orr? |
| 09:30:35 | 14 |        MR. ORR:  No.  That's fine.  I misunderstood. |
| 09:30:37 | 15 |        THE COURT:  Government's Exhibit 1-1I is admitted. |
| 09:31:51 | 16 | Q.   (BY MR. DEVLIN) Agent Mullen, I'm showing you what has |
| 09:31:54 | 17 | been marked as Government's Exhibit 2A.  Do you recognize that |
| 09:31:57 | 18 | document? |
| 09:31:57 | 19 | A.   Yes, I do. |
| 09:31:58 | 20 | Q.   Or photograph, I should say.  Is that a still image that |
| 09:32:02 | 21 | is taken from the video marked as Government Exhibit 2? |
| 09:32:04 | 22 | A.   Yes, it is. |
| 09:32:05 | 23 | Q.   And is that a still photo -- a still image, I should say, |
| 09:32:08 | 24 | of the victim known as Jane Doe Number 2? |
| 09:32:10 | 25 | A.   Yes, it is? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 26 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 25 of 192
MULLEN - DIRECT                                                    25

| | | |
|---|---|---|
| 09:32:11 | 1 | Q.   And is that an accurate still image from the video? |
| 09:32:14 | 2 | A.   Yes, it is. |
| 09:32:15 | 3 |      MR. DEVLIN:  Judge, I would move to admit Government |
| 09:32:16 | 4 | Exhibit 2A into evidence and would move to admit it under seal |
| 09:32:20 | 5 | because it depicts a protected victim. |
| 09:32:22 | 6 |      MR. ORR:  No objection, Your Honor. |
| 09:32:23 | 7 |      THE COURT:  Government's Exhibit 2A is admitted.  It |
| 09:32:26 | 8 | is admitted under seal because it contains the image of a |
| 09:32:29 | 9 | protected victim. |
| 09:32:49 | 10 | Q.   (BY MR. DEVLIN) Agent Mullen, since we've been talking |
| 09:32:51 | 11 | about protected victims, I want to show you a document that's |
| 09:32:54 | 12 | marked as Government's Exhibit 12F.  Can you tell me what that |
| 09:32:57 | 13 | document is? |
| 09:32:57 | 14 | A.   Yes.  It's a list of the true identities of the protected |
| 09:33:01 | 15 | victims and the associated Jane Doe that are referenced to |
| 09:33:05 | 16 | that. |
| 09:33:05 | 17 | Q.   So it list Jane Doe Number 1, Jane Doe Number 2 and |
| 09:33:08 | 18 | Jane Doe Number 3, who are cited in the indictment as well as |
| 09:33:11 | 19 | in the agreed stipulation? |
| 09:33:12 | 20 | A.   Yes, it does. |
| 09:33:12 | 21 | Q.   And it shows their true name? |
| 09:33:14 | 22 | A.   Yes, it does. |
| 09:33:15 | 23 | Q.   As well as the relationship in this case to the defendant; |
| 09:33:19 | 24 | is that correct? |
| 09:33:20 | 25 | A.   That is correct. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 27 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 26 of 192
MULLEN - DIRECT
26

| | | |
|---|---|---|
| 09:33:20 | 1 | Q. Is the information in that document true and accurate? |
| 09:33:24 | 2 | A. Yes, it is. |
| 09:33:26 | 3 | MR. DEVLIN: Okay. Your Honor, at this time I move |
| 09:33:27 | 4 | to admit Government Exhibit 12F into evidence and would move to |
| 09:33:32 | 5 | admit it under seal since it does refer to protected victims. |
| 09:33:38 | 6 | MR. ORR: No objection, Your Honor. |
| 09:33:39 | 7 | THE COURT: Government's Exhibit 12F is admitted. It |
| 09:33:41 | 8 | is admitted under seal, as it contains the identity and other |
| 09:33:45 | 9 | information concerning protected victims. |
| 09:35:50 | 10 | Q. (BY MR. DEVLIN) Agent Mullen, I am handing you a series of |
| 09:35:56 | 11 | photographs. The first ones are marked Government's Exhibits |
| 09:36:02 | 12 | 7A, 7B, 7C, 7E, 7G, and 9-1A and 9-1B. |
| 09:36:18 | 13 | First on the Government's exhibits marked with the -- |
| 09:36:21 | 14 | in the series seven, can you take a look at those and tell me |
| 09:36:24 | 15 | if you recognize those. |
| 09:36:33 | 16 | THE COURT: Did that go through 7G, did you say? |
| 09:36:35 | 17 | MR. DEVLIN: Yes, Your Honor. There was a couple of |
| 09:36:38 | 18 | letters that aren't there. |
| 09:36:39 | 19 | THE COURT: That's all right. I just wanted to make |
| 09:36:42 | 20 | sure. |
| 09:36:42 | 21 | MR. DEVLIN: Yes. The last one is 7G. |
| 09:36:45 | 22 | THE COURT: And what were the two after that? |
| 09:36:47 | 23 | MR. DEVLIN: 9-1A and 9-1B. |
| 09:36:50 | 24 | THE COURT: Thank you. |
| 09:36:56 | 25 | Q. (BY MR. DEVLIN) Agent Mullen, do you recognize these |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 28 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 28 of 192
MULLEN - DIRECT                                                          27

| | | |
|---|---|---|
| 09:36:59 | 1 | photographs? |
| 09:36:59 | 2 | A.   Yes, I do. |
| 09:37:00 | 3 | Q.   And that one with the number 7 in them refer -- are they |
| 09:37:03 | 4 | still images of the videos depicted in Government Exhibit 7? |
| 09:37:06 | 5 | A.   Yes, they are. |
| 09:37:08 | 6 | Q.   And are they still images of the victim known as |
| 09:37:11 | 7 | Jane Doe Number 3? |
| 09:37:12 | 8 | A.   Yes, they are. |
| 09:37:14 | 9 | Q.   And these are true and accurate still images taken from |
| 09:37:17 | 10 | those videos? |
| 09:37:18 | 11 | A.   Yes, they are. |
| 09:37:20 | 12 |          MR. DEVLIN:  I would move to admit, Judge, 7A, B, C, |
| 09:37:22 | 13 | E, and G into evidence, and would move to admit them under seal |
| 09:37:26 | 14 | since they depict protected victim. |
| 09:37:29 | 15 |          MR. ORR:  No objection. |
| 09:37:30 | 16 |          THE COURT:  All right.  7A -- run through the |
| 09:37:33 | 17 | exhibits. |
| 09:37:33 | 18 |          MR. DEVLIN:  Yes, sir.  7A, B, C, E as in echo, and G |
| 09:37:39 | 19 | as in golf. |
| 09:37:42 | 20 |          THE COURT:  All right.  Government's Exhibit 7A, B, |
| 09:37:45 | 21 | C, E, and G are admitted, and they're admitted under seal |
| 09:37:50 | 22 | because they contain images of a protected victim. |
| 09:37:54 | 23 | Q.   (BY MR. DEVLIN) And do you recognize the photos marked as |
| 09:37:59 | 24 | Government's Exhibits 9-1A and B. |
| 09:38:02 | 25 | A.    Yes, I do. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 29 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/16 Page 28 of 192
MULLEN - DIRECT                                                    28

09:38:03   1   Q.   And are those still images taken from the video marked as

09:38:07   2   Government Exhibit 9-1?

09:38:08   3   A.   Yes, they are.

09:38:09   4   Q.   And are they -- do they both depict still images of the

09:38:12   5   victim known as Jane Doe Number 3?

09:38:15   6   A.   Yes.

09:38:15   7   Q.   And these are true and accurate still images taken from

09:38:19   8   those videos?

09:38:20   9   A.   Yes, they are.

09:38:21  10        MR. DEVLIN:  Your Honor, I move to admit Government's

09:38:22  11   Exhibits 9-1A and B, and further move to admit them under seal

09:38:30  12   since they depict a protected victim.

09:38:42  13        MR. ORR:  No objection.

09:38:43  14        THE COURT:  Government's Exhibits 9-1A and 9-1B are

09:38:47  15   admitted, and they are admitted under seal because they contain

09:38:52  16   information and images regarding a protected victim.

09:39:02  17   Q.   (BY MR. DEVLIN) Agent Mullen, I'm showing you what has

09:39:32  18   been marked as Government Exhibit 11.  Is there a video on that

09:39:36  19   DVD that you're familiar with?

09:39:40  20   A.   Yes.

09:39:40  21   Q.   And is it basically described as a home video that was

09:39:44  22   provided to you by Kerry Jenkins, the defendant's ex-wife?

09:39:48  23   A.   Yes, it is.

09:39:49  24   Q.   And there was a -- the portion of that video is about

09:39:52  25   40 minutes.  It was part of a longer video that was about --

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 30 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 29 of 92
MULLEN - DIRECT
29

09:39:56  1  well, just a little over an hour long that essentially depicted

09:39:59  2  some home movies; is that correct?

09:40:01  3  A.   That's correct.

09:40:01  4  Q.   The first 22 minutes or so which are not on there depicted

09:40:04  5  a wedding that was subsequent to the divorce of Mr. Diehl and

09:40:11  6  Ms. Jenkins; is that right?

09:40:13  7  A.   Yes, it is.

09:40:14  8  Q.   And that is not on this video; is that correct?

09:40:17  9  A.   That's correct.

09:40:17  10  Q.   The last 40 minutes or so of that home video are on here;

09:40:21  11  is that right?

09:40:22  12  A.   That is right.

09:40:23  13  Q.   And that depicts Jane Doe Number 2; is that correct?

09:40:26  14  A.   That's correct.

09:40:26  15  Q.   And there's just various -- I guess it cuts in and out as

09:40:28  16  the video was recorded; is that correct?

09:40:31  17  A.   That's correct.

09:40:32  18  Q.   And that was taken by the defendant, Mr. Diehl?

09:40:35  19  A.   Yes, it was.

09:40:36  20  Q.   At or near the time of the other videos involving

09:40:39  21  Jane Doe Number 2?

09:40:40  22  A.   Yes, it was.

09:40:41  23  Q.   This does not contain child pornography, however, per se;

09:40:45  24  is that correct?

09:40:46  25  A.   That's correct.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 31 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 30 of 192

MULLEN - DIRECT
30

| | | |
|---|---|---|
| 09:40:46 | 1 | Q.   It does show -- it does show Jane Doe Number 2, perhaps in |
| 09:40:50 | 2 | a state of undress but not nude; is that correct? |
| 09:40:53 | 3 | A.   That's correct. |
| 09:40:54 | 4 | MR. DEVLIN:  Your Honor, at this time I move to admit |
| 09:40:56 | 5 | Government Exhibit 11 into evidence. |
| 09:40:59 | 6 | MR. ORR:  No objection, Your Honor. |
| 09:41:00 | 7 | THE COURT:  Government Exhibit Number 11 is admitted. |
| 09:41:03 | 8 | MR. DEVLIN:  And, Judge, I would further move to |
| 09:41:05 | 9 | admit it under seal since it does depict one of the protected |
| 09:41:09 | 10 | victims; namely, Jane Doe Number 2. |
| 09:41:13 | 11 | THE COURT:  Mr. Orr? |
| 09:41:13 | 12 | MR. ORR:  Oh.  No objection. |
| 09:41:15 | 13 | THE COURT:  The exhibit, Government's Exhibit |
| 09:41:18 | 14 | Number 11, is admitted under seal, as it contains images of a |
| 09:41:23 | 15 | protected victim. |
| 09:41:43 | 16 | Q.   (BY MR. DEVLIN) Agent Mullen, you have obviously seen the |
| 09:41:46 | 17 | video contained in Government's Exhibit 11, the home video; is |
| 09:41:50 | 18 | that correct? |
| 09:41:50 | 19 | A.   That's correct. |
| 09:41:51 | 20 | Q.   Can you briefly give -- the Court will see it, but can you |
| 09:41:54 | 21 | briefly give the Court an overview of what is on that video |
| 09:41:57 | 22 | that is of significance today? |
| 09:41:59 | 23 | A.   Yes.  Towards the end of the video, I guess about halfway |
| 09:42:03 | 24 | through it, there is a portion that appears to be a |
| 09:42:06 | 25 | video recording of a camera -- where the camera is hidden in |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 32 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 31 of 93
MULLEN - DIRECT                                                    31

09:42:10  1   the bedroom and focused on a closet area in that bedroom.

09:42:15  2   Q.   And what happens later?

09:42:16  3   A.   During that portion of the video, at one point the face of

09:42:20  4   the defendant is seen leaning over and looking into the

09:42:23  5   camera.  And then later after that, Jane Doe Number 2 and

09:42:28  6   another female enter the room and eventually undress partially

09:42:32  7   and play around.  And then they play and kick the bed and

09:42:36  8   something falls over the camera and you just hear audio.

09:42:39  9   Q.   Okay.  They're playing in the room, just the two of them

09:42:42  10  alone; is that correct?

09:42:43  11  A.   That's correct.

09:42:43  12  Q.   At least as far as you can tell?

09:42:45  13  A.   That's what it appears to be, yes.

09:42:48  14  Q.   And the video is hidden apparently under some sort of

09:42:50  15  sheet or other covering?

09:42:51  16  A.   Yes.

09:42:52  17  Q.   And you said at some point that the covering is knocked

09:42:55  18  loose and -- and it covers the -- the lens portion of the

09:43:00  19  camera?

09:43:00  20  A.   That's correct.

09:43:01  21  Q.   But there's still some audio after that?

09:43:03  22  A.   Yes, there is.

09:43:04  23  Q.   And it basically shows girls playing; is that correct?

09:43:07  24  A.   That's correct.

09:43:08  25  Q.   So they were just kind of dressing and undressing, just

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 33 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 32 of 192
MULLEN - DIRECT                                              32

| | | |
|---|---|---|
| 09:43:11 | 1 | kind of normal play, almost, if you will; it that right? |
| 09:43:15 | 2 | A.   Yes. |
| 09:43:15 | 3 | Q.   But at the beginning of that portion of the video, there |
| 09:43:18 | 4 | was nobody in that room other than the defendant; is that |
| 09:43:21 | 5 | right? |
| 09:43:21 | 6 | A.   That's correct. |
| 09:43:22 | 7 | Q.   Okay.  And the beginning part of that video, is it fair to |
| 09:43:26 | 8 | say that it has a lot of images of Jane Doe Number 2 just |
| 09:43:30 | 9 | around the defendant's former residence in Austin? |
| 09:43:32 | 10 | A.   Yes. |
| 09:43:33 | 11 | Q.   Okay.  She's dressed, and it's just basically home movies? |
| 09:43:38 | 12 | A.   That's correct. |
| 09:43:39 | 13 | Q.   Okay. |
| 09:44:14 | 14 | MR. DEVLIN:  Judge, I am going to move -- |
| 09:44:17 | 15 | Excuse me.  Strike that. |
| 09:44:18 | 16 | Q.   (BY MR. DEVLIN) Agent Mullen, I'm showing you what's been |
| 09:44:21 | 17 | marked as Government's Exhibit 12A and 12B.  Do you recognize |
| 09:44:24 | 18 | Government's Exhibit 12A. |
| 09:44:26 | 19 | A.   Yes, I do. |
| 09:44:26 | 20 | Q.   What is that? |
| 09:44:27 | 21 | A.   It is a deed of trust for the defendant's previous |
| 09:44:35 | 22 | residence in Austin. |
| 09:44:37 | 23 | Q.   Okay.  And that is a residence on Hazelhurst Drive here in |
| 09:44:41 | 24 | Austin? |
| 09:44:41 | 25 | A.   That is correct. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/09/16 Page 34 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 34 of 132
MULLEN - DIRECT                                                    33

09:44:42  1    Q.   And this is a certified copy from the Williamson County

09:44:48  2    Clerk's Office; is that correct?

09:44:49  3    A.   That's correct.

09:44:50  4    Q.   All right.  And it purports to show the purchase of that

09:44:53  5    residence by Defendant Diehl and his then wife Kerry Diehl; is

09:44:58  6    that correct?

09:44:59  7    A.   That's correct.

09:45:00  8    Q.   Also known as Kerry Jenkins?

09:45:02  9    A.   Yes.

09:45:02  10   Q.   All right.

09:45:03  11            MR. DEVLIN:  And, judge, I move to admit Government's

09:45:05  12   Exhibit 12A.

09:45:06  13            MR. ORR:  No objection, Your Honor.  And that does

09:45:08  14   not need to be sealed, Judge.

09:45:10  15            THE COURT:  Government's Exhibit 12A is admitted.

09:45:13  16   Q.   (BY MR. DEVLIN) And Government's Exhibit 12B, do you

09:45:14  17   recognize that?

09:45:15  18   A.   Yes, I do.

09:45:16  19   Q.   And what is that?

09:45:16  20   A.   It's a certified copy from the Williamson County Clerk's

09:45:19  21   Office of a General Warranty Deed for the residence --

09:45:22  22   Defendant's residence on Hazelhurst in Austin, Texas, where

09:45:27  23   they -- the sale of their property in November of 2000.

09:45:30  24   Q.   Okay.

09:45:31  25            MR. DEVLIN:  Your Honor, I move to admit Government's

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 35 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 34 of 192
MULLEN - DIRECT                                                    34

| | | |
|---|---|---|
| 09:45:33 | 1 | Exhibit 12B. |
| 09:45:34 | 2 | MR. ORR:  No objection, Your Honor. |
| 09:45:35 | 3 | THE COURT:  Government's Exhibit 12B is admitted. |
| 09:46:24 | 4 | Q.  (BY MR. DEVLIN) I'm showing you what's been -- Agent |
| 09:46:27 | 5 | Mullen, I'm showing you what's been marked as Government's |
| 09:46:30 | 6 | Exhibit 12C.  Do you recognize that packet of documents? |
| 09:46:35 | 7 | A.   Yes, I do. |
| 09:46:39 | 8 | Q.  And what does that exhibit purport to show? |
| 09:46:43 | 9 | A.   It is a registration form for an event called the |
| 09:46:48 | 10 | SS Star Ranch dated June 18th through June 24th, 2000, where |
| 09:46:53 | 11 | David and Kerry Diehl have signed and attended it for |
| 09:46:57 | 12 | approximately two days. |
| 09:46:59 | 13 | Q.   Okay. |
| 09:47:00 | 14 | A.   And then the receipts -- various receipts and canceled |
| 09:47:04 | 15 | checks from Mr. Diehl while at the Star Ranch. |
| 09:47:09 | 16 | Q.   During the period June 18th through June 24th, 2000? |
| 09:47:18 | 17 | A.   Yes.  Except for one check that is dated June 25th, 2000. |
| 09:47:22 | 18 | Q.   Okay.  Just one day after that? |
| 09:47:24 | 19 | A.   Yes. |
| 09:47:24 | 20 | Q.   These are copies of originals that you have? |
| 09:47:26 | 21 | A.   That's correct. |
| 09:47:27 | 22 | Q.   And the copy is a fair and accurate depiction of the |
| 09:47:30 | 23 | originals of those; is that correct? |
| 09:47:32 | 24 | A.   That's correct. |
| 09:47:33 | 25 | MR. DEVLIN:  Your Honor, I move to admit Government's |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 36 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 35 of 92
MULLEN - DIRECT                                                    35

| | | |
|---|---|---|
| 09:47:34 | 1 | Exhibit 12C. |
| 09:47:35 | 2 |        MR. ORR:  No objection, Your Honor. |
| 09:47:36 | 3 |        THE COURT:  Government's Exhibit 12C is admitted. |
| 09:47:39 | 4 | Q.   (BY MR. DEVLIN) I'm also going to show you Government's |
| 09:47:41 | 5 | Exhibit 12C-1.  Do you recognize that? |
| 09:47:44 | 6 | A.   Yes, I do. |
| 09:47:45 | 7 | Q.   And what is that? |
| 09:47:46 | 8 | A.   Two receipts for food items, a receipt from Star Ranch, |
| 09:47:52 | 9 | both dated June 24th, 2000.  One with Kerry Diehl's name on it; |
| 09:47:59 | 10 | the other with David Diehl and Jane Doe Number 1, first name. |
| 09:48:02 | 11 | Q.   Okay.  The first name of Jane Doe Number 1 is on one of |
| 09:48:05 | 12 | the receipts pertaining to David Diehl? |
| 09:48:08 | 13 | A.   That's correct. |
| 09:48:09 | 14 | Q.   And were those also part of the Star Ranch records that |
| 09:48:11 | 15 | you obtained from the Star Ranch? |
| 09:48:13 | 16 | A.   Yes, they are. |
| 09:48:14 | 17 | Q.   These are copies of the originals? |
| 09:48:15 | 18 | A.   Yes, they are. |
| 09:48:16 | 19 | Q.   Are these true and accurate copies? |
| 09:48:16 | 20 | A.   Yes, they are. |
| 09:48:16 | 21 |        MR. DEVLIN:  Your Honor, I move to admit Government's |
| 09:48:17 | 22 | Exhibit 12C-1 and would move to admit it under seal because of |
| 09:48:22 | 23 | the reference to the protected victim Jane Doe Number 1. |
| 09:48:26 | 24 |        MR. ORR:  No objection, Your Honor. |
| 09:48:26 | 25 |        THE COURT:  Government's Exhibit 12C-1 is admitted. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 37 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 36 of 192
MULLEN - DIRECT                                                    36

| | | |
|---|---|---|
| 09:48:29 | 1 | It is admitted under seal because of the reference to the |
| 09:48:32 | 2 | protected victim. |
| 09:48:34 | 3 | Q.   (BY MR. DEVLIN) I'm showing you what's been marked as |
| 09:48:36 | 4 | Government Exhibit 12D.  Do you recognize that document? |
| 09:48:58 | 5 | A.   Yes, I do. |
| 09:48:58 | 6 | Q.   And what is that? |
| 09:48:59 | 7 | A.   It is a certified copy from the Seton Northwest Hospital |
| 09:49:04 | 8 | of medical records pertaining to Mr. Diehl's visit to the |
| 09:49:08 | 9 | emergency room at Seton Northwest Hospital on June 13th, 2000. |
| 09:49:12 | 10 | Q.   Okay.  And you said these are certified by Seton; is that |
| 09:49:17 | 11 | correct? |
| 09:49:17 | 12 | A.   That's correct. |
| 09:49:18 | 13 | Q.   Certified business records? |
| 09:49:20 | 14 | A.   That's correct. |
| 09:49:21 | 15 | Q.   And they completed an affidavit to that effect on these |
| 09:49:23 | 16 | records? |
| 09:49:23 | 17 | A.   Yes, they did. |
| 09:49:25 | 18 | Q.   And these are true and accurate copies -- the affidavit is |
| 09:49:27 | 19 | the original affidavit, and the medical records themselves are |
| 09:49:30 | 20 | copies that were provided by Seton; is that correct? |
| 09:49:33 | 21 | A.   That's correct. |
| 09:49:34 | 22 |         MR. DEVLIN:  Your Honor, I move to admit |
| 09:49:35 | 23 | Government's Exhibit 12D. |
| 09:49:37 | 24 |         MR. ORR:  No objection, Your Honor. |
| 09:49:38 | 25 |         THE COURT:  Government's Exhibit 12D is admitted. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 38 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 38 of 192
MULLEN - DIRECT                                                    37

```
09:49:41   1   Q.   (BY MR. DEVLIN) And, finally, Government's Exhibit 12E, do

09:49:43   2   you recognize that?

09:49:44   3   A.   Yes, I do.

09:49:45   4   Q.   And what is that?

09:49:46   5   A.   That is a copy of a Travis County incident report

09:49:50   6   detailing a motorcycle accident dated June 13th, 2000 that

09:49:56   7   Mr. Diehl had -- was involved in.

09:49:58   8   Q.   All right.  And that essentially relates the motorcycle

09:50:03   9   accident referenced in the Government Exhibit 12D medical

09:50:05  10   record?

09:50:06  11   A.   Yes, it does.

09:50:07  12           MR. DEVLIN:  I move to admit Government's Exhibit

09:50:09  13   12E, Judge?

09:50:10  14           MR. ORR:  No objection, Your Honor.

09:50:11  15           THE COURT:  Government's Exhibit 12E is admitted.

09:50:15  16   Q.   (BY MR. DEVLIN) Agent Mullen, the medical records and the

09:50:18  17   motorcycle accident that occurred on June 13th, 2000 involving

09:50:21  18   Mr. Diehl, what is the relevance of that to this case?

09:50:25  19   A.   The relevance of that is injuries sustained by Mr. Diehl

09:50:29  20   from that accident that were depicted in the videos in count 1

09:50:33  21   of the indictment where it shows abrasions to his left hand.

09:50:38  22   Q.   Okay.  So Government's Exhibits 1-1 and 1-2 show his hand,

09:50:44  23   and it shows some injury to that hand, some abrasions, that

09:50:48  24   were caused as a result of that motorcycle accident; is that

09:50:52  25   correct?
```

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 39 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 38 of 192

MULLEN - DIRECT                                                    38

| | | |
|---|---|---|
| 09:50:52 | 1 | A.   That's correct. |
| 09:50:53 | 2 | Q.   Okay.  And, in fact, Government Exhibits 1-1 and 1-2 were |
| 09:50:59 | 3 | produced shortly after that accident during the -- that |
| 09:51:03 | 4 | conference or that event at the Star Ranch from June 18th |
| 09:51:06 | 5 | through June 24th, 2000; is that correct? |
| 09:51:09 | 6 | A.   That's correct. |
| 09:51:10 | 7 | Q.   All right.  Agent Mullen, have -- going back to the tent |
| 09:51:28 | 8 | and c-baby videos, in this particular case, are the video |
| 09:51:34 | 9 | exhibits in counts 1-1 -- excuse me -- Government's |
| 09:51:38 | 10 | Exhibits 1-1 through 10, the videos, are those videos that have |
| 09:51:45 | 11 | been known to be part of the tent series and the c-baby |
| 09:51:50 | 12 | series?  And, if so, which ones conform to which series? |
| 09:51:54 | 13 | A.   Yes, they are.  The videos in count 1 pertain to tent |
| 09:51:57 | 14 | series. |
| 09:51:58 | 15 | Q.   That's Government's Exhibits 1-1 and 1-2? |
| 09:52:00 | 16 | A.   That's correct. |
| 09:52:01 | 17 | Q.   Okay. |
| 09:52:01 | 18 | A.   And then all other Government exhibits pertain to the |
| 09:52:04 | 19 | c-baby series. |
| 09:52:05 | 20 | Q.   And that's basically Government's Exhibit 2 through 10; is |
| 09:52:08 | 21 | that right? |
| 09:52:09 | 22 | A.   That's correct. |
| 09:52:10 | 23 | Q.   All right.  Now that the producer of those videos has been |
| 09:52:20 | 24 | identified, have you been kind of designated as a point of |
| 09:52:27 | 25 | contact for other agents where those videos have turned up |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 40 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 39 of 192

MULLEN - DIRECT

39

| | | |
|---|---|---|
| 09:52:30 | 1 | around the country? |
| 09:52:31 | 2 | A.   Yes, I am. |
| 09:52:32 | 3 | Q.   Okay.  And is that common for -- when a series of child |
| 09:52:38 | 4 | pornography with an identified victim is found, that the agents |
| 09:52:43 | 5 | will contact whoever the agent was who determined that victim |
| 09:52:49 | 6 | in that video and, you know, kind of -- sometimes you have to |
| 09:52:53 | 7 | come out and testify about the circumstances relating to those |
| 09:52:56 | 8 | videos; is that correct? |
| 09:52:57 | 9 | A.   Yes, it is. |
| 09:52:58 | 10 | Q.   Okay.  Have you been contacted about the tent and c-baby |
| 09:53:02 | 11 | series? |
| 09:53:03 | 12 | A.   Yes, I have. |
| 09:53:04 | 13 | Q.   Have you been contacted recently about that? |
| 09:53:06 | 14 | A.   Yes, I have. |
| 09:53:07 | 15 | Q.   And, basically, these have been other FBI agents? |
| 09:53:10 | 16 | A.   Other FBI agents and other federal agents, as well as |
| 09:53:14 | 17 | state and local law enforcement officers. |
| 09:53:16 | 18 | Q.   Okay.  And why have they contacted you? |
| 09:53:19 | 19 | A.   They contacted me after the -- the National Center for |
| 09:53:21 | 20 | Missing & Exploited Children have indicated to them that videos |
| 09:53:25 | 21 | or depictions they have found during their criminal |
| 09:53:26 | 22 | investigations were part of the c-baby and/or tent series.  And |
| 09:53:30 | 23 | they contacted me to provide a victim identification and |
| 09:53:32 | 24 | confirmation that that indeed was him and also provide |
| 09:53:36 | 25 | investigative summaries. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 41 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 40 of 192
MULLEN - DIRECT                                                    40

09:53:38   1   Q.   Oak.  And where were those agents conducting those

09:53:41   2   investigation who contacted you about the tent series and the

09:53:45   3   c-baby series?

09:53:46   4   A.   They have contacted me from California, Florida, Texas,

09:53:48   5   New Jersey, and Ohio are some of -- a few of the ones that have

09:53:53   6   contacted me.

09:53:53   7   Q.   Okay.  And as it states in the stipulation, all of these

09:53:56   8   videos -- the video exhibits, as they're collectively referred

09:54:00   9   to in the stipulation, have been all found outside of the State

09:54:05  10   of Texas; is that correct?

09:54:06  11   A.   That is correct.

09:54:06  12   Q.   Is there one video that has in it -- I believe it might be

09:54:11  13   Government Exhibit 5-1 -- that shows a magazine -- a partial

09:54:18  14   magazine?  Can you talk about that for a moment?

09:54:20  15   A.   Sure.  During that video, a portion of it is shot, it

09:54:23  16   looks like, underneath a coffee table.  And at the very bottom

09:54:27  17   it depicts a magazine that was identified by law enforcement in

09:54:31  18   the United Kingdom as being a *Dirt Rider Magazine* from October

09:54:36  19   of 1999.

09:54:37  20   Q.   Okay.  And had that -- had that video been found outside

09:54:40  21   of Texas?

09:54:42  22   A.   Yes.  It was found by the United Kingdom in 1999 --

09:54:46  23   October of 1999.

09:54:48  24   Q.   Okay.  And, indeed, is it also true that one or more of

09:54:53  25   the video exhibits has been found in Australia?

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 42 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 41 of 192
MULLEN - DIRECT                                                          41

| | | |
|---|---|---|
| 09:54:56 | 1 | A.   That is correct. |
| 09:54:57 | 2 | Q.   Okay.  And do you know which video that is? |
| 09:55:00 | 3 | A.   I do not know exactly which one. |
| 09:55:02 | 4 | Q.   Was it one of the c-baby videos? |
| 09:55:04 | 5 | A.   It's one of the c-baby videos. |
| 09:55:06 | 6 | Q.   Okay.  And that was found -- how early was that video |
| 09:55:09 | 7 | found? |
| 09:55:09 | 8 | A.   I do not recall. |
| 09:55:10 | 9 | Q.   Okay.  But the one with the magazine in it which -- which |
| 09:55:19 | 10 | I believe is Government Exhibit 5-1, that was found in the |
| 09:55:23 | 11 | United Kingdom as early as 1999? |
| 09:55:26 | 12 | A.   That is correct. |
| 09:55:27 | 13 | MR. ORR:  Your Honor, I object and move to strike the |
| 09:55:29 | 14 | testimony.  Apparently it's based on hearsay -- I don't know |
| 09:55:34 | 15 | how many-hand hearsay that this was found in 1999. |
| 09:55:36 | 16 | THE COURT:  Mr. Devlin? |
| 09:55:37 | 17 | MR. DEVLIN:  Your Honor, it's just simply providing |
| 09:55:39 | 18 | some background information about an admitted exhibit. |
| 09:55:41 | 19 | THE COURT:  Well, I'll sustain the objection as to |
| 09:55:43 | 20 | the date it was found as being hearsay. |
| 09:55:46 | 21 | MR. DEVLIN:  Okay. |
| 09:55:46 | 22 | Q.   (BY MR. DEVLIN) And, in fact, you -- are you aware whether |
| 09:55:51 | 23 | or not any of these videos that have been admitted have been |
| 09:55:54 | 24 | found in other child pornography cases here in Austin? |
| 09:55:57 | 25 | A.   Yes, they have. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 43 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 43 of 132

MULLEN - DIRECT                                                    42

| | | |
|---|---|---|
| 09:55:58 | 1 | Q.   And one or more of them have been found in cases here? |
| 09:56:03 | 2 | A.   That is correct. |
| 09:56:03 | 3 | Q.   And as recently as within the last couple of months? |
| 09:56:07 | 4 | A.   That is correct. |
| 09:56:07 | 5 | Q.   And perhaps as far back as months or years; is that |
| 09:56:11 | 6 | correct? |
| 09:56:11 | 7 | A.   That is correct. |
| 09:56:12 | 8 | Q.   Okay.  Now, did you have an opportunity to obtain a |
| 09:56:17 | 9 | computer that was believed to be associated with |
| 09:56:24 | 10 | Defendant Diehl? |
| 09:56:24 | 11 | A.   Yes, I did. |
| 09:56:25 | 12 | Q.   Can you describe the circumstances of that. |
| 09:56:27 | 13 | A.   Yes.  The computer that was -- that had belonged to the |
| 09:56:30 | 14 | defendant was shipped by the defendant and/or his attorney from |
| 09:56:34 | 15 | Florida to his ex-wife in Austin.  And at that point we |
| 09:56:38 | 16 | obtained it. |
| 09:56:39 | 17 | Q.   What kind of computer was it? |
| 09:56:41 | 18 | A.   It was a desktop computer that contained two hard drives. |
| 09:56:45 | 19 | Q.   Okay.  And a desktop in contrast to a laptop.  It did not |
| 09:56:49 | 20 | have a flip top.  It was a large -- |
| 09:56:50 | 21 | A.   Tower, correct. |
| 09:56:51 | 22 | Q.   -- tower.  Okay. |
| 09:56:56 | 23 | Has that computer been -- been looked at? |
| 09:56:59 | 24 | A.   We submitted it, and our -- our examiners have tried to |
| 09:57:04 | 25 | forensically examine the computer but have been unable to |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 44 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/16 Page 44 of 132
MULLEN - CROSS                                              43

| | | |
|---|---|---|
| 09:57:07 | 1 | because the drives -- one of the drives is encrypted. |
| 09:57:10 | 2 | Q.   Okay.  And they're still working on breaking that |
| 09:57:14 | 3 | encryption? |
| 09:57:14 | 4 | A.   To my knowledge they are still trying, yes. |
| 09:57:32 | 5 | MR. DEVLIN:  Pass the witness Your Honor. |
| 09:57:45 | 6 | **CROSS-EXAMINATION** |
| 09:57:45 | 7 | **BY MR. ORR:** |
| 09:57:48 | 8 | Q.   How are you this morning, sir? |
| 09:57:50 | 9 | A.   I'm doing fine.  How are you? |
| 09:57:51 | 10 | Q.   I'm fine.  So far as the videos that have been admitted, |
| 09:58:03 | 11 | you didn't -- you didn't personally locate any of them; is that |
| 09:58:06 | 12 | correct, sir? |
| 09:58:07 | 13 | A.   That's correct. |
| 09:58:08 | 14 | Q.   Oak.  So far as the laptop is concerned, were there any |
| 09:58:14 | 15 | efforts to get a search warrant while that laptop was in |
| 09:58:17 | 16 | Florida? |
| 09:58:18 | 17 | A.   There was no laptop that I was aware of. |
| 09:58:22 | 18 | Q.   Okay.  You didn't know anything about it in Florida? |
| 09:58:24 | 19 | A.   You mean a desktop? |
| 09:58:26 | 20 | Q.   Desktop.  Excuse me. |
| 09:58:27 | 21 | A.   Correct, yes. |
| 09:58:28 | 22 | Q.   Were efforts made to get a search warrant for it? |
| 09:58:30 | 23 | A.   Yes, there were. |
| 09:58:31 | 24 | Q.   And was that search warrant -- were you successful in |
| 09:58:35 | 25 | getting a search warrant?  By "you," I mean the Federal Bureau |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 45 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 44 of 122
MULLEN - CROSS                                                    44

| | | |
|---|---|---|
| 09:58:38 | 1 | of Investigation? |
| 09:58:40 | 2 | A.   No, we were not. |
| 09:58:41 | 3 | Q.   Okay.  And why not? |
| 09:58:42 | 4 | A.   The judge did not sign the warrant. |
| 09:58:44 | 5 | Q.   Okay.  And did you get a search warrant to search it here? |
| 09:58:47 | 6 | A.   Yes, we did. |
| 09:58:48 | 7 | Q.   Okay.  But you -- and based on what?  Did you have more |
| 09:58:53 | 8 | information, or why did you get one here that you couldn't get |
| 09:58:55 | 9 | in Florida? |
| 09:58:56 | 10 | A.   I don't know the answer to that. |
| 09:58:58 | 11 | Q.   Okay.  All right.  If you don't know, you don't know. |
| 09:59:03 | 12 | A.   I submitted an affidavit to the magistrate judge here. |
| 09:59:06 | 13 | Q.   So as far as any -- you have worked on this case for quite |
| 09:59:10 | 14 | some time, have you not, sir? |
| 09:59:12 | 15 | A.   I have. |
| 09:59:13 | 16 | Q.   A lot of what you know is based on hearsay, correct, sir? |
| 09:59:16 | 17 | What other agents have told you? |
| 09:59:18 | 18 | A.   Not a lot of it.  But some of it, yes. |
| 09:59:20 | 19 | Q.   Some of it.  All right, sir. |
| 09:59:23 | 20 |      And you have talked to various witnesses, have you |
| 09:59:25 | 21 | not, sir? |
| 09:59:25 | 22 | A.   I have. |
| 09:59:26 | 23 | Q.   And have you talked to, apparently, Mr. Diehl's ex-wife? |
| 09:59:30 | 24 | A.   Yes, I have. |
| 09:59:31 | 25 | Q.   Okay.  And how many times have you talked to her? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 46 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 45 of 92
MULLEN - CROSS                                                    45

| | | |
|---|---|---|
| 09:59:33 | 1 | A.   I don't recall the exact number, but probably around ten. |
| 09:59:38 | 2 | Q.   Okay.  And she has been cooperating with the FBI, correct, |
| 09:59:45 | 3 | sir? |
| 09:59:45 | 4 | A.   She's been answering our questions, yes. |
| 09:59:47 | 5 |     MR. ORR:  May I have just a moment, Your Honor. |
| 09:59:50 | 6 |     THE COURT:  You may. |
| 10:00:30 | 7 | Q.   (BY MR. ORR) All right, sir.  And would it be fair to say |
| 10:00:34 | 8 | that the videos that you have -- that you have admitted in this |
| 10:00:40 | 9 | case, you have established that, based on your investigation, |
| 10:00:42 | 10 | occurred -- were made apparently during a period somewhere in |
| 10:00:46 | 11 | 1999 and 2000? |
| 10:00:47 | 12 | A.   That's correct. |
| 10:00:48 | 13 | Q.   Okay.  And it would also be fair to say the original |
| 10:00:54 | 14 | complaint in this case dealt with a video that was at least |
| 10:00:58 | 15 | discovered somewhere around 2005?  Or do I have that wrong? |
| 10:01:02 | 16 | A.   That's approximately correct. |
| 10:01:03 | 17 | Q.   All right.  And so, based on the investigation, what you |
| 10:01:07 | 18 | found is that you believe through hearsay that some of these |
| 10:01:12 | 19 | maybe -- were put on the Internet earlier than 2005? |
| 10:01:16 | 20 | A.   Yes. |
| 10:01:17 | 21 | Q.   But you have no direct knowledge of that? |
| 10:01:19 | 22 | A.   That's correct. |
| 10:01:20 | 23 | Q.   Okay.  But you have no evidence based on your thorough |
| 10:01:24 | 24 | investigation that any videos were produced in this particular |
| 10:01:30 | 25 | case after December or -- of 2000? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/09/16 Page 47 of 93
Case 1:10-cr-00297-LY Document 91-1 Filed 03/05/16 Page 46 of 92
MULLEN - CROSS                                                        46

| | | |
|---|---|---|
| 10:01:36 | 1 | A.   That's correct. |
| 10:01:37 | 2 | Q.   Oak.  Or could we even restrict that to the summer of |
| 10:01:40 | 3 | 2000? |
| 10:01:41 | 4 | A.   I don't know the exact time.  Just through the time he |
| 10:01:45 | 5 | lived at the house.  Roughly -- |
| 10:01:47 | 6 | Q.   Sometime in 2000? |
| 10:01:49 | 7 | A.   -- sometime in 2000 |
| 10:01:49 | 8 | Q.   Okay.  And for a period of time this case was investigated |
| 10:01:53 | 9 | and Mr. Diehl was on the streets, was still at home in Florida, |
| 10:01:56 | 10 | correct? |
| 10:01:57 | 11 | A.   That's correct. |
| 10:01:57 | 12 | Q.   And were efforts made to surveil him in Florida? |
| 10:02:01 | 13 | A.   Yes, they were. |
| 10:02:02 | 14 | Q.   Okay.  Were efforts made to contact and subpoena his |
| 10:02:07 | 15 | various Internet service providers? |
| 10:02:10 | 16 | A.   Yes, they were. |
| 10:02:13 | 17 | Q.   Okay.  And by way of the Internet service, can you |
| 10:02:16 | 18 | determine who has made downloads of what over a period of time? |
| 10:02:20 | 19 | A.   Not through a subpoena, no. |
| 10:02:21 | 20 | Q.   Well, okay.  Did you get a chance to look at the records |
| 10:02:24 | 21 | that were returned from his various Internet service providers |
| 10:02:27 | 22 | and his mail providers? |
| 10:02:29 | 23 | A.   Yes. |
| 10:02:30 | 24 | Q.   Okay.  Did you find any evidence there of any downloads or |
| 10:02:35 | 25 | uploads of anything that was illegal? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 48 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 47 of 192
MULLEN - CROSS                                                    47

| | | |
|---|---|---|
| 10:02:37 | 1 | A.   No, I did not. |
| 10:02:38 | 2 | Q.   Okay.  And that covered a period of how long? |
| 10:02:42 | 3 | A.   Up to whatever the Internet service provider maintained |
| 10:02:48 | 4 | and then what was ever in the E-mail at the time. |
| 10:02:51 | 5 | Q.   Do you have any idea how many years that would be? |
| 10:02:54 | 6 | A.   I do not recall the exact time frame.  But ... |
| 10:02:58 | 7 | Q.   Some number of years? |
| 10:03:00 | 8 | A.   Yes.  At least a year. |
| 10:03:02 | 9 | Q.   At least a year? |
| 10:03:03 | 10 | A.   Yeah.  Probably. |
| 10:03:04 | 11 | Q.   Well, would it surprise you to learn that, at least in the |
| 10:03:07 | 12 | discovery, there's E-mails going back to at least '08? |
| 10:03:11 | 13 | A.   No. |
| 10:03:11 | 14 | Q.   Okay.  And possibly as far back as '06 and '07.  That, |
| 10:03:16 | 15 | again, would not surprise you? |
| 10:03:18 | 16 | A.   No, it would not. |
| 10:03:19 | 17 | Q.   Okay.  Now, so far as any surveillance, did you -- did the |
| 10:03:23 | 18 | FBI surveil Mr. Diehl in any way in terms of his personal daily |
| 10:03:28 | 19 | activities? |
| 10:03:29 | 20 | A.   I believe they did, yes. |
| 10:03:30 | 21 | Q.   Okay.  And did they see him, you know, taking his child to |
| 10:03:34 | 22 | tennis lessons and that sort of thing? |
| 10:03:37 | 23 | A.   No, they did not. |
| 10:03:37 | 24 | Q.   Okay.  You're aware that he did have custody of his son? |
| 10:03:41 | 25 | A.   Yes, I am. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 49 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 48 of 123
MULLEN - CROSS                                                          48

| | | |
|---|---|---|
| 10:03:41 | 1 | Q.   Okay.  Anyway, during this -- do you have any idea how |
| 10:03:44 | 2 | long the surveillance lasted? |
| 10:03:45 | 3 | A.   It was a very brief surveillance.  Maybe a day at the |
| 10:03:50 | 4 | most. |
| 10:03:50 | 5 | Q.   Oh, okay.  So the one day didn't reveal anything untoward |
| 10:03:54 | 6 | in Mr. Diehl's behavior? |
| 10:03:56 | 7 | A.   That's correct. |
| 10:03:57 | 8 | Q.   Neither did the subpoenaing of his E-mail service |
| 10:04:01 | 9 | providers as well as his Internet service providers? |
| 10:04:03 | 10 | A.   That's correct. |
| 10:04:04 | 11 | MR. ORR:  Okay.  I pass the witness. |
| 10:04:06 | 12 | **REDIRECT EXAMINATION** |
| 10:04:07 | 13 | BY MR. DEVLIN: |
| 10:04:07 | 14 | Q.   Agent Mullen, would the information that you requested |
| 10:04:11 | 15 | from the Internet service providers pertaining to Mr. Diehl |
| 10:04:14 | 16 | necessarily inform you whether he had uploaded anything |
| 10:04:19 | 17 | illegally? |
| 10:04:19 | 18 | A.   No, they would not. |
| 10:04:20 | 19 | Q.   And in terms of the word "uploaded," how -- how is it, I |
| 10:04:25 | 20 | guess in general, that people can upload things to the |
| 10:04:28 | 21 | Internet? |
| 10:04:28 | 22 | A.   They can do it various ways.  They can send it through |
| 10:04:35 | 23 | E-mail.  They can do it through social networking sites.  They |
| 10:04:40 | 24 | can use peer-to-peer software and other means. |
| 10:04:42 | 25 | Q.   Okay.  Are there also networks, something called Usenet? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 50 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 49 of 193
MULLEN - RECROSS                                    49

```
10:04:46  1  Have you heard of that?
10:04:47  2  A.   Yes I have.
10:04:48  3  Q.   What is Usenet?
10:04:49  4  A.   Usenet is kind of a bulletin board service where you can
10:04:54  5  post pictures and comments and different binary files.
10:04:58  6  Q.   In your experience do Internet service providers routinely
10:05:02  7  record every action taken by a user in term of browsing or
10:05:06  8  uploading or downloading?
10:05:07  9  A.   No, they do not.
10:05:08 10  Q.   Okay.  That would require the -- would that require the
10:05:12 11  ISPs to actually take affirmative steps to record that
10:05:15 12  information and store it?
10:05:16 13  A.   Yes, it would.
10:05:17 14  Q.   Do most ISPs do that?
10:05:19 15  A.   No, they do not.
10:05:21 16  Q.   Do any ISPs do that?
10:05:24 17  A.   Not that I'm aware of.
10:05:26 18          MR. DEVLIN:  Pass the witness, Your Honor.
10:05:27 19          MR. ORR:  Just a second, Your Honor.
10:05:36 20                  RECROSS-EXAMINATION
10:05:36 21  BY MR. ORR:
10:05:36 22  Q.   Well, Special Agent Mullen, isn't it true that Internet
10:05:39 23  service providers do record upload and download logs, and they
10:05:42 24  can provide information if they see someone's doing something
10:05:45 25  on their servers that they shouldn't be doing?
```

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 51 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 50 of 192
MULLEN - RECROSS
50

10:05:49  1   A.   I don't know if they record upload and download.  They

10:05:52  2   record IP information.

10:05:53  3   Q.   Well, and if there's some IP information -- say,

10:05:57  4   certain -- say if a child pornography site has a certain IP

10:06:01  5   address, the FBI would likely know about that, would they not?

10:06:05  6   A.   It's possible they would know about it, yes.

10:06:07  7   Q.   And in Mr. Diehl's history that you got any subpoenas, you

10:06:11  8   could get the Internet service provider addresses, could you

10:06:14  9   not?

10:06:15  10  A.   I could get the IP address which Mr. Diehl's address had

10:06:20  11  at the time, not the ones he's talking to.  That would require

10:06:24  12  a court order.

10:06:24  13  Q.   Well, you didn't find any -- any unusual or illegal

10:06:29  14  Internet protocol addresses in your records, did you, or

10:06:32  15  anything that lead you to believe that he had any connection to

10:06:36  16  a child pornography site?

10:06:37  17  A.   No.

10:06:38  18        MR. ORR:  Pass the witness.

10:06:38  19        MR. DEVLIN:  No further questions, Your Honor.

10:06:40  20        THE COURT:  All right.  You may step down.  At this

10:06:43  21  time, in order that I can get this in context, I want to view

10:06:49  22  the exhibits that were introduced during this witness's

10:06:53  23  testimony.  How do you want to proceed?

10:06:58  24        MR. ORR:  Your Honor, we -- with Mr. Diehl's

10:07:00  25  permission, we suggest that the videos need not be shown in

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 52 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 51 of 193

51

| | | |
|---|---|---|
| 10:07:04 | 1 | Open Court.  That Your Honor could view them, if necessary, in |
| 10:07:08 | 2 | your -- in Your Honor's chambers.  There's no use to I think go |
| 10:07:12 | 3 | through all of that out here. |
| 10:07:13 | 4 | THE COURT:  Well, it is necessary that I view them if |
| 10:07:18 | 5 | I'm going to make a decision. |
| 10:07:19 | 6 | MR. ORR:  I think it's necessary, yes, sir. |
| 10:07:23 | 7 | THE COURT:  And I'm hesitant to view them at a time |
| 10:07:25 | 8 | after this witness may have left because it's possible that the |
| 10:07:28 | 9 | Court will have questions.  So -- |
| 10:07:34 | 10 | MR. ORR:  I'm -- well, sorry. |
| 10:07:35 | 11 | THE COURT:  -- I feel like I need to -- I think you |
| 10:07:38 | 12 | have provided or the Government has provided a hookup where I |
| 10:07:40 | 13 | can view them here at my bench.  And I realize this may take a |
| 10:07:45 | 14 | little bit of time while I view them, but I think it is |
| 10:07:48 | 15 | important that the Court review all of the evidence in this |
| 10:07:51 | 16 | case in a timely and contemporaneous fashion to the testimony |
| 10:07:56 | 17 | that I receive regarding that. |
| 10:07:58 | 18 | MR. ORR:  I do agree to that, Your Honor.  I didn't |
| 10:08:00 | 19 | mean that we would -- that Your Honor would view them later.  I |
| 10:08:03 | 20 | just meant, Your Honor, that we might take a recess and let |
| 10:08:05 | 21 | Your Honor view them in chambers, either with or without |
| 10:08:08 | 22 | Mr. Devlin and myself. |
| 10:08:10 | 23 | THE COURT:  Well, I believe that I would prefer not |
| 10:08:17 | 24 | to do that even though it is cumbersome.  I think this is an |
| 10:08:23 | 25 | open proceeding, even though the child pornography will not be |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 53 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 52 of 92

52

```
10:08:27   1   exhibited to the public.  And you-all may be in recess if you
10:08:31   2   want, but I'm going to review them here on the equipment that's
10:08:34   3   provided here in the Courtroom in Open Court as part of this
10:08:39   4   trial as opposed to recessing to chambers to view it.
10:08:42   5            MR. ORR:  Yes, sir.  May I have just one more second?
10:08:45   6            THE COURT:  You may.
10:08:49   7            MR. ORR:  Your Honor, we don't need to see it.  We've
10:08:52   8   all seen all this stuff.  We don't need to see it again on the
10:08:55   9   big monitors.
10:08:57  10            THE COURT:  That will be fine.  Do what you need to
10:08:59  11   do to get it set up for me to observe the evidence.  And those
10:09:05  12   will be -- I think all of the videos have been introduced in
10:09:09  13   evidence during Agent Mullen's testimony.  Is that correct,
10:09:14  14   Mr. Devlin?
10:09:15  15            MR. DEVLIN:  I'm sorry, Your Honor?
10:09:16  16            THE COURT:  All of the videos the Government intends
10:09:19  17   to introduce were introduced during Agent Mullen's testimony;
10:09:23  18   is that correct?
10:09:23  19            MR. DEVLIN:  Yes, sir.
10:09:24  20            THE COURT:  All right.  So when I observe these
10:09:26  21   videos, then there will be -- there will not be a need to take
10:09:30  22   an additional break to observe other videos that will be
10:09:33  23   introduced in evidence; is that correct?
10:09:35  24            MR. DEVLIN:  That's correct, Your Honor.
10:09:36  25            THE COURT:  And is it your intention to do this based
```

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 54 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 53 of 122

53

| | | |
|---|---|---|
| 10:09:39 | 1 | on the way the exhibits have come in, by my viewing Exhibit |
| 10:09:42 | 2 | Number 13, which is a compilation of the other videos; is that |
| 10:09:47 | 3 | correct? |
| 10:09:47 | 4 | MR. DEVLIN:  Thirteen -- let me ... |
| 10:09:49 | 5 | THE COURT:  And 7. |
| 10:09:50 | 6 | MR. DEVLIN:  Thirteen and 7 and -- 13 and 7 have the |
| 10:09:53 | 7 | videos that contain child pornography.  Since 11 does not |
| 10:09:57 | 8 | contain child pornography, we did not include it, but it is |
| 10:10:00 | 9 | separate and it's about 40 minutes long.  So there's |
| 10:10:03 | 10 | essentially three discs. |
| 10:10:05 | 11 | THE COURT:  All right.  Well, those will be what I |
| 10:10:06 | 12 | need to -- if they're in evidence, I want to observe all of |
| 10:10:10 | 13 | them. |
| 10:10:58 | 14 | The one you put in at this point is which number? |
| 10:11:02 | 15 | MR. DEVLIN:  I put it in as Government Exhibit 13, |
| 10:11:04 | 16 | Judge.  It will come up with a user-friendly screen that will |
| 10:11:06 | 17 | allow you to click on each exhibit.  What will happen is the |
| 10:11:09 | 18 | exhibit -- when you click on the name of the exhibit, it will |
| 10:11:12 | 19 | play that exhibit.  At the end of it, it will go back to the -- |
| 10:11:15 | 20 | to the menu, and then you can play the next exhibit. |
| 10:11:22 | 21 | THE COURT:  Well, what I will do is, after the first |
| 10:11:24 | 22 | one ends, I'll have you do this for fear that I will do |
| 10:11:28 | 23 | something. |
| 10:11:43 | 24 | MR. DEVLIN:  That's fine.  Do you mind sticking up |
| 10:11:44 | 25 | here and doing that? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 55 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 54 of 122

54

| | | |
|---|---|---|
| 10:11:44 | 1 | LEGAL ASSISTANT: No. I'll be here. |
| 10:11:44 | 2 | MR. DEVLIN: Go ahead. |
| 10:11:44 | 3 | (Court views exhibits) |
| 10:11:44 | 4 | MR. DEVLIN: Your Honor, we're free to step in and |
| 10:11:46 | 5 | out while you watch that? |
| 10:28:00 | 6 | THE COURT: You may. |
| 10:28:00 | 7 | (At the bench, on the record) |
| 10:28:00 | 8 | MR. ORR: May I approach the bench and see that, |
| 10:28:04 | 9 | Your Honor? |
| 10:28:28 | 10 | THE COURT: This is 5-2, maybe 5-1. |
| 10:28:36 | 11 | MR. ORR: You did take out the compilation? The |
| 10:28:39 | 12 | extraneous stuff that's not in there? |
| 10:28:40 | 13 | MR. DEVLIN: Remember, one of them is about six |
| 10:28:42 | 14 | minutes, and the other is about nine, the video segments that |
| 10:28:45 | 15 | we did have. |
| 10:28:46 | 16 | THE COURT: 5-1 is 620. And 5-9 -- and 5-2 is 938. |
| 10:28:52 | 17 | MR. DEVLIN: Some of them are four or five minutes |
| 10:28:54 | 18 | long. |
| 10:28:54 | 19 | MR. ORR: What I mean is that there's one in what |
| 10:28:55 | 20 | count that had that huge amount of stuff in it? That's out of |
| 10:29:00 | 21 | here? |
| 10:29:00 | 22 | MR. DEVLIN: Yeah. That was this one that was |
| 10:29:01 | 23 | actually I think five had the 48 minute one. So we only took |
| 10:29:06 | 24 | the two segments. |
| 10:29:07 | 25 | MR. ORR: Okay. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 56 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 56 of 122

55

```
10:29:08   1              MR. DEVLIN:  So ...

10:49:13   2         (Viewing exhibits)

10:49:13   3         (Open Court, Defendant present)

10:49:13   4              MR. ORR:  Your Honor, could we let Mr. Diehl take a

10:49:16   5    break?

10:49:17   6              THE COURT:  Yes.  How long a break do you need,

10:49:26   7    Counsel?

10:49:26   8              MR. ORR:  He just needs to go, Your Honor.  He just

10:49:30   9    needs a quick trip, I think.

10:49:34  10              THE COURT:  Before he leaves, let me ask you both:

10:49:37  11    What parts of Exhibit 11 do you think are important to this

10:49:43  12    case for me to see?  The whole 40 minutes or should I -- are

10:49:48  13    there particular parts of it?

10:49:50  14              MR. DEVLIN:  Probably the second half, approximately.

10:49:58  15              THE COURT:  I'm not there yet.

10:49:59  16              MR. DEVLIN:  Okay.

10:50:00  17              THE COURT:  But I just wanted to know if I should

10:50:01  18    watch the whole 40 minutes or what is the part that is of ...

10:50:09  19              MR. DEVLIN:  You can -- no.  I have no need for the

10:50:11  20    Court to see the first 20 minutes or so.  I'd have to go to the

10:50:15  21    exact portion that I would like you to see.  And, actually, it

10:50:18  22    would end up being a very small segment because even with the

10:50:22  23    testimony, there was a point where the camera was being hidden

10:50:25  24    and then it videotaped some activity and then it was covered.

10:50:27  25    So there's really nothing at that point.
```

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 57 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 56 of 192

56

| | | |
|---|---|---|
| 10:50:29 | 1 | THE COURT: Well, go ahead and let's let Mr. Diehl |
| 10:50:31 | 2 | take a break, and I will continue to observe Exhibit 7. And |
| 10:50:35 | 3 | then I'll have you -- the two of you set Exhibit 11 up for me |
| 10:50:39 | 4 | to see what I need to see. And then we'll be through with |
| 10:50:43 | 5 | that. |
| 10:50:44 | 6 | MR. DEVLIN: Very good, Your Honor. |
| 10:50:44 | 7 | (Recess, Court continues viewing exhibits) |
| 10:56:01 | 8 | (Open Court, Defendant present) |
| 10:56:01 | 9 | THE COURT: You want to put 11 in and fast-forward to |
| 10:56:04 | 10 | whatever part you want the Court to observe. |
| 10:56:06 | 11 | (Court views exhibits) |
| 11:02:47 | 12 | THE COURT: Mr. Orr? |
| 11:02:53 | 13 | (At the bench, on the record) |
| 11:02:53 | 14 | MR. DEVLIN: This is the portion right here where |
| 11:02:58 | 15 | he's getting in front of it. |
| 11:03:00 | 16 | MR. ORR: I thought we just saw that a second ago. |
| 11:03:03 | 17 | MR. DEVLIN: We were fast-forwarding through it, so |
| 11:03:06 | 18 | now we're going at regular speed. |
| 11:03:08 | 19 | MR. ORR: Okay. |
| 11:06:12 | 20 | MR. DEVLIN: After this it's just all audio, Judge. |
| 11:06:15 | 21 | There's nothing. Just all -- unless you have a desire to keep |
| 11:06:20 | 22 | playing this, Steve. |
| 11:06:21 | 23 | MR. ORR: No. |
| 11:06:22 | 24 | MR. DEVLIN: There's nothing significant. |
| 11:06:24 | 25 | MR. ORR: No. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 58 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 57 of 132

57

| | | |
|---|---|---|
| 11:06:25 | 1 | MR. DEVLIN:  So may I stop it? |
| 11:06:27 | 2 | THE COURT:  You may. |
| 11:06:28 | 3 | MR. ORR:  Are we done with videos? |
| 11:06:30 | 4 | MR. DEVLIN:  Yes. |
| 11:06:31 | 5 | MR. ORR:  Good.  Great. |
| 11:06:49 | 6 | (Open Court, Defendant present) |
| 11:06:49 | 7 | THE COURT:  The Court has reviewed Defendant's |
| 11:06:52 | 8 | Exhibits 13 and 7 in their entirety, and the portions -- I |
| 11:06:59 | 9 | mean -- pardon me -- Government's Exhibits 13 and 7 in their |
| 11:07:02 | 10 | entirety and the portion of Government's Exhibit Number 11 that |
| 11:07:08 | 11 | the attorneys advised me was the most relevant to the decisions |
| 11:07:15 | 12 | the Court has to make in this case. |
| 11:07:18 | 13 | So at this time, having reviewed those exhibits, the |
| 11:07:20 | 14 | Court has no additional questions for Agent Sean Mullen, who |
| 11:07:28 | 15 | was the witness.  He was passed before the Court observed the |
| 11:07:35 | 16 | exhibits and stepped down.  Does either party have any |
| 11:07:37 | 17 | additional questions of Agent Mullen at this time? |
| 11:07:41 | 18 | MR. DEVLIN:  No, Your Honor. |
| 11:07:43 | 19 | THE COURT:  Mr. Orr? |
| 11:07:44 | 20 | MR. ORR:  No, Your Honor. |
| 11:07:46 | 21 | THE COURT:  All right.  Mr. Devlin, you may call your |
| 11:07:50 | 22 | next witness. |
| 11:07:51 | 23 | MR. DEVLIN:  Your Honor, the Government would call |
| 11:07:52 | 24 | Kerry Jenkins. |
| 11:08:52 | 25 | ********************* |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 59 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 59 of 192
JENKINS - DIRECT                                                    58

| | | |
|---|---|---|
| 11:08:52 | 1 | **KERRY JENKINS,** |
| 11:08:52 | 2 | having been first duly sworn, testified as follows: |
| 11:08:52 | 3 | **DIRECT EXAMINATION** |
| 11:08:52 | 4 | **BY MR. DEVLIN:** |
| 11:08:52 | 5 | Q.   Good morning. |
| 11:08:53 | 6 | A.   Good morning. |
| 11:08:54 | 7 | Q.   A little nervous this morning? |
| 11:08:56 | 8 | A.   Yes. |
| 11:08:57 | 9 | Q.   Okay.  Just be calm, and I'm going to ask you a couple of |
| 11:09:01 | 10 | easy questions. |
| 11:09:02 | 11 | Is your name Kerry Jenkins? |
| 11:09:04 | 12 | A.   Yes. |
| 11:09:05 | 13 | Q.   Okay.  You -- how old are you? |
| 11:09:09 | 14 | A.   I'm 31. |
| 11:09:11 | 15 | Q.   Okay.  And do you live in the Austin area? |
| 11:09:14 | 16 | A.   Yes. |
| 11:09:14 | 17 | Q.   Okay.  Do you know the defendant in this case, |
| 11:09:18 | 18 | David Diehl? |
| 11:09:19 | 19 | A.   Yes. |
| 11:09:20 | 20 | Q.   How do you know him? |
| 11:09:22 | 21 | A.   He's my ex-husband. |
| 11:09:24 | 22 | Q.   When were you married to the defendant? |
| 11:09:27 | 23 | A.   January 1st, 1996. |
| 11:09:29 | 24 | Q.   And are you no longer married to him; is that correct? |
| 11:09:34 | 25 | A.   That's correct. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 60 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 59 of 132

JENKINS - DIRECT                                              59

| | | |
|---|---|---|
| 11:09:34 | 1 | Q.  Do you remember when you divorced? |
| 11:09:36 | 2 | A.  Our divorce was final on May 21st, 2003 -- I'm sorry -- |
| 11:09:42 | 3 | 2002. |
| 11:09:42 | 4 | Q.  2002?  All right.  How old were you when you married the |
| 11:09:47 | 5 | defendant? |
| 11:09:47 | 6 | A.  Sixteen. |
| 11:09:48 | 7 | Q.  Do you remember how old he was? |
| 11:09:51 | 8 | A.  Thirty-one. |
| 11:09:52 | 9 | Q.  Okay.  And when did you meet him? |
| 11:09:57 | 10 | A.  I was 15.  It was the summer of '95. |
| 11:10:02 | 11 | Q.  All right.  Did you meet him here in Texas or somewhere |
| 11:10:06 | 12 | else? |
| 11:10:06 | 13 | A.  I met him in Ohio. |
| 11:10:07 | 14 | Q.  In Ohio.  Okay.  Is he originally from Ohio? |
| 11:10:12 | 15 | A.  Yes. |
| 11:10:13 | 16 | Q.  All right.  Have you had any contact with him since your |
| 11:10:22 | 17 | divorce? |
| 11:10:22 | 18 | A.  Yes. |
| 11:10:23 | 19 | Q.  And why is that? |
| 11:10:24 | 20 | A.  We have a child together. |
| 11:10:26 | 21 | Q.  Okay.  You have a son; is that correct? |
| 11:10:29 | 22 | A.  That's correct. |
| 11:10:30 | 23 |         MR. ORR:  Your Honor, could we ask that she speak |
| 11:10:32 | 24 | up?  I'm sorry.  I'm just having a little trouble. |
| 11:10:34 | 25 |         THE COURT:  If you'll pull the microphone a little |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 61 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 60 of 192
JENKINS - DIRECT                                                    60

| | | |
|---|---|---|
| 11:10:37 | 1 | closer to you kind of below your mouth. |
| 11:10:45 | 2 | Q.   (BY MR. DEVLIN) When you were married to the defendant, |
| 11:10:53 | 3 | how was he employed? |
| 11:10:54 | 4 | A.   He was a software engineer. |
| 11:10:56 | 5 | Q.   Okay.  Was he a software engineer when you met him? |
| 11:11:01 | 6 | A.   Yes. |
| 11:11:01 | 7 | Q.   And did he hold software engineering jobs? |
| 11:11:05 | 8 | A.   Yes. |
| 11:11:06 | 9 | Q.   Okay.  Do you know how long he had worked as a software |
| 11:11:10 | 10 | engineer when you got married? |
| 11:11:13 | 11 | A.   As far as I know, since he graduated from college. |
| 11:11:17 | 12 | Q.   All right.  Do you remember when that was? |
| 11:11:19 | 13 | A.   No. |
| 11:11:19 | 14 | Q.   Okay.  What kind of -- what kinds of jobs did he hold when |
| 11:11:26 | 15 | you were married to him? |
| 11:11:28 | 16 | A.   Programming.  He was a software engineer, so he |
| 11:11:31 | 17 | programmed.  He mostly took contracts, some short-term jobs. |
| 11:11:35 | 18 | Q.   All right.  And after you were Married to him, do you know |
| 11:11:38 | 19 | what kind of jobs he had? |
| 11:11:40 | 20 | A.   As far as I know, the same. |
| 11:11:42 | 21 | Q.   Okay.  So you've had reason to be in touch with him, as |
| 11:11:45 | 22 | you mentioned, because you had a son together; is that right? |
| 11:11:48 | 23 | A.   That's correct. |
| 11:11:49 | 24 | Q.   And he's about, what, 14 years old now? |
| 11:11:52 | 25 | A.   Yes. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 62 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 61 of 192
JENKINS - DIRECT                                                    61

11:11:52  1   Q.   Okay.  And after you were divorced, he was living

11:11:56  2   primarily with the defendant; is that right?

11:11:58  3   A.   That's correct.

11:11:59  4   Q.   Okay.  While you were married, where did you and the

12:12:06  5   defendant live?  You had mentioned you met him in Ohio; is that

11:12:09  6   right?

11:12:10  7   A.   That's correct.

11:12:11  8   Q.   Okay.  After that where did the two of you live?

11:12:13  9   A.   We lived a lot of places.  When we first got married we

11:12:18 10   lived in Montgomery, Alabama for a very short time.  And then

11:12:21 11   we moved to Chicago, Illinois.  We lived in Atlanta, Georgia,

11:12:27 12   and we lived in the suburbs of Chicago.  We lived in Ohio.  We

11:12:32 13   lived in Austin, Texas.

11:12:33 14   Q.   All right.  So you went -- you were in Chicago, you left,

11:12:37 15   and then came back again?

11:12:38 16   A.   Correct.

11:12:38 17   Q.   Is that basically what you're saying?  Okay.

11:12:42 18        Did you live in Austin from roughly February 1999 to

11:12:46 19   November of 2000?

11:12:48 20   A.   That sounds about right.

11:12:49 21   Q.   Okay.  Was that at a residence Hazelhurst Drive here in

11:12:52 22   Austin?

11:12:53 23   A.   Part of that time, yes.

11:12:54 24   Q.   Part of that time.  And part of that time you lived where

11:12:57 25   else?

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 63 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 63 of 193
JENKINS - DIRECT                                                62

| | | |
|---|---|---|
| 11:12:58 | 1 | A. In an apartment on McNeil Road. |
| 11:12:59 | 2 | Q. Was that before or after you lived in that house? |
| 11:13:02 | 3 | A. Before. |
| 11:13:02 | 4 | Q. Okay. So you were in Austin a little over 18 months. Was |
| 11:13:06 | 5 | that -- would it be fair to say that that was the longest |
| 11:13:09 | 6 | amount of time you stayed in one place during your marriage? |
| 11:13:13 | 7 | A. Probably, yes. |
| 11:13:14 | 8 | Q. Okay. In November of 2000, you left Austin; is that |
| 11:13:21 | 9 | right? |
| 11:13:21 | 10 | A. That sounds correct. |
| 11:13:24 | 11 | Q. I should say the two of you left Austin; is that -- |
| 11:13:27 | 12 | A. No. Actually, he stayed. |
| 11:13:28 | 13 | Q. Okay. |
| 11:13:30 | 14 | A. I went up to Ohio and got a job. He actually stayed. We |
| 11:13:34 | 15 | had an RV, and he was working a contract here in Austin, and so |
| 11:13:38 | 16 | he stayed for a while. |
| 11:13:39 | 17 | Q. All right. Was there a time that he moved from Austin? |
| 11:13:42 | 18 | A. Yes. I mean, I don't understand the question. |
| 11:13:47 | 19 | Q. I'm sorry. After -- after you -- after you sold the house |
| 11:13:50 | 20 | here in Austin, okay, are you saying that you went to Ohio? |
| 11:13:55 | 21 | A. Yes. |
| 11:13:55 | 22 | Q. And he stayed around Austin for a while? |
| 11:13:58 | 23 | A. Yes. He stayed in the RV. |
| 11:14:00 | 24 | Q. Okay. |
| 11:14:00 | 25 | A. At an RV park. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 64 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 63 of 192
JENKINS - DIRECT                                          63

| | | |
|---|---|---|
| 11:14:02 | 1 | Q.   Okay.  Was there a time that he moved elsewhere from |
| 11:14:05 | 2 | Austin?  Did he leave Austin at some point to move elsewhere? |
| 11:14:09 | 3 | A.   No. |
| 11:14:10 | 4 | Q.   No?  He stayed in Austin for how long? |
| 11:14:13 | 5 | A.   It was a short time. |
| 11:14:15 | 6 | Q.   Okay.  Do you know where else he moved after that? |
| 11:14:19 | 7 | A.   Well, he -- after that -- we were still married -- he |
| 11:14:22 | 8 | moved up to Ohio. |
| 11:14:23 | 9 | Q.   Right.  Okay.  So he moved to Ohio. |
| 11:14:25 | 10 | A.   Yes. |
| 11:14:25 | 11 | Q.   All right.  How long did y'all live in Ohio at that point? |
| 11:14:29 | 12 | A.   I don't remember. |
| 11:14:37 | 13 | Q.   All right.  Was it a long time or a short amount of time? |
| 11:14:40 | 14 | A.   It was probably close to two years -- a year and a half to |
| 11:14:48 | 15 | two years. |
| 11:14:48 | 16 | Q.   All right.  Did you live anywhere else other than Ohio |
| 11:14:52 | 17 | while you were still married after that? |
| 11:14:53 | 18 | A.   No. |
| 11:14:54 | 19 | Q.   All right.  Were you divorced while you were living in |
| 11:14:57 | 20 | Ohio? |
| 11:14:57 | 21 | A.   Yes. |
| 11:14:58 | 22 | Q.   Okay.  After the divorce, okay, where did you live? |
| 11:15:03 | 23 | A.   I stayed in Ohio for a short time, and then I moved to |
| 11:15:07 | 24 | Texas. |
| 11:15:07 | 25 | Q.   All right.  Where did the defendant live after the |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 65 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 64 of 122
JENKINS - DIRECT                                                        64

11:15:10   1   divorce, to your knowledge?

11:15:11   2   A.   He lived in many places.  He lived -- has lived in

11:15:15   3   Florida, California, Texas.  He's lived in Corpus Christi and

11:15:22   4   Austin and Dallas and Houston.  He's lived in northern

11:15:30   5   California, and he's lived a couple of different places in

11:15:32   6   Florida.

11:15:32   7   Q.   All right.  And you, again, kept in touch with him because

11:15:42   8   he had custody of your son; is that right?

11:15:44   9   A.   That's correct.

11:15:45   10  Q.   Did he have custody of your son during all of those moves?

11:15:48   11  A.   Most of them.

11:15:49   12  Q.   All right.  And you were obviously still in touch with

11:15:53   13  your son, and he would visit regularly?

11:15:55   14  A.   Yes.

11:15:55   15  Q.   Okay.  And you've lived in Texas all of that time since

11:15:59   16  then?  Since you've moved back to Texas, you've lived only in

11:16:01   17  Texas?

11:16:02   18  A.   Yes.

11:16:02   19  Q.   All right.  Why did -- why did the two of you -- and then

11:16:08   20  after his -- after your divorce, why did he move so often?

11:16:12   21  A.   He would take contracts -- software engineering contracts

11:16:22   22  for work.  And then when the contract was up, he would move on

11:16:25   23  to a different contract.  So he would go where he could get the

11:16:28   24  most money.

11:16:28   25  Q.   Okay.  So it's all job related, basically?

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 66 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 65 of 132
JENKINS - DIRECT                                        65

| | | |
|---|---|---|
| 11:16:33 | 1 | A.   Yes. |
| 11:16:33 | 2 | Q.   All right.  When, did -- while you were married, did you |
| 11:16:38 | 3 | and he have computers and computer equipment in the house? |
| 11:16:44 | 4 | A.   Yes. |
| 11:16:44 | 5 | Q.   All right.  Did you -- when was the earliest that you can |
| 11:16:49 | 6 | remember you had computers and computer equipment in your |
| 11:16:52 | 7 | residence, wherever you were? |
| 11:16:54 | 8 | A.   He had a computer when we got married. |
| 11:16:57 | 9 | Q.   All right.  Did -- do you remember what kind of computer |
| 11:17:02 | 10 | it was? |
| 11:17:03 | 11 | A.   No. |
| 11:17:03 | 12 | Q.   All right.  Did he have more than one computer? |
| 11:17:05 | 13 | A.   At times, yes. |
| 11:17:07 | 14 | Q.   Okay.  Did you have a computer? |
| 11:17:09 | 15 | A.   Yes.  And I used his sometimes before I got my own. |
| 11:17:15 | 16 | Q.   All right.  How would you describe his computer in terms |
| 11:17:19 | 17 | of what kind was it?  Was it a desktop? laptop? perhaps both? |
| 11:17:24 | 18 | A.   Desktop -- well, he had both.  When -- at first he had a |
| 11:17:28 | 19 | desktop. |
| 11:17:29 | 20 | Q.   Okay.  And then at some point there was a laptop? |
| 11:17:33 | 21 | A.   Yes. |
| 11:17:33 | 22 | Q.   Okay.  Maybe more -- was there more than one at any point? |
| 11:17:36 | 23 | A.   More than one computer? |
| 11:17:38 | 24 | Q.   Uh-huh. |
| 11:17:39 | 25 | A.   Yes. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 67 of 93
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 66 of 92
JENKINS - DIRECT                                                    66

| | | |
|---|---|---|
| 11:17:39 | 1 | Q.   Okay.  Did he -- did he configure or build his own |
| 11:17:48 | 2 | computer? |
| 11:17:49 | 3 | A.   Yes. |
| 11:17:50 | 4 | Q.   So he would add parts to it over time? |
| 11:17:52 | 5 | A.   I guess. |
| 11:17:53 | 6 | Q.   Okay. |
| 11:17:54 | 7 | A.   He built -- the one computer he built.  He ordered all the |
| 11:17:58 | 8 | parts, and then he built it. |
| 11:18:00 | 9 | Q.   Okay.  When you moved to the various places, did you |
| 11:18:11 | 10 | always bring your computer equipment? |
| 11:18:13 | 11 | A.   Yes. |
| 11:18:13 | 12 | Q.   And I'm saying the two of you when you were married. |
| 11:18:16 | 13 | A.   Yes. |
| 11:18:17 | 14 | Q.   All right.  Did you have any video-recording equipment, |
| 11:18:25 | 15 | like video cameras, with you? |
| 11:18:28 | 16 | A.   Yes. |
| 11:18:28 | 17 | Q.   All right.  Who used the video equipment? |
| 11:18:32 | 18 | A.   Mostly David. |
| 11:18:33 | 19 | Q.   All right.  Did he use it a lot? |
| 11:18:36 | 20 | A.   Yes. |
| 11:18:36 | 21 | Q.   Can you describe that in a little bit more detail. |
| 11:18:40 | 22 | A.   Anytime we went anywhere, he would video record.  He would |
| 11:18:44 | 23 | video record the kids around the house.  Just -- he would video |
| 11:18:50 | 24 | record on his motorcycle.  So he would have me video record him |
| 11:18:54 | 25 | on his motorcycle. |

Case 1:10-cr-00297-LY  Document 219-1  Filed 03/05/16  Page 68 of 193
Case 1:10-cr-00297-LY  Document 91-1  Filed 03/09/11  Page 68 of 123
JENKINS - DIRECT                                                    67

| | | |
|---|---|---|
| 11:18:56 | 1 | Q.   Okay.  Okay.  Would it be fair to say he was an avid |
| 11:19:02 | 2 | videographer? |
| 11:19:03 | 3 | A.   I would say that's fair. |
| 11:19:05 | 4 | Q.   All right.  What kinds of cameras did he own? |
| 11:19:10 | 5 | A.   He owned a JVC camcorder.  He owned another camcorder.  I |
| 11:19:18 | 6 | believe it was a Sony.  And he also had some other camera |
| 11:19:21 | 7 | equipment -- lipstick camera, and then another camera that was |
| 11:19:27 | 8 | like a just a small camera on a circuit board that hooked to |
| 11:19:33 | 9 | the camcorders so that he could video without actually using |
| 11:19:41 | 10 | the camcorder. |
| 11:19:41 | 11 | Q.   What do you mean by a lipstick camera? |
| 11:19:44 | 12 | A.   It's a small, maybe, three inches -- two and a half to |
| 11:19:49 | 13 | three inches long cylinder with a camera in the end.  And then |
| 11:19:53 | 14 | it hooked into the camcorder.  He taped it to the top of his |
| 11:19:59 | 15 | helmet when he rode his motorcycle. |
| 11:20:01 | 16 | Q.   All right.  Kind of a helmet cam, if you will? |
| 11:20:04 | 17 | A.   He made it that way, yes. |
| 11:20:06 | 18 | Q.   Okay.  Are you -- did you previously describe a button |
| 11:20:12 | 19 | camera? |
| 11:20:12 | 20 | A.   I think that's probably what it's called. |
| 11:20:15 | 21 | Q.   And what is that. |
| 11:20:16 | 22 | A.   It's a camera on a circuit board, about one inch-by-one |
| 11:20:22 | 23 | inch square.  Very thin and with a round, very small camera |
| 11:20:27 | 24 | lens on top of it.  So I believe that they are -- they're kind |
| 11:20:33 | 25 | of used in, like, the nanny cams.  You know, like a teddy |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 69 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 69 of 192
JENKINS - DIRECT                                              68

| | | |
|---|---|---|
| 11:20:37 | 1 | bear's eye.  I think that's it. |
| 11:20:40 | 2 | Q.   Okay.  Do you know what he was using that camera for? |
| 11:20:43 | 3 | A.   I don't.  He -- I didn't know he ever used it, if he did. |
| 11:20:48 | 4 | Q.   But you had seen this lipstick cam and this button camera, |
| 11:20:52 | 5 | as you describe it? |
| 11:20:54 | 6 | A.   Yes. |
| 11:20:54 | 7 | Q.   All right.  Did he -- the JVC and the Sony cameras that |
| 11:21:00 | 8 | you described, do you know how they recorded video?  Did they |
| 11:21:03 | 9 | do it on a tape? on a disc? internally?  Do you recall? |
| 11:21:08 | 10 | A.   I know that JVC camera used tapes.  I don't recall the |
| 11:21:13 | 11 | Sony. |
| 11:21:14 | 12 | Q.   All right.  Was there -- are you aware whether he ever |
| 11:21:19 | 13 | uploaded and stored videos on his computer? |
| 11:21:23 | 14 | A.   I know that he did upload and store videos of him riding |
| 11:21:28 | 15 | his motorcycle on the computer. |
| 11:21:31 | 16 | Q.   All right.  Did he ever edit or maybe do anything -- I'm |
| 11:21:41 | 17 | going to say do anything fancy with any of his videos on his |
| 11:21:44 | 18 | computer. |
| 11:21:45 | 19 | A.   He was trying to learn how.  He had some video editing |
| 11:21:48 | 20 | software that he was using, and he was learning how to use that |
| 11:21:52 | 21 | to, like, set music to the videos and edit segments and stuff. |
| 11:21:56 | 22 | Q.   Okay.  Were you ever involved in any of that?  In any |
| 11:22:00 | 23 | video editing or anything like that? |
| 11:22:03 | 24 | A.   No.  I knew that he did it, but I didn't really take an |
| 11:22:07 | 25 | interest. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 70 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 69 of 123
JENKINS - DIRECT                                           69

| | | |
|---|---|---|
| 11:22:07 | 1 | Q.   Okay.  When you moved, what happened to the video cameras |
| 11:22:14 | 2 | and the video equipment that you owned? |
| 11:22:17 | 3 | A.   They moved with us. |
| 11:22:18 | 4 | Q.   All right.  When you divorced -- when you and he divorced, |
| 11:22:23 | 5 | what happened to the video equipment? |
| 11:22:25 | 6 | A.   He kept it.  And then at some point later after -- we had |
| 11:22:29 | 7 | been divorced for a while -- he gave me the JVC camcorder so |
| 11:22:34 | 8 | that I would have one.  It was actually in the divorce that I |
| 11:22:38 | 9 | would get one, but I didn't take it initially.  I waited until |
| 11:22:42 | 10 | later. |
| 11:22:42 | 11 | Q.   Okay.  Do you know how much later that you got that |
| 11:22:45 | 12 | camera, roughly? |
| 11:22:46 | 13 | A.   Maybe a year. |
| 11:22:48 | 14 | Q.   All right.  And was it from that camera that you -- was |
| 11:22:52 | 15 | that the camera that you gave later to Special Agent Mullen? |
| 11:22:56 | 16 | A.   Yes. |
| 11:22:57 | 17 | Q.   Okay.  And inside it was -- it contained a -- a video |
| 11:23:00 | 18 | recording? |
| 11:23:01 | 19 | A.   Yes. |
| 11:23:02 | 20 | Q.   Okay.  And he -- Special Agent Mullen retained that video |
| 11:23:10 | 21 | recording; is that right? |
| 11:23:11 | 22 | A.   That's correct. |
| 11:23:12 | 23 | Q.   Just some home movies, I guess; is that right? |
| 11:23:16 | 24 | A.   Yes. |
| 11:23:16 | 25 | Q.   Have you ever heard of any software called retriever |

Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/16 Page 71 of 193
Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 70 of 192
JENKINS - DIRECT
70

| 11:23:28 | 1 | software? |
| 11:23:29 | 2 | A.   Yes. |
| 11:23:29 | 3 | Q.   Can you tell me -- tell us about that? |
| 11:23:31 | 4 | A.   It's a software program that David wrote to go onto the |
| 11:23:35 | 5 | Internet and download files.  I don't know much more about it |
| 11:23:42 | 6 | than that.  I probably did years ago, but I don't really |
| 11:23:46 | 7 | remember. |
| 11:23:46 | 8 | Q.   How do you know about that? |
| 11:23:48 | 9 | A.   Well, he wrote it.  He told me about it.  And I actually |
| 11:23:52 | 10 | designed and animated GIF for him to use for the program. |
| 11:23:56 | 11 | Q.   Okay.  Was this while you were married? |
| 11:23:59 | 12 | A.   Yes. |
| 11:23:59 | 13 | Q.   All right.  Do you know why he developed that? |
| 11:24:03 | 14 | A.   To go Online and download files.  But I don't know |
| 11:24:10 | 15 | exactly -- I don't know much about it, really. |
| 11:24:15 | 16 | Q.   Okay.  Now, you're aware of what the defendant is charged |
| 11:24:23 | 17 | with here in court today; is that correct? |
| 11:24:25 | 18 | A.   That's correct. |
| 11:24:26 | 19 | Q.   Production of child pornography.  While you were married |
| 11:24:31 | 20 | to him, were you aware of any activities that he had involving |
| 11:24:37 | 21 | child pornography? |
| 11:24:38 | 22 | A.   No, I was not. |
| 11:24:39 | 23 | Q.   Were you involved in any way with child pornography? |
| 11:24:42 | 24 | A.   No, I was not. |
| 11:24:43 | 25 | Q.   When did you first learn about this investigation? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 72 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 71 of 92
JENKINS - DIRECT                                                    71

11:24:47  1   A.   I learned about this investigation between Christmas and

11:24:53  2   New Year's of 2009.

11:24:56  3   Q.   Okay.  And was that -- what did you learn at that point?

11:25:02  4   A.   I learned that --

11:25:05  5        MR. ORR:  Objection to hearsay, Your Honor.  What she

11:25:08  6   learned.

11:25:08  7        THE COURT:  Well, it's not hearsay yet.  I'm going to

11:25:11  8   let her answer the question, and then I'll let you re-urge your

11:25:14  9   objection.

11:25:14  10       MR. ORR:  Yes, sir.

11:25:15  11  Q.   (BY MR. DEVLIN) Just in general what did you learn about

11:25:17  12  the investigation?

11:25:18  13  A.   I learned that David was under investigation for -- for --

11:25:26  14  at the time, what I knew of it was child molestation of someone

11:25:32  15  that I knew.

11:25:32  16  Q.   Okay.

11:25:33  17       THE COURT:  Now, when you say between Christmas and

11:25:37  18  New Year's 2009, was that Christmas 2008 to New Year's 2009 or

11:25:42  19  Christmas 2009 to New Year's 2010?

11:25:47  20       THE WITNESS:  Christmas 2009 to New Year's 2010.

11:25:51  21       THE COURT:  Okay.  Thank you.

11:25:52  22  Q.   (BY MR. DEVLIN) Did you have anything to do with starting

11:25:55  23  that investigation?

11:25:57  24  A.   No.  I did not start the investigation.

11:25:59  25  Q.   Okay.  It was already ongoing when you learned about it?

| | | |
|---|---|---|
| 11:26:02 | 1 | A.    Correct. |
| 11:26:03 | 2 | MR. DEVLIN:  May I have a moment, Your Honor. |
| 11:26:05 | 3 | THE COURT:  You may. |
| 11:26:15 | 4 | MR. DEVLIN:  Your Honor, I pass the witness. |
| 11:26:17 | 5 | THE COURT:  Mr. Orr? |
| 11:26:34 | 6 | **CROSS-EXAMINATION** |
| 11:26:34 | 7 | **BY MR. ORR:** |
| 11:26:34 | 8 | Q.    Hi.  How are you doing? |
| 11:26:35 | 9 | A.    Hi. |
| 11:26:36 | 10 | Q.    So when you lived with Mr. Diehl here in Austin and you |
| 11:26:49 | 11 | had -- you had a son, correct? |
| 11:26:51 | 12 | A.    Correct. |
| 11:26:52 | 13 | Q.    Little A.? |
| 11:26:53 | 14 | A.    Yes. |
| 11:26:54 | 15 | Q.    That's what he goes by, right? |
| 11:26:56 | 16 | A.    Yes. |
| 11:26:56 | 17 | Q.    So he was a little boy at the time? |
| 11:26:58 | 18 | A.    Uh-huh. |
| 11:26:58 | 19 | Q.    He's getting bigger now, right? |
| 11:27:00 | 20 | A.    Yes. |
| 11:27:01 | 21 | Q.    Okay.  Good.  And so far as the sorts of things -- one of |
| 11:27:08 | 22 | the things that you did with Mr. Diehl is y'all went to the |
| 11:27:11 | 23 | Star Ranch Nudist Colony here in the Austin area, did you not? |
| 11:27:16 | 24 | A.    We did. |
| 11:27:17 | 25 | Q.    Okay.  And so at the ranch there are children who were |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 74 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 74 of 132
JENKINS - CROSS                                                    73

| | | |
|---|---|---|
| 11:27:22 | 1 | nude, correct? |
| 11:27:23 | 2 | A.    That is correct. |
| 11:27:24 | 3 | Q.    Adults, children, everybody runs around without their |
| 11:27:27 | 4 | clothes on? |
| 11:27:28 | 5 | A.    That's correct. |
| 11:27:29 | 6 | Q.    And so far as how many visits do you think he made to the |
| 11:27:34 | 7 | Star Ranch with David? |
| 11:27:36 | 8 | A.    Many.  We -- we were members. |
| 11:27:41 | 9 | Q.    Okay. |
| 11:27:41 | 10 | A.    We went regularly. |
| 11:27:43 | 11 | Q.    Okay.  Did he have a -- did y'all have a cabin there ever? |
| 11:27:47 | 12 | A.    Yes. |
| 11:27:48 | 13 | Q.    Okay.  And you still continue to go to the Star Ranch, do |
| 11:27:53 | 14 | you not? |
| 11:27:54 | 15 | A.    I haven't been lately because he won't let me. |
| 11:27:57 | 16 | Q.    Okay.  Well, your parents stay out there, do they not? |
| 11:28:02 | 17 | A.    Yes, they do. |
| 11:28:03 | 18 | Q.    Okay.  And you and Mr. Diehl are now at the -- you're |
| 11:28:08 | 19 | feuding about A., correct? |
| 11:28:10 | 20 | A.    Yes. |
| 11:28:11 | 21 | Q.    That's maybe a -- that's a fair way to put it, is it not? |
| 11:28:15 | 22 | There are some sort of civil proceedings pending about your |
| 11:28:18 | 23 | son? |
| 11:28:19 | 24 | A.    Yes. |
| 11:28:19 | 25 | Q.    Okay.  And one of the things his civil lawyer asked to |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 75 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 74 of 92
JENKINS - CROSS                                                    74

11:28:23   1   have done in that case was that you be enjoined from taking A.

11:28:26   2   to the Star Ranch?

11:28:28   3   A.   Yes.

11:28:28   4   Q.   Okay.  And you -- have you violated that order, not to do

11:28:32   5   that?

11:28:33   6   A.   No, I have not.

11:28:34   7   Q.   Okay.  So -- and do you have any idea why Mr. Diehl did

11:28:38   8   not want A. going to the Star Ranch?

11:28:41   9            MR. DEVLIN:  Objection, Your Honor.  Relevance.

11:28:49  10            THE COURT:  Mr. Orr, do you have a response to the

11:28:51  11   objection?

11:28:51  12            MR. ORR:  I think it's relevant in that they try to

11:28:56  13   portray Mr. Diehl in a poor light, and I'm trying to put him

11:28:59  14   back in a slighter better light.

11:29:01  15            THE COURT:  I'll allow the question.  The objection

11:29:02  16   is overruled.

11:29:04  17            THE WITNESS:  Can you repeat the question?

11:29:05  18   Q.   (BY MR. ORR) Do you have any idea why Mr. Diehl would not

11:29:08  19   want his son going to the Star Ranch?

11:29:10  20   A.   No.  I'm not sure why.

11:29:12  21   Q.   Okay.  All right.  Are you aware of the -- other than just

11:29:19  22   a general outline of what the charges are against Mr. Diehl in

11:29:23  23   this case, are you aware of any of -- any of the videos or what

11:29:27  24   the details are?

11:29:28  25   A.   I have identified victims.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 76 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 76 of 123
JENKINS - CROSS                                                    75

| | | |
|---|---|---|
| 11:29:30 | 1 | Q.   Okay.  That's because Mr. -- Mr. Devlin and Agent Mullen |
| 11:29:36 | 2 | have shown you still photographs? |
| 11:29:38 | 3 | A.   Yes. |
| 11:29:39 | 4 | Q.   And you were able to say, Well, that's so and so and this |
| 11:29:42 | 5 | is so and so.  That sort of thing, correct? |
| 11:29:44 | 6 | A.   Correct. |
| 11:29:45 | 7 | Q.   All right.  Well, when you visit the Star Ranch, is there |
| 11:29:52 | 8 | ways to video -- can you take photographs out there and |
| 11:29:55 | 9 | videos?  Can you do that? |
| 11:29:56 | 10 | A.   In general it's not allowed. |
| 11:29:58 | 11 | Q.   But in -- are there specific instances where it can be |
| 11:30:02 | 12 | allowed? |
| 11:30:02 | 13 | A.   There are. |
| 11:30:03 | 14 | Q.   Okay.  And what -- tell the Court what -- what those |
| 11:30:06 | 15 | instances are? |
| 11:30:07 | 16 | A.   Special events.  They take photographs of the children |
| 11:30:13 | 17 | with Santa Clause at Christmas.  Most of the children are |
| 11:30:18 | 18 | clothed -- |
| 11:30:19 | 19 | Q.   Okay. |
| 11:30:19 | 20 | A.   -- when that happens. |
| 11:30:20 | 21 | Q.   Okay.  And do the children -- in order for the parents to |
| 11:30:24 | 22 | get permission for them to be photographed, do they have to |
| 11:30:28 | 23 | wear an arm band? |
| 11:30:29 | 24 | A.   I believe that was the case during the 2000 convention. |
| 11:30:32 | 25 | Q.   Okay.  And so there was a convention in 2000, correct? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 77 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 76 of 132
JENKINS - CROSS                                                    76

| | | |
|---|---|---|
| 11:30:35 | 1 | A.   Yes. |
| 11:30:36 | 2 | Q.   And you attended that with Mr. Diehl and A.? |
| 11:30:38 | 3 | A.   No, I did not. |
| 11:30:39 | 4 | Q.   Oh, you did not go? |
| 11:30:41 | 5 | A.   No.  And neither did A.. |
| 11:30:43 | 6 | Q.   Okay.  Well, were you out there at all in 2000? |
| 11:30:46 | 7 | A.   Yes. |
| 11:30:47 | 8 | Q.   Okay.  With Mr. Diehl and A.? |
| 11:30:49 | 9 | A.   Yes. |
| 11:30:49 | 10 | Q.   Okay.  But you have no recollection of attending the |
| 11:30:54 | 11 | convention? |
| 11:30:55 | 12 | A.   No. |
| 11:30:55 | 13 | Q.   Okay.  You think that Mr. Diehl went there by himself? |
| 11:30:58 | 14 | A.   Yes. |
| 11:30:59 | 15 | Q.   Okay.  All right.  Now, was there a time when -- that a |
| 11:31:12 | 16 | young relative of Mr. Diehl's came to live with you in Austin? |
| 11:31:16 | 17 | A.   Yes. |
| 11:31:16 | 18 | Q.   And about when was that? |
| 11:31:18 | 19 | A.   That was in '99, I believe. |
| 11:31:27 | 20 | Q.   Okay.  And how long did she live with you? |
| 11:31:29 | 21 | A.   I don't recall.  She lived with us for a while.  She was |
| 11:31:34 | 22 | enrolled in school. |
| 11:31:35 | 23 | Q.   About six months to a year at the most? |
| 11:31:38 | 24 | A.   Yes. |
| 11:31:38 | 25 | Q.   Something like that? |

Case 1:10-cr-00297-LY Document 91-1 Filed 03/05/16 Page 78 of 193
Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 78 of 193
JENKINS - CROSS                                                      77

| | | |
|---|---|---|
| 11:31:39 | 1 | And without mentioning her name, she would be |
| 11:31:42 | 2 | Mr. Diehl's niece.  Would that be fair to say? |
| 11:31:44 | 3 | A.   Yes. |
| 11:31:45 | 4 | Q.   Okay.  And about how old was she at that time? |
| 11:31:48 | 5 | A.   I believe she was seven. |
| 11:31:50 | 6 | Q.   Okay.  Could she have been a little older? |
| 11:31:55 | 7 | A.   She might have been eight. |
| 11:31:56 | 8 | Q.   Okay.  Were there any problems with her in terms of |
| 11:32:01 | 9 | discipline or anything like that? |
| 11:32:03 | 10 | A.   Occasionally.  She's a child.  There occasionally are. |
| 11:32:08 | 11 | Q.   Well, that's part of growing up.  Sometimes you're hard to |
| 11:32:12 | 12 | handle? |
| 11:32:12 | 13 | A.   Yes. |
| 11:32:12 | 14 | Q.   Not everyone can be the perfect child like I was, I |
| 11:32:18 | 15 | suppose. |
| 11:32:18 | 16 | So did you -- did you know -- there was another young |
| 11:32:32 | 17 | lady.  I think you've been shown her photograph probably from a |
| 11:32:35 | 18 | video from the Star Ranch. |
| 11:32:40 | 19 | A.   Can you be more specific? |
| 11:32:41 | 20 | Q.   Well, I'd rather not mention her name. |
| 11:32:44 | 21 | A.   Well, yes. |
| 11:32:45 | 22 | Q.   The young lady from the Star Ranch.  She would have been |
| 11:32:49 | 23 | about ten at the time? |
| 11:32:50 | 24 | A.   Yes. |
| 11:32:50 | 25 | Q.   Okay.  And did there ever come a time, for instance, when |

| 11:33:03 | 1 | either -- when some young girl would climb into your bed with |
| 11:33:08 | 2 | you and David? |
| 11:33:09 | 3 | A.   Very rarely.  I didn't like to have the children in my |
| 11:33:13 | 4 | bed.  A. didn't sleep in my bed. |
| 11:33:15 | 5 | Q.   Well, you'd kick them out, right? |
| 11:33:17 | 6 | A.   Yes. |
| 11:33:17 | 7 | Q.   You and David would kick them out? |
| 11:33:19 | 8 | A.   Yes. |
| 11:33:20 | 9 | Q.   It was something -- it was unwanted attention that you |
| 11:33:23 | 10 | were receiving from the little girls, correct? |
| 11:33:26 | 11 | A.   Well, either A. or her.  We didn't allow either of them to |
| 11:33:29 | 12 | sleep in the bed. |
| 11:33:30 | 13 | Q.   Okay.  It just gets too crowded, right? |
| 11:33:35 | 14 | A.   Yeah.  I just didn't think it was appropriate. |
| 11:33:37 | 15 | Q.   Okay.  All right.  And did -- was there a time when Mr. -- |
| 11:33:42 | 16 | Mr. Diehl had a motorcycle accident, around -- somewhere around |
| 11:33:46 | 17 | this time frame that we're talking about? |
| 11:33:48 | 18 | A.   Yes. |
| 11:33:48 | 19 | Q.   Okay.  Was it a fairly bad accident? |
| 11:33:50 | 20 | A.   Yes. |
| 11:33:51 | 21 | Q.   Okay.  Could you tell the Court what happened to him in |
| 11:33:54 | 22 | that accident? |
| 11:33:54 | 23 | A.   He injured his hand, his forearm, his ribs. |
| 11:34:00 | 24 | Q.   Okay.  And did you -- did you go to the hospital with him? |
| 11:34:05 | 25 | A.   Yes. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 80 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 79 of 132
JENKINS - CROSS                                          79

| 11:34:06 | 1 | Q. | And what hospital did he go to? |

11:34:06    1    Q.    And what hospital did he go to?

11:34:08    2    A.    Seton Northwest.

11:34:09    3    Q.    Okay.  How long was he in the hospital?

11:34:11    4    A.    It was just an ER visit.

11:34:13    5    Q.    Just an emergency visit?

11:34:16    6    A.    Yes.

11:34:16    7    Q.    Okay.  And was he given some drugs there at the hospital?

11:34:20    8    A.    Yes.

11:34:20    9    Q.    Okay.  Do you know what he was given?

11:34:22    10   A.    Morphine, and then he was prescribed Silvadene for his

11:34:27    11   road rash.

11:34:28    12   Q.    For what?

11:34:28    13   A.    Road rash.

11:34:30    14   Q.    Okay.  Was he given some Oxycontin there?

11:34:33    15   A.    I do not recall any.

11:34:35    16   Q.    Okay.  Well, did -- did you and Mr. Diehl share a doctor?

11:34:41    17   That is, did you have -- did he go to the same doctor you went

11:34:46    18   to?

11:34:46    19   A.    Yes.

11:34:46    20   Q.    Okay.  And was the doctor prescribing medications for you?

11:34:51    21   A.    Yes.

11:34:51    22   Q.    And what had he prescribed for you?

11:34:54    23   A.    Well, I don't believe that was at the same time --

11:34:57    24          MR. ORR:  Objection.  Relevance.

11:34:58    25          THE COURT:  Mr. Orr.  Relevance?

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 81 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 80 of 192
JENKINS - CROSS                                                    80

| | | |
|---|---|---|
| 11:35:00 | 1 | MR. ORR: Well, it goes to the relevance of what |
| 11:35:02 | 2 | Mr. Diehl was allowed to take and what he got from the same |
| 11:35:05 | 3 | doctor. |
| 11:35:06 | 4 | THE COURT: All right. And what relevance does all |
| 11:35:08 | 5 | of that have to the charges in the indictment? |
| 11:35:10 | 6 | MR. ORR: I think it goes to what -- to the |
| 11:35:15 | 7 | apparent -- to this time frame, Your Honor, he was on these |
| 11:35:19 | 8 | medications. And this is the only time frame which I think |
| 11:35:22 | 9 | that any of this ever occurred. The Government's allegations |
| 11:35:25 | 10 | go to the time frame of 1999 to 2000. And I'm trying to show |
| 11:35:29 | 11 | during this time frame that he had been receiving medications |
| 11:35:32 | 12 | from his doctor and from the hospital as a result from his |
| 11:35:36 | 13 | wreck. It might be more appropriate at sentencing but -- if we |
| 11:35:39 | 14 | get that far. |
| 11:35:39 | 15 | THE COURT: I'll allow you a little leeway, but don't |
| 11:35:42 | 16 | belabor the point. |
| 11:35:43 | 17 | MR. ORR: No, sir. I won't. |
| 11:35:45 | 18 | THE COURT: The objection's overruled. |
| 11:35:46 | 19 | Q. (BY MR. ORR) So do you remember the doctor's name? |
| 11:35:49 | 20 | A. No. |
| 11:35:49 | 21 | Q. Okay. Well, did you get some medications from the doctor? |
| 11:35:53 | 22 | A. I did, yes. |
| 11:35:55 | 23 | Q. And did Mr. Diehl get some medications from the doctor? |
| 11:35:58 | 24 | A. I do not recall. |
| 11:35:59 | 25 | Q. Okay. Well, at one point the doctor gave you too much -- |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 82 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 12/05/11 Page 81 of 92
JENKINS - CROSS                                                     81

| | | |
|---|---|---|
| 11:36:04 | 1 | too many medications, and you actually overdosed, correct? |
| 11:36:07 | 2 | A.   That is correct. |
| 11:36:08 | 3 | Q.   By accident, I assume, correct? |
| 11:36:10 | 4 | A.   Yes. |
| 11:36:10 | 5 | Q.   All right.  But whatever the doctor gave you, it was |
| 11:36:13 | 6 | something that apparently was either too much in quantity or |
| 11:36:16 | 7 | not an appropriate substance, correct? |
| 11:36:18 | 8 | A.   Correct. |
| 11:36:20 | 9 | Q.   And you do know that Mr. Diehl visited this doctor? |
| 11:36:24 | 10 | A.   Yes. |
| 11:36:24 | 11 | Q.   Okay.  Now, so far as you mentioned these video cameras, |
| 11:36:41 | 12 | Mr. Diehl never video-ed you in any way during the course of |
| 11:36:45 | 13 | your marriage or your time together.  Would that be a fair |
| 11:36:48 | 14 | statement? |
| 11:36:48 | 15 | A.   He video recorded me. |
| 11:36:50 | 16 | Q.   Did he video you in any kind of sexual activities? |
| 11:36:54 | 17 | A.   Not to my knowledge. |
| 11:36:55 | 18 | Q.   Okay.  Other than just home videos, that's all you know |
| 11:36:58 | 19 | about with him, correct? |
| 11:36:59 | 20 | A.   Correct. |
| 11:37:00 | 21 | Q.   Okay.  Did you have access to his computer there at the |
| 11:37:04 | 22 | house that you lived in together in Austin? |
| 11:37:07 | 23 | A.   Yes. |
| 11:37:08 | 24 | Q.   Okay.  And you never saw any -- any -- you testified you |
| 11:37:11 | 25 | didn't know anything about any of this sort of thing.  You |

Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/16 Page 83 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 12/05/16 Page 83 of 193
JENKINS - CROSS                                                    82

| 11:37:14 | 1 | didn't see any kind of child pornography or any kind of |
| 11:37:19 | 2 | pornography on the computer.  Would that be a fair statement? |
| 11:37:22 | 3 | A.    That is fair. |
| 11:37:23 | 4 | Q.    Okay.  Now, you -- Mr. Diehl during the time of the |
| 11:37:31 | 5 | marriage was gone a lot, was he not?  Traveling? |
| 11:37:34 | 6 | A.    That is true. |
| 11:37:35 | 7 | Q.    And that was difficult, was it not?  Or was it? |
| 11:37:39 | 8 | A.    Some -- most of the time, it was. |
| 11:37:41 | 9 | Q.    Okay.  In any event, you've been remarried to another man, |
| 11:37:45 | 10 | correct? |
| 11:37:45 | 11 | A.    That's correct. |
| 11:37:46 | 12 | Q.    And what is his name? |
| 11:37:48 | 13 | A.    Charles. |
| 11:37:48 | 14 | Q.    Okay.  And you -- what's his last name? |
| 11:37:51 | 15 | A.    Claybo (phonetic). |
| 11:37:52 | 16 | Q.    Okay.  And you have -- you have three children with him, |
| 11:37:57 | 17 | do you not? |
| 11:37:58 | 18 | A.    Yes, I do. |
| 11:37:58 | 19 | Q.    Okay.  And now you are seeking custody of A., right? |
| 11:38:02 | 20 | A.    I have custody of A. |
| 11:38:04 | 21 | Q.    Okay.  Well, you have custody.  Do you have temporary |
| 11:38:07 | 22 | custody or permanent custody? |
| 11:38:08 | 23 | A.    Temporary. |
| 11:38:09 | 24 | Q.    Okay.  So you're seeking permanent custody? |
| 11:38:12 | 25 | A.    Yes. |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 84 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 84 of 193
JENKINS - CROSS                                                   83

| | | |
|---|---|---|
| 11:38:12 | 1 | Q.   Okay.  Now, when -- when Mr. -- at the time of the |
| 11:38:21 | 2 | divorce, Mr. Diehl, what, got custody of his son by agreement |
| 11:38:24 | 3 | with you?  Is that the way it worked? |
| 11:38:28 | 4 | A.   No.  At the time of the divorce, we had shared parenting. |
| 11:38:31 | 5 | Q.   Okay.  And then did that become parenting that Mr. Diehl |
| 11:38:37 | 6 | undertook more than you did in terms of time, at least? |
| 11:38:41 | 7 | A.   Mr. Diehl moved. |
| 11:38:43 | 8 | Q.   Uh-huh. |
| 11:38:44 | 9 | A.   And then we were still sharing A.  And then he took him in |
| 11:38:52 | 10 | the middle of the night and took him to Ohio and filed for |
| 11:38:55 | 11 | custody while I was pregnant on bed rest and couldn't travel. |
| 11:38:59 | 12 | And he lied to the Court, and he told the Court that I had no |
| 11:39:03 | 13 | part of A.'s life. |
| 11:39:06 | 14 | Q.   And how long ago was that? |
| 11:39:08 | 15 | A.   That was in two thousand -- 2003 -- 2002. |
| 11:39:15 | 16 | Q.   Okay.  And -- but until    1iehl was arrested by the |
| 11:39:19 | 17 | United States of America, you didn't undertake to get custody |
| 11:39:23 | 18 | of A. back? |
| 11:39:24 | 19 | A.   No, I did not. |
| 11:39:36 | 20 |      MR. ORR:  May I have just a moment, Your Honor? |
| 11:40:17 | 21 | Q.   (BY MR. ORR) Okay.  So -- and you're aware of the |
| 11:40:20 | 22 | activities that Mr. Diehl has undertaken with his son A.? |
| 11:40:24 | 23 | A.   Could you be more specific? |
| 11:40:26 | 24 | Q.   Well, he takes him to tennis lessons and takes him to |
| 11:40:30 | 25 | school and that sort of thing? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 85 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 84 of 132
JENKINS - CROSS                                                84

| | | |
|---|---|---|
| 11:40:32 | 1 | A.   He did.  Now I do that. |
| 11:40:33 | 2 | Q.   Huh? |
| 11:40:34 | 3 | A.   He did, and now I do that. |
| 11:40:35 | 4 | Q.   Okay.  And he's quite an accomplished tennis player, is he |
| 11:40:40 | 5 | not? |
| 11:40:40 | 6 | A.   He is. |
| 11:40:41 | 7 | Q.   Now, you claim he was taken in the middle of the night? |
| 11:40:43 | 8 | A.   Yes, he was. |
| 11:40:44 | 9 | Q.   You mean from your house?  You mean stolen or kidnapped? |
| 11:40:48 | 10 | A.   No.  When it was his visitation. |
| 11:40:50 | 11 | Q.   Okay.  Well, if the -- the divorce was in Ohio, correct? |
| 11:40:56 | 12 | A.   Correct. |
| 11:40:56 | 13 | Q.   And so that until I guess changed, that Court would have |
| 11:41:01 | 14 | jurisdiction over the child? |
| 11:41:03 | 15 | A.   Yes. |
| 11:41:04 | 16 | Q.   And so was there a change of orders there after -- at some |
| 11:41:09 | 17 | time after the divorce? |
| 11:41:10 | 18 | A.   There was. |
| 11:41:11 | 19 | Q.   Okay.  And you undertook no way -- nothing to change that |
| 11:41:16 | 20 | order? |
| 11:41:17 | 21 | A.   No. |
| 11:41:18 | 22 | Q.   Okay. |
| 11:41:20 | 23 | THE COURT:  Now, I'm giving you some leeway here, but |
| 11:41:23 | 24 | I think -- |
| 11:41:23 | 25 | MR. ORR:  I was about to move on.  You're absolutely |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 86 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 85 of 192
JENKINS - CROSS                                                    85

| | | |
|---|---|---|
| 11:41:26 | 1 | right, Your Honor.  Your Honor has once again given me some |
| 11:41:30 | 2 | latitude. |
| 11:41:31 | 3 | THE COURT:  Don't abuse it. |
| 11:41:33 | 4 | Q.   (BY MR. ORR) Just one more question. |
| 11:42:08 | 5 | Did there ever come a time -- well, do you know who a |
| 11:42:11 | 6 | person named Kenneth Courtney is? |
| 11:42:13 | 7 | A.   I don't know Kenneth Courtney personally.  I have heard of |
| 11:42:18 | 8 | him. |
| 11:42:18 | 9 | Q.   And did you ever mention him to the FBI? |
| 11:42:21 | 10 | A.   I did. |
| 11:42:21 | 11 | Q.   And in what context did you do that? |
| 11:42:28 | 12 | A.   I -- David told me that -- that Kenneth Courtney had been |
| 11:42:33 | 13 | arrested for possession of child pornography, and I relayed |
| 11:42:38 | 14 | that information to the FBI, that Kenneth Courtney was someone |
| 11:42:41 | 15 | that David knew. |
| 11:42:42 | 16 | Q.   That he what? |
| 11:42:43 | 17 | A.   That Kenneth Courtney was someone that David knew after |
| 11:42:46 | 18 | David told me that he had been arrested. |
| 11:42:49 | 19 | Q.   Okay.  And when you -- when you lived with Mr. Diehl, did |
| 11:43:18 | 20 | he seem to love his son? |
| 11:43:19 | 21 | A.   Yes. |
| 11:43:20 | 22 | Q.   And you never saw him -- you know the allegations against |
| 11:43:24 | 23 | him, correct? |
| 11:43:25 | 24 | A.   Yes. |
| 11:43:25 | 25 | Q.   And you never saw him undertake anything like that that |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/09/16 Page 87 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 12/05/11 Page 86 of 122
JENKINS - CROSS                                                    86

11:43:30   1   involved -- you'd had no idea that, if any of this was going

11:43:35   2   on, it was going on -- let me put it like that -- correct?

11:43:38   3   A.   I'm sorry can you ask the question?

11:43:40   4   Q.   You never knew anything -- in other words, you never knew

11:43:43   5   about any videos of any children?

11:43:45   6   A.   No, I did not.  I mean, not any pornographic videos.

11:43:49   7   Q.   Well, the normal family home videos?

11:43:52   8   A.   Yes.  There were family home videos.

11:43:55   9   Q.   Okay.  And that's all that you knew about?

11:43:58  10   A.   Yes.

11:43:58  11   Q.   Okay.

11:44:00  12              MR. ORR:  Pass the witness.

11:44:02  13              THE COURT:  Mr. Devlin, redirect?

11:44:03  14              MR. DEVLIN:  Nothing further, Your Honor.

11:44:05  15              THE COURT:  All right.  You may step down.  At this

11:44:07  16   time the Court will be in recess until 1:30.

11:44:10  17              MR. DEVLIN:  Your Honor, before that may the witness

11:44:12  18   be excused?  I know that Mr. Orr has subpoenaed her.

11:44:16  19              MR. ORR:  Can we have rebuttal, Your Honor, if

11:44:20  20   necessary?  I don't think it will be necessary.

11:44:22  21              THE COURT:  All right.  Well, we'll have to keep her

11:44:25  22   here.

11:44:28  23              MR. DEVLIN:  Okay.

11:44:28  24              THE COURT:  All right.  The Court's in recess until

11:44:30  25   1:30.

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 88 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 87 of 192
COURTNEY – DIRECT                                           87

| | | |
|---|---|---|
| 11:44:30 | 1 | (Recess) |
| 13:34:42 | 2 | (Open Court, Defendant present) |
| 13:34:42 | 3 | THE COURT:  Are we ready to proceed?  Do we have |
| 13:34:44 | 4 | anything we need to take up? |
| 13:34:46 | 5 | MR. DEVLIN:  Nothing we need to take up from the |
| 13:34:47 | 6 | Government, Your Honor. |
| 13:34:48 | 7 | THE COURT:  Mr. Orr, anything? |
| 13:34:49 | 8 | MR. ORR:  No, Your Honor. |
| 13:34:49 | 9 | THE COURT:  All right.  Mr. Devlin, you may call your |
| 13:34:52 | 10 | next witness. |
| 13:34:53 | 11 | MR. DEVLIN:  Call Kenneth Courtney. |
| 13:35:42 | 12 | (Witness sworn) |
| 13:36:03 | 13 | MR. DEVLIN:  May I proceed, Your Honor? |
| 13:36:04 | 14 | THE COURT:  You may. |
| 13:36:05 | 15 | **KENNETH COURTNEY,** |
| 13:36:05 | 16 | having been first duly sworn, testified as follows: |
| 13:36:05 | 17 | **DIRECT EXAMINATION** |
| 13:36:05 | 18 | **BY MR. DEVLIN:** |
| 13:36:06 | 19 | Q.   Your name is Kenneth Courtney, and that's spelled |
| 13:36:10 | 20 | C-o-u-r-t-n-e-y; is that correct? |
| 13:36:11 | 21 | A.   Yes, sir. |
| 13:36:11 | 22 | Q.   Okay.  And you are -- do you know the defendant in this |
| 13:36:17 | 23 | case, David Diehl? |
| 13:36:18 | 24 | A.   Yes, sir. |
| 13:36:18 | 25 | Q.   And, Judge, may I -- I'm just going to adjust his |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 89 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 88 of 192
COURTNEY – DIRECT                                                88

| | | |
|---|---|---|
| 13:36:22 | 1 | microphone a little bit.  Or if you can do that. |
| 13:36:29 | 2 | A.   Yes, sir. |
| 13:36:30 | 3 | Q.   How do you know Mr. Diehl? |
| 13:36:33 | 4 | A.   We were friends. |
| 13:36:35 | 5 | Q.   How long have you known him? |
| 13:36:38 | 6 | A.   Since 2006 -- 2005.  Roughly six, seven years. |
| 13:36:50 | 7 | Q.   Okay.  Around mid 2000s or so.  Okay.  You describe |
| 13:36:58 | 8 | yourselves as friends.  Can you be a little bit more detailed |
| 13:37:02 | 9 | about that?  How good a friends were you? |
| 13:37:04 | 10 | A.   We were -- we shared a common profession, programming.  We |
| 13:37:12 | 11 | both had -- we were single parents.  We both had similar |
| 13:37:18 | 12 | political views.  Similar pastimes -- motorcycles.  Good |
| 13:37:28 | 13 | friends. |
| 13:37:28 | 14 | Q.   Okay.  Where did you first meet him? |
| 13:37:32 | 15 | A.   Busch Gardens. |
| 13:37:33 | 16 | Q.   Was that in Tampa, Florida? |
| 13:37:36 | 17 | A.   Yes, sir. |
| 13:37:36 | 18 | Q.   Okay.  And just basically fair to say that you were in the |
| 13:37:40 | 19 | same vicinity and struck up a conversation -- |
| 13:37:43 | 20 | A.   Yes, sir. |
| 13:37:43 | 21 | Q.   -- and went from there? |
| 13:37:44 | 22 | Okay.  How frequently did you socialize with him, |
| 13:37:53 | 23 | would you say, on average? |
| 13:37:54 | 24 | A.   Professionally, probably virtually every day during our |
| 13:37:59 | 25 | professional careers.  Sometimes it was on and off, but |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 90 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 89 of 92
COURTNEY – DIRECT                                          89

| | | |
|---|---|---|
| 13:38:02 | 1 | virtually every day on Instant Messenger or other forms of |
| 13:38:10 | 2 | Internet communication.  But primarily instant messenger. |
| 13:38:14 | 3 | Q.   Okay.  How about personally? |
| 13:38:16 | 4 | A.   Telephone, maybe every other day or maybe once a week or |
| 13:38:21 | 5 | something like that.  It just depended. |
| 13:38:23 | 6 | Q.   Okay.  Did you know his family? |
| 13:38:27 | 7 | A.   I knew his son A. |
| 13:38:28 | 8 | Q.   All right.  Did you have a child of your own who was about |
| 13:38:33 | 9 | A.'s age? |
| 13:38:33 | 10 | A.   Yes, sir.  Lauren.  She's almost 12. |
| 13:38:35 | 11 | Q.   Okay.  She's almost 12 now? |
| 13:38:39 | 12 | A.   Yes, sir. |
| 13:38:39 | 13 | Q.   Okay.  So five or six years ago, I guess she would have |
| 13:38:42 | 14 | been five, six, seven years old? |
| 13:38:44 | 15 | A.   Correct.  I also had another daughter at that time who has |
| 13:38:48 | 16 | since passed away. |
| 13:38:49 | 17 | Q.   Okay.  Did the defendant know your family? |
| 13:38:51 | 18 | A.   Yes, sir. |
| 13:38:52 | 19 | Q.   Okay.  Did you visit his house? |
| 13:38:56 | 20 | A.   Yes, I did. |
| 13:38:57 | 21 | Q.   And where was he living at the time that you knew him? |
| 13:39:00 | 22 | A.   In Oldsmar, Florida. |
| 13:39:01 | 23 | Q.   Okay. |
| 13:39:02 | 24 | A.   Just outside of Tampa. |
| 13:39:03 | 25 | Q.   All right.  And where were you living at that time? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 91 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 90 of 192

COURTNEY - DIRECT                                                    90

| | | |
|---|---|---|
| 13:39:05 | 1 | A.   I was living in Brandon -- well, Riverview, Florida. |
| 13:39:09 | 2 | Q.   I take it they're fairly close in distance? |
| 13:39:12 | 3 | A.   Roughly 35 miles. |
| 13:39:13 | 4 | Q.   All right.  Was there a time -- when you met him, he was |
| 13:39:17 | 5 | living at this location in Florida? |
| 13:39:18 | 6 | A.   I believe so. |
| 13:39:19 | 7 | Q.   Okay.  Did -- was there a point in time that -- after that |
| 13:39:24 | 8 | that he moved away from Florida? |
| 13:39:27 | 9 | A.   More recently he had spent a year in San Jose, California. |
| 13:39:32 | 10 | Q.   Do you remember roughly when that was? |
| 13:39:35 | 11 | A.   About a year and a half before May -- before I fell.  So |
| 13:39:40 | 12 | that was I guess 2008.  I can't remember precisely. |
| 13:39:44 | 13 | Q.   Okay.  And I'm asking you a lot about times.  I think |
| 13:39:47 | 14 | you've related to me previously that times are not necessarily |
| 13:39:49 | 15 | the most precise thing for you.  Is that fair to say? |
| 13:39:52 | 16 | A.   I go by basic milestones in my home life, and that would |
| 13:39:56 | 17 | be the loss of my daughter in 2006.  So plus or minus.  It's |
| 13:40:01 | 18 | kind of vague now.  And also because I've been down for two |
| 13:40:06 | 19 | years. |
| 13:40:06 | 20 | Q.   Let's talk about that for a minute, Mr. Courtney.  You're |
| 13:40:10 | 21 | currently serving a sentence yourself; is that correct? |
| 13:40:14 | 22 | A.   Yes, sir. |
| 13:40:15 | 23 | Q.   And it's a 15-year sentence with the State of Florida? |
| 13:40:18 | 24 | A.   Yes, sir. |
| 13:40:19 | 25 | Q.   And what is that for? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 92 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 92 of 132
COURTNEY – DIRECT                                                    91

| | | |
|---|---|---|
| 13:40:20 | 1 | A.   Possession of child pornography. |
| 13:40:21 | 2 | Q.   Okay.  You were -- you were sentenced in -- do you |
| 13:40:27 | 3 | remember when you were sentenced? |
| 13:40:29 | 4 | A.   Roughly May 15th of last year -- of this past year. |
| 13:40:36 | 5 | Q.   Of 2010? |
| 13:40:37 | 6 | A.   Yes, sir. |
| 13:40:38 | 7 | Q.   Okay.  When -- when were you arrested? |
| 13:40:40 | 8 | A.   May 14th of 2009. |
| 13:40:43 | 9 | Q.   All right.  And where were you living at the time? |
| 13:40:46 | 10 | A.   Riverview, Florida. |
| 13:40:48 | 11 | Q.   And where is that -- what big city is that near?  Tampa? |
| 13:40:51 | 12 | A.   Tampa.  It's eight miles east of Tampa. |
| 13:40:54 | 13 | Q.   Okay.  And your sentence of 15 years is pretty much solid |
| 13:41:02 | 14 | time.  There's no parole in Florida; is that correct? |
| 13:41:05 | 15 | A.   85 percent. |
| 13:41:06 | 16 | Q.   So you will serve 85 -- |
| 13:41:08 | 17 | A.   Twelve years, nine months. |
| 13:41:09 | 18 | Q.   Twelve years and nine months.  So you're looking at |
| 13:41:13 | 19 | probably around, 2021 to get out? |
| 13:41:16 | 20 | A.   February 5th, 2022. |
| 13:41:18 | 21 | Q.   2022.  Okay.  In terms of your being here today, you're |
| 13:41:23 | 22 | not voluntarily here today, are you?  I mean, in terms of you |
| 13:41:29 | 23 | didn't -- you didn't raise your hand and say, Hey, I'll come to |
| 13:41:32 | 24 | this trial.  You were subpoenaed or you were writted out; is |
| 13:41:35 | 25 | that correct? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 93 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 92 of 92
COURTNEY - DIRECT                                    92

13:41:35  1   A.    That's correct.

13:41:36  2   Q.    All right.  Regarding your testimony here today, have

13:41:41  3   there been any promises or deals or any other benefits that

13:41:50  4   have been represented to you in exchange to your testimony?

13:41:53  5   A.    Nothing's been promised.  However, I've been told that you

13:41:56  6   will call my prosecuting attorney or prosecutor and say that I

13:42:00  7   was here and that I testified truthfully.

13:42:05  8   Q.    Okay.  Well, in terms of your -- again, as far as a

13:42:09  9   promise, I represented to you that I would contact the

13:42:12  10  prosecutor in your state case.

13:42:13  11  A.    Yes, sir.

13:42:14  12  Q.    And give the prosecutor an overview of the nature of your

13:42:18  13  testimony and what have you; is that correct?

13:42:20  14  A.    Yes, sir.

13:42:21  15  Q.    And that could be good, bad, or ugly if you come in here

13:42:26  16  and lie; is that correct?

13:42:27  17  A.    Absolutely.

13:42:28  18  Q.    Okay.  So it's not necessarily that he's going to be

13:42:31  19  told -- or he or she is going to be told that you testified

13:42:35  20  truthfully.  It's that you testified --

13:42:37  21  A.    Yes, sir.

13:42:37  22  Q.    -- and what it was that you testified to; is that correct?

13:42:39  23  A.    Yes, sir.

13:42:39  24  Q.    And is it fair to say that it's your hope that you do get a

13:42:45  25  benefit of this in terms of a reduction of your sentence?

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 94 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 93 of 192
COURTNEY - DIRECT                                    93

| | | |
|---|---|---|
| 13:42:48 | 1 | A.   Yes, sir. |
| 13:42:48 | 2 | Q.   Okay.  But no promises have been made by me or even the |
| 13:42:51 | 3 | Florida prosecutor regarding that; is that correct? |
| 13:42:55 | 4 | A.   No promises have been made. |
| 13:42:56 | 5 | Q.   And no promises have been made by any court official or |
| 13:43:00 | 6 | any other law enforcement official; is that correct? |
| 13:43:03 | 7 | A.   Yes, sir. |
| 13:43:03 | 8 | Q.   That's just your own personal hope, what you would like to |
| 13:43:07 | 9 | see happen.  But there's been no promise to that effect made; |
| 13:43:10 | 10 | is that correct? |
| 13:43:10 | 11 | A.   Yes, sir. |
| 13:43:11 | 12 | Q.   And you're not testifying here today under any grant of |
| 13:43:14 | 13 | immunity.  Is that true? |
| 13:43:15 | 14 | A.   That's true. |
| 13:43:16 | 15 | Q.   All right.  In terms of your testimony, was there anything |
| 13:43:19 | 16 | that -- that I or maybe Agent Mullen or any other law |
| 13:43:24 | 17 | enforcement agent told you to say in terms of your testimony? |
| 13:43:27 | 18 | A.   Just to be truthful. |
| 13:43:28 | 19 | Q.   Okay.  Anything else? |
| 13:43:30 | 20 | A.   No. |
| 13:43:31 | 21 | Q.   All right.  And is that your intent today, is to be |
| 13:43:35 | 22 | truthful? |
| 13:43:35 | 23 | A.   Yes, sir. |
| 13:43:36 | 24 | Q.   Okay.  Your possession of child pornography conviction, |
| 13:43:49 | 25 | was that in any way -- was there anybody else involved in the |

Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 94 of 122

| | | |
|---|---|---|
| 13:43:54 | 1 | activities that gave rise to that? |
| 13:43:56 | 2 | A.   No, sir. |
| 13:43:57 | 3 | Q.   All right.  Briefly, did that arise as a result of a |
| 13:44:02 | 4 | search being conducted at your house? |
| 13:44:04 | 5 | A.   Well, the -- the short form would be no. |
| 13:44:10 | 6 | Q.   Okay.  How did it arise? |
| 13:44:14 | 7 | A.   I had a friend who -- who had -- I inadvertently showed my |
| 13:44:20 | 8 | collection to who was later arrested.  And as part of his deal, |
| 13:44:25 | 9 | he said that I had that possession of child pornography.  The |
| 13:44:33 | 10 | detectives came to my house and said they were investigating a |
| 13:44:36 | 11 | burglary, and then I allowed them into my house.  At which |
| 13:44:41 | 12 | point they told me that they were with the Cyber Crimes unit |
| 13:44:44 | 13 | and that they were searching only for producers of child |
| 13:44:48 | 14 | pornography, at which point a long discussion ensued.  After |
| 13:44:52 | 15 | which I gave them complete access to my computer and -- to |
| 13:44:56 | 16 | prove that I wasn't making anything.  I had a ten-year-old |
| 13:45:00 | 17 | daughter that I had custody of, and I wanted to prove that I |
| 13:45:06 | 18 | wasn't making it or anything else.  And the only way I could do |
| 13:45:10 | 19 | that was to give them everything I had. |
| 13:45:12 | 20 | Q.   Okay.  Did you ultimately plead guilty? |
| 13:45:14 | 21 | A.   Yes, sir. |
| 13:45:14 | 22 | Q.   All right.  Were there -- was the Florida State charges |
| 13:45:19 | 23 | the only charges? |
| 13:45:20 | 24 | A.   Yes, sir. |
| 13:45:21 | 25 | Q.   There were no federal charges that came out of it? |

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 96 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 95 of 123
COURTNEY - DIRECT                                                    95

| | | |
|---|---|---|
| 13:45:24 | 1 | A.    No, sir. |
| 13:45:24 | 2 | Q.    Let me go back for a moment to something you mentioned. |
| 13:45:33 | 3 | You said that you and Mr. -- let me go back one second. |
| 13:45:37 | 4 | Was the defendant -- was Defendant Diehl in any way |
| 13:45:40 | 5 | the person or part of the people who had reported you about the |
| 13:45:43 | 6 | possession of child pornography? |
| 13:45:45 | 7 | A.    No. |
| 13:45:45 | 8 | Q.    Okay.  In terms of your professional background and the |
| 13:45:48 | 9 | defendant's, you said you were both programmers.  Can you |
| 13:45:52 | 10 | elaborate a little bit on that? |
| 13:45:54 | 11 | A.    We both wrote -- I was a senior partner and was writing |
| 13:45:58 | 12 | Microsoft.net software.  Specifically Web services, Enterprise |
| 13:46:05 | 13 | integration, advanced BIOS parsing engines.  You name it, we |
| 13:46:11 | 14 | wrote it.  So ... |
| 13:46:12 | 15 | Q.    All right.  Was he doing similar things? |
| 13:46:16 | 16 | A.    Yes.  He's a senior technologist. |
| 13:46:18 | 17 | Q.    All right.  And you-all did collaborate on professional |
| 13:46:24 | 18 | projects? |
| 13:46:25 | 19 | A.    Many times.  Yes, sir. |
| 13:46:25 | 20 | Q.    And what kinds of things did you collaborate on? |
| 13:46:28 | 21 | A.    On Enterprise file parsing engine to parse Adobe .pdf |
| 13:46:37 | 22 | files into a database from a flat format.  Collaborated on |
| 13:46:42 | 23 | that.  That was for a florist.  And I referred him for a job I |
| 13:46:51 | 24 | got fired from, and he took the job after I got fired from it |
| 13:46:54 | 25 | for 90 days.  A somewhat small project. |

Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/16 Page 97 of 193
Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 90 of 122
COURTNEY - DIRECT                                              96

13:47:01   1   Q.   Okay.  What did you think of him as a software programmer?

13:47:04   2   A.   Top of the line.

13:47:06   3   Q.   You were pretty good yourself?

13:47:08   4   A.   I thought so.

13:47:09   5   Q.   Okay.  What kinds of things did -- were you familiar with

13:47:15   6   any of his specific projects that he worked on as a programmer?

13:47:19   7   A.   Well, he worked on a lot, I'd say, more advanced stuff

13:47:24   8   than I did.  While he was in San Jose, he worked for Price

13:47:30   9   Waterhouse Cooper Research.  And that was all very high-end,

13:47:34  10   state-of-the-art software.  Can you be more specific?

13:47:39  11   Q.   No.  I didn't know if you were familiar with some of the

13:47:42  12   types of things he did specifically.  Did you ever work

13:47:45  13   together with him in the same physical location?

13:47:47  14   A.   Other than the time that we both worked at Marriott Retail

13:47:53  15   Sales.  But that was -- he took the job the week after I left

13:47:56  16   so we never worked in the same location.

13:47:58  17   Q.   And that was an I -- information technology programming

13:48:02  18   type of job?

13:48:03  19   A.   Yes, sir.

13:48:03  20   Q.   All right.  Have you known him to work at anything other

13:48:06  21   than programming or software?

13:48:08  22   A.   No.

13:48:08  23   Q.   All right.  Would it be fair to say he was a software

13:48:13  24   engineer?

13:48:13  25   A.   Yes.

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 98 of 123
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 97 of 123
COURTNEY - DIRECT                                                     97

13:48:13  1   Q.   And you were as well?

13:48:15  2   A.   I -- yes.

13:48:17  3   Q.   Okay.  At some point in your friendship with him, did you

13:48:33  4   learn of his interest in child pornography?

13:48:35  5   A.   Only very late.

13:48:39  6   Q.   Only very what?

13:48:41  7   A.   Late in our -- when I knew him.  It was probably within

13:48:44  8   the last year.  Not probably.  Definitely.  And it came

13:48:47  9   about -- you know, again we talked about just mores -- general

13:48:57 10   societal mores and kind of the difference between what's

13:49:00 11   preached and what's practiced.  And, again, sharing similar

13:49:04 12   political beliefs, you know we kind of eventually discussed

13:49:10 13   that.

13:49:10 14   Q.   All right.  And then who said what first in terms of an

13:49:15 15   interest in child pornography, if you can recall?

13:49:19 16   A.   I honestly can't recall.

13:49:22 17   Q.   All right.  This was before -- this was before or after

13:49:26 18   you were arrested on your own charges?

13:49:28 19   A.   Oh, well before.

13:49:30 20   Q.   Before?

13:49:30 21   A.   I'd say roughly a year, two a year and a half prior.

13:49:37 22   Q.   Prior to your arrest?

13:49:38 23   A.   Yes, sir.

13:49:38 24   Q.   Okay.  So it wasn't a year ago from now.  It was a year

13:49:42 25   ago from the time you were arrested?

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 99 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 98 of 192
COURTNEY - DIRECT                                                  98

13:49:44   1    A.   Yes, sir.

13:49:45   2    Q.   Okay.  Did you share with him your interest in child

13:49:56   3    pornography at this point?

13:49:57   4    A.   Not so much that as much as -- I don't think there was

13:50:01   5    ever child pornography as much as, you know, just

13:50:04   6    "Britney Spears is fine," you know, or "What's up with Miley

13:50:10   7    Cyrus strutting around the stage" or whatever.  So it wasn't so

13:50:13   8    much that discussion of the -- you know, what's out there on

13:50:19   9    the Internet as much as just a discussion that, you know,

13:50:24  10    again, society says age and majority is one thing, yet we have

13:50:30  11    a disparity between the -- again, what's practiced and what's

13:50:36  12    preached.  And that was the discussion.

13:50:38  13    Q.   Okay.  But did there come a point where you learned that

13:50:42  14    he either -- you know, I'm going to say was interested in child

13:50:44  15    pornography?

13:50:44  16    A.   Yes.  Exactly.  We -- it was -- there was a point --

13:50:51  17    again, a specific point where that happened.  And that was

13:50:57  18    roughly one year before I fell.

13:50:59  19    Q.   Okay.  And when you say you fell, that means you were

13:51:02  20    arrested?

13:51:03  21    A.   Yes, sir.

13:51:03  22    Q.   All right.  Did he share his interest in child pornography

13:51:11  23    with you?  Did you share yours with him?

13:51:13  24    A.   Right.  Essentially we would come down to -- you know, I

13:51:17  25    would say I found this particular set of files on eMule or

Case 1:10-cr-00397-LY Document 218-1 Filed 12/05/16 Page 100 of 193
Case 1:10-cr-00397-LY Document 191 Filed 03/09/11 Page 99 of 191
COURTNEY - DIRECT                                    99

13:51:23   1   something.  And he would say, Oh, that's chicken shit or

13:51:26   2   child's play or whatever.  That's old hag.  If you ever saw

13:51:30   3   that downloading commercial where the guy's laughing, it's kind

13:51:35   4   of, like, that's so yesterday.  And so, again, a lot of times I

13:51:38   5   would say I have this file name and he would say, Oh.  I've got

13:51:43   6   this or whatever.

13:51:44   7   Q.   Okay.  And you mentioned something called eMule is that

13:51:48   8   spelled e-M-u-l-e?

13:51:50   9   A.   Correct.

13:51:50  10   Q.   Is that -- what is that?

13:51:52  11   A.   It's a file-sharing network.

13:51:54  12   Q.   Okay.  Is that -- did you -- what is the relevance of

13:51:58  13   that?

13:51:59  14   A.   That's one of the primary conduits that I personally

13:52:05  15   downloaded pornography.  There was two conduits that I used

13:52:09  16   that I was familiar with, which was Usenet and the other was

13:52:15  17   eMule.

13:52:15  18   Q.   Usenet would be U-s-e-n-e-t?

13:52:18  19   A.   Correct.

13:52:20  20   Q.   Okay.

13:52:20  21   A.   It's a very esoteric, arcane Internet protocol that's

13:52:24  22   really only known or utilized by about maybe 1/10th of

13:52:29  23   1 percent of the population, and eMule is much more popular.

13:52:35  24   The -- what I found on it was rampant, so, I mean, I can only

13:52:40  25   imagine that if you were -- I'm not going to go there.  eMule

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 101 of 123
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 100 of 122
COURTNEY - DIRECT                                                        100

| | |
|---|---|
| 13:52:43 | 1 | was my primary. |
| 13:52:46 | 2 | Q.   Okay.  What exactly was Defendant Diehl's involvement with |
| 13:52:51 | 3 | child pornography, as you understood it? |
| 13:52:53 | 4 | A.   Well, as he explained it to me his primary conduit was |
| 13:52:58 | 5 | called IRC, Internet Relay Chat.  And using Internet Relay |
| 13:53:04 | 6 | Chat, he was able to meet people on various channels.  And I |
| 13:53:11 | 7 | don't know the name of those channels off the top of my head, |
| 13:53:15 | 8 | although I have in the past seen pictures that had posters with |
| 13:53:19 | 9 | channel names on them. |
| 13:53:21 | 10 |        And using that channel would provide a beginning of |
| 13:53:29 | 11 | the series to that individual in exchange for being -- becoming |
| 13:53:34 | 12 | what he called a maker.  So, again, this was all -- IRC is a |
| 13:53:44 | 13 | very decentralized communication medium that enabled direct |
| 13:53:50 | 14 | communication between each computer.  But, again, that's what I |
| 13:53:56 | 15 | understood. |
| 13:53:57 | 16 | Q.   Okay.  And how -- did he describe himself as -- what did |
| 13:54:02 | 17 | he describe himself as in this world, I guess? |
| 13:54:05 | 18 | A.   He said specifically -- honestly, I don't remember the |
| 13:54:09 | 19 | exact name.  I want to say producer.  But I remember that the |
| 13:54:12 | 20 | people who were making it he called makers, and that was very |
| 13:54:16 | 21 | clear.  I don't remember what he described himself as. |
| 13:54:20 | 22 | Q.   Okay.  And what was his -- what did he do in relation to |
| 13:54:25 | 23 | these makers? |
| 13:54:29 | 24 | A.   It would entice them with the possibility of having this |
| 13:54:33 | 25 | complete series to make new material.  "Make" meaning make new |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 102 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 101 of 192
COURTNEY - DIRECT                                                    101

| | | |
|---|---|---|
| 13:54:41 | 1 | material in exchange for the rest of the series. |
| 13:54:44 | 2 | Q.   So who would have the series? |
| 13:54:46 | 3 | A.   He would. |
| 13:54:47 | 4 | Q.   He would have, and he would let them have it or have |
| 13:54:50 | 5 | access to it? |
| 13:54:51 | 6 | A.   That's what I understood.  Again, I don't know for sure. |
| 13:54:54 | 7 | Q.   And what do you mean by a series? |
| 13:54:56 | 8 | A.   Well, you know, there would be -- say there could have |
| 13:55:01 | 9 | been a movie that was broken down into individual files.  It |
| 13:55:05 | 10 | could have been a series of a photographic pictorial or |
| 13:55:10 | 11 | something of that nature.  But a series meaning continuity |
| 13:55:16 | 12 | between each set. |
| 13:55:18 | 13 | Q.   Okay.  And so what, then, did you understand would |
| 13:55:22 | 14 | happen?  Would people make videos? |
| 13:55:24 | 15 | A.   That's my understanding.  Or in this case images.  But, |
| 13:55:29 | 16 | again, I -- I only saw a minor portion of that.  So ... |
| 13:55:36 | 17 | Q.   All right.  Did he have a collection of child pornography? |
| 13:55:40 | 18 | A.   Yes. |
| 13:55:40 | 19 | Q.   And how do you know that? |
| 13:55:42 | 20 | A.   Because I saw it. |
| 13:55:43 | 21 | Q.   All right. |
| 13:55:43 | 22 | A.   Part of it. |
| 13:55:44 | 23 | Q.   What was this collection -- what did this collection |
| 13:55:48 | 24 | consist of? |
| 13:55:49 | 25 | A.   Very much like my own.  It was very -- it was contained in |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 103 of 123
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 102 of 123
COURTNEY - DIRECT                                          102

13:55:54   1   an encrypted container.  It was had similar file names and

13:56:04   2   structure to the way I managed my own collection.  And, again,

13:56:12   3   I did see portions of that, and I believe it was either July

13:56:17   4   or -- July or August of 2008, I believe.

13:56:27   5   Q.   All right.

13:56:28   6   A.   The year before I fell.

13:56:29   7   Q.   When you say it was in an encrypted container, what do you

13:56:33   8   mean by that?

13:56:34   9   A.   Well, using various file encryption tools available.  And

13:56:40   10   when you have a container, a container looks and appears to

13:56:44   11   your computer as a normal hard drive or like a USB thumb drive.

13:56:48   12   It just appears as another file name or another drive letter.

13:56:53   13   But it's only accessible after entering the encryption program

13:56:57   14   and the long encryption key.

13:57:00   15   Q.   So the container in this case is some sort of computer or

13:57:03   16   electronic digital device?

13:57:05   17   A.   Well, it's a file that contains more files.

13:57:08   18   Q.   Okay.  On a hard drive or some sort of other computer

13:57:11   19   media?

13:57:11   20   A.   Correct.

13:57:12   21   Q.   Not just a regular box is what I'm trying to get at.

13:57:15   22         Okay.  So how did he -- how did it come to be that

13:57:25   23   you got to see some of his collection?

13:57:27   24   A.   I was at -- we had started this particular afternoon at

13:57:32   25   his girlfriend's house.  And just -- we were hanging out there,

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 104 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 103 of 192
COURTNEY - DIRECT                                                   103

| | | |
|---|---|---|
| 13:57:40 | 1 | and his sister was there and his son was there and my daughter |
| 13:57:47 | 2 | was in Ohio at the time.  We were just hanging out, partying. |
| 13:57:52 | 3 | And then kind of got into a little tussle, so to speak.  Blood |
| 13:58:01 | 4 | was spilled, and we decided to go back to his house. |
| 13:58:07 | 5 | And so we went to Dave's house, and he had something |
| 13:58:11 | 6 | to drink.  And while we were there, we went into his office. |
| 13:58:15 | 7 | And at that point closed the door, and he's, like, Check this |
| 13:58:19 | 8 | out.  And at which point I viewed several different images and |
| 13:58:24 | 9 | videos. |
| 13:58:25 | 10 | Q.   All right.  This was at his house where? |
| 13:58:27 | 11 | A.   In Oldsmar. |
| 13:58:29 | 12 | Q.   Florida? |
| 13:58:30 | 13 | A.   Yes, sir. |
| 13:58:30 | 14 | Q.   And whose -- was it on a computer? |
| 13:58:34 | 15 | A.   Yes, sir. |
| 13:58:34 | 16 | Q.   What kind of computer was it?  Do you know, generally? |
| 13:58:37 | 17 | A.   It was a server class machine.  I believe it was |
| 13:58:42 | 18 | Windows 2000.  I honestly cannot remember, but it was a -- it |
| 13:58:47 | 19 | was a working class machine. |
| 13:58:48 | 20 | Q.   Okay.  I guess I was even going for something simpler than |
| 13:58:53 | 21 | that.  Was it a laptop or a desktop? |
| 13:58:55 | 22 | A.   Desktop. |
| 13:58:56 | 23 | Q.   Okay.  Can you recall the videos that you saw at that |
| 13:58:59 | 24 | time? |
| 13:58:59 | 25 | A.   I can recall two in particular.  The first was -- and I |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 105 of 123
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 104 of 123
COURTNEY – DIRECT                                                    104

13:59:07  1   can't even recall the -- I just remember more by discussing it

13:59:12  2   more than I do by seeing it, but I did see it.  This girl that

13:59:18  3   was singing, and she was nude.  And I saw a little tiny part of

13:59:25  4   that.  And then another video which I since identified of a

13:59:33  5   girl in a tent and who he said was "Star Baby."  He said the

13:59:40  6   actual name, but I did not remember.  So I don't know.

13:59:43  7   Q.   Okay.  Mr. Courtney, I'm going to show you some

14:00:11  8   photographs here.  And if you recognize them, say so; if you

14:00:13  9   don't, say so.  I'm going to show you what's been admitted as

14:00:18  10  Government Exhibit 1-1B.  This is a still image.  Do you

14:00:21  11  recognize that?

14:00:21  12  A.   Yes, sir.

14:00:21  13  Q.   How do you recognize that.

14:00:23  14  A.   That is a frame from the video.

14:00:25  15  Q.   Okay.  How about Government Exhibit 1-1C?

14:00:28  16  A.   Frame from the video.

14:00:29  17  Q.   And do you remember the girl in the video?

14:00:32  18  A.   I don't remember the girl.  I remember the sounds.  I

14:00:35  19  remember the hand.  I remember the ring on the hand.  I

14:00:37  20  remember the -- everything.

14:00:38  21  Q.   Okay.  What kind of sounds do you remember?

14:00:41  22  A.   It was just general banter, going back and forth.  Kind of

14:00:48  23  sounded like there was an established rapport, like he was kind

14:00:52  24  of teasing her.  She was, like, "Come on," or something like

14:00:55  25  that.  But there was rapport that had been developed and some,

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 106 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 105 of 192
COURTNEY - DIRECT                                                    105

| | | |
|---|---|---|
| 14:01:02 | 1 | "Don't be shy" I think was something that I heard. |
| 14:01:06 | 2 | Q.   Okay.  I'm showing you 1-1D.  So you recognize that? |
| 14:01:12 | 3 | A.   Like the others. |
| 14:01:13 | 4 | Q.   Same girl.  Okay.  How about 1-1F? |
| 14:01:19 | 5 | A.   Same.  I remember that.  That's the tent that I described. |
| 14:01:25 | 6 | Q.   Okay.  I'm going to show you 1-1H.  Does that look |
| 14:01:32 | 7 | familiar? |
| 14:01:33 | 8 | A.   I believe so, yes. |
| 14:01:34 | 9 | Q.   Okay.  All right.  So these are still images from the |
| 14:01:40 | 10 | video that you saw at his house in Florida in two thousand -- |
| 14:01:43 | 11 | A.   Right. |
| 14:01:44 | 12 |         THE COURT:  Mr. Devlin, let me see the exhibits. |
| 14:01:46 | 13 |         MR. DEVLIN:  I'm sorry, Your Honor. |
| 14:01:48 | 14 |         THE COURT:  Just need to make sure that I know what |
| 14:01:50 | 15 | you're looking at. |
| 14:02:30 | 16 |         MR. DEVLIN:  Okay. |
| 14:02:30 | 17 | Q.   (BY MR. DEVLIN) Mr. Courtney, in regard to this particular |
| 14:02:33 | 18 | video, the Star Baby video, did Defendant Diehl say anything to |
| 14:02:39 | 19 | you regarding that video? |
| 14:02:40 | 20 | A.   Yes, sir.  He said that he had actually made that video. |
| 14:02:44 | 21 | I -- which kind of made me wonder.  I obtained that video on |
| 14:02:50 | 22 | eMule network -- on the eMule file-sharing network.  And so, |
| 14:02:55 | 23 | again, he did say he made it.  And also said -- when he said |
| 14:03:01 | 24 | her name, he said, Don't ever say that name again because you |
| 14:03:05 | 25 | can't say that name.  So I forgot it promptly, and I really do |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 107 of 123
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 106 of 122
COURTNEY - DIRECT                                                    106

```
14:03:08   1   not remember.  So ...

14:03:09   2   Q.   So you had seen that video before that day?

14:03:11   3   A.   Yes, I did.

14:03:12   4   Q.   On your own?

14:03:13   5   A.   Yes.

14:03:14   6   Q.   All right.  Is eMule a network that you can obtain things

14:03:18   7   from basically around the world?

14:03:19   8   A.   It's -- it's -- it's complicated.  The answer is yes.

14:03:24   9   Q.   Okay.  What's the complicated answer?

14:03:28  10   A.   Well, eMule is two separate networks.  There's an

14:03:31  11   eDonkey network and the Gnutella network.  And both -- Gnutella

14:03:35  12   is a distributed network of millions of computers that are all

14:03:42  13   sharing files and that are discovered via the eDonkey network

14:03:46  14   and other networks.  And eDonkey is a server-based network, and

14:03:52  15   the servers are not connected to each other.

14:03:54  16        So each server is its own little island, and you

14:03:57  17   connect into that server.  There may be a million users for

14:04:00  18   server and several hundred servers that are listed.  But the

14:04:04  19   net result is it's a worldwide distributed network of mostly

14:04:08  20   anonymous machines.

14:04:09  21   Q.   Okay.  When he told you that he made that video, what was

14:04:16  22   your reaction to that?

14:04:17  23   A.   Surprise.  I -- I just -- I didn't think that -- I

14:04:27  24   honestly didn't think he did it.  But, you know, again, that's

14:04:32  25   what he said.  I went back, and I must have looked at that
```

Case 1:10-cr-00297-LY  Document 219-1  Filed 12/05/16  Page 108 of 193
Case 1:10-cr-00297-LY  Document 91  Filed 03/09/11  Page 107 of 193
COURTNEY - DIRECT                                        107

14:04:35  1    video probably 50 times.  So it was ingrained in my head when,

14:04:39  2    you know, it came up.

14:04:41  3    Q.    What else of his collection did you see?

14:04:49  4    A.    Well, I was aware that he had a series called "Tori," who

14:04:53  5    was similar.  But I never saw it.  He said that he had it.  He

14:04:59  6    gave me names.  We talked about the Baby J series, an

14:05:04  7    eight-year-old, nine-year-old girl that was described as the

14:05:10  8    Traci Lords of kitty porn, if you will.  And -- but other than

14:05:17  9    that, I did not see that much of what he had other than those

14:05:22  10   select videos.  Again, he showed me some footage from a nudist

14:05:29  11   camp that he had gone to.  Kids jumping on a bed.  Not

14:05:33  12   explicitly sexual in any way.  Just kids jumping on a bed.

14:05:39  13   Q.    Okay.  Mr. Courtney, I'm going to again show you several

14:05:57  14   photographs, still images.  And if you recognize them say, so;

14:06:01  15   if you don't, please say so.

14:06:02  16         I'm showing you what's been marked as

14:06:04  17   Government's Exhibit 2A.  Do you recognize that at all?

14:06:07  18   A.    Its vaguely familiar, but I wouldn't be able to tell you

14:06:11  19   with certainty.

14:06:12  20   Q.    Okay.

14:06:12  21   A.    I'd say vaguely familiar.

14:06:14  22   Q.    All right.  Government Exhibit 7A?

14:06:16  23   A.    Never.

14:06:20  24   Q.    Government Exhibit 7B?

14:06:25  25   A.    Vaguely familiar.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 109 of 123
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 109 of 123
COURTNEY - DIRECT                                              108

| | | |
|---|---|---|
| 14:06:26 | 1 | Q.   Okay.  And when you say "vaguely familiar," is it vaguely |
| 14:06:30 | 2 | familiar from stuff you saw from Defendant Diehl or stuff you |
| 14:06:33 | 3 | saw on your own? |
| 14:06:34 | 4 | A.   Independently. |
| 14:06:36 | 5 | Q.   Independently? |
| 14:06:37 | 6 | A.   eMule. |
| 14:06:38 | 7 | Q.   Off of the eMule network.  Okay. |
| 14:06:41 | 8 |      Government Exhibit 7C? |
| 14:06:43 | 9 | A.   Honestly, even though it's the same, no. |
| 14:06:47 | 10 | Q.   Okay. |
| 14:06:48 | 11 | A.   I've never seen that. |
| 14:06:50 | 12 | Q.   Have you seen the person in the picture? |
| 14:06:54 | 13 | A.   I've never seen this person. |
| 14:06:56 | 14 | Q.   Okay.  Government Exhibit 9-1A? |
| 14:07:05 | 15 | A.   Again, that's -- that's not -- the first one is vaguely |
| 14:07:10 | 16 | familiar.  This -- no. |
| 14:07:11 | 17 | Q.   No? |
| 14:07:12 | 18 | A.   No. |
| 14:07:12 | 19 | Q.   Okay.  In terms of making or producing videos, did |
| 14:07:55 | 20 | Defendant Diehl say anything else to you along those lines -- |
| 14:07:58 | 21 | you know, about that to you outside of this one video that you |
| 14:08:01 | 22 | just described? |
| 14:08:03 | 23 | A.   He also -- he described a system of wireless cameras |
| 14:08:08 | 24 | imbedded in cleaning supplies -- an Ajax bottle and a spray |
| 14:08:15 | 25 | bottle -- that were wireless cameras.  Additionally, he had |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 110 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 33 of 92
COURTNEY - DIRECT                                                    109

| | | |
|---|---|---|
| 14:08:21 | 1 | many times requested that I use these devices for voyeuristic |
| 14:08:28 | 2 | purposes of my own daughter and my girlfriend's daughters in |
| 14:08:32 | 3 | particular.  I never did this, but this is something that he |
| 14:08:40 | 4 | had repeated.  He was like, you know, If you want this, then |
| 14:08:46 | 5 | this is how to accomplish that.  And, again, I -- that was |
| 14:08:50 | 6 | explained to me. |
| 14:08:51 | 7 | He showed me these -- I physically saw these |
| 14:08:54 | 8 | devices.  And, again, I don't know if he used them for that, |
| 14:08:59 | 9 | but I imagine that -- you know, that was the purpose. |
| 14:09:05 | 10 | Q.   What do the devices look like? |
| 14:09:07 | 11 | A.   Cleaning supplies.  I believe it was an Ajax bottle.  I'm |
| 14:09:12 | 12 | not positive.  There was a cleaning bottle that looked like it |
| 14:09:21 | 13 | contained Ajax and another spray bottle.  That, again, at a |
| 14:09:26 | 14 | casual glance, it just looked like plain old cleaning supplies. |
| 14:09:32 | 15 | Q.   Did you see the camera component of those items? |
| 14:09:34 | 16 | A.   I believe I did. |
| 14:09:36 | 17 | Q.   Okay.  And where did you see them? |
| 14:09:37 | 18 | A.   In his closet. |
| 14:09:39 | 19 | Q.   At his house? |
| 14:09:40 | 20 | A.   Yes, sir. |
| 14:09:40 | 21 | Q.   In Florida? |
| 14:09:41 | 22 | A.   Yes, sir. |
| 14:09:41 | 23 | Q.   All right.  Did he show you anything that he had filmed |
| 14:09:45 | 24 | using those? |
| 14:09:46 | 25 | A.   Well, the one scene that I -- I'm not positive if it was |

Case 1:10-cr-00297-LY Document 219-1 Filed 10/05/16 Page 111 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 110 of 132
COURTNEY - DIRECT                                                    110

14:09:49   1   indeed.  I saw a scene that was filmed in a nudist colony.

14:09:55   2   And, again, I don't -- I don't think I ever saw anything that

14:09:59   3   was filmed with those.  That was my understanding.

14:10:02   4   Q.   Okay.  Did he say to what extent he had caused others to

14:10:07   5   make videos that he had received?

14:10:10   6   A.   He described himself as a -- as a -- as a player on that

14:10:22   7   scene.  As somebody who had known many people who had been

14:10:27   8   involved in that scene.  And he described one case in

14:10:32   9   particular that he said he knew of a girl named Vicky who had

14:10:36   10  since been interviewed on like *Oprah* or something like that and

14:10:41   11  pointed me to that particular *Oprah* interview.  I actually

14:10:43   12  never saw it, but he said he knew this guy.  And, like I said,

14:10:49   13  that's all conjecture.

14:10:52   14  Q.   So Vicky was a victim of a child pornography video or

14:10:57   15  series of videos?

14:10:58   16  A.   Yes, sir.

14:10:59   17  Q.   And when he said he knew this guy, what did he mean?

14:11:02   18  A.   That he knew -- it was my understanding that he actually

14:11:05   19  had communication with this individual.  But, again, I can't

14:11:10   20  remember precisely on that one.  But something like that.

14:11:14   21  Q.   Did he describe anything else about how involved he was in

14:11:18   22  having other people make child pornography or making it

14:11:22   23  himself?

14:11:23   24  A.   Again, I've personally seen a lot of it.  And only going

14:11:27   25  on -- and, again, on Usenet -- or on Usenet also, but Usenet is

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 112 of 123
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 111 of 123
COURTNEY - DIRECT                                                    111

14:11:33  1  much older.  But on eMule, when you click on a file, you might

14:11:37  2  get 5,000 images in a file.

14:11:40  3          And if you go through them, you don't pick and

14:11:43  4  choose.  But there are names of IRC channels in those.  And,

14:11:50  5  you know, again, it was my understanding that he was a very

14:11:53  6  sophisticated IRC user and that he compelled many people to do

14:12:01  7  that, to make video material.

14:12:05  8  Q.   Did he ever brag about it to you?

14:12:08  9  A.   I'd have to say sometimes it came across that way.  It was

14:12:18 10  a -- it was almost -- there was a bit of what I like to --

14:12:28 11  well, not what I like to call, but what I believe would be

14:12:35 12  cognitive dissonance or, like, trying to make peace with it or

14:12:37 13  something like that, that I felt, you know, that he was coming

14:12:40 14  across with.

14:12:41 15  Q.   Okay.  Did he talk to you about how much child pornography

14:12:53 16  he was -- he had gotten others to make?

14:12:56 17  A.   I don't think he ever quantified it.  He just said that --

14:13:01 18  again, that as -- that it was -- that it was something that he

14:13:11 19  was doing.  And there was not -- there was -- like -- like he

14:13:18 20  said or -- let me backtrack here.

14:13:21 21          He said that he was -- he was essentially the

14:13:25 22  "mac daddy" of whatever.  I don't think he used that term, but

14:13:29 23  just a player.  Again, a player on a scene for compelling

14:13:34 24  people to make the material -- makers.

14:13:37 25  Q.   Was there a time frame that he explained he was doing it.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 113 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 112 of 192
COURTNEY - DIRECT                                                    112

14:13:40   1  Did it seem like that was occurring in the past or was it

14:13:43   2  occurring in the then present?

14:13:45   3  A.   It seemed like it was an ongoing thing.  And, again, after

14:13:52   4  a dialogue opened up about, occasionally I would say I just got

14:13:55   5  this new series or whatever.  I just found this.  And he was,

14:13:59   6  like, It's old hag.  Or something like that.

14:14:00   7  Q.   Did he say how long he had been involved in child

14:14:04   8  pornography?

14:14:04   9  A.   I don't think we ever discussed it, but we both -- I

14:14:10  10  personally had been downloading it since 1993, okay, on

14:14:12  11  Usenet.  And we were both familiar with Usenet, and we both

14:14:16  12  understood the protocol.  So I guess there was an inference

14:14:19  13  that was at least that long.

14:14:21  14  Q.   How tightly or loosely did he manage this child

14:14:25  15  pornography collection, to your knowledge?

14:14:28  16  A.   Incredibly tightly.

14:14:30  17  Q.   Can you be elaborate a little bit?

14:14:32  18  A.   Very elaborate security protocols, discussion protocols,

14:14:36  19  or anything.  Again, you know, don't talk about it.  Don't --

14:14:39  20  you know, don't -- you know, don't transfer files.  We never

14:14:45  21  once ever transferred a single file ever.

14:14:48  22  Q.   Between you?

14:14:49  23  A.   Between us, the Internet, or anything, you know.  So he

14:14:54  24  was -- he's very aware -- more so than I was -- of the

14:14:59  25  consequences involved with -- with what was going on.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 114 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 113 of 123
COURTNEY - DIRECT                                                          113

| | | |
|---|---|---|
| 14:15:06 | 1 | Q.   Okay.  Did he ever share any of his collection, to your |
| 14:15:09 | 2 | knowledge, with anyone else? |
| 14:15:10 | 3 | A.   Only in as much as that he described the process by which |
| 14:15:17 | 4 | he would get new material, which would be several files from |
| 14:15:21 | 5 | the beginning of a series and expectations of a new material at |
| 14:15:25 | 6 | which point he would share the rest of that series.  But it was |
| 14:15:28 | 7 | very -- it was *quid pro quo*. |
| 14:15:31 | 8 | Q.   So he would share a small amount of his material with |
| 14:15:34 | 9 | someone else in the expectation of getting something in return? |
| 14:15:36 | 10 | A.   Yes, sir. |
| 14:15:37 | 11 | Q.   Okay.  And then at that point he would share a greater |
| 14:15:40 | 12 | quantify of it?  Is that basically a summary? |
| 14:15:43 | 13 | A.   Only in that series.  He was very -- he very, like I said, |
| 14:15:49 | 14 | very *quid pro quo*.  Many times I was, like, Give me that.  And |
| 14:15:56 | 15 | he would -- it would -- there was never between us a transfer |
| 14:16:00 | 16 | of any form.  And, again, when you've got eMule, there's -- I |
| 14:16:06 | 17 | mean, it just wasn't necessary. |
| 14:16:10 | 18 | Q.   Did he -- he say anything else to you about making other |
| 14:16:23 | 19 | child porn videos in the way that he said he made that Star |
| 14:16:27 | 20 | Baby one that you referenced? |
| 14:16:28 | 21 | A.   Just, again, what he described was at a nudist colony, he |
| 14:16:34 | 22 | had a girlfriend that I had never met who had several kids. |
| 14:16:38 | 23 | And he would, make, like singing videos or just kind of artsy |
| 14:16:46 | 24 | nudist type videos.  He never described anything sexually |
| 14:16:51 | 25 | explicit or anything like that.  It was an artsy, nudist |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 115 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 14 of 19
COURTNEY - DIRECT                                                      114

14:16:57   1  happy-go-lucky, dancing, singing naked videos.

14:17:03   2  Q.   Did he ever destroy any of his collection, to your

14:17:06   3  knowledge?

14:17:07   4  A.   There was a scare where he was investigated by some law

14:17:15   5  enforcement body, and he said that he had destroyed his entire

14:17:19   6  collection.   I took that as probably true.   You know, it's very

14:17:28   7  easy to destroy a collection.   You just press delete -- press

14:17:32   8  delete from a secured deletion program, and it's gone.   Or put

14:17:39   9  the CDs in a microwave, and they're gone.

14:17:42  10  Q.   Was there any other occasion perhaps prior to that that

14:17:45  11  he's -- that you know if he destroyed it?

14:17:48  12  A.   We discussed information security, but I do not know of

14:17:52  13  any other time that he said he destroyed it or not.   And,

14:17:56  14  again, it was my inference.   I don't believe for certain that

14:17:59  15  he actually came out and said, I went and destroyed my

14:18:02  16  collection.

14:18:04  17  Q.   Is having a collection important to people who are

14:18:07  18  interested in child pornography?

14:18:08  19  A.   Well, I would say having a collection is important to

14:18:11  20  other people as well.   But the answer is yes.   It's an

14:18:16  21  obsessive compulsive tendency, if you will.   Well, it was for

14:18:21  22  me.   I collected everything.   So I would say yes.

14:18:25  23  Q.   And kept everything?

14:18:27  24  A.   It's the ultimate virus.   It's -- you don't want to delete

14:18:32  25  it.   So right.   Generally speaking, once you have something,

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 116 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 15 of 19
COURTNEY – CROSS
115

| | | |
|---|---|---|
| 14:18:36 | 1 | you don't want to delete it. |
| 14:18:38 | 2 | Q.   Okay. |
| 14:18:46 | 3 | MR. DEVLIN:  One moment, Your Honor. |
| 14:19:00 | 4 | Pass the witness, Your Honor. |
| 14:19:02 | 5 | THE COURT:  Mr. Orr, cross-examination? |
| 14:19:04 | 6 | MR. ORR:  Thank you, Your Honor. |

**CROSS-EXAMINATION**

**BY MR. ORR:**

| | | |
|---|---|---|
| 14:19:07 | 9 | Q.   Mr. Courtney, if I understand it, you were first arrested |
| 14:19:11 | 10 | in May -- approximately May the 14th of '09, correct, sir? |
| 14:19:18 | 11 | A.   Precisely May the 14th of 2009. |
| 14:19:21 | 12 | Q.   Okay.  And you were approached by Cyber Crime law |
| 14:19:24 | 13 | enforcement officials in Florida? |
| 14:19:25 | 14 | A.   Yes, sir. |
| 14:19:26 | 15 | Q.   Who apparently used a subterfuge in talking to you to gain |
| 14:19:31 | 16 | admission to your home and to your computers? |
| 14:19:34 | 17 | A.   That's correct, sir. |
| 14:19:35 | 18 | Q.   And at what point did they spring the trap on you? |
| 14:19:42 | 19 | A.   After I'd invited them into my house and -- |
| 14:19:46 | 20 | Q.   Okay.  Go ahead. |
| 14:19:47 | 21 | A.   And we were in my kitchen.  They -- you know, I had asked |
| 14:19:51 | 22 | them about the burglary to my house three weeks prior to my |
| 14:19:55 | 23 | arrest.  And they said, Oh, we're really concerned about that. |
| 14:19:59 | 24 | However, we're with the Cyber Crimes unit.  And at that point |
| 14:20:02 | 25 | they -- they kind of started the process of baiting me into |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 147 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 116 of 193
COURTNEY - CROSS                                                            116

| 14:20:07 | 1 | doing -- fault. |
|---|---|---|

14:20:07  1  doing -- fault.

14:20:11  2  Q.   Well, did they ask you about your activities?

14:20:14  3  A.   Yes, sir.

14:20:14  4  Q.   And did you respond to them about your activities?

14:20:17  5  A.   Not immediately.

14:20:18  6  Q.   Okay.  And when you say "not immediately," well, when did

14:20:21  7  you respond to them?

14:20:23  8  A.   After they assured me that they were looking for people

14:20:27  9  who were producing child pornography and that the laws had

14:20:30  10  changed.  And that if I would cooperate with them and work with

14:20:34  11  them, then -- and help them find people who were producing

14:20:40  12  child pornography at that point, that that -- that's when, you

14:20:44  13  know, I gave in and opened up my computer to allow them to view

14:20:51  14  what I had.

14:20:52  15  Q.   Okay.  And did they view it there on your premises?

14:20:57  16  A.   Yes, sir.

14:20:57  17  Q.   And how long did that take?

14:20:59  18  A.   Approximately an hour and a half.

14:21:01  19  Q.   Okay.  Now, what did they find on your computer?  What

14:21:07  20  type of pornography did they find?

14:21:09  21  A.   Well, I had an extensive collection.  I had roughly

14:21:13  22  3,000-3,500 adult videos from every genre of pornography.  And

14:21:21  23  I would say roughly -- I would say probably 1 percent of my

14:21:26  24  collection was child pornography --

14:21:28  25  Q.   Okay.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 118 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 117 of 132
COURTNEY - CROSS

117

14:21:28  1   A.   -- overall.

14:21:29  2   Q.   All right, sir.  So you're one of those people who has --

14:21:33  3   you had everything on there.  All -- any type of pornography

14:21:36  4   that one might imagine, you would have had a sample of it?

14:21:40  5   A.   I had every thing -- not every pornography.  I had every

14:21:43  6   file.  I had every movie.  I had every virus.  I had every

14:21:49  7   book.  I had everything that was digital.  I had over

14:21:52  8   5 terabytes when I fell.  And of that 5 terabytes, a

14:21:56  9   40-gigabyte container was child pornography, of which there was

14:22:01  10  about 30 gigabytes total?

14:22:04  11  Q.   All right, sir.  And when with the police or the Cyber

14:22:07  12  Crimes people were through going through the computer, did you

14:22:13  13  talk to them some more?

14:22:14  14  A.   Yes, sir.

14:22:15  15  Q.   Okay.  And did you -- at your home there, you kept talking

14:22:22  16  to them?

14:22:23  17  A.   Well, once I was taken into custody, I didn't talk any

14:22:26  18  more.  And also during that entire time, I was never read my

14:22:29  19  rights either.  So, again -- but, again, yes.  I talked to

14:22:36  20  them.

14:22:36  21  Q.   Okay.  About how long did you talk to them at your house?

14:22:39  22  A.   Again, all told, an hour and 30 minutes.

14:22:43  23  Q.   Okay.  And then you were taken to jail, correct?

14:22:46  24  A.   Taken to a holding cell at Hillsborough County.

14:22:51  25  Q.   And you hired an attorney, did you not, sir, at some

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 119 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 14 of 93
COURTNEY - CROSS                                                    118

| | | |
|---|---|---|
| 14:22:54 | 1 | point? |
| 14:22:54 | 2 | A.   Yes, sir. |
| 14:22:54 | 3 | Q.   I would presume? |
| 14:22:55 | 4 | A.   Yes, sir. |
| 14:22:55 | 5 | Q.   Did you make bond and get out on the streets? |
| 14:22:58 | 6 | A.   My bond was a million dollars. |
| 14:23:00 | 7 | Q.   Okay.  So ... |
| 14:23:04 | 8 | A.   The answer is no. |
| 14:23:06 | 9 | Q.   Well, some people can make a million-dollar bond, but you |
| 14:23:09 | 10 | couldn't? |
| 14:23:09 | 11 | A.   No, sir. |
| 14:23:10 | 12 | Q.   So you hired -- you hired an attorney, correct? |
| 14:23:13 | 13 | A.   Yes, sir. |
| 14:23:14 | 14 | Q.   And he -- when did you first hire that attorney? |
| 14:23:17 | 15 | A.   Well, I heard -- hired my first attorney, John Foster, the |
| 14:23:21 | 16 | day I was arrested.  I was later connived into hiring another |
| 14:23:26 | 17 | attorney who is a very good attorney, for the record.  And -- |
| 14:23:34 | 18 | and so I had two separate attorneys during this process. |
| 14:23:38 | 19 | Q.   You had two separate lawyer during the entire process? |
| 14:23:41 | 20 | A.   Yes, sir. |
| 14:23:41 | 21 | Q.   Okay.  And so you remained in jail under a million-dollar |
| 14:23:47 | 22 | bond until or about you were sentenced May the 15th of last |
| 14:23:53 | 23 | year, 2010? |
| 14:23:54 | 24 | A.   I believe that's correct. |
| 14:23:55 | 25 | Q.   Okay.  And then -- then you since more -- I guess sometime |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 120 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 14 of 93
COURTNEY - CROSS                                                    119

| | | |
|---|---|---|
| 14:24:00 | 1 | after that, you were sent to the Florida penitentiary system? |
| 14:24:04 | 2 | A.   Yes, sir. |
| 14:24:04 | 3 | Q.   Okay.  And did you -- you talked to your lawyers while you |
| 14:24:08 | 4 | were in jail, did you not, sir? |
| 14:24:09 | 5 | A.   Frequently. |
| 14:24:10 | 6 | Q.   Okay. |
| 14:24:12 | 7 | A.   There was a serial -- I never had two -- two -- two |
| 14:24:17 | 8 | attorneys at the same time.  So ... |
| 14:24:18 | 9 | Q.   But you had the luxury of having two lawyers? |
| 14:24:22 | 10 | A.   Well, yes. |
| 14:24:22 | 11 | Q.   Or maybe that's a curse, to have two lawyers? |
| 14:24:26 | 12 | A.   That's conjecture. |
| 14:24:28 | 13 | Q.   Anyway -- okay.  And they told you -- I'm going to make a |
| 14:24:32 | 14 | guess -- that you were in a lot of trouble? |
| 14:24:34 | 15 | A.   Absolutely. |
| 14:24:35 | 16 | Q.   And what the Cyber Crimes people told you about mere |
| 14:24:38 | 17 | possession of child pornography being not much of a problem |
| 14:24:42 | 18 | anymore and the law had changed was not correct? |
| 14:24:44 | 19 | A.   Absolutely. |
| 14:24:46 | 20 | Q.   And so did you plea bargain for your, what, 15 years? |
| 14:24:49 | 21 | A.   Yes, sir. |
| 14:24:50 | 22 | Q.   And did your lawyers advise you that that was a whole lot |
| 14:25:00 | 23 | less than you would get going to trial? |
| 14:25:00 | 24 | A.   I believe I was looking at 3,997 years.  So yes. |
| 14:25:00 | 25 | Q.   So 15 is less than that? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 121 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 120 of 192
COURTNEY - CROSS                                                    120

| | | |
|---|---|---|
| 14:25:02 | 1 | A.  Yes. |
| 14:25:02 | 2 | Q.  All right.  So now -- and your lawyers told you, I guess, |
| 14:25:10 | 3 | like Cyber Crimes, that the one way that you could lessen your |
| 14:25:15 | 4 | penalties was to give in information about producers of |
| 14:25:18 | 5 | pornography? |
| 14:25:19 | 6 | A.  Actually, at that point that was never an option.  I was |
| 14:25:24 | 7 | not ever once given the option of communicating or any form of, |
| 14:25:34 | 8 | I -- during my entire plea process, I was never given the |
| 14:25:38 | 9 | option of doing anything of the sort.  I was given the option |
| 14:25:42 | 10 | of take 15 years or go up and plea.  That was my option up |
| 14:25:48 | 11 | until I pled. |
| 14:25:49 | 12 | Q.  Well, despite -- so what you're saying is the Cyber Crimes |
| 14:25:53 | 13 | people told you they wanted information about producers? |
| 14:25:56 | 14 | A.  Yes. |
| 14:25:56 | 15 | Q.  But from the time of your arrest to the time of your |
| 14:26:00 | 16 | sentence, you never gave up any information about producers? |
| 14:26:04 | 17 | A.  That is correct. |
| 14:26:05 | 18 | Q.  And -- but then on May the 27th, thereabouts, of last |
| 14:26:09 | 19 | year, was it with your permission that your attorney |
| 14:26:14 | 20 | Bryant Camareno contacted the FBI and the person of |
| 14:26:18 | 21 | Sean Mullen? |
| 14:26:19 | 22 | A.  Yes, sir. |
| 14:26:19 | 23 | Q.  And could you tell the Court how it came about that |
| 14:26:22 | 24 | your -- your lawyer, Mr. Camareno, contacted Sean Mullen.  Was |
| 14:26:27 | 25 | that at your behest? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 122 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 121 of 193
COURTNEY - CROSS                                                121

```
14:26:29   1  A.   He -- well, the answer to that is my attorney was
14:26:34   2  contacted by, I believe, the prosecutor, who had been contacted
14:26:39   3  by the FBI, who apparently had found my name in Mr. Diehl's
14:26:45   4  E-mail archives; at which point they -- they had made the
14:26:49   5  connection that I had been incarcerated for possession of child
14:26:53   6  pornography; at which point they contacted my attorney; at
14:26:56   7  which point I said that I would cooperate.
14:27:01   8  Q.   Well, okay.  So, now, you were mentioned in the E-mail
14:27:08   9  archives with Mr. Diehl, and those E-mail archives would
14:27:11  10  indicate that you had been doing the software business with
14:27:16  11  Mr. Diehl that you described to the Court?
14:27:18  12  A.   Yes, sir.
14:27:18  13  Q.   Okay.  And how far back do you think your E-mail archives
14:27:23  14  would have gone?
14:27:24  15  A.   Well, I believe they certainly go back, I'd say, to maybe
14:27:36  16  2001.  I don't know.  I lost a lot of E-mail --
14:27:40  17  Q.   Okay.
14:27:41  18  A.   -- in 2001.
14:27:42  19  Q.   And a Mr. -- and it's not uncommon for people to keep
14:27:47  20  E-mail going back for years?
14:27:49  21  A.   Decades.  Right.
14:27:51  22  Q.   Decades.  And would that be more common, you think,
14:27:55  23  amongst computer savvy people than, say, amongst lawyers?
14:27:59  24  A.   I wouldn't know.
14:28:00  25  Q.   Okay.  In any event you -- your lawyer --
```

Case 1:10-cr-00297-LY Document 219-1 Filed 03/05/16 Page 123 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 122 of 123
COURTNEY - CROSS                                                    122

| | | |
|---|---|---|
| 14:28:06 | 1 | Well, so your story is that the FBI contacted your |
| 14:28:17 | 2 | lawyer? |
| 14:28:18 | 3 | A.   That or the prosecutor.  I don't -- I don't know the |
| 14:28:23 | 4 | actual chain of events that led to my learning of this. |
| 14:28:27 | 5 | Q.   So you wouldn't have any explanation for Special |
| 14:28:31 | 6 | Agent Mullen writing a report in which he indicates that |
| 14:28:35 | 7 | Brian Camareno contacted him? |
| 14:28:40 | 8 | A.   Other than the fact that I discussed this with my attorney |
| 14:28:44 | 9 | and that I said that I would be willing to cooperate.  I don't, |
| 14:28:47 | 10 | again, understand the exact -- I don't know the exact chain of |
| 14:28:51 | 11 | events that occurred. |
| 14:28:52 | 12 | Q.   Okay. |
| 14:28:53 | 13 | A.   I can't say that the day I learned about this was the day |
| 14:28:56 | 14 | I pled out.  And the day I pled out, I was not given an option |
| 14:29:00 | 15 | or in any, way, shape, or form anything related to this.  I was |
| 14:29:05 | 16 | told merely that -- that this would be a possibility in the |
| 14:29:09 | 17 | future. |
| 14:29:10 | 18 | Q.   Well -- okay.  You -- now, you've testified that you hope |
| 14:29:19 | 19 | to get -- or, clearly, you hope to get a time reduction? |
| 14:29:24 | 20 | A.   Yes, sir.  I do hope that. |
| 14:29:25 | 21 | Q.   In exchange for this? |
| 14:29:27 | 22 | A.   Yes, sir. |
| 14:29:27 | 23 | Q.   And you understand that, in order to get a time reduction, |
| 14:29:30 | 24 | you have to do something of value for the prosecution? |
| 14:29:33 | 25 | A.   I have to tell the truth. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 124 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 123 of 192
COURTNEY - CROSS                                                    123

14:29:36  1   Q.   Okay.  When was the first time you talked to anybody from

14:29:39  2   the FBI?

14:29:40  3   A.   The first time would be roughly just prior to

14:29:50  4   Thanksgiving, I believe.

14:29:51  5   Q.   Okay.

14:29:52  6   A.   In November.

14:29:53  7   Q.   And if you tell the truth and if it's of no value to the

14:29:57  8   prosecution, that's not going to get you a reduction in your

14:30:00  9   sentence, is it?

14:30:01  10  A.   Again, as far as I've been told, I've been made no

14:30:06  11  promises or otherwise.  And I don't believe that the value

14:30:11  12  would have merit as far as getting me in front of the judge or

14:30:15  13  not.  It's just simply that I cooperated is enough to get me in

14:30:19  14  front of my judge, from what I understand.

14:30:21  15  Q.   Well, but the more beneficial the cooperation is, the less

14:30:27  16  sentence you'll get?  You hope?

14:30:28  17  A.   I can't answer that question.

14:30:30  18  Q.   Well, if you came over here and you said to this Judge,

14:30:34  19  you know, David Diehl is a great guy.  I've been to his house

14:30:37  20  many times, and I never saw any pornography at his house,

14:30:41  21  that's of no value to anyone, is it, as far as getting you a

14:30:44  22  time sentence -- a time reduction, is it?

14:30:47  23  A.   I guess not.

14:30:48  24  Q.   You have to come over here and say something --

14:30:52  25  A.   The simple fact that I've been extradited and I will have

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 125 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 124 of 123
COURTNEY - CROSS                                              124

| | | |
|---|---|---|
| 14:30:54 | 1 | lost that gain time and other things I would imagine would |
| 14:30:58 | 2 | constitute at least a consideration. |
| 14:30:59 | 3 | Q.   Okay.  Now, during this -- the time period of '08 and '09, |
| 14:31:05 | 4 | you were using drugs, were you not, sir? |
| 14:31:06 | 5 | A.   Yes, I was. |
| 14:31:08 | 6 | Q.   And you were using methamphetamine and steroids? |
| 14:31:09 | 7 | A.   Yes, I was. |
| 14:31:09 | 8 | Q.   Okay.  And either one of those drugs singly, and certainly |
| 14:31:16 | 9 | in combination, will dethrone a man's reason, correct? |
| 14:31:20 | 10 | A.   Absolutely. |
| 14:31:21 | 11 | Q.   Okay.  And so what you've testified to is that -- if I |
| 14:31:25 | 12 | understand it, your story is that you're at a party somewhere. |
| 14:31:33 | 13 | At -- where was the party at? |
| 14:31:34 | 14 | A.   It started at his girlfriend's house, and it wasn't a |
| 14:31:38 | 15 | party.  If you call gathering of more than one person a party, |
| 14:31:44 | 16 | then, yes, it was.  It started at his girlfriend's house. |
| 14:31:47 | 17 | Q.   And were you using drugs that day? |
| 14:31:49 | 18 | A.   Actually, I was not. |
| 14:31:50 | 19 | Q.   Okay. |
| 14:31:51 | 20 | A.   I mean, in all fairness, to rephrase the answer to that, I |
| 14:31:55 | 21 | was at that point using intermuscular injection steroids. |
| 14:32:02 | 22 | However, I did not particularly use that day.  I did use that |
| 14:32:05 | 23 | week.  I did not start using methamphetamine until September of |
| 14:32:08 | 24 | the year following.  So until that point, I had not used any |
| 14:32:12 | 25 | methamphetamine.  Just steroids. |

Case 1:10-cr-00297-LY   Document 219-1   Filed 03/05/16   Page 126 of 193
Case 1:10-cr-00297-LY   Document 91   Filed 03/09/11   Page 123 of 192
COURTNEY - CROSS                                           125

| | | |
|---|---|---|
| 14:32:16 | 1 | Q.   And you mentioned that there was some sort of tussle at |
| 14:32:18 | 2 | the party, and there was some blood? |
| 14:32:20 | 3 | A.   Yes.  There was -- David and I had gotten into physical -- |
| 14:32:24 | 4 | he had thrown some punches, and one connected with my -- my |
| 14:32:29 | 5 | tooth and my lip and sent my tooth through my lip, at which |
| 14:32:34 | 6 | point a whole lot of blood started pumping out.  And we got |
| 14:32:38 | 7 | into a little fight, and it was quickly stopped.  It wasn't |
| 14:32:43 | 8 | really a full-blown fight.  It was just -- he probably threw |
| 14:32:47 | 9 | like that one punch at my face, at which point I hit him about |
| 14:32:51 | 10 | three times.  And his girlfriend started screaming and saying, |
| 14:32:54 | 11 | "Stop this."  So we stopped, and that was the extent of it. |
| 14:33:00 | 12 | Q.   Well -- |
| 14:33:02 | 13 | A.   And he was drinking, and I was not drinking at that time. |
| 14:33:05 | 14 | I did have some beers that night, but it wasn't -- it wasn't |
| 14:33:15 | 15 | over two or three. |
| 14:33:16 | 16 | Q.   Okay.  And I believe your testimony continues to the |
| 14:33:20 | 17 | effect that you then left this place, correct? |
| 14:33:22 | 18 | A.   Yes, sir. |
| 14:33:23 | 19 | Q.   In what city was this in? |
| 14:33:29 | 20 | A.   I believe it's Odessa on the map.  It's northeast of |
| 14:33:36 | 21 | Oldsmar, about 20 minutes of where he was.  So I don't know the |
| 14:33:40 | 22 | exact name, but I think it was Odessa, Florida or thereabouts? |
| 14:33:44 | 23 | Q.   Okay.  And so then -- and you went over to his house? |
| 14:33:47 | 24 | A.   Yes, sir. |
| 14:33:48 | 25 | Q.   Twenty minutes away? |

Case 1:10-cr-00297-LY Document 219-1 Filed 11/05/16 Page 127 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 126 of 192
COURTNEY - CROSS
126

| | | |
|---|---|---|
| 14:33:49 | 1 | A.  Twenty, 25 minutes. |
| 14:33:51 | 2 | Q.  In what city was that in? |
| 14:33:53 | 3 | A.  Oldsmar. |
| 14:33:55 | 4 | Q.  Okay.  And you're sure he lived -- actually lived in |
| 14:33:59 | 5 | Oakmont *[sic]*? |
| 14:33:59 | 6 | A.  I'm absolutely 100 percent without a doubt sure, correct. |
| 14:34:02 | 7 | Q.  You're certain he didn't live in Safety Harbor? |
| 14:34:04 | 8 | A.  I guess -- I guess he -- I don't know the actual |
| 14:34:10 | 9 | physical -- I never actually mailed him, so I do not know that. |
| 14:34:14 | 10 | But I do know that it's referred to as Oldsmar.  So if that is |
| 14:34:19 | 11 | different, then I did not have his postal address. |
| 14:34:22 | 12 | Q.  Oh, okay.  Well, so far as you testified earlier, y'all |
| 14:34:26 | 13 | lived about 30, 35 miles apart? |
| 14:34:28 | 14 | A.  Correct. |
| 14:34:28 | 15 | Q.  So y'all didn't meet in person a whole lot? |
| 14:34:31 | 16 | A.  Absolutely right. |
| 14:34:32 | 17 | Q.  How many times did you meet in person? |
| 14:34:34 | 18 | A.  I'd say 12 to 15. |
| 14:34:37 | 19 | Q.  Over what?  Five years?  Six years? |
| 14:34:40 | 20 | A.  Yes.  Maybe it was more; maybe it was less.  About 12 to |
| 14:34:45 | 21 | 15. |
| 14:34:45 | 22 | Q.  It might be two or three times a year? |
| 14:34:48 | 23 | A.  I'd say that could be correct. |
| 14:34:51 | 24 | Q.  So did you go out drinking beer together? |
| 14:34:54 | 25 | A.  We'd go to GameStop -- I mean GameWorks.  We'd go to |

COURTNEY - CROSS

127

| | | |
|---|---|---|
| 14:34:59 | 1 | Buffalo Wild Wings.  We'd go to the Centro Ybor.  We'd go to |
| 14:35:06 | 2 | Channelside in Tampa.  Busch Gardens. |
| 14:35:09 | 3 | Q.  Okay.  Well, let me -- let me ask you -- let me jump back |
| 14:35:14 | 4 | a little bit.  You got sentenced in May of last year, correct? |
| 14:35:18 | 5 | A.  Yes. |
| 14:35:19 | 6 | Q.  And by that time you knew -- it had been in the papers -- |
| 14:35:25 | 7 | you knew that Mr. Diehl had been arrested, did you not? |
| 14:35:30 | 8 | A.  I was aware probably three months prior to my plea |
| 14:35:36 | 9 | bargaining that I -- I don't know the exact time, again, but I |
| 14:35:47 | 10 | do know that it was after I was.  And it certainly -- it in no |
| 14:35:52 | 11 | way, shape, or form affected my plea. |
| 14:35:55 | 12 | Q.  Okay.  But up until the time that you saw Mr. Diehl -- you |
| 14:35:59 | 13 | saw in the media that he had been arrested, it's fair to say |
| 14:36:03 | 14 | you had never mentioned -- |
| 14:36:04 | 15 | A.  I never saw him in the media, sir. |
| 14:36:06 | 16 | Q.  Well, you heard about it? |
| 14:36:08 | 17 | A.  Again, my hearing about it was from my attorney. |
| 14:36:11 | 18 | Q.  Okay.  However you heard about it, from your attorney, you |
| 14:36:15 | 19 | hadn't mentioned to Cyber Crimes or, if I understand it, anyone |
| 14:36:18 | 20 | else about Mr. Diehl allegedly being a producer? |
| 14:36:22 | 21 | A.  Absolutely not. |
| 14:36:23 | 22 | Q.  Only until it's a matter of public media, correct, or you |
| 14:36:28 | 23 | heard about it from your lawyer? |
| 14:36:29 | 24 | A.  After I heard about it from my lawyer. |
| 14:36:31 | 25 | Q.  Okay.  Didn't tell Cyber Crime, didn't tell your lawyer, |

Case 1:10-cr-00297-LY Document 219-1 Filed 11/05/16 Page 129 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 128 of 192
COURTNEY - CROSS
128

14:36:35  1  didn't tell anybody else.  Didn't write any letters saying,

14:36:39  2  Hey, I know about this big producer.  Cut me some slack?

14:36:43  3  A.   That was never an option for me.

14:36:46  4  Q.   All right, sir.  Now, let's get back to the fight and the

14:36:48  5  trip over to his house -- to Mr. Diehl's house that you say

14:36:51  6  happened.  And so if I understand this, you've got your --

14:36:53  7  what?  Your tooth is broken?

14:36:54  8  A.   No, sir.  It just --

14:36:55  9  Q.   Or jammed into your lip?

14:36:58  10  A.   It was just a swollen lip at this point.

14:36:59  11  Q.   Well, did it hurt?

14:37:01  12  A.   Not particularly.

14:37:02  13  Q.   But there's blood everywhere?

14:37:04  14  A.   It was cleaned up pretty quickly.

14:37:07  15  Q.   All right.  So, anyway, this guy had just bloodied your

14:37:11  16  lip, correct?

14:37:11  17  A.   Yes, sir.

14:37:12  18  Q.   And he says, Well, hey, let's go on over to my house?

14:37:15  19  A.   Yeah.

14:37:16  20  Q.   And so did you go with him in his car?

14:37:18  21  A.   No.  I drove his sister in my car, and he drove in his

14:37:23  22  car.

14:37:23  23  Q.   Okay.  Now, you got over to his house, and about how big a

14:37:27  24  house is it?

14:37:33  25  A.   I'd say roughly -- I don't know for sure -- between 16-

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 130 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 129 of 192
COURTNEY - CROSS                                              129

| | | |
|---|---|---|
| 14:37:36 | 1 | and 18-hundred square feet, two-car garage, corner lot. |
| 14:37:46 | 2 | Q.   It's not a real big house? |
| 14:37:48 | 3 | A.   It's a comfortable house, right.  I would say -- I |
| 14:37:53 | 4 | wouldn't call it small.  But, you know ... |
| 14:37:56 | 5 | Q.   Well, it's 15- to 18-hundred square feet? |
| 14:37:59 | 6 | A.   Right.  It's a nice-size house. |
| 14:38:01 | 7 | Q.   Well, it's not a little cracker box, but it's not a |
| 14:38:05 | 8 | two-story mansion? |
| 14:38:06 | 9 | A.   It's entirely subjective to your income level. |
| 14:38:09 | 10 | Q.   Okay.  And so you get there, and you're saying that then |
| 14:38:18 | 11 | after this fight -- well, who else was there? |
| 14:38:20 | 12 | A.   Again, I think it was more of an altercation.  But not -- |
| 14:38:23 | 13 | I don't know how you'd describe it, but it wasn't -- it was a |
| 14:38:28 | 14 | drunk tussle is what it was, for all intents and purposes.  But |
| 14:38:32 | 15 | it was quickly put under the rug. |
| 14:38:36 | 16 | Q.   Would you say you were drunk? |
| 14:38:38 | 17 | A.   Absolutely not. |
| 14:38:39 | 18 | Q.   Had you been drinking earlier? |
| 14:38:41 | 19 | A.   I honestly don't recall drinking. |
| 14:38:44 | 20 | Q.   Okay.  You got to the -- |
| 14:38:45 | 21 | A.   I'm not a big drinker.  I do steroids and meth.  That was |
| 14:38:49 | 22 | my thing.  But at this point, I hadn't even done that. |
| 14:38:52 | 23 | Q.   Well, I feel so much better about your health if you stick |
| 14:38:55 | 24 | to meth and steroids. |
| 14:38:56 | 25 |           So you get to the -- get to the house, and who else |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 131 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 130 of 192
COURTNEY - CROSS                                              130

| | | |
|---|---|---|
| 14:38:59 | 1 | was there? |
| 14:39:00 | 2 | A.   I believe it was, again, his sister, his girlfriend.  I |
| 14:39:10 | 3 | don't recall what happened.  I know when we were at his |
| 14:39:14 | 4 | girlfriend's house, she had two infant kids and they had |
| 14:39:18 | 5 | already gone to bed.  I don't know -- I can't recall the |
| 14:39:21 | 6 | disposition of those.  But it was -- I just remember his |
| 14:39:24 | 7 | girlfriend, myself, Dave, and his sister there.  And A. I think |
| 14:39:29 | 8 | had already gone to bed, so I don't know what happened.  I |
| 14:39:33 | 9 | can't remember. |
| 14:39:33 | 10 | Q.   So you don't remember who else was there? |
| 14:39:37 | 11 | A.   I remember, like I said, his girlfriend and his sister |
| 14:39:43 | 12 | passed out in the back room.  And, like I said, that was the |
| 14:39:47 | 13 | night. |
| 14:39:48 | 14 | Q.   Okay.  Well, then your story goes on.  I think you get |
| 14:39:51 | 15 | these people there at the house.  And you're saying that after |
| 14:39:57 | 16 | breaking your lip with his fist, he takes you into the back and |
| 14:40:01 | 17 | says, Hey, look at this? |
| 14:40:02 | 18 | A.   No.  It was -- that's certainly an abbreviated -- but |
| 14:40:07 | 19 | yes.  That's essentially what happened. |
| 14:40:10 | 20 | Q.   Okay.  And your testimony is -- and I believe you told in |
| 14:40:16 | 21 | YOUR previous statement in November of last year -- you |
| 14:40:18 | 22 | mentioned downloading a video? |
| 14:40:20 | 23 | A.   Yes, sir. |
| 14:40:21 | 24 | Q.   And you found a video by yourself on the Internet? |
| 14:40:24 | 25 | A.   Yes, sir. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 132 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 131 of 192
COURTNEY - CROSS                                                131

14:40:25  1  Q.  So, now, according to your testimony, low and behold, if I

14:40:34  2  understand it, if I -- that Mr. Diehl showed you that very same

14:40:41  3  video at his house?

14:40:42  4  A.  Yes, sir.

14:40:42  5  Q.  Just pure coincidence.

14:40:44  6  A.  The video that I'm describing is the one with the girl in

14:40:47  7  a tent, approximately 90 seconds duration.  And it shows -- you

14:40:57  8  can hear the voice of a male and see a hand with a ring on it.

14:41:01  9  And that particular video is the one that he did show me, sir.

14:41:13  10  And that's the one I also described when I spoke to the FBI.

14:41:23  11  Q.  All right, sir.  Now, when was the first time you actually

14:41:36  12  told the FBI that you had seen the video of the young lady in

14:41:40  13  the tent?

14:41:41  14  A.  In November of this past year.

14:41:43  15  Q.  And when did you first tell them that you had actually

14:41:47  16  seen it at Mr. Diehl's house?

14:41:48  17  A.  At the same time.

14:41:50  18  Q.  Okay.

14:41:54  19  A.  And I believe it was November.  I don't have -- I don't

14:41:58  20  have the same information that I'm totally used to.

14:42:03  21  Q.  Okay.  Now, is the video we're talking about -- the Star

14:42:37  22  Baby video, is that what you're calling the tent video?

14:42:41  23  A.  Correct.  And I don't -- I don't precisely recall if

14:42:44  24  that's what he called it.

14:42:46  25  Q.  Okay.  Now, you testified to this Judge here that

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 133 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 132 of 192
COURTNEY - CROSS                                                    132

| | | |
|---|---|---|
| 14:42:48 | 1 | Mr. Diehl, somewhere back in '08, was it?  '08 or '09? |
| 14:42:55 | 2 | A.   It would be June or July of '08. |
| 14:43:05 | 3 | Q.   Okay.  So you're saying he told you he produced it? |
| 14:43:08 | 4 | A.   When he showed it to me, correct. |
| 14:43:10 | 5 | Q.   Okay.  And so then when you're meeting with the FBI in |
| 14:43:17 | 6 | November of 2010, they asked you about this Star Baby video |
| 14:43:26 | 7 | apparently in a tent, correct? |
| 14:43:27 | 8 | A.   Actually, they did not ask me about it.  I described it |
| 14:43:31 | 9 | without ... |
| 14:43:32 | 10 | Q.   Well, you said you were aware of only one video, right? |
| 14:43:37 | 11 | A.   I said specifically that one that he said that he had |
| 14:43:40 | 12 | made.  But also -- I had also seen another video of -- of |
| 14:43:45 | 13 | specifically A. and two girls jumping on a bed naked at a |
| 14:43:50 | 14 | nudist colony. |
| 14:43:52 | 15 | Q.   Okay. |
| 14:43:52 | 16 | A.   And I believe I also saw the video of a girl singing, |
| 14:43:56 | 17 | although I can't recall it directly because I remember talking |
| 14:43:59 | 18 | about it. |
| 14:43:59 | 19 | Q.   Well, you told the FBI in the November meeting that you |
| 14:44:03 | 20 | had doubts that Diehl had even made -- |
| 14:44:05 | 21 | A.   Yes.  I did say that, sir. |
| 14:44:08 | 22 | Q.   Okay.  And if I give you -- well, have you seen the notes |
| 14:44:37 | 23 | of your interview? |
| 14:44:38 | 24 | A.   Yes, sir, I have. |
| 14:44:39 | 25 | Q.   And could you show me in here where there's the incident |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 134 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 133 of 192
COURTNEY - CROSS                                                    133

| | | |
|---|---|---|
| 14:44:50 | 1 | about getting your lip broken and you went to the house and he |
| 14:44:53 | 2 | took you in the back and showed you? |
| 14:44:56 | 3 | A.   I don't know if that's there or not.  I -- |
| 14:44:58 | 4 | Q.   Well -- |
| 14:45:01 | 5 | A.   Go ahead. |
| 14:45:01 | 6 | Q.   Well, I thought maybe I was missing it because my eyes |
| 14:45:05 | 7 | aren't as good as they once were.  But I don't find it in there |
| 14:45:09 | 8 | either. |
| 14:45:11 | 9 | A.   Okay.  Noted. |
| 14:45:16 | 10 | Q.   But you did talk to the FBI again in January of this year, |
| 14:45:25 | 11 | correct? |
| 14:45:25 | 12 | A.   I spoke to them again when I arrived here. |
| 14:45:28 | 13 | Q.   Uh-huh.  And then on January the 19th of this year, you -- |
| 14:45:53 | 14 | well, you -- you did an interview with the FBI on January the |
| 14:45:57 | 15 | 12th of 2011, correct? |
| 14:46:00 | 16 | A.   It appears so. |
| 14:46:02 | 17 | Q.   And that's when you said, it's been reported to me, that |
| 14:46:10 | 18 | you were shown a video by Mr. Diehl? |
| 14:46:11 | 19 | A.   Yes, sir. |
| 14:46:12 | 20 | Q.   And that there's a male voice on the video? |
| 14:46:19 | 21 | A.   Yes, sir. |
| 14:46:19 | 22 | Q.   And that you're unable to identity the voice? |
| 14:46:25 | 23 | A.   That's correct.  I'm not a forensic -- I don't have voice |
| 14:46:29 | 24 | print technology, so I certainly am not able to do that. |
| 14:46:34 | 25 | Q.   Then you state in there, "The video was stored on a |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 135 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 134 of 192
COURTNEY - CROSS                                                           134

| | | |
|---|---|---|
| 14:46:39 | 1 | removable hard drive belonging to Mr. Diehl." |
| 14:46:42 | 2 | A.   As best as I could observe. |
| 14:46:45 | 3 | Q.   Okay.  Could you tell us what brand -- or, if you know, |
| 14:46:48 | 4 | what brand of removable hard drive this was? |
| 14:46:51 | 5 | A.   I have no idea. |
| 14:46:52 | 6 | Q.   Okay.  Now, you have more expertise than most people do in |
| 14:47:04 | 7 | the area of computers and the Internet, do you not, sir? |
| 14:47:08 | 8 | A.   Some would say. |
| 14:47:09 | 9 | Q.   Yeah.  Okay.  Well, and you know how downloading and |
| 14:47:16 | 10 | uploading works, do you not, sir? |
| 14:47:18 | 11 | A.   For the most part. |
| 14:47:20 | 12 | Q.   Okay.  And as a matter of fact, I'd hazard to guess at the |
| 14:47:25 | 13 | way the Cyber Crimes officials got to you in Florida was they |
| 14:47:28 | 14 | tracked you by some downloading or uploading you had done? |
| 14:47:32 | 15 | A.   That's incorrect. |
| 14:47:33 | 16 | Q.   Okay.  You're saying it was an informant? |
| 14:47:36 | 17 | A.   Yes, sir. |
| 14:47:37 | 18 | Q.   Okay.  But when you were downloading and uploading these |
| 14:47:41 | 19 | pornographic files, you went to particular sites to get them, |
| 14:47:44 | 20 | did you not, sir? |
| 14:47:45 | 21 | A.   I wouldn't call them sites, per se.  Again, on a |
| 14:47:49 | 22 | file-sharing network, it's a distributed network.  There's no |
| 14:47:51 | 23 | site involved.  There's no single site.  There are thousands of |
| 14:47:54 | 24 | them. |
| 14:47:54 | 25 | Q.   Well, would you hazard to guess that you have left -- that |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 136 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 135 of 193
COURTNEY - CROSS                                                    135

| | | |
|---|---|---|
| 14:47:58 | 1 | you left through your Internet service provider details of |
| 14:48:03 | 2 | where you had taken your -- pointed your computer? |
| 14:48:06 | 3 | A.   It was -- my own use was very -- it would not have been |
| 14:48:14 | 4 | tracked through my ISP.  I had information security measures |
| 14:48:21 | 5 | that would prevent the ability to track anything that I did on |
| 14:48:24 | 6 | the Internet. |
| 14:48:25 | 7 | Q.   Okay. |
| 14:48:26 | 8 | A.   Specifically using a leased server.  And I don't know |
| 14:48:31 | 9 | where it was, but that leased server is what I personally used |
| 14:48:36 | 10 | to download pornography -- child pornography in particular. |
| 14:48:40 | 11 | Q.   Okay. |
| 14:48:47 | 12 |           MR. ORR:  May I have just a second? |
| 14:49:46 | 13 | Q.   (BY MR. ORR) All right, sir.  Now, I think you testified a |
| 14:49:49 | 14 | little while ago so far as the trip from Mr. Diehl's |
| 14:49:52 | 15 | girlfriend's house to his house? |
| 14:49:54 | 16 | A.   Yes, sir. |
| 14:49:54 | 17 | Q.   She had some little kids? |
| 14:49:56 | 18 | A.   Yes, sir. |
| 14:49:56 | 19 | Q.   Did she leave them at home? |
| 14:49:58 | 20 | A.   I honestly don't remember. |
| 14:49:59 | 21 | Q.   So -- well, two- or three-year-old kids, she wouldn't |
| 14:50:05 | 22 | likely leave them at home? |
| 14:50:06 | 23 | A.   You're absolutely right. |
| 14:50:08 | 24 | Q.   So she probably took them? |
| 14:50:09 | 25 | A.   I don't remember. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 137 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 136 of 192
COURTNEY - CROSS
136

14:50:10  1  Q.  So there's these little kids.  There's Mr. Diehl's

14:50:13  2  sister.  There's his girlfriend?

14:50:15  3  A.  Correct.  And his son A.

14:50:17  4  Q.  And his son A.

14:50:18  5  A.  Like I said, I don't remember all the details of the

14:50:21  6  night.

14:50:21  7  Q.  But what you're saying is you do remember going in the

14:50:24  8  back and he says, Hey, look at this?

14:50:25  9  A.  Absolutely.  There's certain things that are more

14:50:30  10  memorable than others is all I can answer to that.

14:50:33  11  Q.  Would you agree or disagree that, when you're taking

14:50:36  12  illegal drugs or illegally taking drugs that might by

14:50:40  13  themselves be legal under prescription, that it can in fact

14:50:43  14  make you remember stuff that didn't happen?

14:50:45  15  A.  I'm not an expert on memory, so I cannot answer that

14:50:49  16  question.

14:50:50  17  Q.  So -- well, okay.  So you at least admit you were taking

14:50:55  18  steroids?

14:50:56  19  A.  At the time roughly once a week at that point.

14:51:00  20  Q.  Okay.  And had you ever taken methamphetamine at this

14:51:03  21  point?

14:51:03  22  A.  Never.

14:51:03  23  Q.  Never.  Okay.  But -- and you don't remember if you were

14:51:06  24  drinking?

14:51:07  25  A.  I don't drink.  I don't drink much.  And if I did, it was

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 138 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 137 of 192
COURTNEY - CROSS                                    137

14:51:10  1   never more than one or two.

14:51:12  2   Q.   Okay.  And you admit that you didn't bring this up until

14:51:15  3   after you had seen Mr. Diehl had been arrested -- you found

14:51:20  4   that out?

14:51:20  5   A.   Actually, like I said, it was brought to my attention.

14:51:23  6   Q.   It's brought to your attention.  You said a minute ago,

14:51:27  7   that, well -- well, you sort of implied that you're a stand-up

14:51:31  8   kind of guy.  You wouldn't give that kind of information out

14:51:34  9   about somebody correct?

14:51:35  10  A.   Again, I didn't -- it wasn't -- to be precise about this

14:51:40  11  I -- again, I was never given the opportunity to do that.

14:51:46  12  However, if I had been given the opportunity, what I would have

14:51:49  13  done, given the opportunity, would have been to contact

14:51:53  14  Mr. Diehl and ask him to help me give up people.  I wouldn't

14:51:57  15  have honestly directly gone about this at that time.  But I was

14:52:05  16  never given than option.

14:52:06  17  Q.   But right now you're here saying this stuff about him in

14:52:10  18  order to get you a reduction of sentence?

14:52:11  19  A.   Well, again, I've never been made no promises.

14:52:14  20  Q.   Well, you're not here doing this just because you think --

14:52:18  21  A.   Well, I was --

14:52:18  22  Q.   -- just because you wanted a trip to Texas?

14:52:19  23  A.   Well, I was not given the option of whether I was going to

14:52:23  24  Texas or not.  I am, however, voluntarily giving my testimony

14:52:28  25  today.

Case 1:10-cr-00297-LY  Document 219-1  Filed 12/05/16  Page 139 of 193
Case 1:10-cr-00297-LY  Document 91  Filed 03/09/11  Page 138 of 192
COURTNEY - CROSS                                            138

14:52:29   1   Q.   All right.  Now, you hosted some sites of -- some Web

14:52:33   2   pages of Mr. Diehl's?

14:52:34   3   A.   A business Web site.

14:52:35   4   Q.   Business Web site.  That's right.  And you're saying that

14:52:38   5   you never hosted on your server -- you had a server to do

14:52:41   6   this.  You never hosted pornography of any kind on there?

14:52:45   7   A.   The answer is a complicated one in the fact that I did in

14:52:50   8   fact have pornography on that server.  But at the same time, I

14:52:54   9   never hosted it.  So there -- so it's esoteric, the answer.  In

14:53:01  10   other words, it requires special knowledge.  But the answer is

14:53:05  11   that I never hosted pornography of any kind on any server.

14:53:13  12           But there was never at any point any professional

14:53:15  13   sharing or any other kind of sharing between Mr. Diehl and I of

14:53:19  14   any form of pornographic files of any form.

14:53:23  15   Q.   Other than the story about he took you into the bedroom

14:53:26  16   and showed you this?

14:53:27  17   A.   Correct.  And I also saw the cameras.

14:53:29  18   Q.   So what you're saying is he trusted you enough to show you

14:53:33  19   this video in his bedroom while his sister --

14:53:35  20   A.   Not in his bedroom.

14:53:37  21   Q.   Let me -- huh?

14:53:38  22   A.   It was not in his bedroom.

14:53:38  23   Q.   His office?

14:53:39  24   A.   His office.

14:53:39  25   Q.   Well, did he have a separate office other than a bedroom?

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 140 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 139 of 192
COURTNEY - CROSS
139

14:53:41  1    A.   Yes.

14:53:41  2    Q.   So while all these people are around in the house, he was

14:53:44  3    willing to show you all of this but he wasn't willing to

14:53:47  4    trade --

14:53:47  5    A.   Well, it started his girlfriend was passed out -- I mean,

14:53:51  6    his sister was passed out in the back room at this point.  His

14:53:54  7    girlfriend was going in between the kitchen and TV, knocking on

14:53:57  8    the door saying, Hey, what are you guys doing in there?  What

14:54:01  9    are you guys doing in there?

14:54:02  10        And -- and we're sitting there kind of having this secret

14:54:06  11   smile.  Again, the best I can give you would be the AT&T

14:54:10  12   commercial where that guy is laughing and he's saying, Oh, I've

14:54:13  13   got the one-up on you.  So that's the answer to that.

14:54:17  14   Q.   Well, I don't watch the AT&T commercials.  I have an

14:54:21  15   iPhone, so I've got enough against them for the dropped calls.

14:54:24  16        I'm handing you what's marked as Defendant's

14:54:27  17   Exhibit 1.  Can you take a look and read that.  That's from the

14:54:32  18   discovery that y'all gave us.

14:54:37  19            MR. ORR:  I'll show it.  It's an E-mail.

14:54:43  20            MR. DEVLIN:  If you wouldn't mind letting me look at

14:54:45  21   that when you're done.

14:54:46  22   A.   I can see that --

14:54:48  23   Q.   Hang on.

14:54:52  24   A.   Yes, sir.

14:55:19  25   Q.   Okay.  Can you tell us what Defendant's Exhibit Number 1

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 141 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 140 of 192
COURTNEY – CROSS
140

| | | |
|---|---|---|
| 14:55:22 | 1 | is? |
| 14:55:24 | 2 | A.    It is a request that I please cancel my account totally |
| 14:55:30 | 3 | from Mr. Diehl to me, dated 18th February of 2009. |
| 14:55:44 | 4 | Q.    Okay. |
| 14:55:45 | 5 | MR. ORR:  I'd offer Defendant's Exhibit 1. |
| 14:55:49 | 6 | MR. DEVLIN:  No objection, Your Honor. |
| 14:55:50 | 7 | THE COURT:  Defendant's Exhibit 1 is admitted. |
| 14:55:53 | 8 | Q.    (BY MR. ORR) And the actual text of the E-mail that you |
| 14:55:56 | 9 | received from Mr. Diehl was:  "I have not been on the server |
| 14:55:58 | 10 | for months.  Basically, since my little scare about content." |
| 14:56:02 | 11 | Right? |
| 14:56:02 | 12 | A.    Right. |
| 14:56:03 | 13 | Q.    "Please cancel my account totally.  If we need to settle |
| 14:56:08 | 14 | some funds, let's talk.  I won't be using it, nor have I used |
| 14:56:12 | 15 | it anyway."  And there's all this computer stuff on there that |
| 14:56:15 | 16 | you might understand, which I certainly don't. |
| 14:56:19 | 17 | Okay.  And so he's not talking about a scare about -- |
| 14:56:22 | 18 | THE COURT:  Let me see Exhibit 1. |
| 14:56:25 | 19 | MR. ORR:  Oh.  I'm sorry. |
| 14:56:26 | 20 | THE COURT:  You can go ahead. |
| 14:56:27 | 21 | Q.    (BY MR. ORR) So he's not talking about a scare he received |
| 14:56:31 | 22 | because of an investigation.  He's talking about a scare about |
| 14:56:34 | 23 | content, correct? |
| 14:56:35 | 24 | A.    It would appear so, sir. |
| 14:56:38 | 25 | Q.    And the truth is that, while looking at your server, |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 142 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 141 of 192
COURTNEY - CROSS                                                    141

14:56:42  1  looking at his stuff, he found on your severer pornography?

14:56:48  2  A.    That would be true.

14:56:49  3  Q.    Okay.  And that's -- and he wanted his stuff not to be on

14:56:52  4  a server that had pornography?

14:56:55  5  A.    That's correct.

14:56:57  6  Q.    So you said that he -- you told us all this stuff, that he

14:57:08  7  tried to entice people to do this and so on and so forth,

14:57:12  8  correct?

14:57:12  9  A.    Yes, sir.

14:57:13  10  Q.    But he didn't want his site on a server where you had

14:57:16  11  pornography.

14:57:17  12  A.    If that's the way -- that's one way to interpret that.

14:57:21  13  However, the little scare was specifically about the little

14:57:26  14  scare.  At least that's my interpretation of that.  And the

14:57:29  15  little scare would be the $7,000 scare where he had where he

14:57:33  16  was investigated by the two investigators from California.

14:57:37  17  Q.    But you told us -- you told this Judge a while ago that

14:57:41  18  you didn't ever have pornography on your server, correct?

14:57:44  19  A.    I don't believe I ever said that.

14:57:47  20  Q.    Okay.

14:57:47  21  A.    I said I didn't host it.  There's a difference between

14:57:50  22  having something -- when you say host, that would mean

14:57:54  23  sharing.  That would be distributing.  That would mean some

14:57:58  24  other form.  There's a difference between that and having a

14:58:01  25  secured storage there.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 143 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 142 of 192
COURTNEY - CROSS                                                    142

14:58:03  1   Q.   This was a server that people on the Internet could

14:58:07  2  connect --

14:58:08  3   A.   Yes.

14:58:08  4   Q.   -- to Mr. Diehl's Web pages, correct?

14:58:11  5   A.   Correct.  When you talk about --

14:58:12  6   Q.   Let me finish.  That Mr. Diehl's Web pages were there and

14:58:16  7  probably other people's Web pages?

14:58:18  8   A.   I had about five different companies on the server.

14:58:21  9   Q.   Okay.  So you had all these Web pages on this server,

14:58:25 10  correct?

14:58:25 11   A.   Well, I wouldn't call them pages.  There were no --

14:58:28 12  right.  There were Web sites on the server.

14:58:30 13   Q.   Whatever.  I'm sorry.  I don't know the lingo.  And so on

14:58:34 14  this site; that is, your server that people on the Internet

14:58:37 15  regularly connected to, you happened to have some secure

14:58:40 16  storage of child pornography that you didn't have any intention

14:58:46 17  of anyone else to connect to?

14:58:48 18   A.   Correct.

14:58:48 19   Q.   That's your story?

14:58:49 20   A.   Yes.

14:58:50 21          MR. ORR:  May I have just one other moment,

14:58:53 22  Your Honor?

14:59:20 23   Q.   (BY MR. ORR) Well, Mr. Diehl was allowed to log onto your

14:59:24 24  server to administer his Web pages, correct?

14:59:25 25   A.   Yes, he was.  He had full administrative access.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 144 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 143 of 192
COURTNEY - CROSS                                           143

14:59:27    1    Q.    And when he got on there, he could see that you had

14:59:30    2    these -- he could go to the file structure and see that you had

14:59:33    3    these other file sharing files --

14:59:35    4    A.    Yes.

14:59:36    5    Q.    -- correct?

14:59:36    6    A.    Yes, he could.

14:59:36    7    Q.    And they were of a pornographic nature, correct?

14:59:39    8    A.    Yes.

14:59:39    9    Q.    So people, if they knew the right passwords, could get on

14:59:42   10    there and upload or download?

14:59:43   11    A.    Well, people who knew the right passwords, they could also

14:59:48   12    access your garage, and the same laws apply to either.  In

14:59:51   13    other words, using that logic, that I -- if I knew the right

14:59:56   14    password, I could push your garage door and open it and go into

15:00:00   15    your garage.  To say those are similar is just completely

15:00:04   16    nonsense as far as I am concerned.

15:00:06   17    Q.    People get on the Internet, and they download files?

15:00:09   18    A.    But if there's no path or access or server sharing those

15:00:12   19    files, then it is impossible to do so.

15:00:16   20    Q.    Well, Mr. Diehl got on there and he could see them,

15:00:19   21    correct?

15:00:20   22    A.    Because he had full administrative access to the server.

15:00:23   23    Q.    And you began deleting them, did you not?

15:00:26   24    A.    Actually, I -- he did actually tell me to get it off the

15:00:33   25    server.  But I continued to use it for that purpose after

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 145 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/11 Page 144 of 192
COURTNEY - CROSS
144

| | | |
|---|---|---|
| 15:00:43 | 1 | that -- after he was off the server completely. |
| 15:00:47 | 2 | Q.   He told you to get, what, the pornography off the server? |
| 15:00:50 | 3 | A.   Yes, sir. |
| 15:00:51 | 4 | Q.   But you -- but he got off instead and you continued to use |
| 15:00:54 | 5 | it for pornography? |
| 15:00:55 | 6 | A.   It was my server. |
| 15:00:56 | 7 | Q.   Was it located in your house? |
| 15:00:58 | 8 | A.   No. |
| 15:00:58 | 9 | Q.   Some other off -- |
| 15:01:00 | 10 | A.   I have no idea where it was located. |
| 15:01:02 | 11 | Q.   It wasn't even a computer that you controlled? |
| 15:01:04 | 12 | A.   I leased it for $110 month from a -- I can't remember the |
| 15:01:10 | 13 | company now. |
| 15:01:10 | 14 | Q.   They call them server forums or ... |
| 15:01:13 | 15 | A.   It was a leased server.  It was a full Windows Server 2003 |
| 15:01:16 | 16 | with the full server software suite on it. |
| 15:01:36 | 17 | MR. ORR:  One minute, Your Honor. |
| 15:01:57 | 18 | Q.   (BY MR. ORR) Okay.  And the main purposes of your dealing |
| 15:02:02 | 19 | with Mr. Diehl was software you would -- he would -- you would |
| 15:02:07 | 20 | get him to help you on doing various projects? |
| 15:02:10 | 21 | A.   Our main dealing was discussing software.  However, we |
| 15:02:14 | 22 | talked about everything from politics to motorcycles.  He |
| 15:02:18 | 23 | actually convinced me that the Honda ST1300 was a great bike, |
| 15:02:22 | 24 | and I went out and bought one, for example. |
| 15:02:24 | 25 | Q.   Was it a great bike? |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 146 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 145 of 192
COURTNEY - CROSS
145

| | | |
|---|---|---|
| 15:02:30 | 1 | A.   Yes.  So to answer your question, we had both a |
| 15:02:34 | 2 | professional and personal relationship. |
| 15:02:37 | 3 | Q.   Thank you. |
| 15:02:38 | 4 | MR. ORR:  Pass the witness, Your Honor. |
| 15:02:40 | 5 | THE COURT:  Mr. Devlin, redirect? |
| 15:02:44 | 6 | MR. DEVLIN:  Briefly, Your Honor. |
| 15:02:46 | 7 | **REDIRECT EXAMINATION** |
| 15:02:46 | 8 | **BY MR. DEVLIN:** |
| 15:02:46 | 9 | Q.   Mr. Courtney, going back to the Star Baby video, at the |
| 15:02:49 | 10 | time was there any discussion between you and him that you had |
| 15:02:52 | 11 | seen this particular video yourself? |
| 15:02:54 | 12 | A.   Yes, there was. |
| 15:02:55 | 13 | Q.   And tell us about that. |
| 15:02:58 | 14 | A.   Well, again, when he said that he had made it, it was -- |
| 15:03:01 | 15 | to me it was surprising because I had in fact seen that video |
| 15:03:04 | 16 | and downloaded that from eMule specifically.  And, again, eMule |
| 15:03:08 | 17 | is a huge network.  So I had seen that video independently.  So |
| 15:03:18 | 18 | I did in fact very much doubt his claim that he made it.  And |
| 15:03:24 | 19 | I -- and, again, I spent -- I watched that thing 50, 60 times |
| 15:03:30 | 20 | just trying to make out if that was in fact him because, again, |
| 15:03:35 | 21 | there is a hand, a ring, and this -- this kind of banter going |
| 15:03:40 | 22 | back and forth between a male voice and the female subject. |
| 15:03:46 | 23 | And so, again, I didn't necessarily believe but he -- that was |
| 15:03:51 | 24 | what he had told me. |
| 15:03:52 | 25 | Q.   Did he seem in any way surprised or dismayed that you had |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 147 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 146 of 192
COURTNEY - CROSS
146

| | | |
|---|---|---|
| 15:03:56 | 1 | seen that video somewhere else before? |
| 15:03:58 | 2 | A.   I don't recall.  I don't honestly -- I just -- because |
| 15:04:04 | 3 | once -- when he said he made it, it just shocked me.  So, I -- |
| 15:04:10 | 4 | I mean, not that it was bad.  Just that this is something I had |
| 15:04:14 | 5 | known and I had seen.  I was, like, whoa, you know.  So at that |
| 15:04:17 | 6 | point I kind of just -- that's really what hit me.  So it was a |
| 15:04:23 | 7 | kind of a big shock.  So ... |
| 15:04:27 | 8 | MR. DEVLIN:  Pass the witness, Your Honor. |
| 15:04:29 | 9 | THE COURT:  Mr. Orr? |
| 15:04:30 | 10 | MR. ORR:  Just a second, Your Honor.  No further |
| 15:04:41 | 11 | questions, Your Honor. |
| 15:04:41 | 12 | THE COURT:  You may step down.  Mr. Devlin, you may |
| 15:05:08 | 13 | proceed. |
| 15:05:10 | 14 | MR. DEVLIN:  Government rests, Your Honor. |
| 15:05:29 | 15 | MR. ORR:  May we approach, Your Honor? |
| 15:05:36 | 16 | THE COURT:  You may.  You don't have to come over |
| 15:05:38 | 17 | here, do you?  It's a bench trial.  We don't have a jury. |
| 15:05:39 | 18 | MR. ORR:  I am just used to doing that, Your Honor. |
| 15:05:39 | 19 | This is the second bench trial I did.  The first one was, like, |
| 15:05:42 | 20 | 1974.  Somewhere in there.  I had forgotten what they're like. |
| 15:05:46 | 21 | THE COURT:  Well, at least you didn't file a motion |
| 15:05:48 | 22 | in limine for a bench trial like some lawyers do. |
| 15:05:52 | 23 | MR. ORR:  Well, no.  At least I didn't do that. |
| 15:05:57 | 24 | Yes.  Wouldn't want Your Honor to think about certain things. |
| 15:06:02 | 25 | We have subpoenaed N.A.D., his son, here.  What we'd |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 148 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 147 of 192
COURTNEY - CROSS                                           147

| 15:06:10 | 1  | like to do is close the Courtroom -- there's people from the |
| 15:06:13 | 2  | press here -- and have him testify. |
| 15:06:22 | 3  | THE COURT:  Mr. Devlin, what's the Government's |
| 15:06:24 | 4  | position, and what is the reason? |
| 15:06:32 | 5  | MR. DEVLIN:  That's what I need to find out.  I'm not |
| 15:06:35 | 6  | necessarily opposed to it.  I'm not really quite sure, since |
| 15:06:38 | 7  | his name is out there already, it's -- is he going to be |
| 15:06:41 | 8  | testifying about some protected stuff? |
| 15:06:44 | 9  | MR. ORR:  No.  Probably not.  But I think it would |
| 15:06:49 | 10 | just likely be traumatic. |
| 15:06:55 | 11 | THE COURT:  I'm not sure that's enough. |
| 15:06:58 | 12 | MR. ORR:  Well, can we approach?  Now I'd really like |
| 15:07:01 | 13 | to approach. |
| 15:07:01 | 14 | THE COURT:  Okay. |
| 15:07:23 | 15 | (At the bench, on the record) |
| 15:07:23 | 16 | MR. ORR:  Well, he was one of the John Does -- I |
| 15:07:33 | 17 | mean, he's the John Doe in the indictment, which we've gotten |
| 15:07:36 | 18 | taken out.  But, you know, it could get into some stuff that |
| 15:07:39 | 19 | would be -- you know, I don't know what all we are going to |
| 15:07:41 | 20 | do.  We may blunder into some stuff that would be protected |
| 15:07:45 | 21 | activity.  I mean, it's not my intention to get into that, but |
| 15:07:49 | 22 | the main thing is I just don't want to read about it. |
| 15:07:51 | 23 | MR. DEVLIN:  Well, I'm not sure that gives me a lot. |
| 15:07:53 | 24 | THE COURT:  It's not really -- |
| 15:07:55 | 25 | MR. DEVLIN:  I'm not going to get into that -- |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 149 of 193
Case 1:10-cr-00297-LY Document 91 Filed 09/11 Page 149 of 192
COURTNEY - CROSS                                        148

| 15:07:58 | 1 | THE COURT: -- that simple, to just seal the |
| 15:07:59 | 2 | Courtroom just because of sensibilities.  There's got to be a |
| 15:08:03 | 3 | little bit deeper reason.  You know, I try cases all the time |
| 15:08:07 | 4 | where juveniles testify. |
| 15:08:12 | 5 | MR. ORR:  Yes, sir. |
| 15:08:12 | 6 | MR. DEVLIN:  I have no evidence on the John Doe |
| 15:08:14 | 7 | aspect that would count. |
| 15:08:14 | 8 | THE COURT:  And we don't have any -- there has not |
| 15:08:18 | 9 | been anything raised that there are any compromising pictures |
| 15:08:21 | 10 | of him or embarrassing pictures of him or any sexual wrongdoing |
| 15:08:25 | 11 | with him. |
| 15:08:26 | 12 | MR. DEVLIN:  Not on the Government's case and chief |
| 15:08:27 | 13 | there haven't.  There are, but I'm not intending to introduce |
| 15:08:29 | 14 | those, Judge.  I'm not going to get into that. |
| 15:08:30 | 15 | THE COURT:  Are you going to get into that? |
| 15:08:32 | 16 | MR. ORR:  No. |
| 15:08:32 | 17 | THE COURT:  Then I think -- |
| 15:08:34 | 18 | MR. ORR:  Actually, I want to use him to combat some |
| 15:08:37 | 19 | of the stuff Mr. Courtney said. |
| 15:08:39 | 20 | MR. DEVLIN:  With that said, then I'm not going to |
| 15:08:41 | 21 | get into anything involving any -- |
| 15:08:45 | 22 | THE COURT:  Well, I'm not going to seal it now. |
| 15:08:47 | 23 | If the landscape changes, then I want to hear from |
| 15:08:53 | 24 | one or the other of you that's likely to change. |
| 15:08:56 | 25 | MR. DEVLIN:  Okay. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 150 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 149 of 192
COURTNEY – CROSS                                                           149

| | | |
|---|---|---|
| 15:08:57 | 1 | THE COURT:  Then I will reconsider my ruling. |
| 15:09:00 | 2 | MR. ORR:  Can we have a break while I talk to him |
| 15:09:02 | 3 | about doing that?  A short break? |
| 15:09:04 | 4 | THE COURT:  Yeah.  We'll go ahead and take our |
| 15:09:06 | 5 | afternoon recess. |
| 15:09:07 | 6 | MR. ORR:  I'd like to be -- |
| 15:09:10 | 7 | THE COURT:  We'll just take our afternoon recess. |
| 15:09:13 | 8 | MR. ORR:  Yeah.  I'd like to talk to him about it. |
| 15:09:15 | 9 | (Open Court, Defendant present) |
| 15:09:15 | 10 | THE COURT:  All right.  Ladies and gentlemen, at this |
| 15:09:17 | 11 | time, the Court will be in recess until 3:30.  We'll take our |
| 15:09:23 | 12 | afternoon recess at this time. |
| 15:09:25 | 13 | (Recess) |
| 15:28:13 | 14 | (Open Court, Defendant present) |
| 15:28:13 | 15 | THE COURT:  Mr. Orr? |
| 15:29:53 | 16 | MR. ORR:  Your Honor, at the close of the |
| 15:29:56 | 17 | Government's evidence, Defendant David Diehl moves for judgment |
| 15:29:59 | 18 | of acquittal pursuant to Federal Rule of Criminal Procedure 29, |
| 15:30:04 | 19 | on the grounds that the evidence offered by the Government is |
| 15:30:07 | 20 | insufficient on the United States Constitution and the relevant |
| 15:30:11 | 21 | case law to establish federal jurisdiction in this matter, and |
| 15:30:15 | 22 | that there is no adequate interstate nexus shown -- |
| 15:30:18 | 23 | THE COURT:  Slow down.  Go ahead, but just slow |
| 15:30:21 | 24 | down.  You're just reading very quickly. |
| 15:30:23 | 25 | MR. ORR:  I'm making this up as I go. |

Case 1:10-cr-00297-LY  Document 219-1  Filed 12/05/16  Page 151 of 193
Case 1:10-cr-00297-LY  Document 91-1  Filed 03/09/11  Page 150 of 192
COURTNEY - CROSS                                    150

| | |
|---|---|
| 15:30:25 | 1 |
| 15:30:27 | 2 |

15:30:25  1          THE COURT:  I don't think Ms. Rodriguez is having

15:30:27  2   trouble.  But make it up more slowly as you go.

15:30:30  3          MR. ORR:  Yes, Your Honor.  I go a lot faster if I'm

15:30:33  4   making stuff up.

15:30:34  5          That the -- and there is no evidence whatsoever that

15:30:38  6   Mr. -- of any credible nature that Mr. Diehl or any other

15:30:41  7   nature that Mr. Diehl transported in interstate commerce any --

15:30:47  8   any child pornography alleged in any of the counts of the

15:30:52  9   indictment.  And we renew our motion to dismiss that we filed

15:30:56  10  prior to trial.

15:30:57  11         THE COURT:  Mr. Devlin?

15:30:59  12         MR. DEVLIN:  Your Honor, I think taken in the light

15:31:02  13  most favorable to the Government, the evidence is more than

15:31:05  14  ample to show the interstate nexus and the other elements.

15:31:09  15         First of all, the stipulation does show the first

15:31:11  16  two -- there are three elements.  The first two elements being

15:31:14  17  that the defendant used, persuaded, enticed, et cetera, one or

15:31:18  18  more -- one or more children to engage in sexually explicit

15:31:21  19  conduct for the purpose of producing a visual depiction of such

15:31:25  20  conduct.  Secondly, that the children were minors at the time.

15:31:28  21  I don't think there's any dispute about those.

15:31:30  22         Third, in terms of the element of interstate nexus,

15:31:33  23  the element is not that the defendant transported it.  That's a

15:31:35  24  separate offense of transporting or, in some cases,

15:31:37  25  distribution.  But simply that the visual depictions actually

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

Case 1:10-cr-00297-LY  Document 219-1  Filed 12/05/16  Page 152 of 193
Case 1:10-cr-00297-LY  Document 91  Filed 03/09/11  Page 151 of 192
COURTNEY - CROSS                                                      151

| | | |
|---|---|---|
| 15:31:42 | 1 | were transported in interstate and foreign commerce.  And |
| 15:31:44 | 2 | that's the element, not that he did it. |
| 15:31:46 | 3 | I think by standing alone, the stipulation is |
| 15:31:48 | 4 | sufficient to show that.  But on top of that, additional |
| 15:31:54 | 5 | testimony just reinforces the stipulation. |
| 15:31:57 | 6 | THE COURT:  Break it down for me on Jane Doe 1, |
| 15:32:02 | 7 | Jane Doe 2, and Jane Doe 3.  And don't argue it generally. |
| 15:32:09 | 8 | Point out for me what we have on each of the three and where it |
| 15:32:15 | 9 | appears. |
| 15:32:19 | 10 | MR. DEVLIN:  In terms of count 1, Judge -- that would |
| 15:32:22 | 11 | be Government Exhibits 1-1 and 1-2 -- the evidence is that |
| 15:32:29 | 12 | the -- in the stipulation paragraph -- actually, paragraph 15 |
| 15:32:41 | 13 | states that each of the visual -- excuse me. |
| 15:32:44 | 14 | The video exhibits, which is essentially Government's |
| 15:32:47 | 15 | Exhibits -- which includes Government's Exhibits 1-1 and 1-2, |
| 15:32:53 | 16 | that each of those visual depictions were found in digital |
| 15:32:57 | 17 | video format stored in one or more computers, hard drives, |
| 15:33:00 | 18 | and/or other computer storage media in places outside the State |
| 15:33:04 | 19 | of Texas and seized in connection with child pornography |
| 15:33:06 | 20 | investigations that were conducted in and after the video |
| 15:33:10 | 21 | exhibits were produced. |
| 15:33:11 | 22 | And the rest of paragraph 15 also pertains to all of |
| 15:33:14 | 23 | the video -- what are labeled as the video exhibits in the |
| 15:33:18 | 24 | stipulation, that 1-1 and 1-2 in particular were found on one |
| 15:33:24 | 25 | or more computers in Mesa, Arizona. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 153 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 152 of 192
COURTNEY – CROSS                                      152

```
15:33:29   1        That the 1-1 and 1-2 and the other video exhibits
15:33:35   2   were found in the digital video format at places outside of the
15:33:39   3   State of Texas and seized in connection with other criminal
15:33:43   4   investigations.
15:33:43   5        That the visual -- and, again, it just repeats that
15:33:45   6   the visual depictions contained in the video exhibits were
15:33:48   7   found outside of the State of Texas as recently as 2010.  And
15:33:52   8   that each of the video exhibits is currently available on the
15:33:54   9   Internet, and all of them have been available on the Internet
15:33:58  10   since at least 2007.
15:33:59  11        I think that the statements in all of paragraph 15
15:34:03  12   and the stipulation by -- by itself would certainly supply us
15:34:09  13   more than enough evidence to show the interstate nexus element
15:34:13  14   of the fact that the visual depictions actually were
15:34:17  15   transporting in interstate and foreign commerce -- and/or
15:34:22  16   foreign commerce.
15:34:23  17        I would then also in particular as to 1-1 and 1-2, I
15:34:27  18   think Mr. Courtney's testimony substantially adds to that.  He
15:34:31  19   saw the videos in 1-1 and 1-2, as he identified through still
15:34:39  20   photographs, in the State of Florida on the defendant's
15:34:43  21   computer.  And he was shown that in about 2008.  And so I think
15:34:46  22   that by that alone, again, would -- would more than adequately
15:34:51  23   support the interstate nexus element as to the videos in
15:34:55  24   count 1.
15:34:56  25        In addition, the testimony of Kerry Jenkins was that
```

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 154 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 153 of 192
COURTNEY - CROSS                                              153

15:35:00  1    the defendant -- she and the defendant moved quite a bit.  That

15:35:05  2    after they lived in Austin, after the time that the video

15:35:09  3    exhibits were produced -- and, again, that includes 1-1 and

15:35:13  4    1-2 -- that the defendant moved to Ohio and he subsequently

15:35:19  5    moved back to Texas, to Florida, to California.  I don't have

15:35:23  6    them in the exact order she testified to.  But that he also

15:35:26  7    took all of his computer equipment with him, and that would

15:35:31  8    include the -- the computers that he had when they were

15:35:39  9    married.

15:35:40  10           And she testified that he uploaded and stored videos

15:35:43  11   on his computer that he took.  He was an avid videographer and

15:35:50  12   that she has seen him upload and store videos on the computer.

15:35:53  13   I think it's a fair inference that the video exhibits -- and,

15:35:57  14   again, I'm using them collectively -- were stored on computers

15:36:01  15   owned and maintained by him and were so transported with him in

15:36:06  16   interstate commerce during each of his moves.

15:36:08  17           So I think that additional evidence beyond what is

15:36:11  18   already in paragraph 15 of the stipulation would more than

15:36:14  19   adequately satisfy the interstate nexus element as to count 1.

15:36:19  20           And as to Counts 2 through 10, again, paragraph 15.

15:36:25  21   I can go individually, but I think it really applies to all of

15:36:29  22   them.  I think paragraph 15 is fairly -- does encompass all of

15:36:33  23   the video exhibits that were admitted as to each of Counts 2

15:36:36  24   through 10 and that they were found in other states either in

15:36:41  25   count -- in the case of Count 2, Government Exhibit 2 was found

Case 1:10-cr-00297-LY Document 219-1 Filed 11/05/16 Page 155 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 154 of 192
COURTNEY - CROSS                                                    154

| | | |
|---|---|---|
| 15:36:51 | 1 | on a computer in Westminster, Maryland.  Government Exhibit 3 |
| 15:36:55 | 2 | was found on computers in Westminster, Maryland.  Government |
| 15:36:59 | 3 | Exhibit 4-1 -- and I have 5 here, but that's probably 5-1 and |
| 15:37:05 | 4 | 5-2 -- were found on computers in Westminster, Maryland. |
| 15:37:10 | 5 | Government Exhibit 6 and 8 were found on computers in |
| 15:37:15 | 6 | Mesa, Arizona.  Government's Exhibits 7, 9-1, 9-2, and 10 were |
| 15:37:19 | 7 | found in computers in Westminster, Maryland. |
| 15:37:22 | 8 | It's established earlier in the stipulation that |
| 15:37:26 | 9 | the -- all of those videos were produced in Texas, in the |
| 15:37:30 | 10 | Western District of Texas.  Government's Exhibits 1-1 and 1-2 |
| 15:37:34 | 11 | were produce at the Star Ranch.  Government Exhibit 2 was |
| 15:37:37 | 12 | produced at the Star Ranch in the Western District of Texas. |
| 15:37:40 | 13 | The rest of them were produced at the defendant's residence on |
| 15:37:44 | 14 | Hazelhurst Drive in the Western District of Texas. |
| 15:37:47 | 15 | So the fact that they have been found in other states |
| 15:37:50 | 16 | is sufficient to show that the visual depictions had actually |
| 15:37:53 | 17 | been transported in interstate and foreign commerce. |
| 15:37:56 | 18 | And, in addition, there is stipulation that each of |
| 15:37:59 | 19 | the video exhibits is available on the Internet.  And under the |
| 15:38:02 | 20 | case of the *United States v. Runyan* -- that's 290 F.3d 223, a |
| 15:38:15 | 21 | Fifth Circuit case from 2002 -- |
| 15:38:16 | 22 | THE COURT:  290 F.3d.  What's your page citation? |
| 15:38:20 | 23 | MR. DEVLIN:  223. |
| 15:38:21 | 24 | THE COURT:  And that's *Runyan*? |
| 15:38:23 | 25 | MR. DEVLIN:  R-u-n-y-a-n. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 156 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 155 of 193
COURTNEY – CROSS                                      155

| | | |
|---|---|---|
| 15:38:25 | 1 | THE COURT:  All right.  Go ahead. |
| 15:38:26 | 2 | MR. DEVLIN:  Transmission on the Internet was found |
| 15:38:28 | 3 | by the Fifth Circuit in the context of sexual exploitation |
| 15:38:35 | 4 | offenses to be sufficient to show interstate nexus.  And that |
| 15:38:41 | 5 | is at -- the point cite is page 239.  States:  "As *Runyan* |
| 15:38:56 | 6 | correctly notes, the Circuit has not yet decided whether an |
| 15:38:58 | 7 | Internet transmission in and of itself constitutes interstate |
| 15:39:01 | 8 | transportation sufficient to satisfy the interstate commerce |
| 15:39:04 | 9 | element of Section 2251," which is at least the statute under |
| 15:39:08 | 10 | which we're charged here. |
| 15:39:10 | 11 | "In the instant case we squarely face this question. |
| 15:39:16 | 12 | We join the First Circuit and holding that 'transmission of |
| 15:39:19 | 13 | photographs by means of the Internet is tantamount to moving |
| 15:39:22 | 14 | photographs across state lines and, thus, constitutes |
| 15:39:24 | 15 | transportation and interstate commerce' for the purpose of |
| 15:39:26 | 16 | 18 U.S.C. Section 2251." |
| 15:39:28 | 17 | I believe that that -- that case provides sufficient |
| 15:39:32 | 18 | support that just having these videos exhibits on the Internet |
| 15:39:37 | 19 | is sufficient to show interstate and foreign commerce, since |
| 15:39:41 | 20 | the Internet is -- is a means of interstate and foreign |
| 15:39:44 | 21 | commerce. |
| 15:39:45 | 22 | And, as Mr. Courtney testified, too, he said he has |
| 15:39:49 | 23 | seen at least Government's Exhibits 1-1 and 1-2 over the |
| 15:39:56 | 24 | network that he used, called eMule, which he described as |
| 15:40:00 | 25 | involving the connection of thousands or millions of computers |

Case 1:10-cr-00297-LY  Document 219-1  Filed 12/05/16  Page 157 of 193
Case 1:10-cr-00297-LY  Document 91-1  Filed 03/09/11  Page 156 of 192
COURTNEY – CROSS                                          156

15:40:06  1  and that it was a worldwide network.

15:40:08  2          So I think, again, under the circumstances, all of

15:40:11  3  the evidence is sufficient to show that all of the video

15:40:15  4  exhibits that are charged in Counts 1 through 10 have a

15:40:21  5  sufficient interstate nexus proven sufficient to not only get

15:40:25  6  by a motion for judgment of acquittal, but also to convict the

15:40:29  7  defendant.  And we believe that the Court should deny the

15:40:33  8  motion -- the Rule 29 Motion.

15:40:35  9          THE COURT:  Mr. Orr, your motion.  You get the last

15:40:38  10  word.

15:40:39  11          MR. ORR:  Well, we believe that finding videos

15:40:42  12  somewhere else on the Internet is not enough to show that they

15:40:46  13  were transported.

15:40:47  14          And, secondly, Your Honor, even if they were

15:40:50  15  transported by someone -- some unknown persons, the way the

15:40:56  16  statute reads, it says, "have been transported."  So even if

15:41:00  17  Mr. Diehl made these videos at a certain point in time and

15:41:04  18  somebody else transported it later, that would be an

15:41:07  19  unconstitutional application to Mr. Diehl of someone else

15:41:10  20  undertaking transportation of the videos.  And I think the

15:41:13  21  evidence is not adequate to show that he in fact transported

15:41:17  22  anything.

15:41:18  23          If the literal reading of the statute -- and I think

15:41:21  24  what Mr. Devlin argues for is to decrease or to do away with

15:41:25  25  the requirement that Mr. Diehl had done something knowingly and

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 158 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 15 of 19
COURTNEY - CROSS                                                    157

15:41:33  1   intelligently -- intentionally, I mean.

15:41:33  2          THE COURT:  What's your response to *Runyan*?

15:41:35  3          MR. ORR:  Well, I think *Runyan* is wrong, Your Honor.

15:41:39  4   I think that, just the mere fact that something is found on the

15:41:43  5   Internet somewhere else is not adequate to convict someone of

15:41:50  6   "have been transported."

15:41:54  7          THE COURT:  I understand your argument, but it's not

15:41:58  8   up to me to tell the Fifth Circuit that they were wrong.  It's

15:42:01  9   up to the Fifth Circuit to reconsider or the Supreme Court of

15:42:04 10   the United States to tell the Fifth Circuit that they were

15:42:07 11   wrong.

15:42:07 12          MR. ORR:  Well, Your Honor, I'll get up to the

15:42:09 13   Fifth Circuit, and I will tell them that they were wrong.

15:42:12 14          THE COURT:  All right.  Having heard the argument, I

15:42:15 15   do find that this is an area of the law that in the past has

15:42:21 16   not been litigated widely.  It's becoming more and more

15:42:27 17   litigated, but I find based on *Runyan* and based on -- primarily

15:42:33 18   on *Runyan*, but also based on the testimony of Mr. Courtney, who

15:42:38 19   I find credible as to that part at least in his testimony, and

15:42:43 20   Ms. Jenkins, who I find credible, that the Government has

15:42:50 21   satisfied its burden of going beyond a motion for acquittal,

15:42:57 22   because I cannot find that there is no reasonable trier of fact

15:43:01 23   that could not contribute -- could not convict under the facts

15:43:06 24   that have been presented in the Government's case in chief.  So

15:43:09 25   the defendant's Rule 29 motion is overruled.

Case 1:10-cr-00297-LY  Document 219-1  Filed 12/05/16  Page 159 of 193
Case 1:10-cr-00297-LY  Document 91  Filed 03/09/11  Page 159 of 193
N.A.D. - DIRECT                                              158

| | | |
|---|---|---|
| 15:43:13 | 1 | Mr. Orr, do you have evidence you wish to present? |
| 15:43:17 | 2 | MR. ORR:  Yes, Your Honor.  We'd like to call A.D. |
| 15:43:22 | 3 | (Witness sworn) |
| 15:43:22 | 4 | THE COURT:  All right.  Let me ask that -- go ahead |
| 15:44:07 | 5 | and be seated.  An initial question, Mr. Orr, before you |
| 15:44:11 | 6 | question. |
| 15:44:12 | 7 | Mr. D., how old are you? |
| 15:44:14 | 8 | THE WITNESS:  Fourteen, sir. |
| 15:44:15 | 9 | THE COURT:  And do you know you have just been given |
| 15:44:18 | 10 | an oath by the lady here, Ms. Jones? |
| 15:44:21 | 11 | THE WITNESS:  Yes, sir. |
| 15:44:22 | 12 | THE COURT:  And you know that you need to tell the |
| 15:44:23 | 13 | truth and you know what the truth is; is that correct? |
| 15:44:26 | 14 | THE WITNESS:  Yes, sir. |
| 15:44:27 | 15 | THE COURT:  All right.  You may proceed, Mr. Orr. |
| 15:44:29 | 16 | MR. ORR:  Thank you, Your Honor. |
| 15:44:29 | 17 | **N.A.D.,** |
| 15:44:29 | 18 | having been first duly sworn, testified as follows: |
| 15:44:29 | 19 | DIRECT **EXAMINATION** |
| 15:44:29 | 20 | **BY MR. ORR:** |
| 15:44:29 | 21 | Q.  Mr. D., I am Steve Orr.  I represent your father.  You |
| 15:44:35 | 22 | understand that, I think? |
| 15:44:36 | 23 | A.  Yes, sir. |
| 15:44:36 | 24 | Q.  All right, sir.  And I'll try to keep this as simple as I |
| 15:44:40 | 25 | can for you.  All right.  And you have lived with your father |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 160 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 159 of 192
N.A.D. – DIRECT                                                     159

15:44:47   1    for how many years?  A good long while, correct, sir?

15:44:51   2    A.   Yes, sir.

15:44:51   3    Q.   And up until recently, you have gone to live with your

15:44:54   4    mom?

15:44:54   5    A.   Yes, sir.

15:44:54   6    Q.   All right.  And when you first went to live with your

15:44:57   7    father, did you travel about and move from state to state?

15:45:00   8    A.   Yes, sir.

15:45:00   9    Q.   Okay.  And do remember what states that you -- that you

15:45:04   10   moved from and to?  Could you tell the Judge that?

15:45:07   11   A.   For the most part, yes.

15:45:09   12   Q.   Would you please tell him.

15:45:11   13   A.   Okay.  The furthest back I can remember would be Ohio.

15:45:16   14   And from there I believe we moved to Texas.  And after that we

15:45:22   15   moved to Florida, I believe.  And then we moved to Dallas and

15:45:28   16   then again to Florida.  And we moved several times within each

15:45:32   17   of these.  At least twice.

15:45:33   18   Q.   Okay.

15:45:33   19   A.   And then we moved to California and then back to Florida.

15:45:37   20   Q.   Okay.  And during the -- was all that moving a little

15:45:42   21   stressful for you?

15:45:43   22   A.   Yes, sir.

15:45:43   23   Q.   Okay.  Did your dad keep you in schools?

15:45:46   24   A.   Yes, sir.

15:45:46   25   Q.   Okay.  Did you make good grades?

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 161 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 160 of 192
N.A.D. – DIRECT                                      160

```
15:45:48   1   A.   For the most part.

15:45:50   2   Q.   Well, nobody's perfect.  And did you -- were you -- how

15:45:55   3   long had you lived in Florida?

15:45:57   4   A.   Total?

15:45:58   5   Q.   Yes, sir.

15:45:59   6   A.   Around three years.

15:46:01   7   Q.   Oak.  And this last time you were there, how long did you

15:46:04   8   live there?  Is that what you're talking about?

15:46:07   9   A.   No.  The last time?

15:46:08  10   Q.   Uh-huh.

15:46:09  11   A.   It was a total of like seven months in Jacksonville, I

15:46:15  12   believe.  Jacksonville, Florida.

15:46:18  13   Q.   Okay.  And while you were in Florida, you rose to the

15:46:21  14   ranks of being one of the top tennis players over there?

15:46:24  15   A.   Top fifties.

15:46:25  16   Q.   Top how many?

15:46:26  17   A.   Fifties.

15:46:27  18   Q.   Okay.  And you're on the tennis team in your school now,

15:46:31  19   correct?

15:46:31  20   A.   Yes, sir.

15:46:32  21   Q.   And you're doing quite well in tennis?

15:46:34  22   A.   Yes, sir.

15:46:35  23   Q.   All right, sir.  Now, when you -- well, let me ask you

15:46:41  24   this:  Did you -- did your dad take good care of you while you

15:46:45  25   were moving from place to place and while you were living with
```

Case 1:10-cr-00297-LY   Document 219-1   Filed 12/05/16   Page 162 of 193
Case 1:10-cr-00297-LY   Document 91-1   Filed 03/09/11   Page 161 of 192
N.A.D. - DIRECT                                                        161

| | | |
|---|---|---|
| 15:46:48 | 1 | him?  I mean, you got fed and taken to school and that sort of |
| 15:46:54 | 2 | thing? |
| 15:46:54 | 3 | A.   Yes. |
| 15:46:55 | 4 | Q.   And so far as your -- did you know -- when you lived in |
| 15:47:02 | 5 | Florida, did you know a guy named Kenneth Courtney? |
| 15:47:05 | 6 | A.   Yes, sir. |
| 15:47:06 | 7 | Q.   Okay.  Did your dad -- did there ever come a time when |
| 15:47:08 | 8 | your dad warned you about Kenneth Courtney? |
| 15:47:12 | 9 | A.   No. |
| 15:47:12 | 10 | Q.   Do you recall a time when your dad said, We can't hang out |
| 15:47:16 | 11 | with Kenneth Courtney anymore? |
| 15:47:19 | 12 | A.   No, sir. |
| 15:47:19 | 13 | Q.   Okay.  Do you remember a time when you were at a meeting |
| 15:47:22 | 14 | or a group with Mr. -- with David Diehl's sister and his |
| 15:47:28 | 15 | girlfriend in Florida, and Mr. Courtney and Mr. Diehl, your |
| 15:47:32 | 16 | father, had a fight? |
| 15:47:34 | 17 | A.   I don't remember that, sir.  I'm sorry. |
| 15:47:39 | 18 | Q.   Okay.  Do you ever remember them going over to your house; |
| 15:47:42 | 19 | that is, David Diehl, Mr. Courtney, and your aunt and |
| 15:47:50 | 20 | Mr. Diehl's girlfriend? |
| 15:47:53 | 21 | A.   Coming over to our house? |
| 15:47:55 | 22 | Q.   Coming to your house. |
| 15:47:56 | 23 | A.   All at once?  I don't remember.  I don't remember when |
| 15:48:04 | 24 | they all came. |
| 15:48:04 | 25 | Q.   Okay.  How many times do you think you have seen |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 163 of 193
Case 1:10-cr-00297-LY Document 91-1 Filed 03/09/15 Page 162 of 193
N.A.D. - DIRECT                                          162

| | | |
|---|---|---|
| 15:48:07 | 1 | Mr. Courtney? |
| 15:48:08 | 2 | A.    Maybe 15 total. |
| 15:48:14 | 3 | Q.    Okay. |
| 15:48:15 | 4 | A.    No.  Probably more than that.  Just about 20. |
| 15:48:18 | 5 | Q.    Do you ever remember him coming to your house? |
| 15:48:21 | 6 | A.    Once maybe. |
| 15:48:24 | 7 | Q.    Do you remember when that was and who else was there? |
| 15:48:27 | 8 | A.    No. |
| 15:48:28 | 9 | Q.    Do you remember what time of day it was? |
| 15:48:31 | 10 | A.    It was during the daytime, and then it went into night. |
| 15:48:35 | 11 | Q.    Yeah.  Daytime or nighttime?  Was it dark or daylight? |
| 15:48:38 | 12 | A.    It was light, and then it was, like, during the evening. |
| 15:48:41 | 13 | So it was a bit of both.  Like he came over in the afternoon |
| 15:48:45 | 14 | and stayed for a little while. |
| 15:48:47 | 15 | Q.    Okay.  And you don't remember who else was there, if |
| 15:48:49 | 16 | anyone? |
| 15:48:50 | 17 | A.    No. |
| 15:48:50 | 18 | Q.    Do you remember what the purpose of that visit was with |
| 15:48:53 | 19 | Mr. Courtney? |
| 15:48:54 | 20 | A.    No.  I don't remember.  I didn't even know.  I was |
| 15:48:57 | 21 | probably reading my book at the time. |
| 15:48:59 | 22 | Q.    I'm sorry?  I couldn't quite hear that. |
| 15:49:01 | 23 | A.    I didn't know.  At the time I was probably reading a book, |
| 15:49:04 | 24 | so I wasn't sure as to what they were doing. |
| 15:49:07 | 25 | Q.    Okay. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 164 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 163 of 192

163

| | | |
|---|---|---|
| 15:49:12 | 1 | MR. ORR: May I have just a moment, Your Honor? |
| 15:49:14 | 2 | THE COURT: Yes. |
| 15:49:37 | 3 | MR. ORR: I pass the witness. |
| 15:49:38 | 4 | THE COURT: Mr. Devlin? |
| 15:49:39 | 5 | MR. DEVLIN: I have no questions, You Honor. |
| 15:49:41 | 6 | THE COURT: You may step down. |
| 15:50:01 | 7 | Mr. Orr, anything further? |
| 15:50:05 | 8 | MR. ORR: One -- less than one minute. |
| 15:50:08 | 9 | THE COURT: Take the time you need. |
| 15:50:52 | 10 | MR. ORR: No further witnesses, Your Honor. We rest. |
| 15:50:58 | 11 | THE COURT: Mr. Devlin, does the Government have any |
| 15:51:00 | 12 | rebuttal? |
| 15:51:01 | 13 | MR. DEVLIN: No rebuttal, Your Honor. We close. |
| 15:51:05 | 14 | THE COURT: Mr. Orr, does the defendant close? |
| 15:51:07 | 15 | MR. ORR: We close, Your Honor. |
| 15:51:11 | 16 | THE COURT: All right. How much time would you like |
| 15:51:14 | 17 | for closing argument summations? |
| 15:51:19 | 18 | MR. DEVLIN: Ten minutes, Judge. |
| 15:51:20 | 19 | MR. ORR: That's fine, sure. |
| 15:51:21 | 20 | THE COURT: You want a little time to gather your |
| 15:51:23 | 21 | thoughts before I entertain the closing summation, or are you |
| 15:51:27 | 22 | ready to go straight into it? |
| 15:51:30 | 23 | MR. DEVLIN: Just a few -- five minutes would be |
| 15:51:33 | 24 | sufficient for me, Judge. |
| 15:51:35 | 25 | THE COURT: Well, we'll be in recess until |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 165 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 164 of 193

164

| | | |
|---|---|---|
| 15:51:37 | 1 | 4:00 o'clock. Does that give you enough time? |
| 15:51:39 | 2 | MR. DEVLIN: That's perfect, Judge. |
| 15:51:40 | 3 | MR. ORR: Oh, yeah. That's great. Sure. |
| 15:51:41 | 4 | THE COURT: And I'll hear closing summations at |
| 15:51:44 | 5 | 4 o'clock. |
| 15:51:44 | 6 | MR. ORR: As always, Your Honor, you made a perfect |
| 15:51:48 | 7 | ruling. |
| 15:51:48 | 8 | THE COURT: I know. It's uncanny, isn't it? |
| 15:51:50 | 9 | MR. ORR: That may not be what I tell the |
| 15:51:53 | 10 | Fifth Circuit. |
| 15:51:53 | 11 | THE COURT: I think you'll say something else to them |
| 15:51:55 | 12 | the next time you have an opportunity. I don't know when that |
| 15:51:58 | 13 | will be. Court's in recess. |
| 15:52:01 | 14 | MR. DEVLIN: Judge, before me -- I'm sorry. Before |
| 15:52:04 | 15 | you leave, may -- we would like to excuse Mr. Courtney so he |
| 15:52:07 | 16 | can return to where he's being -- |
| 15:52:09 | 17 | MR. ORR: Fine with us, Your Honor. |
| 15:52:10 | 18 | MR. DEVLIN: Thank you, Your Honor |
| 15:52:10 | 19 | THE COURT: And you had previously asked about |
| 15:52:13 | 20 | Agent Mullen, I believe, and the defendant wanted him retained |
| 15:52:17 | 21 | also in case the defendant wanted to call him. |
| 15:52:19 | 22 | MR. ORR: Yeah. We don't have any problems with |
| 15:52:21 | 23 | that. We decided not put him back. |
| 15:52:23 | 24 | THE COURT: Since both sides have rested and closed |
| 15:52:25 | 25 | without objection from either party, either side can release |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 166 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 165 of 192

165

| | | |
|---|---|---|
| 15:52:28 | 1 | any witnesses that they may have here.  Mr. Orr, you're in |
| 15:52:31 | 2 | agreement with that? |
| 15:52:32 | 3 | MR. ORR:  Yes, Your Honor. |
| 15:52:32 | 4 | THE COURT:  Mr. Devlin? |
| 15:52:33 | 5 | MR. DEVLIN:  Yes, Your Honor.  Thank you. |
| 15:52:35 | 6 | THE COURT:  All right. |
| 15:52:37 | 7 | (Recess) |
| 15:52:37 | 8 | (Open Court, Defendant present) |
| 16:01:52 | 9 | THE COURT:  One brief matter.  The Government and the |
| 16:02:04 | 10 | defendant previously filed under seal on July 31, 2011 the |
| 16:02:09 | 11 | agreed stipulation of facts and evidence, and I allowed it to |
| 16:02:13 | 12 | be filed under seal at that time.  I have now admitted that |
| 16:02:18 | 13 | stipulation of facts and evidence into the record as of this |
| 16:02:24 | 14 | morning in Open Court.  I did not seal it.  I just want to make |
| 16:02:30 | 15 | sure the parties understand that that constitutes evidence at |
| 16:02:35 | 16 | this point and is in the record and is not sealed because we |
| 16:02:40 | 17 | have had a request for a copy of it that I intend to honor, |
| 16:02:46 | 18 | unless either one of you gives me some very good reasons why it |
| 16:02:52 | 19 | is not public testimony at this point. |
| 16:02:55 | 20 | MR. DEVLIN:  No, sir.  We admitted it today with the |
| 16:02:57 | 21 | understanding that it would be unsealed as evidence. |
| 16:02:59 | 22 | THE COURT:  Mr. Orr? |
| 16:03:01 | 23 | MR. ORR:  Well, we would like to have it continue to |
| 16:03:04 | 24 | be sealed, Your Honor. |
| 16:03:05 | 25 | THE COURT:  Well, I'm not going to continue it |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 167 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 166 of 192

166

| | | |
|---|---|---|
| 16:03:08 | 1 | sealed.  Ms. Jones, the clerk's office, can provide copies of |
| 16:03:10 | 2 | the agreed stipulation of facts in evidence because I do not |
| 16:03:16 | 3 | find that it contains anything that will compromise any |
| 16:03:21 | 4 | victims.  It is well-drafted, it is circumspect, and it is |
| 16:03:27 | 5 | public record. |
| 16:03:28 | 6 | So at this time, Mr. Devlin, I'll hear from the |
| 16:03:31 | 7 | Government for ten minutes.  You may reserve part of your time |
| 16:03:35 | 8 | if you desire for rebuttal, but you may proceed with summation. |
| 16:03:40 | 9 | **GOVERNMENT'S CLOSING ARGUMENT** |
| 16:03:40 | 10 | MR. DEVLIN:  Thank you, Your Honor.  And I will |
| 16:03:41 | 11 | reserve just a very short period of time for rebuttal. |
| 16:03:46 | 12 | Thank you, Your Honor.  May it please the Court, |
| 16:03:47 | 13 | Counsel, Your Honor.  In this case I am going to focus |
| 16:03:51 | 14 | primarily on the interstate nexus elements, since that is |
| 16:03:54 | 15 | really the only one in dispute here. |
| 16:03:56 | 16 | The first two elements of the offense -- offenses, I |
| 16:04:00 | 17 | should say -- and, again, I'm going to argue them together only |
| 16:04:02 | 18 | because they are all production of child pornography in |
| 16:04:04 | 19 | counts 1 through 10.  Essentially there are three elements to |
| 16:04:07 | 20 | each of those offenses. |
| 16:04:08 | 21 | First, that an actual minor; that is, a real person |
| 16:04:10 | 22 | who is less than 18 years old, was depicted.  The stipulation |
| 16:04:13 | 23 | clearly establishes that at the time that these video exhibits |
| 16:04:17 | 24 | were produced, all of the minors identified as victims; namely, |
| 16:04:22 | 25 | Jane Doe Number 1, Jane Doe Number 2, and Jane Doe Number 3 |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 168 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 16 of 19

167

16:04:26  1   were all under the age of 18.

16:04:28  2          Secondly, and the -- I think this is a good reminder

16:04:31  3   of what this offense is.  It's really not the actual

16:04:34  4   production, but simply the use, persuasion, inducement,

16:04:38  5   enticement, or coercion of a minor to take part in sexually

16:04:41  6   explicit conduct for the purpose of producing a visual

16:04:44  7   depiction of the conduct.  That's clearly been established as

16:04:48  8   well by the stipulation.

16:04:49  9          It's been established that the defendant is the adult

16:04:52 10   male who is seen and/or heard in all of the videos; that it is

16:04:57 11   his arm and his body parts that are seen in those videos; that

16:05:01 12   he was the only male in -- depicted in the videos; that he was

16:05:06 13   running the videos; and that he is the one who did use,

16:05:09 14   persuade, induce, and entice the minors to take part in the

16:05:14 15   deplorable sexually explicit conduct that is depicted in those

16:05:17 16   videos.

16:05:18 17          So I think the first and second elements are more

16:05:21 18   than established beyond a reasonable doubt by the agreed

16:05:24 19   stipulation.

16:05:25 20          My focus will be on the third element, which is that

16:05:27 21   the visual depiction was mailed or actually transported in

16:05:32 22   interstate or foreign commerce.  There's not a *mens rea* aspect

16:05:36 23   to that because that is a federal jurisdictional element.  It

16:05:38 24   still needs to be proven beyond a reasonable doubt.  But as the

16:05:40 25   Court is well aware, the Court can take into account both

Case 1:10-cr-00297-LY   Document 91-1   Filed 03/09/11   Page 169 of 193
Case 1:10-cr-00297-LY   Document 219-1   Filed 12/05/16   Page 169 of 193

168

16:05:44  1  direct and circumstantial evidence.

16:05:46  2        And in this case the Government is admittedly relying

16:05:48  3  a lot on circumstantial evidence.  We did not have a seizure of

16:05:52  4  child pornography from the defendant, which is a very unusual

16:05:55  5  circumstance in these types of cases, so we have had to

16:05:58  6  establish the -- that element by other means.

16:06:01  7        But, first, the stipulation itself, as I argued a few

16:06:06  8  minutes ago, is more than sufficient to show -- I'm going to,

16:06:10  9  again, refer to them as the video exhibits as they are

16:06:13  10  expressed in the stipulations, because they are -- it's really

16:06:17  11  all or nothing to a great extent.

16:06:19  12        All of those visual depictions were found outside of

16:06:22  13  Texas in the course of other investigations.  That's

16:06:25  14  established by the stipulation.  It was also agreed in the

16:06:28  15  stipulation that all of those videos are on the Internet and

16:06:31  16  have been for some time.  I think Mr. Courtney's testimony

16:06:35  17  reinforces that fact.  He said that he found at least the video

16:06:39  18  charge in Count 1 on the Internet prior to seeing it at the

16:06:43  19  defendant's house in Florida in 2008.

16:06:46  20        In addition, there is a lot of other evidence, Judge,

16:06:49  21  that is probably more subtle that does show that the

16:06:51  22  defendant -- excuse me, that the these videos were -- were

16:06:55  23  transported in interstate and foreign commerce.

16:06:58  24        First of all, as Kerry Jenkins testified and even as

16:07:02  25  young A.D. testified, they moved the -- the defendant moved

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 170 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 169 of 192

169

16:07:07  1   extensively over a period of time, starting at least as early

16:07:10  2   as 1999 and continuing until almost the time that he was

16:07:14  3   arrested, moved extensively around the country.  He lived in

16:07:18  4   Texas, lived in Florida, lived in California, lived in Georgia,

16:07:22  5   lived in Ohio.  And each of those times he transported all of

16:07:25  6   his computer and video equipment.

16:07:27  7       Secondly, the defendant designed the computer system

16:07:30  8   himself, as testified to by Kerry Jenkins.

16:07:33  9       Third, she said that he uploaded and stored videos on

16:07:36  10  his computer.  So he took the time, even ten years ago or so,

16:07:40  11  to upload videos that were produced onto computer.  He also

16:07:48  12  used video editing software.  And as you saw in one of the

16:07:51  13  video exhibits -- I believe it might have been 5-1 -- there was

16:07:55  14  some editing and some -- there's a lot of music on some of

16:08:00  15  those videos.  Whether he actually did that or not, we cannot

16:08:03  16  directly establish.  However, the circumstantial evidence

16:08:08  17  certainly shows that he is probably responsible for that.

16:08:10  18      And one of the other things is that he was pretty

16:08:13  19  much an avid videographer.  Probably went beyond what most

16:08:17  20  people did.  He not only videotaped a lot of innocuous

16:08:20  21  activities involving Jane Doe Number 2, which is depicted in

16:08:24  22  Government Exhibit 11, but he also had an extensive array, it

16:08:29  23  seems, of spy cameras.  Kerry Jenkins testified about the

16:08:32  24  lipstick camera and what she called the button camera that she

16:08:36  25  saw that the defendant had.  Now, reportedly he was going to

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 171 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 170 of 192

170

16:08:39  1   use that to film himself motorcycling, but clearly that could

16:08:45  2   have -- could have been used for other purposes.

16:08:47  3          Kenneth Courtney also testified to the defendant's

16:08:49  4   use of hidden cameras.  He saw one in an Ajax container and

16:08:53  5   another one in a spray bottle -- very small, very

16:08:56  6   inconspicuous.

16:08:58  7          So the defendant has -- is quite an expert

16:09:01  8   videographer and is obviously one who wants to do a lot of

16:09:06  9   videotaping and presumably would want to use that for both

16:09:09 10   legitimate and illegitimate purposes.  I think the

16:09:13 11   circumstantial evidence shows that.

16:09:16 12          Regarding Mr. Courtney, he's longtime friends with

16:09:19 13   the defendant.  He's not a jailhouse snitch.  He's not coming

16:09:22 14   here because he had a recent encounter with the defendant.  He

16:09:25 15   was friends with him for a long time.  Knew him both socially

16:09:28 16   and professionally.  He's serving a sentence for child

16:09:30 17   pornography himself.  In this case, birds of a feather flock

16:09:34 18   together.

16:09:34 19          At some point they learned of their mutual interest

16:09:37 20   in child pornography.  I wish I could -- Mr. Courtney could

16:09:39 21   have explained that better, because I can't frankly imagine how

16:09:42 22   such a conversation would even come up.  But apparently it did

16:09:45 23   at some point.

16:09:46 24          Mr. Courtney saw the tent video, which is really

16:09:49 25   Government's Exhibits 1-1 and 1-2, frankly, together off of the

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 172 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 171 of 192

171

| | | |
|---|---|---|
| 16:09:54 | 1 | defendant's computer in Florida.  That's the only video that we |
| 16:09:57 | 2 | have pretty direct testimony about in terms of being |
| 16:10:00 | 3 | transported interstate, because now we have that video being |
| 16:10:02 | 4 | produced in Texas and now those videos are in the State of |
| 16:10:06 | 5 | Florida as late as 2008.  I think there's a good inference that |
| 16:10:11 | 6 | the child pornography collection that the defendant had was |
| 16:10:15 | 7 | also transported with him. |
| 16:10:16 | 8 | And on that point, Judge, Mr. Courtney testified that |
| 16:10:18 | 9 | the defendant had an extensive child pornography collection. |
| 16:10:22 | 10 | He traded with others.  In fact, his trading system was such |
| 16:10:25 | 11 | that he would use -- he would put out very small snippets of |
| 16:10:30 | 12 | videos that he had and then, apparently, in trying to get |
| 16:10:34 | 13 | others to make more child pornography for him, whatever that |
| 16:10:37 | 14 | meant, either make it themselves or get some more to send to |
| 16:10:40 | 15 | him, he would then send the longer series of the videos. |
| 16:10:44 | 16 | I think it's pretty clear that child pornography -- |
| 16:10:48 | 17 | this child pornography collection that Mr. Courtney himself had |
| 16:10:51 | 18 | and the defendant had were valuable commodities.  This is |
| 16:10:54 | 19 | contraband.  It's kind of like drugs.  Mr. Diehl was using it |
| 16:10:59 | 20 | as a thing of value because he was sending it out to folks who |
| 16:11:02 | 21 | wanted to have it traded, who wanted to have some more, and who |
| 16:11:05 | 22 | wanted to have the entire series and not just a little |
| 16:11:10 | 23 | snippet. |
| 16:11:11 | 24 | So I think the circumstantial evidence is such that |
| 16:11:12 | 25 | it is beyond what is in the stipulation, that he would maintain |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 173 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 172 of 192

172

| 16:11:14 | 1 | all of the video exhibits that he had produced on his computer |
| 16:11:18 | 2 | since those would be especially valuable.  Those were personal |
| 16:11:21 | 3 | experiences that he had -- and I hate to call them experiences, |
| 16:11:25 | 4 | but that is the best term I could come up with at the moment -- |
| 16:11:28 | 5 | and not just somebody else's experiences that he would then be |
| 16:11:31 | 6 | able to trade.  These were his own.  These would be especially |
| 16:11:35 | 7 | valuable.  This was his own doing.  This is something that he |
| 16:11:38 | 8 | produced, that he made, that he knows the source of, and that |
| 16:11:41 | 9 | he would want to have -- that he would want to experience |
| 16:11:45 | 10 | himself repeatedly and that he would want to send out to |
| 16:11:48 | 11 | others. |
| 16:11:48 | 12 | And as it was testified to by Agent Mullen, the tent |
| 16:11:54 | 13 | series videos, which is the videos in count 1 and the c-baby |
| 16:11:58 | 14 | series videos, which would have been videos in counts 2 |
| 16:12:00 | 15 | through 10 were known and popular child pornography series. |
| 16:12:05 | 16 | In fact, Agent Mullen is still getting calls about them turning |
| 16:12:08 | 17 | up in other places. |
| 16:12:10 | 18 | So obviously the defendant knew that these were |
| 16:12:14 | 19 | valuable.  So he wanted to maintain that.  There would be no |
| 16:12:17 | 20 | reason that he would destroy those.  No reason that he would |
| 16:12:19 | 21 | not transport those with him when he went into other places. |
| 16:12:23 | 22 | In addition, the defendant used the Internet relay |
| 16:12:25 | 23 | chat channels that Mr. Courtney testified was a method used by |
| 16:12:29 | 24 | a very, very small percentage of people and a small percentage |
| 16:12:33 | 25 | of users. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 174 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 173 of 192

173

| | | |
|---|---|---|
| 16:12:34 | 1 | Again, Mr. Diehl's knowledge of -- he's a |
| 16:12:37 | 2 | knowledgeable computer expert. He has a homemade computer. It |
| 16:12:42 | 3 | was something he was very sensitive to that this -- his child |
| 16:12:45 | 4 | pornography collection was something to be protected, something |
| 16:12:48 | 5 | to be safeguarded, something to be kept from law enforcement, |
| 16:12:52 | 6 | frankly. The defendant made sure that he had the child |
| 16:12:55 | 7 | pornography well encrypted, that it was safeguarded, and that |
| 16:12:59 | 8 | he took special care with it. |
| 16:13:02 | 9 | On top of that, Mr. Courtney testified that he found |
| 16:13:06 | 10 | at least the count 1 videos and possibly more on the eMule |
| 16:13:09 | 11 | network that he described -- that he described as a very |
| 16:13:14 | 12 | extensive worldwide network. As the stipulation states, not |
| 16:13:17 | 13 | only were all the video exhibits before you found outside of |
| 16:13:20 | 14 | the State of Texas in the course of other investigations. They |
| 16:13:24 | 15 | were also stipulated to be on the Internet. |
| 16:13:26 | 16 | And, finally, the defendant did -- apparently did |
| 16:13:29 | 17 | destroy some videos, at least according to him, as far as |
| 16:13:33 | 18 | Mr. Courtney testified, but only when he was being investigated |
| 16:13:36 | 19 | in another sexual molestation investigation. |
| 16:13:40 | 20 | Mr. Courtney was not able to describe how much of |
| 16:13:44 | 21 | that he had destroyed, but Mr. Courtney was able to describe |
| 16:13:47 | 22 | that there was no other occasion that he was aware of where the |
| 16:13:49 | 23 | defendant would destroy or did destroy any of this child |
| 16:13:52 | 24 | pornography collection. And, again, as I mentioned earlier, |
| 16:13:55 | 25 | this is valuable property to the defendant. There would be no |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 175 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 174 of 192

174

16:13:58  1  reason why he would ever destroy any of this unless it came to

16:14:01  2  a very serious circumstance, such as being investigated and

16:14:05  3  potentially being caught.

16:14:06  4          And, finally, one of the more subtle aspects of

16:14:09  5  Mr. Courtney's testimony was that, when the defendant was

16:14:13  6  showing the tent series video to Mr. Courtney, there was --

16:14:17  7  Mr. Courtney apparently had mentioned that he had seen it

16:14:19  8  before -- couldn't believe that the defendant had produced it.

16:14:22  9  There was nothing mentioned by the defendant that he was

16:14:24  10  surprised that Mr. Courtney had seen it, that he was shocked or

16:14:27  11  dismayed or that there was anything indicating that the

16:14:31  12  defendant did not know that it was already out there on the

16:14:33  13  Internet.  Very subtle.  Very circumstantial.  But I think it

16:14:38  14  is an important bit of evidence that, taken in combination with

16:14:43  15  all the other evidence, taken in combination especially with

16:14:46  16  the facts that have been stipulated to in the stipulation, I

16:14:49  17  think that that just simply adds to the great weight of the

16:14:53  18  evidence showing interstate nexus.

16:14:55  19          So based on the evidence in this case, based on the

16:14:57  20  stipulation, based on the testimony before you, we urge that

16:15:00  21  you find the defendant guilty of Counts 1 through 10 of the

16:15:03  22  second superseding indictment.

16:15:06  23          THE COURT:  Mr. Orr -- well, let me ask you a

16:15:08  24  question before Mr. Orr because he might want to address this.

16:15:14  25  Mr. Orr said in his argument on the Rule 29 motion that --

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 176 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 175 of 192

175

| | | |
|---|---|---|
| 16:15:20 | 1 | words to the effect that it would be unfair to convict this |
| 16:15:25 | 2 | defendant if there was no evidence that the defendant knew that |
| 16:15:29 | 3 | the visual depictions were going to be mailed or transported in |
| 16:15:34 | 4 | interstate or foreign commerce.  I believe I heard that your |
| 16:15:37 | 5 | argument was that knowledge and *mens rea* is not an element of |
| 16:15:41 | 6 | the offense; is that correct? |
| 16:15:43 | 7 | MR. DEVLIN:  As this is charged, yes, Your Honor. |
| 16:15:45 | 8 | It's not an element of this particular offense.  If we charge |
| 16:15:48 | 9 | him with transportation or distribution, I would concede that |
| 16:15:52 | 10 | it is. |
| 16:15:52 | 11 | THE COURT:  It's the Government's argument, then, if |
| 16:15:57 | 12 | there is child pornography and it moves in interstate commerce, |
| 16:16:05 | 13 | whether the defendant or a defendant as charged in this |
| 16:16:09 | 14 | indictment admitted to move in interstate commerce or not, that |
| 16:16:13 | 15 | is enough, the mere fact that it did?  Is that the |
| 16:16:15 | 16 | Government's -- |
| 16:16:15 | 17 | MR. DEVLIN:  That is correct, Your Honor.  That it |
| 16:16:17 | 18 | did obviously, subsequent to the production, which I think it |
| 16:16:20 | 19 | can't move before the production.  So yes. |
| 16:16:22 | 20 | THE COURT:  All right. |
| 16:16:23 | 21 | MR. DEVLIN:  Just like a firearm, Your Honor. |
| 16:16:24 | 22 | THE COURT:  All right.  Thank you.  Mr. Orr? |
| 16:16:29 | 23 | **DEFENDANT'S CLOSING ARGUMENT** |
| 16:16:29 | 24 | MR. ORR:  I think the way this particular stretch |
| 16:16:34 | 25 | would read, 2251, there is a requirement.  It's not merely a |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 177 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 76 of 92

176

16:16:38  1    jurisdictional requirement.  But it is a requirement that there

16:16:41  2    be knowledge.  It's not something you can graft on to it as you

16:16:46  3    can a firearm statute, but there has to be knowledge that the

16:16:49  4    person intended that it moved in interstate commerce.  That's

16:16:51  5    one of the first prongs in there.  And then the final line of

16:16:56  6    that is or if it has been moved, it has been transported.

16:17:01  7         And so one of the things I'm saying is that that

16:17:04  8    statute, if it does away with the scienter requirement, is

16:17:09  9    unconstitutional.  And, second, that the cases that deal with

16:17:17 10    the possibility that -- of convicting someone because they made

16:17:20 11    a home video that may be of pornographic nature involving

16:17:25 12    children and that later on it is moved in interstate commerce

16:17:28 13    without their permission or consent or knowledge, but they are

16:17:31 14    then guilty of a federal crime, is not the law -- should not be

16:17:35 15    the law under our constitution.

16:17:37 16         And as applied to the facts in this particular case,

16:17:41 17    the Government has heaped one circumstance after another into

16:17:46 18    the Courtroom here and tries to heap them on top of each other

16:17:49 19    to get to the point to say that, Well, it got moved in

16:17:54 20    interstate commerce; therefore, Mr. Diehl must have done it.

16:17:57 21         Now, if they think it's of no concern that Mr. Diehl

16:18:01 22    moved this stuff in interstate commerce, they certainly have

16:18:06 23    spent a fair amount of time trying to prove that he had

16:18:09 24    something to do with moving it.  So I think that they have

16:18:12 25    implicitly admitted that they need to show that Mr. Diehl in

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 178 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 178 of 193

177

| | | |
|---|---|---|
| 16:18:16 | 1 | fact knowingly transported any child pornography in interstate |
| 16:18:21 | 2 | commerce, which they have failed to do. |
| 16:18:23 | 3 | THE COURT: Well, let me ask you this: In looking at |
| 16:18:25 | 4 | Section 2251 ... |
| 16:18:26 | 5 | MR. ORR: Yes, sir. Let me get it up here. |
| 16:18:43 | 6 | THE COURT: Let me know when you have it. |
| 16:18:45 | 7 | MR. ORR: I've got it right here. |
| 16:18:47 | 8 | THE COURT: All right. Follow with me. |
| 16:18:50 | 9 | MR. ORR: Yes, sir. |
| 16:18:50 | 10 | THE COURT: I'm looking at only the interstate part. |
| 16:18:53 | 11 | MR. ORR: Yes, sir. |
| 16:18:54 | 12 | THE COURT: It appears to me three ways that it can |
| 16:18:56 | 13 | be proved by the Government. |
| 16:18:58 | 14 | MR. ORR: Yes, sir. |
| 16:18:58 | 15 | THE COURT: One, if such person knows or has reason |
| 16:19:01 | 16 | to know that such visual depiction will be transported or |
| 16:19:04 | 17 | transmitted using any means or facility of interstate or |
| 16:19:08 | 18 | foreign commerce or affecting interstate or foreign commerce -- |
| 16:19:13 | 19 | MR. ORR: Yes, sir. |
| 16:19:15 | 20 | THE COURT: -- or mailed. |
| 16:19:18 | 21 | Then, two, if that visual depiction was produced or |
| 16:19:23 | 22 | transmitted using materials that had been mailed, shipped, or |
| 16:19:26 | 23 | transported in or affecting interstate or foreign commerce by |
| 16:19:30 | 24 | any means, including computer, or if such visual depiction has |
| 16:19:37 | 25 | been -- has actually been transported or transmitted using any |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 179 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 173 of 192

178

16:19:41  1   means or facility of interstate or foreign commerce in or

16:19:45  2   affecting interstate or foreign commerce or mailed.

16:19:48  3           The third way of proving the jurisdictional base

16:19:52  4   appears to not have a scienter requirement in it.

16:19:58  5           MR. ORR:  That's my point.  Yes, sir.

16:20:00  6           THE COURT:  So your point is, it doesn't have the

16:20:01  7   requirement and that causes it to be constitutionally infirm?

16:20:06  8           MR. ORR:  I've got two points here, I guess.

16:20:08  9           THE COURT:  All right.

16:20:08  10          MR. ORR:  If that's the reading of the statute, that

16:20:10  11  section of that statute, then that's unconstitutional.  It does

16:20:16  12  not comply with our Anglo-Saxon jurisprudence.

16:20:19  13          But an alternative reading of the statute is that,

16:20:23  14  because the drafters of the statute talk about, if such person

16:20:24  15  knows or has reason to know that such visual depiction will be

16:20:28  16  transported, they have imposed a scienter requirement on the

16:20:31  17  interstate transportation.  And then it seems to me

16:20:35  18  illogical -- if I can argue the other side of the coin here, it

16:20:39  19  seems illogical to me that they would then all of a sudden do

16:20:45  20  away with the scienter requirement on the third way that we

16:20:48  21  could have interstate commerce.

16:20:50  22          I think what they intended there was to say, well,

16:20:53  23  if -- if the Government can prove that it was moved in

16:20:58  24  interstate commerce by the defendant, that he actually moved

16:21:01  25  it, then that shows that he intended to do it.  But they

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 180 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 179 of 192

179

16:21:04  1  haven't done that in this particular case.

16:21:06  2        I guess my third argument is that the evidence fails

16:21:09  3  to convict Mr. Diehl of either knowing it's going to be moved

16:21:14  4  in interstate commerce or intentionally moving in interstate

16:21:17  5  commerce.  And then if the Government is intending to rely on

16:21:21  6  the argument, well, it got moved in interstate commerce, but

16:21:25  7  that's unconstitutional.

16:21:30  8        Is that -- and so what they have here is, they

16:21:34  9  have -- they have gone to the trouble of bringing in

16:21:38 10  Mr. Diehl's ex-wife to prove that stuff got moved.  He went

16:21:42 11  around.  They went to Ohio.  The computers got moved.  They

16:21:48 12  talked about video cameras and such as that.  They talk -- they

16:21:54 13  talk about a lot of stuff that creates a suspicion.  They have

16:21:59 14  never, to me, based on the evidence that we have, heard today

16:22:01 15  in this courtroom and proved beyond a reasonable doubt that

16:22:03 16  Mr. Diehl moved anything in interstate commerce, that he had

16:22:10 17  any intention that it be moved in interstate commerce.  Their

16:22:14 18  big argument is that it was found --

16:22:18 19        THE COURT:  In interstate commerce.

16:22:19 20        MR. ORR:  -- it's found on computers across state

16:22:22 21  lines.  That's their argument.  And we would urge that it

16:22:26 22  being --

16:22:26 23        THE COURT:  How would it have gotten there?

16:22:30 24        MR. ORR:  Well, I don't know.  But in some cases the

16:22:33 25  Government may be able to prove -- they can prove through FTP

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 181 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 180 of 192

180

| | | |
|---|---|---|
| 16:22:37 | 1 | logs and through subpoena of records from the various Internet |
| 16:22:42 | 2 | service where they can prove through the computers that they |
| 16:22:45 | 3 | have apparently have seized, that they found these videos in |
| 16:22:48 | 4 | these computers in whatever -- whatever part of the country or |
| 16:22:52 | 5 | the world.  They can prove where it came from.  They could go |
| 16:22:54 | 6 | to the trouble to show some history by going through the -- who |
| 16:23:00 | 7 | knows how it got there? |
| 16:23:01 | 8 | And I think they have to do more than to say, well, |
| 16:23:04 | 9 | it's found over there in some other state.  Now, the Government |
| 16:23:07 | 10 | brings in Mr. Courtney to say that in Florida, Mr. Diehl showed |
| 16:23:11 | 11 | him one of these videos.  And, of course, he doesn't even |
| 16:23:15 | 12 | really mention that.  This whole story about the fight and |
| 16:23:19 | 13 | going over to Mr. Diehl's house, it's not even in the -- he |
| 16:23:21 | 14 | admits he didn't tell them about that in November when he's |
| 16:23:25 | 15 | talking about it.  He didn't even bring this up until his |
| 16:23:29 | 16 | lawyer apparently tells this to Mr. Mullen. |
| 16:23:31 | 17 | I don't know if whether Mr. Mullen called him or how |
| 16:23:35 | 18 | it came about exactly, but when he's talking to these agents |
| 16:23:38 | 19 | about produce -- when they first show up as Cyber Crimes people |
| 16:23:41 | 20 | in Florida, they show up in his house and start talking about |
| 16:23:44 | 21 | producers.  He doesn't mention Mr. Diehl because he wants to |
| 16:23:47 | 22 | tell the Court, Well, I am not that kind of guy.  Well, we know |
| 16:23:51 | 23 | he is that kind of guy because here is in Court testifying |
| 16:23:54 | 24 | about his supposed great friend David Diehl.  So we know he is |
| 16:23:59 | 25 | that kind of guy, that he would come and testify. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 182 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 181 of 192

181

```
16:24:01   1          So his testimony about this incident in Florida is
16:24:03   2   totally un-credible.  Number one, he may not be a jailhouse
16:24:07   3   snitch, as Mr. Devlin referred to him, but to use the common
16:24:13   4   parlance of the street, he sure is a snitch.  And so he's doing
16:24:18   5   it for the common reason that people snitch, to get himself a
16:24:21   6   better deal.  He got himself 15 years.  He would not like to do
16:24:29   7   15 years, and who could blame him for that?  Nobody wants to do
16:24:32   8   any amount of time.
16:24:34   9          So what he has done is, I don't know if it is because
16:24:37  10   of the drug usage or because he has had time to sit around in
16:24:39  11   the Florida prison system and dream up some way to add value.
16:24:45  12   He wouldn't admit that he would have to add value to the
16:24:48  13   Government's case to get his time fixed.  Well, I'm just here
16:24:50  14   to tell the truth.
16:24:51  15          Well, clearly if he came over here and said nothing
16:24:54  16   that helped the Government's case, Mr. Devlin's phone call, if
16:24:57  17   any, to the Florida prosecutor would be without much enthusiasm
16:25:03  18   in seeking the time reduction for Mr. Courtney.
16:25:06  19          So I think what you've got here is certainly some
16:25:11  20   suspicion that the Government has created, perhaps with
16:25:14  21   Mr. Courtney, but they have not -- taking Mr. Courtney's
16:25:18  22   testimony and all of the other testimony that they put on, they
16:25:21  23   have not proven the elements of the offense beyond a reasonable
16:25:24  24   doubt.
16:25:25  25          And I think that they haven't shown their
```

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 183 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 183 of 193

182

| | | |
|---|---|---|
| 16:25:28 | 1 | jurisdictional requirement insofar as just because some of |
| 16:25:31 | 2 | these videos are found on -- on other computers and other |
| 16:25:35 | 3 | states. |
| 16:25:37 | 4 | THE COURT:  Well, let me ask you this:  If there is |
| 16:25:42 | 5 | no -- if you were wrong on the constitutionality of the third |
| 16:25:46 | 6 | clause of the interstate nexus portion of Section 2251, has not |
| 16:25:55 | 7 | the Government proved that element by showing that it has shown |
| 16:26:01 | 8 | up in other states?  If it reads, "If such visual depiction has |
| 16:26:09 | 9 | actually been transported or transmitted using any means or |
| 16:26:13 | 10 | facility of interstate or foreign commerce or in any way |
| 16:26:17 | 11 | affecting interstate or foreign commerce or mailed," and they |
| 16:26:20 | 12 | seized the videos in other states -- and that testimony is at |
| 16:26:25 | 13 | least one of them in another country -- and that clause is |
| 16:26:32 | 14 | constitutional, has not the Government satisfied its burden? |
| 16:26:36 | 15 | MR. ORR:  If it's constitutional? |
| 16:26:39 | 16 | THE COURT:  Yes. |
| 16:26:40 | 17 | MR. ORR:  Well, I will never admit that, Your Honor. |
| 16:26:42 | 18 | THE COURT:  Well, you don't have to admit it's |
| 16:26:44 | 19 | constitutional.  I understand your argument.  But if we take it |
| 16:26:48 | 20 | at face value, has not the Government satisfied its burden of |
| 16:26:53 | 21 | showing that this material, as charged in the indictment, moved |
| 16:26:57 | 22 | in interstate commerce if the Government has proved that it |
| 16:27:01 | 23 | originated in Texas and was seized in another state or another |
| 16:27:05 | 24 | country? |
| 16:27:06 | 25 | MR. ORR:  I don't even want to concede that moving in |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 184 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 133 of 192

183

| | | |
|---|---|---|
| 16:27:11 | 1 | interstate commerce is shown by the fact that it may be found |
| 16:27:14 | 2 | in another state.  I think there are cases that indicate -- |
| 16:27:17 | 3 | Your Honor, I think it's just not enough.  They've got to show |
| 16:27:22 | 4 | some method or means that it got across.  It's not like a gun |
| 16:27:25 | 5 | that we found -- |
| 16:27:26 | 6 | THE COURT:  Why is it not like a gun? |
| 16:27:27 | 7 | MR. ORR:  Well, because a gun is a physical item. |
| 16:27:30 | 8 | It's got to travel somehow or other, in somebody's pocket from |
| 16:27:34 | 9 | Connecticut, from the Colt Arms factory to Texas. |
| 16:27:38 | 10 | THE COURT:  World's changed. |
| 16:27:41 | 11 | MR. ORR:  Well -- |
| 16:27:42 | 12 | THE COURT:  Things travel through the air. |
| 16:27:44 | 13 | MR. ORR:  Yes, sir.  Little electrons.  They're just |
| 16:27:49 | 14 | little electrons.  You can't transport a gun in the form of |
| 16:27:53 | 15 | electrons. |
| 16:27:54 | 16 | THE COURT:  But you can transport images of the gun |
| 16:27:57 | 17 | by electrons.  And in this case the charge is not that the |
| 16:28:01 | 18 | minors were transported, but images of the minors were |
| 16:28:04 | 19 | transported.  Can that not be done by electrons? |
| 16:28:12 | 20 | MR. ORR:  Well, I suppose it can be, yes.  I think |
| 16:28:14 | 21 | that's what I just said.  Electrons move the world these days. |
| 16:28:20 | 22 | THE COURT:  I understand your argument.  But you will |
| 16:28:22 | 23 | admit that the Government has proved that these items were in |
| 16:28:26 | 24 | fact found outside of the State of Texas? |
| 16:28:29 | 25 | MR. ORR:  Yes, sir. |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 185 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 184 of 192

184

| | | |
|---|---|---|
| 16:28:31 | 1 | THE COURT: All right. Mr. Devlin, you may rebut. |
| 16:28:39 | 2 | And what I would like for you to address is the |
| 16:28:47 | 3 | constitutionality of the third clause. |
| 16:28:49 | 4 | MR. ORR: May I just clarify one thing, Your Honor? |
| 16:28:52 | 5 | THE COURT: You may. |
| 16:28:52 | 6 | MR. ORR: The language of statute is transporting. |
| 16:28:55 | 7 | It is not found. It's transporting. And just because |
| 16:28:58 | 8 | something -- the Government -- |
| 16:28:59 | 9 | THE COURT: I know. I didn't say that I find that it |
| 16:29:04 | 10 | was transporting. I was asking you how it would have gotten |
| 16:29:07 | 11 | there if it wasn't transported, and you weren't conceding |
| 16:29:10 | 12 | that. All you said was that, yes, you will admit that it was |
| 16:29:14 | 13 | located in another state. |
| 16:29:16 | 14 | MR. ORR: Yes, sir. And I think it's up to the |
| 16:29:18 | 15 | Government to show how it was transported. |
| 16:29:22 | 16 | THE COURT: So your argument is it's not enough to |
| 16:29:25 | 17 | show it got to the other state? |
| 16:29:30 | 18 | MR. ORR: Yeah. |
| 16:29:31 | 19 | THE COURT: All right. |
| 16:29:32 | 20 | MR. ORR: Yes, sir. |
| 16:29:32 | 21 | THE COURT: All right. Now, Mr. Devlin? |
| 16:29:35 | 22 | MR. DEVLIN: You want me to address what, Judge? |
| 16:29:38 | 23 | THE COURT: Well, what I'm interested in is the |
| 16:29:40 | 24 | argument Mr. Orr made that either all three of the methods of |
| 16:29:45 | 25 | proving interstate nexus require scienter or, in the event they |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 186 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 185 of 192

185

```
16:29:49   1    don't, why the third one is constitutional without such a
16:29:53   2    requirement.  I believe that's where issue is joined at this
16:30:02   3    point.  Or at least it is in my mind, and I'm the one who has
16:30:04   4    to make a decision.
16:30:05   5              GOVERNMENT'S REBUTTAL ARGUMENT
16:30:05   6              MR. DEVLIN:  Yes, Your Honor.  And I guess I'm
16:30:06   7    relying heavily -- and I should go back to my materials when we
16:30:09   8    had the motions hearing, when we talked about constitutionality
16:30:13   9    with the commerce clause.  I kind of thought that was decided
16:30:15  10    at that point.  So I'm not fully prepared to address that at
16:30:18  11    this time, other than to rely on my response to that motion to
16:30:21  12    dismiss, which -- in which I think Mr. Orr advanced the same
16:30:26  13    arguments, although maybe perhaps more broadly, that under the
16:30:29  14    Commerce Clause, Sub 2251 is not constitutional.
16:30:33  15              What I'm -- I was -- what I'm prepared to address is
16:30:37  16    the scienter requirement in which there is not a whole lot of
16:30:41  17    case law.
16:30:42  18              THE COURT:  What did you just say about the commerce
16:30:44  19    clause?
16:30:45  20              MR. DEVLIN:  Mr. Orr had filed a motion to dismiss
16:30:47  21    the indictment based on the Commerce Clause, and you had ruled.
16:30:51  22              THE COURT:  But I ruled on that with less than a
16:30:53  23    fully developed record.  That's what we always have when we
16:30:59  24    make a preliminary ruling.  I ruled that you had enough to get
16:31:02  25    this case to trial.  It was not necessarily in the inquiry,
```

Case 1:10-cr-00297-LY  Document 219-1  Filed 12/05/16  Page 187 of 193
Case 1:10-cr-00297-LY  Document 91  Filed 03/09/11  Page 186 of 192

186

```
16:31:07   1   because there's always a different slant to it after I have had
16:31:11   2   an opportunity to hear all of the evidence other than what was
16:31:14   3   just presented for purposes of a preliminary motion.  The
16:31:19   4   burden, we're now at reasonable doubt stage, which is different
16:31:23   5   than earlier.
16:31:24   6          MR. DEVLIN:  Right.  Well, I am relying heavily on
16:31:27   7   facts, obviously, to establish reasonable doubt.  And I think
16:31:29   8   we're trying to determine what the legal standard is, whether
16:31:32   9   we have to show that it was transported or that he transported.
16:31:36  10   And I -- or at least knew that he transported.  And in that
16:31:41  11   regard, Judge, there really is a dearth of case law regarding
16:31:44  12   the particular element that we're dealing with.
16:31:47  13          In one -- in Supreme Court Case 1994, United States
16:31:52  14   v. X-Citement Video at 513 U.S. 64 -- it's, again, a 1994
16:32:00  15   case -- the Supreme Court in the context of 2251 held that
16:32:03  16   there is not a scienter requirement as to the age of victims.
16:32:07  17   That the defendant did not have to know the age of the
16:32:10  18   victims.
16:32:11  19          In addition, Judge, in United States v. Feola, which
16:32:14  20   is another Supreme Court case -- that's from 1975.  It was not
16:32:18  21   in the child pornography context.  It's at 420 US 671.  I
16:32:24  22   believe it was in the context of the federal -- the assault
16:32:27  23   statute of federal employees.  I believe the issue was whether
16:32:30  24   or not the defendant in that case had to know the person was a
16:32:34  25   federal employee, and the Supreme Court basically said no
```

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 188 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 187 of 192

187

```
16:32:37   1   because of the existence of the fact that confers federal
16:32:40   2   jurisdiction need not be one in the mind of the actor at the
16:32:43   3   time he perpetrates the act made criminal by the federal
16:32:45   4   statute.
16:32:46   5        So, based on that case -- I don't have one of the
16:32:49   6   firearms cases in front of me, but the firearms cases
16:32:55   7   addressing the interstate commerce element in the firearms
16:32:58   8   cases would certainly be appropriate here and apply to this
16:33:01   9   particular element because, again, there is a provision in 2251
16:33:07  10   in the context -- and 2252 in the context of transporting or
16:33:13  11   distributing, that the defendant did transport or distribute
16:33:15  12   those things and that he would have to have done that in
16:33:20  13   interstate or foreign commerce.
16:33:21  14        Whereas, in this particular case, the element of
16:33:24  15   interstate nexus is just simply conferring federal jurisdiction
16:33:30  16   over the defendant's actions in using and enticing and
16:33:32  17   persuading minors to engage in sexually explicit conduct for
16:33:36  18   purpose of producing a visual depiction.
16:33:39  19        So the fact that the visual depiction is produced and
16:33:44  20   moves in interstate commerce by any means, whether it's by the
16:33:47  21   defendant or otherwise, is simply the element that establishes
16:33:51  22   federal jurisdiction.  And it does not need to be shown that
16:33:54  23   the defendant himself did it because, if that were the case,
16:33:57  24   then we could probably charge him with transporting and
16:34:00  25   distributing on top of producing since those are separate acts.
```

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 189 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 188 of 192

188

| | |
|---|---|
| 16:34:04 | 1 |
| 16:34:08 | 2 |
| 16:34:10 | 3 |
| 16:34:13 | 4 |
| 16:34:17 | 5 |
| 16:34:20 | 6 |
| 16:34:25 | 7 |
| 16:34:27 | 8 |
| 16:34:31 | 9 |
| 16:34:35 | 10 |
| 16:34:40 | 11 |
| 16:34:43 | 12 |
| 16:34:46 | 13 |
| 16:34:48 | 14 |
| 16:34:53 | 15 |
| 16:34:57 | 16 |
| 16:35:02 | 17 |
| 16:35:06 | 18 |
| 16:35:11 | 19 |
| 16:35:12 | 20 |
| 16:35:16 | 21 |
| 16:35:20 | 22 |
| 16:35:22 | 23 |
| 16:35:25 | 24 |
| 16:35:28 | 25 |

1 So, again -- again, the gravamen of the offense is
2 the enticement, use, persuasion of a minor to engage in
3 sexually explicit conduct for the purpose of producing a visual
4 depiction. That's why there are other elements regarding the
5 interstate nexus that would apply, that the materials used to
6 produce traveled in interstate and foreign commerce. There is
7 no requirement that the defendant have transported those
8 materials. And then the element that the defendant -- excuse
9 me -- the element that the visual depictions actually moved in
10 interstate and foreign commerce do not need to be accomplished
11 by the defendant because Congress would have been quite clear
12 in saying that he would have had to have transported them in
13 order to make that requirement on the Government.

14 So I believe that the scienter requirement that's
15 discussed in the *X-Citement Video* case regarding age is
16 particularly appropriate. And also in the *Feola* case, that
17 describes the existence of the fact that federal jurisdiction
18 does not need to be known to the defendant at the time that he
19 perpetrates the criminal act.

20 So, again, with operating under a dearth of case law
21 and, if the Court wishes, I would be happy to submit a
22 post-trial brief that would expound upon that further, if the
23 Court feels that would be helpful.

24 MR. ORR: We'd be happy to do that, too. And it
25 might be fun, especially for young Mr. Crawford here.

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 190 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 189 of 192

189

| | | |
|---|---|---|
| 16:35:36 | 1 | THE COURT: Well, I don't know what cases you're |
| 16:35:40 | 2 | going to come up with that I haven't heard from you on because |
| 16:35:45 | 3 | I am reasonably convinced that there are not a lot of cases out |
| 16:35:52 | 4 | there based on what I did to prepare for the pretrial hearing |
| 16:35:58 | 5 | in this case and this. So my question is: Other than getting |
| 16:36:04 | 6 | from both of you what would amount to additional written |
| 16:36:07 | 7 | argument, am I likely to get anything that would shed any |
| 16:36:13 | 8 | authoritative or precedential light on this issue other than |
| 16:36:17 | 9 | what I have already heard, because I am not convinced that |
| 16:36:22 | 10 | there are cases that neither one of you have shown to me here |
| 16:36:26 | 11 | before that are out there. |
| 16:36:28 | 12 | MR. DEVLIN: There is no cases that I've found, |
| 16:36:30 | 13 | Judge, that are directly on point on this particular element of |
| 16:36:34 | 14 | 2251(a). |
| 16:36:35 | 15 | MR. ORR: I think that's fair. |
| 16:36:37 | 16 | MR. DEVLIN: So it would be by analogy, Judge. |
| 16:36:40 | 17 | MR. ORR: May I say something additionally? |
| 16:36:43 | 18 | Something brief? |
| 16:36:44 | 19 | THE COURT: Yes. |
| 16:36:44 | 20 | MR. ORR: The *Runyan* case actually deals with a |
| 16:36:46 | 21 | situation where Runyan was telling the people, the young |
| 16:36:50 | 22 | women -- he says, I'm going to put this on the Internet. He |
| 16:36:53 | 23 | told them. |
| 16:36:53 | 24 | THE COURT: I'm familiar with the factual difference |
| 16:36:55 | 25 | in *Runyan*, but I think the Circuit -- the Circuit in *Runyan* |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 191 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 191 of 193

190

| 16:37:02 | 1 | compared *Runyan* to *Carroll* out of what I think is the First |
| 16:37:08 | 2 | Circuit and found the fact situations very similar and agreed |
| 16:37:14 | 3 | with *Carroll*. But I think the clause that was being discussed |
| 16:37:22 | 4 | and where issue was joined in *Runyan* was the first clause of |
| 16:37:26 | 5 | the interstate nexus in 2251(a), that the person knows or has |
| 16:37:31 | 6 | reason to know that the visual depiction will be transported or |
| 16:37:36 | 7 | transmitted, et cetera, et cetera. Because there the evidence |
| 16:37:43 | 8 | was that the defendant made a statement to the victim that I |
| 16:37:48 | 9 | intend to transmit this, if I am recalling it. |
| 16:37:52 | 10 | MR. ORR: That's correct, Your Honor. I've got it |
| 16:37:54 | 11 | right here. |
| 16:37:55 | 12 | THE COURT: But I don't think this third clause was |
| 16:37:57 | 13 | discussed. |
| 16:37:59 | 14 | MR. DEVLIN: I don't believe it was because it didn't |
| 16:38:01 | 15 | get to that point. And right -- |
| 16:38:03 | 16 | THE COURT: So I get it in the first instance because |
| 16:38:06 | 17 | I don't think there is another -- I don't think there's a case |
| 16:38:09 | 18 | on the third clause of the interstate nexus portion of 2251. |
| 16:38:14 | 19 | MR. DEVLIN: Not squarely, no, Judge. |
| 16:38:17 | 20 | THE COURT: Then I am not sure that just additional |
| 16:38:21 | 21 | analogies other than what you have presented are going to shed |
| 16:38:29 | 22 | any more light on what I am going to do with the third clause |
| 16:38:31 | 23 | of 2251(a). |
| 16:38:34 | 24 | MR. ORR: We have a law review article -- Law |
| 16:38:35 | 25 | Review 21 article that deals with "The Jurisdictional Limits of |

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 192 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 191 of 192

191

16:38:38  1   Federal Criminal Child Pornography Law," if Your Honor would

16:38:41  2   like that.

16:38:42  3           THE COURT:  Well, I would consider that.

16:38:43  4           MR. ORR:  Would you like us to pass it up?  I'll get

16:38:46  5   you a copy, too.  I'll get it for you.  Just remind me.

16:39:01  6           THE COURT:  All right.  Here is what I am going to

16:39:04  7   do:  I need to deliberate on this since I am the trier of fact,

16:39:12  8   and I want to review what I have in front of me.  And so I am

16:39:19  9   going to recess until 10 o'clock in the morning.  And if you

16:39:24 10   all will be back at 10 o'clock in the morning, I will announce

16:39:30 11   my verdict at that time.  I am not going to delay on this, but

16:39:34 12   I do need some time to look over what I have and give some

16:39:38 13   thoughts to -- give some thought to what has been presented to

16:39:43 14   me, particularly with regard to interstate nexus.

16:39:47 15           So at this time we're going to be in recess until

16:39:53 16   10:00 in the morning.  I do not intend to entertain additional

16:39:59 17   argument in the morning.  I will look at what I have, and I

16:40:03 18   will render a verdict at that time.  Is there anything else

16:40:07 19   that anyone wants to present to the Court this evening?

16:40:11 20           MR. DEVLIN:  No, Your Honor.

16:40:11 21           MR. ORR:  No, Your Honor.

16:40:12 22           THE COURT:  All right.  Then at this time we're in

16:40:14 23   recess until 10 o'clock in the morning.

16:40:18 24       (End of transcript)

         25

Case 1:10-cr-00297-LY Document 219-1 Filed 12/05/16 Page 193 of 193
Case 1:10-cr-00297-LY Document 91 Filed 03/09/11 Page 192 of 192

192

```
 1   UNITED STATES DISTRICT COURT        )

 2   WESTERN DISTRICT OF TEXAS           )

 3        I, Arlinda Rodriguez, Official Court Reporter, United

 4   States District Court, Western District of Texas, do certify

 5   that the foregoing is a correct transcript from the record of

 6   proceedings in the above-entitled matter.

 7        I certify that the transcript fees and format comply with

 8   those prescribed by the Court and Judicial Conference of the

 9   United States

10        WITNESS MY OFFICIAL HAND this the 7th day of March 2011.

11

12                            /S/ Arlinda Rodriguez
                              Arlinda Rodriguez, Texas CSR 7753
13                            Expiration Date:  12/31/2012
                              Official Court Reporter
14                            United States District Court
                              Austin Division
15                            200 West 8th Street, 2nd Floor
                              Austin, Texas 78701
16                            (512) 916-5143

17

18

19

20

21

22

23

24

25
```