# EXHIBIT C

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 2 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/13/12 Page 2 of 122

1

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3   UNITED STATES OF AMERICA,     )  AU:10-CR-00297(1)-LY
                                   )
 4      Plaintiff,                 )
                                   )
 5   VS.                           )  AUSTIN, TEXAS
                                   )
 6   DAVID ANDREW DIEHL,           )
                                   )
 7      Defendant.                 )  OCTOBER 24, 2011

 8        **************************************************
                  TRANSCRIPT OF SENTENCING HEARING
 9              BEFORE THE HONORABLE LEE YEAKEL
          **************************************************
10
     APPEARANCES:
11
     FOR THE PLAINTIFF:          MATTHEW B. DEVLIN
12                               ASSISTANT UNITED STATES ATTORNEY
                                 816 CONGRESS AVENUE, SUITE 1000
13                               AUSTIN, TEXAS 78701

14   FOR THE DEFENDANT:          E.G. MORRIS
                                 LAW OFFICE OF E.G. MORRIS
15                               608 WEST 12TH STREET, SUITE B
                                 AUSTIN, TEXAS 78701
16
     COURT REPORTER:             ARLINDA RODRIGUEZ, CSR
17                               200 WEST 8TH STREET
                                 AUSTIN, TEXAS 78701
18                               (512) 916-5143

19
                        EXAMINATION INDEX
20
     SEAN MULLEN
21        DIRECT BY MR. DEVLIN                          19
          CROSS BY MR. MORRIS                           26
22        REDIRECT BY MR. DEVLIN                        28
          RECROSS BY MR. MORRIS                         29
23        FURTHER DIRECT BY MR. DEVLIN                  30

24
     Proceedings recorded by computerized stenography, transcript
25   produced by computer.
```

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 3 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/13/12 Page 2 of 121

2

| | |
|---|---|
| 09:01:51 | 1 |
| 09:01:51 | 2 |
| 09:01:53 | 3 |

09:01:51  1    (Open Court)

09:01:51  2        THE CLERK:  The Court calls for sentencing

09:01:53  3  A-10-CR-297(1), *United States of America v. David Andrew Diehl*

09:01:59  4        MR. DEVLIN:  Matthew Devlin for the United States,

09:02:01  5  Your Honor.  Good morning.

09:02:02  6        MR. MORRIS:  Gerry Morris for the defendant.  Good

09:02:04  7  morning.

09:02:04  8        THE COURT:  All right.  Will the defendant and

09:02:05  9  counsel please come forward.

09:02:19  10        Mr. Diehl, and would you please state your correct

09:02:28  11  name.

09:02:28  12        THE DEFENDANT:  David Andrew Diehl.

09:02:30  13        THE COURT:  Mr. Diehl, you were tried in this Court

09:02:33  14  without a jury on February the 8th, 2011.  Do you remember that

09:02:37  15  trial?

09:02:37  16        THE DEFENDANT:  Yes, Your Honor.

09:02:38  17        THE COURT:  And you were found guilty by the Court as

09:02:41  18  to sexual exploitation of a child and production of child

09:02:46  19  pornography, class B felonies, ten counts.  Do you recall

09:02:51  20  that?

09:02:51  21        THE DEFENDANT:  Yes, Your Honor.

09:02:52  22        THE COURT:  And you were found guilty of those

09:02:55  23  charges pursuant to a second superseding indictment that was

09:03:01  24  returned by a grand jury impaneled in this case for that

09:03:06  25  purpose.  We are here this morning for the purpose of a

Case 1:11-cr-00297-LY Document 218-4 Filed 12/05/16 Page 4 of 122
Case 1:11-cr-00297-LY Document 185 Filed 01/13/12 Page 3 of 121

3

09:03:10  1    sentencing hearing.  Have you had sufficient time to review

09:03:15  2    with your attorney the presentence investigation report

09:03:18  3    prepared by the Probation Department in this case?

09:03:22  4              THE DEFENDANT:  Yes, Your Honor.

09:03:22  5              THE COURT:  Are you aware that under the guidelines

09:03:25  6    established by the United States Sentencing Commission, which

09:03:28  7    are advisory to this Court, that the Probation Department has

09:03:32  8    computed your total offense level as 40 and your total criminal

09:03:38  9    history category as II, meaning that if this Court were to

09:03:42  10   determine that a guideline sentence was an appropriate sentence

09:03:44  11   to impose in this case, I could sentence you to 405 months

09:03:50  12   confinement in the Bureau of Prisons, a term of supervised

09:03:54  13   release of five years for each count of conviction, a fine of

09:04:01  14   $250,000 and a special assessment of $100 for each count of

09:04:07  15   conviction, for a total special assessment of $1,000?

09:04:10  16             THE DEFENDANT:  Yes, Your Honor.

09:04:12  17             THE COURT:  Are you also aware that under the statute

09:04:14  18   under which you have been convicted, I must sentence you to

09:04:19  19   ten years confinement in the Bureau of Prisons, and could

09:04:24  20   sentence you to 20 years confinement in the Bureau of Prisons

09:04:28  21   and I could sentence you to that range of the 20-10 and 20

09:04:33  22   years on each of the ten counts of conviction, which means

09:04:38  23   there would be a total -- potential total sentence of 200 years

09:04:44  24   imprisonment in this case?  I could sentence you then to a term

09:04:48  25   of supervised release of five years per count of conviction, a

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 5 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/13/12  Page 5 of 121

4

| | | |
|---|---|---|
| 09:04:53 | 1 | fine of $250,000 for each count of conviction, and a special |
| 09:04:58 | 2 | assessment of $100 for each count of conviction, again for a |
| 09:05:04 | 3 | total special assessment of $1,000.  Are you aware of that? |
| 09:05:08 | 4 | THE DEFENDANT:  Yes, Your Honor. |
| 09:05:09 | 5 | THE COURT:  Does the Government have objection to the |
| 09:05:11 | 6 | presentence investigation report? |
| 09:05:12 | 7 | MR. DEVLIN:  No objections, Your Honor. |
| 09:05:14 | 8 | THE COURT:  Does the defendant have objection to the |
| 09:05:16 | 9 | presentence investigation report? |
| 09:05:17 | 10 | MR. MORRIS:  Yes, we do, Your Honor. |
| 09:05:19 | 11 | THE COURT:  All right.  Mr. Morris, I will hear from |
| 09:05:21 | 12 | you on your objections at this time. |
| 09:05:26 | 13 | MR. MORRIS:  Your Honor, Mr. Diehl would also like to |
| 09:05:29 | 14 | reserve the right to speak to the objections if he deems it |
| 09:05:34 | 15 | necessary after I've finished. |
| 09:05:35 | 16 | THE COURT:  Well, let me hear what you have to say. |
| 09:05:37 | 17 | MR. MORRIS:  Certainly.  To go down them in order, |
| 09:05:41 | 18 | Your Honor, the order that we have them listed in the |
| 09:05:43 | 19 | objections that Mr. Orr filed, the first objection we have is |
| 09:05:50 | 20 | the objection to enhancement for vulnerable victim.  That |
| 09:05:53 | 21 | relates to paragraph 82, 90, 98, 105 and 113.  Basically, those |
| 09:05:59 | 22 | enhancements have been added to the counts involving Jane Doe |
| 09:06:06 | 23 | Number 3. |
| 09:06:07 | 24 | The rationale for adding the enhancement is that, |
| 09:06:13 | 25 | because she was small in stature, that she must have been more |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 6 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/12 Page 5 of 121

5

09:06:18  1   vulnerable, must have experienced pain to a greater extent than

09:06:23  2   another victim.  That was added under U.S. Sentencing Guideline

09:06:30  3   Section 381.1 of the 2000 version of the guidelines.  And that

09:06:36  4   cross-references in the application notes -- or, actually, the

09:06:42  5   application notes make it very clear that that is not to be

09:06:45  6   applied -- that enhancement is not to be applied if it's

09:06:51  7   incorporated in the offense guidelines.

09:06:55  8         For example, the offense guideline provides an

09:06:57  9   enhancement for the age of the victim.  This subjection would

09:07:01 10   not be applied unless the victim was unusually vulnerable for

09:07:06 11   reasons unrelated to age.

09:07:09 12         The particular guideline that we're working with

09:07:11 13   here, 2G2.1 provides for a specific offense characteristic to

09:07:18 14   be applied, a four-level increase, if the victim is under 12.

09:07:22 15   That was applied in all paragraphs that I referenced.

09:07:25 16         The language of the guideline application is real

09:07:30 17   straightforward:  If what makes the victim more vulnerable is

09:07:34 18   related to age and is not for a reason unrelated to age, this

09:07:39 19   should not be applied.

09:07:40 20         Now two points.  One is that one of the

09:07:48 21   justifications the probation officer puts forward for this

09:07:50 22   enhance is the small size as Jane Doe 3.  That's directly

09:07:55 23   related to age.  She's small because she is young.  And with

09:07:59 24   respect to the second justification, she must experience more

09:08:03 25   pain than the victim of the child -- if the Court remembers

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 7 of 122
Case 1:10-cr-00297-LY Document 185 Filed 01/13/12 Page 6 of 121

6

09:08:08 1 seeing those videos involving Jane Doe 3, there was nothing

09:08:12 2 about those videos that indicated she experienced pain.

09:08:15 3          Certainly they were reprehensible.  A lot went on.

09:08:20 4 But pain was not a component of it.  And this simply is very

09:08:23 5 straightforward from the guideline application notes, that this

09:08:26 6 enhancement should not apply.  In my sentencing memorandum,

09:08:30 7 page 4, I've cited cases that are illustrative of when this

09:08:36 8 properly should be applied.

09:08:37 9          And the Court -- *U.S. v. Kapordelis*, the victim was

09:08:43 10 sleeping when she was videotaped.  *United States v. Newsom*, the

09:08:46 11 victim was sleeping when -- again, when defendant videotaped

09:08:51 12 her.  *United States v. Gawthrop*, the perpetrator was the

09:08:55 13 victim's grandfather and had a particularly close relationship

09:08:57 14 with her.  As I recall, he -- she actually lived with her

09:09:01 15 grandfather, and it was more of a father-daughter

09:09:03 16 relationship.  That was held to make her more vulnerable.  Then

09:09:09 17 *United States v. Bentley*, the victim had been diagnosed with

09:09:11 18 ADHD and oppositional defiant disorder, had mood swings, heard

09:09:17 19 nonexistent voices and basically was delusional, had attempted

09:09:20 20 suicide.  In that case the Court held the vulnerable victim

09:09:24 21 enhancement was proper.

09:09:25 22          In summary, the specific offense characteristic in

09:09:30 23 2G2.1 specifically addresses the concerns that the probation

09:09:35 24 officer utilized to apply the vulnerable victim statute --

09:09:39 25 enhancement.  And that's just contrary to tenet of the

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 8 of 122
Case 1:10-cr-00297-LY Document 185 Filed 01/13/12 Page 8 of 121

7

| | | |
|---|---|---|
| 09:09:41 | 1 | guidelines and the rest of the commentary. |
| 09:09:44 | 2 | THE COURT: Mr. Devlin, what is your preference? |
| 09:09:47 | 3 | Would you prefer to answer these one at a time, or would you |
| 09:09:52 | 4 | prefer that I hear Mr. Morris through on his objections and |
| 09:09:57 | 5 | then you respond to all of them? And, Mr. Morris, what would |
| 09:10:00 | 6 | be your preference on the way we handle these? |
| 09:10:02 | 7 | MR. MORRIS: I think it would be useful to handle |
| 09:10:05 | 8 | them one at a time, Your Honor. |
| 09:10:07 | 9 | THE COURT: Mr. Devlin, is that acceptable to you? |
| 09:10:10 | 10 | MR. DEVLIN: I guess so. The thing is we're going to |
| 09:10:11 | 11 | be having a little bit of just brief testimony on several of |
| 09:10:14 | 12 | the objections all from the same agent. I don't know if it |
| 09:10:16 | 13 | would be more efficient to just have that all done at once or |
| 09:10:20 | 14 | we can piecemeal it. However the Court wishes to proceed. |
| 09:10:23 | 15 | THE COURT: Well, I hate to be calling the agent up |
| 09:10:26 | 16 | and down all the time, so why don't we proceed through them. |
| 09:10:31 | 17 | Mr. Morris, make your objections, and then I'll let Mr. Devlin |
| 09:10:34 | 18 | present what he's going to present. And then if we need to go |
| 09:10:38 | 19 | back and go back through them one at a time for the rulings |
| 09:10:41 | 20 | after I've heard what evidence he intends to present. So go |
| 09:10:47 | 21 | ahead. |
| 09:10:48 | 22 | MR. MORRIS: I understand. Our second scoring |
| 09:10:50 | 23 | objection relates to an enhancement for victims being |
| 09:10:53 | 24 | physically restrained. That's paragraphs 83, 91, and 106. |
| 09:10:58 | 25 | And, again, this relates to Jane Doe 3. The enhancement would |

Case 1:11-cr-00297-LY Document 218-4 Filed 12/05/16 Page 9 of 122
Case 1:11-cr-00297-LY Document 135 Filed 01/19/12 Page 8 of 121

8

| | | |
|---|---|---|
| 09:11:08 | 1 | be pursuant to Sentencing Guideline 381.3. And the |
| 09:11:15 | 2 | Probation Department increases those based on descriptions of |
| 09:11:19 | 3 | the videos that are included in the presentence report. I'll |
| 09:11:22 | 4 | briefly go through those. |
| 09:11:24 | 5 | Count six, video depicts Diehl restrained Jane Doe 3 |
| 09:11:29 | 6 | by holding her down and pinning her between himself and the |
| 09:11:31 | 7 | bed. Jane Doe 3 attempts to get up, but Diehl pushes her back |
| 09:11:35 | 8 | down. I'll stop and address that. That simply overstates |
| 09:11:38 | 9 | what's on the video. The Court has seen the video. And, |
| 09:11:42 | 10 | again, as reprehensible as they are, it's important that we -- |
| 09:11:46 | 11 | be accurate with this. |
| 09:11:47 | 12 | What happens in that frame is Mr. Diehl basically |
| 09:11:53 | 13 | briefly puts his hand on Jane Doe 3's head and holds her down |
| 09:11:58 | 14 | briefly, more in the nature of repositioning her than |
| 09:12:03 | 15 | restraining her. |
| 09:12:03 | 16 | Count 7, Diehl then grabs Jane Doe 3 from behind, |
| 09:12:07 | 17 | holds her in place, while he rubs his erect penis between her |
| 09:12:11 | 18 | buttocks. Again, it overstates what happened in that video. |
| 09:12:14 | 19 | He puts his hands on the her backside and repositions her. |
| 09:12:20 | 20 | And count 9 depicts Diehl grabbing Jane Doe by the |
| 09:12:25 | 21 | back of the head, and Diehl then grabs Jane Doe 3 and moves her |
| 09:12:30 | 22 | closer. Again, that overstates the severity of what went on. |
| 09:12:33 | 23 | The application note cross-references 1B1.1 for the |
| 09:12:40 | 24 | definition of "physically restrained." I think the application |
| 09:12:43 | 25 | note is certainly illustrative of what was intended. Physical |

Case 1:10-cr-00297-LY Document 184 Filed 12/05/16 Page 10 of 122
Case 1:10-cr-00297-LY Document 185 Filed 12/05/16 Page 9 of 121

9

09:12:48   1    restrained -- physically restrained means the forcible

09:12:51   2    restraint of a victim such as being tied, bound, or locked up.

09:12:58   3          Now, the case law is very clear that this so not

09:13:00   4    intended to be an inclusive list of all that would constitute

09:13:04   5    "physically restrained."  But if you look at the nature of the

09:13:08   6    actions that are cited, tied, bound, or locked up, it's very

09:13:13   7    clear that what's intended here is some forcible restraint,

09:13:17   8    something that significantly impedes a person's ability to move

09:13:23   9    or to get away.

09:13:25  10          And the illustrative cases that I've cited that

09:13:33  11    indicate when it's proper to use this particular enhancement:

09:13:38  12          *United States v. Aguilar*:  It's on page 6 of the

09:13:41  13    memorandum.  Victim told he could not leave the trailer and was

09:13:44  14    held down and forcibly tattooed.

09:13:47  15          *United States v. Angeles-Mendoza*:  Smuggled aliens,

09:13:52  16    kept in building with door locked and windows boarded and a

09:13:57  17    guard patrolling the premises.  That may have come out of this

09:14:00  18    Court, as I recall.

09:14:01  19          *United States v. Checora*:  Victim tackled by a

09:14:04  20    defendant and dragged to a location where his throat was cut.

09:14:08  21          *United States v. Clayton*:  The victim was handcuffed

09:14:11  22    and kicked by the defendant.  That was a case involving a civil

09:14:15  23    rights violation where a police officer had handcuffs on

09:14:18  24    someone and then proceeded to kick them.

09:14:23  25          *Arcoren v. United States*:  Defendant grabbed two

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 11 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/16 Page 10 of 122

10

09:14:26  1  victims sexual assaulted repeatedly, preventing them from

09:14:29  2  leaving the room.

09:14:30  3      And *Kime*:  Victim held down while defendant attempted

09:14:34  4  to cut off his finger with wire cutters.

09:14:36  5      And *Roberts*:  The robbery victim was held around the

09:14:39  6  neck at knife point.

09:14:40  7      I've not been able to find a case where the type of

09:14:44  8  conduct that is described in the presentence investigation

09:14:48  9  report and, more importantly, the type of conduct that's

09:14:51  10  actually on the videos was held -- was offered to support this

09:14:55  11  type of enhancement.  There's not an appellate case one way or

09:14:59  12  the other that says what happened here is -- is the type of

09:15:03  13  restraint addressed by that guideline.  I suspect why is

09:15:07  14  because it's never been offered as justification.  The

09:15:10  15  guidelines simply anticipates simply much more significant than

09:15:14  16  what we have here.

09:15:19  17      The next --

09:15:22  18      THE COURT:  Hold on just a minute.

09:15:24  19      MR. MORRIS:  Sure.

09:17:07  20      THE COURT:  All right.  You may proceed.

09:17:08  21      MR. MORRIS:  The next objection is we object to the

09:17:09  22  two-point enhancement for care, custody, and control.  It

09:17:13  23  relates to paragraph 81, 89, 97, 104, and 112.  Again, this

09:17:20  24  enhancement relates to the counts of conviction involving

09:17:23  25  Jane Doe 3.

Case 1:10-cr-00397-LY Document 218-4 Filed 12/05/16 Page 12 of 122
Case 1:10-cr-00397-LY Document 135 Filed 01/15/13 Page 12 of 122

11

| | | |
|---|---|---|
| 09:17:28 | 1 | The basis of the enhancement is that there was a |
| 09:17:33 | 2 | reference by Mr. Diehl's wife and by the mother of Jane Doe 3 |
| 09:17:38 | 3 | that on one occasion Jane Doe 3 was left with him to babysit. |
| 09:17:44 | 4 | Based on that reference, the Probation Department has enhanced |
| 09:17:52 | 5 | in five counts for care, custody, and control, basically |
| 09:17:57 | 6 | stating that he was babysitting on all five instances.  And in |
| 09:18:05 | 7 | response to Mr. Orr's objection to this, the Probation |
| 09:18:07 | 8 | Department responds that, well, it makes more sense that he |
| 09:18:11 | 9 | would have done this while he was babysitting because he would |
| 09:18:15 | 10 | of at that point had the opportunity.  And if he wasn't |
| 09:18:18 | 11 | babysitting, he wouldn't have. |
| 09:18:19 | 12 | Well, obviously, there's a logical problem with |
| 09:18:22 | 13 | that.  If he was only babysitting once, what about the other |
| 09:18:26 | 14 | five -- or the four, rather, instances?  Basically, there is no |
| 09:18:30 | 15 | evidence whatsoever from any source and none cited in the |
| 09:18:35 | 16 | presentence report that would indicate that these videos were |
| 09:18:38 | 17 | made at the time when Mr. Diehl was babysitting.  If it's the |
| 09:18:46 | 18 | probation officer's position that he was babysitting once and |
| 09:18:50 | 19 | all five of these occurred while he was babysitting, then it |
| 09:18:54 | 20 | ought to be one count. |
| 09:18:56 | 21 | The standard is that the proponent of the enhancement |
| 09:19:03 | 22 | as showed by a preponderance of the evidence that it applies. |
| 09:19:07 | 23 | There is simply no evidence that these videos were made at a |
| 09:19:09 | 24 | time when Mr. Diehl had -- was babysitting Jane Doe 3 or in any |
| 09:19:15 | 25 | other respect. |

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 13 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/16  Page 13 of 122

12

| | | |
|---|---|---|
| 09:19:16 | 1 | THE COURT:  Well, if we take away the babysitting |
| 09:19:21 | 2 | situation, Jane Doe Number 3 was a small child, she was with |
| 09:19:27 | 3 | Mr. Diehl.  How did she get there, if she wasn't in his care, |
| 09:19:32 | 4 | custody, and control? |
| 09:19:34 | 5 | MR. MORRIS:  She -- |
| 09:19:35 | 6 | THE COURT:  Forget about whether he was babysitting |
| 09:19:37 | 7 | or not.  Small children are generally just not out roaming |
| 09:19:44 | 8 | around, and I don't think that was the situation here when I |
| 09:19:47 | 9 | look back on the evidence at the trial.  So ignoring for the |
| 09:19:52 | 10 | moment that -- whether he was babysitting or not, it seems to |
| 09:19:59 | 11 | me that there is a circumstantial case that she was in his |
| 09:20:03 | 12 | care, custody, and control at the time of the offense. |
| 09:20:06 | 13 | MR. MORRIS:  There is certainly the alternative |
| 09:20:09 | 14 | possibility that she was there in someone else's care, custody, |
| 09:20:12 | 15 | and control and that she was with him only briefly during the |
| 09:20:15 | 16 | time that these were made.  And that just highlights the |
| 09:20:19 | 17 | problem.  There is no evidence one way or the other how she |
| 09:20:24 | 18 | ended up in his presence at the time these videos were made. |
| 09:20:28 | 19 | There's evidence, I believe, from the statements of |
| 09:20:32 | 20 | the mother, Mr. Diehl's wife, that -- that the mother and child |
| 09:20:37 | 21 | frequently were at the Diehl home.  And certainly it's possible |
| 09:20:42 | 22 | these videos were made at a time when the child was at the |
| 09:20:45 | 23 | Diehl home, but not in any sort of custodial arrangement with |
| 09:20:52 | 24 | him. |
| 09:21:03 | 25 | If we look at the cases that speak to that |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 14 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/11 Page 14 of 122

13

09:21:08  1   enhancement, it's almost always some definable formal

09:21:11  2   arrangement.  The child was left with a babysitter or left with

09:21:17  3   a student -- I mean, an educator or something to that nature.

09:21:21  4   And there's just simply a vacuum here.  There's not any -- not

09:21:26  5   any indication of what that arrangement was in this situation.

09:21:30  6           THE COURT:  All right.  Thank you.

09:21:32  7           MR. MORRIS:  Okay.  Our next objection relates to

09:21:35  8   failure to grant the third point for acceptance of

09:21:40  9   responsibility.  That third point is ordinarily reserved for

09:21:44  10  defendant's that don't go to trial.  However, in this case

09:21:48  11  Mr. Diehl waived a jury.  He stipulated to, by far, the vast

09:21:52  12  majority of the evidence that would have been presented at

09:21:56  13  trial.  He prevented the victims portrayed in the videotapes

09:22:02  14  from having to come testify.  And, in short, what happened was

09:22:07  15  a bench trial that centered around a very narrow issue relating

09:22:16  16  to interstate commerce nexus and simply, virtually tantamount

09:22:21  17  to a plea of guilty with reserving one factor.

09:22:23  18          And we suggest to the Court that there was a

09:22:25  19  significant amount of work and trial preparation on the part of

09:22:28  20  the Government that was saved by his actions.  And, certainly,

09:22:31  21  he gave up valuable rights -- right to trial by jury, right to

09:22:37  22  confront and cross-examine the witnesses, and other trial

09:22:39  23  rights -- by entering into those stipulations and by waiving a

09:22:43  24  jury.

09:22:47  25          Our next objection is we object to the -- basically

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 15 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/12 Page 15 of 122

14

09:22:55   1   the way the multi-count adjustment was applied.  It's or

09:23:04   2   contention that with respect to each of the three victims, all

09:23:08   3   counts relating to a particular victim being grouped together.

09:23:14   4   And the result would be three groups of counts and then would

09:23:19   5   be -- that the multi-count calculation thus be done on those

09:23:26   6   three groups.

09:23:27   7           Basically, the --

09:23:31   8           THE COURT:  And what would -- remind me what your

09:23:33   9   position is on what the result of that would be if you prevail

09:23:36   10  on that objection?

09:23:38   11           MR. MORRIS:  We've stated the calculation I think in

09:23:41   12  the sentencing memorandum.  But there was a five-level

09:23:47   13  adjustment for basically multiple groups.

09:23:50   14           THE COURT:  And what paragraph is that found in?

09:23:52   15           MR. MORRIS:  Let's see.

09:23:53   16           THE COURT:  I've read it.  But as you might gather, I

09:23:57   17  have a large amount of paperwork in front of me as I'm sitting

09:24:01   18  here going through this.  So I need you to direct me to it.

09:24:03   19           MR. MORRIS:  It begins on page 9 of the sentencing

09:24:06   20  memorandum.

09:24:07   21           THE COURT:  All right.  And this is the most recent

09:24:10   22  sentencing memorandum -- your sentencing memorandum or previous

09:24:14   23  counsel's sentencing memorandum?

09:24:15   24           MR. MORRIS:  My sentencing memorandum.

09:24:17   25           THE COURT:  All right.

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 16 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/19/16  Page 16 of 122

15

09:24:20  1          MR. MORRIS:  And the net effect would be a

09:24:22  2  three-level increase for a total number of units rather than a

09:24:26  3  five-level.  So the net effect.

09:24:27  4          THE COURT:  So the net effect would be a decrease of

09:24:33  5  two; is that correct?

09:24:34  6          MR. MORRIS:  That's correct.

09:24:35  7          THE COURT:  Let me get to your sentencing memorandum.

09:24:41  8          MR. MORRIS:  The argument begins on page 9, and then

09:24:43  9  the calculations are on page 10.

09:24:51  10          THE COURT:  All right.  Thank you.

09:24:54  11          MR. MORRIS:  And, again, there's the -- the

09:24:57  12  commentary indicates that the counts are not being grouped.

09:25:00  13  Basically, they were wrongs to a particular victim that

09:25:04  14  occurred on separate days, separate distinct wrongs.  In this

09:25:09  15  case, there's not any evidence that it did occur or not

09:25:12  16  sufficient evidence that it did occur on separate days to

09:25:15  17  warrant considering each of these accounts separately.

09:25:26  18          The final scoring objection relates to criminal

09:25:29  19  history category.  And Mr. Orr's objections, it's -- it's that

09:25:34  20  the  defendant's the 1991 case should not count under 4A1.2 of

09:25:39  21  the Federal Sentencing Guidelines.

09:25:40  22          And, basically, the -- the argument is that there are

09:25:45  23  certain types of defenses that are excluded under the

09:25:48  24  guidelines from consideration in a criminal history

09:25:51  25  calculation.  One category of defense that's excluded is

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 17 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 16 of 121

16

09:25:55  1    disorderly conduct.  If there was a jail -- unless there was a

09:25:59  2    jail sentence of 30 days or more assessed or more than one year

09:26:03  3    probation.

09:26:04  4         And what we're arguing about here is the menacing

09:26:11  5    conviction reported in paragraph 136.  The -- there is no

09:26:17  6    indication that he received more than 30 days jail time -- or

09:26:21  7    at least 30 days that wasn't suspended.  The presentence report

09:26:25  8    reflects that that sentence was suspended and doesn't state for

09:26:30  9    what period of time it was suspended.  So it doesn't qualify as

09:26:34  10   either a 30-day or a one-year probation.

09:26:37  11        The question is, is menacing substantially the same

09:26:41  12   as disorderly conduct?  I've cited -- this is page 11 of the

09:26:45  13   sentencing memorandum of mine.  I've cited the code provision

09:26:52  14   of the Ohio Revised Code that defines the offense of menacing

09:26:58  15   as follows:

09:26:59  16        No person shall knowingly cause another to believe

09:27:03  17   that the offender will cause physical harm to the person or

09:27:06  18   property of such other person or members of his immediate

09:27:09  19   family.

09:27:10  20        So just to parse that, it doesn't require that there

09:27:16  21   actually be harm.  It doesn't require that it be to a person.

09:27:19  22   It can be to the property -- the apprehension, that is, of harm

09:27:21  23   to a person of property, and it doesn't specify any particular

09:27:26  24   manner and means of occasioning that apprehension.

09:27:32  25        If you look by comparison at "disorderly conduct"

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 18 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 18 of 122

17

09:27:39  1  under Texas Penal Code 42.01(a), I've set out some of the

09:27:44  2  manners and means disorderly conduct under that statute.

09:27:48  3      Use of abusive, indecent, profane, or vulgar language

09:27:54  4  in a public place, and the language by its very utterance

09:27:58  5  tends to incite in immediate breach of the peace;

09:28:02  6      Makes an offensive gesture or display in a public

09:28:04  7  place, and the gesture tends to incite and immediate breach of

09:28:07  8  the peace;

09:28:08  9      And this number four is the one that's I think

09:28:11  10  particularly analogous:  Abuses or threatens a person in a

09:28:16  11  public place in an obviously offensive manner;

09:28:20  12      And then six:  Fights with another in a public place;

09:28:23  13      Or eight:  Displays a firearm or other deadly weapon

09:28:25  14  in a public place in a matter calculated to alarm.

09:28:30  15      Going back to number four, abuse or threatens a

09:28:33  16  person in a public place in an obviously offensive manner is

09:28:38  17  almost dead on to what we see with "menacing."  And it's our

09:28:44  18  contention that menacing, the class four misdemeanor for which

09:28:49  19  Mr. Diehl was convicted in Ohio in 1991, is simply tantamount

09:28:54  20  to that particular version of disorderly conduct in Texas and

09:28:58  21  should not be counted.

09:29:07  22      MR. MORRIS:  Your Honor, that's all of the scoring

09:29:08  23  objections.

09:29:09  24      THE COURT:  Do you want to address your objection to

09:29:11  25  paragraph 139 that is also included in this part of your

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 19 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 18 of 121

18

09:29:15  1  objection?

09:29:20  2       MR. MORRIS:  I think the objection to 139 was that

09:29:24  3  there were no court records supplied for that particular

09:29:30  4  objection or for that particular conviction showing a

09:29:33  5  disposition.  And I believe that the Probation Department

09:29:41  6  produced some court records and attached it to the addendum.

09:29:44  7       THE COURT:  Right.

09:29:45  8       MR. MORRIS:  Would the Court like for me to go

09:29:47  9  through the non-scoring objections at this point?

09:29:49 10       THE COURT:  Mr. Devlin, do you intend to offer

09:29:52 11  evidence on the non-scoring objections or only on the scoring

09:29:55 12  objections?

09:29:56 13       MR. DEVLIN:  Just the scoring objections, Your Honor.

09:29:57 14       THE COURT:  All right.  Then let's hold on the

09:29:59 15  non-scoring objections at this time.  At this time, Mr. Devlin,

09:30:03 16  you may respond to the six scoring objections.

09:30:16 17       MR. DEVLIN:  Judge, I intend to present brief

09:30:19 18  testimony really only about two of the objections.  That is

09:30:22 19  objection one, the vulnerable victim objection, and objection

09:30:26 20  three, the care, custody, and control issue.  It's probably not

09:30:31 21  going to be any more than what was presented at trial.  But I

09:30:35 22  just want to make sure that that information is in the record.

09:30:38 23       So what I can do is if I can address the objections

09:30:40 24  that I don't intend to put testimony on, that's just really

09:30:44 25  legal argument first, or I can put the testimony on first.

Case 1:10-cr-00295-LY Document 213-4 Filed 12/05/16 Page 20 of 122
Case 1:10-cr-00295-LY Document 135 Filed 01/19/12 Page 19 of 122
MULLEN - DIRECT                                                    19

| | | |
|---|---|---|
| 09:30:47 | 1 | THE COURT: Let's hear the testimony first. |
| 09:30:51 | 2 | MR. DEVLIN: Okay. |
| 09:30:51 | 3 | THE COURT: And then you can go through your |
| 09:30:52 | 4 | responses in order. And then I'll hear back from Mr. Morris. |
| 09:30:56 | 5 | MR. DEVLIN: Okay. |
| 09:30:57 | 6 | THE COURT: I think that will be the best way to |
| 09:30:59 | 7 | proceed. |
| 09:31:00 | 8 | MR. DEVLIN: Very good. Then I will go ahead and |
| 09:31:03 | 9 | call Special Agent Sean Mullen. |
| 09:31:05 | 10 | (Witness sworn) |
| 09:31:05 | 11 | **SEAN MULLEN,** |
| 09:31:05 | 12 | having been first duly sworn, testified as follows: |
| 09:31:05 | 13 | **DIRECT EXAMINATION** |
| 09:31:05 | 14 | **BY MR. DEVLIN:** |
| 09:31:27 | 15 | Q. Would you please state your name for the record and spell |
| 09:31:30 | 16 | your last name. |
| 09:31:30 | 17 | A. Sean Mullen, M-u-l-l-e-n. |
| 09:31:31 | 18 | Q. And how are you employed? |
| 09:31:32 | 19 | A. I'm a special agent with the Federal Bureau of |
| 09:31:34 | 20 | Investigation. |
| 09:31:35 | 21 | Q. And you're currently -- you're assigned to Austin, but |
| 09:31:38 | 22 | you're on temporary duty in Baltimore; is that correct? |
| 09:31:41 | 23 | A. Just outside of Washington, yes. |
| 09:31:42 | 24 | Q. Okay. And what is your position now? |
| 09:31:44 | 25 | A. I'm a supervisor special agent at the Innocent Images |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 21 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/16 Page 21 of 122
MULLEN – DIRECT

20

| | | |
|--|--|--|
| 09:31:49 | 1 | National Initiative Unit and Cyber Division at FBI |
| 09:31:51 | 2 | Headquarters. |
| 09:31:51 | 3 | Q.   And just briefly, what does that involve? |
| 09:31:53 | 4 | A.   The Innocent Images National Initiative Unit is the |
| 09:31:55 | 5 | program management for the child pornography cases, |
| 09:31:59 | 6 | exploitation of children that the FBI runs.  And as that, I'm a |
| 09:32:01 | 7 | program manager which has responsibility for 11 field offices. |
| 09:32:05 | 8 | THE COURT:  Would you restate that division.  Your |
| 09:32:07 | 9 | words kind ran together.  I'm not sure I got it right. |
| 09:32:11 | 10 | THE WITNESS:  Okay.  Innocent Images National |
| 09:32:12 | 11 | Initiative Unit. |
| 09:32:14 | 12 | THE COURT:  Okay.  Thank you. |
| 09:32:15 | 13 | THE WITNESS:  You're welcome. |
| 09:32:16 | 14 | Q.   (BY MR. DEVLIN) And Innocent Images is the name of the |
| 09:32:19 | 15 | program, I guess, that the FBI calls it's anti-child |
| 09:32:22 | 16 | exploitation efforts in general; is that correct? |
| 09:32:25 | 17 | A.   Yes, it is. |
| 09:32:26 | 18 | Q.   Okay.  You were the case agent, obviously, on this case; |
| 09:32:29 | 19 | is that right? |
| 09:32:29 | 20 | A.   Yes, I was. |
| 09:32:30 | 21 | Q.   And you had the opportunity to interview many of the |
| 09:32:35 | 22 | individuals, many of the victims, the victims' families |
| 09:32:39 | 23 | involved in this case; is that correct? |
| 09:32:40 | 24 | A.   Yes, sir. |
| 09:32:41 | 25 | Q.   And one of those was Jane Doe Number 3 and her family; is |

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 22 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/12 Page 21 of 122

MULLEN - DIRECT

21

| | | |
|---|---|---|
| 09:32:45 | 1 | that right? |
| 09:32:46 | 2 | A.   Yes, sir. |
| 09:32:46 | 3 | Q.   All right.  What generally was -- let me start out by |
| 09:32:54 | 4 | this:  What -- approximately how old was Jane Doe Number 3 at |
| 09:32:59 | 5 | the time that the videos that were introduced into evidence |
| 09:33:02 | 6 | were filmed?  How old was she at the time? |
| 09:33:04 | 7 | A.   She was approximately three years old at the time. |
| 09:33:06 | 8 | Q.   Okay.  How would you describe the nature of her and her |
| 09:33:13 | 9 | family's relationship with the defendant at that time? |
| 09:33:17 | 10 | A.   They were friends. |
| 09:33:19 | 11 | Q.   All right. |
| 09:33:19 | 12 | A.   Friendship. |
| 09:33:20 | 13 | Q.   All right.  They lived in the vicinity? |
| 09:33:22 | 14 | A.   Yes.  They lived just a few miles away, if I remember |
| 09:33:29 | 15 | correctly. |
| 09:33:29 | 16 | Q.   And is it also fair to say that Jane Doe Number 3's mother |
| 09:33:33 | 17 | was friends with Kerry Jenkins, who at the time was married to |
| 09:33:37 | 18 | the defendant? |
| 09:33:38 | 19 | A.   Yes, she was. |
| 09:33:39 | 20 | Q.   All right.  You interviewed Jane Doe Number 3's mother? |
| 09:33:43 | 21 | A.   Yes, sir. |
| 09:33:44 | 22 | Q.   As well as Kerry Jenkins? |
| 09:33:44 | 23 | A.   Yes, sir. |
| 09:33:45 | 24 | Q.   All right.  Did you address with them the issue of under |
| 09:33:49 | 25 | what circumstances Jane Doe Number 3 was left with the |

Case 1:10-cr-00297-LY   Document 213-4   Filed 12/05/16   Page 23 of 122
Case 1:10-cr-00297-LY   Document 135   Filed 01/11/16   Page 23 of 122

22

MULLEN - DIRECT

09:33:52  1  defendant in which he could have videotaped their -- his sexual

09:33:59  2  abuse of her?

09:33:59  3  A.    Yes, we did.

09:34:00  4  Q.    What -- what did they tell you?

09:34:02  5  A.    Jane Doe Number 3's mother advised that she recalled that

09:34:07  6  at least on one occasion, that she had went shopping with

09:34:10  7  Ms. Jenkins and had left her daughter in the custody and care

09:34:14  8  of Mr. Diehl.  But she could not exclude that there were more

09:34:20  9  occasions.  She said there were probably or possibly more

09:34:23  10  occasions.  I think "possibly" was the word she used.

09:34:26  11  Q.    How about Kerry Jenkins?  Did she address that?

09:34:27  12  A.    Ms. Jenkins recalled one account when they went shopping

09:34:31  13  at the Gap, but she didn't make any other statements regarding

09:34:35  14  any other further occasions.

09:34:36  15  Q.    Now, as part of your interview process with

09:34:38  16  Jane Doe Number 3's mother, was there any -- was she shown any

09:34:41  17  of the videos themselves?

09:34:42  18  A.    The videos, no.  She was shown still images from the

09:34:47  19  videos.

09:34:47  20  Q.    Why wasn't she shown the videos.

09:34:48  21  A.    In order to protect her, not to be traumatized by those

09:34:52  22  videos and what was depicted in them.

09:34:53  23  Q.    It was sufficient?  Really what you were looking for was

09:34:56  24  the identification of Jane Doe Number 3 in those videos, and

09:35:00  25  that could be accomplished with still photos?

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 24 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/16 Page 24 of 122
MULLEN - DIRECT                                                    23

```
09:35:03   1    A.   Yes, sir.

09:35:04   2    Q.   So was there much of a concern at the time in determining

09:35:07   3    exactly how many times she left Jane Doe Number 3 with the

09:35:10   4    defendant?

09:35:10   5    A.   No.  Not at the time.

09:35:14   6    Q.   Okay.  And as a three-year-old, was there -- in your

09:35:30   7    review of the videos, was there any -- anything indicating her

09:35:33   8    level of ability to communicate, in other words, in order to

09:35:37   9    speak, that were -- that were depicted in the videos?

09:35:40  10         MR. MORRIS:  Object to that, Your Honor.  The videos

09:35:43  11    speak for themselves.  What his observation is is irrelevant.

09:35:47  12    He has not been qualified as an expert to offer an opinion as

09:35:50  13    to her level of communication or the things that he was asked

09:35:55  14    about.

09:35:56  15         THE COURT:  Mr. Devlin?

09:35:57  16         MR. DEVLIN:  I'm just asking what was in the videos.

09:35:59  17    I'm not asking for expert opinion.

09:36:01  18         THE COURT:  Well, the Court has reviewed the videos.

09:36:03  19    I'm aware of what it looked like.  So I'm going to sustain the

09:36:08  20    objection.

09:36:08  21    Q.   (BY MR. DEVLIN) Okay.  Was there any indication in your

09:36:12  22    interviews with either Jane Doe Number 3's mother or Kerry

09:36:16  23    Jenkins that they were present when any of these videos that

09:36:19  24    were introduced into evidence were made?

09:36:20  25    A.   No, sir.
```

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 25 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/19/12  Page 25 of 122
MULLEN - DIRECT                                                    24

| | | |
|---|---|---|
| 09:36:21 | 1 | Q.   They were not present? |
| 09:36:22 | 2 | A.   They were not present. |
| 09:36:24 | 3 | Q.   All right.  And based on your investigation, was there any |
| 09:36:27 | 4 | other adult present during the making of any of those videos |
| 09:36:31 | 5 | involving Jane Doe Number 3? |
| 09:36:34 | 6 | A.   No, sir, there were not. |
| 09:36:35 | 7 | Q.   Was there anybody who Jane Doe Number 3 at that time could |
| 09:36:39 | 8 | have cried out to for help while those videos were being made? |
| 09:36:42 | 9 | A.   No, sir. |
| 09:36:43 | 10 | Q.   Okay.  Do you know how long Jane Doe Number 3 may have |
| 09:36:46 | 11 | been in -- based on your interviews, may have been in the |
| 09:36:50 | 12 | custody of the defendant while she was left with them while |
| 09:36:55 | 13 | perhaps Ms. Jenkins and Jane Doe Number 3's mother went out? |
| 09:37:00 | 14 | A.   No, I do not. |
| 09:37:00 | 15 | Q.   Did they indicate what they had been doing when they left |
| 09:37:04 | 16 | her there? |
| 09:37:04 | 17 | A.   They went shopping, and Ms. Jenkins recalled that they |
| 09:37:07 | 18 | were shopping at the Gap. |
| 09:37:09 | 19 | Q.   All right.  How far away did -- let me put it this way: |
| 09:37:16 | 20 | How -- were they next-door neighbors? |
| 09:37:18 | 21 | A.   No, they were not. |
| 09:37:19 | 22 | Q.   They lived -- Jane Doe Number 3 and her family lived a |
| 09:37:23 | 23 | little bit of distance from Mr. Diehl's house? |
| 09:37:25 | 24 | A.   That's correct, yes. |
| 09:37:26 | 25 | Q.   Okay.  So it wasn't as if she could walk out of the house |

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 26 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/19/11  Page 26 of 122
MULLEN - DIRECT                                                    25

| | | |
|---|---|---|
| 09:37:29 | 1 | and walk next door? |
| 09:37:30 | 2 | A.   No, sir. |
| 09:37:30 | 3 | Q.   Was there any other adult present in her home -- Jane Doe |
| 09:37:36 | 4 | Number 3's home at the time, to your knowledge? |
| 09:37:39 | 5 | A.   I believe her father was still living with her at the |
| 09:37:43 | 6 | time, yes. |
| 09:37:43 | 7 | Q.   Okay.  Would he have been working or not at home at the |
| 09:37:46 | 8 | time?  Do you know? |
| 09:37:47 | 9 | A.   I do not know. |
| 09:37:48 | 10 | Q.   That was not addressed at any of your interviews? |
| 09:37:51 | 11 | A.   No. |
| 09:37:51 | 12 | Q.   But he was clearly not -- he was not present when these |
| 09:37:54 | 13 | videos were being made. |
| 09:37:56 | 14 | A.   As far as I know, no, he was not. |
| 09:37:58 | 15 | Q.   All right.  So there's no indication that |
| 09:38:03 | 16 | Jane Doe Number 3 had been kidnapped to be present in |
| 09:38:06 | 17 | Mr. Diehl's house for the making of these videos; is that |
| 09:38:09 | 18 | right? |
| 09:38:09 | 19 | A.   That's right.  There's no information. |
| 09:38:11 | 20 | Q.   Was there any information that she was found wandering in |
| 09:38:14 | 21 | the street by Mr. Diehl and ever reported to the police as |
| 09:38:18 | 22 | being a lost child? |
| 09:38:19 | 23 | A.   No. |
| 09:38:19 | 24 | Q.   Okay.  Any other situation in which she might have been in |
| 09:38:27 | 25 | that house? |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 27 of 122
Case 1:10-cr-00297-LY Document 135 Filed 11/19/12 Page 26 of 122
MULLEN - CROSS                                    26

| | | |
|---|---|---|
| 09:38:28 | 1 | A.   No. |
| 09:38:28 | 2 | Q.   Other than being left there consciously by her mother |
| 09:38:32 | 3 | while she and Ms. Jenkins went out? |
| 09:38:34 | 4 | A.   No. |
| 09:38:35 | 5 | Q.   So it would be fair to say that was a trusted friendship |
| 09:38:38 | 6 | there? |
| 09:38:38 | 7 | A.   Yes. |
| 09:38:38 | 8 | Q.   Okay.  Nothing unusual about leaving her three-year-old in |
| 09:38:43 | 9 | the custody of the husband of somebody she knew? |
| 09:38:45 | 10 | A.   No, there wasn't. |
| 09:38:47 | 11 | Q.   All right.  And was there any indication that |
| 09:38:56 | 12 | Jane Doe Number 3 ever stayed over at Mr. Diehl's house? |
| 09:39:01 | 13 | A.   Not that I recall, no. |
| 09:39:02 | 14 | Q.   All right.  Didn't stay overnight or for any length of |
| 09:39:06 | 15 | time beyond that which she was left in his custody by her |
| 09:39:10 | 16 | mother? |
| 09:39:10 | 17 | A.   Not that I recall, no. |
| 09:39:13 | 18 |           MR. DEVLIN:  Okay.  I pass the witness. |
| 09:39:16 | 19 |           THE COURT:  Mr. Morris? |
| 09:39:17 | 20 |                    **CROSS-EXAMINATION** |
| 09:39:17 | 21 | **BY MR. MORRIS:** |
| 09:39:17 | 22 | Q.   It's true, isn't it, that there's total of about 11 |
| 09:39:24 | 23 | minutes of video involving Jane Doe 3? |
| 09:39:27 | 24 | A.   I don't recall the exact amount of time, how many minutes. |
| 09:39:30 | 25 | Q.   More than 15? |

Case 1:10-cr-00397-LY Document 218-4 Filed 12/05/16 Page 28 of 122
Case 1:10-cr-00397-LY Document 135 Filed 01/15/16 Page 28 of 122
MULLEN - CROSS                                                    27

09:39:31  1   A.   I do not recall, really.

09:39:35  2   Q.   Very, very brief period of video?

09:39:37  3   A.   That's fair.  I would say no more than 15 is probably

09:39:40  4   accurate, yes.

09:39:41  5   Q.   It's also true that your investigation has not shown the

09:39:44  6   dates -- date or dates on which these videos were made?

09:39:49  7   A.   Not exactly, no.

09:39:50  8   Q.   Could have been made as late as November of 2000?

09:39:54  9   A.   That's what our investigation revealed, yes.

09:39:56  10  Q.   At that point Jane Doe 3 would have been four years old,

09:40:00  11  would she have not?

09:40:01  12  A.   She would have approached -- yeah.  She would have just

09:40:03  13  turned four, if my recollection is correct, yes.

09:40:06  14  Q.   Okay.  Did -- did you question Jane Doe 3's mother about

09:40:11  15  what sort of things she did when she visited the Diehl home,

09:40:17  16  what sort of activities she engaged in?

09:40:19  17  A.   No I did not.

09:40:20  18  Q.   Have you talked to her about, for instance, a hot tub in

09:40:26  19  the backyard where maybe she and Ms. Diehl would congregate

09:40:29  20  sometimes?

09:40:30  21  A.   Yes.  I believe that either her or Ms. Jenkins mentioned

09:40:33  22  that.

09:40:33  23  Q.   That the two of them would be in hot tub sometimes?

09:40:37  24  A.   I do not recall that it was just the two of them.  But I

09:40:40  25  knew they did use the hot tub, yes.

Case 1:10-cr-00297-LY Document 215-4 Filed 12/05/16 Page 29 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/16 Page 28 of 122
MULLEN - REDIRECT                                               28

| 09:40:42 | 1 | Q.   Do you recall questioning her about what her daughter |
| 09:40:47 | 2 | would be doing when they would be around the hot tub? |
| 09:40:49 | 3 | A.   No, I do not. |
| 09:40:50 | 4 | Q.   Do you recall questioning her about how closely she |
| 09:40:54 | 5 | watched her daughter when she was at the Diehl home? |
| 09:40:58 | 6 | A.   No, I do not. |
| 09:41:00 | 7 | MR. MORRIS:  Pass the witness. |
| 09:41:06 | 8 | THE COURT:  Mr. Devlin? |
| 09:41:07 | 9 | **REDIRECT EXAMINATION** |
| 09:41:07 | 10 | **BY MR. DEVLIN:** |
| 09:41:07 | 11 | Q.   I guess I'm trying to determine when these happened.  What |
| 09:41:11 | 12 | is it that distinguishes each of the videos involving |
| 09:41:14 | 13 | Jane Doe Number 3 that to you indicates they may have been done |
| 09:41:18 | 14 | at different times and dates? |
| 09:41:20 | 15 | A.   Well, on each video or some of the videos she has |
| 09:41:22 | 16 | different clothing on.  Her nails -- her fingernails have nail |
| 09:41:26 | 17 | polish on them in a few of the videos, and then she has a |
| 09:41:30 | 18 | different colored head band as well.  And the videos are shot |
| 09:41:33 | 19 | in different rooms within Mr. Diehl's residence. |
| 09:41:36 | 20 | Q.   Was there any indication in any of your interviews that |
| 09:41:40 | 21 | she left clothes at Mr. Diehl's residence? |
| 09:41:41 | 22 | A.   No, sir. |
| 09:41:42 | 23 | Q.   Or any other accessories or things like that? |
| 09:41:44 | 24 | A.   No, sir. |
| 09:41:44 | 25 | Q.   And in some you said she's wearing what looks like |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 30 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/16 Page 29 of 122
MULLEN - RECROSS

29

| | | |
|---|---|---|
| 09:41:47 | 1 | fingernail polish and another she's not? |
| 09:41:50 | 2 | A.    That's correct, yes. |
| 09:41:51 | 3 | Q.    Perhaps different necklaces and earrings, you said? |
| 09:41:56 | 4 | A.    I believe earrings and a headband. |
| 09:41:58 | 5 | Q.    Is there also anything about the lighting in any of the |
| 09:42:02 | 6 | different videos that indicate they were done at different |
| 09:42:05 | 7 | times of day? |
| 09:42:05 | 8 | A.    The lighting appears in one of them to be a lot of natural |
| 09:42:09 | 9 | light coming into one room, and the other one appears to be |
| 09:42:11 | 10 | artificially light only with a lot of shadows. |
| 09:42:14 | 11 | MR. DEVLIN:  Pass the witness. |
| 09:42:15 | 12 | THE COURT:  Mr. Morris, anything further? |
| 09:42:18 | 13 | MR. MORRIS:  One brief area. |
| 09:42:20 | 14 | **RECROSS-EXAMINATION** |
| 09:42:20 | 15 | **BY MR. MORRIS:** |
| 09:42:20 | 16 | Q.    You talked to Jane Doe 3's mother about her going to the |
| 09:42:27 | 17 | Star Ranch Nudist Camp with the Diehl family? |
| 09:42:30 | 18 | A.    Yes, I did. |
| 09:42:31 | 19 | Q.    And they spent the night there sometimes, didn't they? |
| 09:42:33 | 20 | A.    Yes, they did. |
| 09:42:34 | 21 | Q.    And then sometimes they would come back over to the |
| 09:42:35 | 22 | Diehl's home after spending the night at the Star Ranch? |
| 09:42:39 | 23 | A.    That's my understanding, yes. |
| 09:42:40 | 24 | MR. MORRIS:  Pass the witness. |
| 09:42:44 | 25 | ******************** |

Case 1:11-cr-00297-LY   Document 213-4   Filed 12/05/16   Page 31 of 122
Case 1:11-cr-00297-LY   Document 135   Filed 01/15/16   Page 31 of 122
MULLEN - FURTHER DIRECT                                          30

| | | |
|---|---|---|
| 09:42:44 | 1 | **FURTHER DIRECT EXAMINATION** |
| 09:42:44 | 2 | **BY MR. DEVLIN:** |
| 09:42:44 | 3 | Q.   But just to make -- just to make clear, all the videos |
| 09:42:48 | 4 | involving Jane Doe Number 3 filmed within the Diehl residence; |
| 09:42:51 | 5 | is that correct? |
| 09:42:52 | 6 | THE COURT:  That's correct, yes. |
| 09:42:54 | 7 | MR. DEVLIN:  Pass the witness. |
| 09:42:54 | 8 | THE COURT:  Mr. Morris? |
| 09:42:55 | 9 | MR. MORRIS:  No further questions, Your Honor. |
| 09:42:57 | 10 | THE COURT:  I have a question, Agent Mullen.  If I |
| 09:43:00 | 11 | recall your testimony correctly from the trial, there was |
| 09:43:03 | 12 | testimony that you were never able, at least as of that time, |
| 09:43:11 | 13 | to access what Mr. Diehl had stored in his computer that you |
| 09:43:15 | 14 | seized; is that correct?  Am I remembering that correctly? |
| 09:43:17 | 15 | THE WITNESS:  Yes, Your Honor.  That's correct. |
| 09:43:19 | 16 | THE COURT:  Have you been able to access it between |
| 09:43:21 | 17 | the trial and now? |
| 09:43:22 | 18 | THE WITNESS:  No, sir.  The hard drive is still |
| 09:43:24 | 19 | encrypted. |
| 09:43:25 | 20 | THE COURT:  All right.  And so you have been unable, |
| 09:43:29 | 21 | through the normal means you use, to break the encryption; is |
| 09:43:31 | 22 | that correct? |
| 09:43:32 | 23 | THE WITNESS:  That is correct, yes. |
| 09:43:33 | 24 | THE COURT:  Did you ever request of Mr. Diehl that he |
| 09:43:36 | 25 | provide you with the encryption information so you could view |

Case 1:10-cr-00397-LY Document 185-4 Filed 12/05/16 Page 32 of 122
Case 1:10-cr-00397-LY Document 135 Filed 01/15/13 Page 32 of 122

31

| 09:43:40 | 1 | what was in the hard drive? |
| 09:43:41 | 2 | THE WITNESS:  No.  I don't believe we did. |
| 09:43:43 | 3 | THE COURT:  All right.  Thank you. |
| 09:43:44 | 4 | MR. DEVLIN:  I have no questions, Your Honor. |
| 09:43:45 | 5 | MR. MORRIS:  Nothing further of this witness, |
| 09:43:47 | 6 | Your Honor. |
| 09:43:58 | 7 | MR. DEVLIN:  Judge, in terms of the normal victim |
| 09:44:01 | 8 | enhancement, I think that the fact that -- |
| 09:44:05 | 9 | THE COURT:  Just a minute.  Does that conclude the |
| 09:44:07 | 10 | testimony you were going to put on for the purposes of the |
| 09:44:09 | 11 | objections? |
| 09:44:09 | 12 | MR. DEVLIN:  Yes, it does, Your Honor. |
| 09:44:10 | 13 | THE COURT:  And, Mr. Morris, do you have any |
| 09:44:12 | 14 | testimony or evidence for purposes of the objections? |
| 09:44:15 | 15 | MR. MORRIS:  No, Your Honor, I do not. |
| 09:44:16 | 16 | THE COURT:  All right.  Now, Mr. Devlin. |
| 09:44:18 | 17 | MR. DEVLIN:  Thank you, Your Honor. |
| 09:44:19 | 18 | The enhancement for age that is contained in the |
| 09:44:24 | 19 | child pornography guidelines is just simply an enhancement for |
| 09:44:28 | 20 | under 12, prepubescent.  It does not distinguish between |
| 09:44:32 | 21 | 11 year-olds and three-year-olds or seven-year-olds or |
| 09:44:35 | 22 | one-year-olds or infants. |
| 09:44:37 | 23 | I think it's pretty clear that a three-year-old left |
| 09:44:41 | 24 | in the situation that she was in at Mr. Diehl's house, her |
| 09:44:44 | 25 | mother obviously trusted Mr. Diehl.  They had at least a |

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 33 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/13  Page 33 of 122

32

| 09:44:49 | 1 | trusted relationship through friendship at the house. |

09:44:49  1  trusted relationship through friendship at the house.

09:44:52  2      THE COURT:  Well, let me -- are you dealing with

09:44:54  3  objection one at this point?

09:44:56  4      MR. DEVLIN:  I guess I'm kind of dealing with both

09:44:58  5  one and three.  They're almost kind of intertwined in a lot of

09:45:01  6  ways.  But ...

09:45:02  7      THE COURT:  Why don't you try to --

09:45:03  8      MR. DEVLIN:  Trying to.

09:45:05  9      THE COURT:  -- untwine them, because Mr. Morris

09:45:08  10  presented them separately.

09:45:10  11      MR. DEVLIN:  Right.

09:45:11  12      THE COURT:  And they do each carry a two-point

09:45:14  13  enhancement.  And so I don't want to get them mixed between one

09:45:17  14  another, so I can rule separately on them.

09:45:19  15      MR. DEVLIN:  Right.  I will address the vulnerable

09:45:22  16  victim first.  And as I mentioned, there are four levels added

09:45:25  17  for being under 12.  But that doesn't further distinguish

09:45:28  18  between, say, an 11-year-old or a three-year-old or

09:45:31  19  one-year-old or infant or anything else.

09:45:34  20      And I think it's probably fair to say, I think, that

09:45:38  21  the Court can use its own common sense in saying that there's

09:45:42  22  an increased vulnerability in a three-year-old versus a nine-,

09:45:46  23  ten-, or 11-year-old based on just simple cognitive

09:45:49  24  experiential differences.  I don't think we need to have a

09:45:51  25  psychiatrist -- a child psychiatrist come in here and tell us

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 34 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/12 Page 33 of 122

33

09:45:54 1  that a three-year-old is going to just simply have a different

09:45:57 2  range of understanding and interpretation and ability, perhaps,

09:46:01 3  or even desire to cry out for help than maybe an older child

09:46:07 4  who is under 12.

09:46:09 5        She was left alone with the defendant.  She was not a

09:46:13 6  next-door neighbor.  She lived some distance away.  It wasn't a

09:46:16 7  situation that she could leave.  She probably didn't even

09:46:20 8  understand at the time what was going on and that it was

09:46:25 9  horribly wrong and probably did not realize that there was

09:46:30 10 anything to be said, which might be why it was never reported

09:46:34 11 to her mother.

09:46:35 12       So the increased vulnerability there, Judge, is not

09:46:40 13 based on her age, necessarily.  While age does play a factor,

09:46:43 14 it's just simply the cognitive and the experiential differences

09:46:47 15 that she had that made her extra vulnerable.  But, also, she

09:46:50 16 was left in a situation where her mother said, Hey, I trust

09:46:54 17 these people.  I don't mind leaving you here with Mr. Diehl to

09:46:57 18 be cared for until I return.  And so I think that that type of

09:47:02 19 situation also gives her some reassurance regardless of age

09:47:07 20 that she's in a safe place when she actually was not.

09:47:10 21       And so just on that basis, Judge, I believe that she

09:47:13 22 was vulnerable for reasons that went beyond just age under the

09:47:19 23 situation.  There was no reason for her not to trust Mr. Diehl

09:47:23 24 or not to trust that anything that he was doing was improper.

09:47:26 25       And so that's all I have with vulnerable victim.  And

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 35 of 122
Case 1:10-cr-00297-LY Document 135 Filed 04/15/16 Page 35 of 122

34

09:47:31  1  I guess I'll leave it at that.  Do you want me to move on to

09:47:35  2  the other objections at this point?

09:47:37  3       THE COURT:  Well, let me ask a question about that.

09:47:44  4  Mr. Morris's objection is basically that once you have applied

09:47:54  5  the four levels for the victim being under 12, you don't apply

09:48:01  6  the initial two levels for vulnerable victim unless it is not

09:48:07  7  age related.  Is that correct, Mr. Morris?  Is that basically

09:48:10  8  your objection?

09:48:11  9       MR. MORRIS:  That's exactly what the guideline says.

09:48:13  10      THE COURT:  And that what they have done here -- what

09:48:15  11 has been done here is to apply that on a purely age related

09:48:21  12 basis.

09:48:21  13      Now, when you read -- usually the guidelines manual

09:48:26  14 is not the clearest worded document.  But in reading

09:48:35  15 Application Note 2, Section 3A1.1 -- well, let me start out:

09:48:43  16 3A1.1 applies to hate crime motivation or vulnerable victims.

09:48:51  17 Application Note 2 reads:  For purposes of subsection (b) --

09:48:54  18 which is what we're dealing with here, subjection (b)(2) -- or

09:49:01  19 (b)(1).  Pardon me -- says:  "Vulnerable victim" means a person

09:49:08  20 (A) who is a victim of the offense of conviction and any

09:49:11  21 conduct for which the defendant is accountable.  That's

09:49:14  22 satisfied.  And (B) who is unusually vulnerable due to age,

09:49:18  23 physical, or mental condition, or who is otherwise particularly

09:49:23  24 susceptible to the criminal conduct.

09:49:26  25      Now, I address this to both of you because it appears

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 36 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/16 Page 36 of 122

35

09:49:29  1  that Application Note 2(b) brings age back in as a potential

09:49:41  2  factor in 3A1.1(b)(1).  Otherwise, it wouldn't have been

09:49:48  3  mentioned.

09:49:49  4       Mr. Devlin, do you have a comment on that?

09:49:53  5       MR. DEVLIN:  Well, I think she was unusually

09:49:56  6  susceptible, Judge, because of the trusting relationship that

09:49:59  7  existed at the time between her mother and Mr. Diehl and

09:50:02  8  Ms. Jenkins.  It's different when, you know, even at the age of

09:50:07  9  three, some three-year-olds are able --

09:50:09 10       THE COURT:  Well, let me stop you right there.  Is it

09:50:12 11  your position that age can be considered a second time or it

09:50:20 12  cannot?

09:50:21 13       MR. DEVLIN:  Well, I don't see how you can't consider

09:50:24 14  age.  I mean, it's just a part of the human condition that

09:50:26 15  somebody is of a certain age and of a certain cognitive

09:50:29 16  ability.

09:50:29 17       THE COURT:  I understand.  But Mr. Morris seems quite

09:50:32 18  certain that the law says you consider it when you place the

09:50:36 19  four-level enhancement, but you don't consider it again on the

09:50:39 20  two-level enhancement.  And the application note uses the word

09:50:47 21  "age."  I'm just asking you to distinguish the law he cites or

09:50:50 22  his position on this, because the burden is on the Government

09:50:54 23  at this stage.

09:50:55 24       MR. DEVLIN:  Right.  I'm trying to do that, Judge, as

09:50:57 25  best I can within the guidelines which, as you said, are -- are

Case 1:10-cr-00297-LY   Document 213-4   Filed 12/05/16   Page 37 of 122
Case 1:10-cr-00297-LY   Document 135   Filed 01/15/11   Page 37 of 122

36

| | | |
|---|---|---|
| 09:51:01 | 1 | not the most clear words.  But at the same time, I think that |
| 09:51:07 | 2 | the fact that she was left -- I guess it really doesn't matter |
| 09:51:11 | 3 | if she was three or five or seven and left in this trusting |
| 09:51:14 | 4 | relationship.  She's going to have her guard down a little bit |
| 09:51:18 | 5 | more than she would if she had approached a stranger on the |
| 09:51:22 | 6 | street who might have wanted to do the same things to her. |
| 09:51:25 | 7 |        There was, again, a trust built between her family |
| 09:51:27 | 8 | and Mr. Diehl and his family that would cause her to think, |
| 09:51:33 | 9 | regardless of her age, that whatever he asked her to do would |
| 09:51:38 | 10 | be okay, because her mother trusted him; therefore, she is |
| 09:51:41 | 11 | going to trust him.  And so I think that is a way to |
| 09:51:45 | 12 | distinguish age. |
| 09:51:46 | 13 |        But at the same time, I think that you have to |
| 09:51:48 | 14 | account for the cognitive and experiential aspects of a |
| 09:51:53 | 15 | three-year-old versus that of a seven-year-old.  It's not |
| 09:51:57 | 16 | age -- I don't think age is completely taken out of it because |
| 09:52:00 | 17 | you can't do that.  But I don't think age is going to be the |
| 09:52:04 | 18 | exclusive reason.  We're not asking you do it because she's |
| 09:52:09 | 19 | simply three.  We're asking you because, again, of the |
| 09:52:11 | 20 | cognitive differences between her and, say, an older child. |
| 09:52:14 | 21 |        I don't think the enhancement was applied with the |
| 09:52:17 | 22 | older children, although I think that they were equally |
| 09:52:20 | 23 | vulnerable in other ways that we won't go into at this point. |
| 09:52:24 | 24 | But at the same time, I don't think age can be ever 100 percent |
| 09:52:28 | 25 | separated from the consideration under the vulnerable victim as |

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 38 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 38 of 122

37

09:52:32  1    long as you're just not simply saying, Well, she's three and,

09:52:36  2    therefore, that involves a much bigger difference.

09:52:39  3          I think because she's three, she has certain

09:52:42  4    cognitive abilities and skills and decision-making tools

09:52:45  5    available to her that are much more limited than, say, an older

09:52:49  6    child has.  An older child might recognize that that is wrong.

09:52:53  7    A three-year-old is not going to recognize that what was

09:52:56  8    happening to her was wrong.  And so, again, yes, age does come

09:53:00  9    into play.  But it's -- it's just a fact of the human

09:53:05 10    condition, that that's the developmental level that she is at.

09:53:10 11          I'm not saying that there is anything, you know,

09:53:13 12    physically or mentally wrong with her at all.  She's just

09:53:16 13    three, and three-year-olds just don't know the difference

09:53:19 14    between right and wrong in actions at that age.  An eight- or

09:53:25 15    nine-year-old would probably know much better that what

09:53:29 16    happened to Jane Doe Number 3 was a wrong act and might be more

09:53:33 17    likely to report it.

09:53:34 18          And so -- but, again, I'm relying more heavily on the

09:53:37 19    fact that she was susceptible because of the friendship and the

09:53:40 20    trusting relationship between her family and the defendant's

09:53:43 21    family.  That made her much more vulnerable than, say, a

09:53:47 22    stranger who was a three-year-old might have been, because a

09:53:51 23    three-year-old might have had enough cognitive ability to not

09:53:56 24    encounter a stranger, whereas the guard was down when her

09:53:59 25    mother left her there alone under the circumstances.

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 39 of 122
Case 1:10-cr-00297-LY  Document 135-4  Filed 01/19/16  Page 38 of 122

38

09:54:02  1          Again, not blaming her mother.  It just was the

09:54:05  2  situation.  She had no one to cry out to.  Until her mother

09:54:08  3  came to us, she never did cry out, because we would have known

09:54:11  4  about this a long time ago.  So he took advantage of a

09:54:15  5  situation that he knew there was a trusting relationship on.

09:54:18  6          THE COURT:  Okay.  Well, wait just a minute.  I want

09:54:24  7  to hear you through and then I'll come back to Mr. Morris.

09:54:26  8          MR. DEVLIN:  I'm sorry.  Through all the objections,

09:54:28  9  Judge?

09:54:28  10          THE COURT:  Yeah.  Now we're at number two.

09:54:30  11          MR. DEVLIN:  Okay.  The physical restraint, Judge, I

09:54:33  12  think you can -- we're relying exclusively on the video of

09:54:39  13  that.  I think you can judge for yourself whether there was

09:54:41  14  physical restraint.  There doesn't have to be any length of

09:54:44  15  time on the physical restraint.  There was physical restraint

09:54:47  16  imposed on that video that -- that you've seen for yourself.

09:54:50  17  And I think that that is sufficient to warrant the enhancement

09:54:55  18  and overcome that objection.  And that's all that I have to say

09:54:58  19  about that objection.

09:55:04  20          THE COURT:  Number three?

09:55:05  21          MR. DEVLIN:  Number three, again, there will only be

09:55:07  22  a few ways that Jane Doe Number 3 could be in the defendant's

09:55:11  23  custody at the time:  She was either kidnapped, found

09:55:15  24  wandering.  If she was found wandering and sexually abused

09:55:18  25  before he called the police, that wouldn't be helpful to the

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 40 of 122
Case 1:10-cr-00297-LY Document 135 Filed 04/15/11 Page 39 of 121

39

| 09:55:22 | 1 | defendant.  And the only other thing is that she was left there |
| 09:55:25 | 2 | in a trusted relationship.  Her mother would not have left her |
| 09:55:28 | 3 | just in the house by herself.  She would have ensured that |
| 09:55:31 | 4 | someone of appropriate age was there, and that was the |
| 09:55:33 | 5 | defendant. |
| 09:55:35 | 6 | He was undoubtedly home alone when he filmed his |
| 09:55:38 | 7 | sexual abuse of Jane Doe Number 3 as well as the other |
| 09:55:42 | 8 | victims.  He was the adult in charge.  I think the |
| 09:55:48 | 9 | circumstantial evidence indicates that he was the only adult |
| 09:55:50 | 10 | there.  There was no other adult there that -- it wasn't |
| 09:55:52 | 11 | apparent from the videos.  We have no other information that |
| 09:55:55 | 12 | any other adult or caretaker was there. |
| 09:55:58 | 13 | And in terms of the multiple occasions, Judge, you |
| 09:56:00 | 14 | could see for yourself the videos I think do speak for |
| 09:56:04 | 15 | themselves.  This was not -- these charges were not a situation |
| 09:56:07 | 16 | where there was one video of her that was cut into multiple |
| 09:56:11 | 17 | segments and charged separately.  Each of the charged videos in |
| 09:56:15 | 18 | the indictment attempted to distinguish between other videos |
| 09:56:18 | 19 | based on either location or primarily clothing worn.  In this |
| 09:56:27 | 20 | case, fingernail color, necklaces, earrings, and headbands. |
| 09:56:31 | 21 | She's in different clothes in every single occasion.  And that |
| 09:56:34 | 22 | would indicate -- and without there being a relationship where |
| 09:56:37 | 23 | she was leaving clothes at the defendant's residence -- and |
| 09:56:40 | 24 | that's the only information that we have, is that that was not |
| 09:56:44 | 25 | being done -- it would indicate that all of these situations |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 41 of 122
Case 1:10-cr-00297-LY Document 135 Filed 04/15/11 Page 41 of 122

40

| 09:56:47 | 1 | occurred at different times. |
| 09:56:49 | 2 | So the interviews that Agent Mullen had with Jane Doe |
| 09:56:53 | 3 | Number 3's mother who simply said, probably more off the cuff, |
| 09:56:57 | 4 | yeah, I left her there at least once. This is years later when |
| 09:57:01 | 5 | these interviews are occurring, and she was not told about, you |
| 09:57:07 | 6 | know, the multiple videos and why that might be an important |
| 09:57:10 | 7 | answer to get more specific on. She was being obviously very |
| 09:57:13 | 8 | honest about it. But at that point it was more of a |
| 09:57:18 | 9 | matter-of-fact remark. But it clearly indicates that there |
| 09:57:21 | 10 | were different occasions that she was left in his custody, |
| 09:57:24 | 11 | because he would not have committed these acts of sexual abuse |
| 09:57:29 | 12 | in the presence of anybody else and anybody in a trusted |
| 09:57:32 | 13 | relationship with Jane Doe Number 3. |
| 09:57:35 | 14 | So it indicates that there were several occasions |
| 09:57:37 | 15 | that she was left in his custody. The only information that we |
| 09:57:43 | 16 | have based on even the videos is that they were the only two in |
| 09:57:47 | 17 | the vicinity. They were done in bedrooms or other -- other |
| 09:57:51 | 18 | places that could be closed off from other portions of the |
| 09:57:55 | 19 | house. But there would certainly not be another adult. He |
| 09:58:00 | 20 | would not find himself alone in a room with Jane Doe Number 3 |
| 09:58:04 | 21 | under the circumstance, and I think the Court can use its |
| 09:58:06 | 22 | common sense in determining that. |
| 09:58:08 | 23 | That's all I have on the care and custody issue, |
| 09:58:18 | 24 | Your Honor. |
| 09:58:18 | 25 | THE COURT: All right. Number 4? |

Case 1:10-cr-00397-LY  Document 213-4  Filed 12/05/16  Page 42 of 122
Case 1:10-cr-00397-LY  Document 135-4  Filed 01/15/16  Page 42 of 122

41

09:58:19  1       MR. DEVLIN:  Number 4 the language of 3E1.1 does not

09:58:24  2  warrant the awarding of a third point.  He probably doesn't

09:58:31  3  deserve the first two, but I will say that his stipulation did

09:58:35  4  prevent having the other victims come in to testify.  That was

09:58:40  5  all done pretty late in the process.  There was no guilty plea

09:58:44  6  here, as you know.  The 3E1.1(b) says that he's got to timely

09:58:51  7  provide complete information to the government concerning his

09:58:54  8  own involvement in the offense or timely notify authorities of

09:58:57  9  his intention to enter a plea of guilty, thereby permitting the

09:59:02  10  government to avoid preparing for trial and permitting the

09:59:04  11  Court to allocate its resources efficiently.

09:59:08  12       He didn't plead guilty.  He did stipulate to most of

09:59:12  13  the elements.  But one of the more important elements, the

09:59:14  14  interstate commerce nexus was one that we had to prove up with

09:59:18  15  testimony and we did so.  And I think that he's -- his position

09:59:22  16  has been that he did not have any -- he did not put these

09:59:26  17  videos on the Internet, which I think is a blatant lie, because

09:59:30  18  there would be no other way it would get on the Internet.  It

09:59:33  19  all defies common sense and reasoning to believe that.

09:59:36  20       But I don't think he's deserving of the third point

09:59:39  21  under the circumstances.  Given the first two points which he's

09:59:42  22  has been given, but not the third point.  He doesn't qualify

09:59:46  23  for it under the guidelines.

09:59:47  24       THE COURT:  Special Agent Mullen in response to a

09:59:50  25  question by the Court stated that Mr. Diehl had never been

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 43 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/11 Page 43 of 122

42

| | | |
|---|---|---|
| 09:59:54 | 1 | requested to give up the encryption information in order that |
| 10:00:01 | 2 | his hard drive on his computer could be examined.  Did anybody |
| 10:00:05 | 3 | to your knowledge for the government, Assistant U.S. Attorney |
| 10:00:09 | 4 | or any other agent, ever request that Mr. Diehl provide the |
| 10:00:15 | 5 | encryption key in order that the hard drive of the computer |
| 10:00:19 | 6 | could be examined. |
| 10:00:21 | 7 | MR. DEVLIN:  No.  And I believe the reason is he |
| 10:00:23 | 8 | invoked his right to a lawyer. |
| 10:00:29 | 9 | THE COURT:  All right.  Number 5, the grouping. |
| 10:00:31 | 10 | MR. DEVLIN:  In all my years of doing the -- of doing |
| 10:00:35 | 11 | this, Judge, as clear as I am about most of the sentencing |
| 10:00:38 | 12 | guidelines, grouping has always eluded me.  And I'm sure it's |
| 10:00:43 | 13 | probably eluded others.  But I think one thing is pretty clear |
| 10:00:46 | 14 | from the grouping, and that is:  Under 3D1.2, offenses under |
| 10:00:51 | 15 | 2G2.1, which is what we're talking about, are specifically |
| 10:00:55 | 16 | excluded from the grouping process.  And, therefore, each |
| 10:00:58 | 17 | constitutes a separate harm. |
| 10:01:00 | 18 | Again, I want to go back to the emphasizing that in |
| 10:01:05 | 19 | each of the counts of the indictment, a video was alleged that |
| 10:01:08 | 20 | was separate from the other videos.  Again, we did not take one |
| 10:01:12 | 21 | five-minute video, separate it into one-minute segments, and |
| 10:01:18 | 22 | call each of those a different count. |
| 10:01:21 | 23 | We -- the indictment took pains to ensure that there |
| 10:01:24 | 24 | was some reasonable way that the Court and the jury, who we |
| 10:01:28 | 25 | thought we were going to go before, could distinguish between |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 44 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 43 of 122

43

10:01:31 1  videos without having to indicate a time or date that they were

10:01:36 2  done.

10:01:37 3       They were in different places, different clothing,

10:01:42 4  different acts were done.  Perhaps the victim looked a little

10:01:48 5  bit different with longer hair or maybe looked a little bit

10:01:52 6  older or younger in a particular video that would distinguish

10:01:54 7  the timing.  All of those indicate that they were separate

10:02:00 8  acts; that they were done at separate times; and each of those

10:02:03 9  acts involved a separate harm.  There was a different sexual

10:02:06 10 assault every single time, which would -- which would lead to a

10:02:11 11 separate harm.  And so each of the productions does involve a

10:02:16 12 separate harm and a separate victim.  And that's why 2G --

10:02:21 13 excuse me -- 3D1.2 excludes the 2G2.1 offenses from its

10:02:27 14 operation.

10:02:28 15      So as complicated as the grouping rules can be,

10:02:30 16 that's a pretty clear statement that emerges that these are not

10:02:34 17 to be grouped at all under those rules.

10:02:37 18      And then, finally, Judge, on the menacing conviction,

10:02:41 19 I simply adhere and concur with Probation's response to that.

10:02:47 20      THE COURT:  Thank you.  Mr. Morris, you may respond.

10:02:54 21      MR. MORRIS:  Your Honor, let me begin by directing

10:03:01 22 your attention to the language in the guideline I'm relying on

10:03:05 23 in the vulnerable victim issue, the application notes of 3A1.1

10:03:11 24 Application Note 2.

10:03:13 25      THE COURT:  It's the third paragraph you're relying

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 45 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/13/11 Page 44 of 122

44

| | | |
|---|---|---|
| 10:03:15 | 1 | on? |
| 10:03:16 | 2 | MR. MORRIS:  Correct. |
| 10:03:16 | 3 | THE COURT:  Is that correct? |
| 10:03:18 | 4 | MR. MORRIS:  Let me make sure. |
| 10:03:19 | 5 | THE COURT:  Which specifically under your |
| 10:03:24 | 6 | construction, that takes age back out when it says:  For |
| 10:03:32 | 7 | example, if the offense guideline provides an enhancement for |
| 10:03:35 | 8 | the age of the victim, this subsection would not be applied |
| 10:03:37 | 9 | unless victim was unusually vulnerable for reasons unrelated to |
| 10:03:42 | 10 | age. |
| 10:03:42 | 11 | MR. MORRIS:  Correct. |
| 10:03:43 | 12 | THE COURT:  I'm aware that that's where you are. |
| 10:03:46 | 13 | MR. MORRIS:  It appears to me that that directive is |
| 10:03:48 | 14 | very clear, unlike a lot of other directives.  If it relates to |
| 10:03:53 | 15 | age, you don't apply it.  If it's unrelated to age, you do. |
| 10:04:01 | 16 | And all of the factors that have been put forth here by the |
| 10:04:03 | 17 | government relate to age. |
| 10:04:05 | 18 | The enhancement for under 12 has been applied, the |
| 10:04:09 | 19 | four-level enhancement.  Certainly the argument can be made and |
| 10:04:13 | 20 | common sense will tell us that an 11-year-old is different than |
| 10:04:17 | 21 | a 12-year-old, 10 different than 11, et cetera, et cetera in |
| 10:04:21 | 22 | terms of development.  But it all relates to age.  And this is |
| 10:04:25 | 23 | a -- this is very severe guideline.  The Sentencing Commission |
| 10:04:29 | 24 | is starting at level 27 on the 2G2.1.  And they had something |
| 10:04:36 | 25 | in mind here when they increased four levels for age.  And then |

Case 1:11-cr-00297-LY Document 218-4 Filed 12/05/16 Page 46 of 122
Case 1:11-cr-00297-LY Document 135 Filed 01/15/16 Page 45 of 122

45

10:04:40  1  they further say, don't increase any more if it's just for

10:04:43  2  age.  It appears to be very clear that that's the circumstance

10:04:47  3  that would reflect -- with respect to this enhancement.

10:04:50  4        Now, with regard to the further vulnerable victim

10:05:01  5  enhancement --

10:05:03  6        No.  I'm sorry.  Move on to the restraint.  Again,

10:05:17  7  the guideline -- the language of the guideline and the

10:05:20  8  commentary makes it clear by examples that it uses, we're

10:05:25  9  talking about forcible restraint.  We're talking about

10:05:27 10  significant impediment of someone's movement by tying them up,

10:05:34 11  binding them, handcuffing them in some of the examples that I

10:05:38 12  get, bound or locked up.  And there is simply nothing in those

10:05:44 13  videos that rises to that level.

10:05:47 14        Again, this is a severe guideline we're starting out

10:05:50 15  with.  This enhancement was intended to apply to an aggravated

10:05:54 16  situation.  And we simply don't have that aggravated factor in

10:05:58 17  this case.

10:05:59 18        With respect to the care and custody issue, we can

10:06:08 19  speculate on what happened.  But the standard is:  What does

10:06:12 20  the evidence show by a preponderance of the evidence?  What the

10:06:17 21  evidence shows is that there is approximately 11 minutes of

10:06:22 22  video, and the Court has seen that, involving Jane Doe 3.  That

10:06:26 23  there is one instance that anyone can recall where Jane Doe 3

10:06:33 24  was left with David Diehl to babysit.  There are five videos,

10:06:41 25  five counts.  Either four of those occurred when he wasn't

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 47 of 122
Case 1:10-cr-00297-LY Document 135 Filed 04/15/11 Page 47 of 122

46

| | | |
|---|---|---|
| 10:06:45 | 1 | babysitting, or there was only one video.  And there is simply |
| 10:06:51 | 2 | nothing to explain the relationship between him and Jane Doe 3 |
| 10:06:56 | 3 | on those other four occasions. |
| 10:07:00 | 4 | We can -- perhaps it was his mother and Mrs. Diehl |
| 10:07:04 | 5 | were out in the hot tub out in the backyard.  Perhaps they were |
| 10:07:08 | 6 | somewhere else in the house.  Eleven minutes of video, this |
| 10:07:12 | 7 | happened very quickly.  We're talking about five -- five videos |
| 10:07:16 | 8 | a total of 11 minutes.  It's a little over two minutes a |
| 10:07:20 | 9 | video.  It was something that didn't require any sort of |
| 10:07:23 | 10 | long-term custodial relationship.  And Mr. Diehl points out to |
| 10:07:29 | 11 | me as I pointed out earlier -- |
| 10:07:31 | 12 | THE COURT:  Was a long-term custodial relationship |
| 10:07:34 | 13 | required under the guidelines or any custodial relationship? |
| 10:07:37 | 14 | MR. MORRIS:  I think long-term is probably a poor |
| 10:07:41 | 15 | choice of words on my part.  I don't think it requires a |
| 10:07:45 | 16 | temporal duration. |
| 10:07:47 | 17 | THE COURT:  I'm not trying to accuse you of a poor |
| 10:07:50 | 18 | choice of words.  Approaching it from the other end, was that a |
| 10:07:52 | 19 | term of art you used?  That's what I'm looking at. |
| 10:07:56 | 20 | MR. MORRIS:  No, sir, it's not.  But there has to be |
| 10:07:58 | 21 | some sort of custodial relationship.  The cases again talk |
| 10:08:02 | 22 | about Boy Scout leaders, educators.  A babysitter is |
| 10:08:08 | 23 | specifically mentioned in the guidelines.  There's always some |
| 10:08:12 | 24 | relationship that the evidence can point to to show what that |
| 10:08:16 | 25 | relationship was.  And in this case, there's simply no evidence |

Case 1:10-cr-00827-LY Document 218-4 Filed 12/05/16 Page 48 of 122
Case 1:10-cr-00827-LY Document 135 Filed 01/15/13 Page 48 of 122

47

| | | |
|---|---|---|
| 10:08:20 | 1 | to show when this videotaping occurred and what that |
| 10:08:24 | 2 | relationship was at that time. |
| 10:08:46 | 3 | With respect to the offense levels and grouping, |
| 10:08:49 | 4 | again, if it -- |
| 10:08:50 | 5 | THE COURT: Well, back up. You skipped over four, |
| 10:08:52 | 6 | the third point for acceptance of responsibility. There is no |
| 10:08:59 | 7 | motion by the government here to grant the third level for |
| 10:09:03 | 8 | acceptance of responsibility. That, of course, is mentioned in |
| 10:09:05 | 9 | the guideline. Is it your position that the Court may grant |
| 10:09:15 | 10 | the third point without a motion by the government? |
| 10:09:18 | 11 | MR. MORRIS: Under the 2000 version of the |
| 10:09:20 | 12 | guidelines, that motion was not required, Your Honor. And |
| 10:09:23 | 13 | that's the version of the guidelines that is applicable here. |
| 10:09:27 | 14 | And with respect to whether the encryption was |
| 10:09:34 | 15 | requested of Mr. Diehl -- Mr. Devlin, correct me if I'm wrong |
| 10:09:37 | 16 | on this, because I'm obviously hearing this secondhand -- I |
| 10:09:41 | 17 | believe that Mr. Orr at one point discussed providing that key |
| 10:09:44 | 18 | with the government. And the government's response was, We'll |
| 10:09:47 | 19 | be able to decrypt it without it. Is that accurate? |
| 10:09:51 | 20 | MR. DEVLIN: I don't recall that. And if there was, |
| 10:09:54 | 21 | it wasn't done gratis. That's for sure. It was going to be |
| 10:09:58 | 22 | some price to be exacted in return for that that was probably |
| 10:10:01 | 23 | not acceptable to us under the circumstances, if that was |
| 10:10:05 | 24 | done. I don't recall specifically. It may have been, but it |
| 10:10:07 | 25 | was not going to be done for free. |

Case 1:10-cr-00297-LY   Document 213-4   Filed 12/05/16   Page 49 of 122
Case 1:10-cr-00297-LY   Document 135   Filed 01/15/13   Page 48 of 122

48

| | | |
|---|---|---|
| 10:10:10 | 1 | MR. MORRIS:  That's the currency we deal with in |
| 10:10:13 | 2 | federal court, is information.  And, again, that -- I was not |
| 10:10:17 | 3 | part of that conversation, so I can't represent to the Court |
| 10:10:21 | 4 | that that occurred.  But I've been told that it did. |
| 10:10:24 | 5 | And with respect to the third level, yes, the Court |
| 10:10:29 | 6 | can grant that.  In the prior version of the guidelines, it was |
| 10:10:32 | 7 | acceptable.  And, again, just to briefly state again, it wasn't |
| 10:10:36 | 8 | quite a plea of guilty but almost was.  The only issue reserved |
| 10:10:40 | 9 | for the Court was the interstate commerce issue.  And the vast |
| 10:10:43 | 10 | majority of the evidence that would have been required at |
| 10:10:46 | 11 | trial, not to mention the jury trial and all that was related |
| 10:10:52 | 12 | to that, was waived. |
| 10:10:56 | 13 | THE COURT:  Now you're to grouping. |
| 10:11:00 | 14 | MR. MORRIS:  To grouping, if these are distinct harms |
| 10:11:04 | 15 | that occurred on separate days, then the guidelines does |
| 10:11:05 | 16 | exclude 2G2.1 from grouping.  If the evidence does not show by |
| 10:11:10 | 17 | a preponderance of the evidence that these were in fact |
| 10:11:15 | 18 | distinct harms occurring on separate days, then it's a |
| 10:11:19 | 19 | continuum harm and they should be grouped.  It's our position |
| 10:11:21 | 20 | that the evidence has not shown that. |
| 10:11:24 | 21 | And with respect to the criminal history point, what |
| 10:11:30 | 22 | I set forth in the memorandum, again, just pointing back to |
| 10:11:35 | 23 | paragraph -- the fourth manner and means of committing the |
| 10:11:39 | 24 | offense of disorderly conduct in Texas, abuses or threatens a |
| 10:11:43 | 25 | person in a public place in an obviously offensive manner, |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 50 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/16 Page 49 of 122

49

10:11:48  1  that's just tantamount to:  No person shall knowingly cause

10:11:53  2  another to believe that the offender will cause physical harm

10:11:56  3  to the person or property.

10:11:58  4       THE COURT:  Stress for me again the relationship

10:12:00  5  between those two, between the Texas statute and the Ohio

10:12:04  6  statute.  Is it your argument -- I forget what you told me.

10:12:07  7  I'm not looking at the memo again right this minute.  The Texas

10:12:11  8  statute has been held to not apply; is that correct?

10:12:16  9       MR. MORRIS:  Well, the guideline itself says that

10:12:19  10 disorderly conduct is an offense that does not apply unless

10:12:21  11 there is a 30-day or more jail sentence or more than a year of

10:12:24  12 probation.  And what I've done is set out the Texas statute as

10:12:29  13 an example of what disorderly conduct is.

10:12:36  14       THE COURT:  Well, go back through that argument

10:12:38  15 again, because I'm not sure that I followed you.  And I will

10:12:42  16 tell you when I first looked at this some months ago -- of

10:12:47  17 course, I didn't have the benefit of your sentencing memorandum

10:12:52  18 and paragraph 136 was being contented on likely documents

10:12:55  19 only.  I now have your sentencing memorandum in front of me.

10:13:01  20 As you indicated, paragraph 136 indicates pled guilty, 30 days

10:13:06  21 in jail, all suspended on the menacing charge.  Now run back

10:13:13  22 through with me why the government has not gotten there to

10:13:17  23 equate this.

10:13:18  24       MR. MORRIS:  All right.  In -- in just a minute I'll

10:13:23  25 point you to the --

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 51 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/13  Page 51 of 122

50

| | | |
|---|---|---|
| 10:13:24 | 1 | THE COURT:  We're at page 11, I think, of your ... |
| 10:13:32 | 2 | MR. MORRIS:  If you go to -- this is guideline 4A1.2, |
| 10:13:43 | 3 | section -- subsection (c). |
| 10:13:48 | 4 | THE COURT:  4A1.2.  All right. |
| 10:13:56 | 5 | MR. MORRIS:  Subsection (c), Sentences Counted and |
| 10:13:59 | 6 | Excluded.  And then further in subsection (1):  Sentences for |
| 10:14:08 | 7 | the following prior offenses and offenses similar to them, by |
| 10:14:12 | 8 | whatever name they are known, are counted only if the sentence |
| 10:14:17 | 9 | was a term of probation of at least one year or a term of |
| 10:14:20 | 10 | imprisonment of at least 30 days, or (B) the prior offense was |
| 10:14:24 | 11 | similar to an instant offense:  Disorderly conduct and |
| 10:14:35 | 12 | disturbing the peace -- or disturbing the peace is one of those |
| 10:14:40 | 13 | that would not be counted. |
| 10:14:41 | 14 | And my argument is that menacing is similar to |
| 10:14:47 | 15 | disorderly conduct, just known by a different name.  And since |
| 10:14:51 | 16 | his 30-day jail sentence was suspended, then it would not |
| 10:14:56 | 17 | count.  And the reason I cited the Texas statute was to inform |
| 10:15:01 | 18 | the Court as to what disorderly conduct is.  And I cited Ohio |
| 10:15:08 | 19 | menacing statute to let you know what that is.  And the point |
| 10:15:11 | 20 | is they're similar offenses, just known by a different name. |
| 10:15:18 | 21 | THE COURT:  All right.  Thank you.  So give me a |
| 10:15:24 | 22 | moment.  Is that all you have on your objections, Mr. Morris? |
| 10:15:26 | 23 | MR. MORRIS:  May I consult with Mr. Diehl just a |
| 10:15:28 | 24 | moment? |
| 10:15:29 | 25 | THE COURT:  You may. |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 52 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 52 of 122

51

| | | |
|---|---|---|
| 10:15:49 | 1 | MR. MORRIS: Just offer one more issue with respect |
| 10:15:51 | 2 | to the password. It was apparently a very long and complicated |
| 10:15:55 | 3 | password that was written down and not memorized. It was |
| 10:15:59 | 4 | seized by the landlord once Mr. Diehl was arrested. All the |
| 10:16:04 | 5 | contents were -- there was an offer, to Mr. Diehl's |
| 10:16:08 | 6 | recollection, at least, of some sort to assist in opening that |
| 10:16:13 | 7 | and would still be willing to. |
| 10:16:52 | 8 | THE COURT: All right. Let me stress, as I always |
| 10:17:06 | 9 | stress in dealing with objections to a presentence |
| 10:17:09 | 10 | investigation report, I believe that we have gotten to a point |
| 10:17:14 | 11 | in our history with guidelines where post-*Booker*, *FanFan*, and |
| 10:17:26 | 12 | *Kimbrough* and the other rulings of the Supreme Court as well as |
| 10:17:30 | 13 | those of the Fifth Circuit, we probably spend way too much time |
| 10:17:36 | 14 | on the guidelines, since they are now advisory to the Court. |
| 10:17:42 | 15 | And the guidelines constitute just one factor under Title 18 of |
| 10:17:53 | 16 | the United States Code, Section 3553 for this Court to consider |
| 10:18:00 | 17 | in determining what an appropriate sentence would be. |
| 10:18:02 | 18 | However, the Court -- all District Courts are |
| 10:18:07 | 19 | obligated to compute the correct guideline sentence and then |
| 10:18:14 | 20 | use it as that factor. So we end up spending an awful lot of |
| 10:18:17 | 21 | time in that regard, which I consider largely nonproductive |
| 10:18:26 | 22 | when I'm looking at a statute that gives me a broader range to |
| 10:18:30 | 23 | sentence as I have. But that the law under which we operate. |
| 10:18:41 | 24 | With regard to Objection Number 1, the enhancement |
| 10:18:44 | 25 | for vulnerable victim, we have been over several times here |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 53 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/16 Page 53 of 122

52

| | | |
|---|---|---|
| 10:18:50 | 1 | this morning what the application notes say.  I find the |
| 10:18:57 | 2 | application notes to be clear here that I do not consider age |
| 10:19:05 | 3 | twice.  So at that juncture, that would be a potential granting |
| 10:19:14 | 4 | of the objection, because I think the note is clear in that |
| 10:19:20 | 5 | regard, that if we start going back down the age scale from 12, |
| 10:19:28 | 6 | everything that involves the child getting younger is still |
| 10:19:35 | 7 | related to age and that involves even the trusting |
| 10:19:39 | 8 | relationship.  So I will grant Objection Number 1, which |
| 10:19:47 | 9 | eliminates I think two points. |
| 10:19:51 | 10 | With regard to Objection Number 2, the enhancement |
| 10:19:56 | 11 | for the victim being physically restrained, again, when you |
| 10:20:02 | 12 | review the application notes on what it means, it does give |
| 10:20:07 | 13 | examples.  There surely can be restraint other than in the |
| 10:20:11 | 14 | examples.  I recall vividly what is on the evidence that was |
| 10:20:20 | 15 | presented to me on the CDs.  I find that although there was |
| 10:20:28 | 16 | some touching, it does not rise to the level of the restraint |
| 10:20:35 | 17 | needed or anticipated by the guidelines.  So I grant that |
| 10:20:40 | 18 | objection.  That is another two points. |
| 10:20:44 | 19 | With regard to the objection, the two-point |
| 10:20:48 | 20 | enhancement for care, custody, and control, the defendant is |
| 10:20:53 | 21 | correct in that there is evidence both ways here.  And with the |
| 10:20:58 | 22 | exception of the one incident, the -- the one time when the |
| 10:21:10 | 23 | child's mother and Mr. Diehl's wife concurred that there was a |
| 10:21:14 | 24 | babysitting situation, there are four others left which the -- |
| 10:21:21 | 25 | there is no direct testimony about. |

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 54 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/16  Page 53 of 122

53

| | | |
|---|---|---|
| 10:21:24 | 1 | This can be proved -- again, the burden is on the |
| 10:21:28 | 2 | government to prove by a preponderance of the evidence what the |
| 10:21:32 | 3 | circumstances were.  Again, the Court recalls the videos -- |
| 10:21:37 | 4 | what is on the videos.  I recall what appeared to be or recall |
| 10:21:43 | 5 | what the actions of the child, Jane Doe Number 3, and the |
| 10:21:51 | 6 | defendant were, what their demeanors were, whether they were |
| 10:21:57 | 7 | active, either one of them appeared to be at all concerned that |
| 10:22:01 | 8 | anyone would walk in on them.  They did not appear to be that |
| 10:22:07 | 9 | way. |
| 10:22:08 | 10 | The trusting relationship I think has more of an |
| 10:22:13 | 11 | application here than it did in Objection Number 1.  The |
| 10:22:18 | 12 | families were close.  I find that all of the circumstantial |
| 10:22:27 | 13 | evidence supports that Jane Doe Number 3 was in the care or |
| 10:22:31 | 14 | custody of Mr. Diehl at the time of the incidents, whether the |
| 10:22:35 | 15 | parties -- or whether the child's mother or Mr. Diehl's wife |
| 10:22:40 | 16 | can remember the exact circumstances or not. |
| 10:22:46 | 17 | These incidents did take place over a period of |
| 10:22:50 | 18 | time.  The government has satisfied its burden that the |
| 10:22:54 | 19 | families were close.  I find that the circumstantial evidence |
| 10:23:05 | 20 | supports by a preponderance of the evidence that Jane Doe |
| 10:23:08 | 21 | Number 3 was in fact in the care, custody, and control of the |
| 10:23:10 | 22 | defendant when the incidents occurred such that the objection |
| 10:23:14 | 23 | is denied and the two-point enhancement stays. |
| 10:23:18 | 24 | With regard to Objection Number 4, the failure to |
| 10:23:29 | 25 | grant the third point for accepting responsibility, I |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 55 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 55 of 122

54

| | | |
|---|---|---|
| 10:23:33 | 1 | understand the argument that Mr. Diehl did not force the |
| 10:23:39 | 2 | Government through a complete jury trial, that Mr. Diehl did |
| 10:23:47 | 3 | stipulate to certain evidence, and that it was easier to |
| 10:23:52 | 4 | proceed and a better use of court resources to proceed in this |
| 10:23:56 | 5 | manner with the preservation of the interstate commerce nexus. |
| 10:24:02 | 6 | The Probation Department, recognizing all of those things, has |
| 10:24:05 | 7 | granted two points for acceptance of responsibility. |
| 10:24:10 | 8 | The fact of the matter is we still conducted a |
| 10:24:13 | 9 | trial.  The fact of the matter is there is likely to be an |
| 10:24:16 | 10 | appeal after we conclude this hearing today.  That appeal is |
| 10:24:21 | 11 | likely to at least in part center around the interstate |
| 10:24:26 | 12 | commerce nexus, which the government was forced to prove.  So |
| 10:24:31 | 13 | this Court will deny the request for a third point of |
| 10:24:37 | 14 | acceptance of responsibility because a trial was still |
| 10:24:42 | 15 | conducted. |
| 10:24:43 | 16 | With regard to the grouping issue, I do find that the |
| 10:24:49 | 17 | incidents were separate; that the government separated them |
| 10:24:53 | 18 | carefully.  I recall all of the evidence.  I find, therefore, |
| 10:24:57 | 19 | that 3D1.1 does not apply, and I deny that request. |
| 10:25:04 | 20 | With regard to the criminal conviction set forth in |
| 10:25:15 | 21 | paragraph 136, I find that to be a particularly difficult |
| 10:25:29 | 22 | situation to deal with.  The defendant sets forth in his most |
| 10:25:35 | 23 | recent sentencing memorandum the Ohio Code provision on which |
| 10:25:43 | 24 | that conviction is based, which reads:  No person shall |
| 10:25:46 | 25 | knowingly cause another to believe that the offender will cause |

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 56 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 56 of 122

55

10:25:51  1  physical harm to the person or property of such other person or

10:25:56  2  member of his immediate family.

10:25:58  3       The defendant attempts to equate that with the Texas

10:26:03  4  disorderly conduct statute as an example of disorderly conduct

10:26:10  5  not being counted that is used in the guidelines and states

10:26:17  6  that the type of conduct criminalized as disorder conduct

10:26:22  7  closely resembles that criminalized by the Ohio menacing law.

10:26:26  8       Now, what we have here in the Texas statute is

10:26:34  9  subparagraph (1): Use of abusive, indecent, profane, or vulgar

10:26:40  10  language in a public place that, by its utterance, would tend

10:26:45  11  to incite a breach of the peace; an offensive gesture that

10:26:52  12  would tend to incite a breach of the peace; an obviously

10:26:57  13  offensive manner that abuses or threatens a person; fighting

10:27:02  14  with another -- that implies to me that both parties are in a

10:27:09  15  fight -- or the display of a firearm.

10:27:11  16       I find that to be different than causing another to

10:27:16  17  believe that the offender will cause physical harm.  I find

10:27:21  18  that there is a temporal element in the disorderly conduct laws

10:27:27  19  that is not present in menacing.  So although I find that to be

10:27:34  20  a reasonably close call, I think the Probation Department is

10:27:39  21  correct in their analysis that it is different.  And so I deny

10:27:49  22  that objection.

10:27:50  23       Now, before we leave the scoring objections, I want

10:27:54  24  to make sure we have agreement on where that leaves us with

10:28:00  25  regard to the guidelines, because this is one of those cases

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 57 of 122
Case 1:10-cr-00297-LY Document 135 Filed 04/15/11 Page 57 of 122

56

| | | |
|---|---|---|
| 10:28:05 | 1 | where the guidelines, because of the number of counts and the |
| 10:28:11 | 2 | way you compute and then the way they are utilized needs to be |
| 10:28:16 | 3 | carefully looked at.  So let me inquire. |
| 10:28:20 | 4 | What I have done is reduced by a total of four |
| 10:28:27 | 5 | points.  Let me ask Probation, first:  Does that have the |
| 10:28:32 | 6 | effect of -- the easy way of reducing the total offense level |
| 10:28:37 | 7 | from 40 to 36 and leaving the criminal history category as II? |
| 10:28:41 | 8 | Or does there have to be further calculations made up and down |
| 10:28:45 | 9 | the line to come up with the total offense level? |
| 10:28:50 | 10 | PROBATION OFFICER:  Further calculations, |
| 10:28:53 | 11 | Your Honor. |
| 10:28:53 | 12 | THE COURT:  Pardon me? |
| 10:28:54 | 13 | PROBATION OFFICER:  Further calculations, and I can |
| 10:28:55 | 14 | come up with it. |
| 10:28:56 | 15 | THE COURT:  All right.  Would you do that? |
| 10:28:57 | 16 | PROBATION OFFICER:  Yes. |
| 10:28:57 | 17 | THE COURT:  And I ask both the government and the |
| 10:28:59 | 18 | defendant to look, too, because before we depart from this |
| 10:29:02 | 19 | stage in the hearing, I want to make sure we have an agreement |
| 10:29:06 | 20 | as to what the effect of the Court's rulings are.  And at this |
| 10:29:11 | 21 | time, while y'all do that, I think we'll take a ten-minute |
| 10:29:16 | 22 | recess.  Everybody's been sitting for an hour and a half now. |
| 10:29:18 | 23 | So the Court will be in recess for ten minutes. |
| 10:29:22 | 24 | (Recess) |
| 10:43:27 | 25 | THE COURT:  During the recess, the |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 58 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 58 of 122

57

| | | |
|---|---|---|
| 10:43:29 | 1 | Probation Department came back and indicated to me that they |
| 10:43:32 | 2 | believe it would be a total offense level of 36 and a criminal |
| 10:43:35 | 3 | history category of II after my rulings on the objection.  Does |
| 10:43:40 | 4 | the government concur with that? |
| 10:43:41 | 5 | MR. DEVLIN:  Based on your rulings, Judge, yes. |
| 10:43:43 | 6 | MR. MORRIS:  So does the defense, Your Honor.  We |
| 10:43:46 | 7 | think that's correct. |
| 10:43:47 | 8 | THE COURT:  All right.  Then the presentence |
| 10:43:49 | 9 | investigation report is modified to reflect a total offense |
| 10:43:53 | 10 | level of 36 and a criminal history category of II.  And to the |
| 10:43:59 | 11 | extent that I consider a guideline sentence, the appropriate |
| 10:44:04 | 12 | range would be 210 to 262 months confinement and the |
| 10:44:09 | 13 | appropriate fine range would be a fine of between $20,000 and |
| 10:44:15 | 14 | $200,000. |
| 10:44:17 | 15 | Now, Mr. Morris, we're back to you.  If you want to |
| 10:44:21 | 16 | come back forward, you have some non-scoring objections that |
| 10:44:28 | 17 | you want to -- and you may proceed with your non-scoring |
| 10:44:39 | 18 | objections. |
| 10:44:39 | 19 | MR. MORRIS:  First one, Your Honor, is we object to |
| 10:44:42 | 20 | the inclusion of the mention of the Google search and the Web |
| 10:44:46 | 21 | page in paragraph 18 of the presentence investigation report. |
| 10:44:50 | 22 | And the basis of the objection Mr. Orr filed is that the Web |
| 10:44:59 | 23 | site that belongs with the URL is basically a government Web |
| 10:45:06 | 24 | site that has nothing to do with the procurement of child |
| 10:45:13 | 25 | prostitution or the procurement of child sex.  It's simply -- I |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 59 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 58 of 122

58

| | | |
|---|---|---|
| 10:45:19 | 1 | guess "simply" is the right word.  What it does is it explains |
| 10:45:22 | 2 | that it is a problem in Nicaragua and that there are things |
| 10:45:28 | 3 | being done about it. |
| 10:45:29 | 4 | And leaving it in the presentence report is -- leaves |
| 10:45:32 | 5 | the inference that Mr. Diehl was using the Internet to try to |
| 10:45:40 | 6 | find child prostitutes.  And that's simply not the case.  And I |
| 10:45:43 | 7 | have a printout of the web page that that URL is associated |
| 10:45:48 | 8 | with that I can provide the Court with. |
| 10:45:52 | 9 | THE COURT:  You may.  All right.  Proceed. |
| 10:45:57 | 10 | MR. MORRIS:  And with respect to the second |
| 10:46:01 | 11 | non-scoring objection, Defendant objects to the description of |
| 10:46:07 | 12 | the acts allegedly shown in the videos being placed in the |
| 10:46:10 | 13 | presentence investigation report.  Actually, we understand why |
| 10:46:14 | 14 | they were there originally, to justify the guideline |
| 10:46:18 | 15 | calculation.  But we ask that they be removed.  And the reason |
| 10:46:22 | 16 | or the basis of that is Rule 32 of the Federal Rules of |
| 10:46:31 | 17 | Criminal Procedure.  And, specifically, the (d)(3) exclusions. |
| 10:46:51 | 18 | The presentence investigation report must exclude the |
| 10:46:56 | 19 | following:  And then (C):  Any other information that, if |
| 10:47:00 | 20 | disclosed, might result in physical or other harm to the |
| 10:47:03 | 21 | defendant or others. |
| 10:47:05 | 22 | If this information, the nature of the conduct and |
| 10:47:10 | 23 | videos is disclosed, it would certainly subject Mr. Diehl in |
| 10:47:15 | 24 | prison to reprisal.  The Court's certainly well aware, it's |
| 10:47:19 | 25 | certainly common knowledge, that inmates who have been |

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 60 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 04/13/12  Page 59 of 121

59

10:47:21  1  convicted of this type of offense are subjected to harsh

10:47:26  2  treatment by other inmates in penal institutions.  And,

10:47:30  3  consequently, we ask that the descriptions of what is contained

10:47:34  4  in the video be removed from the presentence report.

10:47:49  5       And the Court has dealt with my Objection Number 3 in

10:47:58  6  the hearing that we had in chambers.

10:48:06  7       The fourth non-scoring objection is, Defendant

10:48:09  8  objection to the description of videos as having been filmed

10:48:13  9  with a hidden camera.  The basis of that objection is that

10:48:16  10  there is no evidence to support that there was a hidden camera,

10:48:19  11  and it -- that it was used in the filming of any of these

10:48:24  12  videos.

10:48:25  13       And Defendant objects to the finding regarding the

10:48:30  14  financial ability in paragraph 174.  174 lists the assets that

10:48:40  15  Mr. Diehl had when this case began.  And based on that, it

10:48:49  16  says, Considering defendant's assets and his liabilities, the

10:48:52  17  fact that he was able to retain counsel and his potential

10:48:56  18  earnings profits, the defendant appears to be able to pay a

10:48:59  19  reasonable fine.

10:49:00  20       Well, his earnings and profits are zero at this point

10:49:03  21  and will be zero for the foreseeable future.  And he liquidated

10:49:11  22  a lot of his assets to provide for legal counsel and other

10:49:17  23  expenses involved in this case.  And we'd ask that the Court to

10:49:20  24  find that he is not able to pay a fine.

10:49:24  25       And with respect to the mention in the presentence

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 61 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/13  Page 60 of 122

60

10:49:33  1  report the possible grounds for upward departure, that's in

10:49:37  2  paragraph 190, I've addressed that in my presentence -- in my

10:49:41  3  sentencing memorandum.  The grounds that are cited by the

10:49:53  4  Probation Department is possible justification for upward

10:49:57  5  departure.

10:50:04  6       The first one is that his criminal history

10:50:07  7  under-represents the seriousness of his conduct.  We -- we

10:50:15  8  suggest that, if anything, it over-represents Mr. Diehl's

10:50:21  9  criminal conduct.  The convictions that are scored are well --

10:50:26  10  are over 20 years old.  They properly scored because the

10:50:30  11  relevant time period begins at the date of the incident

10:50:34  12  offense, but it had been 20 years since those offenses were

10:50:39  13  committed.  And they're simply no reason to think that they

10:50:44  14  under-represent his criminal history.

10:50:47  15       And then in paragraph 191, extreme conduct, first of

10:50:55  16  all, there is nothing in those videos that indicates that there

10:51:02  17  was torture, gratuitous infliction of injury or prolonging of

10:51:07  18  the pain or humiliation.  The Court saw the videos.  Again, I

10:51:12  19  certainly understand these were reprehensible acts on the

10:51:16  20  videos.  But that -- those are the type of actions that we see

10:51:19  21  in the majority of the cases under this guideline.  Where there

10:51:28  22  is production of videos, all these sorts of things are in the

10:51:31  23  common case.  They're simply not extraordinary in this case.

10:51:36  24       And with respect to the allegation that there was

10:51:42  25  penetration and it's likely both females suffered physical

Case 1:10-cr-00397-LY Document 218-4 Filed 12/05/16 Page 62 of 122
Case 1:10-cr-00397-LY Document 135 Filed 01/15/13 Page 61 of 122

61

| | | |
|---|---|---|
| 10:51:45 | 1 | pain, the Court has seen the videos.  While there may -- under, |
| 10:51:48 | 2 | for instance, the Texas definition of penetration, it's |
| 10:51:51 | 3 | possible there was slight penetration, there was no full-on |
| 10:51:54 | 4 | penetration in these videos.  And there was nothing in the |
| 10:51:58 | 5 | videos that indicated that either -- that either of these |
| 10:52:02 | 6 | children experienced any pain.  And so we submit that there is |
| 10:52:08 | 7 | no reason for upward departure on that basis. |
| 10:52:11 | 8 | And also I point out, with respect to the -- the |
| 10:52:18 | 9 | grounds cited by the Probation Department that these films were |
| 10:52:22 | 10 | exploited on the Internet, just that broad statement makes it |
| 10:52:26 | 11 | sound like that anybody could go to a search engine such as |
| 10:52:30 | 12 | Google and type in the names of these videos and come up with |
| 10:52:33 | 13 | the videos.  That's simply not how videos are distributed like |
| 10:52:38 | 14 | this, and the investigation in this case bore that out. |
| 10:52:42 | 15 | They are available to a very small number of people |
| 10:52:46 | 16 | who know how to find them.  They are downloaded through things |
| 10:52:49 | 17 | such as usenet, eMule, things that I'm not entirely familiar |
| 10:52:53 | 18 | with.  But they appear to be file sharing protocols, and it's |
| 10:52:58 | 19 | not as though these videos are being accessed every day at |
| 10:53:03 | 20 | random by somebody on the Internet.  So while the Internet is |
| 10:53:07 | 21 | the means that people acquire them, it's not a widespread |
| 10:53:11 | 22 | distribution of them. |
| 10:53:14 | 23 | That's all I have on those non-scoring objections. |
| 10:53:17 | 24 | THE COURT:  All right.  Mr. Devlin, I'll hear from |
| 10:53:19 | 25 | you on the non-scoring objections. |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 63 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/11 Page 63 of 122

62

10:53:20  1          MR. DEVLIN:  As to the inclusion of the Google

10:53:31  2   search, Judge, I don't think it's coincidence that this Google

10:53:38  3   search about Nicaragua sex and terrorism was found on the

10:53:40  4   defendant's computer.  In an interview done with -- I'm going

10:53:43  5   to proffer this.  In an interview done with the defendant's

10:53:45  6   sister Amy Lainhart on April 9th, of 2010, right after his

10:53:50  7   arrest, she advised the FBI agent who interviewed her that the

10:53:55  8   defendant is attracted to younger girls.  She stated that the

10:53:59  9   defendant is a pedophile, and she said that she would not be

10:54:02  10  surprised if the defendant was involved in child pornography.

10:54:06  11         But more to the point, she said that -- she said that

10:54:08  12  Diehl, the defendant, traveled overseas for the purpose of

10:54:11  13  meeting with young girls and has apparently stated to her in

10:54:15  14  the past that, quote, You can buy a couple of girls for the

10:54:18  15  price of a pair of gym shoes, unquote.  That was information

10:54:22  16  obtained in an interview with the defendant's sister back at

10:54:25  17  the time of his arrest.

10:54:26  18         So, again, while we have not charged him with

10:54:30  19  international sex tourism, I don't think he was looking at

10:54:36  20  Nicaragua sex and terrorism with a concern that there was a

10:54:40  21  problem that he was going to help alleviate.

10:54:43  22         So I think the Court can consider that for whatever

10:54:46  23  weight it wants to give it.

10:54:51  24         The second -- my response to the second objection,

10:54:54  25  Judge, as far as description of the acts is that the PSR is

Case 1:11-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 64 of 122
Case 1:11-cr-00297-LY  Document 135  Filed 01/15/13  Page 63 of 122

63

10:54:59  1    obviously going to be used in the future by the Bureau of

10:55:02  2    Prisons in evaluating the defendant's treatment, the

10:55:07  3    defendant's program, whatever legitimate purposes they have.

10:55:11  4    They are not going to have access to the videos.  They're not

10:55:14  5    going to have access to any of the victims who were video-ed.

10:55:19  6    They're going to have some indication of what is in the video,

10:55:27  7    and a more detailed description is preferable to a less

10:55:31  8    detailed description.

10:55:32  9           The defendant has not alleged that anything is

10:55:34  10   inaccurate in the description.  He's just concerned apparently

10:55:37  11   that, you know, he's not going to get to release his PSR to

10:55:41  12   other inmates without that information in there.  Nobody is

10:55:44  13   going to release it to any inmates, Judge on the government's

10:55:47  14   side, anyway, and the BOP needs that information to be able to

10:55:53  15   do appropriate evaluations that it sees fit and in addition to

10:55:59  16   probably just determining his initial custody level.

10:56:02  17          So I don't think that Rule 32 in any way prevents

10:56:06  18   that from being in there.  That's the crux of the offense.

10:56:10  19   It's not gratuitous information.  It derives directly from the

10:56:14  20   videos that the Court has.  So I think that there's every

10:56:16  21   legitimate reason to have that in there.  And, again, there's

10:56:19  22   been no allegation that those are inaccurate.

10:56:22  23          I guess the third objection has been withdrawn?

10:56:25  24          MR. MORRIS:  That's correct.  Well, not withdrawn.

10:56:27  25   It was overruled.

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 65 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 64 of 122

64

| | | |
|---|---|---|
| 10:56:28 | 1 | THE COURT: All right. |
| 10:56:29 | 2 | MR. DEVLIN: It's been ruled on, so I don't need to |
| 10:56:32 | 3 | address that. The fourth objection about the hidden cameras, |
| 10:56:35 | 4 | again, the Court can decide for itself what that -- what that |
| 10:56:38 | 5 | was going on there. The other thing, I'm going to refer back |
| 10:56:44 | 6 | to the interview with Ms. Lainhart is that -- and I think it's |
| 10:56:47 | 7 | already even in the presentence investigation report in |
| 10:56:51 | 8 | paragraph 156. She was a witness to a video that the defendant |
| 10:56:57 | 9 | made with a 15-year-old girlfriend from the early '90s when the |
| 10:57:04 | 10 | defendant was in his late 20s. And that -- we had advised |
| 10:57:08 | 11 | Mr. Diehl of that offense as part of our 404(b) notice way back |
| 10:57:13 | 12 | when prior to trial and that that -- we believed that was |
| 10:57:19 | 13 | surreptitiously done. |
| 10:57:20 | 14 | So he's got a long history of hidden camera |
| 10:57:24 | 15 | activities. I think it's pretty clear from that video that was |
| 10:57:27 | 16 | introduced that that was a hidden camera. You saw him |
| 10:57:32 | 17 | adjusting the camera. It was under a blanket. And then |
| 10:57:35 | 18 | moments later, two girls come in and are playing. And there's |
| 10:57:39 | 19 | other -- I think one of the videos shows the fourth victim in a |
| 10:57:44 | 20 | bathroom doing various things clothed, and that was clearly |
| 10:57:49 | 21 | done with a hidden camera, given the position of the camera. |
| 10:57:53 | 22 | So what his objection is to having it called a hidden |
| 10:57:56 | 23 | camera, I don't know. There's more than enough evidence to |
| 10:57:59 | 24 | indicate the defendant was quite well-versed in using hidden |
| 10:58:03 | 25 | cameras. |

Case 1:10-cr-00237-LY Document 218-4 Filed 12/05/16 Page 66 of 122
Case 1:10-cr-00237-LY Document 135 Filed 01/15/13 Page 65 of 121

65

| 10:58:03 | 1 | And as far as his financial ability, Judge, I'm going |
|---|---|---|

10:58:03    1          And as far as his financial ability, Judge, I'm going

10:58:07    2    to comment on that later, but I may as well comment on that

10:58:10    3    now.  He spent untold amount of money and resources in this

10:58:13    4    legal proceeding and also in a legal proceeding regarding

10:58:16    5    custody of his son that, frankly, in my opinion were futile.

10:58:22    6    The evidence in this case is so overwhelming that his efforts

10:58:27    7    to spend all this money on himself and his defense here, while

10:58:32    8    it's certainly his right -- and I'm not criticizing Mr. Morris

10:58:35    9    or Mr. Orr -- but all that money could have gone to his son.

10:58:38    10          And I think it also plays into his claim that he's

10:58:44    11    been a good father.  I don't think a good father would go and

10:58:47    12    spend all of -- basically everything he has to leave nothing

10:58:51    13    for his son to go up against legal proceedings that he has no

10:58:57    14    chance of winning given the strength of evidence.  He's trying

10:59:00    15    to get custody for his son.  He's going to prison for a long

10:59:04    16    time.  What is he trying to get there?  I attended one of those

10:59:06    17    court hearings, and he's disputing everything that he can with

10:59:08    18    his ex-wife.

10:59:10    19          So I think that while it -- he may not have the

10:59:13    20    financial resources, I think the fact that he has spent them on

10:59:17    21    himself instead of spending them on his son or leaving it for

10:59:21    22    his son so that his son can benefit from it shows once again

10:59:25    23    his selfish and arrogant behavior.

10:59:28    24          But, nevertheless, I don't know what his financial

10:59:31    25    situation is.  But whatever it is, it's a lot worse than when

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 67 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 66 of 121

66

10:59:35 1  he was arrested because of all of the money on needless lawyers

10:59:38 2  and needless legal proceedings.

10:59:41 3          And as far as departures go, Judge, I'd like to save

10:59:45 4  that for when we make our argument.  Thank you.

10:59:47 5          THE COURT:  Mr. Morris, response?

10:59:49 6          MR. MORRIS:  I'm not sure exactly what the

10:59:58 7  government's argument was with respect to financial ability.

11:00:03 8  Let me address what I think it was, that it's wrong to spend

11:00:09 9  money on lawyers if it's not going to do you any good.  I don't

11:00:12 10 know what the alternative is.  Mr. Diehl did not qualify for a

11:00:16 11 court-appointed lawyer.  He was facing very serious charges.

11:00:22 12 Even if he had on day one decided to plead guilty to all those

11:00:26 13 charges, we would be having this hearing right now today.

11:00:29 14         THE COURT:  You don't need to belabor that point.

11:00:31 15 I'm aware of the age of this case and how long it's gone on and

11:00:35 16 what lawyers do.  And that is -- believe me, the financial

11:00:40 17 ability of Mr. Diehl is not where I think issue is really

11:00:45 18 joined in this case.

11:00:46 19         MR. MORRIS:  Thank you, Your Honor.  I would point

11:00:48 20 out that he's continued to pay child support during this time

11:00:52 21 and he has continued with his obligations to his son.  That's

11:00:56 22 all the rebuttal I have, Your Honor.

11:00:59 23         Oh, one more thing, Your Honor.  With respect to

11:01:02 24 Mr. Diehl's sister and the allegations that he was traveling

11:01:07 25 overseas for purposes of meeting girls:  First of all, I'd like

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 68 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/13  Page 67 of 122

67

11:01:10  1  to point out that when Ms. Lainhart, I believe is her name, was

11:01:16  2  interviewed, she was in jail for a felony conviction.  She has

11:01:19  3  a long history of mental issues.  She is the mother of Jane Doe

11:01:25  4  2, which certainly gives her a reason to be a bit bias.

11:01:30  5       She also -- the travel overseas that described that

11:01:34  6  Mr. Diehl was engaging in to -- as she put it, to find young

11:01:39  7  girls was to Brazil where he was going overseas to work.  I put

11:01:44  8  in the sentencing memorandum a conversation I had or reference

11:01:47  9  to a conversation I had with someone who went to Brazil to see

11:01:51  10  him while he was there.  He had an adult girlfriend while he

11:01:54  11  was there that he continued to correspond via E-mail.  I

11:01:58  12  reviewed those E-mails.  It's obvious from reading the E-mails,

11:02:01  13  her talking about her working in a psychologist's office,

11:02:05  14  family issues, that she is at least an adult and probably a

11:02:10  15  very mature adult.  So Mr. Diehl's sister's representations

11:02:15  16  about him are simply suspect.

11:02:17  17       THE COURT:  Thank you.

11:02:19  18       With regard to the non-scoring objections, the

11:02:25  19  presentence investigation report is quite thorough.  And like

11:02:30  20  all thorough reports that this Court receives, there are

11:02:33  21  certain items that are entitled to more weight than other items

11:02:38  22  and certain items have more effect on the Court's making of a

11:02:42  23  decision as to an appropriate sentence than others.

11:02:47  24       The non-scoring objections are all overruled.  I

11:02:56  25  overrule Objection Number 1 because it is what it is.  What

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 69 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/17/12 Page 69 of 122

68

| | | |
|---|---|---|
| 11:03:00 | 1 | the -- what the Probation Department put in there is what the |
| 11:03:07 | 2 | Probation Department found.  But the basis for the sentence |
| 11:03:14 | 3 | this Court is going to impose is going to be primarily based on |
| 11:03:19 | 4 | the evidence that was produce before the Court at the trial. |
| 11:03:25 | 5 | I'm not going to place any weight on the statements in |
| 11:03:30 | 6 | paragraph 18 about whether this defendant was or was not |
| 11:03:35 | 7 | planning a trip to Nicaragua. |
| 11:03:38 | 8 | The description of the acts in paragraphs 23 through |
| 11:03:41 | 9 | 34, Non-scoring Objection Number 2, are accurate and correct. |
| 11:03:48 | 10 | The presentence investigation report is going to be sealed.  It |
| 11:03:52 | 11 | will only be distributed to those persons who have a need to |
| 11:03:58 | 12 | know or who Mr. Diehl chooses to distribute his copy to.  I do |
| 11:04:07 | 13 | agree with the government, that the description of what |
| 11:04:10 | 14 | occurred is necessary for the Bureau of Prisons. |
| 11:04:14 | 15 | I have already ruled on the unsubstantiated reference |
| 11:04:18 | 16 | to a fourth victim in paragraph 37.  I have plenty of evidence |
| 11:04:23 | 17 | before me on the three victims that were listed in the |
| 11:04:29 | 18 | indictment and for which I entertained evidence during the |
| 11:04:32 | 19 | trial of this case.  And so for the same reasons that I have |
| 11:04:36 | 20 | previously stated, I restate them in overruling Non-scoring |
| 11:04:42 | 21 | Objection 3. |
| 11:04:44 | 22 | With regard to Objection 4, the hidden camera, it is |
| 11:04:48 | 23 | clear that at least one time and perhaps others, but clearly |
| 11:04:56 | 24 | displayed in one of the videos, is the use of a hidden camera. |
| 11:05:03 | 25 | As I stated with regard to financial ability, that is |

Case 1:10-cr-00397-LY Document 218-4 Filed 12/05/16 Page 70 of 122
Case 1:10-cr-00397-LY Document 135 Filed 04/17/13 Page 69 of 122

69

11:05:09  1   not something that is going to have a large effect on the Court

11:05:19  2   in determining the appropriate sentence to impose in this

11:05:21  3   case.  I recognize what the fine ranges are under both the

11:05:25  4   statute and the guidelines and will deal with that accordingly

11:05:30  5   if I think a fine is appropriate.

11:05:33  6          I take into account, regardless of how Mr. Diehl

11:05:37  7   spent his money, whether it was wise or not, he has been

11:05:43  8   incarcerated since April 6th of 2010 and I'm sure that whatever

11:05:53  9   ability he had has been greatly reduced.

11:05:57  10         And with regard to the findings regarding departures,

11:06:02  11  that is customary for the Probation Department to give the

11:06:06  12  Court guidance if the Court determines to depart.  And that's

11:06:10  13  why that information is provided to the defendant and to the

11:06:14  14  government.  So I overrule each of the non-scoring objections

11:06:20  15  for the reasons that I have stated.

11:06:22  16         Mr. Diehl, Mr. Morris, please come back forward.  The

11:06:33  17  rulings on all of the objections, scoring and non-scoring,

11:06:38  18  having been made by this Court, Mr. Morris do you know of any

11:06:43  19  legal reason why the Court should no proceed with sentencing at

11:06:46  20  this time?

11:06:47  21         MR. MORRIS:  Your Honor, we'd like to address the

11:06:49  22  Court with respect to the factors contained in 3553.

11:06:53  23         THE COURT:  Well, that will determine what my

11:06:56  24  sentence will be.  Is that what you want to address?  Do you

11:07:00  25  know of any legal reason why the Court should not proceed with

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 71 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/16 Page 71 of 122

70

11:07:04  1    sentencing at this time?

11:07:05  2              MR. MORRIS:  No, your Honor.  From your comment, it

11:07:07  3    sounded like you were about to proceed to --

11:07:09  4              THE COURT:  No, no.  You will have an opportunity to

11:07:11  5    speak.  Everyone will have an opportunity to speak.  I just

11:07:15  6    wanted to know if you know of a legal reason why I should

11:07:17  7    terminate this proceeding and not proceed with sentencing at

11:07:21  8    this time?

11:07:22  9              MR. MORRIS:  No, Your Honor.

11:07:22  10             THE COURT:  Mr. Devlin, does the government know of

11:07:24  11   any legal reason why the Court should not proceed with

11:07:26  12   sentencing at this time?

11:07:27  13             MR. DEVLIN:  No, sir.

11:07:30  14             THE COURT:  Now, Mr. Diehl, Mr. Morris, if either or

11:07:32  15   both of you have anything you would like to say to the Court

11:07:35  16   before the Court pronounces sentence, I will hear from you at

11:07:39  17   this time and I will take into account everything that you have

11:07:43  18   to say in determining what I think the appropriate sentence to

11:07:48  19   impose in this case is.  And so, Mr. Morris, at this time you

11:07:54  20   may address the 3553 factors or any other matter that you wish

11:08:00  21   to draw to the Court's attention before the Court pronounces

11:08:03  22   sentence.

11:08:03  23             MR. MORRIS:  Your Honor, we'd like to address the

11:08:06  24   3553 factors, and I've set out the basis of what I'm going to

11:08:12  25   address beginning with page 14 of my sentencing memorandum.

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 72 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 72 of 122

71

11:08:20  1   And the factor that I intend to address are the circumstances

11:08:24  2   of the offense and the characteristics of Mr. Diehl.

11:08:29  3        I begin by pointing out to the Court that the

11:08:32  4   offenses that the Court has to consider sentence of occurred

11:08:38  5   more than ten years ago.  The -- we look at Mr. Diehl's life at

11:08:46  6   that point and then contrast it to what he has done since then

11:08:50  7   with his life, it bears consideration by the Court.  At the

11:08:54  8   time Mr. Diehl committed these offenses, he was living a

11:09:01  9   lifestyle that he readily admits was a mistake and that his

11:09:06 10   lifestyle -- spending a lot of time at Star Ranch with his

11:09:10 11   family and with one of the children who ultimately became a

11:09:16 12   victim for a short time was out there.

11:09:18 13        During this time, Mr. Diehl was also -- had also

11:09:22 14   suffered a motorcycle accident, and he was in pain.  He was

11:09:27 15   prescribed Oxycontin.  He was also drinking heavily -- more

11:09:32 16   heavily than he should have been.  He believes that these

11:09:35 17   factors contributed very much to his lapse of judgment and his

11:09:39 18   wrongful acts at this time.

11:09:42 19        But ready -- certainly the Court focuses on the acts

11:09:49 20   committed.  But expanding that view and looking at Mr. Diehl's

11:09:52 21   life since that time, Mr. Diehl has always been gainfully

11:09:57 22   employed as a very good software engineer, a very good

11:10:00 23   programmer.  I provided the Court with a resume as an

11:10:04 24   attachment to the sentencing memorandum showing his work

11:10:07 25   history.  He has done contract work for years and years and is

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 73 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 73 of 122

72

11:10:12 1 well-respected in his profession. He in fact has always earned

11:10:19 2 a living, always supported his dependents.

11:10:22 3 And speaking of dependents, Mr. Diehl is the father

11:10:25 4 of A., the young man that the Court saw testify here. He's put

11:10:30 5 a great deal of energy into raising his son, into trying to

11:10:36 6 steer his son in the right direction. There's been testimony

11:10:40 7 that he's -- and other information that he's cautioned A. on

11:10:44 8 who to stay away from as far as people that might try to

11:10:48 9 sexually abuse him. He's -- Mr. Diehl has made sure that.

11:10:55 10 A. has gotten a good education. He's also coached him and

11:10:59 11 encouraged him to pursue his tennis avocation. A. is in the

11:11:05 12 top 50 in the State of Florida for tennis.

11:11:09 13 Maybe one of the more important factors I'd ask the

11:11:15 14 Court to consider is what happened to him when he was young.

11:11:19 15 We can talk about to what extent that affects a person later in

11:11:24 16 life, but I think we all agree it affects him somewhat.

11:11:27 17 Mr. Diehl was abused as a young man. He was abused by --

11:11:31 18 sexually abused by a person in a position of trust. It was a

11:11:38 19 probation officer or counselor that he was assigned --

11:11:40 20 counselor I believe that he was assigned to by the juvenile

11:11:43 21 court. And not only was he abused, he was drugged and abused,

11:11:49 22 an even more heinous act. And certainly he was a vulnerable

11:11:55 23 victim during those acts. And then just a year or so later,

11:11:59 24 another incident occurred when he was 13 years old. He was

11:12:03 25 again sexually abused. Now, I ask the Court to consider --

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 74 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/11 Page 74 of 122

73

| 11:12:08 | 1 | consider that and the circumstances in Mr. Diehl's life. |
|---|---|---|
| 11:12:13 | 2 | Since the time of commission of these offenses, |
| 11:12:20 | 3 | there's no indication other than testimony of Mr. Courtney, who |
| 11:12:24 | 4 | I'll talk about in a minute, that Mr. Diehl has even engaged in |
| 11:12:29 | 5 | any activity of child pornography. And, certainly, there is no |
| 11:12:34 | 6 | evidence from any source that he has repeated the conduct that |
| 11:12:37 | 7 | he was convicted of here, that he produced more child |
| 11:12:41 | 8 | pornography. |
| 11:12:41 | 9 | The only evidence that he's had anything to do with |
| 11:12:44 | 10 | child pornography is the testimony of Ken Courtney. The Court |
| 11:12:48 | 11 | heard Mr. Courtney's testimony. The Court perhaps expressed |
| 11:12:51 | 12 | some reservations of its own with respect to the truthfulness |
| 11:12:56 | 13 | of Mr. Courtney. You stated in your ruling that you believed |
| 11:12:59 | 14 | him to the extent that he saw some -- saw something in |
| 11:13:01 | 15 | Florida. Mr. Diehl adamantly denies that he showed |
| 11:13:08 | 16 | Mr. Courtney any pornography and that he had a collection of |
| 11:13:12 | 17 | child pornography. |
| 11:13:14 | 18 | I'd be happy to cooperate with the government in |
| 11:13:17 | 19 | decrypting the disk they have to show it has no child |
| 11:13:21 | 20 | pornography. His wife, his son had access to his computer |
| 11:13:25 | 21 | during this time. Certainly, if it would have had child |
| 11:13:30 | 22 | pornography, that would not have been the case. There's been |
| 11:13:32 | 23 | an extensive investigation by the FBI. There was nothing that |
| 11:13:36 | 24 | turned up that indicated he was in possession of child |
| 11:13:38 | 25 | pornography. |

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 75 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 75 of 122

74

| | | |
|---|---|---|
| 11:13:40 | 1 | They canvassed the neighborhood where he lived in the |
| 11:13:43 | 2 | Austin area.  No one else came forward that had been engaged in |
| 11:13:48 | 3 | the production activities.  There were many other children that |
| 11:13:53 | 4 | he was around that the FBI interviewed, his other nieces, no |
| 11:13:57 | 5 | outcry there.  There is simply nothing to indicate that he was |
| 11:14:00 | 6 | involved in child pornography after this period in his life. |
| 11:14:15 | 7 | The conduct in the videos itself, I'll ask the Court |
| 11:14:18 | 8 | to consider this:  While reprehensible -- and I'm certainly not |
| 11:14:22 | 9 | making any excuses or trying to minimize it to other than what |
| 11:14:25 | 10 | is apparent, while these are reprehensible acts, they did not |
| 11:14:32 | 11 | involve sexual intercourse.  They did not involve penetration |
| 11:14:35 | 12 | as perhaps that would commonly be understood.  And I contrast |
| 11:14:40 | 13 | this with many of the cases that I've cited in my sentencing |
| 11:14:44 | 14 | memorandum where the conduct was simply much, much worse. |
| 11:15:03 | 15 | Another thing I'd ask the Court to consider would be |
| 11:15:07 | 16 | the need to avoid disparate sentences.  What I ask the Court to |
| 11:15:13 | 17 | consider is what other courts have done with other similar |
| 11:15:16 | 18 | conduct sentenced under the same guideline that occurred during |
| 11:15:20 | 19 | the same period of time.  The government has urged the Court to |
| 11:15:24 | 20 | consider the guidelines as they're written now.  For what |
| 11:15:30 | 21 | purpose is not clear, but they have urged that the Court do |
| 11:15:33 | 22 | that. |
| 11:15:33 | 23 | The guidelines as they are written now were not |
| 11:15:36 | 24 | developed as guidelines ordinarily are.  They were developed in |
| 11:15:44 | 25 | accordance with Congressional mandate.  There was no study or |

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 76 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/17/13 Page 76 of 122

75

11:15:47  1  no empirical studies done to determine whether there was a need

11:15:51  2  for that drastic increase in the guidelines.  There were no

11:15:54  3  hearings held to take comment on why those should be

11:15:58  4  increased.  They were simply done by Congressional fiat.

11:16:02  5       What I think is much more instructive to the Court is

11:16:06  6  the history of sentencing under this particular guideline

11:16:09  7  for -- for cases that occurred during the same time period.

11:16:15  8  The statistics from the Sentencing Commission indicate that

11:16:23  9  there are about as much upward departures as there are downward

11:16:28 10  departures under 2K -- or 2G2.1.  And I cited in page 3 of my

11:16:33 11  sentencing memorandum a table that sets that out.  And,

11:16:36 12  generally, the guidelines are used as a guide in sentencing.

11:16:40 13       Now, we'd ask the Court to depart downward, however,

11:16:43 14  in this -- or vary downward under 3353 factors in this case

11:16:50 15  because of the fact I've mentioned.  They also, I will point

11:16:52 16  the Court, to a few cases that appear to be very similar to

11:17:02 17  Mr. Diehl's case where the Court gave a sentence in the range

11:17:07 18  that we're suggesting that the Court give.

11:17:14 19       First we cited in the supplemental sentencing

11:17:19 20  memorandum *United States v. Counentos*.  It's an 8th Circuit

11:17:24 21  case.  This one is almost on all fours with the defendant's

11:17:27 22  case.  There were three children involved.  One of -- some of

11:17:31 23  the conduct involved was oral sex.  The date of the offense was

11:17:35 24  around 2001.  The same guideline range or same general

11:17:40 25  guideline structure applies.  The sentence in this case was

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 77 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 76 of 122

76

| | | |
|---|---|---|
| 11:17:45 | 1 | 120 months, and the -- that was after a trial.  So the Court |
| 11:17:53 | 2 | considered all of the factors and arrived at 120 months as |
| 11:17:57 | 3 | being the proper sentence. |
| 11:17:59 | 4 | Another case is *United States v. Smart*, again, 120 |
| 11:18:03 | 5 | months.  That was a case out of, I believe, the Southern |
| 11:18:09 | 6 | District of Texas.  Again, same type of activities. |
| 11:18:13 | 7 | And then *United States v. Crow* out of the Southern |
| 11:18:16 | 8 | District of Texas.  Again, 120 months, same type of activity as |
| 11:18:20 | 9 | the other cases that are cited in supplemental sentencing |
| 11:18:24 | 10 | memorandum. |
| 11:18:27 | 11 | And, certainly, the basic factors that we suggest to |
| 11:18:29 | 12 | the Court should be considered under 3553 are the length of |
| 11:18:34 | 13 | time since these offenses have been committed, what Mr. Diehl |
| 11:18:38 | 14 | has done with his life since the commission of these offenses, |
| 11:18:43 | 15 | the sexual abuse that he underwent as a child and how that may |
| 11:18:47 | 16 | have affected his judgment in these cases -- and these |
| 11:18:52 | 17 | instances, the medication he was on and the extent that might |
| 11:18:57 | 18 | have affected his judgment, and the other sentences that |
| 11:19:00 | 19 | this -- that other courts have handed down in similar |
| 11:19:03 | 20 | circumstances. |
| 11:19:04 | 21 | And Mr. Diehl I believe would also like to address |
| 11:19:06 | 22 | the Court with respect to some of those factors. |
| 11:19:09 | 23 | THE COURT:  Mr. Diehl, you may proceed. |
| 11:19:12 | 24 | THE DEFENDANT:  I -- this was a terrible lapse of |
| 11:19:17 | 25 | judgment.  It was one hour of video.  I apologize for breaching |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 78 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 78 of 122

77

| 11:19:26 | 1 | everybody's trust and causing this.  I understand how important |
| 11:19:30 | 2 | trust is.  This doesn't reflect me.  Since that incident -- or |
| 11:19:37 | 3 | before that incident, as Mr. Morris pointed out, we started |
| 11:19:42 | 4 | going to nudist camps and we went a lot.  And everybody is |
| 11:19:46 | 5 | naked and running around and jumping on each other, and it |
| 11:19:49 | 6 | affected my judgment and I made some terrible judgment calls |
| 11:19:53 | 7 | and recognized it and did my best to make sure it never |
| 11:19:57 | 8 | happened again. |
| 11:19:59 | 9 | And I have worked hard, and I have been a devoted |
| 11:20:03 | 10 | father.  And I have a teenager, and I'd like the opportunity to |
| 11:20:12 | 11 | serve a sentence that punishes me but to get out -- to get out |
| 11:20:22 | 12 | and be able to help my child succeed. |
| 11:20:26 | 13 | MR. MORRIS:  Your Honor, the sentence that we're |
| 11:20:30 | 14 | suggesting the Court assess in this case is 120 months. |
| 11:20:34 | 15 | THE COURT:  Mr. Morris, anything further at this |
| 11:20:36 | 16 | time?  You'll be given another opportunity to speak, as will |
| 11:20:40 | 17 | Mr. Diehl.  Do either of you have anything else right at this |
| 11:20:42 | 18 | time? |
| 11:20:43 | 19 | MR. MORRIS:  No, Your Honor. |
| 11:20:43 | 20 | THE COURT:  Mr. Diehl? |
| 11:20:44 | 21 | THE DEFENDANT:  No, sir. |
| 11:20:46 | 22 | THE COURT:  Mr. Devlin, does the government have |
| 11:20:49 | 23 | anything the government would like to say before the Court |
| 11:20:51 | 24 | accesses sentence? |
| 11:20:53 | 25 | MR. DEVLIN:  Yes, I do, Your Honor.  Judge, this day |

Case 1:10-cr-00297-LY   Document 218-4   Filed 12/05/16   Page 79 of 122
Case 1:10-cr-00297-LY   Document 135   Filed 01/15/13   Page 79 of 122

78

11:21:01  1  must be a day of reckoning for David Andrew Diehl.  After ten

11:21:06  2  years, justice has finally caught up with this child molester.

11:21:11  3  Justice here warrants a long and harsh prison sentence to

11:21:16  4  ensure that he never ever again harms another child, to ensure

11:21:23  5  the safety of the community, and most of all, to punish this

11:21:29  6  remorseless child rapist for his sexual assault of innocent,

11:21:33  7  defenseless children.

11:21:36  8          This man is nothing but an opportunist, Judge.  He's

11:21:41  9  an opportunistic liar.  Nothing that he says can be given any

11:21:45  10  credence.  He's an opportunistic manipulator.  He's an

11:21:50  11  opportunistic minimizer of his conduct, and he's an

11:21:54  12  opportunistic child molester.  There is absolutely nothing

11:21:58  13  redeeming about him or about any of his videos.  And I -- and I

11:22:06  14  object to Mr. Morris's minimization of the horrific nature of

11:22:12  15  those videos by saying, well, he didn't have intercourse.

11:22:15  16  Honestly, Judge, you saw the videos.  That's not true.

11:22:22  17          I hope that the Court keeps in mind that every single

11:22:26  18  video of child pornography charged and introduced in this case

11:22:32  19  represents and depicts the defendant committing a sexual

11:22:36  20  assault of a child for which he's not been tried or convicted

11:22:41  21  yet.  And not all production of child pornography necessarily

11:22:48  22  involves a sexual assault, Judge, under the law.  But in this

11:22:51  23  case it does.  And frankly, Judge, in my opinion, this is the

11:22:55  24  tip of the iceberg.

11:22:57  25          There's an encrypted hard drive out there.  This

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 80 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 79 of 122

79

| | | |
|---|---|---|
| 11:23:01 | 1 | bogus story about losing his password and not remembering it is |
| 11:23:07 | 2 | nothing but a blatant, flat lie.  You heard the evidence from |
| 11:23:13 | 3 | Mr. Courtney -- and I'm not going to stand here today and say |
| 11:23:16 | 4 | Mr. Courtney is a pillar of the community by any stretch of the |
| 11:23:21 | 5 | imagination.  But Mr. Courtney is of the quality of person that |
| 11:23:24 | 6 | this child molester that is before you today decided to |
| 11:23:27 | 7 | associate himself with, another collector of child pornography. |
| 11:23:31 | 8 | And Mr. Courtney indicated that Mr. -- Mr. Diehl was |
| 11:23:34 | 9 | a meticulous organizer of child pornography.  He had it on his |
| 11:23:40 | 10 | encrypted hard drive, according to the testimony of |
| 11:23:43 | 11 | Mr. Courtney, and he had it very well organized, as many child |
| 11:23:49 | 12 | pornography collectors and molesters do.  So to say that he has |
| 11:23:54 | 13 | suddenly lost or his landlord took his password, it's just |
| 11:24:00 | 14 | absolutely beyond imagination. |
| 11:24:02 | 15 | But, nevertheless, what we have today, Judge, one of |
| 11:24:06 | 16 | the key things I want to focus on is what he just said to you. |
| 11:24:09 | 17 | He's remorseless.  He's entirely remorseless.  He thinks that |
| 11:24:14 | 18 | this is basically a bad roofing job, and he's sorry for it, and |
| 11:24:18 | 19 | it will never happen again.  He exercised a lack of judgment. |
| 11:24:22 | 20 | Oh, it was just one hour of video.  I apologize for the breach |
| 11:24:26 | 21 | of trust.  It doesn't reflect me before or after.  He's going |
| 11:24:29 | 22 | to blame being at a nudist camp for his problems.  That it was |
| 11:24:34 | 23 | somebody else's fault.  It was the fault that I was running |
| 11:24:37 | 24 | around all these naked people and I guess children; and, |
| 11:24:40 | 25 | therefore, that drove me to do this. |

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 81 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 80 of 121

80

| 11:24:44 | 1 | And as I've already addressed, he tries to claim he's |
| 11:24:47 | 2 | a devoted father, but he's subjected his son to having to |
| 11:24:50 | 3 | testify in this Court, to have to sit on that witness stand, |
| 11:24:53 | 4 | Judge, for his own selfish gain.  There is nothing redeeming |
| 11:24:59 | 5 | about this defendant. |
| 11:25:00 | 6 | To say that the length of time that's transpired here |
| 11:25:04 | 7 | is something that ought to benefit him.  Absolutely nothing has |
| 11:25:08 | 8 | happened in that length of time to not only punish the |
| 11:25:12 | 9 | defendant but to get him to overcome what his problems are. |
| 11:25:15 | 10 | Note how Mr. Morris and the defendant both talked to you about |
| 11:25:19 | 11 | what's happened in those intervening years, that there's no |
| 11:25:23 | 12 | evidence of anything happening, that there's been nothing |
| 11:25:26 | 13 | introduced to show that he's engaged in this. |
| 11:25:30 | 14 | There is no statement that he can make truthfully -- |
| 11:25:33 | 15 | that either one of them can make truthfully that he didn't do |
| 11:25:38 | 16 | anything constituting a sexual assault between then and now, |
| 11:25:40 | 17 | because he can't say that.  And when we get that hard drive |
| 11:25:44 | 18 | decrypted, Judge, some day, justice will come around again. |
| 11:25:48 | 19 | These offenses were especially cruel and degrading. |
| 11:25:52 | 20 | They were cruel and degrading not only because they were |
| 11:25:56 | 21 | recorded and because they had -- they involved minor, |
| 11:25:58 | 22 | defenseless children, but because they were then disseminated |
| 11:26:03 | 23 | on the Internet where they have turned up so far in hundreds of |
| 11:26:07 | 24 | cases, as indicated by the testimony you received. |
| 11:26:11 | 25 | This is a -- these are going to be on the Internet |

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 82 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/13  Page 81 of 121

81

11:26:15  1  forever.  There's no way to put a cap on these things again and

11:26:21  2  take them off.  They are going to be out there forever.

11:26:24  3  They're going to be haunting all of these victims and their

11:26:27  4  families forever.

11:26:29  5       It's not often that this Court has a producer of

11:26:32  6  child pornography in front of it.  Most of your cases, Judge,

11:26:36  7  are possessors and distributors of other child pornography.

11:26:41  8  Now you have in front of you someone who has actually made it,

11:26:45  9  and who has actually produced it.  And he's produced it with

11:26:49  10 the intent, as Mr. Courtney stated in his testimony, of getting

11:26:53  11 others to produce it and give it to the defendant.

11:26:55  12      This child pornography has a value in the child

11:26:59  13 pornography community, unfortunately.  There's regular child

11:27:03  14 pornography, and then there is new and fresh child pornography.

11:27:06  15 That's what the defendant was.  He was kind at the top level on

11:27:10  16 the child pornography chain.  He was making it and giving it to

11:27:14  17 others with the hope of getting equally desirable child

11:27:18  18 pornography that was new and fresh.  That's what Mr. Courtney

11:27:25  19 testified to, and there's every reason to believe that's the

11:27:28  20 case.

11:27:29  21      The defendant has been surreptitiously filming people

11:27:33  22 for years, as indicated by us in our sentencing memorandum and

11:27:35  23 indicated by the evidence.  A girl he was going out with when

11:27:38  24 he was 28 years old and she was 15 was surreptitiously

11:27:43  25 interviewed -- excuse me -- video-ed having sex with him.  You

Case 1:10-cr-00297-LY   Document 218-4   Filed 12/05/16   Page 83 of 122
Case 1:10-cr-00297-LY   Document 135   Filed 01/15/16   Page 83 of 121

82

| | | |
|---|---|---|
| 11:27:48 | 1 | had the hidden camera evidence that was presented in this |
| 11:27:52 | 2 | trial.  He's done this over and over again for now over 20 |
| 11:27:56 | 3 | years. |
| 11:27:57 | 4 | We don't know yet what else he's done.  I'm sure that |
| 11:28:01 | 5 | we will one day find out.  But the bottom line is, Judge, that |
| 11:28:07 | 6 | this is this Court's opportunity to send a strong message to |
| 11:28:13 | 7 | send an flaying unflaggingly strong message to this defendant |
| 11:28:18 | 8 | and to anyone else like him that this society will not tolerate |
| 11:28:21 | 9 | this kind of conduct.  He's not even being punished here today |
| 11:28:25 | 10 | for the underlying sexual assaults, the underlying rapes, the |
| 11:28:30 | 11 | underlying sexual abuse of the children.  I'm hoping that that |
| 11:28:34 | 12 | justice will come from the state, where it has to come from. |
| 11:28:38 | 13 | He's only being sentenced today for videotaping it, for |
| 11:28:41 | 14 | producing it, and for enticing children -- well, he didn't even |
| 11:28:46 | 15 | entice.  They didn't know in most of the instances that they |
| 11:28:48 | 16 | were even being filmed. |
| 11:28:50 | 17 | And now he wants you to -- to make believe that he |
| 11:28:54 | 18 | was a good man and that this was only an hour of his life. |
| 11:28:58 | 19 | He's minimized this the whole time.  He's minimized this from |
| 11:29:02 | 20 | the very beginning.  This is no big deal to him.  And he hasn't |
| 11:29:07 | 21 | even -- he's never apologized to the victims.  He doesn't feel |
| 11:29:12 | 22 | bad about having raped these young children. |
| 11:29:17 | 23 | I've been trying to think of a reason, any reason |
| 11:29:20 | 24 | whatsoever, to recommend to this Court something less than life |
| 11:29:26 | 25 | imprisonment and I can't come up with anything.  I can't come |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 84 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 83 of 121

83

| 11:29:30 | 1 | up with a single reasonable recommendation less than life. |
| 11:29:36 | 2 | But, of course, I realize life is not an authorized punishment |
| 11:29:40 | 3 | here.  But what effectively amounts to his life is an |
| 11:29:43 | 4 | authorized punishment. |
| 11:29:46 | 5 | And to do anything less than putting this defendant |
| 11:29:51 | 6 | away for what amounts to the rest of his life is going to be |
| 11:29:57 | 7 | not doing justice to the victims in this case.  It's not going |
| 11:30:01 | 8 | to be doing justice to the children of this society, who |
| 11:30:08 | 9 | only -- so far there have been four who have been found. |
| 11:30:12 | 10 | There's more out there, undoubtedly.  We don't have the |
| 11:30:14 | 11 | evidence of it at this point, but we will find it.  The FBI has |
| 11:30:20 | 12 | done an amazing job in this case tracking down this defendant |
| 11:30:23 | 13 | and proving this case.  This is one of the strongest cases |
| 11:30:28 | 14 | evidentiary wise that I've ever been involved in in all my |
| 11:30:32 | 15 | years as prosecutor.  This was airtight as far as I'm |
| 11:30:37 | 16 | concerned. |
| 11:30:38 | 17 | I hope that this Court has the courage to impose a |
| 11:30:44 | 18 | harsh sentence in this case.  And what will that be?  I'm going |
| 11:30:48 | 19 | to go out on a limb here.  I hate to even put out a number, |
| 11:30:53 | 20 | because it might be less than what the Court is thinking but I |
| 11:30:55 | 21 | hope it isn't.  I hope the Court imposes nothing less than a |
| 11:30:58 | 22 | total punishment of 60 years.  We'd like to see more.  Again, I |
| 11:31:04 | 23 | think 200 years is probably not enough in this case. |
| 11:31:09 | 24 | But keep in mind, Judge, that of all the possession |
| 11:31:13 | 25 | cases and the receipt cases that you sentenced, the lightest |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 85 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 85 of 122

84

| 11:31:17 | 1 | one that I'm aware of in my own experience with you is about |
| 11:31:21 | 2 | four years for possessor, but they go up to 15 or 20 years. |
| 11:31:25 | 3 | That's for people who don't make this kind of horrific trash. |
| 11:31:31 | 4 | This defendant has produced this. This defendant has |
| 11:31:37 | 5 | shown you evidence of his own rape of children and has |
| 11:31:42 | 6 | disseminated that to others on the Internet. He deserves |
| 11:31:47 | 7 | substantially more than 20 years that possessors and people who |
| 11:31:53 | 8 | receive and distribute this stuff kind of generically get. |
| 11:31:57 | 9 | He just deserves at least 60 years. Seventy-five to |
| 11:32:03 | 10 | 100 years would be more appropriate under the circumstances. |
| 11:32:11 | 11 | This has got to send a strong message that this simply is going |
| 11:32:15 | 12 | to be punished harshly and anybody who engages in this type of |
| 11:32:19 | 13 | behavior is going to essentially face the rest of their lives |
| 11:32:22 | 14 | in prison. |
| 11:32:23 | 15 | The victims have to be kept in mind here. There has |
| 11:32:26 | 16 | been no consideration of the victims by the defendant. The |
| 11:32:29 | 17 | victims are going to be living with this for the rest of their |
| 11:32:32 | 18 | lives. And, again, the more that comes out, the more |
| 11:32:36 | 19 | disturbing it is. There's nothing good that's coming out of |
| 11:32:39 | 20 | this case as new evidence is produced. |
| 11:32:41 | 21 | So I ask that you consider a sentence that |
| 11:32:46 | 22 | effectively amounts to the defendant's life. That's going to |
| 11:32:49 | 23 | require that you stack -- stack counts, stack sentences. The |
| 11:32:55 | 24 | defendant is fifty -- he's going -- he's 49 years old. He's |
| 11:33:00 | 25 | going to be 50 years old next year. That's why I suggested a |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 86 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/15 Page 86 of 122

85

| | | |
|---|---|---|
| 11:33:04 | 1 | minimum -- again, I'm not asking for 60.  I would like to see |
| 11:33:06 | 2 | more.  But at least 60 to do justice in this case. |
| 11:33:10 | 3 | Please, Judge, I ask that you -- that you do justice |
| 11:33:14 | 4 | in this case, that your sentence serve justice, and that this |
| 11:33:18 | 5 | defendant never see anything but the inside of a prison again |
| 11:33:23 | 6 | during his natural life. |
| 11:33:26 | 7 | THE COURT:  Does Probation have anything further |
| 11:33:29 | 8 | before sentence is pronounced? |
| 11:33:30 | 9 | PROBATION OFFICER:  No, Your Honor. |
| 11:33:31 | 10 | THE COURT:  Is there anyone here present in the |
| 11:33:33 | 11 | courtroom, anyone in the audience, who desires to speak with |
| 11:33:36 | 12 | regard to this case before the Court pronounces sentence?  If |
| 11:33:40 | 13 | so please, come forward at this time and I will hear from you. |
| 11:33:44 | 14 | And if there is more than one person who desires to speak, if |
| 11:33:48 | 15 | that person will come to the podium, and anyone else who wants |
| 11:33:51 | 16 | to speak, line up there at the rail where the marshal is so we |
| 11:33:54 | 17 | can move through expeditiously. |
| 11:33:58 | 18 | MR. MORRIS:  Your Honor, for the record, I'd like to |
| 11:34:00 | 19 | interpose an objection at this point, that it is a due process |
| 11:34:03 | 20 | violation for the Court to here statements as the Court is |
| 11:34:08 | 21 | about to hear.  We have no way of cross-examining and no way to |
| 11:34:14 | 22 | test the veracity of the statements, and we'd ask the Court not |
| 11:34:18 | 23 | allow this. |
| 11:34:19 | 24 | THE COURT:  Okay.  The objection will be overruled. |
| 11:34:22 | 25 | The Court will hear from members of the public with regard to |

Case 1:10-cr-00297-LY Document 213-4 Filed 12/05/16 Page 87 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/15/13 Page 87 of 122

86

| | | |
|---|---|---|
| 11:34:25 | 1 | this case.  The weight that the Court will give such testimony |
| 11:34:31 | 2 | remains to be seen or whether the Court will consider it at |
| 11:34:34 | 3 | all.  But I am going to allow the statements.  Please come |
| 11:34:37 | 4 | forward, whoever desires to speak first. |
| 11:34:47 | 5 | Would you state your name, and then you may proceed. |
| 11:34:49 | 6 | MR. BRIGHAM:  May name is James Edward Brigham. |
| 11:34:52 | 7 | Your Honor, first I'd like to read a statement that |
| 11:34:56 | 8 | my daughter wrote this morning.  I -- me and my wife just went |
| 11:35:07 | 9 | through the death of her father and just returned home last |
| 11:35:12 | 10 | night from England.  I got up at 3 o'clock in the morning |
| 11:35:17 | 11 | knowing that I was going to be here in court.  And when I woke |
| 11:35:21 | 12 | up, my daughter was already awake because she couldn't sleep. |
| 11:35:25 | 13 | And so we sat and talked for a while.  She said, Dad, I don't |
| 11:35:29 | 14 | know what to say.  I'm -- I'm scared of this guy, and I don't |
| 11:35:33 | 15 | know what to say.  And I said, Well, maybe it's best that you |
| 11:35:36 | 16 | write it down.  You can -- your thoughts will probably be a |
| 11:35:40 | 17 | little bit clearer. |
| 11:35:41 | 18 | So this is from my daughter, S.B.: |
| 11:35:45 | 19 | To the Court:  I was seven years old.  Young, happy, |
| 11:35:50 | 20 | active, loved everything life had given me, and enjoyed my |
| 11:35:56 | 21 | friends.  Not only that, but my parents love for my well-being |
| 11:36:00 | 22 | and health.  I loved my life as a child, which is now a blur in |
| 11:36:05 | 23 | my life.  I don't recall being a happy young girl that I'm told |
| 11:36:10 | 24 | I was today. |
| 11:36:11 | 25 | I remember the hell I was put through you, |

Case 1:10-cr-00237-LY Document 218-4 Filed 12/05/16 Page 88 of 122
Case 1:10-cr-00237-LY Document 135 Filed 04/15/11 Page 87 of 121

87

11:36:14  1  David *Dial*, and the threats told to myself and of my family.

11:36:20  2  The flashbacks of like movies, just as the nightmares I have

11:36:25  3  which won't ever go away.  My life simply turned to the person

11:36:30  4  I once was and the only person I remember being.  I picked up

11:36:34  5  drugs as young as 11 years old, fifth grade.  Fourteen years

11:36:40  6  old started using Xanax.  First year of high school, I enjoyed

11:36:45  7  being under the influence of alcohol, xanax, and marijuana.

11:36:49  8  High school went on.  I was using cocaine, ecstasy, marijuana,

11:36:53  9  Xanax, and large amounts of alcohol.

11:36:55  10       When I wasn't using, I was angry with everything in

11:36:58  11  life.  I despised anybody and everybody who would help or try

11:37:01  12  to talk to me.  Verbally assaulting my parents too many times

11:37:04  13  to even count.  I was diagnosed with anorexia when I was 15

11:37:09  14  years old and weighed 85 pounds.  Suffering flashbacks and

11:37:13  15  nightmares every day and night since I was seven years old.

11:37:19  16       It was hard, but I never knew it would have to have

11:37:22  17  gotten so terrifying to deal with life.  I had no idea I had

11:37:26  18  and eating disorder until the day I was told.  I was three days

11:37:30  19  away from death in a doctor's office with my mother,

11:37:34  20  Janet Brigham.  I was appointed to Vita Treatment Center in

11:37:37  21  California three days after being diagnosed.

11:37:39  22       I got to the point where I hated the texture of water

11:37:44  23  and food.  I had only been using drugs.  Again she states, even

11:37:48  24  water I couldn't drink.  Three days from death, I was being

11:37:52  25  forced to drink water.

Case 1:10-cr-00297-LY   Document 218-4   Filed 12/05/16   Page 89 of 122
Case 1:10-cr-00297-LY   Document 135   Filed 01/17/12   Page 88 of 122

88

```
11:37:54   1              We were told by the doctor that you've got to get
11:37:56   2   fluids in her or her heart is going to stop.
11:37:59   3              I couldn't thank the treatment team more who
11:38:04   4   worked -- who had worked with my family and I to discover all
11:38:08   5   I'd been through and what I've been suffering for years.  Once
11:38:12   6   I was out of treatment, I had to come back to Austin, Texas,
11:38:17   7   where I was limited to what I could and could not do.  I
11:38:21   8   quickly relapsed on the drugs I had been using before the
11:38:25   9   months in treatment.  My anger was out of control, just as the
11:38:29  10   life I was living.
11:38:31  11              I assaulted my parents twice leading to spending time
11:38:35  12   in juvenile.  The anger I had against my parents was from
11:38:40  13   myself not knowing why my parents did not know what
11:38:43  14   David Dial had done to myself.
11:38:47  15              I started uses heroin every now and then in my
11:38:56  16   relapse with drugs I had been using before treatment.  Using
11:38:59  17   drugs didn't help numb myself from life anymore.  On February
11:39:07  18   18th, 2010, I overdosed on 80 pills of Zyprexa, also Trazodone,
11:39:17  19   my sleeping medication.  I was in a coma for four days, and the
11:39:22  20   first thing I said to my parents when I woke up was, Why didn't
11:39:29  21   you let me die?  I didn't want my life anymore.  I wanted to be
11:39:36  22   dead.
11:39:36  23              I had no confidence of anything.  I was soon admitted
11:39:39  24   to Meridell Achievement Center, who helped change the person I
11:39:44  25   was into the person I am now.  I still have fears of David Dial
```

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 90 of 122
Case 1:10-cr-00297-LY Document 135-4 Filed 01/15/13 Page 89 of 121

89

11:39:52  1  coming back and hurting my family and myself.  But the years

11:39:56  2  he's serving he deserves to the fullest.

11:40:01  3        And this is to you David:  I hope you hate being

11:40:04  4  known as a sexual predator you are known as today.  I am now 18

11:40:10  5  years old.  I have a life and friends who I love.  I love my

11:40:14  6  parents more than I could ever show to them.  I have overcome

11:40:19  7  using drugs, and I've now been clean the longest in my life

11:40:24  8  since I have started using.  I am so happy with who I am, and I

11:40:28  9  wont forget the people who have helped me come this far in my

11:40:33  10  life.  I never knew I would live to be 18 years old with a

11:40:40  11  future that I have.

11:40:41  12        Last part of this she says:  Special thanks to my

11:40:50  13  FBI Agents, Jake and Sean, as well as Detective Mofflin from

11:40:56  14  Williamson County for putting David where he belongs.

11:41:01  15        The next statement, it's from a friend of ours who

11:41:12  16  underwent abuse as a child and is a close family friend.  Dear

11:41:20  17  Judge -- this is from a woman named Gina Massengill:

11:41:23  18        Dear Judge, I'm writing to you because I'm a close

11:41:25  19  friend of the Brigham family.  S. is very dear to me.  I'm also

11:41:30  20  writing because I'm a survivor of a child molester, my

11:41:33  21  stepfather, that not only stole my innocence from me when I was

11:41:37  22  12 but also a large part of the reason my blood sister, Shelly,

11:41:40  23  one year younger than me, took her life by hanging herself at

11:41:45  24  Mount Bonnell three and a half years ago.  She was 45 years

11:41:48  25  old.

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 91 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/16  Page 91 of 122

90

| 11:41:50 | 1 | Luckily, I was blessed with a loving husband and |
| 11:41:53 | 2 | children that I feel have been a wonderful reason and |
| 11:41:56 | 3 | distraction to live through that pain.  Shelly was not as |
| 11:42:00 | 4 | fortunate.  She was never able to be as an adult woman to have |
| 11:42:05 | 5 | a relationship where she could trust a man and let herself be |
| 11:42:08 | 6 | in love with someone.  Shelly asked me about a year before she |
| 11:42:12 | 7 | killed herself to go with her to confront that long-ago |
| 11:42:15 | 8 | situation.  I would not.  In my mind I could not bear to give |
| 11:42:21 | 9 | him any more of myself than he had already taken.  Oh, how I |
| 11:42:24 | 10 | would change that answer if given another chance. |
| 11:42:26 | 11 | Shelly and I were both abused by him during the |
| 11:42:29 | 12 | same -- during the same time.  We both moved out of the house |
| 11:42:33 | 13 | at a young age.  I was 16 the first time I got married. |
| 11:42:37 | 14 | Ridiculous, I know, but to me that was better than my situation |
| 11:42:40 | 15 | in the house with him. |
| 11:42:41 | 16 | I was lucky enough to eventually meet my husband of |
| 11:42:46 | 17 | 22 years, and have had a relatively normal though sometimes |
| 11:42:50 | 18 | difficult life.  Shelly had a life of drugs and bad choices. |
| 11:42:56 | 19 | When she finally stopped the drugs, life still seemed so hard |
| 11:43:00 | 20 | for her to manage well.  The crazy thing about these men is |
| 11:43:05 | 21 | they somehow convince you to keep it quiet.  At least when it |
| 11:43:08 | 22 | happened to me, it was not talked about. |
| 11:43:11 | 23 | That is why I'm so proud of S.  She's choosing to |
| 11:43:16 | 24 | speak up and make this pervert pay for what he did.  Although |
| 11:43:20 | 25 | it's taken its toll on her, I hope she will continue on the |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 92 of 122
Case 1:10-cr-00297-LY Document 135 Filed 01/19/16 Page 91 of 121

91

11:43:24 1   decent path she is on today.  I think it would be easier to do

11:43:28 2   this knowing your abuser is behind bars.

11:43:32 3          From a brokenhearted woman that in some ways will

11:43:40 4   never get over what a pervert did to my life, Gina Massengill,

11:43:45 5   Austin, Texas.

11:43:49 6          This last statement is from me, Your Honor.  And also

11:43:55 7   directed it to you, David *Dial*, especially to you.

11:43:58 8          THE DEFENDANT:  It's *Deal*.

11:43:59 9          THE COURT:  Do not direct anything to the defendant.

11:44:03 10  If you have anything you want to say --

11:44:04 11         MR. BRIGHAM:  I can't begin to express the pain you

11:44:09 12  put my daughter and family through.  You robbed us of being

11:44:11 13  able to watch our daughter Sarah from growing from a happy

11:44:15 14  little girl who was thrilled with what every day will bring.

11:44:18 15         You will never know or understand what it is like to

11:44:21 16  have watched your daughter emaciated from an eating disorder to

11:44:25 17  the point of death, nor the horror of watching a machine

11:44:28 18  breathe life into her for four days when she tried to end the

11:44:32 19  pain inflicted by you, David.

11:44:38 20         When I look at you sitting there in chains, I know

11:44:40 21  what pure evil looks like.  And the thought of you dying in

11:44:45 22  prison should bring some sort of closure, but it doesn't.  My

11:44:50 23  wife and I will never be able to take away from Sarah what you

11:44:53 24  did to her.  What kind of person would tell a little girl at

11:45:00 25  the point of a gun that if she ever told on you, that you would

Case 1:11-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 93 of 122
Case 1:11-cr-00297-LY  Document 135-4  Filed 01/15/13  Page 93 of 122

92

```
11:45:04   1   kill her family as well as her?  Only an animal in human form
11:45:09   2   could do such a thing.
11:45:12   3           You got up here and said how much you loved your son,
11:45:17   4   but you used your own son, A., as bait to lure my child to your
11:45:22   5   house when you started molesting her at age seven.  She spent
11:45:26   6   the next ten years protecting us from you by keeping what you
11:45:31   7   had done to her inside where it slowly ate her away to the
11:45:35   8   point where she tried to kill herself and end the pain.
11:45:39   9           I remember racing to the emergency room with Sarah
11:45:42  10   after finding her on the floor in the bathroom in convulsions.
11:45:48  11   I remember the nurse telling us that there were no antidotes
11:45:52  12   for the drugs she had taken and that there was a strong chance
11:45:55  13   she would not survive.
11:45:56  14           I pray that every day that you spend behind bars that
11:46:01  15   you suffer horribly, and I truly, truly look forward to the day
11:46:06  16   that I receive news of your death.
11:46:10  17           That's all I have to say, Your Honor.
11:46:20  18           MR. MORRIS:  Your Honor may I pose an objection at
11:46:22  19   this point?
11:46:23  20           THE COURT:  Pardon me?
11:46:23  21           MR. MORRIS:  May I impose an additional objection at
11:46:26  22   this point?
11:46:26  23           THE COURT:  Yes.
11:46:27  24           MR. MORRIS:  The nature of what the Court has heard
11:46:29  25   is as we described it would be in the chambers hearing.  We
```

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 94 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/15/13  Page 93 of 121

93

| 11:46:32 | 1 | have no base -- no materials with which to rebut this and no |
| 11:46:38 | 2 | procedure to rebut it.  It fundamentally violates due process |
| 11:46:42 | 3 | for this type of information about an alleged victim who is not |
| 11:46:46 | 4 | a part of this matter and not a part of the trial to be given |
| 11:46:51 | 5 | before sentencing. |
| 11:46:51 | 6 | We ask that the Court recess this sentencing, order |
| 11:46:55 | 7 | additional discovery with respect to this allegation, and allow |
| 11:47:01 | 8 | us to come in and rebut. |
| 11:47:03 | 9 | THE COURT:  The objection is overruled.  Court will |
| 11:47:05 | 10 | proceed.  Come forward. |
| 11:47:20 | 11 | MS. TOLSON:  I am the mother of -- |
| 11:47:22 | 12 | THE COURT:  Would you state your name, please. |
| 11:47:24 | 13 | MS. TOLSON:  Neva Tolson. |
| 11:47:28 | 14 | I really don't know what to say, except as far as a |
| 11:47:39 | 15 | victim statement.  On August 21st I was presented with two FBI |
| 11:47:47 | 16 | agents at my door after coming home from the grocery store with |
| 11:47:52 | 17 | my little one.  And things were great.  I actually was getting |
| 11:47:57 | 18 | over being upset about my job, and life was actually going good |
| 11:48:02 | 19 | and then I get this. |
| 11:48:07 | 20 | Basically, I felt a part of my soul die, and I could |
| 11:48:16 | 21 | consider him a murderer because of this.  And it's not just |
| 11:48:19 | 22 | pieces of my soul I know that he damaged, everybody else that |
| 11:48:21 | 23 | he's touched in peripheral. |
| 11:48:30 | 24 | After learning this, I have to deal with sudden bouts |
| 11:48:36 | 25 | of inconsolability.  I did turn to alcohol, and I'm just now |

Case 1:10-cr-00397-LY Document 213-4 Filed 12/05/16 Page 95 of 122
Case 1:10-cr-00397-LY Document 135 Filed 01/15/16 Page 95 of 122

94

| | | |
|---|---|---|
| 11:48:44 | 1 | finally starting to move past it and fix it.  But that was over |
| 11:48:52 | 2 | a year ago, and I'm just now starting.  He took something that |
| 11:48:59 | 3 | I held sacred and beautiful between a loving couple, and so our |
| 11:49:07 | 4 | marriage is strained with my husband and I because of this.  He |
| 11:49:11 | 5 | turned it into something that was ugly and foul.  He is the |
| 11:49:17 | 6 | very example that allows others to so publicly disparage |
| 11:49:23 | 7 | against something that should be joyful in every beings' |
| 11:49:28 | 8 | hearts. |
| 11:49:29 | 9 | He's put a giant "F" on my forehead.  It's just I |
| 11:49:35 | 10 | failed my child.  I have been put on even more constant vigil |
| 11:49:46 | 11 | even though I thought I did good, and I still ended up failing |
| 11:49:51 | 12 | her and the worse still happened. |
| 11:49:55 | 13 | Trust in anyone new that I meet is very difficult. |
| 11:50:03 | 14 | Trust for anyone that my little one meets is very difficult for |
| 11:50:07 | 15 | me to get past.  I scan everybody.  Who knew that a family man |
| 11:50:11 | 16 | with a two-year-old son and a wife could just be so evil. |
| 11:50:26 | 17 | It's -- her world got killed.  My world got killed.  My |
| 11:50:30 | 18 | family's world got killed.  And I -- and that's basically it. |
| 11:50:39 | 19 | Thank you, Your Honor. |
| 11:50:40 | 20 | THE COURT:  Thank you. |
| 11:50:41 | 21 | Anyone else in the audience who desires to speak? |
| 11:50:48 | 22 | (No response) |
| 11:50:48 | 23 | THE COURT:  Mr. Diehl, Mr. Morris, please come back |
| 11:50:51 | 24 | forward.  Do either or both of you have anything you would like |
| 11:50:56 | 25 | to say, either in addition to what you've already said or in |

Case 1:10-cr-00287-LY Document 218-4 Filed 12/05/16 Page 96 of 122
Case 1:10-cr-00287-LY Document 135 Filed 04/15/16 Page 96 of 122

95

11:51:00   1   response to anything that has been said by anyone else?

11:51:03   2           MR. MORRIS: First of all, Your Honor, I again assert

11:51:07   3   my objection to the first speaker and ask that the Court not

11:51:10   4   consider what he said for any purpose in this sentencing and

11:51:14   5   specifically his statements by people who were -- or being read

11:51:19   6   by people who are not here in Court.

11:51:22   7           As I pointed out, this -- that information relates to

11:51:25   8   someone who is not technically a victim in this offense. That

11:51:30   9   set of circumstances will be dealt with by the appropriate

11:51:33   10   authorities, but it's not appropriate to influence the

11:51:36   11   sentencing in this Court.

11:51:40   12           THE COURT: Well, the Court overrules the objection.

11:51:42   13   But after the Court studies what the Court has in front of it,

11:51:45   14   the Court will determine what the Court is going to consider

11:51:48   15   and is not going to consider in imposing sentence in this case

11:51:54   16   and will so advise you on the record.

11:51:56   17           MR. MORRIS: And brief rebuttal to something that the

11:51:59   18   government said or all that the government said, I would

11:52:03   19   submit: The overriding mandate of 18 USC 3553 is that the

11:52:11   20   Court's will impose a sentence sufficient but not greater than

11:52:17   21   necessary to comply with the purposes set forth in this text.

11:52:20   22           The considerations of 3553 nowhere contain

11:52:26   23   vengeance. Nowhere do they contain a statement that someone is

11:52:31   24   to be made an example of. Deterrence, yes, but not an example

11:52:37   25   of. Nowhere does it state in those considerations that you're

Case 1:10-cr-00297-LY   Document 218-4   Filed 12/05/16   Page 97 of 122
Case 1:10-cr-00297-LY   Document 135   Filed 01/15/13   Page 97 of 122

96

11:52:41  1   to do something so -- for the benefit of a victim to vindicate

11:52:47  2   them as far as vengeance.

11:52:49  3          Mr. Devlin challenges you to have the courage to --

11:52:54  4   to give an unreasonable sentence.  It's not a matter of

11:53:00  5   courage.  It's a matter of judicial wisdom and following the

11:53:06  6   law.  What 3553 mandates is, as I said, that that is necessary,

11:53:10  7   but not more than.

11:53:12  8          Mr. Diehl is 50 years old.  The Court has a wide

11:53:18  9   discretionary range of sentence it can impose.  But the

11:53:21 10   guidelines in this case aren't as outrageous as the government

11:53:30 11   urges the Court to assess.

11:53:31 12          If you were to assess the bottom of the guideline

11:53:33 13   range, Mr. Diehl would be in his late 60s when he gets out.  As

11:53:39 14   the Court knows, the likelihood of recidivism diminishes as

11:53:44 15   someone gets older.  The likelihood of recidivism is low in any

11:53:48 16   events, about 14 percent.  But it gets lower with age.  I ask

11:53:52 17   the Court to consider the guidelines, consider what we've had,

11:53:56 18   but not be persuaded to react in such a way that is not in

11:54:01 19   keeping with the mandate of 3553.

11:54:07 20          THE COURT:  Mr. Diehl, do you have anything further

11:54:09 21   you would like to say?

11:54:10 22          THE DEFENDANT:  Yes, sir, I do.

11:54:11 23          I'm here to take responsibility for my actions, and I

11:54:16 24   have.  I stipulated to the things that I've done.  With regard

11:54:21 25   to Kenneth Courtney, he never saw any child pornography on my

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 98 of 122
Case 1:10-cr-00297-LY  Document 135  Filed 01/19/11  Page 98 of 122

97

11:54:26  1  computers.  Nobody ever has.  I never collected it.  He got

11:54:30  2  five years off his sentence for coming here and saying what he

11:54:33  3  did.  That's -- that's the first thing.

11:54:36  4       When I discovered that he had child pornography, I

11:54:40  5  terminated my relationship with him.  You saw the E-mail with

11:54:43  6  regard to that.  I don't collect it, I don't trade it, and

11:54:49  7  nobody's ever said I did other than him, ever.  And lots of

11:54:52  8  people that I have long-term relationships with, that I've

11:54:57  9  known for 20 years, 30 years the FBI has talked to.  And nobody

11:55:04  10  else has ever said anything except the person that was getting

11:55:08  11  a sentence benefit from it.

11:55:09  12       I had the night that he came over, the only time he's

11:55:12  13  ever been over to my house.  My sister was there.  My

11:55:15  14  girlfriend was there.  My son was there.  He was there for 20

11:55:18  15  minutes, and he left.  My relationship with him was consulting

11:55:22  16  and software.  That's the relationship I had with

11:55:26  17  Mr. Courtney.  And, again, you have the -- the E-mail of what

11:55:30  18  action I took when I discovered what he was doing.

11:55:33  19       And I gave him advice.  I said, you know, you're

11:55:37  20  going to get in serious trouble if you continue that.  He was

11:55:40  21  on meth.  He was on steroids.  He had a daughter.  I gave him

11:55:45  22  the best advice I can, and that was the end of our relationship

11:55:49  23  for the most part.  So I wanted to say that.

11:55:52  24       Second of all, J.D. 3's mother just spoke, and I

11:56:01  25  sincerely apologize for the 20 minutes of video that were made

Case 1:10-cr-00295-LY Document 218-4 Filed 12/05/16 Page 99 of 122
Case 1:10-cr-00295-LY Document 135-1 Filed 01/15/13 Page 98 of 121

98

| | | |
|---|---|---|
| 11:56:05 | 1 | with your daughter.  I'm sorry I've affected your life.  Mine's |
| 11:56:11 | 2 | been destroyed.  My son's been taken from me.  The rest of my |
| 11:56:16 | 3 | life will be affected and -- but aside from that, I sincerely |
| 11:56:22 | 4 | am sorry.  I have violated your trust.  Mine was violated as a |
| 11:56:26 | 5 | child.  I was raped.  But I got over it. |
| 11:56:33 | 6 | And the last thing I would say is to the Brighams. |
| 11:56:38 | 7 | The last time I saw S. and you before we left Austin, Sarah was |
| 11:56:45 | 8 | a perfectly happy little girl.  Never expressed any concern |
| 11:56:51 | 9 | about me or fear from me when I took my son, her, and your son |
| 11:56:56 | 10 | to the fair here in Bastrop.  And I dropped her off, and then |
| 11:57:01 | 11 | we moved away and left. |
| 11:57:05 | 12 | I don't know what happened in your lives.  But I |
| 11:57:08 | 13 | never, ever, threatened S. in any way, shape or form.  I don't |
| 11:57:14 | 14 | even know that I owned a gun.  If I did, it would have been a |
| 11:57:16 | 15 | BB gun. |
| 11:57:18 | 16 | MR. BRIGHAM:  You're a goddamn liar. |
| 11:57:18 | 17 | THE DEFENDANT:  But the major thing with that is that |
| 11:57:23 | 18 | in 2007, when I was working in Dallas, I stopped by your |
| 11:57:26 | 19 | house.  I came there, and everything was fine.  You welcomed |
| 11:57:30 | 20 | me.  It was a happy 20 minutes or whatever we talked.  And then |
| 11:57:34 | 21 | I went on my way to see Kerry where A. was.  But if I had |
| 11:57:43 | 22 | threatened your family in any way, I wouldn't be stopping by |
| 11:57:48 | 23 | seven years later to say hello. |
| 11:57:51 | 24 | And I never threatened her, and I don't know what the |
| 11:57:54 | 25 | problems are or how this has come about where she, you know, |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 100 of 122
Case 1:10-cr-00297-LY Document 185 Filed 01/15/13 Page 99 of 121

99

| | | |
|---|---|---|
| 11:57:59 | 1 | got addicted to drugs or whatever. But it's not me, and you're |
| 11:58:04 | 2 | going to have to keep searching. She's not a part of these |
| 11:58:08 | 3 | charges. She was never abused by me. And absolutely I have |
| 11:58:12 | 4 | never threatened anybody, any kid. It's not part of my |
| 11:58:17 | 5 | personality. I didn't do it. And I'm really sorry that you |
| 11:58:22 | 6 | have used this platform to try to solve your family's problems, |
| 11:58:27 | 7 | but I didn't do it. And that's all I can say, Your Honor. |
| 11:58:32 | 8 | THE COURT: Mr. Morris, anything further? |
| 11:58:34 | 9 | MR. MORRIS: No, Your Honor. |
| 11:58:36 | 10 | THE COURT: Mr. Diehl, anything further? |
| 11:58:37 | 11 | THE DEFENDANT: No, Your Honor. |
| 11:58:38 | 12 | THE COURT: The Court at this time is going to recess |
| 11:58:43 | 13 | while I study what has been presented to me here today and give |
| 11:58:49 | 14 | some thought to this. We will be in recess until 2 o'clock. |
| 11:58:53 | 15 | And at 2 o'clock the Court will wrap up this hearing by |
| 11:58:57 | 16 | imposing sentence at that time. I do want to look through |
| 11:59:02 | 17 | everything that has been presented before I do that. |
| 11:59:06 | 18 | So at this time, the Court's in recess until |
| 11:59:08 | 19 | 2 o'clock. Mr. Devlin? |
| 11:59:09 | 20 | MR. DEVLIN: Judge, may I make just one comment? I |
| 11:59:11 | 21 | just want to say I did not address the defendant's supplemental |
| 11:59:16 | 22 | sentencing memorandum, and I didn't feel it was necessary. I |
| 11:59:17 | 23 | don't want the Court to take that as any concurrence in |
| 11:59:20 | 24 | anything that's being said there because, frankly, a lot of it |
| 11:59:23 | 25 | is quite misleading. |

Case 1:10-cr-00297-LY   Document 218-4   Filed 12/05/16   Page 101 of 122
Case 1:10-cr-00297-LY   Document 185-4   Filed 01/15/12   Page 100 of 121

100

| | | |
|---|---|---|
| 11:59:24 | 1 | THE COURT:  Unless the government specifically |
| 11:59:27 | 2 | states -- this is true in any sentencing hearing I conduct -- |
| 11:59:31 | 3 | that it agrees with the position taken by the defense or unless |
| 11:59:37 | 4 | the defense says specifically the defense agrees with the |
| 11:59:41 | 5 | position taken by the government, I never infer that there is |
| 11:59:47 | 6 | concurrence on that, Mr. Devlin. |
| 11:59:49 | 7 | MR. DEVLIN:  Thank you. |
| 11:59:50 | 8 | THE COURT:  So my presumption is that the government |
| 11:59:53 | 9 | disagrees with what has been presented by the defendant, and |
| 11:59:56 | 10 | the defendant disagrees with what has been presented by the |
| 11:59:59 | 11 | government. |
| 11:59:59 | 12 | MR. DEVLIN:  Thank you, Your Honor. |
| 12:00:00 | 13 | THE COURT:  All right.  At this time, the Court's in |
| 12:00:02 | 14 | recess until 2 o'clock. |
| 12:00:04 | 15 | (Recess) |
| 14:02:51 | 16 | THE COURT:  The Court having conducted a sentencing |
| 14:02:58 | 17 | hearing this morning in the case of *United States of America v.* |
| 14:03:04 | 18 | *David Andrew Diehl* now completes that portion.  I heard |
| 14:03:10 | 19 | everything and accepted everything that I was going to consider |
| 14:03:18 | 20 | this morning and then recessed in order to have some time to |
| 14:03:23 | 21 | collect my thoughts and, again, think through what had been |
| 14:03:29 | 22 | presented to me. |
| 14:03:30 | 23 | Will the defendant and his lawyer please come back up |
| 14:03:36 | 24 | to the podium.  Initially, let me observe that this case has |
| 14:03:45 | 25 | been well-lawyered on both sides.  The government should be |

Case 1:10-cr-00397-LY Document 218-4 Filed 12/05/16 Page 102 of 122
Case 1:10-cr-00397-LY Document 185-4 Filed 01/19/12 Page 101 of 121

101

14:03:50  1  pleased with the quality of the -- the representation that it

14:03:55  2  has received from the beginning in this case, and the defendant

14:04:01  3  should likewise be pleased.  Previous counsel I think did

14:04:06  4  whatever he could do to raise every issue with this Court that

14:04:13  5  could have any arguable relevance to this case both at the

14:04:19  6  guilt or innocence phase and at the sentencing phase.

14:04:24  7       As everyone will recall, I had originally set this

14:04:28  8  case for sentencing on June the 15th of 2011 following the

14:04:35  9  trial that had been conducted on February 8th, 2011.  That gap

14:04:42  10  of four months was longer than what I usually set for

14:04:46  11  sentencing hearings because I felt like there would be a lot of

14:04:50  12  information that I needed to review and wanted to give

14:04:54  13  defendant's counsel ample time to present anything they desired

14:04:59  14  to this Court.

14:05:01  15       We came on at that time for sentencing hearing, and

14:05:09  16  Mr. Diehl indicated that he had fired previous counsel and did

14:05:13  17  not want counsel to represent him, so I again delayed

14:05:18  18  sentencing in order that an attempt could be made to locate

14:05:24  19  counsel.  And on July the 20th, 2011, we conducted another

14:05:29  20  hearing, at which time Mr. Morris was allowed to appear as

14:05:36  21  counsel for the defendant and his previous counsel was

14:05:41  22  discharged.  And it was a result of that hearing that we set

14:05:46  23  sentencing, then, for today.

14:05:51  24       A few preliminary remarks on what the Court has had

14:05:54  25  in front of it, some of this from the time of the trial, some

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 103 of 122
Case 1:10-cr-00297-LY Document 185-4 Filed 01/15/12 Page 102 of 121

102

| | | |
|---|---|---|
| 14:05:59 | 1 | of it more recently received. But I have carefully reviewed on |
| 14:06:05 | 2 | at least one occasion, and with regard to most of these |
| 14:06:08 | 3 | materials, more than one occasion, the items that I'm going to |
| 14:06:18 | 4 | mention here in a moment. In addition and perhaps most |
| 14:06:21 | 5 | importantly, I conducted a bench trial in this case, as we |
| 14:06:26 | 6 | said, in February of 2011. And I saw all of the evidence that |
| 14:06:31 | 7 | was presented against Mr. Diehl. I feel I have a very good |
| 14:06:37 | 8 | feel for this case and a very good knowledge of what has gone |
| 14:06:41 | 9 | on. |
| 14:06:41 | 10 | The items that I've carefully reviewed in |
| 14:06:44 | 11 | anticipation of sentencing are the presentence investigation |
| 14:06:46 | 12 | report, which was last revised on June the 8th, 2011. I accept |
| 14:06:55 | 13 | and adopt that report with the modifications that I made when |
| 14:07:02 | 14 | we had argument on the objections to the presentence |
| 14:07:05 | 15 | investigation report that were filed by the defendant. |
| 14:07:10 | 16 | I specifically find with regard to that report that |
| 14:07:16 | 17 | the correct total offense level in this case is 36, the correct |
| 14:07:21 | 18 | criminal history category is two, and the correct guideline |
| 14:07:24 | 19 | provisions would be a range of incarceration of between 210 and |
| 14:07:30 | 20 | 262 months, a term of supervised release of three to five years |
| 14:07:36 | 21 | per count of conviction, a fine of $20,000 to $200,000 per |
| 14:07:43 | 22 | count of conviction, and a special assessment of $1,000, being |
| 14:07:49 | 23 | $100 per count of conviction and there being ten counts of |
| 14:07:54 | 24 | conviction in this case. |
| 14:07:56 | 25 | To the extent the Court considers a guideline |

Case 1:10-cr-00397-LY  Document 218-4  Filed 12/05/16  Page 104 of 122
Case 1:10-cr-00397-LY  Document 185-4  Filed 01/17/12  Page 103 of 121

103

14:08:00   1   sentence, the Court will consider what I have just announced as

14:08:05   2   the proper guideline sentence.

14:08:08   3        I do note that this is a lengthy presentence

14:08:12   4   investigation report.  Without taking into account the addenda

14:08:18   5   and the objections that are attached, it numbers 32 pages.  It

14:08:24   6   is quite thorough.  It contains a large amount of information,

14:08:28   7   all of which the Court has reviewed.  As I indicated earlier,

14:08:34   8   when one is looking at these things, there are parts of lengthy

14:08:40   9   reports that are given more weight than other parts.  So I

14:08:44  10   won't say that I have considered each part of the findings of

14:08:49  11   the Probation Department as being equal

14:08:54  12        I have reviewed the defendant's sentencing memorandum

14:08:57  13   filed June the 13th, 2011 by his previous counsel.  I do note

14:09:03  14   that that requests a downward departure in the guidelines and a

14:09:07  15   sentence of 120 months.  Attached to that -- that sentencing

14:09:13  16   memorandum is the report of Stephen A. Thorne, Ph.D., which

14:09:20  17   notes in that report on page 3 that Mr. Diehl is a moderate

14:09:27  18   risk to engage in sexually abusive, slash, violent behavior in

14:09:31  19   the near future.

14:09:34  20        Dr. Thomas goes on to say, That being said, it is

14:09:39  21   also important for the reader to be aware that an individual's

14:09:42  22   risk level varies with the degree to which his or her

14:09:46  23   personality, characteristics, and dimensions are exposed to

14:09:49  24   various environmental variables.

14:09:52  25        As such, if Mr. Diehl chooses to associate with

Case 1:10-cr-00397-LY  Document 218-4  Filed 12/05/16  Page 105 of 122
Case 1:10-cr-00397-LY  Document 185  Filed 01/15/12  Page 104 of 121

104

14:09:55  1  negative, parens, law-breaking, close paren, peers, if he

14:10:00  2  places himself in situations, slash, environments where he has

14:10:03  3  unsupervised access to young children, if he chooses to abuse

14:10:11  4  alcohols and, slash, or illicit parens, or prescription, close

14:10:16  5  parens, drugs in the future.  And if he does not participate in

14:10:19  6  parens, and successfully complete, close parens an appropriate

14:10:24  7  sex offender treatment program, this examiner believes

14:10:26  8  Mrs. Diehl's risk for re-offending will increase.

14:10:31  9      I will come back to that, but that's something that I

14:10:35  10  have looked at carefully.

14:10:36  11      I've also reviewed the government's sentencing

14:10:39  12  memorandum, which was filed June the 13th, 2011, and note that

14:10:48  13  in that memorandum, the government points out examples of

14:10:53  14  sentencings in other cases the *Freeman* case of 50 years, the

14:10:58  15  *Huskey* case of 70 years, and the *Oehne* case of 45 years.  I do

14:11:04  16  note that all of those cases involved one victim only, and here

14:11:09  17  there were three victims.  And we do have a situation where I

14:11:14  18  am satisfied that this defendant uploaded images of the films

14:11:26  19  that he took, because I have no other explanation of how they

14:11:29  20  would have gotten in circulation had this defendant not

14:11:32  21  uploaded them.  And that comes from the evidence that I heard

14:11:37  22  at the trial in this case.

14:11:39  23      In that original sentencing memorandum, the

14:11:42  24  government asks for a sentence in excess of 405 months.  I

14:11:48  25  reviewed the defendant's response to that sentencing

Case 1:10-cr-00897-LY   Document 218-4   Filed 12/05/16   Page 106 of 122
Case 1:10-cr-00897-LY   Document 185   Filed 01/11/12   Page 105 of 121

105

14:11:51  1  memorandum.

14:11:54  2          Then I have reviewed carefully the defendant's

14:11:56  3  sentencing memorandum filed by his current counsel on October

14:12:01  4  the 19th, 2011 which points a number of cases where lower

14:12:10  5  sentences were assessed than those pointed out by the

14:12:12  6  government.  And we heard those described here this morning,

14:12:18  7  and I paid careful attention to that, where the defense points

14:12:21  8  out that in a series of instances, lower sentences were

14:12:27  9  imposed.

14:12:30  10         And I have read the defendant's supplemental

14:12:33  11  sentencing memorandum which was filed on October the 21st,

14:12:38  12  2011.  The most recent filings by the defendant continue to

14:12:43  13  urge this Court to depart downward to a statutory minimum of

14:12:47  14  ten years.  I have also reviewed carefully the letter from the

14:12:52  15  defendant's father that was forwarded to me on October the

14:12:57  16  21st, 2011.

14:12:59  17         I have also seen the victim impact statement and

14:13:03  18  photographs received from Janet and Jim Brigham, and I heard

14:13:08  19  the statements that were presented and read by Mr. Brigham in

14:13:15  20  this courtroom this morning.  All of those statements, both the

14:13:21  21  written victim impact statement and the oral statements this

14:13:26  22  morning were objected to by this defendant.  And the defendant

14:13:31  23  has, of course, in my opinion, preserved his objection to that.

14:13:38  24         However, I have, I think, all of the information that

14:13:45  25  I need to reach an appropriate sentence based on the

Case 1:10-cr-00297-LY  Document 185-4  Filed 01/15/12  Page 106 of 121

14:13:50  1  presentence investigation report and the other documents that I

14:13:54  2  have previously related.  And so I specifically do not consider

14:14:05  3  the statements by Mr. Brigham or the written victim impact

14:14:10  4  statement.  I do note that the person referred to in that

14:14:15  5  statement is not a crime victim as defined for purposes of this

14:14:22  6  sentencing hearing, although it appears she was very much the

14:14:27  7  victim of a crime.  But in order that there be no mistake about

14:14:31  8  it, I do not consider any of what I heard in that regard with

14:14:36  9  regard to this potential fourth victim in determining what I

14:14:40  10  think an appropriate sentence in this case would be.

14:14:43  11         In addition, while we discussed and argued the

14:14:48  12  objections that the defendant lodged to the presentence

14:14:51  13  investigation report, I heard the testimony of Special Agent

14:14:57  14  Sean Mullen, I reviewed the objections very carefully, I heard

14:15:02  15  the statements by both the government and the defendant with

14:15:06  16  regard to those objections, and I consider that part of the

14:15:10  17  record for purposes of considering what an appropriate sentence

14:15:16  18  would be also.

14:15:17  19         And, finally, I heard the statements that were made

14:15:23  20  in open court this morning by Ms. Tolson.  Then I have heard

14:15:31  21  the argument by Mr. Morris, the attorney for the defendant, and

14:15:38  22  Mr. Devlin, and I have heard the defendant's statements.

14:15:46  23         Each of the parties, the government and the

14:15:48  24  defendant, argue that the Court go outside the guidelines in

14:15:53  25  this case.  The government urges that this Court go above the

Case 1:10-cr-00397-LY Document 218-4 Filed 12/05/16 Page 108 of 122
Case 1:10-cr-00397-LY Document 185-4 Filed 04/15/12 Page 107 of 121

107

14:15:57   1   guidelines; the defendant urges the Court go below the

14:16:03   2   guidelines.  Based on that and the argument of both parties,

14:16:07   3   the Court will not render a guideline sentence in this case.

14:16:11   4   Likewise, the Court will not consider an upward variance or a

14:16:16   5   downward variance from the guidelines as a guideline sentence.

14:16:21   6            The Court has stated the Court's opinion on what the

14:16:24   7   appropriate and correct guideline calculation and sentence will

14:16:28   8   be, but this Court will consider that as one of the factors, as

14:16:33   9   this Court is bound to do, under Title 18 of the United States

14:16:36   10  Code, Section 3553 and will in fact impose a sentence under

14:16:42   11  Title 18 of the United States Code, Section 3553 that the Court

14:16:47   12  determines is sufficient but not greater than necessary to

14:16:51   13  comply with the purposes set forth in that section.

14:16:56   14           In so doing, I want the record to be clear that after

14:17:00   15  carefully considering all of the items that I have mentioned,

14:17:05   16  that the sentence the Court will impose today is a sentence

14:17:09   17  that the Court finds reasonable and in compliance with the

14:17:14   18  precepts of Title 18 of the United States Code, Section 3553.

14:17:18   19           In determining the types of sentences available to

14:17:22   20  this Court, which is one of the factors in Section 3553, I

14:17:28   21  consider the full statutory range of punishment here of at

14:17:34   22  least 10 years but no more than 20 years per count.  I consider

14:17:39   23  what I have found to be the correct guideline range of 210 to

14:17:43   24  262 months.  I further have considered and carefully looked at

14:17:49   25  the guideline provision, if this Court were in error in

108

| | | |
|---|---|---|
| 14:17:53 | 1 | granting the two objections to the guidelines.  So I have also |
| 14:17:58 | 2 | considered a total offense level of 40 and a criminal history |
| 14:18:02 | 3 | category of II, with a guideline range of 324 to 405 months. |
| 14:18:08 | 4 | And, finally, I have reviewed the presentence |
| 14:18:16 | 5 | investigation report and the scoring objections that were |
| 14:18:19 | 6 | denied, and there were four of them, to determine how that |
| 14:18:25 | 7 | would vary the guideline sentence, if I were in error in |
| 14:18:30 | 8 | denying the four remaining objections to the guidelines. |
| 14:18:34 | 9 | So, in my opinion, I have considered everything with |
| 14:18:39 | 10 | regard to an appropriate guideline sentence and every argument |
| 14:18:44 | 11 | by the defendant and the government in that regard and the |
| 14:18:49 | 12 | sentence that I will impose today is the sentence that I would |
| 14:18:53 | 13 | impose had we not ever had a discussion of the guidelines and |
| 14:18:57 | 14 | if we did not have the guidelines at all.  But I have fully and |
| 14:19:03 | 15 | thoroughly considered all ramifications of the guidelines. |
| 14:19:08 | 16 | In determining then where a sentence should stand in |
| 14:19:12 | 17 | the range provided by in the statute of at least 10 years, |
| 14:19:18 | 18 | which is what the defendant argues for, but no more than 20 |
| 14:19:22 | 19 | years per count and taking into account that the government |
| 14:19:28 | 20 | argues that a sentence of 60 years, or 720 months, would be an |
| 14:19:37 | 21 | appropriate sentence in this case, I am faced with a situation |
| 14:19:47 | 22 | where I must look at the individual factors in 3553, which I |
| 14:19:55 | 23 | have done carefully. |
| 14:19:57 | 24 | I have considered the nature and circumstances of |
| 14:20:00 | 25 | this offense and the history and characteristics of this |

Case 1:10-cr-00237-LY Document 218-4 Filed 12/05/16 Page 110 of 122
Case 1:10-cr-00237-LY Document 185 Filed 01/17/12 Page 109 of 121

109

14:20:04    1    defendant.  In examining the history and characteristics of

14:20:09    2    this defendant, I have paid particular attention to the letter

14:20:11    3    that I received from his father and I have additionally

14:20:15    4    considered the parts of the sentencing memorandum of the

14:20:19    5    defendant and the statements that were made by him about his

14:20:22    6    early childhood and background and the abuse that he had

14:20:26    7    suffered.  And I also have considered his actions at and around

14:20:33    8    the time that appears the offenses were committed and his

14:20:37    9    actions afterward.

14:20:41   10         I must impose a sentence that reflects the

14:20:44   11    seriousness of the offense.  And let me tell you, this is

14:20:49   12    probably the single most persuasive factor in this Court's

14:20:57   13    sentencing.  I find this to be a horrible offense.  I can find

14:21:04   14    no reasonable -- reasonable basis to think that someone who

14:21:09   15    abuses children of the ages ten, eight, and three at the time

14:21:15   16    and in the manner that was depicted on the video evidenced that

14:21:20   17    this Court saw can possibly think that it is anything but the

14:21:27   18    most serious of crimes.

14:21:30   19         This Court has seen what this Court considers serious

14:21:35   20    crimes in the past.  The lawyers who appear in this Court

14:21:39   21    regularly have heard me speak about those crimes, but I would

14:21:44   22    rank the seriousness of this offense right at the top.

14:21:47   23         I stress that, because often when we get bogged down

14:21:50   24    in debates on application of the guidelines, it becomes almost

14:21:56   25    a technical evaluation of what should be asserted or whatnot or

Case 1:10-cr-00897-LY Document 2185-4 Filed 12/05/16 Page 111 of 122
Case 1:10-cr-00897-LY Document 2184 Filed 01/15/12 Page 110 of 121

110

| | | |
|---|---|---|
| 14:22:02 | 1 | where you take away, as we went through this morning for about |
| 14:22:05 | 2 | an hour and a half, two points here or two points there. |
| 14:22:08 | 3 | But when I am faced with a crime that I consider to |
| 14:22:12 | 4 | be this serious, I do not consider very much the technical |
| 14:22:20 | 5 | necessities of the guidelines other than to determine the |
| 14:22:24 | 6 | guideline sentence as I must, but I look more at the large |
| 14:22:29 | 7 | range of punishment that has been provided by the Congress of |
| 14:22:33 | 8 | the United States and the statute in attempt to determine what |
| 14:22:37 | 9 | I think is an appropriate sentence under Title 18, |
| 14:22:40 | 10 | Section 3553. |
| 14:22:42 | 11 | In addition to the actions that are depicted on the |
| 14:22:50 | 12 | videos that this Court observed at the trial, I find based on |
| 14:22:56 | 13 | the evidence from the trial that there were well over 2500 |
| 14:23:01 | 14 | ongoing cases around the country with regard to the series |
| 14:23:11 | 15 | known as the "cbaby" series and over 700 ongoing cases on the |
| 14:23:17 | 16 | so-called "Tent" series. |
| 14:23:21 | 17 | Those cases did not start in a vacuum. And this is |
| 14:23:26 | 18 | why I said earlier it was my belief from the evidence at the |
| 14:23:30 | 19 | trial and it was my belief today that at least at some point |
| 14:23:35 | 20 | Mr. Diehl uploaded on at least one occasion those two series |
| 14:23:43 | 21 | that depict the Jane Does 1, 2, and 3, who are the victims |
| 14:23:48 | 22 | of -- in the indictment. And I do not mean to allude that I |
| 14:23:55 | 23 | think that he uploaded them as many times as the ongoing cases |
| 14:24:00 | 24 | indicate, but that he uploaded them enough times to where they |
| 14:24:03 | 25 | got into circulation where they have now developed a life of |

Case 1:10-cr-00397-LY  Document 218-4  Filed 12/05/16  Page 112 of 122
Case 1:10-cr-00397-LY  Document 185-4  Filed 01/15/12  Page 111 of 121

111

14:24:08  1  their own and are continuing to be circulated.  And I do find

14:24:12  2  that there is no way to pull those videos back.

14:24:17  3      I have often remarked in sentencing hearings where

14:24:24  4  the offense was merely the possession of pornographic materials

14:24:29  5  how serious that I think that crime is, because every depiction

14:24:38  6  of child pornography starts with an abused child.  And without

14:24:44  7  a market for those materials, there would not be the abuse to

14:24:49  8  children to continue to feed that market.

14:24:51  9      Here we have gone beyond that in that Mr. Diehl,

14:24:59  10  however he wishes to discuss it, whether he was in pain from

14:25:03  11  his motorcycle collision, whether he was involved in a bad

14:25:08  12  lifestyle at that time, stepped way over the line in filming

14:25:17  13  these things himself.

14:25:19  14      Therefore, the strongest factor that I look at in

14:25:23  15  determining the appropriate sentence in this case is the

14:25:26  16  seriousness of this crime and what it has done to the people

14:25:31  17  that were victims and what it will continue to do to the people

14:25:35  18  who are victims and what it has done to their family.

14:25:39  19      I must determine a sentence that will promote respect

14:25:43  20  for the law.  Now, the government has challenged the Court to

14:25:48  21  send a message, and the defendant has said there's nothing in

14:25:54  22  section 3553 that says "send a message," while "promoting

14:25:59  23  respect for the law" is close to it, if not there.  I have

14:26:04  24  never been one who feels like the Court should grandstand to

14:26:08  25  send a message, but in this case the sentence needs to be

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 113 of 122
Case 1:10-cr-00297-LY Document 185 Filed 01/17/12 Page 112 of 121

112

| | |
|---|---|
| 14:26:12 | 1 |
| 14:26:16 | 2 |
| 14:26:22 | 3 |
| 14:26:25 | 4 |

14:26:12   1   sufficient that will promote respect for the law among others

14:26:16   2   who might be considering this and, further, to provide just

14:26:22   3   punishment for this particular offense and to promote respect

14:26:25   4   for the law by this defendant.

14:26:27   5          I must consider a sentence that would afford adequate

14:26:31   6   deterrence to criminal conduct.  That would be of this

14:26:35   7   defendant and others and as closely related to an appropriate

14:26:40   8   sentence that would create or promote respect for the law.

14:26:45   9          I find that this defendant needs correctional

14:26:50   10   treatment to the extent that he needs sex offender therapy,

14:26:58   11   which can be provided by the Bureau of Prisons.  But I will say

14:27:02   12   under either the defense's suggestion of a reasonable sentence

14:27:09   13   of 120 years or the government's suggestion of a reasonable

14:27:14   14   sentence of -- I mean, 120 months and the government's

14:27:18   15   suggestion of a reasonable sentence of 620 months, each of

14:27:24   16   those would be sufficient to allow him the types of treatment

14:27:27   17   he needs.

14:27:28   18          I have mentioned the kinds of sentences that are

14:27:32   19   available to me and which I will consider, and I am also urged

14:27:39   20   in these sentencing memoranda to avoid unwarranted sentencing

14:27:46   21   disparities among defendants with similar records that have

14:27:50   22   been found guilty of similar conduct.

14:27:55   23          In this Court there has not been a large amount of

14:27:59   24   individual cases involving this type of crime, although they

14:28:04   25   are getting more numerous, which is disturbing to this Court.

Case 1:10-cr-00697-LY Document 218-4 Filed 12/05/16 Page 114 of 122
Case 1:10-cr-00697-LY Document 185-4 Filed 01/15/16 Page 113 of 121

113

14:28:09  1  But both parties have given this Court, as I mentioned earlier,

14:28:12  2  a good overview of the cases that are out there which, as I

14:28:18  3  said, indicates sentences from below 120 months to 75 years or

14:28:26  4  so.

14:28:27  5          I observe in determining how to place what is before

14:28:33  6  me in context with the article -- I mean, the Title 18, Section

14:28:43  7  3553 factors everything that has been presented to me.  And I

14:28:58  8  recognize and will state on the record that, even though the

14:29:03  9  evidence is these particular crimes were committed some years

14:29:09  10 ago and there is no evidence of other crimes since then, that

14:29:15  11 it is possible to commit a crime that is so extreme and so

14:29:24  12 horrific and so heinous that punishment must be meted out to

14:29:34  13 fit the crime regardless of how a defendant has lived his life

14:29:41  14 since then.  Otherwise, all of theories of sentencing would

14:29:47  15 collapse, because if you just evade detection and prosecution

14:29:51  16 long enough, then we hear that argued in court on why a light

14:29:57  17 sentence should be dealt out by the Court.

14:30:08  18         At the end of the day, I am faced with having to

14:30:10  19 assess a sentence that is sufficient but not greater than

14:30:15  20 necessary to satisfy each of those factors that I have

14:30:22  21 considered.  In addition, I have considered the other factors

14:30:27  22 also.  I render the sentence that will follow not in the way of

14:30:37  23 vengeance or an example, as the defense is concerned about.

14:30:44  24 Nor do I render it based on the challenge of the government

14:30:50  25 that the Court should have the courage to give a sentence -- a

Case 1:10-cr-00897-LY Document 218-4 Filed 12/05/16 Page 115 of 122
Case 1:10-cr-00897-LY Document 185 Filed 01/13/12 Page 114 of 121

114

| 14:30:57 | 1 | strong sentence. |

14:30:57  1  strong sentence.

14:30:58  2      I render the following sentence because I find that

14:31:02  3  it is appropriate under Title 18 of the United States Code,

14:31:06  4  Section 3553 based on all of the evidence before me and for

14:31:12  5  that reason alone.  I find that the following is a reasonable

14:31:17  6  sentence to impose in this case.

14:31:20  7      Therefore, pursuant to the Sentencing Reform Act of

14:31:22  8  1984, it is the judgment of this Court that you, David Andrew

14:31:27  9  Diehl, are hereby committed to the custody of the Bureau of

14:31:30 10  Prisons to be imprisoned for a total term of 600 months.

14:31:34 11      This sentence consists of 200 months on counts one,

14:31:38 12  three, and six, all to be served consecutively to one another,

14:31:45 13  and 200 months on counts two, four, five, seven, eight, nine,

14:31:49 14  and ten to be served concurrently with one another and

14:31:54 15  concurrently with counts one, three, and six, again, for a

14:31:58 16  total of 600 months.

14:32:01 17      While in prison, the defendant shall participate in

14:32:05 18  the sex offender management program offered by the Bureau of

14:32:09 19  Prisons.  Upon release from imprisonment, you shall be placed

14:32:13 20  on supervised release for a term of five years on counts one

14:32:18 21  through ten to run concurrently.

14:32:21 22      Within 72 hours of release from the custody of the

14:32:23 23  Bureau of Prisons, you shall report in person to the probation

14:32:26 24  office in the district which you are released.  While on

14:32:30 25  supervised release, you shall not commit another federal,

Case 1:10-cr-00997-LY Document 218-4 Filed 12/05/16 Page 116 of 122
Case 1:10-cr-00997-LY Document 185 Filed 01/15/12 Page 115 of 121

115

| | | |
|--|--|--|
| 14:32:33 | 1 | state, or local crime, and you shall comply with the mandatory |
| 14:32:36 | 2 | and standard conditions adopted by this Court on May the |
| 14:32:40 | 3 | 27th, 2004 which include in part: |
| 14:32:43 | 4 | You shall register with the state sex offender |
| 14:32:47 | 5 | registration agency in the state where you reside, work, or are |
| 14:32:52 | 6 | a student, all as directed by your probation officer. |
| 14:32:56 | 7 | You shall comply with following special conditions: |
| 14:33:00 | 8 | You shall have no direct or indirect contact with any |
| 14:33:03 | 9 | victims named within the presentence report, to include Jane |
| 14:33:06 | 10 | Doe Number 1, Jane Doe Number 2, and Jane Doe Number 3 without |
| 14:33:11 | 11 | the prior written consent of your probation officer; |
| 14:33:14 | 12 | You shall attend and participate in the sex offender |
| 14:33:17 | 13 | treatment program operated by a licensed sex offender treatment |
| 14:33:22 | 14 | provider and any other sex offender treatment program approved |
| 14:33:26 | 15 | by your probation officer; |
| 14:33:27 | 16 | You shall abide by all program rules, requirements, |
| 14:33:30 | 17 | and conditions of the Sex Offender Registration Program, |
| 14:33:33 | 18 | including submission to polygraph examinations, to determine if |
| 14:33:39 | 19 | you are in compliance with the conditions of your release; |
| 14:33:41 | 20 | You may required to the cost -- pardon me.  You may |
| 14:33:45 | 21 | be required to contribute to the cost of these services |
| 14:33:48 | 22 | rendered -- that's called a co-payment -- in an amount to be |
| 14:33:51 | 23 | determined by your probation officer based on your ability to |
| 14:33:54 | 24 | pay; |
| 14:33:54 | 25 | You shall follow all other lifestyle restrictions or |

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 117 of 122
Case 1:10-cr-00297-LY Document 185-4 Filed 01/15/12 Page 116 of 121

116

14:34:02  1  treatment requirements imposed by any therapist under his

14:34:04  2  treatment;

14:34:05  3        You are to continue those restrictions as they

14:34:07  4  pertain to avoid risk situations throughout the course of your

14:34:11  5  supervision.  This includes not residing or going to places

14:34:15  6  where a minor or minors are known to frequent without prior

14:34:19  7  approval of your probation officer;

14:34:21  8        You shall not associate with any child or children

14:34:23  9  under the age of 18, except in the presence or supervision of

14:34:27  10  an adult specifically designated in writing by your probation

14:34:30  11  officer;

14:34:32  12        Your probation officer will notify the designated

14:34:35  13  adult of the risk occasioned by your criminal record or

14:34:38  14  personal history or characteristic;

14:34:40  15        You shall permit the probation officer to make such

14:34:43  16  notification;

14:34:45  17        You shall reside in a residence approved in advance

14:34:48  18  by your probation officer.  Any changes in the residence must

14:34:52  19  be preapproved by your probation officer;

14:34:54  20        You shall not reside with 1,000 feet of the real

14:34:58  21  property comprised of a public or private elementary,

14:35:02  22  vocational, or secondary school, or public or private college

14:35:06  23  or junior college, university or playground or housing

14:35:09  24  authority owned by a public housing authority or within

14:35:12  25  100 feet of a public or private youth center, public swimming

Case 1:10-cr-00237-LY   Document 218-4   Filed 12/05/16   Page 118 of 122
Case 1:10-cr-00237-LY   Document 185   Filed 01/17/12   Page 117 of 121

117

14:35:17  1  pool or video arcade facility without approval of your

14:35:21  2  probation officer;

14:35:21  3       You shall refrain from purchasing, possessing, or

14:35:27  4  using any sexually stimulating or sexually oriented materials,

14:35:29  5  included but not limited to written, audio, and visual

14:35:33  6  depictions such as pornographic books, magazines, photographs,

14:35:37  7  films, videos, DVDs, computer programs, or any other media with

14:35:43  8  portrayal of the same;

14:35:44  9       You shall not use any computer at any location,

14:35:47  10  whether or not your place of employment, residence, or

14:35:50  11  elsewhere, without the prior written permission of your

14:35:54  12  probation officer;

14:35:54  13       You shall not possess or use a phone or any other

14:35:57  14  electronic device that allow access to the Internet without the

14:36:01  15  prior written permission of your probation officer;

14:36:03  16       You will not own or possess any type of camera,

14:36:07  17  photographic device, or other electronic equipment, including

14:36:12  18  video recording equipment, without the approval of your

14:36:16  19  probation officer;

14:36:17  20       You shall abstain from the use of alcohol and all

14:36:19  21  other intoxicants during your term of supervision;

14:36:25  22       You shall submit your person and any property, house,

14:36:28  23  residence, vehicle, papers, computer, and other electronic

14:36:32  24  communication or data storage devices or media and effects to a

14:36:37  25  search at any time with or without a warrant by any law

Case 1:10-cr-00297-LY  Document 218-4  Filed 12/05/16  Page 119 of 122
Case 1:10-cr-00297-LY  Document 185  Filed 01/17/12  Page 118 of 121

118

14:36:41  1  enforcement officer or probation officer with reasonable

14:36:44  2  suspicion concerning a violation of your condition of

14:36:48  3  supervised release or unlawful conduct by you or any other

14:36:53  4  person and by any probation officer in the lawful discharge of

14:36:57  5  that officer's supervisory duties.

14:37:00  6         It is further ordered that you shall pay to the

14:37:03  7  United States a fine in the amount of $1,000.  The Court will

14:37:08  8  waive the interest on that.

14:37:10  9         It is further ordered that you shall pay to the

14:37:14  10  United States a special mandatory assessment of $100 per count

14:37:18  11  for a total of $1,000, which shall be due immediately.

14:37:22  12         It is further ordered that you shall forfeit all

14:37:26  13  right, title, and interest in the following items:  One

14:37:30  14  custom-built black computer contained a Seagate Barracuda 7200,

14:37:35  15  250 GB hard drive, serial number 6RY5KCF8; one custom-built

14:37:46  16  black computer containing a Maxtor DiamondMax 21, 500 GB hard

14:37:52  17  drive, serial number 9QG2Y6DO; and any media storage devices or

14:38:02  18  other computer accessories that have been seized.

14:38:05  19         Since you have been in custody since April the 6th,

14:38:09  20  2010, voluntary surrender is not an issue.

14:38:13  21         Mr. Diehl, at this time I am passing to the Clerk of

14:38:16  22  this Court the presentence investigation report prepared by the

14:38:20  23  Probation Department in this case and to which we have referred

14:38:24  24  during this proceeding.  I am ordering that that report be

14:38:27  25  sealed.  This means that no one may come to the District

Case 1:10-cr-00297-LY Document 218-4 Filed 12/05/16 Page 120 of 122
Case 1:10-cr-00297-LY Document 185 Filed 01/15/12 Page 119 of 121

119

| | | |
|---|---|---|
| 14:38:30 | 1 | Clerk's Office and read about you or any member of your family |
| 14:38:33 | 2 | or any of the facts and circumstances surrounding the offenses |
| 14:38:37 | 3 | for which you were previously convicted and have been sentenced |
| 14:38:41 | 4 | today. |
| 14:38:42 | 5 | However, I wish to advise you that if there is an |
| 14:38:45 | 6 | appeal from the sentence that I have just imposed, then both |
| 14:38:48 | 7 | you and the government may use your copies of the presentence |
| 14:38:51 | 8 | investigation report for purposes of appeal. And in that |
| 14:38:54 | 9 | event, the presentence investigation report will be part of the |
| 14:38:58 | 10 | record on appeal. Do you understand that? |
| 14:39:00 | 11 | THE DEFENDANT: Yes, Your Honor. |
| 14:39:01 | 12 | THE COURT: You may appeal the sentence that I have |
| 14:39:03 | 13 | just imposed. In a moment I'll be handing to you and your |
| 14:39:07 | 14 | attorney letters that explain that to you. However, I wish to |
| 14:39:09 | 15 | tell you at this time that if for any reason at all you desire |
| 14:39:13 | 16 | to appeal the sentence that I have just imposed or if for any |
| 14:39:16 | 17 | reason at all you feel you have a right to appeal that |
| 14:39:19 | 18 | sentence, you may only do so if you first file with the Clerk |
| 14:39:23 | 19 | of this Court within 14 days -- that's 14 days from today -- a |
| 14:39:27 | 20 | written document called a Notice of Appeal. That's a written |
| 14:39:30 | 21 | Notice of Appeal. |
| 14:39:31 | 22 | If you do not file such a written Notice of Appeal |
| 14:39:35 | 23 | with the Clerk of this Court within 14 days of today, you can |
| 14:39:39 | 24 | never appeal the sentence that I have just imposed, and you |
| 14:39:42 | 25 | will waive any and all rights you have to appeal that |

Case 1:10-cr-00397-LY Document 218-4 Filed 12/05/16 Page 121 of 122
Case 1:10-cr-00397-LY Document 185 Filed 01/15/12 Page 120 of 121

120

14:39:44   1    sentence.  Do you understand that?

14:39:46   2              THE DEFENDANT:  Yes, Your Honor.

14:39:47   3              THE COURT:  At this time I am passing to you and your

14:39:49   4    attorney letters that explain that to you.

14:39:52   5              Is there anything further that the government wished

14:39:56   6    to say or present in this case at this time?

14:39:57   7              MR. DEVLIN:  No, Your Honor.

14:39:58   8              THE COURT:  Is there anything further that the

14:40:00   9    defendant wishes to say or present in this case at this time?

14:40:03  10              MR. MORRIS:  Yes, Your Honor.  For the record, we

14:40:05  11    object to the sentence that the Court has imposed as being

14:40:09  12    substantively unreasonable and also procedurally unreasonable.

14:40:13  13              THE COURT:  The Court notes your objection.  Your

14:40:15  14    record is protected.  Anything further from the government,

14:40:17  15    Mr. Devlin?

14:40:17  16              MR. DEVLIN:  No, Your Honor.

14:40:18  17              THE COURT:  Then at this time, you are excused and

14:40:21  18    the Court is in recess.

14:40:23  19         (End of transcript)

          20

          21

          22

          23

          24

          25

Case 1:10-cr-00397-LY Document 218-4 Filed 12/05/16 Page 122 of 122
Case 1:10-cr-00397-LY Document 185 Filed 01/13/12 Page 121 of 121

121

1  **UNITED STATES DISTRICT COURT     )**

2  **WESTERN DISTRICT OF TEXAS         )**

3      I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7      I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States

10     WITNESS MY OFFICIAL HAND this the 10th day of

11  January 2012.

12

13                          /S/ Arlinda Rodriguez
                            Arlinda Rodriguez, Texas CSR 7753
14                          Expiration Date: 12/31/2012
                            Official Court Reporter
15                          United States District Court
                            Austin Division
16                          200 West 8th Street, 2nd Floor
                            Austin, Texas 78701
17                          (512) 916-5143

18

19

20

21

22

23

24

25