# EXHIBIT D



No. 11-51076

THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


vs


DAVID ANDREW DIEHL,

Defendant-Appellant.


APPELLANT'S   OPENING BRIEF


Appeal from the United States District Court

for  the Western District of Texas, Austion Division

USDC No. 1:10-CR-297-1   (Hon. Lee Yeakel)


9 April 2013

David A. Diehl, pro se

USP Tucson  --  #53214018

P.O. Box 24550, Tucson, AZ 85734

No. 11-51076

CERTIFICATE OF INTERESTED PERSONS


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID DIEHL,

Defendant-Appellant.


Defendant-Appellant pro se, David Diehl, hereby certified that the following lawyers (listed below) are the only persons who have an interest in the outcome of this case. This disclosure and representation is pursuant to the Federal and Local Rules to permit possible disqualificaton or recusal of any Judges of this Court.

      1.      United States of America, Appellee

               Represented at trial by:

               Matthew Devline, Assistant U.S. Attorney

               816 Congress, Suite 1000

               Austin, TX  78701

               (512) 916-5858 / Fax (512) 916-5854


               Represented on appeal by:

               Joseph H. Gay, Jr., Assistant U.S. Attorney

               Western District of Texas

               601 NW Loop 410, Suite 600

               San Antonio, TX  78216-5597

               (210) 384-7090 / Fax (210) 384-7031

2.    David Diehl, Appellee (pro se)

Represented at trial by:

Stephen M. Orr

Orr & Olavson

804 Rio Grande

Austin, TX  78701

(512) 472-8392

Fax: (512) 473-8417

Represented at sentencing:

E.G. Morris

608 West 12th Street, Suite B

Austin, TX  78701

(512) 478-0758

Fax: (512) 478-0784

*David Diehl*

DAVID DIEHL,

Appellant, pro se

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..........................i

REQUEST FOR ORAL ARGUMENT...............................iii

TABLE OF CONTENT........................................iv

TABLE OF AUTHORITIES....................................vi

STATEMENT OF JURISDICTION................................1

SUMMARY OF THE ISSUES...................................1

STATEMENT OF THE CASE...................................4

STATEMENT OF THE FACTS..................................6

ARGUMENT  /  ISSUES

Had the statute of limitations expired on the charges

     prior to Appellant's indictment? .....................9


Did the trial court's using the wrong version of §2251

     prejudice the Appellant as far as jurisdiction, and

     did the government prove interstate commerce?........32


Did the trial court impose a procedurally unreasonable

     sentence because the court decided to vary

     before discussing §3553(a) factors, and

     failed to consider the guidelines range?............39


Did the trial court fail to give proper consideration

     to defense's arguments?.............................42


Did the trial court fail to

     adequately explain the chosen sentence? ............45

iv

Did the trial court not conform the sentence

    to the §3553 factors, as required by law?...........47


Did the trial court impose a

    substantively unreasonable sentence?.................50


Did the trial court adequately consider

    all the available sentencing options?...............56



CONCLUSION.............................................57

CERTIFICATE OF

SERVICE...............................................58

CERTIFICATE OF

COMPLIANCE...........................................60

TABLE OF AUTHORITIES

Bates v. United States, 522 U.S. 23 (1997)...............21

Bridges v. United States, 346 U.S. 209 (1953)............23

Caplin & Drysdale, Chartered v. US, 491 U.S. 617 (1985)...57

Gall v. United States, 552 U.S. 38 (2007) ....42,44,45,47,50

Miller v. Florida, 482 U.S. 423 (1987)...................51

Pepper v. United States, 131 S.Ct at 1235 (2011).........49

Rita v. United States, 551 U.S. 338 (2007)...............44

Smith v. Goguen, 415 U.S. 566 (1974).....................19

Strickland v. Washington, 466 U.S. 668 (1984).............9

Toussie v. United States, 397 U.S. 112 (1970)............32

United States v. McElvain, 272 U.S. 633 (1926)...........31

United States v. Marion, 404 U.S. 307 (1971)..........32,38

Amer. Library Ass'n v. Reno, 33 F.3d 78 (D.C. Cir. 1994)..11

Free Speech Co. v. AG, 677 F.3d 519 (3rd Cir. 2012).......12

Gool v. US, 2009 U.S. Dist LEXIS 61451 (S.D.IA 2009)......14

Mugalli v. Ashcroft, 258 F.3d 52 (2nd Cir. 2001).........17

Perez-Gonzalez v. Holder, 667 F.3d 622 (5th Cir. 2012)....17

United States v. Ausburn, 502 F.3d 313 (3d Cir. 2007).....44

United States v. Austin, 432 F.3d 598 (5th Cir. 2006).....51

United States v. Baker, 804 F.Supp 19 (N.D CA 1992).......50

United States v. Baker, 538 F.3d 324 (5th Cir. 2008)......46

United States v. Beier, 490 F.3d 572 (7th Cir. 2007)......21

United States v. Broussard, 767 F.Supp 1536 (D.OR 1991)...26

United States v. Brown 591 F.2d 307 (5th Cir. 1979)........9

United States v. Burkart, 602 F.3d 602 (10th Cir. 2010)...11

United States v. Burnside, 831 F.2d 868 (9th Cir 1987)....25

US v. Cantu-Ramirez, 669 F.3d 619 (5th Cir. 2012)........45

Winslow v. United States 216 F.2d 912 (9th Cir. 1955) ....13

Perez-Gonzales v. Holder 667 F.3d 622 (5th Cir. 2012)..17,18

US v. Carpenter, 680 F.3d 1101 (9th Cir. 2012)......13,16,17

United States v. Carroll, 190 F.3d 290 (5th Cir. 1999)....53

United States v. Carter, 564 F.3d 325 (4th Cir. 2009).....47

United States v. Cauble, 706 F.2d 1322 (5th Cir. 1983)....58

United States v. Childress, 104 F.3d 47 (4th Cir. 1996)...20

US v. Coutentos, 651 F.3d 809 (8th Cir. 2011)........9,14,18

US v. Crosby, 397 F.3d 103 (2nd Cir. 2005)................39

United States v. Davis, 329 F.3d 1250 (5th Cir. 2002).....52

United States v. Duhan, 440 F.3d 711 (5th Cir. 2006)......54

US v. Grosenheider, 200 F.3d 321 (5th Cir. 2000).......40,54

United States v. Harris, 567 F.3d 846 (7th Cir. 2009).....44

United States v. Henriques, 234 F.3d 263 (5th Cir. 2000)..34

United States v. Honken, 184 F.3d 961 (8th Cir. 1999).....50

US v. Husband, 119 Fed. Appx 475 (4th Cir. 2005)..........11

United States v. Jones, 902 F.2d 1152 (4th Cir. 1990).....20

United States v. Klug, 670 F.3d 797 (7th Cir. 2012).......21

United States v. Knox, 32 F.3d 733 (3rd Cir. 1994)........24

United States v. Lata, 415 F.3d 107 (1st Cir. 2005).......52

United States v. Lee, 603 F.3d 904 (11th Cir 2010)........22

United States v. Lente, 647 F.3d 1021 (10th Cir. 2011)....44

United States v. Lewis, 554 F.3d 208 (1st Cir. 2009)......35

United States v. Mares, 402 F.3d 51 (5th Cir. 2005).......47

US v. Marshall, 360 Fed. Appx. 24 (11th Cir. 2010)........29

United States v. Pabon-Cruz, 391 F.3d 86 (2nd Cir. 2004)..45

US v. Panner, 2007 U.S. Dist LEXIS 11589 (E.D.CA 2007).12,17

United States v. Pierce, 959 F.2d 1297 (5th Cir. 1992).....9

US v. Portillo-Quezada, 469 F.3d 1345 (10th Cir. 2006)....52

United States v. Poulin, 588 F.Supp.2d 64 (D.ME 2008).....34

United States v. Rhine, 637 F.3d 525 (5th Cir. 2011)......47

US v. Richards, 301 Fed. Appx. 480 (6th Cir. 2008)........11

US v. Robertson, 662 F.3d 871 (7th Cir. 2011).............55

United States v. Runyan, 290 F.3d 223 (5th Cir. 2002).....32

United States v. Scroggins, 411 F.3d 572 (5th Cir. 2005)..51

United States v. Seiver, 692 F.3d 774 (7th Cir. 2012).....11

US v. Sensi, 2010 U.S. Dist LEXIS 55594 (D.CT 2010)....16,18

US v. Shepard, 2011 U.S. Dist. LEXIS 92519 (N.D.OH 2011)..10

United States v. Sure Chief, 438 F.3d 920 (9th Cir. 2006).15

US v. Swenson, 335 Fed. Appx. 751 (10th Cir. 2009)........35

US v. Tisdale, 264 Fed. Appx. 405 (5th Cir. 2008)........39

United States v. Turner, 548 F.3d 1094 (DC Cir. 2008).....11

United States v. Welton, 2009 U.S. Dist LEXIS 110657......11

United States v. Williams, 602 F.3d 313 (5th Cir. 2010)...53

United States v. Wilson, 884 F.2d 174 (5th Cir. 1989).....58

United States v. Wright, 625 F.3d 583 (9th Cir. 2010).....34

United States v. Yost, 479 F.3d 815 (11th Cir. 2007)......23

US v. Zavala-Sustaita, 214 F.2d 601 (5th Cir. 2000).......13

Winslow v. United States, 216 F.2d 912 (9th Cir. 1955)....13

United States v. Merced, 603 F.3d 203 (3rd Cir. 2010).....44

US v. Mondragon-Santiago, 564 F.3d 357 (5th Cir. 2009)....45

United States v. Longstreath 42 M.J. 806 (1995)..........27

United States v. McElhaney, 54 M.J. 120 (C.A.A.F. 2000)...27

US v. Schaefer 501 F.3d 1197 (10th Cir. 2007)........... 35

US v. Bonilla 524 F.3d 647 (5th Cir. 2008) .............41

US v. Williams 337 U.S. 247.............................49


STATUTES & MISCELLANEOUS:


18 U.S.C. §1101.................................14,19

18 U.S.C. §1153.................................passim

18 U.S.C. §1201....................................34

18 U.S.C. §1591....................................34

18 U.S.C. §2241................................17,18,28

18 U.S.C. §2243..................................18,28

18 U.S.C. §2251(a).............................passim

18 U.S.C. §2252A..............................16,33,42

18 U.S.C. §2255..............................15,32,33

18 U.S.C. §2256..................................23,28

18 U.S.C. §2257..................................13,34

18 U.S.C. §2422....................................24

18 U.S.C. §2423....................................28

18 U.S.C. §3282(a) ................................ passim

18 U.S.C. §3283 .................................... 25

18 U.S.C. §3287 .................................... 25

18 U.S.C. §3299 ................................. passim

18 U.S.C. §3509 ................................. passim

18 U.S.C. §3553(a) ............................. passim

18 U.S.C. §3742 ..................................... 1

26 U.S.C. §6502 .................................... ??

28 U.S.C. §3001 .................................... 30

28 U.S.C. §3002 .................................... 30

42 U.S.C. §5106g ................................... 24


United States Sentencing Guidelines [November 2000]

        Introduction (Chap. 1, Part a.2) ............... 60

        §1B1.11 ...................................... 60

§5G1.2 ........................................ 60

x

STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under 28 U.S.C. §1291, as an appeal from a final judgment of conviction and sentence in the United States District Court for the Western District of Texas and also under 18 U.S.C. §3742, as an appeal of a sentence imposed under Sentencing Reform Act of 1984.

SUMMARY OF ISSUES

ISSUE ONE: Defendant was prejudiced by councils failure to raise a statutes of limitations objection before and during trial. The statute of limitations for chapter 110 offenses was first increased by the Adam Walsh Act in July 2006. The statute of limitations was expired in Appellants case before he was indicated.

ISSUE TWO: When deciding if federal jurisdication applied to Appellant's case the court made its decision utilizing the incorrect version of the statute. Appellants council was innefective for failing to object to this fact thereby prejudicing the defendants right to a fair trial. Furthermore, the government failed to prove interstate transport.

ISSUE THREE: The Trial Court failed to give consideration to the Sentencing Guidelines as is required under 18 U.S.C. §3553(a)(4). The Trial Court failed to fulfill the mandate of

Gall by using the guideline level as a starting point. The Trial court did not give serious consideration to the extent of any departure from the guidelines.

ISSUE FOUR: The Trial court failed to give serious consideration to, and address Appellants arguments on a sentence that was nearly three times the top of the Guidelines range.

ISSUE FIVE: The Trial Court failed to state any fact specific reasons for its significant upward variance. The court did not provide examples of aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history, relevant conduct or other facts specific to the case at hand which led to the court to conclude that the sentence was fair and reasonable.

ISSUE SIX: The trial court failed to consider 18 U.S.C. 3553(a)(2)(B)-(D). Demonstrated self-motivated rehabilitation is direct and relevant evidence of the need for the sentence imposed... to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and to] provide the defendant with needed educational or vocational training...or other correctional treatment in the most effective manner.

ISSUE SEVEN: The Trial court imposed a substantially unreasonable sentence by attempting to bypass any and all due process, ex post facto protections. Appellants sentence was

NOT POSSIBLE  prior to Booker and he was substantially
effected by Booker. Further the court failed to realize the
Guidelines do consider the difference between possession and
production statutes.

ISSUE EIGHT: The trial court failed to consider all the
relevant sentencing options available to it because it failed
to utilize the correct statute at sentencing. A fine only
sentence was an option.

STATEMENT OF THE CASE


On October 19, 2010, Defendant-Appellant pro se, David
Diehl ["Mr. Diehl"], was charged in a Second Superseding
Indictment with ten counts of violations of 18 U.S.C.
§2251(a), Sexual Exploitation of a Child, for crimes committed
in 1999. (R. 185). Mr. Diehl waived in writing his right to a
trial by jury (R. 347), and proceeded to trial before the
court on February 7, 2011. Mr. Diehl
 stipulated in writing to every element of the charged
offenses except whether there was sufficient evidence
introduced to prove that the trial court had jurisdiction in
the case by reason of interstate nexus. (R. 323, Gov.X-1). On
February 8, 2011, the trial court found Mr. Diehl guilty on
all counts. (R.361).

After several settings were continued sentencing was
eventually set for June 15, 2011. (R. 574). The Presentence
Report [PSR] placed Mr. Diehl's Total Offense Level at 40 (PSR
¶ 133) with a Criminal History Category of II (based on two
criminal history points.) (PSR ¶ 141). Mr. Diehl's counsel
filed numerous objections to the Guidelines calculations, but
none resulted in meaningful changes to the PSR. (Second
Addendum to the PSR, p. 1A-4A). Mr. Diehl discharged his trial
attorney and filed a Motion to Appoint New Counsel on June 15,
2011. (R. 604). Consequently, the trial court continued the
sentencing hearing. (R. 615). Following the July 20, 2011,
status conference the court allowed Mr. Diehl's trial counsel
to withdraw and substituted new counsel. (R. 617, 620, 622).
Sentencing was reset for October 24, 2011. (R.623).

Prior to that date, Mr. Diehl filed motions requesting additional discovery, leave to file additional objections to the Presentence Report (PSR), and seeking to exclude certain evidence from the sentencing hearing. (R.644,632,638). The trial court held a hearing on those matters on October 17, 2011, (R. 644) and denied all three motions. (R. 645,684). Sentencing occured on October 24, 2011. The court conducted a hearing on Mr. Diehl's objections to the PSR, calculated the guideline score, and entertained arguments from counsel. The court sustained two of Mr. Diehl's objections. The resulting advisory Guideline range was found by the court to be between 210 and 262 months imprisonment with a appropriate fine ranging between $20,000 and $200,000. (R. 57). The court heard additional evidence and arguments from counsel before announcing that an outside the Guideline range sentence of 600 months, a total special assessment of $1,000, and a total fine of $1,000. (R.692). Judgement was entered, along with its Statement of Reasons on October 25, 2011. (R.699). Mr. Diehl filed a hand written Notice of Appeal on November 1, 2011. (R. 712).(fn.1)

STATEMENT OF CASE FOOTNOTES

(fn.1) Counsel for Mr. Diehl filed a formal Notice of Appeal on November 2, 2011. This court has treated Mr. Diehl's handwritten Notice of Appeal as the effective notice of appeal.

STATEMENT OF FACTS

A. OVERVIEW

Appellant, at the time of his arrest in Ponte Verde, Florida, was employed as a software engineer (PSR at 170), and was the father and sole supporter of his fourteen year old son. Appellant had no history of any sexually related charges (PSR 134-149). Appellant graduated with a degree in Business Administration, and consulted to Fortune 500 corporations.

B. CONDUCT

This case involves approximately 28 minutes of video produced by appellant eleven years prior to his arrest (PSR 23-33). All ten counts derive from those 28 minutes. Appellant stipulated that the video met the definition of § 2251(a)'s sexually explicit conduct, but objected to the accuracy of the scene descriptions in the PSR (PSR 23-24). These objections were overruled.

C. STIPULATION

Appellant stipulated on January 31, 2011 that the videos (contained in the exhibits) were found in digital format, stored on one or more computer hard drives and/or other computer storage media, at places outside the state of Texas. The stipulation further stated that each of the video exhibits was, at the time of trial, still available on the Internet, and that all of them had been on the Internet since at least 2007 (Stipulation at 15). Trial testimony by a government witness however, established that they existed on

6

the Internet since 1999.)

D. INVESTIGATION

No relevant conduct was found after an extensive investigation. The FBI sought a search warrant of Appellant's residence in Florida and was turned down due the age of the charges and no probable cause. The FBI successfully obtained access to three email accounts, and other ISP records. After appellant shipped his computers to Austin Texas, the FBI applied for another search warrant, and with no additional reason the Texas magistrate granted the warrant. (T Vol. 1 at 407, [Trial Transcripts herinafter T__, Stentencing Transcripts herinafter S__]. Nothing illegal was found on any device, or in any ISP log, or email. Emails went back to 2006. (T at 410). Appellant's wife indicated that she had full access to defendant's computers during the seven years they were married, and that she never saw anything inappropriate or illegal. [T at 436, 444]. Appellant offered to assist the government in decrypting a hard drive they had found. [ST at 896]:

[MR. MORRIS] "Id be happy to cooperate with the government in decrypting the disk they have, to show it has no child pornography".

The government had indicated from the start that the NSA would decrypt the drive and assistance was of no value:

TESTIMONY

Following a pre-trial motion where jurisdiction was fought, and the government realized they could not prove transport, the government produced a witness who claimed that the appellant was involved with pornography. Appellant had told his ex-wife some years back that a friend of his had been arrested for possession of child pornography. After appellant's arrest, appellant's ex-wife told the FBI about the friend. The friend, Ken Courtney received five years off his sentence and apparently avoided federal charges in exchange for his testimony. Courtney claimed at one point he saw (and watched at least 50 times) a video clip, "with a girl in a tent" from which he couldn't identify any unique elements or participants. His statements became a basis for federal jurisdiction.

ISSUE ONE: Whether the statute of limitations expired on the charges prior to Appellant's indictment:

INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on ineffective assistance of counsel the defendant must show that his counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland v. Washington 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. Generally, claims of ineffective assistance of counsel cannot be resolved on direct appeal where they have not been raised before the district court, since there has not been an opportunity to develop the record on the merits of the allegations. United States v. Pierce 959 F.2d 1297,1301 (5th Cir. 1992). This court can consider a claim of ineffective assistance of counsel where the record allows it to evaluate fairly the merits of the claim. See e.g. United States v. Brown 591 F.2d 307, 310 (5th Cir. 1979); United States v. Coutentos 651 F.3d 809, 817 (8th Cir. 2011).

1. The defendant's indictment states that the charged offenses were completed before November 2000.
2. For non-capital offenses the statute of limitations is five years from the date of the offense "except as otherwise expressly provided by law." 18 U.S.C. §3282(a).
3. The standard five year period of limitations applied to appellant's offense.

1. SEXUAL ABUSE LIMITATION HISTORY

9

Prior to November 29th, 1990 there was no specific federal statute of limitations dealing with "sexual and physical abuse of a child". On that date, 18 U.S.C §3509(k) extended the statute of limitations for statutes, "involving the sexual or physical abuse of a child under the age of 18." On September 14, 1994, part of §3509(k) was re-codified into 18 U.S.C. §3283, but the civil language of §3509(k) remained. That section, formerly named "Extension of child statue of limitations", was renamed to "Stay of Civil Action". On April 30th 2003, 18 U.S.C §3283 was amended, extending the statute of limitations (for covered conduct) to the lifetime of the child. The crime of "kidnapping" was also added to the plain language of the statute. On January 5th, 2006, §3283 was again amended, to extend the limitations period to the longer of, the life of the child, or 10 years. §3283 is still in effect—despite other similar statute of limitations laws also being effective. On July 27, 2006 18 U.S.C. §3299 was passed into law as P.L. 109-248, Title II §211(1). §3299 extended the statue of limitations for specific statutes including 18 USCS §2251. §3299 allowed for an indictment or information to be insituted at any time.


2. PRECEDENT CONCERNING U.S.C. §3509(k) and §3283


Other courts have determined the statute of limitations for exploitation offenses is five years: United States v. Shepard 2011 U.S. Dist LEXIS 92519 (N.D. OH {no.

10

4:10CR415} Aug 18, 2011) (prior to Adam Walsh Act of 2006,
statute of limitations was 5 years); United States v. Seiver
692 F.3d 774 (7th Cir. 2012) (Applied §3282 to §2251); United
States v. Richards 301 Fed. Appx. 480 (6th Cir. 2008) (applied
§3282 to chapter 110 exploitation offense); United States v.
Burkart 602 F.3d 602 F.3d 1202 (10th Cir. 2010) (Court used
§3282 and gave no consideration to §3283); United States v.
Welton (No CR09-00153 MMM, 2009 U.S. Dist LEXIS 110657, 2009
WL 4507744,*16 C.D. Cal. Nov 30, 2009) (Unpublished) (Showed
no consideration of §3283, and makes explicit reference to the
fact §3299 was the first statute of limitations to include
'possession of child pornography', a chapter 110 offense.)
United States v. Husband 119 Fed. Appx. 475 (4th Cir. 2005)
(applied §3282 to §2251 charges, and the government
specifically applied the 3rd jurisdictional clause of §2251 to
extend the limitations period past the five years. The
governments logic was based on the in-choate nature of the 3rd
clause. They could have used the second clause having the
camera and tapes).

        Although American Library Ass'n v. Reno 33 F.3d 78, 85
(D.C. Cir. 1994) isn't directly about criminal limitation
periods, that court noted that, "A [film] producer should be
required to maintain these records [age verification] for a
minimum of five years ..., this legislation would not only
protect minors from abuse, but it places the burden of
ensuring this protection squarely on the producers of the
material." [ellipses in original, quoting Attorney General's
Commission On Pornography]. The need for these records to be
kept by amateur, as well as commercial film makers was noted

in Free Speech Coalition, Inc. v. AG of United States 677 F.3d 519, 540 (3rd Cir. 2012), "Thus, because the definition of 'secondary producer' limits its scope to those depictions created for commercial distribution but the definition of 'primary producer' does not, the clear implication is that 'primary producer' is not limited to those who create depictions for commercial distribution".

Records were also required to be kept regardless of the age of the performer, "[t]he government asserts that the statutes are narrowly tailored because uniform record keeping and labeling procedures are necessary for producers regardless of the actual or apparent ages of performers." 677 F.3d at 536-37. The record keeping statute (18 U.S.C. §2257), was amended in 1994, 2003, and 2006, but the five year limitations was never increased. In fact, §2257 had to be specifically EXCLUDED in the statue of limitation increase (§3299) in 2006 that covered chapter 110 offenses.

3. CASES THAT THE GOVERNMENT HAS USED AS PRECEDENT

United States v. Panner 2007 WL 549925; 2007 U.S. Dist Lexis 11589 {No. CR. S-06-0365 DFL} (E.D.CA 2007) was the first court to allude §3509(k) was meant to apply to Chapter 110 offenses. Panner has been used as precedent either directly or indirectly in all cases that follow it. Panner however, did little to no real analysis on the matter because it was heard in a Motion to Dismiss.

"With a motion to dismiss a charge on the ground that it

12

was not filed within the statute of limitation, the court is limited to consideration of the face of the indictment, and is required to accept the facts alleged therein as true." [Plaintiff's [Panner] memorandum in opposition to defendant's motion to dismiss count one on statute of limitations grounds. Pg. 8, citing Winslow v. United States 216 F.2d 912,913 (9th Cir. 1955)]]


In the courts Memorandum of Opinion it provided a one line denial of the motion where the court ruled "In response, the government proffers a set of facts that, if proved would amount to sexual abuse under any definition of that term." Id at 1. Mr. Panner wasn't being charged with "sexual abuse", and chapter 109A requires a sex-act be proven. Blacks law dictionary (7th ed. 1999) defines sexual abuse as "illegal sex act performed against a child by a parent, guardian, relative or acquaintance." The requirement of a sex-act safeguards individuals from this very serious charge. The government dropped the §2251(a) charges after Panner challenged the statute of limitations, so the case provided no analysis at trial.

Since there was no court that had applied §3283 to chapter 110 offenses before Panner, the court was forced to turn to immigration deportation cases for any precedent support. The Panner court quoted United States v. Zavala-Sustaita, 124 F.2d 601, 604 (5th Cir. 2000) (Under 8 U.S.C. § 1101(a)(43)(A) sexual abuse of a minor does not require actual physical contact with the minor ...) for precedent. In 2010, the United States v. Carpenter 680 F.3d 1101 (9th Cir. 2012)

Court also turned to this desperate scheme.

In Gool v. United States 2009 U.S. Dist. LEXIS 61451 (4:09-cv-00145-JAJ) (S.D. IA 2009) the Appellant filed a §2255 Writ of Habeas Corpus for prosecutorial misconduct due to the government's misrepresentation of the creation date of the Visual Depictions Gool created. The Government misrepresented the dates to specifically avoid the five year limitations period.

In United States v. Coutentos the defendant accused the Government of manipulating dates so that they could use apply 18 U.S.C §3299 [enacted as part of the 2006 Adam Walsh Act]--instead of §3283,--for limitation purposes.

"Despite the district courts finding of fact, the government again asks this Honorable Court to find the alleged offenses were committed after July 26, 2001 and into the summer of 2002. The government does so because it is the only way in which the extended statute of limitations would save the instant case. Said request should be denied. ... The government recognizes that it has a significant problem with the statute of limitations. If the offenses occurred on July 26, 2001 or before, *5 the charges should have been dismissed present to the timely motion to dismiss. So, the government now argues to this Honorable Court that the offenses occurred later than July 26, 2001 and into the summer of 2002. [Appellant's Reply Brief, Dec 14, 2010. ID at 3]

Coutentos was the first and only Circuit court to find that §3509(k) covered chapter 110 offenses past 5 years since

14

the enactment of §3509 in 1990. Other Circuit courts had already decided 3509(k) / §3283 didn't apply, and the issue had been presented (but not decided) to the supreme court in Husband.

The Coutento courts decision was based on the following findings:

"In 2003, Congress again amended §3283 to extend the statute of limitations so that the government could continue to prosecute suspected CHILD ABUSERS at any time 'during the life of a child'".
[Quoting United States v. Sure Chief, 438 F.3d 920,922 (9th Circ, 2006)]

The Coutentos court further declared when determining if §2252A(a)(5)(B) was extended by §3283:

"Does someone who merely possesses child pornography sexually abuse the child portrayed in the images ? No more than the offense of possessing Methamphetamine involves the act of producing it ... Thus, we conclude that §3283 is inapplicable and that §3282 is the governing limitations period on the possession count."

There are three fatal flaws in the Coutentos Courts logic. First, §3283 didn't extend "child abuse" as quoted in Chief, §3283 extended statutes "involving sexual and physical abuse and kidnapping". Second, "sexual abuse" isn't a required

15

element of §2251 and specialty limitations are to be interpreted categorically. Finally, Chief was charged with "sexual abuse (§2241) on Indian land §1153, which is expressley what congress intended §3283 for.

4. THE GOVERNMENT DEPENDS ON §3509(A)(8) TO ASSERT "EXPLOITATION" WAS COVERED UNDER U.S.C. §3283

    The government admits through their dependence on §3509(a)(8)'s "sexual abuse" definition, that the plain language of §3509(k) does not "expressly" cover "sexual exploitation" or any other chapter 110 offense as required by law.

    In every case where §3509(k) / §3283 have been used to extend the limitation period of §2251(a) (Panner, Sensi, Coutentos, and Carpenter), the government has relied on the "sexual abuse" definition in §3509(a)(8). United States v. Coutentos ("Thus the offense of producing child pornography involves {651 F.3d 817} the 'sexual abuse' of a child as that term is defined in §3283. Accordingly we conclude that §3283 is the governing limitations period for the production charge"). United States v. Carpenter ("We join our sister Circuit in looking to subsection 3509 for definition of "sexual abuse" under federal law and find it the appropriate definition to use in applying section 3283's extended statute of limitations" {680 F.3d 1104}).

    The government needs the §3509(a)(8) definition of "sexual abuse" because it contains the word "exploitation" in the clause "other form of exploitation", and it reduced the

16

requirement from a chapter 109A "sex-act" to that of "sexually explicit conduct" which is significantly broader. §3509(a)(8) allows the government to avoid the criminal elements necessary to prove §2241(c) titled "Sexual Abuse of a Minor or Ward".

Panner was the first case where the government attempted to expand the statute of limitations to chapter 110 offenses utilizing §3509(a)(8) and the Board of Immigration Affairs findings regarding sexual abuse (for deportation). Panner's dependance on Zavalia-Sustaita and BIA was ill founded. United States v. Carpenter used Mugalli v. Ashcroft 258 F.3d 52,58 (2nd Cir. 2001) for the same purpose. The Mugalli court however clarified the distinct purpose of The BIA decision that "2242, 2243 and 2246 were to restrictive to encompass the numerous state crimes that can be viewed as sexual abuse and the diverse types of conduct that would fit within the term as it is commonly used." Id. at 58

The BIA made it clear "It would be troubling if the BIA had done no more than pluck the definition of 'sexual abuse of a minor' from §3509(a)(8). "That statute sets forth procedures for protecting child victims and child witnesses in the course of federal litigation. It is directed neither to substantive criminal law nor to immigration law," and later "It addresses niether the elements of criminal conduct nor the characteristics of aggravated felonies." {Id at 59} Mugalli was a rape case and cites Perez-Gonzalez v. Holder 667 F.3d 622,627 (5th Cir. 2012) ("Congress demonstrated its continued institutional knowledge of the difference between the terms by adding to the list of aggravated felonies the new term of "Sexual Abuse of a Minor [1996] and the old term rape.")

The fact that §2251(a) wasn't meant to be included in §1101(43)(a)'s definition of "Sexual Abuse of a Minor", is cemented by the fact §2251 is separately covered under as §1101(43)(i). Perez-Gonzalez points out that 18 U.S.C. § 1153(a) of the Major Crime Act contains a list of the crimes congress considered to be sexual abuse, which were later all simply catagorized as Ch 109A "sexual abuse". U.S.C. §1153 is the best guide to what crimes U.S.C. §3283 extended, not §3509(a)(8) as alleged by the government.

The Government's dependence on the §3509(a)(8) definition of "sexual abuse" tries to escape the fact that §3509(k) was misfiled in the "Child Victims Rights" chapter (ch. 213) as a temporary location until the criminal component, only, was recodified and moved in 1994 to the "Limitation" section of the U.S.C. (chapter 223). The government is on record in several cases saying that §3509(k) was moved "verbatim" into chapter 223, United States v. Sensi (D.CT. 2010)(Government's memorandum of law in opposition to defendants motion to dismiss) ("In 1994, the statute of limitations language of section §3509(k) was moved verbatim, into chapter 213."); United States v. Coutentos (Appellant brief filed 11-24-2010) ("In 1994 the statute of limitations language of §3509(k) was moved, verbatim into chapter 213.") The reality is that §3509(k) was NOT moved verbatim to §3283 in 1994, because the attached civil language remained in §3509(k).

After §3509's recodification into the EXISTING §3283, and the  proper location for limitations in the U.S.C, §3283 provided no reference to any terms located in §3509(a), and

the government tap dances on this important point. If §3283
depended upon §3509(8) terms for its interpretation it would
have been easy, proper, and in fact necessary for congress to
have referenced the dependent terms. It must be assumed
Congress knows what its doing in such matters, especially in
light of the fact "kidnapping" was added to the plain language
of §3283 in 2003, which completely negates the idea that the §
3509(a) definitions are a dependency.


5. 3509(a)(8)'S DEFINITION OF SEXUAL ABUSE IS PURPOSELY NOT
APPLICABLE TO §2251(A)


     18 U.S.C. §3509(a)(8) provides no substitutional
definition for "physical abuse", a key component of §3509(k)'s
"sexual and physical abuse". This fact is hard to explain away
if the limitation depended on language substitution.

     The Supreme Court in Smith v. Goguen 415 U.S. 566,574;
39 L.Ed.2d 605 (1974) decided that, as a matter of due
process, a law is void on its face if persons of common
intelligence must necessarily guess at its meaning and differ
as to its application. Four pages later [415 U.S. at 578], the
majority ruled that the specific language in the criminal
statute was "void for vagueness as applied to the [defendant-
appellee] because it subjected him to criminal liability under
a standard so indefinite that police, court, and jury were
free to react to nothing more than their own preferences" for
what consisted of criminal conduct under that statute. In a
case, such as the one sub judice, where there is a strong
visceral reaction to the subject matter of the evidence, there

is even more of a tendency to want to find SOMEONE culpable (and punish them severely) even if they are not truly guilty (under the proper reading of the laws). Well before the case sub judice, the Supreme Court, in Bates v. United States [522 U.S. 23,29 (1997)], explained that courts must "ordinarily resist reading words or elements into a statute that do not appear on its face." United States v. Childress 104 F.3d 47,53 (4th Cir. 1996) quoting US v. Jones 902 F.2d 1152,1153 (4th Cir. 1990) in holding that, "in the absence of clearly expressed legislative intention to the contrary, the plain language of the statute is to be recognized as conclusive." Reading the §3283 statute on its face would simply mean that chapter 109A ("sexual abuse") included the behavior congress intended for §3509 to cover.

Using §3509(a)(8)'s definition to identify what actual statutes §3283 covered has more significant problems and that is that neither the House nor the Senate referred to "sexual exploitation" as "sexual abuse" during the enactment of §2251(a) -- purposely. [HR 8059, Rept 95-696, 95th Congress, 1st Session Oct 12, 1977, and S. 1585, Rept 95-438, 95th Congress, 1st Session, Sept 16, 1977.]


"By favorably reporting S1585 the committee intends to fill the existing gap in Federal law by declaring the use of children in the production of such material is a form of child abuse ...."


Congress was careful to categorize "exploitation" as "child abuse", not as "sexual abuse". This categorization was

needed to assure the proper federal and state jurisdictional boundary. Congress was well-aware that the states prosecuted "sexual abuse" crimes, which require a sex act, and an age difference as defined in chapter 109. With regard to the word "abuse" it is the age difference that makes it abusive when involving minors. Chapter 110 completely lacks this requirement. "Child abuse" is defined in §3509(a)(3) as "physical or mental injury, sexual abuse or exploitation or negligent treatment of a child", but §3509(k) was NOT worded as "child abuse", which would have expressly included "exploitation". This can not be assumed to be an accident so that the government can extend liability.

6. SEXUAL EXPLOITATION OF A MINOR IS NOT SEXUAL ABUSE OF A MINOR.

The history of 18 U.S.C. §2251(a) makes clear the law was enacted to prevent the crime of "exploitation", where a visual depiction is created for the purpose of gain by the exploiter. §2251 doesn't have an "abuse" requirement because §2251(a) was meant to cover those who "Unjustly Enrich" themselves in some manner at the expense of a victim, not those who "abuse" others. The statute specifically does not punish the act of sexual abuse. As §2241(c) "sexual abuse of a minor" and §2251 "sexual exploitation of a minor" are not mutually exclusive the government always had sexual abuse covered.

In both United States v. Klug 670 F.3d 797 (7th Cir. 2012) and United States v. Beier 490 F.3d 572 (7th Cir. 2007),

21

the courts noted that production of pornography (§2251) and
sexual abuse were separate and distinct crimes with separate
and distinct elements and punishments.

Even if the §3509(a)(8) definition of sexual abuse
defined the statutes that §3283 applied to, it still wouldn't
include §2251. Specific language such as used in Title 42
§5106g would have to be used to categorize sexual exploitation
as sexual abuse. In fact §5106g existed prior to the enactment
of §3509(a)(8), but puposefully wasn't used in §3509(a)(8).
The §5106g definition is:


"The employment, use, persuasion, inducement, enticement
... of a child to engage in sexually explicit conduct for THE
PURPOSE OF PRODUCING A VISUAL DEPICTION of such conduct"
[Emphasis not in original]


For the purpose of "producing a visual depiction" IS
the crime, not "sexual abuse". "For the purpose of producing"
is the scienter, gravamen, and without it §3509(a)(8) can be
read at best as Coercion and Enticement [18 U.S.C §2422].
United States v. Lee 603 F.3d 904, 913 (11th Cir 2010) states
"Section 2422(b) proscribes attempting knowingly to 'persuade,
induce, entice, or coerce a minor to engage in ... any sexual
activity for which any person can be charged with criminal
offense'. Section 2251(a) and (e) prohibits the same conduct
when the defendant's object is to PRODUCE PORNOGRAPHY WITH THE
MINOR rather than to engage in sexual activity with the
minor." To be found guilty of §2251 as opposed to §2422(b)
however the government would have to prove there was, "1)

22

specific intent or mens rea to commit the underlying charged crimes, and 2) [he] took actions that constituted a substantial step toward commission of [each] crime." [Id. at 913-14]. citing US v. Yost 479 F.3d 815,819 (11th Cir. 2007).


7. THE ESSENTIAL INGREDIENT TEST - UNITED STATES v. BRIDGES


Specialty limitations are to be interpreted categorically. It's not the law that some cases of §2251 have their statute of limitations extended while other don't. In Bridges v. United States 346 U.S. 209; 97 L.Ed. 1557 (1953), ("[limitation] applied only to offenses involving fraud of a pecuniary nature or of a nature concerning property, and to offenses in which fraud is an essential ingredient") the Supreme Court held that specialty limitations should be categorical, and introduced the "essential ingredient" test. "Sexual and physical abuse" are not essential ingredients of §2251(a). Its important to note that 18 U.S.C. §3287 (Wartime suspension of limitations act) is the only other limitation that specifies the statutes it covers with the word "involves").

§2251 doesn't have to "involve" sexual abuse as is clarified by a 1995 study called "The Varieties of Child Pornography" based on the findings from the National Juvenile Online Victimization Study, which was funded by the Department of Justice and Center for Missing and Exploited Children:


"The United States Supreme Court has defined lascivious exhibition of genitals or public area broadly to

include images of minors that focus on genitals even wearing clothing US v. Knox, 32 F.3d 733 (3rd Cir. 1994). For example sexually suggestive pictures that focus on genitals or minors wearing swimsuits or leotards can be child pornography. At the same time, photos of nude minors that show their genitals, but do not focus on them are not child pornography if the images do not constitute a lascivious prohibition. These legal decisions and statutory proscriptions mean that images do not have to depict sexual activity, child sexual abuse, nudity, or children under the age of consent to qualify as child pornography. So in the United States child pornography is NOT synonymous with child sexual abuse." [emphasis added]


Exploitation is never included under sexual abuse categorically, not in the guidelines, statutes or anywhere in chapter 67, entitled "Child Abuse Prevention, Treatment and Adoption Reform".


8. CONGRESS NEVER INDICATED §3509(K) COVERED ANYTHING BUT SEXUAL ABUSE ON FEDERAL ENCLAVES


Upon introducing the §3509 legislation in 1990, congressman DeWine from Ohio speaking to the chairman about the §3509 portion of the act explained the intended use and audience of §3509 by remarking:


"[The Act] sets up some very good and tough reporting requirements for any kind of child abuse that MAY OCCUR ON A FEDERAL ENCLAVE". Congressional Record Oct 3, 1990 H8754

1990. [emphasis added]

[H.R. Rep No 101-681, 101st Cong & Admin News 6571]


Mr. DeWine further stated that Congress felt the need to keep pace with the procedural innovations enacted by states for dealing with unique problems associated with child abuse, and that congressional findings revealed that "20% of Indian children are sexually abused". June 28th 1990 S. 8976. H.R. 8754 Oct 3, 1990 H.R. 13295 Oct 27, 1990.

The "sexual abuse" crimes that Congress sought to address with §3509's enactment, were those listed in 18 U.S.C. §1153(a), created as part of the Major Crimes Act (which applies federal law to native american enclaves). The Appellate court in United States v. Burnside 831 F.2d 868 (9th Cir 1987) found it had jurisdiction because sexual assault was in the 1979 amendment of the Major Crimes Act.

The purpose of the §3283 limitation extension is further clarified by a report which accompanied the 2003 amendment of §3283 [H.R. Cong. No 108-66 at 54, Prosecutorial Remedies and Other Tools Act], Congress reported "The extension will allow law enforcement more time for DNA testing in assault and rape cases." Because the amendment extended the limitation for the life of the child or for ten years, which ever occurred first. DNA could be used to prosecute, even if the victim had become deceased. DNA is irrelevant to chapter 110 offenses.

Senator Scott of Virginia, when referring to the increased mandatory minimums applicable to chapter 109A and commenting about how they would effect teenagers who cross

state lines to have sex said "But because of the few cases
that are actually under federal jurisdiction, they will
primarily affect Native Americans on reservations, because all
of their cases come under Federal jurisdiction." [July 25th,
2006 Congressional Record House H 5723 Heinonline
H5724.2006.]


Prior to 1986, §1153's sex offenses include rape,
involuntary sodomy, carnal knowledge of any female (under 16)
who is not his wife, incest, felonious sexual molestation of a
minor, and assault to commit rape. After 1986 these offenses
were replaced with the generic "any offense that was a felony
under Ch. 109A". By simplifying the coverage to 109A/§2256 sex
acts, Congress now also included §2241(c) [Aggravated sexual
abuse of a child], §2243 [Sexual Abuse of a Minor or Ward and
Incest], and §2423(a) "physical abuse" offenses.

Mr. DeWine's speech did not suggest that §3509(k) was
intended for any purpose other than for cases of "sexual
abuse" where a "sex-act", as defined in U.S.C §2256 is
charged. Except for subsection 3509(m), which was added as
part of the 2006 Adam Walsh Act, §3509 makes no mention of
"pornography" anywhere in its text.


9. §3509 IS THE VICTIM OF CHILD ABUSE ACT (VCAA) COURTROOM
PROCEDURES


The court in United States v. Broussard 767 F.Supp.
1536,1538-39 (D.OR. 1991) (charged with 18 U.S.C. §241

26

conspiracy to depreive others of constitutional rights, 18 U.S.C §1584 sale into involuntary servitude) explains that, "Although the relevant portion of the act is entitled a 'Victims' Rights Act, it is directed solely to special procedural problems that arise in cases in which children are victims of child abuse or are witnesses to a crime committed against another person." Broussard indicates congress's intent for the legislation was primarily Indians who had a high rate of sexual abuse.

United States v. McElhaney 54 M.J. 120 (C.A.A.F. 2000) held that the statute of limitations in §3509 does not provide a procedure that is necessary to the proper functioning of the other components of §3509. United States v. Longstreath 42 M.J. 806,815 (N.M.Ct.Crim.App. 1995) explains that section 225(a) (coded as §3509), of the Victims of Child Abuse Act [VCAA], "[congress] recognized the need to extend protections available to victims of child abuse in state proceedings to children residing on federal enclaves, including military bases." §3283 is a statute of limitations increase for sexual abuse, §3509 is victim and witness trial procedures.

10. CHAPTER 110's CIVIL SUIT STATUTE EXCLUDED SEXUAL ABUSE AS PREDICATE OFFENSES IN 1990

Title 18 U.S.C. §2255 provided substantial damage awards of no less than §50,000, which was increased to $150,000 in 2006). In 1990 (when §3509 was enacted) these awards would not have been available to §3509 victims because chapter 109A statutes weren't considered predicate offenses of

§2255, and therefore not available to §3509 victims.
"Any victim of a violation of §2251 or §2252 who suffers
physical injury, emotional distress, or property damage as a
result of such violation may sue to recover damages in any
federal court." ... "For the purposes of this section
violating are to be determined by a preponderance of
evidence." [Congressional Record - Extension of Remarks, Sept
23, 1986 with Heinonline 132 Cong. Rec. E3242 Sept 23, 1986.]
[See Cong. Rec. s17295-026 (Daily Ed. Oct 18, 1986 (statement
of Senator Grassley).]

        Its clear that chapter 109 and chapter 110 in 1990
were independent of each other with regard to civil suits, the
purported purpose ("title") of §3509(k).


11. §3299 EXTENDS THE STATUTE OF LIMITATIONS FOR CHAPTER 110


        On July 27th 2006, the Adam Walsh Act Pub. L. No 109-
248, §203, 120 stat 587, 613 (2006) was enacted. The stated
purpose was: "to protect from sexual exploitation...
comprehensive bill to address the growing epidemic of sexual
violence against children and to address loopholes and
deficiencies in existing laws." [HR Rep No 109-218, pt.1
(2005)]. 18 U.S.C. §3299 was the statute of limitation
increase in the bill, and for the first time Congress DID
EXPRESSLY provide for a longer statute of limitations for
violations of chapter 110 offenses outside of federal
enclaves. §3299 provides:


"Notwithstanding any other law, an indictment may be found

or an information instituted at any time without limitation
for any offense under section §1201[18 USCS § 1201] involving
a minor victim, and for any felony under Ch. 109A[18 USCS §§
2241 et seq.], 110[18 USCS §§ 2251 et seq.](except for section
§2257 and §2257A)[18 USCS § 2257 and 2257A]), or Ch. 117[18
USCS §§ 2421 et Seq.], or section §1591[18 USCS §1591]."
(Added July 27, P.L. 109-248, Title II, §211(1), 120 Stat.
616)


      The limitation period that applies to §3299 is never
ending, where the limitation period for §3283 is life or ten
years, whichever is longer. §3299 did not replace or repeal
§3283, which it wouldn't be able to, since it now included
new statutes Senator Kyl's remarks concerning §3299's
enactment stated:


   "Section 211 suspends the statute of limitation FOR ALL
federal felony offenses of sexual abuse, sex trafficking or
child pornography." [Children's Safety and Violent Crime
Reduction Act of 2006, 152 Cong. Rec. S8012-02, S8025, 2006 WL
203 4118, 35.] [emphasis added]


      18 U.S.C. §3283 was last modified on Jan 5, 2006(added
"or 10 years after the offense whichever is longer"), 6 months
before §3299's enactment. If §3283 extended §2251 there would
now be two different specialty limitations, with two different
extension terms that covered it. United States v. Marshall 360
Fed. Appx. 24 (11th Cir. 2010) (§3283 extends limitation for
kidnapping)

The fact that §3509 was not oriented towards commerce clause based statutes can't be seriously refuted( "in or effecting" ). Chapter 110 offenses are commerse clause based statutes which is why U.S.C. §3299 was necessary. As of January 2010, when Appellant was arrested there wasn't a single case on record in the 20 years, since 1990, where either §3509(k) or §3283 was found to apply under the scrutiny of a trial to any chapter 110 offense. Husband, Am Library and other cases on the other hand cut cleanly across the Government. This fact didn't stop the government from bringing charges in 2010 against Carpenter, Coutentos, Sensi, and the Appellant. This has resulted in the false arrest of Appellant and three years of incarceration.

12.    CONCLUSION

18 U.S.C. §3299, enacted on July 27th, 2006, was the first and only limitation to EXPRESSLY include §2251 in its coverage, as required by the law. There is simply no indication from Congress to the contrary. "Strictly construed" means the government, not the defendant, must  prove that chapter 110 was expressly included by §3509(k). The government can't do that because chapter 110 was not included in the act, for whatever reasons, be it First Amendment concerns, or the fact there were few cases at the time and states were prosecuting those cases. Regarding the record keeping requirements imposed on film makers, the Senate heard testimony:

[Mr Leahy:] The district court for the District of Columbia
found that this original version violated the First
Amendment.... The proposed extension of section §2257 gave
rise to legitimate concerns, expressed by groups as far
ranging as the Chamber of Commerce, the Motion Picture
Association of America, the American Library Association and
the American Conservative Union.... [HeinOnline - 152 Cong
Rec. S8027 2006]

On its face §3283 specifies "sexual and physical abuse
and kidnapping", not "sexual exploitation of a minor less than
18". "A limitation statute carving out an exception should be
strictly construed and held to apply only to cases shown to be
clearly within its purpose. United States v. McElvain [272
U.S. 633]. "Sexual Abuse" is not an essential ingredient of
"sexual exploitation" as stated in the Department of Justice's
own studies. Bridges makes clear that limitations are to be
interpreted categorically (all or nothing). There is an
abundance of credible evidence indicating chapter 110 offenses
were not the target of §3509(k). Accordingly §3509(k) and its
successor, §3283 should be found not to apply to violations of
18 U.S.C. §2251(a).

ISSUE TWO: THE UNITED STATES DID NOT HAVE JURISDICTION OF THIS CASE


A. FACTS

On 1-31-2011 appellant stipulated to recording, creating, and producing the visual depictions entered into evidence as Gx1.1 - Gx10. [Agreed Stipulation Of Facts and Evidence] [R. at 323]. Defendant further stipulated that each of the video depictions were found on computers outside of the State of Texas, and that each of the video exhibits were stored in digital video format on one or more hard drives and/or other computer storage media. It was further stipulated that each of the video depictions has been available on the Internet since 2007. (Government testimony, however made this date as early as 1999., T. at 403)

The Federal jurisdictional nexus for 18 U.S.C §2251(a) is established in one of three ways. The first way, as noted in United States v. Runyan 290 F.3d 223,239 (5th Cir. 2002), is by proving the defendant INTENDED to transport the visual depiction in interstate commerce. Mr. Runyan told the victims he INTENDED to put the video he shot on the Internet in the §2251 count. The trial court found Mr. Runyan not guilty of the distribution count because the government failed to prove Runyan actually transported anything in interstate commerce.

The second and most common federal jurisdictional hook is the "materials in commerce hook". This hook gives jurisdiction when equipment used to produce or store the visual depiction can be proven to have traveled in interstate

32

commerce. The final hook is "has been transported". This
rarely used clause has always been supported by two sub-
elements: First, the actual or as §2251(a) says "such" visual
depiction is recovered, and second, the person transporting it
is linked to its production. As proof no one has been found
guilty under the Appellant's circumstances the trial court
noted during trial:

[COURT:] I am reasonably convinced that there are not a lot of
cases out there based on what I did to prepare for the
pretrial hearing ..."

[PROSECUTOR:] There is no case that I've found judge that are
directly on point on this particular element of §2251(a)...
In this case the government is admittedly relying on a lot of
circumstantial evidence. We did not have a seizure of child
pornography, which is very unusual circumstance in these cases
so we had to establish that element by other means.
[T. Vol 1. at 552]

A pretrial motion [First Amended Motion For A Bill of
Particulars] was filed by the appellant requesting the
essential facts about transport, which the indictment failed
to provide. "In all counts of the indictment includes the bare
assertion that a visual depiction had been mailed, shipped and
transported in interstate commerce." [Defense Superceding
Motion for a Bill of Particulars, Dkt 57]. Without further
details on how the visual material was transported. Appellant
did not have enough information to defend himself. The

government in its response [United State's Response In Opposition To The Defendant's Motion For A Bill Of Particular] cited United States v. Poulin 588 F.Supp.2d 64 (D.ME 2008), claiming that the indictment and open discovery policy was sufficient to inform the Appellant of the jurisdictional nexus. [Docket 65] The Court subsequently denied the Bill of Particulars. Appellant did not stipulate to the transportation element. As this Court stated in United States v. Henriques, 234 F.3d 263,266 (5th Cir. 2000-as revised), "The transport of images through interstate commerce, must be proved beyond a reasonable doubt."


B. GROUND ONE FOR RETRIAL: Defendant was prejudiced by the wrong version of §2251(a) being used to determine guilt.


Since Appellant's counsel failed to realize and object to substantially different and more expansive jurisdictional language being applied. Appellant asks this Court to here this argument under the claim of ineffective counsel, noting the record is complete for this analysis. Appellant doesn't believe he should have to make a case on appeal, this is a trial matter. There is enough of an argument below hopefully to convince the Appellant court that the matter deserves a retrial. The appropriate jurisdictional language of §2251 that the court should have used simply states "if such visual depiction has been transported in interstate or foreign commerce". The appeals court in United States v. Wright 625 F.3d 583, 600 (9th Cir. 2010) found that the 2007 act, which changed the language of §2251, §2252, and §2252A, Pub. L. No

110-358, which added "using any means or facility of interstate or foreign commerce" ... and replaced "in interstate" with "in or affecting interstate commerce." "would expand the jurisdiction" of the statute and was not for "mere clarification". This finding was similar to that of the First (United States v. Lewis 554 F.3d 208, 216 (1st Cir. 2009)) and the Tenth (United States v. Swenson 335 Fed. Appx. 751,753 (10th Cir. 2009)) Circuits. "Transmit" was also added to the language to cover web-cam broadcast, which according to industry analysis was NOT covered until 2008. Wright found the legislation was a specific attempt to reach more types of conduct and specifically to alter Federal/State jurisdictional balance. Wright contends that in response to the Justice Department's recommendation to Congress, Congress replaced the more broadly reaching phrase "affect interstate or foreign commerce," with the more limited "in interstate or foreign commerce." In doing so Congress recognized that the jurisdictional element was an important component in preserving the balance between federal and state law enforcement responsibilities.

In response to the finding in United States v. Schaefer 501 F.3d 1197 (10th Cir. 2007) wherein that court found a lack of federal jurisdiction when the government failed to prove interstate transport, Congress was forced to amend the jurisdictional language of several exploitation statutes.

[MR. GOODLATTE:] "The proposed legislative fix will allow the government to satisfy the interstate requirement by proving

35

beyond a reasonable doubt that the material moved in or affecting interstate or foreign commerce, which would expand the jurisdiction to prosecute those crimes when the internet is used. This is the broadest assertion of interstate commerce power that the Congress can make consistent with the Constitution.

[MRS, BIGGERT:] That is why the bill we are considering today deserves our full support. It will close the loophole in current law by replacing the phrase "in commerce" with phrase "affecting commerce" in the Child Pornography Statute." Congressional House Record, Nov 13, 2007 Heinonline -- 153 Cong. Rec. H13592 2007:

In the present case, with regard to jurisdiction the court concluded:

[COURT]: The facts are clear beyond a reasonable doubt that the production of child pornography occurred within the state of Texas and that it appeared in other states and therefore, the court finds that is enough to show that it had been transported or transmitted using any means or facility of interstate or foreign commerce.
[T. Vol 2 at 562].

C. GROUND TWO FOR DISMISSAL: There was insufficient evidence to prove transport.

First, "Such" image (i.e. the one created by

appellant) was never found to have been transported in
interstate commerce. The one ACTUALLY PRODUCED is what the
plain language of §2251 specifies, not duplicates, renditions
and or modifications. Without the original, producers would be
held accountable for modified images. Second, "Found in other
states" is a substantially lesser standard of proof than
"transported". In particular "transported" ties an individual
to a time and place. A typical "File Transport Log" documents
the date and time, and sending and receiving locations of the
file transport. This information is consistently used to prove
jurisdiction in other cases.

    At trial, Appellant's counsel made objections to the
sufficiency of the evidence:


[STEVE ORR] "They have never to me, based on the evidence that
we have heard today in this courtroom proved beyond a
reasonable doubt that Mr. Diehl moved anything in interstate
commerce, that he had any intention that it be moved in
interstate commerce. Their big argument is that it was
found."
[T. Vol1 at 542]


    The third jurisdictional clause requires that either
Appellant or an collaborator transported the depiction in
interstate commerce. The statute is unconstitutional as
applied to Appellant. When §2251 was enacted and the third
jurisdictional prong was written, the statute only covered
commercial producers. Also the Senate and House enacted the
third jurisdictional prong based on "promoters" not

37

"producers". Mr. Ertel's last minute amendment to H.R. 8059 is unconstitutional as confirmed by John Keeney, Deputy Assistant Attorney General in his 1977 statements to the senate regarding that bill [Report 95-696, October 12,1977]. [Pg. 19] "In the first place, the bill is, in our opinion, jurisdictionally deficient."

Judge Yeakel made the following comment at sentencing:

"And we do have a situation where I am satisfied that this defendant uploaded images of the films that he took, because I have no other explanation of how they would have gotten in circulation had this defendant not uploaded them." [S. at 927]

This logic doesn't provide a sufficient basis to convict and the government's witness was non-credible, and had no knowledge of transport.

"[STEVE ORR:] I guess my third argument is that the evidence fails to convict Mr. Diehl of either knowing its going to be moved in interstate commerce, and then if the Government is intending to rely on the argument, well it got moved in interstate commerce, but that's unconstitutional.... They got to show some method or means it got across.... The language of the statute is transporting, it's not found, it's transporting."
[T. at 542]

Not having to prove transport of "such" depiction
would decimate all jurisdictional boundaries, because once a
copy of an image had been found outside a state, no proof of
transportation would be needed for any subsequent offense.
Since distribution requires proof of transport, and its
distribution that gives jurisdiction to production an
essential ellement of proof would be missing.


ISSUE THREE: THE TRIAL COURT IMPOSED A PROCEDURALLY
UNREASONABLE SENTENCE BECAUSE THE COURT DECIDED TO VARY BEFORE
DISCUSSING §3553 FACTORS, AND FAILED TO CONSIDER THE
GUIDELINES RANGE.


A. Standard of Review
Whether the sentence imposed is inside or outside the
guidelines range, the appellate court must review the sentence
under an abuse-of-discretion standard. Gall v. United States
552 U.S. 38, 51 (2007).


B. In United States v. Tisdale 264 Fed. Appx. 405,411 (5th
Cir. 2008) this Court stated that, "It is only after
considering the §3553(a) factors that the district court can
determine whether a within-guidelines sentence is appropriate
or whether, instead, the court ought to deviate, either above
or below, from the starting point established by the
guidelines." Another Court of Appeals found similarly in
United States v. Crosby 397 F.3d 103,113 (2nd Cir. 2005) when
they said that, "[T]he sentencing judge should decide, after
considering the Guidelines and all the other factors set forth

in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e. a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." In the case sub judice, immediately following the guideline calculation, Appellant's attorney and the judge entered into the following dialog:

[Mr. Morris]: "Your Honor, we'd like to address the court with respect to the factors contained in §3553."
[Court]: "Well, that will determine what my sentence will be."
[S. at 434]

The court had no intention of giving due deference to the Guidelines, because when Judge Yeakel made that comment there had been no discussion as to whether this was a "typical" case or not. Mitigating and aggravated factors had not been discussed, personal characteristics of the Appellant had not been discussed, policy disagreements had not been discussed. The judge had not discussed the psychological recidivism test administered by a highly credible psychologist who generally provided testing for the government itself.

C. The court also failed to properly consider the guideline range, an 18 U.S.C. §3553(a) factor.

Below are statements made by the trial court which illuminate what consideration the court gave to the properly

40

calculated Guidelines range.

[COURT] "All district courts are obligated to compute the correct guideline sentence and then use it as an actor. So we end up spending an awful lot of time in that regard, which I consider largely non-productive when I look at a statute that gives me as broad of a range as I have." [S. at 874]

[COURT] "But when I am faced with a crime of this seriousness, I do not consider very much the technical necessities of the Guidelines other than to determine the Guideline sentence as I must."
[S. at 934]

[COURT] "The sentence I will impose today is the sentence that I would impose had we not ever had [a] discussion of the guidelines and if we did not have the guidelines at all. But, I have fully and thoroughly considered all ramifications of the guidelines."
[S. at 932]

The court's comments roughly approach those of the sentencing court in United States v. Bonilla 524 F.3d 647 (5th Cir. 2008). However, in Bonilla, the court considered alternative guidelines ranges, and articulated reasons for rejecting both as being too high or too low. The court then applied individualized case-specific factors as required by §3553(a) to arrive at its sentence. In this case, taking the trial courts comments together, it is apparent that the trial

court simply went through the motions of calculating the guideline level and did not actually give any consideration to the Sentencing Guidelines as is required under 18 U.S.C. §3553(a)(4). Nor did the trial court fulfill the mandate of Gall by using the guideline level as a starting point and initial benchmark as a matter of administrative priority and to secure national consistency in sentencing. Gall v. United States [552 U.S. at 49]. Nor did the court "give serious consideration to the extent of any departure from the guidelines..." [Id. at 46]. Consequently, the sentence was procedurally flawed and an abuse of discretion. The sentence should be vacated and remanded.


ISSUE FOUR: THE TRIAL COURT FAILED TO CONSIDER DEFENSE ARGUMENTS.


A. Standard of Review

Regardless of whether the sentence is imposed inside or outside the guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. Gall v. United States 552 U.S. 38, 51 (2007).


B. Beyond the court blandly stating at the sentencing hearing, and in its written decision, that it had considered all of the §3553(a) factors, there was no indication that the court had actually and seriously considered any (let alone all) of the defendant's material, non-frivolous sentencing-disparity arguments, which were supported by sentencing data and case

42

examples. The appellant devoted substantial briefing to these
issues. [S. at 897-903 ] [Appellant's sentencing memorandum.
Id. 13-28]. [Appellant's arguments at S. 894-900]. Appellant
submitted highly relevant sentence commission data, presented
an argument on policy disagreement that he discussed in the
[Defendant Sentencing Memorandum Id. at 20], [Defendant
Supplemental Sentencing Memorandum"] ("There was no further
distinguishing between offenders regardless of criminal
history") and the following statements at sentencing.

   "The guidelines as they are written now were not developed
as guidelines are. They were developed in accordance with
Congressional mandate. There was no study or empirical studies
done to determine whether there was a need for the drastic
increase in the Guidelines. There were no hearings held to
take comment on why those should be increased. They were
simply done by Congressional fiat."
[S. at 898]


        Rita v. United States 551 U.S. 338; 168 L.Ed. 2d
203,218 (2007) says that, "Unless a party contests the
Guidelines sentence generally under §3553(a)--that is argues
that Guidelines reflect an unsound judgment, or, for example,
that they do not generally treat certain defendants
characteristics in the proper way--or argues for departure,
the judge normally need say no more." The same ruling also
dictates that a policy disagreement should, at least, be
mentioned.

        Appellant also quoted relevant cases, one of which
seemed very applicable in light of the age of the charges. [S.

at 899]. None of Appellant's cases were even mentioned,
although the Court did discuss the government's cases. [S. at
928].

Appellant's attorney asked the court to consider
sentences relevant to the time frame which Appellant's crimes
took place. [S. at 900]. There simply was no sentences as high
as Appellant's. United States v. Lente 647 F.3d 1021,1038
(10th Cir. 2011) said that, "the district court's failure to
address [defendant-appellant's] §3553(a)(6) sentencing-
disparity argument," was not harmless and so, "[w]e conclude
that this error requires reversal." See also, Gall v. United
States 552 U.S. at 50.

In Rita v. United States [551 U.S. at 356], the
Supreme Court mandated that, "The sentencing judge should set
forth enough to satisfy the appellate court that it has
considered the parties arguments and has a reasoned basis for
exercising his own legal decision making authority." Another
appellate court, in United States v. Merced 603 F.3d 203,215
(3rd Cir. 2010) held that, "it is not enough for the district
court to carefully analyze the sentencing factors. A separate
and equally important procedural requirement is demonstrating
that it has been done so." The appellate court in United
States v. Ausburn 502 F.3d 313,329 (3d Cir. 2007) said that,
"we have stated at least one concrete requirement to establish
that the sentencing court gave meaningful consideration to the
relevant §3553(a) factors: the court must acknowledge and
respond to any properly presented sentencing argument which
has colorable legal merit and a factual basis."

United States v. Harris 567 F.3d 846,854 (7th Cir.

2009) found that, "when a court has 'passed over in silence the principal argument made by the defendant even though the argument is not so weak as not to merit discussion,' we do not have the assurance we need to satisfy ourselves that the defendant's individual circumstances have been thoroughly considered."

When another trial court in the Fifth Circuit failed to mention the defense's §3553(a) arguments and provided no reasons for rejecting them, the government was forced to concede that this was plain error under both Rita and United States v. Mondragon-Santiago 564 F.3d 357 (5th Cir. 2009). United States v. Cantu-Ramirez 669 F.3d 619,630 (5th Cir. 6 Feb 2012). Since Appellant's sentence was nearly triple of the Top of the guidelines, rather than Cantu's bottom of the range one, the Appellant is entitled to resentencing in this matter.

ISSUE FIVE: APPELLANT'S SENTENCE WAS UNREASONABLE BECAUSE THE COURT FAILED TO ADEQUATELY EXPLAIN THE CHOSEN SENTENCE.

A. Standard of Review

Regardless of whether the sentence is imposed inside or outside the guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. Gall v. United States U.S. 38, 51 (2007).

B. The statement of reasons for the effective life sentence which represented 28 or more years over the maximum guideline

recommended sentence, on the 11 year old charges, where the
defendant had no relevant criminal history, and was
remorseful, signed a stipulation, and the court found that
there was no evidence of any wrong doing in the 10 years
following the offenses.

[Court]:"The court found the imposition of the sentence to be
reasonable based on the seriousness of the offense, the fact
that there was well over 2500 ongoing cases around the country
being circulated identified as the cxxxx series and over 700
ongoing cases being circulated identified as the txxx series.
The court also finds the defendant in need of sex therapy
which will afford adequate deterrence and provide the
defendant with needed correctional treatment."
[S. at 937]


     Six of the seven reason boxes were checked off.
Deterrence based on sex therapy can't really be a factor where
the sentence is life. Basing the sentence on the distribution
is far more puzzling, and in what manner the sentence was
arrived at wasn't specified. The defendant wasn't charged with
distribution, and each person that does distribute is
punished. According to guideline the sentencing commission
weighs distribution as 2 points on the Guidelines level.
Appellant did not challenge the authenticity of the statistics
at sentencing and the statistics from NCMEC are not self
Authenticating. See United States v. Baker 538 F.3d 324 (5th
Cir. 2008). Furthermore, §2251(a) is not the crime of
distribution.

Without some explanation of the details of the judges reasoning the sentence seems arbitrarily selected. United States v. Rhine 637 F.3d 525,531 (5th Cir. 2011) ("Sentence was arbitrarily selected.") United States v. Carter 564 F.3d 325 (4th Cir. 2009) (Remanded because sentence was arbitrarily selected.) "These reasons should be fact specific and include for example aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history, relevant conduct or other facts specific to the case at hand which led to the court to conclude that the sentence was fair and reasonable." United States v. Mares 402 F.3d 511, 519 (5th cir. 2005). "The barest application of a single §3553(a) factor did not qualify as adequately explaining the chosen sentence. Further supporting factors could not be discerned from the record."


ISSUE SIX: THE TRIAL COURT DID NOT CONFORM THE SENTENCE TO THE §3553 FACTORS:


A. Standard of Review

Regardless of whether the sentence is imposed inside or outside the guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. Gall v. United States U.S. 38, 51 (2007).


B. Judge Yeakel acknowledged that prior to the Appellant's arrest a decade had passed since the crimes occurred.

"And I recognize and will state on the record that, even though the evidence is these particular crimes were committed some years ago and there is no evidence of other crimes since then ..."

[S. at 936]

The prosecutor also knew the potential effect of long past isolated events when he went on a tirade, making a host of un-substantiated claims:

[PROSECUTOR] "There is no statement that he can make truthfully -- that either one of them can make truthfully that he didn't do anything constituting a sexual assault between then and now, because he can't say that. And when we get that hard drive decrypted, Judge, some day, justice will come around again."

[S. at 903]

Appellant's council asked the court to consider re-habilitation and pleaded:

[COUNSEL]: "And, certainly, the basic factors that we suggest to the court should be considered under §3553 are the length of time since these offenses have been committed., what Mr. Diehl has done with his life since the commission of these offenses...."

[S. at 900].

The significance of self instigated rehabilitation and

its relation to ex post facto is highlighted in the case
United States v. Robertson 662 F.3d 871,878 (7th Cir. 2011)
("Demonstrated self-motivated rehabilitation is direct and
relevant evidence of the need for the sentence imposed... to
afford adequate deterrence to criminal conduct; to protect the
public from further crimes of the defendant; [and to] provide
the defendant with needed educational or vocational
training...or other correctional treatment in the most
effective manner." 18 U.S.C. 3553(a)(2)(B)-(D)) warrants that
these factors receive consideration. In Robertson the court
stated, "The power of evidence of self-rehabilitation was
evident in Gall, where the Supreme court noted that it was
reasonable for the district court to attach "great weight to
the defendants decision to change his life and withdrawal from
a drug conspiracy, compared to a case where the offenders
rehabilitation occurred after he was charged with crime, the
district court here had greater justification for believing
[the defendants] turn around was genuine, as distinct from a
transparent attempt to build a mitigation case." [552 U.S. at
57]. "...such self-motivated rehabilitation lends strong
support to the conclusion that imprisonment [is] not necessary
to deter [a defendant] from engaging in future criminal acts."
Id at 59. "...the punishment should fit the offender and not
merely the crime" Pepper v. United States, 131 s. Ct at 1235,
quoting Williams 337 U.S. at 247.

Appellant as evidenced in the record, realized the
gravity of his conduct, and restored a normal relationship
with JD2 (who he corresponded with in a completely normal way
for years after the charged events.) "Something is considered

49

an "exceptional case" (worthy of a downward departure from the otherwise calculated guidelines) when the conduct represents an isolated incident which was voluntarily terminated by the defendant long before it was discovered by the authorities." -- United States v. Honken 184 F.3d 961 (8th Cir. 1999) and United States v. Baker 804 F.Supp. 19 (N.D. CA 1992) and Rachel A. Hill, Comment, CHARACTER, CHOICE and 'ABERRANT BEHAVIOR', ALIGNING CRIMINAL SENTENCING WITH CONCEPTS OF MORAL BLAME, 65 U. chi. L. Rev. 975,977 (1998) -- as cited in a pornography possession case in United States v. Grosenheider 200 F.3d 321,334 fn.16 (5th Cir. 2000).


ISSUE SEVEN: THE TRIAL COURT IMPOSED A SUBSTANTIVELY UNREASONABLE SENTENCE:


A. Standard of Review

         The substantial reasonableness of a sentence is reviewed under an abuse of discretion standard Gall v. United States, 552 U.S. at 51. Appellant objected at trial that the sentence was substantially unreasonable (S. 943). The court noted the objection and gave assurance to Appellant that the record was protected


B. Appellant's 600 months sentence of incarceration was 338 months longer than 262 months, the upper end of the range authorized by the November 1, 2000 version of the United States Guidelines used in this case. The decision in Booker making the guidelines advisory, in effect, raised the maximum sentences for the offenses from the top of the guideline range

50

to statutory maximum. Raising the maximum punishment ex post
facto violates the Due Process Clause of the United States
Constitution Amend V. United States v. Austin 432 F.3d
598,599-600 (5th Cir. 2005) however, holds that the statutory
punishment range provides sufficient notice of the potential
punishment so that the change in the application of the
sentencing guidelines from mandatory to advisory does not
implicate ex post facto prohibition embodied in the Due
Process Clause. In Austin the court held United States v.
Scroggins 411 F.3d 572,577 (5th Cir. 2005) controlled on the
ex post facto matter. In Scroggins however, the court wrote:


"Thus applying the third prong (of the plain error test),
the pertinent question is whether [defendant] demonstrated
that the sentencing judge - sentencing under the advisory
scheme rather than the mandatory one - would have reached a
significantly different result [quoting Mares].... Absent some
indication in the record that the outcome would have been
different if the district court had been operating under an
advisory system, a defendant fails to carry his burden of
demonstrating prejudice and therefore that the error affected
his substantial rights."


In Scroggins, the Appellant claimed adding
enhancements without a jury's decision on those matters was an
Apprendi violation. The current case is more clear cut because
the completed guideline calculation indicated clearly what
would have happened in the Pre-Booker mandatory scheme. There
were no grounds to depart up as was found by the court. [S. at

893]. In Miller v. Florida 482 U.S. 423 (1987) the court ruled that even though the original guidelines would have permitted an upward departure to 7 years based on "clear and convincing reasons" and based on factors not adequately considered by the guidelines, the use of the revised guidelines nonetheless violated the ex post facto clause because departures don't merely create "flexible guideposts", but instead created a "high hurdle that must be cleared before discretion can be exercised. In Austin, the defendant received a 24 month sentence, the low end of the guideline range, not 30 years over the maximum. In United States v. Portillo-Quenzada 469 F.3d 1345 (10th Cir. 2006) "We agree...where the defendants exposure to punishment has not changed, sentencing under Booker does not amount to ex post facto violation.") United States v. Lata 415 F.3d 107, 112 (1st Cir. 2005) ("Sentence didn't violate ex post facto because it wasn't wildly different from guideline.") The Guidelines themselves, (for the year 2000), embodied the principle of ex post facto. That principle was blatantly disregarded by the District Court.

"If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the EX POST FACTO clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."
(U.S.S.G. §1B1.11(b)(1) [2000])

In United States v. Davis 329 F.3d 1250,1254 (11th Cir. 2003) the court found with regard to when to run multiple

terms consecutive versus concurrent, "the guideline thus
speaks to an issue not directly addressed in the Sentence
Reform Act, and the guidelines mandate cannot conflict with
statutory silence. Just as in every other case, the district
court is obligated to follow the requirement of the
guidelines. U.S.S.G. Ch. 1, Pt. a.2 intro comment, ("Pursuant
to the [Sentencing Reform] Act, the sentencing court must
select a sentence from within the guideline range.")

United States v. Carroll 190 F.3d 290 (5th Cir. 1999)
provides a concrete example of what was most likely to have
happened to this Appellant prior to Booker, when §5G1.2 was
applied consistently. Prior to Booker 5g1.2 could only be
overcome with the "high hurdle" of a formal departure. United
States v. Williams 602 F.3d 313 (5th Cir. 2010) "Under United
States Sentencing Guidelines Manual §5G1.2(d) consecutive
sentences could only have been imposed to the extent necessary
to produce a combined sentence equal to the top of the
Guidelines range. Since no findings were made to support an
upward departure, and nothing indicated one would have been
imposed, it was reasonably probable that the sentence would
have been different absent the error. Resentencing was
required."

The only statement judge Yeakel made with regard to
the governments request for an upward departure in the PSR was
"that is customary for the probation department to give the
Court guidance if the Court determines to depart." Here the
court determined no basis to depart. The courts refusal to
honor the principle of ex post facto amounted to 30 or more
years of sentencing disparity from 1999 cases. The decision in

Booker caused Appellant a "significantly different sentence" and this error is plain.

In the case sub judice, Judge Yeakel based his decision, in part, on the analysis that production should be punished much more harshly than possession.

COURT: "I often remarked in sentencing hearings where the offense was merely the possession of pornographic materials how serious that I think that crime is because every depiction of child pornography starts with an abused child. And without a market for those materials, there would not be the abuse to children to continue to feed the market. Here we have gone beyond that..."

Judge Yeakel alluded that the guidelines didn't/don't represent proper sentences for §2251, and it seems his variance was in part based on that conclusion. In the year 2000 in the same courtroom United States v. Grosenheider 200 F.3d 321 (5th Cir. 2000) was decided where Judge Sparks explained, "It is clear that Congress established a series of distinctly separate offenses respecting child pornography, with higher sentences for offenses {200 F.3d 333} involving conduct more likely to be, or more directly, harmful to minors than the mere possession offense. Similarly, the guidelines clearly reflect consideration of whether and the degree to which harm to minors is or has been involved." United States v. Duhan 440 F.3d 711 (5th Cir. 2006) ("Thus, the district court's view that a sentence below Duhons guideline range may have been warranted because the law "doesn't make much of a distinction between possession of pornography and

solicitation of children for sex was incorrect.")

The above mentioned cases show clearly that in the time frame between 1999 to 2000, when appellant's crime was committed, the guidelines were followed, and respected by the 5th Circuit. Furthermore, the Court in the present case did not specify anything as aggravating or not "mine run".

In the case sub judice, the government in effect dared the court to seek 60, 200, or more years. [S. at 907]. The governments justification for the effective life sentence on the first time offender was: [S. at 908]:

[PROSECUTOR]: "He just deserves at least 60 years, 75 to 100 years would be more appropriate." (S. at 908)

Late in the sentencing hearing Judge Yeakel made the comment, "I find this to be a horrible offense." Appellant asks the Court, what crime involving children isn't "horrible". Isn't poisoning their brains with drugs horrible?, Stealing their parents entire savings?, Is it true that in sex cases the Guidelines didn't factor common circumstances? The current case has more mitigating circumstances than aggravating. The significant mitigating factor in the current case was the extremely short time span over which the acts occurred, and the fact nothing else reoccured.

Defendant asks this Court to consider United States v. Robertson 662 F.3d 871,880 (7th Cir. 2011) ("it is not apparent that the sentencing court considered the Robertson's unusually strong evidence of self-motivated rehabilitation over the past ten years.") The Robertson case gives practical

55

consideration to ex post facto, due process concerns.


ISSUE EIGHT: THE TRIAL COURT DID NOT ADEQUATELY CONSIDER ALL
SENTENCING OPTIONS AVAILABLE TO IT.


        The trial court did not consider the fact that a fine
only sentence was a valid option under the proper version of
the statute. United States v. Pabon-Cruz 391 F.3d 86 (2nd Cir.
2004) ("The applicable version of 2251(d) permitted a fine in
lieu of prison and warranted resentencing in light of that
construction.") At the time of Appellants conduct, 18 U.S.C.
§2251(d) provided in relevant part, that "any indivicual who
violates or attempts or conspires to violate, this section
shall be fined under this title or imprisoned not less than 10
years nor more than 20 years, and both". Although the
provision has since been changed, ex post facto considerations
require the trial court to consider the "fine only"
alternative -- for the §2251(a) charge -- something they did
not do. Therefore appellants case should be remanded for re-
sentencing so that the District court can fully explore this
option. Substantial restitution to the victims may make more
sense to the court given the facts of this case including a
decade went by with no further conduct, acceptence of
responsibility, remorse, and the fact Appellants own child was
left homeless as a result of the penalty imposed.



                          CONCLUSION

                              56

For good cause shown and in the interest of fairness and justice, Defendant-Appellant, David A. Diehl, respectfully requests that this Court dismiss this case because the statute of limitations was expired prior to his arrest and the State of Texas had jurisdiction. In the alternative, Mr. Diehl seeks resentencing and any and all other relief this Court sees fit to grant.

Respectfully Submitted,

xx January 2013

David A. Diehl, pro se

CERTIFICATE OF SERVICE & MAILING


I, David A. Diehl do hereby affirm that on April 10th, 2013 I mailed the seven copies of my direct appeal to this Court, and a true and correct copy to opposing counsel, the U.S. Attorney, by delivering each of them, with first class postage affixed and prepaid, to the prison legal mail staff.


VERIFICATION


I, David A. Diehl, do hereby affirm under penalty of perjury, as per 28 U.S.C. §1746, that all of this filing has been read and understood by me and that it is true and correct.


9 April 2013                     _David a Diehl_

                                David Andrew Diehl,

CERTIFICATE OF COMPLIANCE


Pursuant to 5th Cir. R. 32.2.7(c), Appellant proceeding Pro se certifies that this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1. Exclusive of thep ortions exempted by 5th Cir. R. 32.2.7(b)(3), this brief contains 12,189 words printed in a proportionally spaced typeface.

2. This brief is printed using the only typeface and font available by the equipment provided USP Tucson inmates

3. Pro Se Appellant understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking this brief and imposing sanctions against the person who signed it.


PRO SE

4-8-2013

Fed

CAPTA

L 13031   child Abuse Reporting

*Missing and Exploited Children: Background, Policies, and Issues*

deceive a minor into viewing material that is harmful to that minor.[19] As discussed below, NCMEC fields reports of sexual crimes against children through its CyberTipline, which includes eight categories that are mostly based on these federal criminal statutes. In addition, state and local law enforcement agencies have the authority to investigate these crimes because child sexual exploitation is generally outlawed in all 50 states and the District of Columbia.[20]

Title 42 provides two types of definitions related to child sexual exploitation. First, 42 U.S.C. Section 5101g, as enacted by the Child Abuse Prevention and Treatment Act (CAPTA, as amended), provides the minimum standards of child abuse—including child sexual abuse—that states must incorporate into their statutory definitions of child abuse and neglect in order to be eligible to receive funding under CAPTA.[21] According to CAPTA, the term "sexual abuse" includes "(1) the employment, use, persuasion, inducement, enticement, or coercion of any child to engage in, or to assist any other person to engage in, any sexually explicit conduct or simulation of such conduct for the purpose of producing a visual depiction of such conduct; or (2) the rape, and in cases of inter-familial relationships, statutory rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." Guardians of children under age 18 who are investigated for engaging in these acts or failing to adequately protect their children from such acts may be penalized under state civil and criminal procedures governing child abuse and neglect.

Second, specified crimes of sexual exploitation are defined under 42 U.S.C. Section 16911, as enacted by the Adam Walsh Child Protection and Safety Act of 2006 (P.L. 109-248).The law modified federal guidelines for state programs that require individuals convicted of crimes against children or sexually violent crimes to register his or her address.[22] Specified crimes of sexual exploitation requiring offender registration include criminal sexual conduct against a minor; solicitation of a minor to engage in sexual conduct; use of a minor in a sexual performance; solicitation of a minor to practice prostitution; video voyeurism (such as watching a child on a web-cam); possession, production, manufacture, and distribution of child pornography; criminal sexual conduct involving a minor or the use of the Internet to facilitate or attempt such conduct; and any conduct that by its nature is a sex offense against a minor.

## Incidents of Child Sexual Exploitation

The true number of sexual exploitation incidents—whether they accompany missing children cases or not—is unknown because this type of abuse often goes undetected. In addition, studies of child sexual exploitation report varying numbers because of differences in their methodology, the time periods in which the data were collected, and differences in how exploitation is defined.

---

[19] Most federal criminal statutes on child sexual exploitation are in Chapters 71, 77, 109A, 109B, 110, and 117 of Title 18 of the U.S. Code. For further information about select offenses, see CRS Report R42132, *Sexual Abuse of Children: Federal Criminal Offenses*, by Richard M. Thompson II.

[20] National District Attorneys Association, National Center for Prosecution of Child Abuse, "NCPCA State Statues," http://www.ndaa.org/ncpca_state_statutes.html. See statues pertaining to child pornography, prostitution of children, child protection, sexual offenses, and trafficking.

[21] U.S. Department of Health and Human Services, Child Welfare Information Gateway, *Definitions of Child Abuse and Neglect: Summary of State Laws*, http://www.childwelfare.gov/systemwide/laws_policies/statutes/define.pdf.

[22] This program was originally created under the Jacob Wetterling Crimes Against Children Act and Sexually Violent Offender Registration Act, codified at 42 U.S.C. §14701 (Title XVII of the Violent Crime Control and Law Enforcement Act of 1994, P.L. 103-322).

H13592 CONGRESSIONAL RECORD—HOUSE *November 13, 2007*

The court held that this phrase, "in commerce," meant that Congress intended that the contraband had to actually cross State lines. Had the statute instead used the phrase "in or affecting interstate commerce," the court held, the conviction would have been upheld, as that phrase is well understood as reflecting Congress' intent to use the full reach of its constitutional commerce clause power.

H.R. 4120 makes clear that the Congress intends that the prohibitions against child pornography reach the full extent of its constitutional authority. And as hearings in the Judiciary Committee hearing demonstrated, the child pornography business is no respecter of national or international borders. Even conduct that may appear to be wholly localized in its manifestation can nevertheless have an unmistakable effect in interstate commerce.

So let there be no mistake that Congress intends to use its full commerce clause authority to reach activities concluded by this odious business. And we want to make it so clear that even the 10th Circuit Court of Appeals cannot be mistaken by that.

And so I urge my colleagues to fully support this bill, as I expect that they will.

Mr. Speaker, I reserve the balance of my time.

Mr. GOODLATTE. Mr. Speaker, I yield myself such time as I may consume.

Mr. Speaker, I rise in support of H.R. 4120, the Effective Child Pornography Prosecution Act of 2007.

This bill responds to a recent decision by the 10th Circuit United States Court of Appeals in United States v. Schaefer, in which the court ruled that the transmission of child pornography on the Internet did not satisfy the interstate requirement in child pornography laws.

The proposed legislative fix will allow the government to satisfy the interstate requirement by proving beyond a reasonable doubt that the material moved in or affected interstate foreign commerce, which would expand the jurisdiction to prosecute these crimes when the Internet is used. This is the broadest assertion of interstate commerce power that the Congress can make consistent with the Constitution.

Unfortunately, this bill, and the majority's package of bills, does not include a needed modification to existing law which would require a 2-year mandatory minimum for possession of child pornography. At an October 17, 2007, full committee hearing on the subject, the Justice Department witness outlined why such a measure was needed. Deputy Assistant Attorney General, Laurence Rothenberg, explained that child pornography fueled the victimization of children and led to sexual assaults against children. He also noted that Federal judges were routinely giving out lenient sentences to child pornographers below levels established by the Federal sentencing guidelines.

While the fix proposed today in H.R. 4120 is a good step forward, it is a limited step in comparison to other measures that are needed, including a mandatory minimum for child pornography crimes.

Mr. Speaker, I reserve the balance of my time.

Mr. CONYERS. Mr. Speaker, I want to again extend my compliments and express my gratefulness to the gentleman from Virginia for his support on this measure. And as usual, he points out perhaps small items that only a person with his experience would want to bring to the attention of the Members of the House.

The author of this bill is NANCY BOYDA of Kansas, our distinguished colleague, to whom I am proud to yield as much time as she may consume.

Mrs. BOYDA of Kansas. Mr. Speaker, the Department of Justice estimates last year that one in five children between the ages of 10 and 17 had received a sexual solicitation or approach while they were using the Internet. With so many threats out there, Congress must provide a unified message that we, as a society, together, will stand strong for Internet safety.

What we will do today is good; it's very good. We will pass five pieces of legislation that will help keep our children safe. And I'm so proud that my legislation, H.R. 4120, the Effective Child Pornography Prosecution Act of 2007, is going to be part of that message.

☐ 1700

In September of this year, a man that I am sorry to say was from Kansas, William Schaefer, was found guilty of both "knowingly receiving", and "knowingly possessing" child pornography that had "been transported in interstate commerce, by any means including by computer." Sadly, the 10th Circuit Court of Appeals overturned the decision and that offender was acquitted. The Court ruled that just because images are obtained on the Internet doesn't mean that they were necessarily transmitted across State lines. The Court essentially then asked Congress to clarify its intent that the Internet is, in fact, interstate commerce, and we will do that with the passage of the Effective Child Pornography Prosecution Act of 2007. This legislation closes the judicial loophole that allowed a guilty man who hurt our children and was allowed to go free.

As concerned citizens, as parents, and as Members of Congress, Mr. Speaker, we must do all that we can to keep our children safe. That means we must make a commitment to being tough on crime, and to make sure those who violate the law are fully prosecuted, to ensure that the law is so clear that it deters such heinous crimes from ever happening again.

Mr. GOODLATTE. Mr. Speaker, I yield myself 30 seconds to thank the chairman of the Judiciary Committee for his gracious comments regarding

my involvement on issues related to the Internet, particularly as it relates to fighting child pornography, but also to point out that a mandatory minimum sentence of 2 years for these child pornographers is not a small thing. What is a small thing are the sentences that many judges unfortunately are imposing upon child pornographers much, much less than 2 years, and a mandatory minimum sentence would go a long way towards curing this problem and keeping more of these pornographers off of the Internet.

Mr. CONYERS. I couldn't agree with the gentleman more.

Mr. GOODLATTE. I thank the chairman.

It is now my pleasure to yield for such time as she may consume the gentlewoman from Illinois (Mrs. BIGGERT) who has been a leading advocate on this issue and a strong supporter of this legislation.

Mrs. BIGGERT. I thank the gentleman for yielding.

Mr. Speaker, I rise today to express my strong support for H.R. 4120, the Effective Child Pornography Prosecution Act. I am very pleased to be the lead Republican cosponsor, and I thank the gentlewoman from Kansas for all of her hard work, but I am proud to be part of this important bill which will close an unacceptable loophole in the Federal criminal code.

As my colleagues have already pointed out, the U.S. Court of Appeals for the 10th Circuit handed down a decision this year which freed a defendant who had been convicted of receiving and possessing child pornography. The case of U.S. v. Schaefer was not overturned for lack of evidence but rather because the prosecution failed to prove that images downloaded from the Internet moved across State lines in "interstate commerce."

The judges who decided this case pointed out that the use of the phrase "in commerce" instead of "affecting commerce" in the law signaled Congress' intent to limit Federal jurisdiction in the prosecution of child pornographers. As cochair of the Missing and Exploited Children's Caucus, I can assure you, Mr. Speaker, nothing could be further from the truth. We in Congress know the horrible consequences that result from the sexual exploitation of children used to create these images. We also take very seriously our duty to do everything in our power to protect children, punish predators and deter future acts of abuse.

That is why the bill we are considering today deserves our full support. It will close the loophole in current law by replacing the phrase "in commerce" with the phrase "affecting commerce" in the child pornography statute. It classifies the intent of Congress and will ensure that predators that use the Internet to transmit child pornography end up behind bars where they belong.

I would like to take this opportunity to again thank the gentlewoman from Kansas, my good friend, NANCY BOYDA,

Mr. KYL. Mr. President, I rise today to comment on the Adam Walsh Child Protection and Safety Act. This legislation will create a national sex offender registry that will make it possible for law enforcement and concerned citizens to track sexual predators. The bill also includes tough penalties that will ensure that these individuals will actually register. There currently are over 100,000 sex offenders in this country who are required to register but are "off the system." They are not registered. The penalties in this bill should be adequate to ensure that these individuals register. In addition to allowing up to 10 years in prison for an offender who fails to register, the bill also imposes a mandatory 5 years in prison for an offender who has neglected his obligation to register and commits a crime of violence.

I would like to focus my remarks on legislation that I have introduced that has been incorporated in this final bill. I am particularly pleased to see that the bill maintains the ChildHelp, National Registry of Cases of Child Abuse and Neglect. Section 663 of the bill instructs the Department of Health and Human Services to create a national registry of persons who have been found to have abused or neglected a child. The information will be gathered from State databases of child abuse or neglect. It will be made available to State child-protective-services and law-enforcement agencies "for purposes of carrying out their responsibilities under the law to protect children from abuse and neglect." The national database will allow States to track the past history of parents and guardians who are suspected of abusing their children. When child-abusing parents come to the attention of authorities—when teachers begin to ask about bruises, for example—these parents often will move to a different jurisdiction. A national database would allow the State to which these parents move to know the parents' history. It will let a child-protective-services worker know, for example, whether he should prioritize investigation of a particular case because the parent has been found to have committed substantiated cases of abuse in the past in other States. Such a database also would allow a State that is evaluating a prospective foster parent or adoptive parent to learn about past incidents of child abuse that the person has committed in other States.

I am also proud to see that the Internet SAFETY Act, which I introduced with several colleagues earlier this year, has been incorporated as title VII of this bill. This title includes the following important provisions:

Section 701 makes it a criminal offense to operate a child exploitation enterprise, which is defined as four or more persons who act in concern to commit at least three separate violations of Federal child pornography, sex trafficking, or sexual abuse laws against multiple child victims. This of-

fense is punished by imprisonment for 20 years up to life.

Section 702 provides that if an individual who is required to register as a sex offender under Federal or State law commits specified Federal offenses involving child pornography, sex trafficking, or sexual abuse against a minor victim, the offender shall be imprisoned for 10 years in addition to any penalty imposed for the current offense.

Section 703 makes it a criminal offense to embed words or digital images into the source code of a Web site in order to deceive people into viewing obscenity on the Internet. Offenses targeting adults are subject to up to 10 years imprisonment; offenses targeted at child victims are subject to up to 20 years imprisonment.

Section 704 authorizes appropriations for the U.S. Attorney General to hire 200 additional Assistant United States Attorneys across the country to prosecute child pornography, sex trafficking, and sexual abuse offenses targeted at children.

Section 705 authorizes appropriations for the hiring of 30 additional computer forensic examiners within the Justice Department's Regional Computer Forensic Laboratories, and 15 additional computer forensic examiners within the Department of Homeland Security's Cyber Crimes Center. The additional computer forensic examiners will be dedicated to investigating crimes involving the sexual exploitation of children and related offenses.

Section 706 authorizes the Office of Juvenile Justice and Delinquency Prevention to create 10 additional Internet Crimes Against Children, ICAC, Task Forces.

Finally, section 707 of the Internet SAFETY title expands the civil remedies for sexual offenses by allowing the parents of a minor victim to seek damages, and by allowing a minor victim to seek damages as an adult.

Title II of today's bill also includes a number of penalty increases and other improvements to Federal criminal sex offenses. Many of these provisions appeared in the Internet SAFETY Act, as well as in the Jetseta Gage Act, which was introduced by Senator GRASSLEY in 2005 and of which I was an original cosponsor. Section 211 suspends the statute of limitations for all Federal felony offenses of sexual abuse, sex trafficking, or child pornography. Other provisions of title II increase penalties for coercion and enticement by sex offenders, conduct relating to child prostitution, aggravated sexual abuse, sexual abuse, abusive sexual contact, sexual abuse of children resulting in death, and sex trafficking of children. Title II also makes sexual abuse offenses resulting in death eligible for the capital punishment, and expands the predicate offenses justifying mandatory repeat-offender penalties for offenses involving child pornography and depictions of the sexual exploitation of children. Finally, title II

adds sex trafficking of children to the set of repeat offenses that are subject to mandatory life imprisonment.

Another provision that I have pursued during this Congress and that is included in this final bill is section 212, which extends several of the guarantees of the 2004 Crime Victims' Rights Act to Federal habeas corpus review of State criminal convictions. Because such cases involve Federal courts but State prosecutors, this extension is limited to those provisions of CVRA that are enforced by a court—Congress cannot compel State prosecutors to enforce a Federal statute. The victims' rights extended by section 212 to Federal habeas proceedings are the right to be present at proceedings, the right to be heard at proceedings involving release, plea, sentencing, or parole, the right to proceedings free from unreasonable delay, and the right to be treated with fairness and with respect for the victim's dignity and privacy.

The bill also makes some technical improvements to the DNA Fingerprint Act, which Senator CORNYN and I introduced last year and which was enacted into law as an amendment to the reauthorization of the Violence Against Women Act at the beginning of this year. Section 155 of today's bill modifies the authority granted to the Federal Government by the DNA Fingerprint Act to collect DNA samples from Federal arrestees. Under current law, the Federal Government may collect a DNA sample from any person arrested for a Federal offense, but the authority to collect DNA from persons convicted of a Federal offense is limited to felonies and certain misdemeanors. Section 155 corrects this anomaly by including convictions in the Federal sample-collection regulatory authority, thus allowing the Federal Government to collect DNA from all persons convicted of a Federal crime. The 2006 Act also allows DNA to be collected from all arrestees, but in the case of persons detained under Federal authority this authority is limited to non-U.S. persons—i.e., foreign visitors who are neither U.S. citizens nor permanent residents. Problems might arise in the case of U.S. persons who are detained and facing Federal criminal charges, but who were not arrested by Federal authorities. Examples include persons who are being prosecuted federally but were arrested by the State officers participating in a joint Federal-State task force, and persons who turn themselves in to Federal authorities without being formally arrested. Arguably, the 2006 act's arrest authority should extend to such individuals—they are constructively arrested. Section 155 eliminates any ambiguity and possibility of litigation over these matters by expressly granting the Federal Government the authority to collect DNA samples from individuals facing Federal charges.

Finally, I would like to take a moment to recognize all of the staff who worked so hard to see this bill through to completion. Please allow me to

Some *Weln+*
*Befo[r]e*



Exhibit 3

The trial record shows that the offenses allegedly occurred in the summer of 2001. In the indictment, the offenses are alleged to have occurred "in or about 2001". Docket No. 1. At trial, each of the alleged victims testified that the incident occurred in the summer, as the incident took place when the two alleged victims were swimming in a children's pool in the defendant's yard. Also, in the final jury instructions at trial, the jury was instructed: "The offense of sexual exploitation of a minor...has four *4 essential elements, which are: One, in or about 2001..." See, Document No. 80, p. 12, Instruction Nos. 11,12,14, and 15. Pursuant to the indictment, jury instructions, and the evidence presented at trial, the offenses occurred in the summer months of 2001, perhaps in late May, June, or up until July 26, 2001. The limitations set forth in Section 3299 would therefore not apply.

The defense concedes that there is a low probability that the alleged offenses could have occurred after July 27, 2001, or into August 2001.[3] However, as the United States Supreme Court noted in the landmark case dealing with the application of the statute of limitations, "... [W]e have stated before 'the principle that criminal limitations statutes are to be liberally interpreted in favor of repose'.". *Toussie v. United States*, 397 U.S. 112,114-15, 90 S.Ct. 858 (1970) (Supreme Court reverses conviction of failing to register for draft, pursuant to statute of limitations defense).

They know    ✱ ✱ ✱

☆ The government recognizes that it has a significant problem with the statute of limitations. If the offenses occurred on July 26, 2001, or before,  *5  the charges should have been dismissed pursuant to a timely motion to dismiss. So, the government now argues to this Honorable Court that the offenses occurred later than July 26, 2001, and into summer of 2002. See, Gov't. Brief at 12 ("Therefore, the record shows the offenses occurred in or between the summer of 2001 and the summer of 2002").

Importantly, the government in its appellate brief did not advise this Honorable Court that the government had unsuccessfully made a similar argument to the district court. At the defendant's sentencing hearing, a critical issue was whether the defendant's offenses occurred on or after November 1, 2001. The date of the offense was critical because a United States Sentencing Guideline enhancement, set forth in USSG Section 4B1.5(b)(1), went into effect on November 1, 2001. The government asked the district court to find the offenses occurred on or after November 1, 2001, so that the defendant would have been subject to the five level enhancement set forth in USSG Section 4B1.5(b)(1). See, Sentencing Transcript, pp. 12-15, 19-22 (arguments by prosecutor that offense conduct continued after November 1, 2001, into 2002).

The district court, the Honorable Chief Judge Linda R. Reade, summarily dismissed the government's arguments. Chief Judge Reade stated:

> *6  What we had during the trial was evidence of an attempt at least to make child pornography. There was sufficient evidence to sustain the verdict on the attempt, but I would really have to stretch to find that this conduct extended beyond the 2001 summer. I just -- I can't do it. I would be speculating without any basis for doing so. So I do find that the argument that 4B1.5(b)(1) should not be applied is a persuasive argument...

Sentencing tr. at 22-23. Chief Judge Reade held, as a finding of fact, that the alleged criminal conduct did not extend beyond the summer of 2001.

Despite the district court's finding of fact, the government again asks this Honorable Court to find the alleged offenses were committed after July 26, 2001, and into the summer of 2002. The government does so because it is the only way in which the extended statute of limitations would save the instant case. Said request should be denied.

Appellate review of a district court's factual findings is for "clear error". See, *United States v. Hatchett*, 677 F.3d 984 (8th Cir. 2010). In its appeal brief, the government does not argue that Chief Judge Reade committed clear error. The government simply repeats its argument that the trial record supports a factual finding that the offenses occurred "between the summer of 2001 and the summer of 2002". Gov't. Brief at 12. The government cites the inconsistent testimony of alleged victims K.C. and S.Z. *Id.* The government also seeks to diminish the testimony of K.C., explaining  *7  that "the prosecutor mistakenly said her age was 'five or six' " during K.C.'s trial testimony. *Id.*

Study 1 FootCMEC
DOJ & CMEC

because investigators have been in the forefront of identifying and combating these crimes and were the best sources of accessible, in-depth information about them. More details about instrumentation and sampling and weighting procedures are available in the N-JOV Study Methodology Report, available online at www.unh.edu/ccrc.

## Subsample used in this paper

Internet sex crimes against minors include a diverse range of offences. The subsample examined in this paper comprises crimes against identified victims that involved CP production (n = 122, weighted n = 402). In 22 per cent of these crimes, offenders met identified victims online (n = 26, weighted n = 89). In 73 per cent, offenders used the Internet to facilitate sex crimes against victims who were family members or face-to-face acquaintances of the offenders (n = 93, weighted n = 291). Offenders who were strangers to their victims committed a small number of the crimes (5 per cent, n = 3, weighted n = 22). All of the offenders produced CP, and many of them committed other sexual offences as well.

  We refer to the alleged perpetrators as 'offenders,' however, not all were convicted. At the time of data collection, 83 per cent of offenders had pled guilty or been convicted; charges had been dropped for 1 per cent, 2 per cent were dead or missing and case outcomes were pending or unknown for 13 per cent.

## How we defined child pornography and CP production

In the United States, there is no simple, straightforward definition of child pornography. Statutes defining CP differ among states and between state and federal jurisdictions. Federal statutes define 'child' as a youth age 17 or younger, and child pornography as the 'visual depiction . . . of sexually explicit conduct' (18 USCS 2256). The statute describes sexually explicit conduct as including sexual acts such as intercourse, bestiality, and masturbation, as well as 'lascivious exhibition of the genitals or pubic area'.

  The US Supreme Court has defined 'lascivious exhibition of the genitals or pubic area' broadly to include images of minors that focus on the genitals of children even when wearing clothing (US v. Knox, 1994). For example, sexually suggestive pictures that focus on the genitals of minors wearing swim suits or leotards can be child pornography. At the same time, photos of nude minors that show their genitals, but do not focus on them are not child pornography if the images do not constitute a 'lascivious exhibition'. Many state laws are modelled after the federal statutes and have 'lascivious exhibition' provisions, but some states have different standards. Also, some state laws define 'child' as a youth younger than 16 or 17. These legal decisions and statutory proscriptions mean that images do not have to depict sexual activity, child sexual abuse, nudity or children under the age of consent to qualify as child pornography, so in the United States, child pornography is not synonymous with child sexual abuse.

  For the N-JOV Study, we wanted to collect data on the full range of picture taking that might constitute CP production, so we defined CP production broadly to encompass any picture taking of a person younger than 18 that was at least sexually suggestive.

Sexual Exp. is not Sexual Abuse

**

{377 Fed. Appx. 584} PER CURIAM.

During the 1990s, John William Gool, Jr., lived next door to his sister-in-law and her family in Clinton, Iowa. While his sister-in-law's family was on a vacation, Gool surreptitiously installed a video camera in their residence and connected the camera to his house through a coaxial cable. Gool used the camera to videotape his sister-in-law and her children undressing outside their basement shower. Gool recorded dozens of such videos over a period of several years and converted some of the recordings to digital format. Gool and his wife divorced in 2004. In 2006, Gool's former wife found a videotape showing A.R. and K.R., two of her sister's daughters, getting in and out of the shower. She showed the videotape to A.R. and K.R., who then contacted the police. A search of Gool's house revealed a cache of videotapes recorded by Gool's hidden camera and more than sixty thousand images of child pornography stored on a computer.

A federal grand jury indicted Gool on two counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) (Counts I and II), one count of receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count III), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count IV). Following his indictment, Gool filed a motion to dismiss Count I, arguing that it was barred by the five-year statute of limitations {377 Fed. Appx. 585} set out in 18 U.S.C. § 3282(a). In particular, Gool alleged that A.R. had stated to law enforcement officers that she was wearing braces in the relevant videotapes and that her braces were removed in 1996, when she was fourteen. Gool further alleged that K.R. had told the police that all of the videotapes in which she appears show her without a navel piercing, which she obtained before her seventeenth birthday on July 10, 2001. Gool argued that because he was not indicted until July 11, 2006, all of the conduct charged in Count I took place outside of the five-year limitations period.

Noting that Gool had made a "logical argument concerning a violation of the statute of limitations," the district court 2 ordered the Government to identify the specific videotapes on which it intended to rely to prove the allegations charged in Count I of the indictment. 3 Before the Government responded to this order, Gool and the Government negotiated a plea agreement. Under the agreement, Gool agreed to plead guilty to Counts III and IV and waive his right to appeal his sentence, and the Government agreed to move to dismiss Counts I and II. Gool pled guilty to Counts III and IV on April 24, 2007.

Before sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR reported that A.R. and K.R. had made statements to law enforcement officials that were substantially similar to the statements Gool alleged in his motion to dismiss. The PSR also identified dental records confirming that A.R.'s braces had been removed more than five years before Gool was indicted. Gool's attorney did not seek to withdraw Gool's guilty pleas after reviewing the PSR. On April 18, 2008, the district court sentenced Gool to 220 months' imprisonment on Count III and 120 months' imprisonment on Count IV, ordering the sentences to be served concurrently. On the Government's motion, the district court then dismissed Counts I and II.

The Supreme Court issued three significant sentencing decisions during the period between Gool's guilty pleas in April 2007 and his sentencing in April 2008: Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007), Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007), and Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007). After his sentencing, Gool appealed, challenging the reasonableness of his sentence in light of Rita, Gall, and Kimbrough. The Government moved to dismiss Gool's appeal, arguing that the appeal waiver prohibited Gool from appealing his sentence. We granted the Government's motion

A08CASES

1

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Ex̲h̲ib̲i̲t̲ ̲5̲   2

and dismissed Gool's appeal. *United States v. Gool* No. 08-2135, 2008 U.S. App. LEXIS 28056 (8th Cir. Aug. 6, 2008) (unpublished order).

Gool then filed a counseled motion to vacate, correct, or set aside the sentence under 28 U.S.C. § 2255. Gool argued that the prosecutor's failure to disclose that the conduct alleged in Counts I and II took place more than five years before Gool was indicted amounted to prosecutorial misconduct. Gool also argued that his defense attorney was ineffective for failing to "move to reform or withdraw the plea agreement or the guilty plea itself." Gool {377 Fed. Appx. 586} maintained that on reviewing the PSR his attorney should have recognized that the district court would have dismissed Counts I and II on statute of limitations grounds even without the Government's motion and that Gool therefore received no consideration in exchange for agreeing to waive the right to appeal his sentence. Consequently, Gool argued that his attorney should have "move[d] to withdraw the appeal waiver in order to preserve [Gool's] right to appeal the sentence" under *Rita, Gall,* and *Kimbrough.* The district court denied Gool's motion but granted Gool a certificate of appealability on his ineffective assistance of counsel claim.

*pros. Not Misconduct*

In his briefs on appeal, Gool focuses almost exclusively on his prosecutorial misconduct claim. We will not consider this issue, however, because "[w]e limit our appellate review to the issues specified in the certificate of appealability." *See Harris v. Bowersox,* 184 F.3d 744, 748 (8th Cir. 1999). In fact, we specifically denied Gool's motion to expand the certificate of appealability to include his prosecutorial misconduct claim, and we are troubled by his attempt to resurrect it.

The discussion of ineffective assistance of counsel in Gool's briefs essentially is limited to the following sentence: "If Attorney Treimer had taken steps to expose the running of the five-year limitation, Mr. Gool could have pled open to Counts Three and Four, or entered a plea agreement to those counts that did not require an appeal waiver." From this statement, we discern that Gool does not want to go to trial on Counts III and IV. Rather, Gool seeks to plead guilty to those counts without waiving his right to appeal so that he can then challenge the reasonableness of his sentence in light of *Rita, Gall,* and *Kimbrough.* The basis on which he seeks to obtain this relief is less than clear from his briefs. As best we can tell from his § 2255 motion, Gool's theory is that his attorney was ineffective for failing to move to withdraw Gool's guilty pleas to Counts III and IV before sentencing because the dental records identified in the PSR supported his motion to dismiss Counts I and II. Gool's argument is premised on the assumption that the district court would have inevitably dismissed Counts I and II, which purportedly leads to the conclusion that Gool received no consideration in exchange for waiving his right to a direct appeal.

"We review the district court's denial of § 2255 relief de novo." *United States v. Davis,* 508 F.3d 461, 463 (8th Cir. 2007) (citing *Williams v. United States,* 452 F.3d 1009, 1012 (8th Cir. 2006)). To prevail on his ineffective assistance of counsel claim, Gool must establish that his attorney's performance was deficient and that he was prejudiced by this deficient performance. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We turn first to his attorney's performance.

"Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories." *Lyons v. Luebbers,* 403 F.3d 585, 594 (8th Cir. 2005) (quoting *Foster v. Lockhart,* 9 F.3d 722, 726 (8th Cir. 1993)). In reviewing counsel's performance, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound strategy.'" *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).

A08CASES

2

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

On February 9, 2007, Gool's trial counsel, David Treimer, filed a motion to dismiss count one on the basis that it was time-barred by the statute of limitations. He later informally amended that motion to include count two. On March 27, 2007, the Government responded, "According to Detective Brian Pohl, some of the videotapes made by Gool depict AR when she was seventeen years of age which is within the statute of limitations." (Gov. Resp. at 5). On March 28, 2007, the court ordered the Government to "identify precisely the videotape or videotapes that it intends to rely upon at the time of trial to support Count 1 of the Indictment." (3:06-cr-544, dkt. 37 at 1). The order became moot when Gool agreed to plead guilty, dismissing counts one and two. According to an affidavit by Mr. Treimer, Assistant United States Attorney Clifford Cronk contacted him on March 28, 2008, offering the plea agreement. Mr. Treimer states that Mr. Cronk offered the plea agreement because Mr. Cronk "did not want to put the victims of the videotaping on the witness stand to 're-live' their trauma in a hearing to defeat the Motion to Dismiss." (4:09-cv-145, dkt. 1 at 4). On April 24, 2007, Gool entered a guilty plea and plea agreement. As agreed, the plea agreement dismissed counts one and two.

In December 2007, the first draft of the pre-sentence investigation report ("PSIR") was disclosed. The PSIR discussed police interviews with the victims in which the victims indicated the age when the videos were taken. (PSIR at 6, P 11). Specifically, victim AR stated the tape was taken before she turned seventeen. Victim KD indicated that the tape was taken while she had braces. According to the PSIR, KD wore braces between 1997 and 2000. A list of dental appointments included in the discovery materials shows that KD's braces were removed on February 14, 2000. In his affidavit, Mr. Treimer stated this was the first he learned of this information when he received a draft of the presentence investigation report. In an email received following the hearing, Mr. Treimer now recalls seeing the list of dental appointments in the discovery materials.

Gool appealed his sentence to the Eighth Circuit Court of Appeals, filing a notice of appeal on April 28, 2008 (3:06-cr-544, dkt. 73). The Eighth Circuit Court of Appeals dismissed his claim without comment on August 6, 2008. United States v. Gool. No. 08-2135 (8th Cir. Aug. 6, 2008). Gool sought rehearing which was denied on September 17, 2008.

Gool brought the present § 2255 action on April 9, 2009, arguing that AUSA Cronk engaged in prosecutorial misconduct by failing to disclose the victims' statements to police. Gool also alleged ineffective assistance counsel because his counsel failed to object to the first draft of the PSIR and failed to withdraw Gool's guilty plea before sentencing. On May 19, 2009, this court issued an initial review order, directing the Government to file a response by June 1, 2009 (dkt. 3).

On June 1, 2009, the Government filed a motion to dismiss Gool's § 2255 Motion (dkt. 4). In its motion, the Government contends that (1) based on his own statements and representations, Mr. Treimer knew about the girls' statements to police; (2) the statements were included in the discovery file; and (3) regardless, the statute of limitations for sexual crimes against children is the life of the child or ten years after the crime, whichever is later.

## CONCLUSIONS OF LAW

### Standard Under 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 states in pertinent part:

A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case: 11-51076    Document: 00512191909    Page: 78    Date Filed: 03/29/2013

Case 1:10-cr-00297-LY    Document 218-5    Filed 12/05/16    Page 79 of 83

THE LEGACY OF LORDS: THE NEW FEDERAL..., 14 UCLA Ent. L. Rev....

*Exhibit 6*

the scant evidence Plaintiffs have produced is insufficient for any reasonable fact-finder to find a reasonable probability of harm from the required disclosures. Therefore, summary judgment is appropriate on these claims."[117]

In this section, members of the industry discuss Section §2257's impact on privacy. *Caused by transmit.*

*Found in other state*

JEFFREY DOUGLAS: Think of the Webcam people. They're operating the entire business out of their home. They're an independent contractor that has signed a contract that was e-mailed to them. They own the equipment themselves and the only deal is that their feed goes to some server somewhere that puts it out and makes it available to someone - or lots of people - targeted in one part of the world or all over the world. Assuming that they fall within 2257, their place of business is their home. They would have to rent a separate business location and operate some business out of that location in order for their home not to be disclosed to all of the people they are "Webcaming" to if any part of it is recorded. If it's recorded, that's where the label has to come up and that is a severe deterrent.

*Transmit not covered*

*195 The public issue is a real problem. One of the difficulties that one has when one is familiar with the adult culture - different from one that is looking at it from the outside - is this: From the outside, the notion that someone who performs sex on camera or performs nude while doing their vacuuming has a sense of - yet alone a right to - privacy seems absurd. But that's not the case. They're like everyone else, and they have zones of privacy and zones of public life. If you look at Hollywood, even the most aggressive, self-promoting, famous-for-being-famous personalities want, expect and are legally entitled to a zone of privacy. Now, for some of them that zone of privacy might be the size of a quarter, but not for most. Even those that have it the size of a quarter, they are entitled to have that.

So, if a person is making a living and not going on welfare, not prostituting themselves or not doing something else that's illegal, they're still entitled to privacy. By virtue of the fact that they wash their dishes and do their vacuuming naked with a camera, they shouldn't have to share personal information, if they don't want to, with their neighbors or their parents. They should be able to use an alias and not disclose. 2257 violates and intrudes upon that overwhelmingly.

Here's a specific example. I got a call on the eve of the finality of the regulations from a woman who had a prominent husband in a high-profile profession in a large community. She was in her mid-forties. They had been married for twenty years. He was aware of the fact that she had this Webcam life, which he found to be perfectly acceptable and enjoyable. But they went to professional dinners and they were on public committees. Still, no one had yet connected her stage name to her and she didn't think it was terribly likely that it would ever come up. But if she was required to put her home address and the legal name - first initial, last name - that would blow her cover. She had, essentially, three choices: Eliminate her privacy zone, stop doing what she was doing or break the law by having her records kept at a place that was not realistically a place of her business. She opted for the third choice. That is not an appropriate set of choices that people have to make. I have spoken to others who weren't already neck deep in the business when they had to make the choice, but given the choices they had to make, they opted not to engage in constitutionally protected legal behavior of being a Webcam performer.

STEVE ORENSTEIN: There was one particular thing brought up at that [FBI] meeting about having to give out personal information with all this stuff about primary and secondary producers. If someone opens up a Web store out of his house, then he now has an online store *196 and he is scanning our sleeves to upload for the images on the site. He's now a secondary producer and he needs to have our paperwork. So, here's just some random guy, who starts his own little online store, and now we're supposed to send him the girls' IDs, with all of their home information, addresses and other things. When [Agent Joyner] was here, he said, "You know what, I'm OK with you redacting that information. I'm OK with that."

But if our obligation is to make that material available to the Web store owner, we can't turn him down, if he has our stuff out there. And who is he?

JULIE RUSSELL: When the new regulations went into effect in 2005, we uploaded all of our files. But before I put them online for anyone to be able to look at, I redacted personal information like social security numbers, home addresses and phone

Exbt 7

UNITED STATES OF AMERICA, Plaintiff, v. OWEN J. PANNER, JR., Defendant.
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA
2007 U.S. Dist. LEXIS 11589
No. CR. S-06-0365 DFL
February 16, 2007, Decided
February 20, 2007, Filed

**Editorial Information: Subsequent History**

Objection overruled by United States v. Panner, 2007 U.S. Dist. LEXIS 101192 (E.D. Cal., Dec. 20, 2007).

Counsel          For Owen Murphy, Jr. (1), Defendant: Patrick Keith Hanly, LEAD ATTORNEY, Law Office of Patrick K. Hanly, Sacramento, CA.; Joseph A. Gazzigli, Law office of Joseph A. Gazzigli, Redding, CA.
          For USA, Plaintiff: Samuel Wong, LEAD ATTORNEY, United States Attorney's Office, Sacramento, CA.
Judges: DAVID F. LEVI, United States District Judge.

Opinion

Opinion by:     DAVID F. LEVI

Opinion

**MEMORANDUM OF OPINION AND ORDER**

Defendant has filed three separate motions to dismiss.

First, he seeks to dismiss the indictment as violative of the Petite Policy which restricts dual prosecutions. The motion is denied. It is not disputed that the United States Attorney obtained the necessary permission from the Attorney General to bring this federal action despite the earlier state prosecution. Accordingly, the prosecutor complied with the procedures required by the Petite Policy. Further, the court finds no due process violation. The government's stated reason for pursuing the prosecution is not arbitrary, discriminatory, or vindictive. There is no constitutional basis for setting aside the government's prosecution decision-making.

Second, the defendant seeks to dismiss count 1 as barred by the statute of limitations. However, the act alleged in count 1 is timely under 18 U.S.C. § 3283. Defendant contends that § 3283 is unavailable because the conduct alleged did not constitute "sexual abuse." In response, the government proffers a set of facts that, if proved, would amount to sexual abuse under any definition of that term. In addition, the defense argues that § 3283 is not available because it was not pleaded in the indictment. No caselaw is provided in support of this assertion. The statute of limitations is not an element of the offense. Accordingly, the court rejects this contention.

Finally, the defendant seeks to dismiss the indictment on the basis of the Ninth Circuit's decision in United States v. McCoy, 323 F.3d 1114 (9th Cir. 2003). Under McCoy, 18 U.S.C. § 2252(a) is unconstitutional as applied to the "simple intrastate possession of home-grown child pornography not

*[handwritten margin notes:]* Not charged with Sexual Abuse No Grounds See Definition of Sexual Abuse Black's

lyicases                                     1

© 2012 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhbt # 8

15

each violation and the most offensive cases would normally involve multiple violations. At the same time, however, these penalties are not so excessive as to actually prevent the obtaining of prosecutions and convictions in appropriate cases.

## VI. Explanation of the Committee Amendment

S. 1585 would make three major changes in Title 18 of the United States Code to enhance the ability of the Federal government to combat two closely related and equally insidious forms of child abuse: the use of children in pornographic material and juvenile prostitution. Specifically, S. 1585 would:

— add a new section 2251 to Title 18, making it a Federal offense for anyone to use children under the age of 16 in the production of pornographic materials;

— amend 18 U.S.C. 2423 to proscribe the interstate transportation of persons under 18 years of age for the purpose of engaging in prostitution; and

— amend the penalty provisions in those sections of title 18 dealing with the mailing (section 1461), importation or transportation (section 1462) and transportation for sale or distribution (section 1465) of obscene materials to increase the penalties where the materials adjudged obscene involved the use of children under 16 years of age engaging in sexually explicit conduct.

### A. Production of Pornographic Materials

Current Federal laws dealing with pornography focus almost exclusively on the sale, distribution and importation of obscene materials, and, do not directly address the abuse of children inherent in their participation in the production of such materials. By favorably reporting S. 1585, the Committee intends to fill the existing gap in Federal law by declaring that the use of children in the production of such materials is a form of child abuse.

Child Abuse not Sex abuse

Section 3(a) of S. 1585 would address this issue by adding a new chapter, chapter 110, to title 18, entitled "Sexual Exploitation of Children." This new chapter consists of a new section, section 2251.

Section 2251(a) would prohibit any person from knowingly employing, using, persuading, enticing, or coercing any minor to engage in or assist in any sexually explicit conduct the purpose of which is to promote various forms of print or visual media, if such person knows or has reason to know that the material will be mailed or will be traveling in interstate or foreign commerce. Section 2251(b) would make it a Federal crime for the parent, guardian, or other person having custody or control over a covered minor to knowingly permit such minor to engage in such sexually explicit conduct. Section 2251(c) defines several of the terms employed in 251(a) and (b), including "sexually explicit conduct," and "minor."

intent mandatory

### B. Scope

It is the Committee's intention that the use of the word "knowingly" in both Sections 2251(a) and (b) will require that the person

☆  Exploiting is Child Abuse.
☆  3509(k)   Covered Sexual Abuse and Kidnapping

7

mails and other instrumentalities of interstate and foreign commerce. Finally, as noted earlier, it appears that because of the vast potential profits in child pornography, these sordid enterprises are growings at a very rapid rate.

## B. CHILD PORNOGRAPHY AND CHILD PROSTITUTION

The Committee has found a close connection between child pornography and the equally outrageous use of young children as prostitutes. The precise relationship between these two forms of child abuse, however, can take many different forms.

*add ① Child Abuse*

The committee heard the testimony of a 17-year-old Chicago youth who had sold himself on the street for some two years and had also acted in a number of pornographic movies. In order to protect the identity of this young man, it was arranged for him to testify from a separate room over a two way speaker telephone system. For the purposes of the hearing, his real name was not disclosed and he was referred to as 'Marty'.

Marty testified that in Chicago many young boys—often referred to as "chickens"—served as prostitutes for older men known as "chicken hawks." On any given night as many as fifty of these "chickens" varying in age from 12 to 19 years old would congregate in the areas of Clark and Diversy streets waiting to be picked up by a "chicken hawk." On an average night, Marty might be picked up by two or three different "chicken hawks" and engage in various sexual acts with them or pose for pornographic pictures or both. In the process, he often could earn close to $500 in a week.

There have been numerous other recent examples of young persons, perhaps less sophisticated than Marty, being exploited for the profit of adults.

*Filmed Boys & sold films*

One such case involved the Reverend Claudius (Bud) Vermilye, Jr. who operated a home for wayward boys in Winchester, Tenn. The Reverend Vermilye encouraged the young boys in his charge to engage in orgies and filmed the orgies with a hidden camera. He then sold the films to certain "sponsors" of the home and also arranged for some of the sponsors to come to the farm and have sex with the boys.

In another recent case, two men in New Orleans started a Boy Scout Troop with about forty boys as members. From that group, they selected about ten boys to go on Scout trips during which the boys engaged in various sexual acts with adult males. To date, 19 adult males have been charged in this case.

In another recent case brought to light at the Chicago field hearing, the Committee heard the testimony regarding a prostitution ring known as the Delta Project. An undercover investigator presented evidence that the leaders of this Delta Project planned to establish "Delta Dorms" in large cities around the country. Each dorm was to house an adult pedophile known as the Delta Don and four or five young boys known as Delta cadets.

Working primarily through the mails, the Delta Project solicited money from a number of adult males who were encouraged to become Delta sponsors. For a fee, a sponsor was to be able to visit one of the dorms or arrange to have a cadet sent to his home. Although appar-

*EXPloitation is not the crime of Sexual Abuse & Covers Legal Conduct 18 yr old & 17 yr old spouse*

H 8754            CONGRESSIONAL RECORD — HOUSE            October 3, 1990

cate the process of moving expeditiously sentences that have been meted out requiring the death of those criminals that deserve it, then I think we have lied to the American public when we say that this is a crime bill.

This should be something that betters the lives of victims, that betters the lives of the American citizens, and dwells on the issue of expeditious execution of penalties.

There are some problems with the bill which I hope we can remedy through the amendment process. I think it has been stated by previous Members that we need to make the death penalty one that is enforceable and can truly be shown not only to the criminal, to the person who is convicted, but to the American people, that we, the lawmakers, believe that when the death penalty is meted out, that it should be done fairly, but it should be done expeditiously; that the system should not be used to obfuscate the law; that the system should not be used to run up more and more thousands and thousands of dollars for the taxpayers, when, in effect, the law should be done that having all of the rights protected, that the penalty should be brought to an expeditious conclusion, and that is the enactment of the ultimate sentence, the death penalty.

Mr. Chairman, I am not going to argue whether the death penalty is a deterrent, but I do believe it is an ultimate penalty. When the State has given that penalty, it should be enforced. If we in this body enact a law which says that yes, there is a death penalty in here, but we know in our hearts and we know procedurally that it cannot be enforced, that everybody on death row will be there interminably, then I think the cruel and unusual punishment that we will have meted out is to the American who sits and watches us and hopes we will do something to stem the crime that is existent.

Mr. Speaker, I would hope that what we do is the right thing, and that is to have a crime bill that punishes criminals, that stems crimes, that does not offer to the American public false hope that we will do something more. Rather than offering to those on death row another gimmick, another way to extend things, another way to exact more punishment on the American taxpayer, then I think we can do the right thing, and that is to make sure that this law does not allow people to say that they are for a limited death penalty, and by that they mean that there will not be the final conclusion.

Mr. Speaker, last I would add that it is imperative that local law enforcement agencies be given the right to keep their confiscated properties. It is the only way in which many areas can have an undercover operation and truly be involved in what is breaking up drug sales in many school districts and many small municipalities.

Mr. McCOLLUM. Mr. Chairman, I yield 5 minutes to the gentleman from Ohio [Mr. DeWINE].

Mr. DeWINE. Mr. Chairman, I would like to talk about one of the noncontroversial provisions of this bill for just a moment, because I think it will be of interest to Members, and I think it does have a great deal of significance.

The gentleman from California [Mr. LEVINE], the gentleman from New York [Mr. SCHUMER], and many other members of the Committee on the Judiciary and I, have been directly involved in putting this provision together into the bill. It is a provision that protects children who are victims of crime.

Mr. Chairman, this provision makes it easier for them to get through the judicial process. It sets up a standard in the Federal law and the Federal courts that we hope many of the States will follow.

Mr. Chairman, I know from my experience as a former county prosecuting attorney that one of the more traumatic things many times for a child who has been victimized is to then have to go into the courtroom, a very sterile situation, a very foreign situation for anybody, whether it is an adult or a child, and go into that courtroom and face the person who has victimized that particular child, to look across just a few feet away and see that defendant. So what our bill does is make it easier for that child to testify in court.

□ 1450

Let me just cite some of the things it does. It allows for the use of anatomical dolls, for example, in a sex case. It allows, for example, for a closed circuit television so that the child does not actually have to be in the same building or in the same room at least as the defendant is. It also sets up some very good and tough reporting requirements for any kind of child abuse that may occur on a Federal enclave.

So it is a provision of this bill, as I said at the beginning, that is not controversial, a provision of the bill that I think will be supported by everyone. But I did want to bring it to the Members' attention because I think it is a significant breakthrough in the law.

I would like to thank the National Organization of Victims and the many other victims' advocacy groups that have been very influential in helping us and helping to get the committee to pass the bill. We relied upon their expertise and their background, and we talked to many experts in the field, and we believe that with the passage of this bill we will have in Federal law a very tough, very firm standard in this area.

Let me cite a couple of specific things the bill does. It allows a child to testify in a room other than the courtroom to reduce emotional stress. It allows the testimony of a child to be taken by recorded deposition for use at trial. It allows the use of anatomical dolls to describe sexual abuse, and forbids the release of a child witness's name and address.

This bill of rights also helps ensure speedy trial in a case where a child is a victim, and many times, Mr. Chairman, many times these cases are delayed, and no one worries about the victim. This will ensure that the court will have to take that into consideration, and will have to be concerned with the delay and the impacts on a victim of a crime, particularly a child.

The bill also allows the child to be accompanied to the court proceedings by a guardian. It states the child is presumed to be a competent witness unless otherwise determined by a court of law.

Further, it extends the statute of limitations so that a victim who was under the age of 18 years at the time of the crime can have that case prosecuted up until the time of the age of the victim is 25 years. This is a particularly important provision I think because many times the child abuse cannot be reported because the particular victim is in the custody of the person who perpetrated the crime.

Let me just conclude, Mr. Chairman, by saying that this is a good provision of the bill. I want to thank all of the victim advocacy groups that were a part of putting this together, and the ideas that they gave us, the experience that they had are really a part of this bill, and with the passage of the bill will become Federal law.

Mr. McCOLLUM. Mr. Chairman, I yield 8 minutes to the gentleman from Pennsylvania [Mr. COUGHLIN].

(Mr. COUGHLIN asked and was given permission to revise and extend his remarks.)

Mr. COUGHLIN. Mr. Chairman, let me speak for a moment in my capacity and from the perspective of my position as the vice chairman of the Select Committee on Narcotics Abuse and Control.

As all Americans know, and as well Members of this body know, crime and drugs are inextricably interwoven. It is tremendously important that we have a crime bill and have one this year if we are going to help to call a halt to the scourge of crime as well as the scourge of drugs.

But the bill as it has been brought to this body is not a crime bill; it is a criminals' bill, and it is going to take a lot of work by this body to amend it in a fashion that would make it indeed a crime bill.

Let me cite some of the amendments that will be offered that will go a long way to making this a crime bill.

Mr. GEKAS will have an amendment that is a substitute to the death penalty title of the bill. It contains additional crime and additional procedures.

Mr. McCOLLUM will also have an amendment that will apply the death penalty to certain drug kingpins.