# EXHIBIT F

U.S. v. Diehl, 775 F.3d 714 (2015)

775 F.3d 714
United States Court of Appeals,
Fifth Circuit.

UNITED STATES of America, Plaintiff–Appellee
v.
David Andrew DIEHL, also known as David A. Diehl, Defendant–Appellant.

No. 11–51076.
|
Jan. 7, 2015.

**Synopsis**
**Background:** Defendant was convicted in the United States District Court for the Western District of Texas of ten counts of sexual exploitation of a child to produce child pornography. Defendant appealed.

**Holdings:** The Court of Appeals, James E. Graves, Jr., Circuit Judge, held that:

[1] as a matter of first impression, extended statute of limitations for child abuse applied to charges of sexual exploitation of a child to produce child pornography;

[2] evidence was sufficient to prove the required nexus between the offense and interstate commerce, as required to support defendant's conviction of sexual exploitation of a child to produce child pornography; and

[3] defendant's above-Guidelines sentence of 600 months of imprisonment was procedurally and substantively reasonable.

Affirmed.

West Headnotes (19)

[1]     **Criminal Law**
        ⚖ Briefs

        Where a defendant elects to proceed pro se in a direct criminal appeal, it is the Court of Appeals' duty to construe pro se briefs liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney.

        1 Cases that cite this headnote

[2]     **Criminal Law**
        ⚖ Counsel for accused

        Ineffective assistance of counsel claims ordinarily are not reviewed on direct appeal unless they first have been addressed by the district court. U.S.C.A. Const.Amend. 6.

        Cases that cite this headnote

[3]     **Criminal Law**
        ⚖ Deficient representation and prejudice in general

        To prevail on a claim of ineffective assistance of counsel, defendant must establish that: (1) his counsel's performance fell below an objective standard of competence; and (2) the deficient performance prejudiced his defense. U.S.C.A. Const.Amend. 6.

        Cases that cite this headnote

[4]     **Criminal Law**
        ⚖ Limitations applicable

        Ordinarily, where a criminal statute does not contain its own statute of limitations, the general five-year statute of limitations for noncapital offenses applies. 18 U.S.C.A. § 3282(a).

        Cases that cite this headnote

[5]     **Criminal Law**

    🔑Limitations applicable

Former statute of limitations running until minor victim of sexual or physical abuse reached age of 25 applied to defendant charged with sexual exploitation of a child to produce child pornography, rather than five-year general statute of limitations for prosecuting non-capital offenses. 18 U.S.C.A. §§ 3282(a), 3283, 3509(k).

Cases that cite this headnote

**[6]**     **Criminal Law**
    🔑Particular issues or elements

A claim of an insufficient connection to interstate commerce is a challenge to one of the elements of the government's case and is therefore considered a claim about the sufficiency of the evidence.

Cases that cite this headnote

**[7]**     **Criminal Law**
    🔑Sufficiency of evidence to convict

In reviewing the sufficiency of the evidence following a bench trial, Court of Appeals asks whether the finding of guilt is supported by substantial evidence; in other words, whether evidence is sufficient to justify the trial judge, as the trier of fact, in concluding beyond reasonable doubt that the defendant is guilty.

Cases that cite this headnote

**[8]**     **Commerce**
    🔑Federal Offenses and Prosecutions
**Infants**
    🔑Exhibition or use of child in indecent material or performance
**Telecommunications**
    🔑Soliciting minor for sex or illegal act; child pornography

Evidence that videos of child pornography were created in Texas and found in multiple other states, and that defendant himself transported the images across state lines, both physically and via the Internet, was sufficient to prove the required nexus between the offense and interstate commerce, as required to support defendant's conviction of sexual exploitation of a child to produce child pornography. 18 U.S.C.A. § 2251(a).

Cases that cite this headnote

**[9]**     **Criminal Law**
    🔑Sentencing
**Criminal Law**
    🔑Application of guidelines

In reviewing a sentence, Court of Appeals first determines whether the district court committed procedural error, such as failing to calculate or improperly calculating the applicable Guidelines range, treating the Guidelines as mandatory, failing to consider statutory factors, determining a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range; second, if the sentencing decision is procedurally sound, Court of Appeals determines if the sentence is substantively reasonable. 18 U.S.C.A. § 3553(a).

Cases that cite this headnote

**[10]**     **Criminal Law**
    🔑Review De Novo
**Criminal Law**
    🔑Sentencing

Court of Appeals reviews the district court's interpretation or application of the sentencing guidelines de novo, and its factual findings for clear error.

Cases that cite this headnote

#### [11] **Criminal Law**
  ⚷Sentencing

Court of Appeals reviews the substantive reasonableness of a sentence for abuse of discretion.

1 Cases that cite this headnote

#### [12] **Sentencing and Punishment**
  ⚷Operation and effect of guidelines in general

All sentencing proceedings should begin with a correct calculation of the applicable Guidelines range, which serves as the initial benchmark.

Cases that cite this headnote

#### [13] **Sentencing and Punishment**
  ⚷Factors or Purposes in General

After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the required statutory factors to determine whether they support the sentence requested by a party. 18 U.S.C.A. § 3553(a).

Cases that cite this headnote

#### [14] **Sentencing and Punishment**
  ⚷Sufficiency

Defendant's above-Guidelines sentence of 600 months of imprisonment for ten counts of sexual exploitation of a child to produce child pornography was procedurally reasonable; district court stated it had fully and thoroughly considered all ramifications of the guidelines, as well as defendant's arguments in favor of a lower sentence, and discussed the required statutory factors, explaining which factors justified the non-Guidelines sentence. 18 U.S.C.A. § 2251(a).

Cases that cite this headnote

#### [15] **Sentencing and Punishment**
  ⚷Manner and effect of weighing or considering factors
  **Sentencing and Punishment**
  ⚷Effect of applying invalid factor

A non-Guidelines sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors. 18 U.S.C.A. § 3553(a).

3 Cases that cite this headnote

#### [16] **Sentencing and Punishment**
  ⚷Operation and effect of guidelines in general

The farther a sentence varies from the applicable Guidelines sentence, the more compelling the justification based on the statutory sentencing factors must be. 18 U.S.C.A. § 3553(a).

1 Cases that cite this headnote

#### [17] **Criminal Law**
  ⚷Sentencing

Court of Appeals' review of a sentence for substantive reasonableness is highly deferential, because the sentencing court is in a better position to find facts and judge their import under statutory sentencing factors with respect to a particular defendant. 18 U.S.C.A. § 3553(a).

2 Cases that cite this headnote

| [18] | **Criminal Law**<br>🔑 Sentencing |
|---|---|

Even a significant variance from the Guidelines does not constitute an abuse of discretion if it is commensurate with the individualized, case-specific reasons provided by the district court.

2 Cases that cite this headnote

| [19] | **Infants**<br>🔑 Indecent exhibition or use of child; child prostitution<br>**Sentencing and Punishment**<br>🔑 Nature, degree or seriousness of offense<br>**Sentencing and Punishment**<br>🔑 Age |
|---|---|

Defendant's above-Guidelines sentence of 600 months of imprisonment for ten counts of sexual exploitation of a child to produce child pornography was substantively reasonable, despite significant variance from the Guidelines; district court's sentence was justified based on the seriousness of the crimes, including the abuse reflected on the videos, and the involvement of three minor victims. 18 U.S.C.A. §§ 2251(a), 3553(a).

Cases that cite this headnote

**Attorneys and Law Firms**

**\*717** Joseph H. Gay, Jr., Assistant U.S. Attorney, Mara Asya Blatt, Esq., Assistant U.S. Attorney, U.S. Attorney's Office, San Antonio, TX, for Plaintiff–Appellee.

David Andrew Diehl, USP Atwater, Atwater, CA, for Defendant–Appellant.

Appeals from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM, SMITH, and GRAVES, Circuit Judges.

**Opinion**

JAMES E. GRAVES, JR., Circuit Judge:

After a bench trial, Defendant–Appellant David Diehl was convicted of ten counts of sexual exploitation of a child/production of child pornography in violation of 18 U.S.C. § 2251(a) and sentenced to 600 months of imprisonment. After electing to proceed pro se on appeal, Diehl challenges various aspects of his conviction and sentence. We affirm.

**I. Factual and Procedural Background**

In 2010, Diehl was charged with ten counts of sexual exploitation of a child/production of child pornography under 18 U.S.C. § 2251(a). The indictment alleged that in 1999 and 2000, Diehl did knowingly "employ, use, induce, entice, and coerce" three minor females to engage in sexually explicit conduct for the purpose of making visual depictions of such conduct, and that the visual depictions were "transported in interstate and foreign commerce and mailed."

Diehl waived a jury trial and proceeded to a bench trial before the district court. He entered into an agreed stipulation of facts and evidence wherein he admitted all of the elements of the offenses, except the required interstate commerce nexus. Diehl stipulated that on multiple occasions he induced three minor victims to engage in sexually explicit conduct for the purpose of producing video depictions. As part of its deliberations, the district court viewed the pornographic images produced by Diehl. According to the evidence, Diehl recorded encounters in which he sexually assaults three minor female victims on multiple separate occasions, including scenes of oral sex, digital penetration, penile penetration, sodomy, lascivious exhibition of the genitals and pubic area of the minors, and masturbation. Jane Doe # 1 was approximately 10 years old when the videos were made. Jane Doe # 2, a relative of Diehl's, was approximately 8 years old. Jane Doe # 3 was approximately 3 years old.

Diehl stipulated that the ten video exhibits introduced by the government and described in the indictment were created between February 1999 and November 2000 in the Western District of Texas. Diehl further admitted that: (1) each of the videos was found stored on one or more

computers, or other computer storage media, at places outside of Texas, (2) that the visual depictions were found outside of Texas as recently as 2010, and (3) that each of the videos was currently available on the internet, and all of them had been available since at least 2007. It was undisputed that all the videos had been found on electronic media outside the state of Texas, including in Arizona, Maryland, New Jersey, Indiana, and Australia. In 2011, the National Center for Missing and Exploited Children reviewed their reports and noted that, collectively, the images produced by Diehl were identified over 3,000 times in child pornography investigations conducted by law enforcement in the United States.

At trial, FBI Special Agent Sean Mullen testified about the investigation that allowed **\*718** officials to identify the victims and Diehl. He also testified that he was able to obtain Diehl's desktop computer from Diehl's ex-wife, Kerry Jenkins. Diehl, who was then living in Florida, had shipped the computer to Jenkins in Texas. Jenkins voluntarily gave the equipment to Mullen. The computer contains an encrypted hard drive that investigators have been unable to subject to forensic analysis.

Jenkins testified that from February 1999 to November 2000, she and Diehl lived in Austin, Texas. She and Diehl subsequently moved to Ohio before they divorced in 2002. She testified that after the divorce, Diehl moved to several different states including Florida, California, and Texas. Jenkins said there were always computers in their home, and that Diehl always brought his computers with him when they moved.

The government also called Kenneth Courtney, Diehl's former coworker and friend. At the time of the trial, Courtney was serving a 15–year state sentence for possession of child pornography. Courtney testified that in the summer of 2008, when they were both living in Florida, Diehl showed him his collection of child pornography, which Diehl had stored on a hard drive on his desktop computer. Some of the video depictions were the same as those contained in the government's exhibits. Diehl told Courtney that he made the videos. Courtney and Diehl discussed child pornography files they downloaded from the internet through eMule, a file-sharing network. Diehl explained to Courtney how he used Internet Relay Chat ("IRC") as a conduit for his videos. Courtney described IRC as "a very decentralized communication medium that enabled direct communication between each computer." Courtney testified that Diehl told him he would use IRC to "meet people on various channels," including "makers," or people who produced child pornography, to persuade them to produce new child pornography in exchange for material from Diehl. Courtney testified that Diehl said that he would share a small amount of his material with someone else in the expectation of getting new child pornography in return. Courtney testified that "it was *quid pro quo.*"

At the conclusion of the government's case, Diehl moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, on the grounds that the government had failed to provide sufficient evidence to establish a nexus to interstate commerce. The district court denied the motion.

The district court found Diehl guilty on all ten counts. The district court found beyond a reasonable doubt that the videos "clearly established" § 2251(a)'s "visual depiction" and "sexually explicit" elements. The district court also found that the facts showed beyond a reasonable doubt that the production of the child pornography occurred within Texas and that it appeared in other states on the internet, which was sufficient to show a nexus to interstate commerce under § 2251(a).

At the sentencing hearing, the district court heard extensive argument and testimony relevant to the Guidelines calculations, the 18 U.S.C. § 3553(a) sentencing factors, and the appropriate sentence. The court also heard statements from the mother of one of the victims and from Diehl.[1] The court granted two of Diehl's objections to Guidelines sentencing enhancements and overruled three other objections, **\*719** none of which Diehl challenges on appeal. The court determined that the advisory imprisonment range under the 2000 Sentencing Guidelines was 210 to 262 months of imprisonment. The statutory maximum sentence was 20 years of imprisonment on each of the ten counts, or 200 years of imprisonment.

---

[1] The district court also heard a statement from the father of a purported fourth victim of Diehl's, who was not part of the evidence in this case. The court later stated that it did not rely on this evidence in deciding the sentence.

---

The court imposed a total sentence of 600 months of imprisonment and described the reasons for the sentence on the record. Diehl's counsel objected to the sentence as being substantively and procedurally unreasonable. Diehl filed a timely notice of appeal and elected to proceed pro se on appeal.

## II. Discussion

[1] We recognize that where a defendant elects to proceed pro se in a direct criminal appeal, "it is our duty to construe

pro se briefs liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney." *United States v. Ayika,* 554 Fed.Appx. 302, 308 (5th Cir.2014). Diehl raises multiple challenges to his conviction and sentence, including alleging that his indictment was untimely, that his trial counsel was ineffective for failing to raise the statute of limitations as a defense, that there was insufficient evidence of a connection to interstate commerce, and that his sentence is procedurally and substantively unreasonable. We address each in turn.

A. *Statute of Limitations*

Diehl first argues that the statute of limitations for the offense expired prior to his indictment in 2010. He argues that the offenses alleged in the indictment were completed before November 2000 and the five-year limitations period found in 18 U.S.C. § 3282(a) applies to the offense.

[2] [3] Diehl failed to raise the statute of limitations as a defense at trial. We have previously held that a defendant waives a statute of limitations defense if it is not asserted at trial. *United States v. Arky,* 938 F.2d 579, 581–82 (5th Cir.1991). However, Diehl raises the statute of limitations as an ineffective assistance of counsel claim, arguing that his trial counsel was ineffective for failing to raise the issue before or during the trial. Ineffective assistance of counsel claims ordinarily are not reviewed on direct appeal unless they first have been addressed by the district court. *See United States v. Rosalez–Orozco,* 8 F.3d 198, 199 (5th Cir.1993). Here, however, since Diehl's claim rests on a pure question of law and needs no further development of the record, we will address it on direct appeal. *See id.* To prevail on his claim of ineffective assistance of counsel, Diehl must establish that: (1) his counsel's performance fell below an objective standard of competence; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

[4] We apply the criminal statutes in effect at the time of Diehl's offense. *See United States v. Smith,* 869 F.2d 835, 836–37 (5th Cir.1989). The applicable version of § 2251(a) prohibited the "sexual exploitation" of a minor, stating, in relevant part, that any person who causes a minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished." *See* 18 U.S.C. § 2251(a) (2000). The statute did not include a limitations period. Ordinarily, where a criminal statute does not contain its own statute of limitations, the general five-year statute of limitations for noncapital offenses found in 18 U.S.C. § 3282(a) applies. *See, e.g., United States v. Edelkind,* 525 F.3d 388, 393 (5th Cir.2008); 18 U.S.C. § 3282(a).

**\*720** However, the government argues that an offense under § 2251(a) falls within the extended statute of limitations for child abuse offenses found in 18 U.S.C. § 3283. At the time of Diehl's offense, § 3283 provided: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years." 18 U.S.C. § 3283 (2000). According to the stipulated facts regarding the ages of the victims, none of Diehl's victims had reached the age of 25 when the indictment was filed.

Section 3283 contains no definitions. Instead, "sexual abuse" and "exploitation" are defined in 18 U.S.C. § 3509(a), the predecessor statute to § 3283. *See* 18 U.S.C. § 3509(a); Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 330018(a), 108 Stat. 1796 (transferring the child abuse statute of limitations from § 3509(k) to § 3283). We find these definitions in § 3509(a) to be the appropriate definitions to use in determining the application of the extended statute of limitations in § 3283. In *United States v. Coutentos,* the Eighth Circuit relied on the definition of "sexual abuse" in § 3509(a) when determining the application of § 3283. 651 F.3d 809, 816–17 (8th Cir.2011). In *United States v. Carpenter,* the Ninth Circuit agreed, noting that the only definition of sexual abuse in Title 18 is found in § 3509(a), that § 3509(a) was originally part of the same statutory section as the extended statute of limitations for offenses involving sexual abuse of children, and that Congress later re-codified the sections as part of an effort to consolidate various statutes of limitation in a single chapter. 680 F.3d 1101, 1103 (9th Cir.2012). As the Ninth Circuit explained, "it makes little sense to detach the statutory definition in a way that would have the opposite effect of Congress's consistent efforts to *extend* the statute of limitations for crimes of sexual abuse against children." *Id.* (emphasis in original).

[5] Applying the language of the relevant statutes, it is clear that producing child pornography under § 2251(a) falls within the definition of "sexual abuse" in § 3283. The § 3283 extended statute of limitations applies, *inter alia,* to "an offense involving the sexual or physical abuse" of a child under the age of 18 years. 18 U.S.C. § 3283 (2000). Under the definitions in § 3509(a), using children to engage in sexually explicit conduct, including "exploitation" in the form of child pornography, constitutes "sexual abuse" of a child. 18 U.S.C. § 3509(a)(6), (a)(8). Diehl was indicted and convicted under 18 U.S.C. § 2251(a), which is titled "Sexual exploitation of children," and prohibits using or inducing children under the age of 18 to engage in sexually

explicit conduct for the purpose of creating a visual depiction. 18 U.S.C. § 2251(a) (2000). "Thus, the offense of producing child pornography involves the 'sexual abuse' of a child as that term is defined in § 3283." *Coutentos,* 651 F.3d at 816–17. Diehl argues that although his offenses did involve physical contact, the offense of producing child pornography does not necessarily involve such contact, and thus production of child pornography does not categorically constitute "sexual abuse." The plain language of the statutory definitions contradicts Diehl's assertion. In *Carpenter,* the Ninth Circuit determined that even if the defendant's specific conduct did not involve physical contact with a child, the offense of producing child pornography clearly falls within the definition of sexual abuse found in § 3509(a), and the extended statute of limitations of § 3283 applies. 680 F.3d at 1103.

**\*721** We join our sister circuits in holding that § 3283 is the statute of limitations applicable to Diehl's sexual exploitation of a child/production of child pornography charges under § 2251(a). *See Carpenter,* 680 F.3d at 1103–1104; *Coutentos,* 651 F.3d at 816–17. Because it is undisputed that none of Diehl's minor victims had attained the age of 25 at the time of the indictment, Diehl's indictment was timely. As a matter of law, Diehl's counsel was not ineffective for failing to raise the statute of limitations as a defense.

B. *Interstate Commerce Nexus*

Diehl next argues that the government failed to prove the required nexus between his offense and interstate commerce. During the time frame alleged in the indictment, § 2251(a) criminalized the production of sexually explicit images involving minors

> if [the producer] knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (2000); *see also United States v. Runyan,* 290 F.3d 223, 238 (5th Cir.2002). This required "nexus with interstate commerce, which courts frequently call the 'jurisdictional element,' is simply one of the essential elements" of the offense. *United States v. Sealed Appellant,* 526 F.3d 241, 243 (5th Cir.2008) (quoting *United States v. Martin,* 147 F.3d 529, 531 (7th Cir.1998)).

[6] [7] Thus, "a claim of an insufficient connection to interstate commerce is a challenge to one of the elements of the government's case and is therefore considered a claim about the sufficiency of the evidence." *United States v. Riddle,* 249 F.3d 529, 536 (6th Cir.2001). In reviewing the sufficiency of the evidence following a bench trial, we ask "whether the finding of guilt is supported by substantial evidence, i.e., evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond reasonable doubt that the defendant is guilty." *United States v. Turner,* 319 F.3d 716, 720 (5th Cir.2003) (quoting *United States v. Mathes,* 151 F.3d 251, 252 (5th Cir.1998)). We must "view all evidence in the light most favorable to the government and defer to all reasonable inferences drawn by the trial court." *Id.* at 720–21.

Under the relevant version of § 2251(a), there are three ways to satisfy the interstate commerce nexus: if the maker knows or has reason to know the depiction will be transported in interstate commerce; if the depiction was created using materials that have been transported in interstate commerce; or "if such visual depiction has actually been transported in interstate or foreign commerce or mailed." 18 U.S.C. § 2251(a) (2000). Diehl was indicted under the third jurisdictional hook, which contains no knowledge requirement. *See United States v. Terrell,* 700 F.3d 755, 759 (5th Cir.2012) (noting that "knowledge must be proven only as to the first jurisdictional hook" of § 2251(a)). In *Runyan,* we considered "whether an Internet transmission, in and of itself, constitutes interstate transportation sufficient to satisfy the interstate commerce element of § 2251." *United States v. Runyan,* 290 F.3d 223, 239 (5th Cir.2002). We concluded that it did, holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce.' " *Id.* (quoting **\*722** *United States v. Carroll,* 105 F.3d 740, 742 (1st Cir.1997)). Further, the Seventh Circuit has held that evidence that child pornography "actually traveled across state lines," by being carried from one state to another, satisfies the interstate commerce nexus. *See United States v. Schaffner,* 258 F.3d 675, 683 (7th Cir.2001).

[8] Here, the fact that the videos that were created in Texas and found in multiple other states, together with the witnesses' testimony supporting the district court's findings, is sufficient to satisfy the interstate commerce nexus requirement. First, it is undisputed that the

production of the videos occurred in Texas, and the videos were thereafter found on computers in Arizona, Maryland, New Jersey, Indiana, and Australia. As the district court reasoned, "it defies common sense to say therefore that the depictions did not move in interstate commerce." Further, the record includes specific evidence from which the district court could reasonably infer that Diehl himself transported the images across state lines, both physically and via the internet. Courtney testified that Diehl had explained how he used Internet Relay Chat as a conduit for his videos, and how he would entice other people on the internet to make or provide new child pornography in exchange for material from Diehl. Courtney also testified that Diehl retrieved the images—which were created in Texas—from his computer and showed them to Courtney while they were in Florida. Further, Agent Mullen's and Jenkins' testimony supports a finding that Diehl physically transported the videos in interstate commerce when he shipped his computer across state lines to his ex-wife, and when he moved his computer across state lines multiple times.

Based on the foregoing, Diehl has not shown that there is insufficient evidence that the § 2251(a) interstate commerce nexus requirement was satisfied.[2]

[2]  Diehl also argues that his counsel was ineffective for failing to object when the district court referenced a later amended version of § 2251(a). Diehl is correct that when announcing its verdict, the district court's discussion of the interstate nexus issue referred to language contained in both the 2000 version of the statute and the 2008 version of the statute. Nevertheless, the district court correctly identified the issue and the government's burden, and expressly found that the government had proven that the videos actually moved in interstate commerce, as required by the applicable version of § 2251(a). Diehl has not shown any prejudice resulting from his counsel's failure to object to the court's extraneous comments.

C. *Sentencing Errors*

Diehl was sentenced consecutively to 200 months on each of Counts 1, 3 and 6, and concurrently to 200 months on Counts 2, 4, 5, 7, 8, 9 and 10, for a total of 600 months of imprisonment. The district court calculated the advisory Guidelines sentencing range as 210 to 262 months, and imposed the 600–month sentence as an upward variance based on its § 3553(a) analysis. On appeal, the government gives liberal construction to Diehl's pro se appeal, and presumes that the sentencing errors were preserved for appellate review. In the circumstances of this case, we do likewise.

[9] [10] [11] "Under *Gall v. United States,* our process of reviewing a sentence is bifurcated." *United States v. Scott,* 654 F.3d 552, 554 (5th Cir.2011) (citing *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). First, we determine whether the district court committed procedural error, such as:

> (1) failing to calculate (or improperly calculating) the applicable Guidelines range; (2) treating the Guidelines as ***723** mandatory; (3) failing to consider the 18 U.S.C. § 3553(a) factors; (4) determining a sentence based on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range.

*Id.* at 555 (quoting *United States v. Armstrong,* 550 F.3d 382, 404 (5th Cir.2008)). Under this first step, "we review the district court's interpretation or application of the sentencing guidelines de novo, and its factual findings for clear error." *Id.* (quoting *United States v. Gutierrez–Hernandez,* 581 F.3d 251, 254 (5th Cir.2009)). Second, if the sentencing decision is procedurally sound, we review the substantive reasonableness of the sentence for abuse of discretion. *Id.*

1. *Procedural Reasonableness*

Liberally construing his arguments, Diehl contends that the district court did not give serious consideration to the applicable Guidelines range when determining the sentence, failed to adequately consider his reasons and arguments in favor of a lower sentence, and failed to adequately explain the sentence. He also argues that ex post facto principles required the district court to impose a sentence within the Guidelines range.

[12] [13] All sentencing proceedings should begin with a correct calculation of the applicable Guidelines range, which serves as the "initial benchmark." *Gall,* 552 U.S. at 49, 128 S.Ct. 586. "The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49–50, 128 S.Ct. 586. In selecting a sentence, the district court

must consider the § 3553(a) sentencing factors, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense and provide just punishment, protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment, (3) the kinds of sentences available, (4) the Sentencing Guidelines and any relevant policy statements, and (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a); *Gall,* 552 U.S. at 50 n. 6, 128 S.Ct. 586.

[14] A review of the record of the sentencing proceeding and the district court's lengthy and thorough consideration of the evidence, the Guidelines range, the arguments of the parties, Diehl's own allocution, and the § 3553 factors belies each of Diehl's contentions. The district court spent a significant amount of time at the sentencing hearing reviewing the relevant trial evidence, hearing new evidence presented by the parties, and listening to the arguments of counsel regarding the correct Guidelines range. Although the district court ultimately imposed a non-Guidelines sentence, it expressly stated that "I have fully and thoroughly considered all ramifications of the guidelines." The record fully supports this statement.

The district court also stated that it had considered Diehl's arguments in favor of a lower sentence. The court specifically referenced Diehl's sentencing memoranda and the need to avoid unwarranted sentencing disparities in its oral pronouncement of sentence. Although the district court did not address in detail each of Diehl's arguments on the record, "a district court need not recite each of the § 3553(a) factors and explain its applicability." **\*724** *See United States v. Herrera–Garduno,* 519 F.3d 526, 531 (5th Cir.2008).

The district court also discussed the § 3553(a) factors, and explained which ones it believed justified the non-Guidelines sentence, specifically the seriousness of the offense, the need for deterrence and to "promote respect for the law among others who might be considering this and, further, to provide just punishment for this particular offense and to promote respect for the law by this defendant." In short, our review of the sentencing hearing reveals the district court's careful consideration of the appropriate sentence, with reference to the Guidelines, the evidence, the arguments of the parties, and the statutory sentencing factors. We find no procedural error.

Lastly, Diehl appears to argue that because the Guidelines were mandatory in 2000, when he committed his offenses, the district court was obliged to impose a Guidelines sentence, and that its failure to do so amounted to a violation of the Ex Post Facto clause. This court has already rejected this argument. *See United States v. Austin,* 432 F.3d 598, 599 (5th Cir.2005).

2. *Substantive Reasonableness*

Diehl also raises several challenges to the substantive reasonableness of the sentence. Diehl argues that the district court erroneously based its sentence on the extensive circulation of the videos he produced although he was not charged with distribution of the videos, that the district court failed to properly credit the fact that he had no relevant criminal history, that a decade had passed since the crimes occurred, that there was no substantiated evidence of his committing other crimes since then, that the court failed to consider his "self-motivated" rehabilitation, and that the court failed to consider the option of sentencing him to a fine. Diehl also challenges the extent of the district court's upward variance.

[15] [16] [17] [18] We consider the substantive reasonableness of a sentence under an abuse of discretion standard. *See Gall,* 552 U.S. at 51, 128 S.Ct. 586; *Scott,* 654 F.3d at 555. A non-Guidelines sentence unreasonably fails to reflect the statutory sentencing factors set forth in § 3553(a) where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors. *United States v. Smith,* 440 F.3d 704, 708 (5th Cir.2006). "The farther a sentence varies from the applicable Guidelines sentence, the more compelling the justification based on factors in section 3553(a) must be." *Id.* at 707 (internal quotation marks and citation omitted). Ultimately, our "review for substantive reasonableness is 'highly deferential,' because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *United States v. Hernandez,* 633 F.3d 370, 375 (5th Cir.2011) (quoting *United States v. Key,* 599 F.3d 469, 473 (5th Cir.2010)). Even a significant variance from the Guidelines does not constitute an abuse of discretion if it is "commensurate with the individualized, case-specific reasons provided by the district court." *United States v. McElwee,* 646 F.3d 328, 338 (5th Cir.2011) (quoting *United States v. Herrera–Garduno,* 519 F.3d 526, 531 (5th Cir.2008)).

[19] In the specific circumstances of this case, the overall sentence is well-supported by the facts and by the district court's consideration and explanation of the § 3553(a) sentencing factors. It is clear that the district court sentenced Diehl with reference to the applicable statutory

maximum, the seriousness of the *725 crimes, including the abuse reflected on the videos, and the involvement of three minor victims, all of which are appropriate, even necessary, considerations. *See* 18 U.S.C. § 3553(a); *Gall,* 552 U.S. at 50 n. 6, 128 S.Ct. 586.

As to the seriousness of the offense, the court stated that "this is probably the single most persuasive factor in this Court's sentencing. I find this to be a horrible offense." Despite Diehl's attempts to argue that this offense was merely ordinary in the context of child pornography production cases, it cannot seriously be suggested that ten separate counts of repeated sexual abuse of three victims between the ages of 3 and 10 years old for the purposes of making videos is not an especially grave crime. The ten video compilations, which the district court viewed during the bench trial, included scenes of Diehl having oral sexual contact with the minors, inducing the minors to engage in oral sexual contact with him, digital penetration, penile penetration, sodomy, lascivious exhibition of the genitals and pubic area of the minors, and masturbation. In the video described by Count 6 of the indictment, Diehl grabs the head of a 3–year old child and ejaculates inside her mouth.

Further, as the district court noted, "[i]n addition to the actions that are depicted on the videos that this Court observed at trial," the videos appeared in connection with over 3,000 ongoing child pornography cases, and the videos "have now developed a life of their own and are continuing to be circulated. And I do find that there is no way to pull those videos back." The district court did state that it was "satisfied that this defendant uploaded images of the films that he took, because I have no other explanation of how they would have gotten in circulation had this defendant not uploaded them. And that comes from the evidence that I heard at the trial in this case." These statements, however, do not indicate that the district court sentenced Diehl based on the distribution of the videos, which Diehl was not charged with. Instead, the court's discussion of the circulation of the videos refer to the serious consequences of Diehl's own admitted actions of sexually abusing multiple children for the purposes of creating videos, which now continue to circulate and re-victimize those children. The court stated that "the strongest factor that I look at in determining the appropriate sentence in this case is the seriousness of this crime and what it has done to the people that were victims and what it will continue to do to the people who are victims and what it has done to their family." It was not improper for the district court to consider the continuing impact on the victims in judging the seriousness of the offense and selecting the sentence.

Contrary to Diehl's assertions, the court specifically considered his arguments in favor of a lower sentence. The court weighed those factors against the seriousness of the offense. It stated:

> I recognize and will state on the record that, even though the evidence is these particular crimes were committed some years ago and there is no evidence of other crimes since then, that it is possible to commit a crime that is so extreme and so horrific and so heinous that punishment must be meted out to fit the crime regardless of how a defendant has lived his life since then.

The court also stated that it had considered the mitigating statements made about Diehl's early childhood and his background of sexual abuse. That the court determined these mitigating factors were outweighed by the seriousness of the offense does not demonstrate error.

*726 Further, the district court considered sentences that had been imposed in other cases concerning production of child pornography, and considered how Diehl's offense compared to the conduct in those cases. Diehl's 600–month sentence is in line with other sentences found substantively reasonable for producers of child pornography. *See United States v. Oehne,* 698 F.3d 119, 125–126 (2d Cir.2012) (affirming as substantively reasonable 540–month sentence for two counts of production and distribution of child pornography); *United States v. Herrick,* 512 Fed.Appx. 534, 538–39 (6th Cir.2013) (affirming as substantively reasonable 1,140–month sentence for six counts of production, distribution and possession of child pornography); *United States v. Bleckler,* 510 Fed.Appx. 495, 496–97 (8th Cir.2013) (affirming as substantively reasonable 660–month sentence for four counts of production and possession of child pornography involving three children); *United States v. Huskey,* 349 Fed.Appx. 495, 496–97 (11th Cir.2009) (affirming as substantively reasonable 840–month sentence for production, distribution and receipt of child pornography).

The extent of the variance from the Guidelines range here does require careful consideration, as any variance of this size would do. However, this court has previously upheld large variances where the district court's decision was justified by the sentencing factors. In *United States v. Schmidt,* this court affirmed a 444–month sentence that was 151 months above the top of the defendant's Guidelines range and represented a 51.5% upward

variance. 552 Fed.Appx. 300, 306 (5th Cir.2014). *Schmidt* also examined a number of cases in which we upheld sentences which were "substantially above, or multiples of, the top of the Guidelines range." *Id.* at 306 n. 20 (collecting cases finding substantial upward variances to be substantively reasonable).

Given the district court's extensive consideration and explanation of the appropriate sentence in light of the § 3553(a) sentencing factors, we simply cannot conclude that the district court did not account for a factor that should have received significant weight, gave significant weight to an improper factor, or that it clearly erred in its balancing of the sentencing factors. *See Smith,* 440 F.3d at 708. To the contrary, the only evidence supporting such a contention is the size of the variance alone, which does not result in a sentence that is at all out of line with sentences in cases involving similar offenses and which the district court amply justified in the specific circumstances of this case. Diehl has not demonstrated that the district court's imposition of a 600–month sentence is substantively unreasonable.

### III. Conclusion

For the foregoing reasons, we AFFIRM Diehl's conviction and sentence in all respects.

**All Citations**

775 F.3d 714