**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| DAVID ANDREW DIEHL, | § | A-10-CR-297-LY |
| Defendant. | § | |

| | | |
|---|---|---|
| DAVID ANDREW DIEHL, | § | |
| Petitioner, | § | |
| V. | § | |
| | § | A-16-CV-1124-LY-ML |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**ORDER AND AMENDED REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE:

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of the Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  The Government's Motion for Return of Discovery Materials and Discovery Protective Order (Dkt. #202) and David Diehl's Amended Motion Under 28 U.S.C. § 2255 (Dkt. #266) were referred to the undersigned for a Report and Recommendation.  Dkt. #265.  Diehl has since filed a "First Petition for Particular FBI Report" (Dkt. #267) and a "Petition to File Supplemental Brief Concerning Statute of Limitation Curruption [sic] and Ex Post Facto Sentence" (Dkt. #269). As the Government's Motion and Diehl's Amended 2255 Motion were referred to the undersigned, the undersigned has authority to rule on these related motions. For the following reasons, the undersigned Magistrate Judge

now disposes of the related motions and submits this Amended Report and Recommendation to the District Court.

## I.   BACKGROUND

The undersigned previously issued a Report and Recommendation on Government's Motion for Return of Discovery Materials and Discovery Protective Order (Dkt. #202) and David Diehl's Motion Under 28 U.S.C. § 2255 (Dkt. #209).   During the objection period, Diehl sought leave to amend his Section 2255 Motion, and the Government filed no opposition to his motion for leave.  Dkt. #257.  The District Court allowed Diehl to file an Amended Section 2255 Motion.  Dkt. #258.  Diehl's Amended Section 2255 Motion incorporates his Original Section 2255 Motion and adds three additional grounds for relief.  Dkt. #266.  The Amended Section 2255 Motion has been referred to the undersigned for a Report and Recommendation.  Dkt. #265.  Accordingly, the undersigned has prepared this Amended Report and Recommendation, which incorporates his original Report and Recommendation (Dkt. #259) and addresses Diehl's new grounds.  As the Government's Motion for Return of Discovery Materials and Discovery Protective Order (Dkt. #202) was also re-referred, this Amended Report and Recommendation also incorporates the original Report and Recommendation as to that motion.

In ruling on his direct appeal, the Fifth Circuit succinctly and exhaustively recounted the facts of Diehl's trial, conviction, and sentence.  *United States v. Diehl*, 775 F.3d 714 (5th Cir. 2015).  Finding no error in the Fifth Circuit's factual recitation, it is repeated here. In 2010, Diehl was charged with ten counts of sexual exploitation of a child/production of child pornography under 18 U.S.C. § 2251(a). The indictment alleged that in 1999 and 2000, Diehl did knowingly "employ, use, induce, entice, and coerce" three minor females to engage in sexually explicit

conduct for the purpose of making visual depictions of such conduct, and that the visual depictions were "transported in interstate and foreign commerce and mailed."

Diehl waived a jury trial and proceeded to a bench trial before the District Court. He entered into an agreed stipulation of facts and evidence wherein he admitted all of the elements of the offenses, except the required interstate commerce nexus. Diehl stipulated that on multiple occasions he induced three minor victims to engage in sexually explicit conduct for the purpose of producing video depictions. As part of its deliberations, the District Court viewed the pornographic images produced by Diehl. According to the evidence, Diehl recorded encounters in which he sexually assaults three minor female victims on multiple separate occasions, including scenes of oral sex, digital penetration, penile penetration, sodomy, lascivious exhibition of the genitals and pubic area of the minors, and masturbation. Jane Doe #1 was approximately 10 years old when the videos were made. Jane Doe #2, a relative of Diehl's, was approximately 8 years old. Jane Doe #3 was approximately 3 years old.

Diehl stipulated that the ten video exhibits introduced by the Government and described in the indictment were created between February 1999 and November 2000 in the Western District of Texas. Diehl further admitted that: (1) each of the videos was found stored on one or more computers, or other computer storage media, at places outside of Texas, (2) that the visual depictions were found outside of Texas as recently as 2010, and (3) that each of the videos was currently available on the internet, and all of them had been available since at least 2007. It was undisputed that all the videos had been found on electronic media outside the state of Texas, including in Arizona, Maryland, New Jersey, Indiana, and Australia.

At the conclusion of the Government's case, Diehl moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, on the grounds that the Government had

failed to provide sufficient evidence to establish a nexus to interstate commerce. The District Court denied the motion.

The District Court found Diehl guilty on all ten counts. The District Court found beyond a reasonable doubt that the videos "clearly established" § 2251(a)'s "visual depiction" and "sexually explicit" elements. The District Court also found that the facts showed beyond a reasonable doubt that the production of the child pornography occurred within Texas and that it appeared in other states on the internet, which was sufficient to show a nexus to interstate commerce under § 2251(a).

At the sentencing hearing, the District Court heard extensive argument and testimony relevant to the Guidelines calculations, the 18 U.S.C. § 3553(a) sentencing factors, and the appropriate sentence. The court also heard statements from the mother of one of the victims and from Diehl. The court granted two of Diehl's objections to Guidelines sentencing enhancements and overruled three other objections, none of which Diehl challenged on appeal. The District Court determined that the advisory imprisonment range under the 2000 Sentencing Guidelines was 210 to 262 months of imprisonment. The statutory maximum sentence was 20 years of imprisonment on each of the ten counts, or 200 years of imprisonment. The court imposed a total sentence of 600 months of imprisonment and described the reasons for the sentence on the record. Diehl's counsel objected to the sentence as being substantively and procedurally unreasonable. Diehl filed a timely notice of appeal and elected to proceed *pro se* on appeal.

On appeal, Diehl alleged his indictment was untimely, his trial counsel was ineffective for failing to raise a statute of limitations defense[1], there was insufficient evidence to prove interstate commerce, and his sentence was procedurally and substantively unreasonable. The Fifth Circuit ruled against Diehl on all points and affirmed his conviction and sentence.

---

[1] Diehl replaced his trial counsel before he was sentenced.  Dkt. #106; Dkt. #107.

The Supreme Court denied Diehl's petition for writ of certiorari.  Dkt. #190.

## II.  SUMMARY OF PENDING MOTIONS

The Government filed a motion for the return of discovery materials and for a discovery protective order, seeking the return of all discovery materials provided by the Government to Diehl in this case and the prohibition from such materials being disseminated or transferred to Diehl's or any third party's control.  Dkt. #202.  The District Court referred this motion to the undersigned for a report and recommendation.  Dkt. #204.  Diehl opposed the motion and filed a motion for *in camera* review, asking the court to segregate out any attorney-client materials. Dkt. #208.  As part of the briefing process on the Government's motion, the Government submitted a descriptive inventory of the discovery items at issue.  Dkt. #215.  Because the inventory contained minor-victims' identifying information, the Government did not serve Diehl with its inventory.  The undersigned then reviewed the inventory, redacted the sensitive information, served Diehl with the redacted version, and ordered him to respond to the inventory with specificity as to why each individual item was needed, the anticipated use of the item in the future, and what good cause exists to release the item to Diehl.  Dkt. #216.  Diehl objected to that order, and the District Court overruled his objections.  Dkt. #220, 221.  Diehl then appealed that order to the Fifth Circuit, who dismissed the appeal for lack of jurisdiction.  Dkt. #223, 236. Diehl also appealed to the Supreme Court, which denied his petition for a writ of certiorari.  Dkt. #244.

Meanwhile, Diehl filed his original motion to vacate under 28 U.S.C. § 2255, which was also referred to the undersigned for a report and recommendation.  Dkt. #209.  The Government filed its response to Diehl's 2255 motion, and Diehl filed a reply brief.  Dkt. #218, #225.  Diehl asserted the following grounds for relief in his Original Section 2255 Motion:

1.      The statute of limitations was expired on all counts, and 18 U.S.C. § 3283 does not apply to the offenses.

2.      Counsel was ineffective for his failure to know the law, resulting in a wrongful conviction, specifically relating to the differences between the 1999 and 2008 versions of 18 U.S.C. § 2251(a).

3.      Counsel was ineffective for failing to object to the indictment being amended.

4.      Counsel was ineffective for failing to object to 18 U.S.C. § 2251(a) (2008) being applied to the case.

5.      Counsel was ineffective for failing to argue an appropriate defense.

6.      Trial counsel was ineffective for making a Rule 29 motion at trial.

7.      Trial counsel was ineffective for failing to subject the Government's case to meaningful adversarial testing, specifically counsel's advice to stipulate to all essential facts was per se ineffective.

8.      *United States v. Austin*, 432 F.3d 598 (5th Cir. 2005) has been abrogated by the Supreme Court.

9.      Counsel was ineffective for his failure to object to a pretrial order stating the courtroom would be closed when non-minors testified.

10.      The cumulative effect of prosecutorial misconduct at the grand jury proceedings, pretrial, trial, in the PSR, and on appeal resulted in a manifest miscarriage of justice, contributing to the wrongful conviction and thirty-year upward variance.

Dkt. #209 (2255 Mtn.) at 4-7 (paraphrased in parts); Dkt. #266 (Amd. 2255 Mtn.).  In his

Amended 2255 Motion, Diehl adds the following grounds for relief:

11.      Counsel was ineffective because he failed to have defendant's hardware inspected per 18 U.S.C. § 3509(m)(2)(B).

12.      Counsel was ineffective because he did not challenge the NCMEC reports as hearsay.

13.      Counsel was ineffective because he did not challenge the FBI's search warrant at trial.

Dkt. #266 (Amd. 2255 Mtn.) at 7 (paraphrased).

Diehl has also filed a "First Petition for Particular FBI Report" in which he seeks a May

2010 FBI disclosure that allegedly describes how witness Ken Courtney became known to the

FBI.  Dkt. #267.  Diehl also filed his "Petition to File Supplemental Brief Concerning Statute of

Limitation Curruption [sic] and Ex Post Facto Sentence."  Dkt. #269.

III.     **DISCOVERY MOTIONS RELATED TO DIEHL'S 2255 MOTION**

The court addresses the discovery motions before addressing the section 2255 motion.

A.       **Government's Motion for Return of Its Discovery Materials (Dkt. #202)**

The Government seeks return of the material it provided to Diehl's counsel to fulfill the Government's discovery obligations.  The Government contends the materials were loaned to Diehl for use during his criminal case but belong to the Government or the agency from which the evidence originated.  The Government also contends much of the materials contain information relating to child victims and are protected by 18 U.S.C. § 3509(d)(1)(A).

Diehl argues that the materials should no longer be protected under § 3509 because the victims are no longer minors.  He also argues that he needs the materials to prove his prosecutorial misconduct claims.  Diehl offers no authority that the protections given by § 3509(d)(1)(A) expire when the victim reaches the age of majority.  Nor does the statute provide for such a result.

As described below, the majority of Diehl's habeas claims involve purely legal issues, to which the materials are not relevant.  To the extent the claims contain arguments that are not purely legal, the court has considered those claims in conjunction with Diehl's request and Diehl has not shown he is entitled to the materials as issue.  Diehl contends he needs these materials because "[s]evere prosecutorial misconduct has occured [sic] in this case, and this court should not alow [sic] this evidence to be withheld."  Dkt. #246 at 2.  However, as discussed below, Diehl's prosecutorial misconduct claims are either based on legal theories the Fifth Circuit has rejected or are otherwise legally baseless.  Moreover, the material at issue in this motion was all in Diehl's attorneys' possession during his prosecution, trial, sentencing, and appeal.  Diehl has not shown why his arguments relying on this information could not have been made at trial or on

appeal.  Diehl's arguments are an improper attempt to reopen and retry his case.  Additionally, Diehl provides no explanation as to why some items listed in the Government's inventory are necessary to him.  *See* Dkt. #246 at 2-4 (failing to respond to some inventory items).  Accordingly, the undersigned recommends that the Government's motion (#202) be granted.

### B.    "First Petition for Particular FBI Report" (Dkt. #267)

Diehl seeks a May 2010 FBI disclosure that allegedly describes how witness Ken Courtney became known to the FBI.  Dkt. #267 at 1.  He contends this disclosure is in his former counsel's possession.  *Id*.  Accordingly, this disclosure is part of the materials addressed in the Government's Motion for Return of Its Discovery Materials.  For the same reasons given above, the court will deny this motion.  Diehl also contends Courtney was deposed by a Florida state police officer, and Diehl seeks a copy of that deposition and "all related state investigation documentation regarding Ken Courtney."  *Id.* at 2.

"'A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'"  *United States v. Fields*, 761 F.3d 443, 478 (5th Cir. 2014), as revised (Sept. 2, 2014) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)).  Rule 6 of the Rules Governing Section 2255 Proceedings provides that a party may conduct discovery if the judge, in the exercise of his discretion and for good cause shown, grants leave to do so. RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("HABEAS RULES") 6.  A party requesting discovery must provide reasons for the request, and the request must include the proposed discovery.  *Id.* at 6(b).  A party "demonstrates 'good cause' under Rule 6(a) 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  *Fields*, 761 F.3d at 478 (quoting *Bracy*, 520 U.S. at 908–09).  However, Rule 6 "'does

not authorize fishing expeditions.'" *Id.* (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)).

Diehl argues the May 2010 FBI disclosure shows how Courtney became known to the FBI and this information is exculpatory. Dkt. #267 at 1. Although Diehl claims this information is exculpatory, he does not explain how Courtney became known to the FBI if it was not through their investigation of Diehl or how such information would be exculpatory.

Rule 6 "'does not authorize fishing expeditions.'" *Fields*, 761 F.3d at 478 (quoting *Ward v. Whitley*, 21 F.3d at 1367). A defendant who has been convicted and has exhausted or waived his right to appeal is presumed to have been fairly and finally convicted. *United States v. Placente,* 81 F.3d 555, 558 (5th Cir. 1996) (citing *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (en banc)). Diehl's motion improperly seeks to reopen and retry his case. Accordingly, the motion (#267) is denied.

## IV.    2255 MOTIONS

The court previously listed Diehl's grounds for relief in his 2255 motions. Those grounds can generally be placed into three categories: issues raised on direct appeal, ineffective-assistance-of-counsel issues, and a general argument of prosecutorial misconduct.

### A.    Standard of Review

Under Section 2255, there are generally four grounds upon which a defendant may move to vacate, set aside or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under section 2255 is extremely limited: "A defendant can challenge his

conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year limitation period for the filing of a § 2255 motion. 28 U.S.C. § 2255(f). More specifically, § 2255(f) provides:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation shall run from the latest of—
> > (1) the date on which the judgment of conviction becomes final;
> > (2) the date on which the impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*  The Fifth Circuit and the Supreme Court hold that a judgment becomes final when the applicable period for seeking review of a final conviction expires. *See Clay v. United States*, 537 U.S. 522, 525 (2003); *United States v. Gamble*, 208 F.3d 536, 536–37 (5th Cir. 2000).

### B.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case reasonably effective assistance of counsel.  U.S. CONST. amend VI; *Cuyler v.*

*Sullivan*, 446 U.S. 335, 344 (1980).  To prevail on an ineffective assistance of counsel claim, movant must satisfy the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, he must demonstrate counsel's performance fell below an objective standard of reasonableness.  *Id*.  Under this standard, counsel must "research relevant facts and law, or make an informed decision that certain avenues will not be fruitful."  *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003).  Second, movant must prove he was prejudiced by counsel's substandard performance.  *Strickland*, 466 U.S. at 687.  "[T]o prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Conley*, 349 F.3d at 841-42.  When a movant fails to meet either requirement of the *Strickland* test, his ineffective assistance of counsel claim is defeated.  *See Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 592 (5th Cir. 1993).  "'[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Fields*, 761 F.3d at 453 (quoting *Strickland*, 466 U.S. at 689)).  Additionally, courts presume that counsel's "challenged action might be considered sound trial strategy."  *Belyeu*, 67 F.3d at 538 (citing *Strickland*).

Whether an evidentiary hearing is necessary to resolve charges of ineffective assistance depends on an assessment of the record. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990) (citing *Byrne v. Butler*, 845 F.2d 501, 512 (5th Cir. 1988)). If the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing. *Id*. (citing *Clark v. Blackburn*, 619 F.2d 431, 432 (5th Cir. 1980)).  If the record is clearly adequate to dispose fairly of the allegations, the court need not inquire further. *Id*.  "A hearing is also unnecessary when the petitioner's allegations are 'inconsistent with his conduct' and when

he does not offer 'detailed and specific facts' surrounding his allegations." *Id.* (quoting *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987)).

### C.     Issues Raised on Direct Appeal

In its review of Diehl's direct appeal, the Fifth Circuit addressed many of the issues Diehl now raises.  "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."  *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)); *see also United States. v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994).

First, Diehl contends the statute of limitations was expired on all counts and 18 U.S.C. § 3283 does not apply to his offenses.  The Fifth Circuit squarely addressed the statute of limitations issue when Diehl claimed on appeal that his trial counsel was ineffective for failing to raise the statute of limitations as a defense.  *Diehl,* 775 F.3d at 719-721.  The Fifth Circuit reached not only the effectiveness of counsel issue, but also reached the issue of the appropriate statute of limitations for the charges brought against Diehl.  *Id.*  "[Section] 3283 is the statute of limitations applicable to Diehl's sexual exploitation of a child/production of child pornography charges under § 2251(a).  Because it is undisputed that none of Diehl's minor victims had attained the age of 25 at the time of the indictment, Diehl's indictment was timely."  *Id.* at 721 (internal citations omitted).  This is the very issue Diehl asserts here.  Accordingly, despite Diehl's repeated reassertions of the same rejected points, the Fifth Circuit has unequivocally decided the statute of limitations issue against Diehl.

Diehl argues that since he committed his crimes while the Sentencing Guidelines were still mandatory, it is an Ex Post Facto violation to sentence him higher than the Guideline range in effect at the time he committed his crimes.  Diehl argues the Fifth Circuit's reliance in his

direct appeal on *United States v. Austin*, 432 F.3d 598, 599 (5th Cir. 2005), to hold otherwise was misplaced because that case has been abrogated by *Peugh v. United States*, 569 U.S. 530 (2013), and *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016).  On his direct appeal, the Fifth Circuit directly addressed and rejected Diehl's argument that his sentence is a violation of the Ex Post Facto clause.  *Diehl*, 775 F.3d at 724.  The Fifth Circuit issued its opinion after the *Peugh* case on which Diehl relies, and *Molina-Martinez* did not announce a new rule that has been made retroactive on collateral review.  Accordingly, neither case offers Diehl any relief.

Diehl also raises issues under the guise of ineffective assistance of counsel relating to the version of the statute under which he was convicted.  Diehl argues his counsel was ineffective for failing to properly argue Diehl's jurisdictional defense, i.e., that the court does not have jurisdiction over this crime unless the Government proves the created images were transported across state lines.  Diehl similarly argues that his counsel was ineffective for failing to object to the indictment "being amended" and for the 2008 version of the relevant statute being applied to his case.

The Fifth Circuit rejected these arguments in its direct review.  Diehl argues his trial counsel argued the court lacked jurisdiction because Diehl lacked the necessary *mens rea* that the images would be transported in interstate commerce.  Diehl contends his counsel should have argued the court lacked jurisdiction because the evidence was insufficient that the created images were transported in interstate commerce.  However, the Fifth Circuit rejected the argument Diehl contends trial counsel should have been made. "The fact that the videos that were created in Texas and found in multiple other states, together with the witnesses' testimony supporting the district court's findings, is sufficient to satisfy the interstate commerce nexus requirement." *Diehl*, 775 F.3d at 722.  To the extent Diehl contends interstate movement of a tangible object

was required, the Fifth Circuit also affirmed that the "the record includes specific evidence from which the district court could reasonably infer that Diehl himself transported the images across state lines, both physically and via the internet." *Id.* The Fifth Circuit also rejected Diehl's contention that the wrong version of the statute was applied and that indictment was amended during trial to use a later version of the statute. *Id.* at n.2 ("the district court correctly identified the issue and the government's burden, and expressly found that the government had proven that the videos actually moved in interstate commerce, as required by the applicable version of § 2251(a)").

Diehl is not entitled to relief on any of these grounds. The Fifth Circuit rejected the merits of these arguments. Diehl cannot now show his counsel was ineffective and he was prejudiced by that ineffectiveness for failing to make arguments the Fifth Circuit has rejected. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

### D.    Original Motion's New Ineffective Assistance of Counsel Issues

Diehl also argues his trial counsel was ineffective for making a Rule 29 motion at trial, advising him to stipulate to essential facts and failing to test the Government's case, and failing to object to the courtroom's closure when non-minors testified.

At the close of the Government's evidence, Diehl's attorney moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that federal jurisdiction was lacking because there was no adequate interstate nexus. Dkt. #91 (Trans. Day 1) at 149:16-22. Diehl contends the motion was ineffective because it was not necessary during the bench trial and it was prejudicial because it caused the District Judge to state that he found Kenneth Courtney's testimony credible to the extent relevant to the Rule 29 motion. *See id.* at 157:14-25.

Diehl also argues the District Judge used an evidentiary standard that was not beyond a reasonable doubt to decide the Rule 29 motion.  *See* Dkt. #209 (2255 Mtn.) citing Dkt. #91 (Trans. Day 1) at 185:22-186:5.  Diehl contends this harmed him on appeal because the Fifth Circuit referenced Courtney's testimony and stated, "the record includes specific evidence from which the district court could reasonably infer that Diehl himself transported the images across state lines, both physically and via the internet."  *Diehl*, 775 F.3d at 722.

Diehl's argument misrepresents the record and is without merit.  First, there is no evidence the District Judge applied a lower standard in ruling on the Rule 29 motion.  The District Judge stated he could not find that there was no reasonable trier of fact that could not convict under the facts presented.  Dkt. #91 (Trans. Day 1) at 157:21-24.  A reasonable trier of fact could only convict if the evidence proved Diehl guilty beyond a reasonable doubt.  The later reference in the transcript to a "preliminary ruling" was to a pretrial motion to dismiss filed much earlier in the case.  *Id.* at 185:22-186:5; *see* Dkt. #45.  The District Judge stated he previously "ruled that you had enough to get this case to trial."  Dkt. #91 (Trans. Day 1) at 185:24-25.  This obviously cannot be a reference to a motion made *during* trial.  Additionally, the District Judge found Diehl guilty beyond a reasonable doubt, and there is no evidence that he would have reached a different determination if there had been no Rule 29 motion.  Finally, when the Fifth Circuit found the District Judge could have inferred sufficient jurisdictional evidence from Courtney's testimony, it did not rely on the District Judge's statements denying the Rule 29 motion.  Rather, it did so because of its own standard of review:

> In reviewing the sufficiency of the evidence following a bench trial, we ask "whether the finding of guilt is supported by substantial evidence, i.e., evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond reasonable doubt that the defendant is guilty." *United States v. Turner*, 319 F.3d 716, 720 (5th Cir.2003) (quoting *United States v. Mathes*, 151 F.3d 251, 252 (5th Cir.1998)). We must "view all evidence in the light most favorable to the

government and defer to all reasonable inferences drawn by the trial court." *Id.* at 720–21.

*Diehl*, 775 F.3d at 721, 722.  Accordingly, even assuming counsel's performance fell below an objective standard of reasonableness in making the Rule 29 motion,[2] Diehl has not shown counsel's Rule 29 motion caused him any prejudice.  *See Conley*, 349 F.3d at 841-42 (requiring both *Strickland* prongs be met to succeed on an ineffective assistance of counsel claim).

Next, Diehl contends his counsel was ineffective for advising him to stipulate to essential facts and failing to test the Government's case.  Diehl contends he agreed to the stipulation, in part, because his trial counsel assured him that the Government would have to prove he transported or caused to be transported the visual deprecations he produced.  Dkt. #225 (Reply) at 10.  Diehl contends his counsel was ineffective because the Government used the stipulation to prove all elements of the offenses and had Diehl realized that would be the effect of the stipulation, he would not have entered into it.  In the stipulation, the parties agreed the evidence established beyond a reasonable doubt the first and second elements of Counts 1-10.  Dkt. #78 (Agreed Stip.).  The stipulation expressly did not concede the third element: that the visual depiction was mailed or actually transported in interstate or foreign commerce.  *Id.* at ¶¶ 16, 19. As described above, the jurisdictional nexus issue was vigorously litigated at trial and on appeal. In return for the stipulation, Diehl's Offense Level was reduced two levels for his acceptance of responsibility.  Dkt. #219-1 (PSR) at ¶ 131.  Given the overwhelming evidence against him, Diehl cannot show counsel's advice to agree to the stipulation in exchange for a two Offense Level reduction fell below an objective standard of reasonableness or had a prejudicial effect on his trial.  *See Fields*, 761 F.3d at 453; *Belyeu*, 67 F.3d at 538.

---

[2] Although Diehl has shown a Rule 29 motion is not necessary in a bench trial, he has not shown that such a motion falls below an objective standard of reasonableness.  *See United States v. Traweek*, 707 Fed. App'x 213 (5th Cir. 2017) (counsel made similar motion at a bench trial).

Finally, Diehl contends his counsel was ineffective for failing to object to the courtroom's closure when certain witnesses testified. Diehl contends the courtroom's closure "altered the defenses [sic] trial strategy contributing to the disasterous [sic] bench trial finding of guilt." Dkt. #209-1 at 25. Diehl also argues that when his own son testified, the District Judge denied defense counsel's request to close the courtroom. *Id*. The court notes Diehl did not raise the closing-of-the-courtroom issue on appeal, and the issue here is whether counsel was ineffective.

Diehl has not shown his trial counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by such unreasonable representation. First, Diehl's basis for ineffective assistance is baseless—Diehl's trial counsel *did* object to the courtroom being closed when minor victims testified. The Government's Motion to Protect the Privacy of the Juvenile Victims and Witnesses (Dkt. #61) was heard at a December 21, 2010 hearing. *See* Dkt. #134 (Dec. 21 Trans.). Diehl's counsel objected to the Government's motion and argued against it. *Id.* at 22:14-20, 23:2-5, 26:2-5, 26:10-15. Additionally, Diehl offers no specific prejudice from the order that the courtroom would be closed during minor-victims' testimony.[3] Finally, the District Judge denied the request to close the courtroom when Diehl's minor son testified because counsel represented his testimony would not involve testimony of his abuse. Dkt. #91 (Trans. Day 1) at 147:7-148:21. The District Judge stated he would reconsider that decision if the testimony was going to discuss the son's abuse. *Id*. at 148:22-24. Diehl's son was not asked about his abuse. Diehl has not shown ineffective assistance of counsel as to this issue.

## E.    Amended Motion's Ineffective Assistance of Counsel Issues

In his Amended Section 2255 Motion, Diehl raises three new bases for his ineffective assistance of counsel claim: counsel failed to have Diehl's hardware inspected per 18 U.S.C. §

---

[3] Review of the trial transcript shows that no minor victims were called during trial. *See* Dkt. #91 (Trans. Day 1).

3509(m)(2)(B), counsel did not challenge the CMEC reports as hearsay, and counsel did not challenge the FBI's search warrant at trial.  Dkt. #266 (Amd. 2255 Mtn.) at 7.

First, Diehl argues that his counsel was ineffective for failing to inspect his seized hard drives because an inspection would have shown that they did "not have any charged visual depictions on them."  Dkt. #266 at 44.  Although Diehl states his trial counsel did not inspect the hard drives, he cites to no evidence of that.  More importantly, he cannot demonstrate the second *Strickland* element—that if an inspection had occurred, the outcome of his trial would have been different.  *See Conley*, 349 F.3d at 841-42.  In the Amended Motion, Diehl states the "hard drives were either blank, or encrypted."  Dkt. #266 at 43.  The hard drive was not offered into evidence at trial.  Dkt. #85 (Government's Exhibit List).  FBI Agent Mullen testified at trial that the FBI's "examiners have tried to forensically examine the computer but have been unable to because the drives – one of the drives is encrypted."  Dkt. #91 (Trans. Day 1) at 42:24-43:1. The District Judge found the Government had proved the interstate nexus requirement beyond a reasonable doubt because the Government proved the images had been produced in Texas and the images were seized in other states.  Dkt. #92 (Trans. Day 2) at 6:15-7:15.  On direct appeal, the Fifth Circuit held "the fact that the videos that were created in Texas and found in multiple other states, together with the witnesses' testimony supporting the district court's findings, is sufficient to satisfy the interstate commerce nexus requirement."  *Diehl*, 775 F.3d at 722.  Diehl has not shown ineffective assistance of counsel as to this issue.

Next, Diehl argues his counsel was ineffective because he did not challenge the NCMEC reports as hearsay. Diehl contends two pieces of evidence proved that the visual depictions were found outside of Texas—his own stipulation and reports generated by the National Center for Missing and Exploited Children ("NCMEC").  Dkt. #266 (Amd. 2255 Mtn.) at 52.  Because he

argues the stipulation was the result of ineffective assistance of counsel, he contends the NCMEC reports "stand as the only interstate transport evidence." *Id.* Diehl fails demonstrate counsel was ineffective for objecting to these reports at trial. First, it is unclear what NCMEC reports Diehl's motion concerns. No NCMEC reports were listed on the Government's trial exhibit list. Dkt. #85. Second, notwithstanding Diehl's stipulation, there was sufficient trial evidence that the images and videos were found outside of Texas. FBI Agent Mullen testified at trial that his investigation began when he was contacted by law enforcement outside the state of Texas who had discovered some of the images at issue in this case and traced their location to the Star Ranch in McDade, Texas. Dkt. #91 (Trans. Day 1) at 13:9-19. Agents then interviewed people at Star Ranch and were able to identify a victim, who then identified Diehl and other witnesses. *Id.* at 13:20-22. Agent Mullen testified that in conjunction with NCMEC and other agencies they were able to identify other videos at issue. *Id.* at 14:11-15. He further testified that he has been contacted by other law enforcement personnel as those images have been discovered in other investigations, including investigations outside of Texas. *Id.* at 38:23-40:6. He testified that he was contacted after NCMEC indicated to the other law enforcement personnel that the videos or depictions they had discovered were part of Agent Mullen's investigation. *Id.* at 39:19-22.

Diehl also argues the District Court relied on these reports at sentencing. Dkt. #266 (Amd. 2255 Mtn.) at 52. The Presentence Investigation Report stated that an affidavit from NCMEC had been received, which indicated that one series at issue in the case had been identified 2,681 times on media submitted for review by a law enforcement agency and another series was identified 706 times. Dkt. #182 (PSR) at ¶ 36. The District Court took note of this at sentencing. Dkt. #110 (Sent. Tr.) at 110:11-16. During sentencing a district judge may properly

consider any relevant evidence without regard to its admissibility under the rules of evidence applicable at trial, provided the information has sufficient indicia of reliability to support its probable accuracy. *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996); *United States v. Thomas*, 12 F.3d 1350, 1372 (5th Cir. 1994).   Even uncorroborated hearsay, offered as sworn testimony by a government agent at a sentencing hearing, bears sufficient indicia of reliability to support a district court's decision regarding sentencing. *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010); *United States v. Roush*, 466 F.3d 380, 387 (5th Cir. 2006). Diehl's counsel's "failure" to object to the affidavit cannot be considered ineffective assistance because counsel is not deficient for failing to raise a non-meritorious objection. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Finally, Diehl argues his counsel was ineffective because he did not challenge the FBI's search warrant at trial. At a pretrial hearing on Diehl's motion to suppress, the Government stated that it did not intend to use evidence obtained from the search warrant at issue, and the District Judge granted the motion to suppress as a motion in limine.  Dkt. #134 (Hrg. Trans.) at 4:6-18; Dkt. #68 (Order).  Pointing to no evidence, Diehl contends the FBI could have only learned about future-witness Kenneth Courtney through the results of their search.  Dkt. #266 (Amd. 2255 Mtn.) at 50 ("he then brought in Ken Courtney which was evidence obtained from the search warrant").  However, Kerry Jenkins testified at trial that she told the FBI that Diehl knew Courtney and that Courtney had been arrested for child pornography.  Dkt. #91 (Trans. Day 1) at 85:12-18. Diehl has not shown that the FBI's knowledge of Courtney was a result of the search warrant, or that trial counsel was ineffective for failing to challenge Courtney's

testimony at trial, or that the outcome of his case would have been different if counsel had made the objection.  Accordingly, Diehl has not shown ineffective assistance of counsel as to this issue.

> **F.      Prosecutorial Misconduct Issue**

Finally, Diehl argues "[t]he cummulative [sic] effect of prosecutorial misconduct at the grand jury proceedings, pretrial, trial, in the PSR, and on appeal resulted in a manifest miscarriage of justice, contributing to the wrongful conviction and thirty-year upward variance." Dkt. #209 (2255 Mtn.) at 7.  "Under the cumulative error doctrine, relief may be obtained only when constitutional errors so fatally infect the trial that they violate the trial's fundamental fairness."  *Fields*, 761 F.3d at 483 (quoting *United States v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009)). "Where the district court does not commit an error, there can be no cumulative error."  *Id*.

Diehl lists a series of "material misstatement of law and fact," *see* Dkt. #209 (2255 Mtn.) at 31-33, but many of the statements Diehl allegedly quotes from the Sentencing Transcript cannot be found in the Sentencing Transcript and several other references are to statements the Government made during his appeal.  Diehl also attacks statements made by the Government during sentencing, *see* Dkt. #209 (2255) at 34-35, but several of these alleged statements cannot be located in the record and the remaining are fair attorney argument.  This case was tried to the bench, and the District Judge was fully knowledgeable about the evidence.  Even if Diehl were to show any of the statements were improper, he has not shown that they unfairly prejudiced the District Judge.

Diehl also argues the Government withheld exculpatory evidence concerning Kenneth Courtney's previous out of court statements and agreements Courtney had with the Government

regarding his testimony against Diehl.  In his argument, Diehl references inconsistent statements made by Courtney, but Diehl never states how he became aware of those statements.  The Government contends the statements are contained in an FBI interview summary of Courtney, which was produced to Diehl before trial.  Dkt. #218 (Resp.) at 22-23.  Diehl does not rebut this assertion in his reply, but instead argues the Government "gave a jail house snitch five years off his sentence to lie."  Dkt. #225 (Reply) at 17.  Diehl has not shown any constitutional errors relating to his trial, much less conduct that would result in a miscarriage of justice.  *See Fields*, 761 F.3d at 483 (requiring constitutional errors that violate the trial's fundamental fairness).

The court also notes Diehl did not raise these issues in his direct appeal[4] and did not offer any arguments as to why he could not have done so.  *See Smith*, 32 F.3d at 196; *Shaid*, 937 F.2d at 232.  Diehl has not shown that he is entitled to habeas relief on these issues.

### G.    Request for an Evidentiary Hearing

An evidentiary hearing is not necessary to resolve Diehl's 2255 Motion, and Diehl's request for an evidentiary hearing should be denied.

## V.    PETITION TO FILE SUPPLEMENTAL BRIEF CONCERNING STATUTE OF LIMITATION CORRUPTION AND EX POST FACTO SENTENCE (Dkt. # 269)

Diehl seeks leave to file an additional brief relating to the alleged conspiracy to bring "expired charges against him."  Dkt. #269 at 1.  He states, "The supplemental brief was first mentioned in Petitioners [sic] Motion for Reconsideration to Recuse Magistrate Mark Lane."  *Id*.  He also seeks leave to file a second brief concerning "the ex post facto sentence."  *Id*.  He states, "This brief was first offered in 'Objection to Order and Report And Recommendation of the United States Magistrate Judge."  *Id*.  Finally, he contends that "[d]ue to the § 2255 page limit, Petition did not have the chance to fully brief this important issue."  *Id*.

---

[4] Diehl did file a motion for an independent investigation into possible corruption on the part of the Government and his trial counsel, which the Fifth Circuit denied as "wholly speculative and unsupported by the record."

The court denies this motion for several reasons.  First, according to Diehl, these briefs have already been before the court.   Second, Diehl's Original Section 2255 Motion and Memorandum was over 65 pages long, not including attachments, and his Amended Motion included nine pages of new argument.  Dkt. #209 (2255 Mtn.); Dkt. #266 (Amd. 2255 Mtn.). Diehl cites to no rule that limited the number of pages he could file with his Original Section 2255 Motion. Third, Diehl sought leave to amend his Original Section 2255 Motion on three specific grounds, which these briefs do not address.  *Compare* Dkt. #257 *with* Dkt. #269.  Diehl was granted leave to "amend any pending motion on or before December 6, 2018."  Dkt. #258. This motion was filed a month after that deadline.  Dkt. #269.  Moreover, as described above, in considering Diehl's direct appeal, the Fifth Circuit conclusively rejected Diehl's statute of limitations argument and his argument that his sentence violated the Ex Post Facto clause, and issues raised and resolved on direct appeal are not considered in a section 2255 motion.  *Diehl*, 775 F.3d at 719-24; *Kalish*, 780 F.2d at 508.

## VI.    ORDERS AND RECOMMENDATIONS

As stated above, the court **DENIES** Diehl's First Petition for Particular FBI Report (Dkt. #267) and Petition to File Supplemental Brief Concerning Statute of Limitation Curruption [sic] and Ex Post Facto Sentence (Dkt. #269).

For the reasons stated above, the court **RECOMMENDS** the Government's Motion for Return of Discovery Materials and Discovery Protective Order (Dkt. #202) be **GRANTED**.

For the reasons stated above, the court also **RECOMMENDS** David Diehl's Amended Motion Under 28 U.S.C. § 2255 (Dkt. #266) be **DENIED**.

## VI.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under section 2255 "unless a circuit justice or judge issues a certificate of appealability."   28 U.S.C. § 2253(c)(1)(A).   Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may issue only if a movant has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2).   The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Id*.   "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   *Id*.

In this case, reasonable jurists could not debate the denial of Petitioner's section 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).   Accordingly, it is respectfully recommended that the District Court not issue a certificate of appealability.

**VII.    OBJECTIONS**

The parties may file objections to this Report and Recommendation.   A party filing objections must specifically identify those findings or recommendations to which objections are being made.   The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.   *See* 28 U.S.C. § 636(b)(1)(C);   *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED January 11, 2019

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE